# APPENDIX TABLE OF CONTENT

| | | |
|---|---|---|
| 1 | Title Study …..…………………………………………………………… | 1 |
| 2 | Pension Judgment ……………………………………………………….. | 2-13 |
| 3 | Adversary Proceeding Cover Sheet Banco Popular Puerto Rico…………………… | 14-27 |
| 4 | Motion for Relief from Stay. DKT. 111 of Case 11-06637-MCF7 ……………… | 28-46 |
| 5 | Bayamon Court Order II ……………………………………………………….. | 47-57 |
| 6 | Minute Resolution. Dckt 157-1 of Case 11-06637-MCF7 …………………………….. | 58-62 |
| 7 | Trustee's Individual Estate Property Record and Report Asset Cases ……………… | 63-65 |
| 8 | Sworn Statements. Dckt 179-1 of Case 14-00137-MCF ………………………...….. | 66-69 |
| 9 | Appraisal – 381 Via Versalles St. Villas de Reales Dev, Guaynabo Puerto Rico…..… | 70-89 |
| 10 | Adversary Proceeding Cover Sheet. Dkt 91 of Case 11-06637-MCF7 …………..…... | 90-95 |
| 11 | Motion to Withdraw Legal Representation. Filed by creditor Amarilis Gonzalez. Dkt. 105 of Case 11-06637-MCF7…………………………………………………........... | 96-97 |
| 12 | Notice of Appearance and Request for Notice. Filed by creditor Amarilis Gonzalez. Dkt 106 of Case 11-06637-MCF7………………………………………………..… | 98 |
| 13 | Motion Resigning Legal Representation. Filed by creditor Amarilis Gonzalez. Dkt 107 of Case 11-06637-MCF7 ……………………………………………………… | 99 |
| 14 | Notice of Appearance and Request for Service of Document. Filed by creditor Amarilis Gonzalez. Dkt 108 of Case 11-06637-MCF7 ……………………………..... | 100 |
| 15 | Motion Requesting Authorization to Withdraw as Counsel for Creditor. Filed by creditor Amarilis Gonzalez. Dkt. 126 of Case 11-06637-MCF7 ……………………... | 101-102 |
| 16 | Entry of Appearance. Filed by creditor Amarilis Gonzalez. Dkt. 158 of Case 11-06637-MCF7 ……………………....................................................................................... | 103-104 |
| 17 | Motion to Withdraw as Counsel of Record for Creditor Amarilis Gonzalez Garcia. Dkt. 194 of Case 11-06637-MCF7 …………………………………………………… | 105-107 |
| 18 | Objection to Claim #5-1. Filed by Plaintiff. Dkt 157 of Case 11-06637-MCF7 ……… | 108-110 |
| 19 | Objection to Claim #5-2. Filed by Plaintiff. Dkt. 174 of Case 11-06637-MCF7 …….. | 111-124 |
| 20 | Opposition to Claim #5-2. Filed by Plaintiff. Dkt. 179 of Case 11-06637-MCF7 …… | 125-140 |
| 21 | Reply to Response in Opposition to Objection Claim #5-2. Filed by Plaintiff. Dkt 183 of Case 11-06637-MCF7 ………………………………………………………… | 141-150 |

22    Minute of Proceeding February 19, 2020. Dkt. 184 of Case 11-06637-MCF7 ……...    151

23    Trustee Individual Propery Record and Repost Asset Case. Dkt 188 of Case 11-
      06637-MCF7 ……………………………………………………………………    152-154

24    Opposition to Motion to Dismiss Filed by Asociacion de Residentes de Villa Reales.
      Dkt. 215 Case 11-06637-MCF7 …………………………………………………..    155-163

25    Opposition to Motion for Relief of Automatic Stay Filed by Asociacion de Residente
      de Villas Reales Dkt. 216 of Case 11-06637-MCF7…………………....................    164-171

26    Amended Objection to Claim #5-2. Filed by Plaintiff. Dkt 231 of Case 11-06637-
      MCF7 …………………………………………………………………………...    172-183

27    Motion Requesting Entry of Summary Judgment. Filed by Plaintiff. Dkt 232 of Case
      11-06637-MCF7 ………………………………………………………………..    184-222

28    Adversary Proceeding Cover Sheet. Dkt. 1 of Case 14-00137-MCF ……………...    223-228

29    Answer to Counter Claim. Filed by Plaintiff. Dkt 13 of Case 14-00137-MCF………    229-234

30    Motion Requesting Entry of Summary Judgment. Filed by Plaintiff. Dkt 45 of Case
      14-00137-MCF ……………………………………………………………............    235-247

31    Reply to Defendant's Objection to Motion for Summary Judgment. Filed by Plaintiff.
      Dkt. 55 14-00137-MCF ………………………………………………………….    248-265

32    Motion in Compliance with Order. Filed by Plaintiff. Dkt 76 of Case 14-00137-MCF
      …………………………………………………………………………………..    266-267

33    Motion Requesting Entry of Summary Judgment. Filed by Plaintiff. Dkt 77 of Case
      14-00137-MCF ………………………………………………………………….    268-321

34    Reply to Opposition to Summary Judgment. Filed by Plaintiff. Dkt 80 of Case 14-
      00137-MCF…………………………………………………………………………..    322-339

35    Opposition to Defendant's Request for Summary Judgment. Filed by Plaintiff. Dkt
      178 of Case 14-00137-MCF…………………………………………………………    340-370

36    Minute of Proceeding. Dkt 229 of Case 14-00137-MCF …………………………    371

37    Judgment. Dkt. 230 of Case 14-00137-MCF ……………………………………...    372

38    Minutes of hearing on June 8, 2015 of Case DI2006-4055 …………………………    373-376

39    Amended Proof of Claim ……………………………………………………………    377-391

40    Chapter 7 bankruptcy petition ……………………………………………………    392-436

41    Opposition to the Motion for Summary Judgement. Dkt 234 of Case 11-06637MCF7    437- 456

42.   Answer to Interrogatory and Production of Document from April 16th, 2020,
      Mortgage Balance Sheet BPPR…………………………………………………   457

Exhibit 1

**6000**                    **ESTUDIO DE TITULO**

Caso: Lcdo. José María Castro Alvarez -
Re: Juan Carlos Balcells Gallarreta -

Finca # **41,852** inscrita al folio 250 del tomo 1197 de Guaynabo, Registro de la Propiedad
de Guaynabo.

DESCRIPCION:

--- URBANA: Solar radicado en la Urbanización Villas Reales, localizado en el Barrio Santa Rosa
del término municipal de Guaynabo, Puerto Rico, que se describe en el plano de inscripción de la
urbanización, con el Número Treinta y tres(33) del Bloque "E", con una cabida superficial de **375.42**
metros cuadrados. En lindes por el NORTE, en una distancia de 25.07 metros con el solar #32 del
mismo bloque; por el SUR, en una distancia de 25.00 metros con el solar #34 del mismo bloque; por
el ESTE, en dos alineaciones continuas que suman 15.10 metros con parcela de uso público y por
el OESTE, en una distancia de 15.00 metros con la Calle #7 de la urbanización, también conocida
como "Calle Versalles".
--- Enclava una casa.
--- Está afecto a servidumbre telefónica de 1.50 metros que discurre a todo lo largo de su colindancia
Oeste.
--- Servidumbre en Equidad: Franja de terreno de 1.00 metros de ancho por 25.00 metros de largo
aproximadamente, que discurre a todo lo largo de su colindancia Sur, para pintar, dar mantenimiento
y cualquier otra reparación a favor del solar #34.
--- Es segregación de la finca #39,352 inscrita al folio 100 del tomo 1119 de Guaynabo.

TITULO:        ( X ) Dominio

Adquisición: - Inscrita a favor de **JUAN CARLOS BALCELLS GALLARRETA** y su esposa
**AMARILIS GONZALEZ GARCIA**, quienes adquirieron por compra a Villas Reales, S.E. por
precio de $189,642.00 según escritura #14 otorgada en San Juan, el 17 de diciembre de 1996, ante
José Carlos González Bonilla. Inscrita al folio 250 del tomo 1197 de Guaynabo, finca #41,852
inscripción 1ra. y única. .

GRAVAMENES:

Por su procedencia: Servidumbres de paso a favor de fincas #29,445 y #29,448, AEE, AAA,
Autoridad de Comunicaciones y a condiciones restrictivas sobre uso y edificación.

Por si está afecta a:

HIPOTECA: En garantía de un pagaré por la suma de $132,925.00 intereses al 7% anual, a favor de
R&G Mortgage Corporation, o a su orden, vencedero el 1ro. de enero de 2017, según escritura #577
otorgada en San Juan, el 17 de diciembre de 1996, ante Heberto J. De Vizcarrondo Armstrong.
Inscrita al folio 250 del tomo 1197 de Guaynabo, finca #41,852 inscripción 1ra. y única.

Este documento NO es una póliza de Seguros de Título, por lo cual no debe utilizarse como tal. La
responsabilidad de la entidad que preparó este Estudio de Título, está limitada a la cantidad pagada
por la preparación de dicho Estudio de Título. Para completa protección, deben requerir una póliza
de Seguro de Título.

REVISADOS: Libros de Embargos Estatales, Embargos bajo Ley 12(2010), Municipales, Federales,
Sentencias y Bitácora(Sistema Electrónico y Agora de la cual no nos hacemos responsables por
errores u omisiones en el mismo), UD-557 UA-953(8:00 a.m.).
En San Juan, Puerto Rico a 12 de diciembre de 2011.



Luis A. Flores González
Apartado Postal 3973
San Juan, Puerto Rico  00904
795-1561 645-4980 758-3606
Fax 753-5317
E-mail tilinestudios@yahoo.com

LAFG/gip/guay/tyl/11
Costo: $60.00

App. Ap. pp.1

ESTADO LIBRE ASOCIADO DE PUERTO RICO
**TRIBUNAL DE PRIMERA INSTANCIA**
**REGIÓN JUDICIAL DE BAYAMÓN**
SALA DE FAMILIA Y MENORES

| | |
|---|---|
| **AMARILIS GONZÁLEZ GARCÍA**<br>Demandante<br><br>vs.<br><br>**JUAN CARLOS BALCELLS GALLARETA**<br>Demandado | Civil Núm.: **D DI2006-4055**<br><br>**Sala 3001**<br><br>Sobre:<br><br>**DIVORCIO** |

## RELACIÓN DEL CASO, DETERMINACIONES DE HECHOS Y CONCLUSIONES DE DERECHO Y RESOLUCIÓN

En la presente resolución debemos adjudicar principalmente dos controversias. Estas son a saber: 1) La cantidad de la obligación de alimento que surja en atención a la capacidad económica del demandado; 2) Si procede imponer desacato al demandado por no cumplir su obligación de proveer alimentos; 3) Reclamación de Hogar Seguro. Las anteriores controversias, se relacionan también los diversos argumentos de derecho y alegaciones de hechos de las partes según sus respectivas teorías. Para un mejor entendimiento de la presente resolución estimamos necesario incluir la siguiente:

### RELACIÓN DEL CASO

Luego de radicada la demanda de divorcio, el 25 de enero de 2007, las partes estipularon la pensión alimentaria provisional ante la Examinadora Martha C. Torres Lopez. El Sr. Juan C. Balcells Gallareta (en adelante "Demandado") se comprometió a pagar hipoteca, mantenimiento, jardinero de la residencia, servicios de agua, electricidad, teléfono, cable tv, internet, teléfono celular, colegio de los menores y almuerzos de la hija. Además, se comprometió a proveer $400.00 para compra de alimentos y $200.00 para gastos de gasolina pagadero en cheque certificado o giro directamente a la Sra. Amarilis González García (en adelante "Demandada"). El caso quedó señalado para el mes de junio.

El 14 de diciembre de 2007, las partes se divorciaron por la causal de trato cruel quedando la controversia de la pensión pendiente de resolución hasta la vista final ante la examinadora. Aún cuando la pensión alimentaria final no se había determinado, el 4 de junio de 2008, la parte demandada por conducto de nueva representación legal solicitó la rebaja de la pensión alimentaria. Cabe señalar que en el escrito no adujo cambio en los ingresos del demandado.

El 29 de enero de 2009, se celebró la vista final de pensión alimentaria ante la examinadora Denisse Vázquez Ortiz. El asunto quedó pendiente de resolución.

El 7 de julio de 2009 la parte demandante solicitó al Tribunal que la residencia habitual de los menores se declarara hogar seguro. El 28 de septiembre de 2009 la Demandante solicitó que se encontrara al demandado incurso en desacato alegando una deuda de $34,000.

El 17 de diciembre de 2009 la examinadora rindió el informe de pensión alimentaria. En el mismo recomendó que se le imputara al Demandado ingresos de $2,320.00 debido a que los gastos informados excedían los ingresos a pesar de que no reportó gastos de subsistencia personal. A la Demandante le imputó un ingreso de 3,076.00 mensuales por lo informado en las planillas. En esa misma fecha el Tribunal dictó resolución impartiendo aprobación al mencionado informe. La resolución fue notificada el 8 de enero de 2010.

Al día siguiente se celebró una vista de desacato. Ante la solicitud de inhibición de la Jueza Katherine Hoffman el caso fue asignado al que suscribe.

El 15 de enero de 2010, la parte demandante radicó una moción solicitando determinaciones adicionales de hechos. El Tribunal le cedió a la otra parte término para contestar. El 25 de enero de 2010, cuando aun no se había adjudicado la solicitud de hechos adicionales, la parte demandante radicó una moción de reconsideración objetando los ingresos imputados. Igualmente se le concedió a la otra parte término para contestar la moción.

El 20 de abril de 2010, la parte Demandada presenta nuevamente moción de desacato. Alegó incumplimiento de pago de pensión y que se le cortara el servicio de electricidad.

El Tribunal citó vista el 13 de mayo de 2010. El asunto fue re señalado para el 22 de julio de 2010. El día de la vista el Tribunal luego de que las partes expresaran su posición dejó sin efecto la resolución de 17 de diciembre de 2009 que modificaba la pensión alimentaria. En su defecto, reinstaló efectivo el 1ro de agosto de 2010, la cantidad de pensión alimentaria fijada por estipulación de las partes el 25 de enero de 2007.

En ánimo de resolver los escritos de las partes con relación a la solicitud de determinaciones de hechos adicionales y de reconsideración, luego de un examen detenido de todas las instancias del expediente incluyendo los escritos de las partes era menester concluir que las partes no habían informado todos sus ingresos y que existía grandes incongruencias entre las determinaciones del Tribunal y el estilo de vida de las partes.[1] Por lo tanto, el Tribunal pautó vista evidenciaria para dilucidar las siguientes controversias: 1) fijación de pensión alimentaria; 2) Si procede imponer desacato al demandado por no cumplir su obligación de proveer alimentos; 3) reclamación de hogar seguro.

La vista evidenciaria se celebró los días 15, 21, 27 de septiembre, 11 de octubre y 12 de noviembre de 2010. Luego de desfilada la prueba el incidente quedó sometido. Se toma conocimiento judicial de todas las instancias del expediente. Tras analizar la evidencia ante nuestra consideración y ponderada la credibilidad que le mereció el testimonio de las partes, formulamos las siguientes:

[1] La parte demandante recurrió al Tribunal de Apelaciones de la determinación del Tribunal de Primera Instancia mediante el recurso de certiorari. Dicha petición fue denegada.

## DETERMINACIONES DE HECHOS

1. Las partes se casaron el 28 de diciembre de 1989 en Guaynabo, Puerto Rico.

2. Durante el matrimonio procrearon dos hijos: Alexandra de 16 años y Juan Francisco de 14 años.

3. Los menores se encuentran bajo la custodia de su madre y residen en la residencia en la Urbanización Mansiones Reales en Guaynabo, Puerto Rico.

4. El referido inmueble ha constituido la vivienda familiar habitual por un tiempo considerable. Los menores han residido en el desde tierna edad y no han conocido otro lugar. Tampoco tienen otro lugar donde residir.

5. El Sr. Juan Carlos Balcells Gallareta, actualmente es Presidente de la Corporación Gusupa, Inc. También es accionista, administrador, comprador y vendedor de la empresa según varios documentos admitidos que obran en expediente. Trabaja para la compañía desde el 1987. Antes se desempeñaba como Oficial Bancario en el Chase Manhattan Bank desde el 1985 hasta el 1987.

6. Gusupa, Inc., es una corporación íntima cuyos accionistas y directores son el demandante y familiares de éste.  Juan Balcells (padre) es tesorero y Leonie Gallareta Secretaria.

7. Durante el matrimonio la Demandante no trabajaba para cuidar a los menores. Todo el dinero que se obtenía y se usaba en el hogar para sufragar los gastos familiares provenían del negocio Gusupa, Inc. Conforme a la prueba presentada el Tribunal estima que al año 2006, los ingresos familiares ascendían a una cantidad mayor a los $7,600.00 mensuales.

8. Sr. Juan Carlos Balcells Gallareta, posee cinco tarjetas de crédito pagadas por la Corporación Gusupa, Inc.  Conforme al testimonio, el firma solo en todas, excepto en una, en la que también firma su padre quien es tesorero.

9. Conforme a lo testificado por Amarilis González García, era usual que el Demandado pagara muchos de los gastos con recursos provenientes de la compañía utilizando las tarjetas de crédito de la compañía.  Durante la vista se demostró que pagaba gastos personales y de los menores con las tarjetas de crédito.

10. En las planillas de 2004, 2005 y 2006 reclamó deducción en concepto de gastos de vehículo de motor. Durante su testimonio el demandado testificó que esos gastos los pagaba la corporación.

11. El 25 de enero de 2007, el Demandado se comprometió ante la examinadora de pensiones alimentarias a pagar hipoteca, mantenimiento, jardinero de la residencia, servicios de agua, electricidad, teléfono cable tv, internet, teléfono celular, colegio de los menores y almuerzos de la hija y proveer $400.00 para compra de alimentos y $200.00 para gastos de gasolina. El total de los gastos estipulados ascendían a más de $4,000.00 mensuales y eran menores a los incurridos por el núcleo familiar mientras las partes estaban casadas.

App. Ap. pp.4

12. El Demandado proveyó los gastos ininterrumpidamente todos los meses hasta el mes de junio de 2008 que comenzaron los pagos irregulares por controversia con los gastos escolares.

13. Dichas cantidades no contemplan gastos de subsistencia personal del demandado, ni otras partidas sobre las cuales se presentó evidencia tales como gastos de mantenimiento y cuidado de la embarcación "Souvenir", los cuales se evidenció que algunos fueron pagados con tarjetas de la compañía.

14. A partir del año 2009 dos eventos produjeron un cambio sustancial en las circunstancias económicas del Demandado. En primer lugar, el hijo menor cambió de escuela. En segundo lugar, el Demandado contrajo nuevas nupcias el 15 de mayo de 2009 bajo el régimen de separación de bienes.

15. El Demandado alega que para poder pagar la pensión provisional tuvo que tomar dinero prestado y utilizar el valor acumulado de un seguro de vida. Quiso implicar de no se le puede imputar dichas cantidades como ingreso. Varias razones nos llevan a pensar en contrario.

16. De acuerdo a las planillas de contribución sobre ingresos de individuos para los años 2004, 2005, 2006 y 2009 que obran en el expediente, el SR. JUAN CARLOS BALCELLS GALLARETA reportó ingresos provenientes de sueldo $11,118, $10,712, $10,912, $10,912 e ingresos por concepto de comisiones ascendente a $5,988, $9,820, $14,554 y $12,767 respectivamente.

17. El SR. JUAN CARLOS BALCELLS GALLARETA informó en la Planilla de Información y Económica presentada el 30 de junio de 2008 la suma de $2,199.00 de ingresos netos mensuales. Sin embargo, los gastos informados ascienden a $2,320.00 y no incluyó partida por concepto de alimentos, gastos médicos y de servicios esenciales.

18. El SR. JUAN CARLOS BALCELLS GALLARETA informó en la Planilla de Información y Económica presentada el 3 de septiembre de 2010 la suma de $1,896.00 de ingresos netos mensuales. Sin embargo, los gastos informados ascienden a $545.00 y no incluyó partida por concepto de alimentos, gastos médicos y de servicios esenciales.

19. En la Planilla de Información y Económica presentada el 30 de junio de 2008 el SR. JUAN CARLOS BALCELLS GALLARETA informó deudas ascendentes a $134,670 y pagos mensuales de $3,229.00. Las deudas correspondían a tres tarjetas de crédito, una deuda hipotecaria y una deuda personal de un préstamo.

20. El SR. JUAN CARLOS BALCELLS GALLARETA en la Planilla de Información y Económica presentada el 3 de septiembre de 2010 informó deudas ascendentes a $153,621 y pagos mensuales de $2,190.00. Las deudas informadas corresponden a dos tarjetas de crédito, pago hipotecario del inmueble de Villa Reales, cuatro préstamos personales, una reserva de cuenta de cheques y una deuda con Departamento de Rentas Internas de los Estados Unidos.

21. En resumen, según la información provista por el Demandado en las Planillas de Información personal y Económica del 30 de junio de 2008 al 3 de

CIVIL NÚMERO: D DI2006-4055                                              5
AMARILIS GONZÁLEZ GARCÍA v. JUAN C. BALCELLS GALLARETA
RESOLUCIÓN

septiembre de 2010 sus ingresos se redujeron alrededor de $303.00 mensuales. De otro lado, las deudas en el mismo período aumentaron solamente $18,951.00.

22. Es menester observar que durante esos dos años pagó sobre $4,000.00 mensuales de pensión alimentaria provisional sin contar gastos personales de él ni del nuevo núcleo familiar durante 26 meses.

23. Un cálculo conservador de $4,000.00 mensuales multiplicado por 26 meses asciende a $104,000.00. Informó aproximadamente en promedio $2,000 por 26 meses es igual a $52,000. Asumiendo para propósitos del análisis que utilizó los 16,000 del seguro de vida. De dónde salen los otros $36,000.00?

24. La prueba presentada demostró que durante el matrimonio con la Demandante el sufragaba con su peculio casi la totalidad de los gastos familiares ascendentes a $7,600.00. Las cantidades pagadas eran superiores a la cantidad pactada como pensión alimentaria provisional.

25. Por lo tanto, es menester concluir que el Demandado no reportó en la planilla de información personal y económica todos los ingresos provenientes de su relación con Gusupa, Inc., no reportó todas las fuentes de ingreso o una combinación de ambas posibilidades.

26. En atención al historial de gastos evidenciado, el estilo de vida del cual disfruta actualmente y las demás circunstancias, **al SR. JUAN CARLOS BALCELL GALLARETA se le imputan $92,000 dólares de ingresos netos anuales o $7,666.66 mensuales.**

27. La SRA. AMARILIS GONZÁLEZ GARCÍA trabaja actualmente como abogada y devenga un ingreso neto mensual ascendente a $3,076.00 mensuales.

28. La SRA. AMARILIS GONZÁLEZ GARCÍA, es parte de la sucesión de DON FRANCISCO GONZÁLEZ VÉLEZ con sus hermanos.

29. Según copia certificada de la Planilla de Caudal Relicto la sucesión consta de varias propiedades que totalizan $1,669,444.00 más $6,861.32 depósitos y un vehículo de motor de $20,000.00. De ese total, $848,152.66 corresponde al valor de los bienes del causante.

30. No se presentó evidencia que todo o parte de los bienes le hayan sido adjudicados a ésta. Según su testimonio, ella solo posee una cuota indivisa que está en trámites de partición. La Demandante no devenga ingresos frutos ni rentas de su participación en los bienes de la sucesión. Por lo tanto, al presente no se le puede imputar un ingreso de esos bienes.

31. La residencia donde habita tiene un gravamen hipotecario con una mensualidad de $1,141.00. El balance aproximado de la deuda es de $60,000.

32. La residencia es habitada por tres personas incluyendo los dos menores. Se imputa un gasto mensual de $760.00 o $9,128 anual en concepto de vivienda para beneficio de los menores a ser asignado proporcionalmente a las partes.

33. El menor Juan Francisco estudia en el Colegio San Ignacio desde el mes de agosto de 2009, cuya matrícula y otros cargos ascienden a $10,150.00 anuales. Las mensualidades son pagaderas en un plazo y ascienden a $8,550.00.

34. En la vista de 16 de marzo de 2009, acordaron que la Demandante pagaría el pago inicial del colegio al cual asistiría el hijo y luego el padre reembolsaría a ésta el porciento determinado con relación las partidas suplementarias.

35. La menor Alexandra estudia en la Academia María Reina cuya matrícula asciende a $1,112.00 y $7,500.00 al año de anualidad para un total de $8,612.00

36. Al presente existe una deuda con el Colegio de $7,500.00 más recargos correspondientes al año académico 2010-2011. Conforme al acuerdo de las partes el Demandado se comprometió a sufragar la totalidad de los gastos escolares de la hija. Se aplicaría el mismo principio de proporcionalidad un vez se establezca el porciento de responsabilidad por los gastos suplementarios.

37. Según la evidencia presentada los menores incurren en $ 2,400.00 anuales equivalente a $200.00 mensuales en concepto de uniformes, libros y otros materiales escolares.

38. El total de gastos escolares asciende a $21,162.00 anuales o $1,763.50 mensuales.

39. El porciento de participación en las partidas suplementarias de la Demandante es 29% y del Demandado es 71%.

40. Los gastos suplementarios a prorratearse entre ambos padres ascienden a la cantidad de $30,290 anuales o $2,524 mensuales. El Demandante deberá pagar $21,506 anuales o $1,792.00 mensuales en concepto de pensión suplementaria.

41. Los menores se benefician de un plan médico provisto por el Demandado.

42. Conforme a las *Nuevas Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico*, Reglamento Núm. 7135 del 24 de abril de 2006, al Sr. Juan Carlos Balcells Gallareta le corresponde pagar la cantidad de $3,046.00 mensuales de pensión alimentaria básica y $1,792.00 (71%) mensuales de pensión alimentaria suplementaria.

43. La pensión total asciende a $4,838.00 mensuales. El señor JUAN CARLOS BALCELLS GALLARETA pagará dicha cantidad de forma mensual, mediante pago directo utilizando giro o cheque de gerente retroactivo a la fecha de la petición.

44. El Tribunal en atención a la complejidad del caso y las recurrentes intervenciones de la representación legal de la demandante concede $4,200.00 en honorario de abogados a ser pagados en 90 días.

En atención a las anteriores Determinaciones de Hechos, formulamos las siguientes:

## CONCLUSIONES DE DERECHO

### I. Obligación de Alimentar

Se define el término de alimentos como *"todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia, incluyendo la educación del alimentista, cuando es menor de edad."* 31 L.P.R.A. sec. 561.

En Puerto Rico el deber de proveer alimentos o asistencia económica a los hijos, emana de nuestro Código Civil, 31 L.P.R.A. sec. 561-601; de la Ley Especial

para el Sustento de Menores, Ley Núm. 5 del 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. sec. 501 et seq., y de las Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico.   Dicha obligación, según ha expresado nuestro Tribunal Supremo en el caso de *Chévere Mouriño v. Levis Goldstein*, 152 D.P.R. 492, 499 (2000), surge como resultado de ser padre o madre, y existe con todos los efectos patrimoniales, jurídicos y morales desde el momento en que nace el hijo, irrespectivamente de las circunstancias de su nacimiento, de que se tenga o no la patria potestad o de que los padres vivan o no en compañía del menor. Por ello, es responsabilidad y deber de ambos progenitores aportar a la manutención de los hijos de acuerdo a sus respectivos caudales.

El Art. 4 de la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 del 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. sec. 503, dispone:

> *"Los padres e hijos, los cónyuges, los ex-cónyuges y los parientes están obligados recíprocamente a ayudarse y sostenerse económicamente, según dispuesto en el Código Civil y en la jurisprudencia interpretativa. Los padres de un menor son responsables de su manutención y el tribunal o el Administrador podrá ordenarle pagar una suma justa y razonable por concepto de pensión alimentaria a tenor con la secc. 518 de este título."*

El Art. 19 de la Ley Orgánica de la Administración para el Sustento de Menores, supra, 8 L.P.R.A., secc. 518, dispone:

> *"En todo caso en que se solicita la fijación o modificación, o que se logre un acuerdo o estipulación de una pensión alimentaria, será mandatorio que el tribunal o el Administrador, según sea el caso, determine el monto de la misma utilizando para ello las guías adoptadas a tenor con lo dispuesto en esta sección."*

> *"El Administrador o el tribunal, a solicitud de parte o a su discreción, podrá iniciar el procedimiento para modificar una orden de pensión alimentaria en cualquier momento y fuera del ciclo de tres (3) años, cuando entienda que existe justa causa para así hacerlo, tal como variaciones o cambios significativos o imprevistos en los ingresos, capacidad de generar ingresos, egresos, gastos o capital del alimentante o alimentista, o en los gastos, necesidades o circunstancias del menor, o cuando exista cualquier otra evidencia de cambio sustancial en circunstancias."*

## II. Pensión básica y pensión suplementaria

El Artículo 4(27) de las Nuevas Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico, Reglamento Núm. 7135, del 24 de abril de 2006, define el término de **pensión** básica como *"la participación del ingreso neto de la persona no custodia dedicada al pago de gastos mínimos necesarios para la crianza del alimentista que incluyen gastos por concepto de transportación, entretenimiento y vestimenta excepto gastos de uniforme."*

El Artículo 4(30), *supra*, define **pensión suplementaria** como *"la porción del ingreso neto que la persona no custodia debe destinar para pagar la parte que le corresponde por concepto de gastos suplementarios."*

Así, pues, el propio Reglamento en su Artículo 4(14), *supra*, define **gastos**

suplementarios como:

> *"Los gastos que tanto la persona custodia como la no custodia deben sufragar para satisfacer las necesidades del alimentista, no contemplados en la pensión alimentaria básica y en la pensión básica ajustada. Éstos incluyen gastos de educación, vivienda, y gastos de salud no cubiertos por un plan de seguro médico. También incluye los gastos por concepto de cuido de niños/as, cuando la persona custodia se vea obligada a incurrir en los mismos para poder estudiar o ejercer una profesión u oficio. Al momento de determinar los gastos suplementarios, el juzgador deberá considerar no sólo los gastos que efectivamente se pagaron, sino también aquellos que deberían sufragarse para satisfacer todas las necesidades del alimentista."*

En síntesis, la pensión suplementaria se establece tomando en consideración la responsabilidad que la persona custodia y la no custodia tiene en relación a los gastos suplementarios de los alimentistas.

III. Ingreso

El Artículo 4 (15) del Reglamento 7135 *Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico (Guías)* reza:

> 15. **Ingresos:** *Comprenden cualquier ganancia, **beneficio**, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, del Gobierno de los Estados Unidos de América, el Distrito de Columbia, las Islas Vírgenes de los Estados Unidos de América, o cualquier territorio o posesión sujeta a la jurisdicción de los Estados Unidos de América según lo permitan las leyes y reglamentos federales aplicables, de cualquier estado de la Unión de los Estados Unidos de América, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad; también los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica.* (Énfasis nuestro).

En el contexto de padre alimentante el Tribunal Supremo en el caso **Fonseca v. Rodríguez,** 2011 TSPR 4 (2011) sobre el concepto ingreso dispuso que *"los bienes adquiridos mediante herencia no constituyen ingreso para efectos del cómputo de una pensión alimentaria al amparo de la Ley 5 de 1986 según enmendadas, y las Guías de 2006."* En dicho caso al alimentante se le adjudicaron mediante herencia bienes y dinero en efectivo.

Sin embargo, aunque no constituye ingreso propiamente, el máximo foro resolvió que para determinar el ingreso bruto de un alimentante, a los bienes adquiridos mediante herencia se les imputará un ingreso independiente de si lo producen en realidad *Fonseca* id a la pág. 34. Dicha operación se le delega al juez en el ejercicio de la sana discreción y a la luz de la totalidad de las circunstancias.

Por su parte, y esta vez en el Inciso 18 de su Artículo 2, *ante*, la Ley define lo que se considerará como "**ingreso neto**", para propósitos de la fijación de una pensión alimentaria, como*:*

> *Ingreso neto: Aquellos ingresos disponibles al alimentante, luego de las deducciones por concepto de contribuciones sobre ingreso, seguro social y otras requeridas mandatoriamente por ley. Se tomarán en consideración, además, a los efectos de la determinación del ingreso neto, las deducciones por concepto de planes de retiro, asociaciones, uniones y federaciones voluntarias, así como los descuentos o pagos por concepto de primas de pólizas de seguros de vida, contra accidentes o de servicios de salud cuando el/la alimentista sea beneficiario/a de éstos. La determinación final se hará según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente. (Énfasis nuestro).*

A tono con lo anterior, en la Sección 5 de las Guías se establece que *"[s]e considera [rá] ingreso neto disponible, aquella parte del ingreso bruto[,] que luego de descontársele las deducciones mandatorias y **otras deducciones aceptadas**, queda disponible para hacer frente al pago de las pensiones alimenticias."* Véase,        *Zahira Linette Martínez Vázquez v. Nelson Rodríguez Laureano*, 160 D.P.R 145 (2003).

En adición, nuestro Tribunal Supremo resolvió en ***Arguello López, López Peña v. Arguello García*, 155 D.P.R. 62 (2001)**, que en el ejercicio de la imputación de ingresos al alimentante, es de particular importancia que se ponderen los gastos en que incurre éste para mantener su estilo de vida al momento de establecer la cuantía de la pensión. *"Tales gastos constituyen un elemento decisivo con respecto a la determinación de cuál es la verdadera situación económica del alimentante. Más aun, la ponderación de tales gastos puede llevar al tribunal a decidir que algunos de ellos tienen que ceder ante la obligación prioritaria de alimentar."* (Subrayado nuestro).

En concordancia con lo expuesto y en atención al historial de gastos evidenciado, el estilo de vida del cual disfruta actualmente y las demás circunstancias, al **SR. JUAN CARLOS BALCELL GALLARETA se le imputan $92,000 dólares de ingresos netos anuales o $7,666.66 mensuales.**

## IV. EFECTIVIDAD DE LA DETERMINACION DE PENSION ALIMENTARIA

En cuanto a la retroactividad de  la obligación de la pensión a tenor con el Artículo 19 de la Sección IV de la Ley Num. 5 de 30 de diciembre de 1986 según enmendada incluyendo la Ley Número 232 de 30 de diciembre de 2010, "Los pagos por concepto de pensiones alimentarias y de aumentos en las mismas serán efectivos desde la fecha en que se presentó la petición de alimentos en el tribunal... y la revisión de la pensión alimentaria será efectiva desde la fecha en que se presentó la petición de rebaja ante el tribunal o el Administrador, siempre y cuando su petición sea meritoria desde ese momento." No obstante, el propio texto de la ley establece que de existir causas excepcionales el Tribunal podrá disponer que la revisión de pensión no sea retroactiva.

En presente caso, dado el trámite procesar seguido, que incluye una solicitud de determinaciones de hechos adicionales de hechos, esta resolución constituye la determinación de pensión alimentaria que inició con la demanda radicada el 28 de diciembre de 2006. A tenor con el referido texto en el presente caso la pensión determinada en la presente resolución debe ser retroactiva a esa fecha. No obstante, existen causas excepcionales que requieren de un ajuste para hacer justicia a las partes en cuanto a la pensión alimentaria en concepto de gastos de educación.

Al momento de acordar la pensión provisional, los gastos escolares del menor Juan Francisco eran sustancialmente menor a los determinados al presente incluyendo, matrícula y mensualidades. De retrotraer la cantidad determinada daría una cantidad sustancialmente mayor a la incurrida. Toda vez que fueron pagadas por el Demandado al imputarse el gasto actual va a producir una deuda mayor por operación matemática. Por lo tanto, la partida de pensión alimentaria en concepto de gastos escolares se retrotraerá a la fecha que el menor Juan Francisco cambió de escuela. Esa información no surge claramente de la evidencia presentada por lo que hay que celebrar una vista evidenciaria a tales propósitos.

En cuanto a los gastos escolares de la menor Alexandra, los mismos fueron contemplados y se dispuso que el Demandante pagaría los gastos sujeto a que posteriormente se le diera un crédito por el porciento que se le atribuya a la Demandante con relación a los gastos escolares.

## V. DESACATO

El desacato civil es el mecanismo mediante el cual los tribunales obligan a que se cumpla con una orden emitida cuando la parte obligada por la misma ha hecho caso omiso de ésta. El desacato civil tiene un propósito eminentemente reparador. *Alvarez v. Arias*, 156 D.P.R. 352(2002).

Como excepción a la prohibición constitucional contra el encarcelamiento por deuda, el tribunal puede ordenar el encarcelamiento por desacato civil por incumplimiento de una pensión alimentaria. No obstante, si el obligado a pagar demuestra que el incumplimiento con el pago de la pensión se debe a una causa justificada, no procederá la imposición de esta medida extrema.

En el presente caso existe, de conformidad con lo determinado con relación a la pensión alimentaria controversia sobre la existencia de una deuda por concepto de aplicación retroactiva de la pensión, cantidad de la deuda no pagada y la justificación si alguna para no cumplir en el supuesto que haya incumplimiento. Existen numerosas alegaciones encontradas, por lo tanto es menester señalar una vista de desacato a pesar de que el Tribunal se había expresado en cuanto a que durante las vistas celebradas se estaba considerando dicho asunto. Se ordena citar a las partes a **vista de desacato el lunes 8 de agosto de 2011 a las 2:00p.m.**

## VI. HOGAR SEGURO

En el 1997, la Asamblea Legislativa recogió mediante legislación la norma establecida por el Tribunal Supremo en el caso *Cruz Cruz v. Irizarry Tirado,* 107 D.P.R. 655 (1978*)* y los principios prevalecientes en cuanto a hogar Seguro Véase, *Candelario v. Muñiz,* 171 D.P.R. 530 (2007). La Ley Núm. 184 de 26 de diciembre de 1997 enmendó el Código Civil para añadir el Artículo 109-A, 31 L.P.R.A. sec. 385a, el cual en lo concerniente dispone:

> (a) El cónyuge a quien por razón del divorcio se le concede la custodia de los hijos del matrimonio, que sean menores de edad, que estén incapacitados mental o físicamente sean estos mayores o menores de edad o que sean dependientes por razón de estudios, hasta [los] veinticinco (25) años de edad, tendrá derecho a reclamar como ：.... la vivienda que constituyó el ...... del matrimonio y que pertenece a la sociedad de gananciales, mientras dure la minoría de edad, la preparación académica o la incapacidad de los hijos que quedaron bajo su custodia por razón de divorcio.
>
> La propiedad ganancial que constituye el ........ no estará sujeta a división mientras dure cualesquiera de las condiciones en virtud de las cuales se concedió. Disponiéndose, que el derecho de ........ podrá reclamarse desde que se necesitare, pudiendo ser reclamado en la demanda de divorcio, durante el proceso, o luego de decretarse el mismo. **Una vez reclamado, el juzgador determinará lo que en justicia procede de acuerdo con las circunstancias particulares de cada situación (énfasis suplido).**
>
> ..."

El propósito principal de esta legislación, según se desprende de su historial legislativo fue precisamente hacerle justicia a la institución de la familia. Se persigue tratar de salvaguardar el bienestar de los hijos cuando por razón de la separación de sus padres se encuentran en una situación de inestabilidad respecto a su vivienda. Por lo tanto, las leyes referentes a hogar seguro deben ser interpretados con toda la posible liberalidad para darle efecto a su propósito.

No obstante, la jurisprudencia se ha negado a aplicar mecánicamente el lenguaje expreso del Art. 109-A. El propio texto del Art. 109-A, dispone que: *(u)na vez reclamado, el juzgador determinará lo que en justicia procede de acuerdo con las circunstancias particulares de cada situación.* De este modo el legislador le ordena al Juez tomar en cuenta las circunstancias de cada caso para determinar que debe proceder para que sea consistente con el fin último de impartir justicia.

En el caso de autos, el inmueble cuya liquidación el demandado pretende está ubicado en la Urbanización Villa Reales en Guaynabo. Las partes pagan alrededor de $1,200.00 mensuales en concepto de hipoteca y tiene un balance aproximado de $65,000.00.

El referido inmueble ha constituido la vivienda familiar habitual por un tiempo considerable. Los menores han residido en el desde tierna edad y no han conocido otro lugar. Tampoco tienen otro lugar donde residir.

Del otro lado, el deber de alimentar a sus hijos conlleva procurar y aportar para la vivienda de los hijos. La estabilidad emocional implica también dentro de la realidad

App. Ap. pp.12

de las partes una equivalencia de las condiciones de la vivienda en proporción a los bienes de fortuna de los padres. El Demandado no está desprovisto de un techo. Actualmente reside en la Urbanización Arboles de Montehiedra en San Juan. Dicha residencia es cuanto menos de igual o mayor valor que la casa que residen sus hijos. Por lo tanto no es desmedido ni desproporcionado establecer dicho inmueble como hogar seguro.

Contrario a lo alegado por el Demandado, desde el punto de vista económico tal determinación le resulta favorable. De declarar con lugar la pretensión del Demandado y obligar a los menores mudarse a un inmueble equivalente al que reside el, conllevaría una mensualidad mayor a la establecida actualmente. Si asumimos para efecto de nuestro análisis que el inmueble tiene un valor en el mercado de $400,000 y se financia al 5% por un término de 30 años, resultaría en un pago mensual de $2,150.00 lo que es casi el doble de lo que pagan actualmente de hipoteca.

Debemos recordar que la determinación de hogar seguro no conlleva un traslado de dominio sino una limitación temporal en beneficio de la unidad familiar al prorrogarse la liquidación de ese activo. Una vez cesa las condiciones que activan la figura de hogar seguro, las partes pueden proceder con la liquidación del mismo. Por lo tanto, se declara que el inmueble de la Urbanización Villa Reales constituye el hogar seguro de los menores.

## RESOLUCIÓN

Adoptando por referencia las determinaciones de hechos y los fundamentos de derecho decretamos y resolvemos lo siguiente:

En atención al historial de gastos evidenciado, el estilo de vida del cual disfruta actualmente y las demás circunstancias, **al SR. JUAN CARLOS BALCELL GALLARETA se le imputan $92,000 dólares de ingresos netos anuales o $7,666.66 mensuales.** Los gastos suplementarios a prorratearse entre ambos padres ascienden a la cantidad de $30,290 anuales o $2,524 mensuales. El Demandante deberá pagar $21,506 anuales o $1,792.00 mensuales en concepto de pensión suplementaria. Los menores se benefician de un plan médico provisto por el Demandado.

Se ordena citar a las partes a **vista de desacato el lunes 8 de agosto de 2011 a las 2:00p.m.**

El inmueble de la Urbanización Villa Reales perteneciente en comunidad a las partes de epígrafe constituirá el hogar seguro de los menores.

De conformidad con lo resuelto en el caso *Figueroa v. Del Rosario 147 D.P.R. 121, 126-127(1998),* se ordena notificar esta resolución como Sentencia.

**REGISTRESE Y NOTIFÍQUESE.**

En Bayamón, Puerto Rico, a 30 de junio de 2011,

**ÁNGEL M. CANDELAS RODRÍGUEZ**
*Juez Superior*

B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>　　　Noreen Wiscovitch Rentas as Trustee<br>　　　for the  estate of Juan Carlos Balcells<br>　　　Gallareta | DEFENDANTS<br>Banco Popular de PR PO Box 362708, San Juan PR<br>00936;Mr. Richard Carrion, PO Box 366818, San Juan<br>PR  00936 |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>　Aimeé I López Pabón,  Esq.<br>　PO Box 9024176 San Juan PR 00902-4176  Tel:<br>　(787) 726-0077 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>□ Debtor　　　　□ U.S. Trustee/Bankruptcy Admin<br>□ Creditor　　　□ Other<br>☒Trustee | PARTY (Check One Box Only)<br>□ Debtor　　　　□ U.S. Trustee/Bankruptcy Admin<br>□ Creditor　　　□ Other<br>□ Trustee |

| CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)<br><br>　　　Violation of the Automatic Stay pursuant to§362 |
|---|

| NATURE OF SUIT |
|---|
| (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.) |

**FRBP 7001(1) – Recovery of Money/Property**
□ 11-Recovery of money/property - §542 turnover of property
□ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
□ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
□ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
　　actual fraud
□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation
　　(other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
□ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
□ 02-Other (e.g. other actions that would have been brought in state court
　　if unrelated to bankruptcy case)

| Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand  $ |

Other Relief Sought

App. Ap. pp.14

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Juan Carlos Balcells Gallareta | BANKRUPTCY CASE NO.    11-06637  MCF | |
| DISTRICT IN WHICH CASE IS PENDING<br>PUERTO RICO | DIVISION OFFICE | NAME OF JUDGE<br>MILDRED CABAN |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| DATE<br>September 26, 2016 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>AIMEE I LOPEZ PABON, ESQ. |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF).  (CM/ECF captures the information on Form 104 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:** | |
| **JUAN CARLOS BALCELLS GALLARETA**<br>DEBTOR | **CASE NO. 11-06637 MCF** |
| | **CHAPTER 7** |
| **NOREEN WISCOVITCH RENTAS**<br>**TRUSTEE FOR THE ESTATE OF JUAN BALCELLS**<br>**GALLARETA**<br>Plaintiff | **Adv. No. _____** |
| v. | |
| **BANCO POPULAR PUERTO RICO, IRELIS NIEVES**<br>**PEREZ, MARTINEZ TORRES LAW OFFICES, PSC**<br>Defendants | |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW**, NOREEN WISCOVITCH RENTAS, TRUSTEE OF THE CHAPTER 7 BANKRUPTCY ESTATE OF JUAN BALCELLS GALLARETA, represented by its undersigned attorney and to this Honorable Court very respectfully states and prays that:

1.     Jurisdiction is ascertained under 28 U.S.C. §157(a)(b)(1) and §1334 in that it arises under Chapter 11 of the U.S. Code, and concerns property of the Debtor.

2.     Venue is appropriate in this Court under 28 U.S.C. §1408 and §1409 in as such as all the events or omissions giving rise to the claims of the above captioned case occurred within the territory of this jurisdictional district.

### The Parties

3.     Plaintiff, Noreen Wiscovitch Rentas was appointed as Chapter 7 Trustee of the

App. Ap. pp.16

Bankruptcy Estate of Juan Carlos Balcells Gallareta ("Debtor"). She has standing to appear as plaintiff pursuant to 11 U.S.C. §323.

4.      Defendant, Banco Popular Puerto Rico ("BPPR") is a corporation organized and authorized to do business in Puerto Rico with headquarters at Popular Center Building Suite 913 209 Muñoz Rivera Avenue, San Juan, PR 00918, and postal address at PO BOX 362708, San Juan, PR 00936. Mr. Richard Carrion is the President and/or resident agent of BPPR, and his postal address is PO Box 366818, San Juan, PR 00936-6818.

**Background**

5.      On August 5, 2011, Debtor filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code. *Dkt. 1, case #11-06637-MCF*.

6.      Defendant, BPPR, is part of the instant bankruptcy case (*See claim 2, 4, 8, 9*) and has always been informed of the bankruptcy proceedings before this Honorable Court.

7.      On January 12, 2012, Defendant filed a proof of claim as a secured creditor for Debtor's residential mortgage, loan no. 9536. *See Claim 2*.

8.      On July 10,2015, Defendant filed a motion for relief of stay, pursuant Section 362 of the Bankruptcy Code. *See Dkt. 111, case #11-06637*.

9.      At the hearing held on August 4, 2015, Defendant withdrew the aforementioned motion. *See Dkt. 121, case #11-06637*.

10.     To this day, Defendant has not obtained authorization from the Bankruptcy Court to foreclose, or proceed against any property of the Bankruptcy Estate to recover any outstanding balance related to the mortgage loan no. 9536. *See case #11-06637*.

11.     On January 25, 2016, Defendant filed a foreclosure lawsuit before the First Instance Court of Guaynabo, Puerto Rico, case #D2CD2016-0029 (201) with knowledge of the bankruptcy

App. Ap. pp.17

filing by Debtor. *See Exhibit 1 – Copy of Complaint*.

12.     Upon receipt of the notice of filing of the Bankruptcy Petition Defendant was required, pursuant to 11 U.S.C. §362, to stop any and all collection actions and activities against Debtor and any property of the Estate and/or to request authorization from the Bankruptcy Court before proceeding against property of the Bankruptcy Estate.

**First Cause of Action –Violation of Automatic Stay pursuant to §362**

13.     The plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 12 of this Complaint.

14.     Section 362 of the Bankruptcy Code reads as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title [11 USC §78eee(a)(3)], operates as a stay, applicable to all entities of –
  (1) the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
        .....
        (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;"

15.     Collection efforts against property of the Bankruptcy Estate were instituted by Defendant in the form of a complaint, filed at the First Instance Court of Guaynabo on January 25, 2016, case #D2CD2016-0029 (201), with knowledge of the bankruptcy filing by Debtor. *See Exhibit 1 – Copy of Complaint*.

16.     The filing of said complaint also effectuates the automatic stay of section 362(a) of the Bankruptcy Code, protecting the Debtor and the property of the Estate from creditor actions.

17.     Defendant knew of the filing of the bankruptcy petition and having been duly informed, is stayed by law from proceeding further with collection efforts and/or legal

proceedings in State Court.

18.     Defendant, despite having knowledge of the wrongs described above and the power to prevent and/or aid in preventing the commission of same neglected and refused to do so.

19.     By continuing to make collection efforts, Defendant acted with knowledge and intent to willful and egregiously violate the Automatic Stay Order Provisions set by the Bankruptcy Code.

20.     The actions perpetrated by Defendants, its employee(s), agent(s), representative(s), legal or otherwise, and/or contractor(s), are a clear and willful violation to Bankruptcy law and of this Honorable Court's Automatic Stay Order pursuant to 11 U.S.C. §362.

21.     Defendants' intentional and deliberate actions constitute a reckless disregard of this Honorable Court's Orders for which punitive damages in the amount of no less than three times the requested at the foreclosure complaint, or $100,000.00 should be awarded to Plaintiff.

22.     As a result to Defendants' actions, Plaintiff is entitled to costs and attorney's fees.

23.     Plaintiff was left with no choice but to retain undersigned counsel to prosecute the instant litigation based upon the willful violation of the Automatic Stay. Undersigned counsel has incurred and will continue to incur costs and other related expenses in prosecuting this action.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to:

1.  order Defendants to cease and desist any and all current collection efforts and all possible future collection efforts;

2.  find Defendants willful violation of the Automatic Stay provisions of the Bankruptcy Code and the orders of this Honorable Court;

3.  award Plaintiff, pursuant to 11 U.S.C. §105 (a) and 362(h) an amount of no less than $100,000.00 for punitive damages;

4.  award Plaintiff attorney's fees and costs incurred in this process along with any

other relief that this Honorable Court may deem just, equitable and appropriate;

5.   declare null and void any determination over property of the bankruptcy estate made by the First Instance Court of Guaynabo in violation of the automatic stay.

**CERTIFICATE OF SERVICE:**  I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the Assistant US Trustee, US Trustees Office, Ochoa Building, 500 Tanca Street, Suite 301, San Juan, P.R. 00901, Banco Popular de Puerto Rico at PO BOX 362708, San Juan, PR 00936, and Mr. Richard Carrion, as President and/or resident agent of BPPR, at PO Box 366818, San Juan, PR 00936-6818.

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico, this September 26, 2016.

**/s/ AIMEÉ LÓPEZ PABÓN**
**USDC-PR 229906**
Email: al@g-glawpr.com

**GODREAU & GONZALEZ, LLC.**
P.O. BOX 9024176
SAN JUAN, PUERTO RICO 00902-4176
TEL.: (787) 726-0077
E-MAIL: al@g-glawpr.com

App. Ap. pp.20

MARTÍNEZ & TORRES LAW OFFICES, P.S.C.
P.O. BOX 192938
SAN JUAN, PR 00919-2938
TEL. (787) 767-8244 FAX (787) 767-1183

28 de abril de 2016

**POR CORREO CERTIFICADO**
Acuse de recibo:7015 3010 0000 3338 0291

Juan Carlos Balcells Gallarreta t/c/c Juan Carlos Balcells Gallassetas por sí y como representante de la Sociedad Legal de Gananciales compuesta con Amarilis González García
PO Box 361012, San Juan, PR, 00936

> **Notificación de Emplazamiento por Edicto y Demanda**
> D2CD2016-0029 (201)
> BANCO POPULAR DE PUERTO RICO v JUAN CARLOS BALCELLS GALLARRETA T/C/C JUAN CARLOS BALCELLS GALLASSETAS, AMARILIS GONZÁLEZ GARCÍA Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS
> Sobre ejecución de hipoteca
> N/E 14-10-202702

El día **28 de abril de 2016** se publicó el emplazamiento por edicto de **Juan Carlos Balcells Gallarreta t/c/c Juan Carlos Balcells Gallassetas por sí y como representante de la Sociedad Legal de Gananciales compuesta con Amarilis González García** en el periódico **Primera Hora** con relación al caso de referencia.

De conformidad con la Regla 4.6 de las de Procedimiento Civil se acompaña copia de la orden para la publicación del edicto, copia del emplazamiento, copia del edicto y copia de la demanda del caso de referencia.

Se le apercibe que de no contestar la demanda dentro de los treinta (30) días siguientes a la publicación del edicto podrá dictarse contra usted Sentencia en Rebeldía, concediéndose el remedio solicitado en la Demanda sin más citarle ni oírle.

Anejos

MT 65362110 **202702**

Estado Libre Asociado De Puerto Rico.
Tribunal De Primera Instancia. Centro Judicial
De Guayaobo Sala Superior

## BANCO POPULAR DE PUERTO RICO

Demandante

v.

## JUAN CARLOS BALCELLS GALLARRETA T/C/C JUAN CARLOS BALCELLS GALLASSETAS AMARILIS GONZÁLEZ GARCÍA Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS

Demandados

Civil Núm.: DJCD2016-0029 (201) Sobre: Ejecución De Hipoteca Por La Vía Ordinaria. (IN REM). Emplazamiento Por Edicto. Estados Unidos De América, El Presidente de los Estados Unidos. El Estado Libre Asociado de Puerto Rico. A la parte demandada: Juan Carlos Balcells Gallarreta t/c/c Juan Carlos Balcells Gallassetas, Amarilis González García y la sociedad legal de bienes gananciales compuesta por ambos a su última dirección conocida FISICA: Urb. Villa Realea, E-33, Guaynabo, PR, 00965 POSTAL PO Box 11882, San Juan, PR, 00922; PO Box 361012, San Juan, PR, 00936. Por la presente se le(s) notifica que se ha radicado en la Secretaría de este Tribunal una Demanda en Ejecución de Hipoteca en su contra, en la cual se alega que adeuda a la parte demandante la suma de $29,812.65 por concepto de principal, más intereses al tipo pactado de 7.500% anual desde el 1 de mayo de 2014; Dichos intereses continúan acumulándose hasta el pago total de la obligación. Además la parte demandada adeuda a la parte demandante los cargos por demora equivalentes a 4.000% de la suma de aquellos pagos con atrasos en exceso de 15 días calendario de la fecha vencimiento; las costas, gastos y honorarios de abogado equivalentes a $13,292.50 y cualquiera otros adelantos que se hagan en virtud de la escritura de hipoteca número 577, otorgada ante el Notario Heberto J. De Vincenzorido Armstrong, el día 17 de diciembre de 1996, sobre la finca número 41852 inscrita al folio 250 del Tomo 1197 del Registro de la Propiedad de Guayabo. Este Tribunal ha ordenado que se le(s) cite a unio(fm) por edicto que se publicará una sola vez en un periódico de circulación general. Se le(s) emplaza y requiere que dentro de los treinta (30) días siguientes a la publicación de este edicto excluyendo el día de la publicación de este edicto conteste(s), la Demanda radicando el original de la contestación en este Tribunal y enviando copia de la Contestación de la Demanda a los oficinas de MARTÍNEZ & TORRES LAW OFFICES, P.S.C. ATENCIÓN al Lcdo. Inés Pérez Nieves P.O. Box 192938, San Juan, Puerto Rico 00919-2938; Tel (787) 767-8244, Fax (787) 767-1183, Abogado de la Parte Demandante, Se le(s) advierte que si dejare(s) de contestar la Demanda en el período de tiempo antes mencionado, podrá dictarse contra usted(es) Sentencia en Rebeldía, concediéndose el remedio solicitado sin más citarle(s) ni oírle(s). EXPEDIDO bajo mi firma y con el Sello del Tribunal, DADA hoy 28 de abril de 2016, en Guaynabo, Puerto Rico. Glorimar Rivera Rivera, Secretaria del Tribunal Confidencial II. Nancy Santiago Santiago, Secretaría Auxiliar del Tribunal I

App. Ap. pp.22

06E-14-10-202702

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
CENTRO JUDICIAL DE GUAYNABO
SALA SUPERIOR

BANCO POPULAR DE PUERTO RICO,

Demandante

V.

Juan Carlos Balcells Gallarreta t/c/c Juan Carlos
Balcells Gallassetas, Amarilis González García y la
sociedad legal de bienes gananciales compuesta
por ambos

Demandados.

CIVIL NUM:  D2CD2016-0029 (201)

SOBRE:

EJECUCIÓN DE HIPOTECA POR LA VIA
ORDINARIA

(IN REM)

## ORDEN PARA LA PUBLICACIÓN DE EDICTO

Vista la demanda en el caso, la Moción solicitando autorización para emplazar por edicto de la Parte Demandante y la Declaración Jurada que se acompaña a la misma y habiéndose demostrado a satisfacción de este Tribunal que la parte demandada no puede ser emplazada personalmente, por una o más de las causas y razones contempladas por la Regla 4.6 de las de Procedimiento Civil, según enmendada, SE ORDENA que el emplazamiento se haga por medio de EDICTOS en esta acción a la parte demandada **Juan Carlos Balcells Gallarreta t/c/c Juan Carlos Balcells Gallassetas, Amarilis González García y la sociedad legal de bienes gananciales compuesta por ambos.**

La publicación de tal Edicto se hará, una sola vez, en un periódico de circulación general en la Isla de Puerto Rico.

SE ORDENA además remitir por correo certificado con acuse de recibo una copia del emplazamiento y de la demanda presentada al lugar de la última residencia conocida de la parte demandada dentro de los diez (10) días siguientes a la publicación del Edicto.

**REGÍSTRESE Y NOTIFÍQUESE.**

DADA en Guaynabo Puerto Rico, a 15 de Abril de 2016.

ENRIQUE PEREZ ACOSTA
JUEZ SUPERIOR
JUEZ

App. Ap. pp.23

06E-14-10-202702

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**CENTRO JUDICIAL DE GUAYNABO**
**SALA SUPERIOR**

| | |
|---|---|
| BANCO POPULAR DE PUERTO RICO, | CIVIL NÚM.: D2CD2016-0029 (201) |
| Demandante | |
| v. | SOBRE: |
| Juan Carlos Balcells Gallarreta t/c/c Juan Carlos Balcells Gallassetas, Amarilis González García y la sociedad legal de bienes gananciales compuesta por ambos | EJECUCIÓN DE HIPOTECA POR LA VÍA ORDINARIA |
| | (IN REM) |
| Demandados. | |

<u>EMPLAZAMIENTO POR EDICTO</u>

ESTADOS UNIDOS DE AMÉRICA,        }
El Presidente de los Estados Unidos      }
El Estado Libre Asociado de Puerto Rico  }

**A la parte demandada:**    **Juan Carlos Balcells Gallarreta t/c/c Juan Carlos Balcells Gallassetas, Amarilis González García y la sociedad legal de bienes gananciales compuesta por ambos** a su última dirección conocida FISICA: *Urb. Villa Reales, E-33, Guaynabo, PR, 00965* POSTAL *PO Box 11083, San Juan, PR, 00922; PO Box 361012, San Juan, PR, 00936*

        Por la presente se le(s) notifica que se ha radicado en la Secretaría de este Tribunal una Demanda en Ejecución de Hipoteca en su contra, en la cual se alega que adeuda a la parte demandante la suma de $29,812.65 por concepto de principal, más intereses al tipo pactado de 7.000% anual desde el 1 de mayo de 2014. Dichos intereses continúan acumulándose hasta el pago total de la obligación. Además la parte demandada adeuda a la parte demandante los cargos por demora equivalentes a 4.000% de la suma de aquellos pagos con atrasos en exceso de 15 días calendarios de la fecha vencimiento; las costas, gastos y honorarios de abogado equivalentes a $13,292.50 y cualquiera otros adelantos que se hagan en virtud de la escritura de hipoteca número 577, otorgada ante el Notario Heberto J. De Vizcarrondo Armstrong, el día 17 de diciembre de 1996, sobre la finca número 41852 inscrita al folio 250 del Tomo 1197 del Registro de la Propiedad de Guaynabo.
        Este Tribunal ha ordenado que se le(s) cite a usted(es) por edicto que se publicará una sola vez en un periódico de circulación general.
        Se le(s) emplaza y requiere que dentro de los treinta (30) días siguientes a la publicación de este edicto excluyendo el día de la publicación de este edicto conteste(n) la demanda radicando el original de la contestación en este Tribunal y enviando copia de la Contestación de la Demanda a las oficinas de **MARTÍNEZ & TORRES LAW OFFICES, P.S.C. ATENCIÓN al  Lcdo. Irelis Pérez Nieves P.O. Box 192938, San Juan, Puerto Rico 00919-2938; Tel (787) 767-8244, Fax (787) 767-1183**, Abogado de la Parte Demandante. Se le(s) advierte que si dejare(n) de contestar la Demanda en el período de tiempo antes mencionado, podrá dictarse contra usted(es) Sentencia en Rebeldía, concediéndose el remedio solicitado sin más citarle(s) ni oirle(s).
        EXPEDIDO bajo mi firma y con el Sello del Tribunal.
        DADA hoy __ de 2 0 APR 2016 de 2016, en _____, Puerto Rico.

GLORIMAR RIVERA RIVERA
Secretaria del Tribunal Confidencial II
SECRETARIO(A)

NANCY SANTIAGO SANTIAGO
Secretaria Auxiliar del Tribunal

D282

App. pp.24

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**CENTRO JUDICIAL DE GUAYNABO**
**SALA SUPERIOR**

| | |
|---|---|
| BANCO POPULAR DE PUERTO RICO, | CIVIL NÚM: D2CD2D16-0029 |
| Demandante, | SOBRE: SALON 201 |
| v. | EJECUCIÓN DE HIPOTECA POR LA VÍA ORDINARIA *IN REM* |
| Juan Carlos Balcells Gallarreta t/c/c Juan Carlos Balcells Gallassetas, Amarilis González García y la sociedad legal de bienes gananciales compuesta por ambos, | |
| Demandados. | |

2016 JAN 25 PM 3: 27

**D E M A N D A**

**AL HONORABLE TRIBUNAL:**

**COMPARECE** la parte demandante, BANCO POPULAR DE PUERTO RICO, en adelante denominada como "BPPR", por conducto de la representación legal que suscribe y respetuosamente EXPONE, ALEGA Y SOLICITA:

1. BPPR es una corporación organizada de acuerdo a las leyes del Estado Libre Asociado de Puerto Rico, con autoridad para demandar cuya dirección postal es *P.O. Box 362708 San Juan, PR 00936-2708*, cuya dirección física es *Departamento de Ejecución de Hipoteca, Suite #401, Edificio Centro Europa, Ave Ponce de León #1492, San Juan, PR 00907*, y cuyo teléfono es *787-522-1544*.

2. La última dirección conocida de la parte demandada es la siguiente: FÍSICA: Urb. Villa Reales, E-33, Guaynabo, PR, 00965 POSTAL: PO Box 11083, San Juan, PR, 00922; PO Box 361012, San Juan, PR, 00936.

3. La reclamación presentada excede de $5,000.00.

4. El bien inmueble sobre el cual surge el derecho o interés objeto de esta acción ubica en el Municipio de Guaynabo.

5. La presente causa de acción se inicia como un procedimiento estrictamente de naturaleza real de ejecución de hipoteca (IN REM) por el incumplimiento con las cláusulas de la escritura de hipoteca, y no con respecto a la responsabilidad personal del deudor (IN PERSONAM) que surge del pagaré hipotecario.

6. El 5 de agosto de 2011 la parte demandada radicó una petición de quiebra bajo el capítulo 7 del Código de Quiebras de Estados Unidos, caso número 11-06637.

7. El 4 de febrero de 2012 la Corte Federal de Quiebras emitió una Orden mediante la cual la parte demandada fue descargada ("discharged") de su obligación personal para con la parte demandante, según dispone el Código de Quiebra Federal, 11 U.S.C.A. § 524.

8. Aun cuando el descargo elimina la responsabilidad personal del deudor con respecto algunas deudas, el descargo no es de aplicabilidad con respecto a deudas aseguradas o garantizadas

App. Ap. pp.25

como lo es la deuda reclamada en el caso de autos.

9. En virtud de dicha Orden, BPPR queda solamente facultada a ejecutar su garantía, por lo cual la presente acción es de naturaleza real (IN REM).

10. La parte demandante no pretende cobrar la deuda del patrimonio personal de la parte demandada. Esta acción se limita al bien objeto de ejecución.

11. El día 17 de diciembre de 1996, se otorgó ante el Notario Heberto J. De Vizcarrondo Armstrong, testimonio número 18560, un pagaré a favor de R&G Mortgage Corporation o a su orden, por la suma principal de $132,925.00 más intereses desde esa fecha hasta el pago total del principal a razón de 7.000% de interés anual sobre el balance adeudado. Además el pagaré provee para pagar recargos por demora equivalentes a 4.000% de la suma de aquellos pagos con atrasos en exceso de 15 días calendarios de la fecha vencimiento; y una cantidad equivalente a $13,292.50 por concepto de costas, gastos y honorarios de abogados en caso de reclamación judicial.

12. Para garantizar el pago de dicho Pagaré se constituyó hipoteca voluntaria mediante la escritura número 577, otorgada el día 17 de diciembre de 1996, ante el Notario Heberto J. De Vizcarrondo Armstrong, sobre el bien inmueble que se describe a continuación:

> URBANA: Solar radicado en la Urbanización Villas Reales, localizada en el Barrio Santa Rosa del término municipal de Guaynabo, Puerto Rico, que se describe en el plano de inscripción con el número, área y colindancias que se relacionan a continuación; Solar #E-33, área del solar: 375.42 metros cuadrados. En lindes: Por el Norte, en una distancia de 25.08 metros lineales con el solar #32 del mismo bloque; por el Sur, en una distancia de 25.00 metros lineales, con el solar #34 del mismo bloque; por el Este, en dos alineaciones continuas que suman 15.10 metros lineales, con parcela de uso público; y por el Oeste, en una distancia de 15.00 metros lineales, con la Calle #7 de la Urbanización también conocida como Calle Versalles. Enclava una casa en concreto para fines residenciales.

13. La finca antes descrita consta Inscrita al folio 250 del tomo 1197 de Guaynabo, Registro de la Propiedad de Guaynabo, finca número 41852.

14. La escritura de hipoteca objeto de ejecución consta inscrita al folio 250 del tomo 1197 de Guaynabo, Registro de la Propiedad de Guaynabo, finca número 41852, inscripción primera.

15. BPPR es el actual tenedor de buena fe del pagaré objeto de la presente reclamación, habiéndolo adquirido por valor recibido y en el curso ordinario de sus negocios.

16. El último pago que se realizó fue el correspondiente al pago vencedero el día 1 de mayo de 2014.

17. En virtud del referido pagaré que BPPR tiene en su poder y la referida escritura de hipoteca se adeuda a BPPR la suma de $29,812.65 por concepto de principal, más intereses al tipo pactado de 7.000% anual desde el 1 de mayo de 2014. Dichos intereses continúan acumulándose hasta el pago total de la obligación. Además se adeuda a BPPR los cargos por demora equivalentes a 4.000% de la suma de aquellos pagos con atrasos en exceso de 15 días calendarios de la fecha vencimiento; los créditos accesorios y adelantos hechos en

virtud de la escritura de hipoteca; y las costas, gastos y honorarios de abogado equivalentes a $13,292.50.

18. En cumplimiento con las disposiciones de la Ley Hipotecaria se tasó la propiedad en una cantidad equivalente a $132,925.00 para que sirva de tipo mínimo en la eventualidad de que se celebre una venta judicial.

19. Se le advierte a la parte demandada que la parte demandante se propone hacer anotar en el Registro de la Propiedad de Guaynabo un aviso de que el pleito a que se refiere esta Demanda está pendiente.

**POR TODO LO CUAL**, respetuosamente se solicita del Honorable Tribunal, que, previo los trámites de ley, declare esta Demanda CON LUGAR y en virtud de la misma dicte Sentencia proveyendo lo siguiente:

a.     Que determine a la parte demandada a satisfacer en forma solidaria a BPPR las partidas reclamadas en el párrafo número 17 de este escrito más intereses según provisto por la Regla 44.3 de las de Procedimiento Civil.

b.     Que ordene la venta en pública subasta de la propiedad antes descrita para aplicar el importe de la venta al saldo de la deuda incluyendo los gastos de la venta judicial y la suma pactada para costas, gastos y honorarios de abogado en que se incurra como consecuencia de este Procedimiento.

c.     Que de quedar algún remanente del importe de la venta del inmueble hipotecado éste sea depositado en la Secretaría del Tribunal para ser entregado a la parte demandada.

d.     Que se dicte cualquier otra providencia que en derecho proceda.

**RESPETUOSAMENTE SOMETIDO.**

En San Juan Puerto Rico, a 22 de Enero de 2016.

**MARTÍNEZ & TORRES LAW OFFICES, P.S.C.**
P.O. Box 192938
San Juan, Puerto Rico  00919-2938
Tel (787) 767-8244
Fax (787) 767-1183

Por: **Irelís Pérez Nieves**
Correo Electrónico: iperez@martineztorreslaw.com
Número de RUA: 17137
Número de Colegiado: 18545

14-10-202702

App. Ap. pp.27

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 11-06637 MCF |
| JUAN CARLOS BALCELLS GALLARETA | CHAPTER 7 |
| Debtor(s) | |
| BANCO POPULAR PUERTO RICO - MORTGAGE DIVISION | 11 USC 362 d(1) d(2) |
| Movant | Relief from stay for cause |
| JUAN CARLOS BALCELLS GALLARETA and Chapter 7 Trustee, NOREEN WISCOVITCH-RENTAS | |
| Respondent(s) | |

## MOTION FOR RELIEF FROM STAY

TO THE HONORABLE COURT:

Comes now, BANCO POPULAR PUERTO RICO - MORTGAGE DIVISION, secured creditor, represented by the undersigned attorney who respectfully pray and state as follows:

1.    Jurisdiction over subject matter is predicated on section, 1334 and 157(b) 2(G), 28 USC.

2.    The cause of action is based on section 362 d(1) and d(2), 11 USC.

3.    In this case, an Order for Relief was entered on August 05, 2011.

4.    Movant is the holder in due course of a Mortgage Note, hereinafter the (Note), for $132,925.00, bearing interest of 7%, due on January 01, 2017.  Exhibit A-1.

5.    Since the filing date, debtor account has accumulated **Post Petition** arrears as described in Exhibit (A) of this motion, Verified Statement in compliance with LBR 4001-1(d)(3) **and any other arrears that continue to accrue up to the date all post petitions arrears are paid.**

6.    Movant argues that considering what is here in above stated, cause exists for granting relief from the stay pursuant to section 362 d(1) d(2), supra, since debtor has failed to make post petition payments accordingly.

Included as Exhibit (B), is movant Verified Statement regarding the information required by the Service Member Civil Relief Act of 2003 and a Department of Defense Manpower Data Center Military Status Report.

7. Said default deprive movant to have its security interest protected as provided under the Bankruptcy Code.

8. If an order is entered granting the relief herein requested, the Chapter 7 Trustee shall be allowed to discontinue disbursements, if any were pending to the secured claim related to the note referred to in this motion an Exhibit A.

WHEREFORE, movant prays for an Order granting the Relief from Stay as requested.

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that on this date copy of this motion has been electronically filed with the Clerk of the Court using the CM/ECF system which will sent notification of such filing to debtor(s) attorney and to NOREEN WISCOVITCH-RENTAS, US Chapter 7 Trustee, and also certify that I have mailed by United State Postal Service copy of this motion to the following non CM/ECF participant to debtor(s) at theirs address of record in this case.

In San Juan, Puerto Rico, on the ⁹ day of JULY , 2015.

**CARDONA JIMENEZ LAW OFFICES, PSC**
Attorney for BANCO POPULAR PUERTO RICO -
MORTGAGE DIVISION
PO Box 9023593
San Juan, PR 00902-3593
Tels: (787) 724-1303, Fax No. (787) 724-1369
E-mail: jf@cardonalaw.com

**s/Vivian Ortiz Ponce**, USDC PR 211611
vortiz@cardonalaw.com

# BANCO POPULAR DE PUERTO RICO
## Request for Legal Action

<div style="border:1px solid">

**EXHIBIT - A**

</div>

TO: **Cardona - Jimenez Law Office**

Loan Number: 0111

     Debtor: JUAN CARLOS BALCELLS GALLARETA

     Debtor:

---

BKR #:   11-06637          Date Filed:   08/05/11

Total Payments Due:    14        Pre-Petition:  2        Post-Petition: 12

---

**Post-Petition Arrears:**

| | | | |
|---|---|---:|---:|
| 14 | Months @ | 1,105.00 | 15,470.00 |
| 0 | Months @ | 0.00 | 0.00 |
| 0 | Months @ | 0.00 | 0.00 |
| 14 | Late Charges @ | 44.20 | 618.80 |
| | **SUBTOTAL** | | $16,088.80 |
| | Attorney Fees | | 399.00 |
| | Inspections | | 0.00 |
| | Filing Fees | | 176.00 |
| | Other Charges | | 51.76 |
| | **TOTAL** | | $16,715.56 |

**NOTE:**
All reinstallment payments must be made up to the current month, including legal fees and late charges.

**DUE DATE:** 06/01/14        **PRINCIPAL BALANCE** $29,812.65

---

## STATEMENT OF ACCOUNT

| DEBTOR: | Juan C. Balcells Gallarret | BPPR NUM: | 0111 |
| --- | --- | --- | --- |
| BANKRUPTCY NUM: | 11-06637MCF | FILING DATE: | 08/05/11 |

### SECURED LIEN ON REAL PROPERTY

| | | |
| --- | --- | --- |
| Principal Balance as of | 06/01/14 | 29,812.65 |
| Accrued Interest from | 05/01/14    to    05/31/15 | 2,260.79 |

| Interest: | 7.000% | Accrued num. of days: | 390 | Per Diem: | 5.796904 | |
| --- | --- | --- | --- | --- | --- | --- |

**Monthly payment to escrow**

| Hazard | $0.00 | Taxes | $0.00 | MIP | $0.00 | |
| --- | --- | --- | --- | --- | --- | --- |
| A&H | $0.00 | Life | $0.00 | | | |

| | | | | |
| --- | --- | --- | --- | --- |
| Total montly escrow | | $0.00 | Months in arrears    12 | Escrow in arrears | 0.00 |
| | | | | Accrued Late Charge: | 758.96 |

**Advances Under Loan Contract:**

| Title Search | $35.00 | Tax Certificate | $0.00 | Inspection | $0.00 | 55.00 |
| --- | --- | --- | --- | --- | --- | --- |
| Other | $20.00 | | | | | |
| Legal Fees: | | | | | | 0.00 |
| Total amount owed as of | 05/31/15 | | | | | 32,887.40 |

### AMOUNT IN ARREARS

| PRE-PETTITION AMOUNT: | | | |
| --- | --- | --- | --- |
| 2 | payments of | $1,105.00    each one | 2,210.00 |
| | acummulated lated charges | | 88.40 |

**Advances Under Loan Contract:**

| Title Search | $35.00 | Tax Certificate | $0.00 | Inspection | $0.00 | 55.00 |
| --- | --- | --- | --- | --- | --- | --- |
| Other | $20.00 | | | | | |
| Legal Fees | | | | | | 0.00 |
| | | | | A = TOTAL PRE-PETITION AMOUNT | | 2,353.40 |

| POST-PETTITION AMOUNT: | | | |
| --- | --- | --- | --- |
| 10 | payments of | $1,105.00    each one | 11,050.00 |
| | Late Charge | | 670.56 |
| | | B = TOTAL POST-PETITION AMOUNT | 11,720.56 |
| | | A + B = TOTAL AMOUNT IN ARREARS | 14,073.96 |

### OTHER INFORMATION

| Next pymt due | 06/01/14 | Interest rate | 7.000% | P & I | $1,030.56 | Monthly late charge | $44.20 | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Investor | BANCO POPULAR DE PUERTO RICO | Property address | | URB. VILLA REALES E-33 GUAYNABO PR 00965 | | | | |

The subscribing representative of Banco Popular de Puerto Rico declares under penalty of perjury that according to the information gathered by Banco Popular de Puerto Rico the foregoing is true and correct.

_____

BANCO POPULAR DE PUERTO RICO

05/22/15
_____
DATE

SACCTFHA    Gerardo Caceres



## LORD TITLE SERVICE CO.

713 ANDALUCIA AVENUE PUERTO NUEVO
SAN JUAN, PUERTO RICO 00920
WWW.LORDTITLE.COM

PHONE: (787) 774-1660
FAX: (787) 782-3888
TSEARCH@LORDTITLE.COM

Notice:

**CASE:** CARDONA JIMENEZ LAW OFFICES        Gloriann Bankruptcy #11-06637

**RE:** JUAN C. BALCELLS GALLARETA               9536

**PROPERTY NUMBER:** #41852 recorded at page 250 of volume 1197 of Guaynabo,
Property Registry of Guaynabo, .

**DESCRIPTION:** URBANA: Solar radicado en la Urbanización Villas Reales, localizada
en el Barrio Santa Rosa del término municipal de Guaynabo, Puerto Rico, que se
describe en el plano de inscripción con el número, área y colindancias que se relacionan
a continuación: Número del solar 33 del bloque E, área del solar 375.42 metros
cuadrados, en lindes por el NORTE, en una distancia de 25.08 metros lineales, con el
solar #32 del mismo bloque; por el SUR, en una distancia de 25.00 metros lineales, con
el solar #34 del mismo bloque; por el ESTE, en dos alineaciones continuas que suman de
15.10 metros lineales, con parcela de uso público; y por el OESTE, en una distancia de
15.00 metros lineales, con la calle #7 de la Urbanización, también conocida como Calle
Versalles. Enclava una casa en concreto para fines residenciales. Se halla afecto este
solar par fines residenciales. Servidumbre en equidad: franja de terreno de 1.00 metros
de ancho por 25.00 metros de largo aproximadamente, que discurre a lo largo de su
colindancia Sur, la cual será utilizada para pintar, proteger la pared de su casa, dar
mantenimiento y cualquier otra reparación que sea necesaria a favor del solar #34.

**ORIGIN:** Main Property #39352 recorded at page 100 of volume 1119 of Guaynabo

**FEE SIMPLE:** Title is vested in favor of JUAN CARLOS BALCELLS GALLASSETA
and his wife AMARILIS GONZALEZ GARCIA who acquired for the purchase price of
$189,642.00 from Villas Reales S.E., pursuant to Deed #14 executed in San Juan on
December 17, 1996 before Notary Public José Carlos González Bonilla, recorded at page
250 of volume 1197 of Guaynabo, property #41852 and Inscription 1st and last.

**ENCUMBRANCES:** By its origin: Easement in favor of AAA, AEE, PRTC, Restrictive
Conditions, property #29445 of United State of America.

**BY ITSELF:** Mortgage guaranteeing a note in favor of RG Mortgage Corp. and/or its
assigns for the amount of $132,925.00 at 7% interest yearly, due on January 1, 2017,
constituted pursuant to Deed #577 executed in San Juan on December 17, 1996 before
Notary Public Heberto J. De Vizcarrondo Armstrong recorded at page 250 of volume
1197 of Guaynabo , property #41852, Inscription 1st and last.

**NOTE:** NEW INFORMATION SUBMITTED TO THE PROPERTY REGISTRY, MAY
TAKE A FEW DAYS TO BE REFLECTED INTO THE AGORA ELECTRONIC SYSTEM.
WE ARE NOT LIABLE FOR ERRORS AND / OR OMISSIONS CREATED BY THIS
SITUATION.

Run for stales attachments, including Law #12 of 2010 and federal attachments,
judgments and Electronic Daily Log up to entry of book (Agora System).

November 28, 2011                                    1111-0423

NOEL A. HERNANDEZ GUZMAN
PRESIDENT

39-F



Commonwealth of Puerto Rico

FHA CASE NO. 501-5252342-703

## ---------------MORTGAGE NOTE---------------
## ---------------PAGARE HIPOTECARIO---------------

US $132,925.00      San Juan, Puerto Rico        December 17th, 1996

1.    "Borrower" means each person signing at the end of this Note, and the
1.    "Deudor Hipotecario" significa cada persona que firma al final de este Pagaré, y sus

person's successors and assigns. "Lender" means R&G MORTGAGE CORPORATION
sucesores y cesionarios. "Acreedor Hipotecario" significa --------------------------

and its successors and assigns.--------------------------------------------------
y sus sucesores y cesionarios.------------------------------------------------------

2.    In return for a loan received from Lender, Borrower promises to pay
2.    A cambio de un préstamo recibido del Acreedor Hipotecario, el Deudor Hipotecario se

the principal sum of ONE HUNDRED THIRTY TWO THOUSAND NINE HUNDRED TWENTY FIVE
obliga a pagar la cantidad principal de  ------------------------------------------

Dollars (U.S.$132,925.00-----------), plus interest, to the order of the
                            Dólares (U.S.$ ----------), más intereses, a la orden

Lender.  Interest will be charged on unpaid principal, from the date of
del Acreedor Hipotecario.   Se cargará interese sobre el principal adeudado, desde la fecha

disbursement of the loan proceeds by Lender, at the rate of    SEVEN-------
en que el Acreedor Hipotecario desembolse el producto del préstamo a razón de

-------- per cent (  -7-  %) per year until the full amount of principal
-------- por ciento ( ------- %) anual hasta que el principal haya sido totalmente

has been paid.-----------------------------------------------------------------
pagado.-----------------------------------------------------------------------------

3.    Borrower's promise to pay is secured by a mortgage that is dated the
3.    La obligación de pagar del Deudor Hipotecario está garantizada por una hipoteca, otor-

same date as this Note and called the "Security Instrument".  The Security
gada en la misma fecha de este Pagaré, denominada "Hipoteca".  La Hipoteca protege al Acree-

Instrument protects the Lender from losses which might result if Borrower
dor Hipotecario de pérdidas que podrían resultar si el Deudor Hipotecario incumpliere con los

defaults under this Note.-------------------------------------------------------
términos de este Pagaré.-----------------------------------------------------------

4.    (A)  Borrower shall make a payment of principal and interest to Lender
4.    (A)  El Deudor Hipotecario hará un pago de principal más intereses, al Acreedor Hipo-

on the first day of each month beginning on   FEBRUARY      , 19 97 .  Any
tecario el primer día de cada mes, comenzando en ----------- de 19 --   Cualquier prin-

principal and interest remaining on the first day of  JANUARY , 2017 , will
cipal más intereses adeudados al día primero de ----------del 20 --   vencerá en esa

be due on that date, which is called the maturity date.----------------------
misma fecha que es denominada la fecha de vencimiento.------------------------------

      (B)  Payment shall be made at the address notified to Borrower at
      (B)   El pago será efectuado en la dirección notificada al Deudor Hipotecario en el

closing or at such place as Lender may designate in writing by notice to
cierre o en cualquier otro lugar que el Acreedor Hipotecario designe por escrito con notifi-

Borrower.-----------------------------------------------------------------------
cación al Deudor Hipotecario.-------------------------------------------------------

      (C)  Each monthly payment of principal and interest will be in the
      (C)   Cada pago mensual de principal más intereses será por la cantidad de

amount of ONE THOUSAND THIRTY DOLLARS AND FIFTY SIX CENTS ------ (U.S.$1,030.56-----).
---------------------------------------------------------------(U.S.$ --------- ).

This amount will be part of a larger monthly payment required by the Secu-
*Esta cantidad as parte de un pago mensual mayor, requerido por la Hipoteca que será apli-*

rity Instrument, that shall be applied to principal, interest and other
*cado al principal, intereses y a otros conceptos en el orden descrito en la Hipoteca.--------*

items in the order described in the Security Instrument. --------------------

5.   Borrower has the right to pay the debt evidenced by this Note, in
5.   *El Deudor Hipotecario tiene el derecho de pagar la deuda evidenciada por este Pagaré,*

whole or in part, without charge or penalty, on the first day of any month.
*total o parcialmente, sin recargo ni penalidad, el primer día de cualquier mes.  El Acreedor*

Lender shall accept prepayment on other days provided that Borrower pays
*Hipotecario aceptará el prepago cualquier otro día siempre que el Deudor Hipotecario pague*

interest on the amount prepaid for the remainder of the month to the extent
*intereses en la cantidad prepagada por el resto del mes requerido por el Acreedor Hipotecario*

required by Lender and permitted by regulations of the Secretary.  If
*y permitido por la reglamentación del Secretario.  Si el Deudor Hipotecario hace prepagos*

Borrower makes a partial prepayment, there will be no changes in the due
*parciales, no habrá cambios en la fecha de vencimiento o la cantidad de pago mensual a menos*

date or in the amount of monthly payment unless Lender agrees in writing to
*que el Acreedor Hipotecario acepte los cambios por escrito.-----------------------------------*

those changes.-------------------------------------------------------------------

6.   (A)  If Lender has not received the full monthly payment required by
6.   (A)  *Si el Acreedor Hipotecario no hubiere recibido el pago total mensual requerido*

the Security Instrument, as described in Paragraph 4(C) of this Note, by
*por la Hipoteca, tal como se describe en el párrafo 4(c) de este Pagaré, al cabo de quince*

the end of fifteen (15) calendar days after the payment is due, Lender may
*(15) días calendarios después del vencimiento del pago, el Acreedor Hipotecario podrá cobrar*

collect a late charge in the amount of four percent (4.00%) of the overdue
*un recargo por demora en la cantidad de un cuatro por ciento (4.00%) de la suma atrasada de*

amount of each payment.-----------------------------------------------------------
*cada pago.-----------------------------------------------------------------------*

     (B)  If Borrower defaults by failing to pay in full any monthly pay-
     (B)  *Si el Deudor Hipotecario incumpliere por no efectuar el pago completo de cual---*

ment, then Lender may, except as limited by regulations of the Secretary
*quier pago mensual, entonces, el Acreedor Hipotecario podrá, sujeto a las limitaciones regla-*

in the case of payment defaults, require immediate payment in full of the
*mentarias del Secretario para el caso de incumplimiento por falta de pago, exigir el pago*

principal balance remaining due and all accrued interest.  Lender may
*total inmediato del saldo impagado del principal y de todos los intereses acumulados.  El*

choose not to exercise this option without waiving its rights in the event
*Acreedor Hipotecario podrá elegir no ejercitar esta opción sin renunciar a sus derechos en*

of any subsequent default.  In many circumstances regulations issued by the
*caso de cualquier incumplimiento subsiguiente.  En muchas circunstancias las reglamentaciones*

Secretary will limit Lender's rights to require immediate payment in full
*emitidas por el Secretario limitan los derechos del Acreedor Hipotecario para exigir el pago*

in the case of payment defaults.  This Note does not authorize acceleration
*total inmediato por incumplimiento en el pago de plazos vencidos.  Este Pagaré no autoriza la*

when not permitted by HUD regulations.  As used in this Note, "Secretary"
*aceleración de su vencimiento cuando los reglamentos de HUD no lo permitan.  Tal como se usa*

means the Secretary of Housing and Urban Development or his or her
*en este Pagaré, la palabra "Secretario" significa el Secretario del Departamento de*

designee.-------------------------------------------------------------------------
*Desarrollo Urbano y Vivienda de los Estados Unidos de América o su representante.------------*

Page 2 of 4          PR Form Rev August 1996

(C) If Lender has required immediate payment in full, as described
(C) Si el Acreedor Hipotecario ha exigido el pago total inmediato, según se describe

above, Lender may require Borrower to pay costs and expenses including rea-
anteriormente, podrá requerirle al Deudor Hipotecario que pague costas y gastos, incluyendo

sonable and customary attorney's fees for enforcing this Note to the extent
honorarios de abogado razonables y acostumbrados, hasta el máximo por la ley aplicable para

not prohibited by applicable law. Such fees and costs shall bear interest
exigir el cumplimiento de este Pagaré. Dichos honorarios, costas y gastos devengarán

from the date of disbursement at the same rate as the principal of this
intereses, desde el día de su desembolso, al mismo tipo que el principal de este Pagaré.-----

Note.--------------------------------------------------------------------
----------------------------------------------------------------------------

7.  Borrower and any other person who has obligations under this Note
7.  El Deudor Hipotecario y cualquier otra persona que esté obligada bajo este Pagaré,

waive the rights of presentment and notice of dishonor.  "Presentment"
renuncian a los derechos de presentación y aviso de rechazo.  "Presentación" significa el

means the right to require Lender to demand payment of amounts due.
derecho de requerirle al Acreedor Hipotecario que demande el pago de las cantidades vencidas.

"Notice of Dishonor" means the right to require Lender to give notice to
"Aviso de Rechazo" significa el derecho de requerirle al Acreedor Hipotecario notificar a

other persons that amounts due have not been paid.----------------------
otras personas que las cantidades vencidas no han sido pagadas.-----

8.  Unless applicable law requires a different method, any notice that
8.  Salvo que el Derecho aplicable requiera un método distinto, cualquier notificación que

must be given to Borrower under this Note will be given by delivering it or
deba hacerse al Deudor Hipotecario bajo este Pagaré se hará mediante entrega o por correo de

by mailing it by first class mail to Borrower at the Property address below
primera clase, dirigida al Deudor Hipotecario, a la dirección de la Propiedad abajo indicada

or at a different address if Borrower has given Lender a notice of Borrow-
o a una dirección diferente, si el Deudor Hipotecario le ha notificado al Acreedor Hipoteca-

er's different address.--------------------------------------------------
rio de una dirección diferente.-----------------------------------

Any notice that must be given to Lender under this Note will be given
Cualquier notificación que se deba hacer al Acreedor Hipotecario bajo este Pagaré le

by first class mail to Lender at the address stated in Paragraph 4(B) or at
será hecha por correo de primera clase a la dirección expresada en el Párrafo 4(B) o a una

a different address if Borrower is given a notice of that different
dirección diferente si al Deudor Hipotecario le ha sido notificada una dirección diferente.--

address.------------------------------------------------------------------
----------------------------------------------------------------------------

9.  If more than one person signs this Note, each person is fully and
9.  Si más de una persona firma este Pagaré, cada una queda total y personalmente obligada

personally obligated to keep all of the promises made in this Note, includ-
a cumplir todos los compromisos contraídos en este Pagaré, incluyendo el de pagar la cantidad

ing the promise to pay the full amount owed.  Any person who is a guaran-
total adeudada.  Cualquier persona que sea garantizadora, fiadora o endosante de este Pagaré

tor, surety or endorser of this Note is also obligated to do these things.
está también obligada a cumplir lo estipulado.  Cualquier persona que asume estas obligacio-

Any person who takes over these obligations, including the obligations of a
nes, incluyendo las obligaciones de un garantizador, fiador o endosante de este Pagaré, tam-

guarantor, surety or endorser of this Note, is also obligated to keep all
bién está obligada a cumplir todos los compromisos contraídos en el mismo.  El Acreedor

of the promises made in this Note.  Lender may enforce its rights under
Hipotecario podrá hacer valer sus derechos bajo este Pagaré en contra de cada persona indivi-

this Note against each person individually or against all signatories

ualmente o en contra de todos los signatarios conjuntamente. A cualquier suscribiente de

**together.** Any one person signing this Note may be required to pay all of
este Pagaré le podrá ser requerido el pago de todas las cantidades adeudadas bajo el mismo.

**the amounts owed under this Note.**---------------------------------------------
--------------------------------------------------------------------------------

BY SIGNING BELOW, Borrower accepts and agrees to the terms and cove-
AL SUBCRIBIR este Pagaré el Deudor Hipotecario acepta y está de acuerdo con los térmi-

**nants contained in this Note.**-----------------------------------------------
nos y pactos contenidos en el mismo.------------------------------------------

This Note is secured by a mortgage executed by Deed number ---577---
Este Pagaré está garantizado por Hipoteca constituida por la Escritura Número -------

**of this same date before the subscribing Notary.**--------------------------
otorgada en esta misma fecha ante el Notario suscribiente.-----------------------

In San Juan----------, Puerto Rico, on December 17th,--------19 96.
En ---------------, Puerto Rico, a --------------------- de 19 ---

LOQUE E LOTE 33
RB. VILLA REALES                    _____
UAYNABO, PUERTO RICO                JUAN CARLOS BARCELLS GALLARRETA


                                    _____
                                    AMARILIS GONZALEZ GARCIA


                                    _____
                                    Borrower(s)
                                    Deudor(es) Hipotecario(s)

**Property Address**
Dirección de la Propiedad


**Affidavit Number 18,560**
Afidávit Número -------

---Subscribed to before me by the issuers, who are of legal age, married
to each other, property owners and residents of Bayamón, Puerto Rico, on
the date and place above mentioned.

PAY TO THE ORDER OF                 Pay to the order of

BPPR                                without recourse
                                    BANCO POPULAR DE PUERTO RICO

WITHOUT RECOURSE
R&G Mortgage Corp.

By: _____

FHA CASE NO. 501-5252342-703

---NUMBER FIVE HUNDRED SEVENTY SEVEN (577)------------
---Número-----

------------------FIRST MORTGAGE------------------
------------------PRIMERA HIPOTECA------------------

---In San Juan------------, Commonwealth of Puerto
---En ------------, Estado Libre Asociado de

Rico, this seventeen (17)---day of December-------
Puerto Rico, el ------------de------------ de Mil

Nineteen Hundred and Ninety- six (1996).----------
Novecientos Noventa y ------------

------------------BEFORE ME------------------
------------------ANTE MI------------------

HEBERTO J. DE VIZCARRONDO ARMSTRONG--, Notary Public in
------------, Notario Público de

Puerto Rico, with offices at LIFETIME BUILDING, QUISQUEYA
Puerto Rico, con oficinas en AVENUE, HATO REY, PUERTO RICO---

and residence in San Juan------------, Puerto Rico.
y residencia en ------------, Puerto Rico.

------------------APPEAR------------------
------------------COMPARECEN------------------

---The parties mentioned in Paragraphs Ninth and
---Las partes nombradas en los Párrafos Noveno y Décimo de esta

Tenth of this Deed, hereinafter called the "Bor-
Escritura, denominadas de aquí en adelante "Deudor Hipotecario"

rower" and the "Lender", whose personal circum-
y "Acreedor Hipotecario", cuyas circunstancias personales apa-

stances are set forth in said paragraphs.----------
recen en dichos párrafos.------------,

---The appearing parties assure me that they are
Asegúranme los comparecientes hallarse en el pleno goce de sus

in the full exercise of their civil rights without
derechos civiles, sin que me conste nada en contrario, y

anything to the contrary being known to me, and
teniendo a mi juicio la capacidad legal necesaria para este

being in my judgment legally competent to execute
otorgamiento, libremente------------

this document, they freely------------
------------

------------------STATE AND COVENANT------------------
------------------DECLARAN Y CONVIENEN------------------

FIRST: That the Borrower is the owner of the
PRIMERO: Que el Deudor Hipotecario es dueño de la propiedad o

property or properties described in Paragraph
propiedades descritas en el Párrafo Octavo de esta Escritura,

Eighth of this Deed, hereinafter called the "Prop-
denominada en lo sucesivo la "Propiedad" y tiene el derecho

erty" and has the right to mortgage the Property;
de hipotecar la Propiedad; que la Propiedad está libre de

that the Property is unencumbered, except for
cargas y gravámenes, excepto por las cargas inscritas y que el

Page 1 of 31          Puerto Rico Revised Form August 1996

encumbrances of record and that the Borrower will
Deudor Hipotecario garantizará y defenderá su título a la Pro-

warrant and defend the title to the Property
piedad contra toda reclamación y demanda.------------------

against all claims and demands.--------------------
-----------------------------------------------------------

**SECOND:** That as evidence of a loan received from
**SEGUNDO:** Que como evidencia de un préstamo recibido del Acree-

Lender, the Borrower as of this date has sub-
dor Hipotecario, el Deudor Hipotecario ha suscrito en esta

scribed a promissory note in the sum of ONE ------
misma fecha un pagaré por la suma de

HUNDRED THIRTY TWO THOUSAND NINE HUNDRED TWENTY

FIVE -------------------------------------------------

Dollars (US $ 132,925.00---------- ) with interest at
Dólares (US $ -------------- ) con intereses a razón del

the rate of   SEVEN --------------------     percent
-------------------     por ciento ( -------- %) anual,

( -7- %) per annum until the total satisfaction
hasta el saldo total del mismo, pagadero a favor de -----------

of the same, payable to   R&G MORTGAGE CORPORATION
------------------------------------- o a su orden y

------------------------- or its order, the principal
pagadero el principal e intereses en plazos mensuales ---------

and interest being payable in monthly installments
de -------------------------------------------------------

of ONE THOUSAND THIRTY DOLLARS AND FIFTY SIX CENTS -------
---------------------------------------------------------

Dollars (US $ 1,030.56----)-commencing on the first
Dólares (US $ -------------- ) comenzando el día primero de

day of   FEBRUARY  ,   Nineteen Hundred Ninety- Seven
de Mil Novecientos Noventa y   --------------

(1997 ) and a like amount on the first day of each
(199 _) e igual cantidad en cada uno de los días primero de

succeeding month until full payment of the debt,
cada mes subsiguiente hasta el pago total de la deuda, la cual

which if not paid earlier, will be totally due and
si no es pagada antes, será totalmente vencedera y pagadera el

payable on the first day of   JANUARY     , Two
primer día de   ------------   del-----------------------

Thousand Seventeen --------------- (20 17) authenticated by
Dos Mil --------------------- (20_17_ ) autenticado por el

the authorizing Notary, as per Affidavit Number
Notario autorizante, bajo Afidávit Número
EIGHTEEN THOUSAND FIVE HUNDRED SIXTY (18,560)-----

**THIRD:**  In order to guarantee the total and com-
**TERCERO:**  Con el propósito de garantizar el total y completo

plete payment of the debt as evidenced by the
pago de la deuda que evidencia el pagaré descrito anteriormente,

above described promissory note, as well as each
así como todas y cada una de las condiciones que el mismo con-

translations.---------------------------------------------
------------------------------------------------------------
**EIGHTH:  Description and Registration Data of th**
OCTAVO:  Descripción y Datos de Inscripción de la Propiedad
**Property.**------------------------------------------------
------------------------------------------------------------

---**URBANA:  Solar radicado en la Urbanización
Villas Reales, localizada en el Barrio Santa Rosa
del término municipal de Guaynabo, Puerto Rico,
que se describe en el plano de inscripción, con el
número, área y colindancias que se relacionan a
continuación:**-----------------------------------------

---**NUMERO DEL SOLAR:  TREINTA Y TRES (33) DEL
bloque "E" (E-33)**------------------------------------

---**AREA DEL SOLAR:  TRESCIENTOS SETENTA Y CINCO
PUNTO CUARENTA Y DOS (375.42) METROS CUADRADOS.**--

---**EN LINDES:  por el NORTE, en una distancia de
veinticinco punto cero siete (25.08) metros
lineales, con el Solar Número Treinta y Dos (32)
del mismo Bloque; por el SUR, en una distancia de
veinticinco (25.00) metros lineales, con el solar
Número Treinta y Cuatro (34) del mismo bloque; por
el ESTE, en dos alineaciones continuas que suman
quince punto diez (15.10) metros lineales, con
parcela de uso público; y por el OESTE, en una
distancia de quince (15.00) metros lineales, con
la Calle Número Siete (7) de la Urbanización,
también conocida como "Calle Versalles".**---------

---**Enclava una casa en concreto para fines
residenciales.**--------------------------------------

---**Se halla afecto este solar la(s) para fines
residenciales(s):**-----------------------------------

---**SERVIDUMBRE EN EQUIDAD:  Franja de terreno de un
(1.50) metro de ancho por veinticinco (25.00)
metros de largo aproximadamente, que discurre a lo
largo de su colindancia SUR, la cual será
utilizada para pintar, proteger la pared de su
casa, dar mantenimiento y cualquier otra
reparación que sea necesaria a favor del solar
número Treinta y Cuatro (34).**-----------------------

---**Segregación de la finca número treinta y tres
mil cuatrocientos noventa y tres (33,493) inscrita
al folio doscientos cuarenta y dos (242) del tomo
novecientos diecisiete (917), de Guaynabo,
inscripción cuarta y última, Registro de la
Propiedad de Guaynabo.**------------------------------

---------------BLOQUE E LOTE 33----------------------
----------------URB. VILLA REALES--------------------
----------------GUAYNABO, PUERTO RICO----------------

------------------------------------------------------------

------------------------------------------------------------

------------------------------------------------------------

**NINTH:** **Borrower (Notary's Personal Knowledge or**
**NOVENO:** **Deudor Hipotecario (Fe Notarial de Conocimiento Perso-**

**Form of Identification.**
**nal o Identificación).**

---JUAN CARLOS BARCELLS GALLARRETA, Social
Security "5        ", and his wife, AMARILIS
GONZALEZ GARCIA, Social Security "        ",
both of legal age, property owners and residents
of Bayamón, Puerto Rico.---
---I, the Notary, hereby certify that not being
personally acquainted with the borrowers I have
identified them in accordance to the Notarial Law
by their Puerto Rico's Drivers License, (JUAN
CARLOS) Number "1338929" and (AMARILIS) Number
"1604534", respectively contained their
signatures and photographs.---

App. Ap. pp.40

**TENTH:** Lender (Notary's Personal Knowledge o
DECIMO: Acreedor Hipotecario (Fe Notarial de Conocimient

Form of Identification). Lender is--------------
Personal o Identificación). El Acreedor Hipotecario es -----

---R&G MORTGAGE CORPORATION Employer Number
"             ", and in its place and stead,
ISMENIA ISIDOR RODRIGUEZ, of legal age, married,
executive and resident of Guaynabo, Puerto Rico,
who is personally known to the undersigned Notary
Public and who appears pursuant to that certain
Corporate Resolution executed by its Secretary,
Ana María Armendariz Camps on January eleventh
(11th) nineteen hundred ninety six (1996) under
Affidavit Number "32,240" before Notary Public
Francisco M. Vázquez Santoni.----------------------

EVENTH:  **Homestead Rights; Waiver**.  To further
CTINO:  **Hogar Seguro; Renuncia**.  Para mayor garantía de pago

cure payment of the Note, Borrower, in confor-
l Pagaré, el Deudor Hipotecario, de conformidad con las leyes

ty with the laws of the Commonwealth of Puerto
l Estado Libre Asociado de Puerto Rico, expresamente renuncia

.CO, expressly waives in favor of Lender his
favor del Acreedor Hipotecario su derecho de hogar seguro so-

omestead and property rights, with all of the
e la Propiedad con todos los usos y derechos que en la actua-

ses and rights which he presently possesses or
lidad posee o que pueda poseer en el futuro, expresamente

ay in the future possess therein, expressly waiv-
renunciando a favor de. Acreedor Hipotecario todos sus títulos,

ng in favor of Lender all of his titles, rights
erechos e intereses de cualquier clase o descripción en la

und interests of any kind or description in the
ropiedad y en los edificios en ella construidos, que actual-

Property and in the buildings constructed thereon,
ente o en el futuro posea.-------------------------------------

which he presently possesses or may in the future
-----------------------------------------------------------------

possess.-----------------------------------------------------

-----------------------ACCEPTANCE---------------------
---------------------ACEPTACIÓN---------------------------

---The appearing parties, Lender and Borrower,
--Los comparecientes, Acreedor y Deudor Hipotecario, aceptan

accept this Deed in its entirety and I, the
esta Escritura en su totalidad y Yo, el Notario, les hice las

Notary, made to the appearing parties the neces-
advertencias legales pertinentes a su otorgamiento.  Yo, el

sary legal warnings concerning its execution.  I,
Notario, advertí a los comparecientes de su derecho a tener

the Notary, advised the appearing parties as to
testigos presentes en este otorgamiento, a cuyo derecho renun-

their right to have witnesses present at this
ciaron.  Luego de haber sido leída esta Escritura por los

execution, which right they waived.  The appearing
comparecientes, la ratifican totalmente y confirman que las

parties, having read this Deed in its entirety,
declaraciones contenidas en la misma reflejan fiel y exacta-

fully ratify and confirm the statements contained
ente sus estipulaciones, pactos y convenios, por lo que los

herein as the true and exact embodiment of their
comparecientes firman esta Escritura ante mí, el Notario, y

stipulations, covenants and agreements, whereupon
escriben sus iniciales en todas y cada una de sus páginas.-----

the appearing parties sign this Deed before me,
-----------------------------------------------------------------

Page 30 of 31          Puerto Rico Revised Form August 1996

the Notary, and place their initials on each an~
-----------------------------------------------------
every page of this Deed.---------------------------

---I, the Notary, do hereby certify and Attest a~
---Yo, el Notario, por la presente certifico y DOY FE de tod~

to everything stated or contained in this Deed.--
lo declarado y contenido en esta Escritura.-----------------


SIGNED:    JUAN CARLOS BARCELLS GALLARRETA
           AMARILIS GONZALEZ GARCIA
           ISMENIA ISIDOR RODRIGUEZ


---- SIGNED, SEALED, MARKED AND FLOURISHED ----

------ HEBERTO J. DE VIZCARRONDO ARMSTRONG------

------------------- NOTARY PUBLIC ----------------

-----------------------------------------------------
-----------------------------------------------------
-----------------------------------------------------
-----------------------------------------------------
-----------------------------------------------------
-----------------------------------------------------
-----------------------------------------------------
-----------------------------------------------------
-----------------------------------------------------
-----------------------------------------------------
-----------------------------------------------------
-----------------------------------------------------
-----------------------------------------------------
-----------------------------------------------------

Page 31 of 31                 Puerto Rico Revised Form August 1996

I Hereby Certify, that this is a true and
exact copy of it's Original and of the
Certified copy that has been submitted
for recording in the corresponding
Property Registry.

**EXHIBIT B**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

**IN THE MATTER OF:**

JUAN CARLOS BALCELLS GALLARETA

CASE NO. 11-06637 MCF

CHAPTER 7

**Debtor(s)**

## VERIFIED STATEMENT

I, José F. Cardona Jiménez of legal age, single, Attorney for Banco Popular Puerto Rico and resident of San Juan, Puerto Rico, declare under penalty of perjury as follows:

That as to this date  July 06, 2015, by a search and review of the records kept by BANCO POPULAR PUERTO RICO - MORTGAGE DIVISION in the regular course of business in regard to debtor account with this bank there is no information that will lead the undersign to belief that debtor is a regular service member either on active duty or under a call to active duty, in the National Guard or as a Commission Officer of the Public Health Services or the National Oceanic and Atmospheric Administration (NOAA) in active duty.

The bank has not received any written notice from debtor that his military status has change as to this date.

That as part of my search I examined the documents and records available to me within our computer system.

IN TESTIMONY WHEREOF I SIGN THESE PRESENTS under penalty of perjury, in San Juan, Puerto Rico this 6 th day of July, 2015.

Department of Defense Manpower Data Center



## Status Report
## Pursuant to Servicemembers Civil Relief Act

**Last Name:** BALCELLS GALLARETA

**First Name:** JUAN

**Middle Name:** CARLOS

**Active Duty Status As Of:** Jul-06-2015

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Mary M. Snavely-Dixon

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

PAG. 01                          ESTADO LIBRE ASOCIADO DE PUERTO RICO
                                    TRIBUNAL DE PRIMERA INSTANCIA
                                         SALA DE BAYAMON

     GONZALEZ GARCIA, AMARILIS
     ---------------------------------------                CASO NUM:  D DI2006-4055
                    DEMANDANTE                                SALON: 3005
                       VS.
     BALCELLS GALLARRETA, JUAN CARLOS          DIVORCIOS
     ---------------------------------------       TRATO CRUEL
                    DEMANDADO                      CAUSAL/DELITO

     LIC. PEÑAGARICANO KINDRATIW VERA T
     2 CALLE TABONUCO
     GAM TOWER OFICINA 203
     GUAYNABO,PR 00968


                        N O T I F I C A C I O N


          CERTIFICO QUE EN RELACION CON CASO DE EPIGRAFE ----------------- EL DIA
     21 DE ABRIL DE 2016      EL TRIBUNAL DICTO LA RESOLUCION ------------ QUE SE
     TRANSCRIBE A CONTINUACION:


                         (VEASE RESOLUCIÓN INCLUIDA)




                        FDO.   LESLIE J HERNANDEZ CRESPO
                                      JUEZ

          CERTIFICO  ADEMAS QUE EN EL DIA DE HOY  ENVIE POR CORREO  COPIA DE ESTA
     NOTIFICACION A LAS SIGUIENTES PERSONAS A SUS DIRECCIONES INDICADAS, HABIENDO
     EN ESTA MISMA FECHA ARCHIVADO EN LOS AUTOS COPIA DE ESTA NOTIFICACION.

     SANCHEZ BAÑO MARIA L
     LEVITTOWN
     2674 PASEO AGUILA
     TOA BAJA,PR 00950

     MARCHESE TORRES RITA
     PO BOX 50459
     TOA BAJA,PR 00950-0459


App. Ap. pp.47

PAG. 02

CASO NUM:D DI2006-4055
SALON:3005

SHORTER GARCÍA RICHARD J.
P O BOX 838
GUAYNABO,PR 00970-0838

PROGRAMA RELACIONES DE FAMILIA
TS EVELYN VÁZQUEZ
TRIB FAM Y MENORES 2DO PISO
BAYAMON PR 00999

TRIBUNAL SUPREEMO
LCDO JUAN E DÁVILA RIVERA
PO BOX 9022392
SAN JUAN PR 00902-2392

EN BAYAMON, PUERTO RICO, A 25 DE ABRIL DE 2016.

RUTH APONTE COTTO
-------------------------------------------
                            SECRETARIO
POR: MARIBEL KUILAN GUZMAN
-------------------------------------------
                  SECRETARIO AUXILIAR

O.A.T.750-NOTIFICACION DE RESOLUCIONES Y ORDENES

App. Ap. pp.48

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**RELACIONES DE FAMILIA Y MENORES**
**REGIÓN JUDICIAL DE BAYAMÓN**

| | |
|---|---|
| **AMARILIS GONZÁLEZ GARCÍA**<br>Demandante<br><br>**Vs.**<br><br>**JUAN CARLOS BALCELLS GALLARRETA**<br>Demandado | Civil Núm.: **DDI2006-4055**<br><br>Sala: **3005**<br><br>Sobre: **DIVORCIO(TC)** |

**RESOLUCIÓN**

Examinado el expediente de este caso el Tribunal a tenor con la Regla 15 del Tribunal Supremo de Puerto Rico en sus incisos (c) y (d), 4 LPRA Ap. XXI-B R. 15(c) y (d), se refiere a la Lcda. Amarilis González García al Tribunal Supremo. La percepción del Tribunal no es que el incumplimiento de la abogada con las órdenes del Tribunal sea por mera voluntad sino por una condición mental y emocional que en efecto le impide entender los procedimientos de este caso.

El 17 de abril de 2015, el Tribunal notificó una *Resolución y Orden* en donde se incluyeron las razones por las que se había descalificado a la parte demandante para auto representarse. Por entender que las mismas son pertinentes a la decisión que tomamos en el día de hoy, las reproducimos textualmente como se incluyeron en la *Resolución y* Orden mencionada emitida por la Juez asignada al caso en aquel entonces la Hon. Wanda Soler Fernández. Las razones fueron las siguientes:

> ➢ **Desacatar órdenes del Tribunal dirigidas a proteger la educación de los menores y el pago de la hipoteca de la propiedad en la que residen los menores.**
> ➢ **No proveer información correcta al Tribunal.**
> ➢ **Reírse de forma irrespetuosa mientras la Juez se está dirigiendo a las partes (en más de una ocasión)**
> ➢ **Indicar que está en estado de indefensión, porque no tiene representación legal.**
> ➢ **No conseguir representación legal, a pesar que desde el 27 de febrero de 2014, se le concedió un término de diez (10) días, los cuales están vencidos desde el 10 de marzo de 2014.**
> ➢ **Insistir en comparecer por derecho propio, a pesar de habérsele indicado que no podía continuar haciéndolo.**

Por las razones expuestas se le impusieron a la parte demandante $300 en sanciones a ser pagada en favor del estado. La Juez que emitió la *Resolución y Orden*

citada, por la cantidad de sanciones que le había impuesto a la demandante por su conducta temeraria y por las veces que le tuvo que llamar la atención durante el caso. Procedió entonces la Juez a inhibirse voluntariamente del caso para así evitar cualquier apariencia de imparcialidad al amparo de las disposiciones del Canon XII de Ética Judicial y la Regla 63.1(j) de Procedimiento Civil. La Juez Soler Fernández aclaró en la *Resolución y Orden* que a pesar de todas las medidas que había tomado hasta aquel momento en contra de la demandante, la mayoría de las <u>adjudicaciones</u> en el caso habían sido a su favor y habían sido sostenidas en el Tribunal de Apelaciones.

Luego de varios trámites procesales, el 30 de junio de 2015 el Tribunal emitió *Orden*, notificada el 2 de julio de 2015, en la que le concedió 10 días a la parte demandante para indicar las razones por las cuales no se le debían imponer $300 de sanciones ante su incumplimiento con las órdenes del Tribunal, en específico las dictadas en corte abierta el 8 de junio de 2015, y notificadas mediante Minuta el 11 de junio de 2015; y las órdenes adicionales de 11 de junio de 2015, y 18 de junio de 2015. La *Orden* se emitió al amparo de la Regla 39.2 (a) de Procedimiento Civil. El 9 de noviembre de 2015 el Tribunal emitió *Resolución,* notificada a las partes el 13 de noviembre de 2015, en la que se expresó lo siguiente:

> **Ante el reiterado incumplimiento de la parte demandante con las órdenes del Tribunal; y ante el incumplimiento con el pago de las sanciones impuestas en este caso, el Tribunal, conforme a la Regla 39.2 (a) de Procedimiento Civil, elimina las alegaciones de la demandante, Amarilis González García. Esta decisión se toma luego de un ponderado análisis del tracto procesal del caso y de los repetidos incumplimientos de dicha parte.**

El 14 de marzo de 2016, se celebró una vista urgente en este caso ante el Tribunal. La demandante compareció representada por su Abogado de Oficio Lcdo. Richard J. Shorter García. El demandado compareció junto a su representación legal, la joven adulta Alexandra Balcells González compareció representada por su Abogada de Oficio Lcda. María L. Sánchez Baño. El joven Juan Francisco Balcells González, compareció representado por su Defensora Judicial Lcda. Rita Marchese Torres.

Durante la vista la joven adulta Alexandra Balcells expresó que no aceptaba la representación legal de la licenciada Sánchez Baño porque tenía un acuerdo con su padre, además de que la persona que designó a los abogados de oficio y la defensora judicial es pariente y madre de la     mejor amiga del demandado. El Tribunal hizo

constar que fue la Juez que presidía la sala quien designó a los abogados de oficio y a la defensora judicial de un listado que administra la Juez Marina Durán. El Tribunal expresó que no dudaba de la competencia de los abogados nombrados y entendía que son probos como abogados y podían realizar una labor adecuada en el caso. Entendió además el Tribunal, que la demandante debía estar representada en este acto, al igual que la joven adulta y que el menor necesitaba un defensor judicial.

La licenciada Marchese Torres expresó durante la vista que por entender que existía un potencial de causar daño profesional solicitaba que se eliminara su designación como defensora judicial del menor en el caso. El licenciado Shorter García solicitó por escrito que se le relvara de su designación de abogado de oficio el 4 de marzo de 2016, el Tribunal en *Orden* emitida el 10 de marzo de 2016, notificada a las partes el día siguiente declaró No ha Lugar dicha solicitud. Durante la vista del 14 de marzo de 2016 el licenciado Shorter García informó que había presentado un recurso de reconsideración a la decisión del Tribunal sobre su solicitud de relevo de la designación de abogado de oficio en este caso.

La representante legal del demandado ante la preocupación del Tribunal, de la defensora judicial y de su cliente en cuanto a que la madre con custodia no está velando por los mejores intereses del menor, sugirió que se le entregue la custodia provisional del menor al demandado para que éste vele por los mejores intereses del menor.

La demandante expresó que tenía derecho a representarse por derecho propio. Indicó que lo que verbalizó la menor fue que existía un conflicto de intereses y no que dudaba de la capacidad de la licenciada Sánchez Baño.

Durante la vista del 14 de marzo de 2016, la demandante verbalizó que de necesitar un abogado ella lo solicitaría por sí misma, *"no permitiendo que sea mi exesposo el que tramite la selección de estos abogados"*. El Tribunal ya ha establecido para el registro la forma en que se seleccionaron los abogados de oficio y el defensor judicial en este caso. En la *Resolución y Orden* notificada el 17 de abril de 2015, el Tribunal estableció claramente que el periodo que le había concedido a la demandante para anunciar una representación legal se había vencido el 10 de marzo de 2014. En una vista de estado de los procedimientos celebrada el 8 de junio de 2015, porque



existían unos asuntos pendientes de disposición y ante una moción de la parte demandada en la que expresó que para esa vista se allanaba a que la demandante compareciera por derecho propio, el Tribunal permitió la comparecencia de la demandante por derecho propio y celebró la vista para atender y disponer de una Orden de Manejo en el caso.

En la vita del 8 de junio de 2015, el Tribual sostuvo su determinación de que la demandante debía comparecer representada por abogado al caso y le concedió un término que vencía el 19 de junio de 2015, para que anunciara su representación legal en el caso. La demandante no cumplió con esa orden del Tribunal y en una vista celebrada el 15 de diciembre de 2015 alegó que no tenía recursos para contratar representación legal, ante esa alegación el Tribunal determinó que le asignaría un abogado de oficio a la demandante. El 25 de febrero de 2016, se notificó a las partes la designación del Lcdo. Richard J. Shorter García como abogado de oficio de la demandante, a pesar de todos estos incidentes la demandante insistió en la vista celebrada el 14 de marzo de 2016 que tenía derecho a representarse por derecho propio. Como se expresó en la *Resolución y Orden* notificada el 17 de abril de 2015 un abogado que ha sido descalificado en un caso no puede comparecer al mismo después de su descalificación. Este es un hecho que debe ser fácil de entender para un abogado, la demandante es abogada de profesión e insiste en que tiene derecho a representarse por derecho propio en este caso.

La demandante además hizo inferencias sobre alegadas relaciones de amistad entre la representación legal del demandado y la Juez que estuvo asignada al caso Hon. Wanda Soler Fernández, estas eran totalmente frívolas. Después en un escrito al Tribunal de Apelaciones, la demandante intentó utilizar el segundo apellido de la juez asignada actualmente al caso para imputar una relación de consanguinidad con el esposo de la representación legal del demandado. La Juez asignada al caso estableció para el registro del Tribunal en la vista celebrada el 15 diciembre de 2015 que entre ella y el esposo de la representante legal del demandado no existe ninguna relación de consanguinidad o afinidad. Después de estos 2 incidentes en la última vista del caso tanto la joven Alexandra Balcells González como la demandante hicieron imputaciones sin prueba alguna de que la persona que designó los abogados de oficio y la defensora

judicial en el caso era una persona allegada al demandado. Este tipo de señalamientos frívolos junto con el reiterado incumplimiento de la demandante con las órdenes del Tribunal motiva al Tribunal a ejecutar los remedios que establece en esta *Resolución*.

La Regla 15 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B R. 15, en sus incisos (c) y (d) expresa lo siguiente:

**Regla 15.   Casos de incapacidad mental de abogados y abogadas**

(a) ....

(b) ....

(c) Cuando en el curso de cualquier procedimiento disciplinario de acuerdo con la Regla 14 surjan dudas sobre la capacidad mental del abogado querellado o de la abogada querellada, el tribunal, a iniciativa propia o a instancias del Procurador o Procuradora General, o de la parte querellante, nombrará a un Comisionado o Comisionada Especial, si aún no hay, para que reciba prueba sobre la incapacidad mental del abogado o de la abogada de acuerdo con la definición del término en el inciso (a) de esta regla. En estos casos se nombrará un panel de tres (3) médicos o médicas siquiatras para que examinen al abogado o la abogada y ofrezcan su testimonio pericial ante el Comisionado o Comisionada Especial. El panel de siquiatras será designado así: uno o una será nombrado o nombrada por el Comisionado o Comisionada Especial; otro u otra por el Procurador o Procuradora General de Puerto Rico, y el tercero o la tercera por el abogado querellado o la abogada querellada. Las designaciones deben hacerse dentro del término de diez (10) días desde la fecha de la notificación de la resolución del tribunal que ordene este procedimiento. Si dentro de ese término el Procurador o Procuradora General o la parte querellada no hace la designación correspondiente, el Comisionado o Comisionada Especial la hará por ellos o ellas. Una vez designado el panel de siquiatras, el Comisionado o Comisionada Especial señalará la fecha para la celebración de una vista para no más tarde de treinta (30) días a partir de la designación. Durante ese término, los o las siquiatras examinarán a la parte querellada y rendirán un informe al Comisionado o Comisionada Especial, quien notificará con copia de dicho informe al Procurador o Procuradora General y a la parte querellada. Durante la vista ante el Comisionado o Comisionada Especial, el Procurador o la Procuradora General y la parte querellada, representada por su abogado, podrán presentar sus objeciones a los informes de los o las siquiatras y habrá oportunidad de interrogar y contrainterrogarles. Durante la vista ante el Comisionado o Comisionada Especial, el Procurador o la Procuradora y la parte querellada podrán presentar otros testigos, sujetos también a contrainterrogatorio, y podrán presentar y examinar la prueba documental. No se aplicarán las reglas de descubrimiento de prueba. El Comisionado o Comisionada Especial resolverá los planteamientos sobre la admisibilidad de prueba conforme a derecho, mas no se reconocerá como privilegiada la comunicación entre la parte querellada y los siquiatras del panel. El Comisionado o la Comisionada deberá presentar su informe al tribunal, con

**copia a las partes, dentro de los treinta (30) días de celebrada la vista y la presentación final de la prueba; junto con el informe remitirá toda la prueba documental y material que hubiese sido presentada, incluyendo los informes de los o las siquiatras. La prueba presentada y no admitida deberá identificarse claramente como tal y el Comisionado o la Comisionada indicará la razón por la cual no fue admitida. Si las partes así lo determinan, podrán renunciar a la vista y someter el asunto al Comisionado o Comisionada Especial a base de los informes de los o las siquiatras. En tal caso, se podrán presentar objeciones a dichos informes dentro de los diez (10) días siguientes a su presentación, ante el Comisionado o Comisionada Especial. Este o esta deberá rendir su informe al tribunal dentro de los treinta (30) días siguientes a la presentación de los informes de los o las siquiatras o de las objeciones a tales informes, según sea el caso.**

**(d) Aunque no haya procedimiento alguno ante la consideración del tribunal, este, a iniciativa propia, podrá ordenar el procedimiento ante el Comisionado o Comisionada Especial que dispone el inciso (c) de esta regla, cuando de la conducta del abogado o la abogada ante el tribunal General de Justicia surjan dudas sobre su capacidad mental.**

El Tribunal a la luz de la totalidad del expediente del caso y ante el claro patrón de incumplimiento de órdenes emitidas por éste de la parte demandante, toma las siguientes determinaciones:

- Se ordena a la Secretaría del Tribunal referir este caso al Secretario del Tribunal Supremo, Lcdo. Juan E. Dávila Rivera, para que la Lcda. Amarilis González García sea sometida al proceso que provee la Regla 15 (d) del Reglamento Tribunal Supremo para casos de incapacidad mental de abogados y abogadas.

- Se paralizan los procedimientos del caso hasta que el Tribunal disponga lo contario, por el referido de la Lcda. González García, parte demandante, a tenor con la Regla 15 (d) del Tribunal Supremo de Puerto Rico.

- Se mantiene la pensión provisional establecida en el caso. A la solicitud de custodia provisional del menor solicitada por el demandado No Ha Lugar, el menor es un estudiante universitario que se hospeda en Mayagüez, por lo tanto es mínimo el impacto que pueda tener un cambio de custodia en la vida diaria del menor toda vez que pasa la mayor parte

del tiempo hospedado en una residencia que no le pertenece a ninguno de sus padres.

- Se deja sin efecto el referido a la Unidad Social y se hace constar que el 23 de marzo de 2016 se emitió *Orden* a dicha Unidad para que rindiera un informe breve de labor realizada hasta el 14 de marzo de 2016.

**NOTIFÍQUESE.**

En Bayamón, Puerto Rico, a  21 de abril de 2016.


**LESLIE J. HERNÁNDEZ CRESPO**
**JUEZ SUPERIOR**

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE RELACIONES DE FAMILIA Y MENORES
REGIÓN JUDICIAL DE BAYAMÓN

AMARILIS GONZÁLEZ GARCÍA

Demandante

v.

JUAN CARLOS BALCELLS GALLARRETA

Demandado

CASO NUM. DDI2006-4055

Salón Núm. 3005

Acción de Divorcio

## SOLICITUD DE RECONSIDERACIÓN

AL HONORABLE TRIBUNAL:

Comparece el demandado por conducto de su representación legal suscribiente y muy respetuosamente alega, expone y solicita:

1.      Este Tribunal declaró sin lugar la solicitud de custodia provisional presentada por el compareciente mediante Resolución de 21 de abril pasado, notificada el 25 de abril.

2.      Apoyó su determinación en los siguientes hechos:

- El joven es universitario;

- Se hospeda en Mayagüez;

- Pasa la mayor parte del tiempo hospedado en una residencia que no le pertenece a ninguno de los padres.

3.      No obstante lo anterior, la demandante es quien administra la pensión provisional vigente. Deberá mantener presente este Tribunal que la madre custodio no presentó prueba alguna de los gastos suplementarios del menor. Este hecho, sumado a las determinaciones en cuanto al estado mental y emocional de la demandante presentadas por el Tribunal en la Resolución aludida, no redundan en el mejor beneficio del menor. Si en la demandante la madre custodio es quien viene a administrar la pensión provisional a favor de su hijo.

4.      El compareciente comparte la posición de este Tribunal en cuanto a la custodia física del menor, en tanto y en cuanto reside en Mayagüez. Sin embargo, al otorgarle a este la custodia, provisional o permanente, provocaría que fuera el padre quien administrará la pensión a favor de su hijo. Esto, sin duda alguna, redundaría en su mejor beneficio.

App. Ap. pp.56

POR TODO LO CUAL, el compareciente solicita muy respetuosamente de este Honorable Tribunal se sirva reconsiderar su orden a los efectos de otorgarle la custodia provisional al compareciente por las razones esbozadas en lo que antecede.

En Guaynabo, P.R., a 28 de abril de 2016.

Certifico haber enviado copia del presente escrito a la Lcda. Amarilis González García a PO Box 11083, San Juan, PR 00922.

VERA T. PEÑAGARICANO
11463
2 Calle Tabonuco
GAM Tower, Oficina 203
Guaynabo, P.R. 00968
(787)945-1465
Fax (787)966-7655
vera@penagaricanolaw.com

App. Ap. pp.57

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE FAMILIA Y MENORES
REGION JUDICIAL DE BAYAMON
*Salón de Sesiones 3001*

#2

| | |
|---|---|
| AMARILIS GONZALEZ GARCIA **DEMANDANTE** | EXP. NUM. **D DI2006-4055** |
| VS | |
| JUAN C. BALCELLS GALLARRETA **DEMANDADO** | **DIVORCIO (TC)** |

# MINUTA-RESOLUCION

A la vista de urgente comparece la demandante asistida por la Lcda. María E. Medina Pérez.  Comparece el demandado asistido por la Lcda. Vera T. Peñagaricano.

Se hace constar que este caso tiene varias interacciones.  La última vez fue para discutir los alcances de la Resolución del Tribunal Apelativo.  No se ha emitido mediante una resolución la determinación de este Tribunal.  En síntesis queda pendiente los siguientes asuntos: solicitud de rebaja de pensión alimentaría, si procede imputación de ingreso sobre los bienes de la demandante, cambio unilateral de la institución académica, alegación de hechos del gasto del colegio y la solicitud de desacato en cuanto a la aportación de la demandante para los gastos de educación de la menor.

Indica la Lcda. Peñagaricano que la orden señalando la vista de hoy urgente va dirigida a  establecer:  la deuda que alega mamá tiene papá y la merma de ingresos del demandado.  En cuanto a la primera, este Tribunal paralizó toda gestión en cuanto a cualquier determinación de cualquier obligación previo agosto de 2011, por lo cual no puede ser atendida en el día de hoy.  Con esto no significa que el demandado se quiere enajenar de cualquier obligación que pueda surgir posterior a la paralización del caso de quiebra.

Continuación..............

App. Ap. pp.58

Case:19-08863-MCF-01192-FAB7 Doc#:157-2 Filed:03/27/15 Entered:03/27/19 12:25:54 Desc:
Exhibit State Court Decision    Page 2 of 5

2

Página 2                                              D DI2006-4055

La Lcda. Medina expresa que el padre no custodio está alegando que sus ingresos han mermado.  Pero se ha repasado, la resolución del Tribunal y nos hemos percatado que el demandado se le impuso una pensión alimentaría de $2,100.00.  Se tomó en consideración su estilo de vida y el estilo de vida sigue siendo el mismo, por lo tanto, no es a base de los ingresos  que se tomó en consideración para fijarse la pensión que está fijada.

La demandante indica que el Tribunal de Quiebra nunca ha mandado que se paralicen los procedimientos, al contrario, el Tribunal de Quiebra quiere que los procedimientos de alimentos continúen.  No determinar la deuda previa  ni la que esta después de la quiebra, es totalmente irracional. No entiendo como es que se dice que hay que paralizar los procedimientos para determinar la deuda.

El Tribunal indica que en virtud del procedimiento en el Tribunal Federal no hay impedimento legal alguno para evaluar cualquier solicitud de modificación.  Lo que teníamos era la paralización por  180 días para no hacer ninguna gestión de cobro.

Ambas partes presentan varios argumentos para determinar la deuda por ambas partes.

La Lcda. Peñagaricano indica que advino en conocimiento que la menor gozaba de una beca ascendente a $2,752.00. La demandante informa que a ninguno de los menores le ofrecieron becas. El Tribunal instruye a las partes a reunirse y continuar esta vista por la tarde.

**SESION DE LA TARDE:**

Se llama nuevamente el caso en horas de la tarde, comparece la demandante asistida por la Lcda. Maria Medina Pérez.  Comparece el demandado asistido por la Lcda. Vera T. Peñagaricano.

Continuación......

App. Ap. pp.59

Case:1:15-cv-01103-FAB Document 27-1 Filed 06/17/15 Entered 03/27/15 13:25:34 Desc:
Exhibit State Court Decision   Page 3 of 5

3

Página 3                                          D DI2006-4055


Las partes se acercan al estrado para discutir la tabla preparada por la Lcda. Beltrán.

La demandante aclara que no procede considerar la partida de la hipoteca porque lo hizo para reclamar su partida en el caso civil. En la quiebra el demandado se está beneficiando por eso. Recibirá la porción de la hipoteca en dos o tres ocasiones. Esto en adición a las penalidades que tiene que pagar. Por lo cual, la porción que le toca de la hipoteca no puede reclamarse en lo civil ni en la quiebra. En la quiebra no se considera el hogar seguro.

El Tribunal indica que el pago de la casa se imputa como parte de la pensión alimentaría. Se estableció la pensión regular y la suplementaria. La pensión en este caso es de $4,838.00.

Informa la Lcda. Peñagaricano que entiende que el Tribunal se revocó en cuanto a la determinación en la vista del 20 de octubre de 2011. Las partes presentan varios argumentos para determinar la deuda.

**El Tribunal luego de hacer los cómputos indica que al 31 de agosto de 2011, el demandado debió haber pagado $270,928.00, de eso ha pagado $145,882.00 y la deuda es de $125,046.00 por concepto de pensión alimentaría.**

La Lcda. Peñagaricano indica que según las vistas de 19 de enero y 3 de febrero, el demandado lo que debía a diciembre/2011 era $5,384.00. El día 19 de enero de 2012 se le hizo entrega a la demandante la cantidad de $5,384.00 y se informó al Tribunal mediante moción dando por cumplida la deuda que había hasta entonces.

La Lcda. Medina expresa que la otra deuda al 7 de junio de 2012 es de $16,028.00.

Las partes hacen sus argumentos y cómputos en cuanto a la deuda del segundo período, enero/2012 hasta el 23/julio/2012.

Continuación..................

Página 4                                             D DI2006-4055

El demandado debió haber pagado $33,866.00.

La Lcda. Peñagaricano indica que hay pagos adicionales, un pago de
$1,046.00 número 144 y el pago del Colegio de María Reina  de $2,000.00
número 4,713, para un total de $3,046.00, que no se pueden probar en el día
de hoy por no tener la evidencia.

El Tribunal **hace constar que añadiendo el pago de julio de
$1,000.00, más el Colegio de $2,576.50, la deuda del 2012 es de
$20,971.50 al 23 de julio de 2012.**

Además, indica la Lcda. Peñagaricano que existen otros pagos que ha
hecho el demandado  y que se discutieron con la Lcda. Beltrán, como es el
celular del menor, la graduación de cuarto año de la menor, se le compro una
cama  para el apartamento del Recinto de Mayagüez.  Hay ciertos gastos que
se le van a presentar al Tribunal.  El demandado no estaba preparado para
dilucidar la deuda de enero a julio /2012.

El **Tribunal concede el término de 10 días para que presente
objeciones y 10 días para que la otra parte replique** con relación a las
cuantías reclamadas como la deuda.

Con relación a la controversia de la Ley 100, a tenor con lo resuelto
con el mandato del Tribunal Apelativo y el contenido de la página 19 y
16 de la resolución se declara NO HA LUGAR a la solicitud de revisión por
el fundamento de cambio en las circunstancias económicas por el nuevo
trabajo.

La parte demandante alegó que la menor va a estudiar en la
Universidad de Puerto Rico en el Recinto de Mayagüez, por lo que va a
incurrir en gastos escolares mayores.  Se refiere a la Examinadora  para
la revisión de pensión alimentaría  por el fundamento de cambio de las
circunstancias económicas.

Con relación a una moción sobre el Desacato contra la parte
demandante, el Tribunal determina como cuestión de hecho y derecho
que no procede, porque voluntariamente el demandado pagó la deuda
directamente al Colegio.

continuación...........

App. Ap. pp.61

Página 5                                      D DI2006-4055

**Se señala la vista de desacato para el 10 de septiembre de 2012, a
las 2:00 pm.**

Certifico haber enviado copia de esta minuta-resolución a los abogados de récord hoy, 27 de agosto de 2012.

| Libro de Minutas | | Alguacil: | Marisol Alicea Rivera |
|---|---|---|---|
| Nombre Juez: | HON. ÁNGEL M. CANDELAS RODRIGUEZ | Certifico: | Migdalia Rivera Colón |
| | | | Secretaria Regional |
| Operadora de FTR: | WILMARIE OJEDA RIOS | Por: | Carmen M. Rivera López |
| | | | Secretario de Sala |
| Oat 838 | | Vista: | 23 DE JULIO DE 2012 |
| Minuta Civil | | Transcrita: | 3 DE AGOSTO DE 2012 |

**FORM 1**

**INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT**

**ASSET CASES**

Page No:   1

| Case No.: | 11-06637-MCF | Trustee Name: | Noreen Wiscovitch-Rentas |
|---|---|---|---|
| Case Name: | BALCELLS GALLARETA, JUAN CARLOS | Date Filed (f) or Converted (c): | 08/05/2011 (f) |
| For the Period Ending: | 03/31/2020 | §341(a) Meeting Date: | 12/06/2011 |
| | | Claims Bar Date: | 07/30/2012 |

| | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| | Asset Description (Scheduled and Unscheduled (u) Property) | Petition/ Unscheduled Value | Estimated Net Value (Value Determined by Trustee, Less Liens, Exemptions, and Other Costs) | Property Abandoned OA =§ 554(a) abandon. | Sales/Funds Received by the Estate | Asset Fully Administered (FA)/ Gross Value of Remaining Assets |
| **Ref. #** | | | | | | |
| 1 | HOUSEHOLD GOODS | $800.00 | $0.00 | | $0.00 | FA |
| **Asset Notes:** | COMPUTER, Smartphone, light tools | | | | | |
| | debtor amended schedule B to updated household value and description(original amount listed $400.00) docket 99 filed 8/25/14 | | | | | |
| 2 | HOUSEHOLD GOODS | $5,000.00 | $0.00 | | $0.00 | FA |
| **Asset Notes:** | UNDIVIDED MARITAL ASSETS- YET TO BE DETERMINED EX HAS HOGAR SEGURO THEREFORE HE HAS NO ACESS TO THE ASSETS | | | | | |
| | living room set, dinning room set, 2 TV, 3 split units A/C, kitchen appliances, refrigerator, microwave, flatware & china, washer and dryer, 3 bedrooms set, linens. | | | | | |
| | debtor amended schedule B to updated household value and description(original amount listed $0.00) docket 99 filed 8/25/14 | | | | | |
| 3 | WEARING APPAREL | $100.00 | $0.00 | | $0.00 | FA |
| **Asset Notes:** | CLOTHES | | | | | |
| 4 | FURS AND JEWELRY | $50.00 | $0.00 | | $0.00 | FA |
| **Asset Notes:** | WATCH | | | | | |
| 5 | BOATS AND ACCESSORIES | $16,000.00 | $4,025.00 | | $4,025.00 | FA |
| **Asset Notes:** | MAKO 1987 OUTBOARD 26' CTRCN MODEL 261 | | | | | |
| | Trustee Objection to Debtor Claimed exmption was granted docket 85 filed 5/5/14 | | | | | |
| | Debtor sold this Boat. | | | | | |
| | Debtor's Attorney amended Schedule B & C to increase the VALUE OF ASSET AND  amount claimed exempt ( NOW 16,000.00) | | | | | |
| 6 | RESIDENCE                                             (u) | $420,000.00 | $338,122.35 | | $0.00 | $338,122.35 |
| **Asset Notes:** | 381 VILLA VERSALLES ST, VILLA REALES DEV. , GUAYNABO, PR 00965 | | | | | |
| | Debtor amended schedule A and C to updated lien over the property and claimed exemption over property (original amount of lien $63,780.27, amount claimed exempt $0.00) docket 99 | | | | | |
| | filed 8/25/14 Debtor purchased this property with ex-wife, as per title search. he owns  50% of the realty. | | | | | |
| | Adversary case 14-00137. 31 (Approval of sale of property of estate and of a co-owner - 363(h)): Complaint by NOREEN WISCOVITCH RENTAS against AMARILIS GONZALEZ | | | | | |
| | GARCIA.  Adversary still pending.  - Noreen Wiscovitch 04/11/2016. | | | | | |
| 7 | FINANCIAL ACCOUNTS                                    (u) | Unknown | $0.00 | | $0.00 | FA |
| **Asset Notes:** | BPPR Checking acct # 347-058xxx | | | | | |
| 8 | HOUSEHOLD GOODS                                       (u) | $500.00 | $0.00 | | $0.00 | FA |
| **Asset Notes:** | exercise bench w/ weights , and rowing machine | | | | | |
| | debtor amended schedule B to listed household items no listed on the petition docket 99 filed 8/25/14 | | | | | |
| 9 | CONTINGENT CLAIMS                                     (u) | $465.00 | $0.00 | | $0.00 | FA |
| **Asset Notes:** | 2010 IT  refund | | | | | |
| | debtor amended schedule B and C to list this asset. docket 99 filed 8/25/14 | | | | | |
| 10 | CONTINGENT CLAIMS                                    (u) | $558.00 | $0.00 | | | FA |

App. Ap. pp.63

**FORM 1**
**INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT**
**ASSET CASES**

Page No:    2

| Case No.: | 11-06637-MCF | Trustee Name: | Noreen Wiscovitch-Rentas |
|---|---|---|---|
| Case Name: | BALCELLS GALLARETA, JUAN CARLOS | Date Filed (f) or Converted (c): | 08/05/2011 (f) |
| For the Period Ending: | 03/31/2020 | §341(a) Meeting Date: | 12/06/2011 |
| | | Claims Bar Date: | 07/30/2012 |

| | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| | Asset Description (Scheduled and Unscheduled (u) Property) | Petition/ Unscheduled Value | Estimated Net Value (Value Determined by Trustee, Less Liens, Exemptions, and Other Costs) | Property Abandoned OA =§ 554(a) abandon. | Sales/Funds Received by the Estate | Asset Fully Administered (FA)/ Gross Value of Remaining Assets |
| **Asset Notes:** | 2011 IT refund / 7.05 months | | | | | |
| **Ref. #** | | | | | | |
| 11 | Contingent claims                                (u) | $0.00 | $3,000.00 | | $3,000.00 | FA |
| **Asset Notes:** | Adversary Proceeding no. 16-00209 against Banco Popular for violation of Automatic Stay. | | | | | |
| | Trustee settled this claim for $3000.00.  - Noreen Wiscovitch 02/09/2018 | | | | | |
| | STIPULATION FILED DOCKET 51 | | | | | |
| | ORDER APPROVING STIPULATION DOCKET 54 | | | | | |

TOTALS (Excluding unknown value)                                                                                                                                      Gross Value of Remaining Assets

|  | $443,473.00 | $345,147.35 | | $7,025.00 | $338,122.35 |
|---|---|---|---|---|---|

**Major Activities affecting case closing:**

| 02/19/2020 | Defendant's Motion for summary judgment was denied.  Pre-trial date set for May 2020.  NWR 2-19-20 |
|---|---|
| 11/08/2019 | Hearing on Motion for Summary Judgment set for Feb. 2020.  NWR 11-8-19 |
| 09/04/2019 | Pending Cross motions for Summary Judgment in adversary.  NWR 9/4/19 |
| 03/05/2019 | New appraisal done on property.  Adversary to sell realty still pending.  NWR 3-5-19 |
| 12/07/2018 | Adversary is still pending.  Counterclaim against Plaintiff was voluntarily dismissed in November 2018.  NWR 12-7-18 |

App. Ap. pp.64

FORM 1

**INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT**

**ASSET CASES**

Page No:    3

| Case No.: | 11-06637-MCF | | Trustee Name: | Noreen Wiscovitch-Rentas |
| Case Name: | BALCELLS GALLARETA, JUAN CARLOS | | Date Filed (f) or Converted (c): | 08/05/2011 (f) |
| For the Period Ending: | 03/31/2020 | | §341(a) Meeting Date: | 12/06/2011 |
| | | | Claims Bar Date: | 07/30/2012 |

| 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|
| Asset Description (Scheduled and Unscheduled (u) Property) | Petition/ Unscheduled Value | Estimated Net Value (Value Determined by Trustee, Less Liens, Exemptions, and Other Costs) | Property Abandoned OA =§ 554(a) abandon. | Sales/Funds Received by the Estate | Asset Fully Administered (FA)/ Gross Value of Remaining Assets |

Adversary continues to sell realty jointly owned with former spouse. Discovery is being conducted. - Noreen Wiscovitch 7/14/2018

Trustee attempting to settle adversary against former spouse for the sale of the realty. - Noreen Wiscovitch 04/15/2018

Trustee settled with Banco Popular for violation of Automatic Stay for $3,000.00. Funds have been received. Adversary against former spouse continues - Noreen Wiscovitch 03/21/2018

Adversary is still pending. Judge denied Motion for Summary Judgment. - Noreen Wiscovitch 1/26/2018

Both Adversaries pending including adversary for violation of Automatic Stay against Banco Popular. - Noreen Wiscovitch 07/10/2017

Motions for Summary Judgment on Adv. No. 14-00137 against Ex-spouse is pending for April 2017. Pending adversary against Bank for violation of Automatic Stay. - Noreen Wiscovitch 02/17/2017

Adversary against Ex-Spouse still pending Court denied Motion for Summary Judgment. Appeal may need to be taken. - Noreen Wiscovitch 08/29/2016

Adversary against Ex-Spouse continues in order to sell realty. - Noreen Wiscovitch 04/11/2016

Trustee continues to pursue adversary to sell realty. Offer from former spouse received. Still negotiating. May 20, 2015, 04:31 pm

Pending adversary against Debtor's former spouse to sell realty. January 21, 2015, 02:40 pm

Debtor paid for non-exempt portion of boat. Trustee filed suit to sell realty. June 26, 2014, 11:02 pm

Trustee to file 363(h) action to sell realty. Stipulation could not be filed. Trustee filed motion to compel turnover of equity of boat. April 23, 2014, 02:29 pm

Trustee hired new counsel and will enter into stipulation to sell to ex-spouse the Estate's Right, Title and interest in the Realty. February 12, 2014, 04:53 pm

Trustee continues to attempt to sell realty. April 22, 2013, 12:00 am

Trustee to continue to attempt to sell realty. October 31, 2012, 01:15 pm

Trustee to attempt to sell realty. April 28, 2012, 06:44 pm

This case was closed and later re-opened. November 09, 2011, 12:31 pm

   [Noreen Wiscovitch 2015-07-02 05:00:00]

| | | | | | |
|---|---|---|---|---|---|
| Initial Projected Date Of Final Report (TFR): | 12/31/2013 | Current Projected Date Of Final Report (TFR): | 12/31/2020 | /s/ NOREEN WISCOVITCH-RENTAS |

NOREEN WISCOVITCH-RENTAS

App. Ap. pp.65

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

IN RE

JUAN C. BALCELLS GALLARETA

Debtor



Case No. 11-06637(MCF)

CHAPTER 7

### SWORN STATEMENT OF
### JUAN FRANCISCO BALCELLS GONZALEZ

I, Juan Francisco Balcells González, of legal age, single, a student and resident of Guaynabo, Puerto Rico, hereby declare under penalty of perjury:

1. My personal circumstances are as above stated.

2. I am 22 years of age.

3. I am the son of Mrs. Amarilys González García and Juan Carlos Balcells Galagarreta.

4. My father, the Debtor, Juan Carlos Balcells Galagarreta filed the bankruptcy petition genesis of this case on August 5, 2011. At such time I was 14 years old.

5. On February 12, 2012, my mother, Amarilys González García, filed a Domestic Support Obligation ("DSO") proof of claim.

6. I ratify any actions and authorize my mother, Amarilys González García, to act in my place and stead, in relation to the DSO claim filed in the above captioned case.

7. I am currently a student at the University of Puerto Rico, Mayaguez.

8. The address of my permanent residence is Urb. Villas Reales, Calle Versalles # 381, Guaynabo, Puerto Rico.

1

Scanned by CamScanner

App. Ap. pp.66

9. I declare under oath that the foregoing is true and correct to the best of my

knowledge.

In **MAYAGUEZ**, Puerto Rico, on this **30** day of April, 2019

_____
JUAN FRANCISCO BALCELLS GONZÁLEZ

Affidavit No. **2042**

Sworn and subscribed before me by Juan Francisco Balcells González, of legal age, single, a student and resident of Guaynabo, Puerto Rico, whom I personally know, in **MAYAGUEZ**, Puerto Rico, this **30** day of April of 2019.

_____
NOTARY PUBLIC

2

Scanned by CamScanner

App. Ap. pp.67

Case:12-00132-MCF01 Doc#:AE9-DoEilbte05/03/19FiledhteR/d07/05/037i9e1416f2560 Desc:
Case:11-06637 Exhibit Response in Opposition to Claim 5-1 d:Page/70f 8 23:00 Desc:
Exhibit Sworn Statement of Alexandra Balcells Page 1 of 2

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

IN RE

JUAN C. BALCELLS GALLARETA

Debtor

Case No. 11-06637(MCF)

CHAPTER 7

### SWORN STATEMENT OF
### ALEXANDRA BALCELLS GONZALEZ

I, Alexandra Balcells González, of legal age, single, a student and resident of Guaynabo, Puerto Rico, hereby declare under penalty of perjury:

1. My personal circumstances are as above stated.

2. I am 24 years of age.

3. I am the daughter of Mrs. Amarilys González García and Juan Carlos Balcells Galagarreta.

4. My father, the Debtor, Juan Carlos Balcells Galagarreta filed the bankruptcy petition genesis of this case on August 5, 2011. At such time I was 17 years old.

5. On February 12, 2012, my mother, Amarilys González García, filed a Domestic Support Obligation ("DSO") proof of claim.

6. I ratify any actions and authorize my mother, Amarilys González García, to act in my place and stead, in relation to the DSO claim filed in the above captioned case.

7. I am currently a student at the University of Puerto Rico, Rio Piedras.

8. The address of my permanent residence is Urb. Villas Reales, Calle Versalles # 381, Guaynabo, Puerto Rico.

1

Case:12-00132-MCF11 Doc#:479-1 Filed:05/03/19 Entered:05/03/19 14:24:00 Desc:
Case:11-06637 Exhibit Response in Opposition to Claim 5-1 Page 8 of 8
Exhibit Sworn Statement of Alexandra Balcells   Page 2 of 2

9.   I declare under oath that the foregoing is true and correct to the best of my

knowledge.

In _San Juan_, Puerto Rico, on this _29_ day of April, 2019

ALEXANDRA BALCELLS GONZÁLEZ

Affidavit No. _3451_

    Sworn and subscribed before me by Alexandra Balcells González, of legal age, single, as
student and resident of Guaynabo, Puerto Rico, whom I personally know, in _San Juan_,
Puerto Rico, this _29_ day of April of 2019.

NOTARY PUBLIC

RECIBO

Sello

9397
04/15/2019
$5.00

Sello de Asistencia Legal
80004-2019-0415-21353033

4118-00068572

2

App. Ap. pp.69

# RESTRICTED APPRAISAL REPORT

RESIDENTIAL PROPERTY (CADASTRAL PIN NO. 113-040-809-86-000)
381 VIA VERSALLES ST.,
VILLAS DE REALES DEV.,
GUAYNABO, PUERTO RICO

PREPARED

For:                                    Ms. Noreen Wiscovitch Rentas
                                        PO Box 20438
                                        West Palm Beach, FL 33416

                                        Duly Appointed Chapter 7 Trustee for the
                                        Estate of Juan Carlos Balcells Gallareta
                                        United States Bankruptcy Court for the District of P.R. (Docket 11-06637)

By:                                     Pedro C. Navarro Acevedo, MAI
                                        Certified General Real Estate Appraiser

Effective Date of Appraisal:            July 28, 2021

Date of Report:                         August 4, 2021

App. Ap. pp.70

August 4, 2021

Ms. Noreen Wiscovitch Rentas
PO Box 20438
West Palm Beach, FL 33416

Re:   Residential Property (Cadastral Pin No. 113-040-809-86-000)
      381 Via Versalles Street,
      Villas Reales Development,
      Guaynabo, Puerto Rico

Dear Ms. Wiscovitch,

In accordance with your request made through Mr. Rafael A. Gonzalez Valiente, Esq., I have prepared an appraisal of the above-referenced subject property which is a single-family residence within a 24hrs-guard gated community in the Municipality of Guaynabo, Puerto Rico.

This appraisal report was developed based on the information submitted by Mr. Gonzalez Valiente, Esq. as the property could not be physically inspected. Based on the information provided, the property is a 2-story, 4-bedroom and 2.5-bathroom residence of reinforced concrete and cement construction with approximately 2,012 square feet of gross living area supported by a 40 square foot porch, a 431 square foot double carport and a 448 square feet concrete terrace.

The type of value reported in this appraisal is *Market Value,* as defined in this appraisal report. The purpose of this appraisal is to develop my opinion of the market value of the fee simple interest in the real estate as of a current date. The intended use of the appraisal would be to assist you, as the identified client, in decision-making processes concerning the Estate of Juan Carlos Balcells Gallareta and the United States Bankruptcy Court for the District of P.R. (Docket 11-06637). The intended user(s) of the appraisal would be yourself, Mr. Rafael A. Gonzalez Valiente, Esq., and the United States Bankruptcy Court for the District of Puerto Rico.

Based on the analyses developed, the market value opinion of the subject property is concluded to be:

| ♦ Market Value – Fee Simple Interest | $ 246,000 |
|---|---|
| As of July 28, 2021 | Two Hundred Forty Six Thousand Dollars |

The analyses and conclusions developed in this appraisal are based on market conditions existing as of July 28, 2021 which is the effective date of value. No responsibility is assumed for unforeseen changes in the market conditions specified. In addition, this appraisal is based on the assumptions, limiting conditions, definitions and certifications presented in this report of which this letter of transmittal forms an integral and inseparable part.

Possession of this appraisal report, or a copy thereof, does not carry with it the right of publication. I accept no responsibility for the use of this appraisal by any person or entity other than the client and identified intended users, or for any other use than that stated herein.

Pedro C. Navarro Acevedo, MAI
Certified General Real Estate Appraiser
Certificate No. 270 CG
PR License No. 1151 EPA

App. Ap. pp.71



Provided by Mr. Rafael A. Gonzalez Valiente, Esq. for the purpose of identifying the subject property.



## Statement of Appraisal Problem

| | |
|---|---|
| *Client* | Ms. Noreen Wiscovitch Rentas |
| *Property Rights Appraised* | Fee Simple Estate |
| *Effective Date of Appraisal* | July 28, 2021 |
| *Date of Report* | August 4, 2021 |
| *Type of Value Reported* | Market Value as defined in this appraisal report. |
| *Intended Use* | To assist the client in decision-making processes concerning the Estate of Juan Carlos Balcells Gallareta and the United States Bankruptcy Court for the District of P.R. (Docket 11-06637). |
| *Intended User of Appraisal* | The client, Mr. Rafael A. Gonzalez Valiente, Esq., and the United States Bankruptcy Court for the District of Puerto Rico. |
| *Location* | 381 Via Versalles Street, Villas Reales Development, Guaynabo, Puerto Rico (Coordinates: Latitude: 18.36193º, Longitude -66.1282º). |
| *Subject of the Appraisal* | Single-family residence |
| *Key Valuation Issues* | The subject property could not be physically inspected as it is located within a 24hrs-guard gated development and no access was granted to the appraiser during the course of this assignment. This appraisal was developed based on the information submitted by Mr. Rafael A. Gonzalez Valiente, Esq. which included a previous appraisal of the subject property prepared by Francisco J. Otero Valentín (License 1302EPA) as of November 20, 2018. No further information regarding the property subject of this appraisal was submitted to the appraiser. |
| *Extraordinary Assumption* | That the physical attributes of the subject property be as defined in this appraisal based on the information submitted for my examination. If this extraordinary assumption is found to be false or incorrect, the analysis and conclusions reported herein could result null and void. |
| *Report Format* | Restricted Appraisal Report. This report format is limited to the client and intended user alone and may not be shared with any other third party, as the report do not include supporting rationale for all the opinions and conclusions set forth in the report. All supporting data for the development of the appraisal is held in the appraisal work file to which the client may have access in coordination with the appraiser. |

### Scope of Work

The property and the neighborhood were inspected to establish the characteristics of the subject (i.e. physical, location, regulatory and economic) and general market trends. The subject is an urban site within an R-3 zoning in the municipality of Guaynabo under residential occupancy. The market research showed that these properties are generally profiled for owner occupancy as the most probable buyers are commonly owner/occupant.

In the case at hand, the sales comparison was concluded the best approach to value and solve the appraisal problem given typical market motivations and the available market data.

This appraisal is developed based on market conditions existing as of July 28, 2021, and no responsibility is assumed for unforeseen changes in this specified market conditions. Furthermore, the appraisal is made subject to the assumptions, limiting conditions, definitions and certifications presented in this report. Finally, I, the appraiser, certify to have the

competency to carry out this assignment gained from the knowledge and experience acquired through my appraisal practice over the past 23 years; as well as by having the relevant education and professional credentials to do so.

## Productivity Analysis

Neighborhood

The subject is located in Villas Reales, a 24hrs-gated development in the municipality of Guaynabo, within a 1-mile radius from its town core at the main roadway into the neighborhood through PR-199. The neighborhood is mostly of suburban character.

The urban path of growth in the municipality is generally projected along the section of PR-199 between its intersection with PR-20 and PR-837 where the subject is located, as well as along PR-177 to the north of the municipality traditional urban area. The following exhibit presents a location map of the immediate neighborhood.

The market research produced a universe of sales transactions of single-family residences during the past 24 months with prices ranging from $170,000 to $645,000, but with the majority clustering between $200,000 and $375,000. The most recent transactions reflect slightly higher values as well as a greater number of transactions which suggest improving market conditions.

Subject

The subject is a 375.42 square meter in the Villas Reales Development within an R-3 zoning limits with an Urban Soil land classification according to the data obtained through the website of the Puerto Rico Planning Board. The subject is identified to be within a low-risk (Zone X) flood prone area as per FEMA flood insurance map No. 72000C-0710H. The site has a level topography with basically a rectangular shape.

No exterior nor interior inspection of the property could be performed in this case. Based on the information submitted, the subject is improved with a 2-story, 4-bedroom and 2.5-bathroom residence of reinforced concrete and cement construction with approximately 2,012 square feet of gross living area supported by a 40 square foot porch, a 431 square foot double carport, and a 448 square foot concrete terrace; plus, a perimeter fence of concrete construction.

According to the information provided, the property was in below average condition (rated poor in my opinion) lacking adequate maintenance and reflecting considerable disrepairs as of November 2018. The condition of the property could not be confirmed; therefore, it is assumed that this remains in either in a similar or advance below average condition reflecting ongoing wear and tear from a lack of necessary repairs and adequate maintenance. Please refer to the extraordinary assumption presented on page 4 under the *Statement of Appraisal Problem* section of this report.

## History of the Property

No information was provided as to the subject ownership. According to the information obtained through the webpage of the CRIM, it appears the subject has remained under the present ownership for over the 3-year period immediately preceding the effective date of this appraisal. Based on the intended use and users of this appraisal, the property is currently part of legal processes pertaining to the Estate of Juan Carlos Balcells Gallareta and the United States Bankruptcy Court for the District of P.R. (Docket 11-06637).

No information was obtained by nor provided to the appraiser indicating the subject is presently for sale or under any type of such negotiations.

## Highest and Best Use Analysis

The subject is within a residential community surrounded by residences at a gated development. The existing improvements conform to the parameters established by the regulatory agencies and, besides some needed repairs, fulfill the need for which they were originally built. In addition, these are financially feasible, as the value of the property is greater than the value of the underlying land plus demolition and site clearing costs. The improvements are presumed in below average condition reflecting advanced wear and tear; yet, the existing residence results in the maximally productive use of the property. Based on this, the concluded highest and best use of the subject is to repair and correct all necessary components of the property for it to remain under its present single-family residential use.

## Sales Comparison Approach

The Appraisal Institute, *The Dictionary of Real Estate Appraisal*, 6th edition (Chicago: Appraisal Institute, 2015) defines sales comparison approach as "a comparative approach to value that considers the sales of similar or substitute properties and related market data and establishes a value estimate by processes involving comparison. In general, a property being valued (a subject property) is compared with sales of similar properties that have been transacted in the open market. Listings and offerings may also be considered."

An alternative definition is also provided which states that this approach is "the process of deriving a value indication for the subject property by comparing market information for similar properties with the property being appraised, identifying appropriate units of comparison, and making qualitative comparisons with or quantitative adjustments to the sale prices (or unit prices, as appropriate) of the comparable properties based on relevant, market-derived elements of comparison."

The market research preformed included investigation of files at the Property Registry of the Puerto Rico Justice Department, local MLS's, as well as other sources of comparable database. The research produced a reasonable amount of data from which the best market data available was selected to develop an opinion of the market value of the subject. This comparable dataset was utilized for the development of the sales comparison approach as presented on the following pages of this appraisal report. Refer to addenda for photos and location map of the comparable dataset.

| | 381 Via Versalles St, Villas Reales Dev., Guaynabo PR | 306 Via Alcazar St, Villas Reales Dev., Guaynabo PR | Adjustment | 435 Via Alcazar St, Villas Reales Dev., Guaynabo PR | Adjustment | 446 Via Alcazar St, Villas Reales Dev., Guaynabo PR | Adjustment | 324 Via Escorial St, Villas Reales Dev., Guaynabo PR | Adjustment |
|---|---|---|---|---|---|---|---|---|---|
| Address | | | | | | | | | |
| Proximity To Subject | | Same Development | | Same Development | | Same Development | | Same Development | |
| Sales Price | | | $450,000 | | $375,000 | | $285,000 | | $295,000 |
| Price/Gross Living Area | | $208.43 | | $182.48 | | $149.29 | | $145.75 | |
| Data and/or Verification Source | | PRCSDS Public Records | | PRCSDS Public Records | | PRCSDS Public Records | | PRCSDS Public Records | |
| Value Adjustments | DESCRIPTION | DESCRIPTION | Adjustment | DESCRIPTION | Adjustment | DESCRIPTION | Adjustment | DESCRIPTION | Adjustment |
| Sales or Financing Concessions | | None | | None | | None | | None | |
| Market Conditions | July 29, 2021 | Mar-21 | | Sep-20 | | Feb-20 | | Feb-20 | |
| Location | Suburban | Suburban | | Suburban | | Suburban | | Suburban | |
| Leasehold/fee simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | | Fee Simple | |
| Site (sq. mt.) | 375.42 | 381.00 | ($1,400) | 392.00 | ($4,100) | 365.00 | $2,600 | 469.00 | ($11,700) |
| Design (style) | Tropical / Concrete | Similar | | Similar | | Similar | | Similar | |
| Quality of Construction | Q-4 | Q-3 | | Q-3 | | Q-3 | | Q-3 | |
| Actual Age | Over 20 years | 25 years | | 34 years | | 31 years | | 32 years | |
| Physical Condition | C-4 | C-3 | ($175,000) | C-3 | ($125,000) | C-4 | ($43,500) | C-4 | ($43,500) |
| Above Grade | Total : Bdrms : Baths : | Total: Bdrms: Baths: | | Total: Bdrms: Baths: | | Total: Bdrms: Baths: | | Total: Bdrms: Baths: | |
| Room Count | 9 - 4 - 2.5 | 8 - 3 - 2.5 | | 9 - 4 - 2.5 | | 9 - 4 - 2.5 | | 7 - 3 - 2.5 | |
| Gross Living Area | 2,012 | 2,159 | | 2,055 | | 1,909 | | 2,024 | |
| Basement & Rooms Below Grade | None | None | | None | | None | | None | |
| Functional Utility | Adequate | Similar | | Similar | | Similar | | Similar | |
| Heating/Cooling | WH/Split Units | Similar | | Similar | | Similar | | Similar | |
| Energy Efficient Items | None disclosed | Similar | | Similar | | Similar | | Similar | |
| Garage/Carport | 2-car garage | 2-car garage | | 2-car garage | | 2-car garage | | 2-car garage | |
| Additional features & Site Improvements | Concrete Terrace; Clo Stg Porch & Fence | Concrete Terrace; Clo Stg; Swp Porch & Fence | ($25,000) | Concrete Terrace; Clo Stg Porch & Fence | | Terrace;Balcony;Clo Stg Porch & Fence | | Terrace;Balcony;Clo Stg Porch & Fence | |
| | | Net Adj. (%) | 44.8% | Net Adj. (%) | 34.4% | Net Adj. (%) | 14.4% | Net Adj. (%) | 18.7% |
| | | Gross Adj. (%) | 44.8% | Gross Adj. (%) | 34.4% | Gross Adj. (%) | 16.2% | Gross Adj. (%) | 18.7% |
| Indicated Value of Subject | | | $248,600 | | $245,900 | | $244,100 | | $239,800 |

| | Produced range | $239,800 | $248,600 |
|---|---|---|---|
| | | Concluded at | $246,000 |

App. Ap. pp.76

The comparative analysis required adjustments for differences in site area, physical condition, and additional features/site improvements between the subject and the comparable sales. The rationale of the adjustments applied to the comparable dataset and presented in the previous grid are explained as follows:

Site Area Difference – The subject and comparable sales 1, 2 and 3 sites were valued at $250 per square meter, respectively, wile comparable 4 was valued at $225 per square meter. The unitary value of the sites was estimated based on the location and site area of each transaction.

Physical condition – The subject physical condition was presumed at same reported condition with an overall rating of C-4 and with required repairs reported at $40,000 as of November 201. This repair cost estimate was adjusted to $43,500 to reflect inflation and changes in market conditions based on cost multipliers extracted from Marshall & Swift. Comparable sales 1 and 2 were rated at a superior C-3 condition wile comparable sales 3 and 4 were rated at similar C-4 condition. The impact from this difference was estimated at minus $43,500 for comparable sales 3 and 4 recognizing only the reported repairs given the sales price already reflect the buyers' risk from acquiring a dated/less functional property with less appeal to market and in need of remodeling. On the other hand, the superior condition and overall appeal to market of comparable sales 1 and 2 results from their upgraded/remodeled conditions which requires a greater adjustment in this respect. Comparable sale 1 is rated C-3 same as comparable 2; yet, the former is superior as it was completely remodeled with elements of construction, design and quality superior to comparable sale 2. For this reason, the condition adjustment for this comparable is greater than the adjustment to comparable sale 2, even though both were given the same C-3 rating. The adjustments to comparable sales 1 and 2 were based on paired data analyses with comparable sales 3 and 4.

Gross living Area – Differences in GLA were not adjusted given the properties reflect similar functional layouts and the differences in size are mostly attributed to measurement variations commonly reflected between real estate professionals.

Additional Features/Site Improvements – The subject and comparable sales included a similar range of such improvements except for comparable sale 1 which included a swimming pool and greater finished paved areas. The impact from this variable was adjusted based on market reaction to depreciated cost estimates.

Market Value Conclusion and Exposure Period
The analysis produced a range in adjusted market value indications from $239,800 to $248,600, with average, median and mid-point figures of $244,600, $245,000, and $244,200, respectively.

| | |
|---|---|
| Max | $248,600 |
| Median | $245,000 |
| Average | $244,600 |
| Mid-Point | $244,200 |
| Min | $239,800 |

The market indicator which reflected the least adjustments is comparable sale 3 with an adjusted indication of $244,100. However, this is one of the oldest transactions; hence, considering current market conditions, a mid-point indication between comparable sales 1 and 3 will be concluded. Based on this, the market value of the subject is concluded at:

| ◆   Market Value Conclusion – Fee Simple Estate | $246,000 |
|---|---|
| As of July 28, 2021 | Two Hundred Forty Six Thousand Dollars |

Based on the analysis developed herein, it is my opinion that the subject could have sold during an exposure time in the range of five (5) to ten (10) months.

App. Ap. pp.77

# GENERAL ASSUMPTIONS

This appraisal report has been prepared with the following general assumptions:

1. No responsibility is assumed for matters legal in character or nature. No opinion is rendered as to title, which is assumed to be good and marketable. All existing liens, encumbrances, and assessments have been disregarded, unless otherwise noted, and the property is appraised as though free and clear, having responsible ownership and competent management. Unless otherwise stated in the report, all taxes are assumed to be current.

2. The information furnished by others in the development of this appraisal is believed to be reliable, true and correct.  However, no warranty is given for its accuracy.

3. The signing appraiser has examined the property described herein exclusively for the purposes of identification and description of the real property. The objective of the data collection is to develop an opinion of the highest and best use of the subject property and make meaningful comparisons in the valuation of the property. The observations and reporting of the subject improvements, or absence thereof, are for the appraisal process and valuation purposes only, and should not be considered as a warranty of any component of the property. This appraisal assumes (unless otherwise specifically stated) that any subject improvements are structurally sound, and that all components are in working condition. Furthermore, it is assumed that there are no hidden or non-apparent conditions of the property, subsoil, or structures that render it more or less valuable. No responsibility is assumed for such conditions or for arranging for engineering studies that may be required to discover any of these conditions.

4. It is assumed that there is full compliance with all applicable federal, state, and local environmental regulations and laws unless noncompliance is stated, defined, and considered in the appraisal report.

5. It is assumed that all applicable zoning and use regulations and restrictions have been complied with, unless any nonconformity has been stated, defined and considered in the appraisal report.

6. It is assumed that all required licenses, certificates of occupancy, consents, or other legislative or administrative authority from any local, state, or national government or private entity or organization have been, or can be obtained, or renewed for any use on which the value estimate contained in this appraisal is based unless otherwise noted in the appraisal report.

7. It is assumed that the utilization of the land and improvements is within the boundaries or property lines of the property described, and that there is no encroachment or trespass unless noted in the appraisal report.

8. The availability of capacity and/or connection rights to any or all public utilities has not been determined by the appraiser.  The value estimate reported herein is contingent upon, and limited to, said capacity and right of connection unless otherwise noted in the appraisal report.

App. Ap. pp.78

# GENERAL LIMITING CONDITIONS

1. The appraiser will not be required to give testimony or appear in court because of having made an appraisal of the property in question, unless specific arrangements to do so have been made in advance, or as otherwise required by law.

2. The appraiser will not disclose the contents of this appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and/or applicable federal, state or local laws.

3. The client is the party or parties who engage an appraiser (by employment contract) in a specific assignment. A party receiving a copy of this report from the client does not, as a consequence, become a party to the appraiser-client relationship. Any person who receives a copy of this appraisal report as a consequence of disclosure requirements that apply to an appraiser's client, does not become an intended user of this report unless the client specifically identified them at the time of the assignment.

4. Disclosure of the contents of this report is governed by the By-Laws and Regulations of the Appraisal Institute.  Neither all nor any part of the contents of this report, or copy thereof, shall be conveyed to the public through advertising, public relations, news, sales or any other media without the written consent and approval of the appraiser, nor shall their identity be identified without their individual prior written consent.

5. The appraiser has noted in this appraisal report any significant adverse conditions (such as needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) discovered during the data collection process in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions, and makes no guarantees or warranties express or implied. The appraiser will not be responsible for any such conditions that do exist, or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser is not aware of the presence of archaeological deposits and/or artifacts within the subject or in adjacent properties.  The physical inspection of the property did not reveal any evidence of such deposits and/or artifacts. However, the appraiser is not qualified to detect archeological deposits and/or artifacts and assumes no responsibility in this respect.  The value reported herein and the estimated construction and/or marketing time for the property are predicated on the assumption that the subject does not have any such archeological artifacts.

7. The appraiser reserves the right to change the reported conclusions if additional information comes forward as to condition or other factors which could affect the analysis and conclusions presented herein.

8. Any cause of action resulting between the appraiser and the client in conjunction with this appraisal, either directly or indirectly, will be limited in damages to the amount of the fee received for the assignment. Furthermore, it is agreed that the client will indemnify the appraiser, Mr. Pedro C. Navarro Acevedo, for any damages, costs, expenses, and attorney's fees resulting from any cause of action by any interested party, other than the client, concerning this appraisal.

# CERTIFICATION OF THE APPRAISER

I certify that, to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions and conclusions.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest with respect to the parties involved.

- I have not performed any services as an appraiser, or in any other character, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

- I have no bias with respect to the property that is the subject of this report, or to the parties involved with this assignment.

- My engagement in this assignment was not contingent upon developing or reporting predetermined results.

- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

- The analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice.*

- I have made a personal inspection of the property that is the subject of this report.

- No one provided significant professional appraisal assistance in the preparation of this report.

- The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics & Standards of Professional Appraisal Practice of the Appraisal Institute.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, **Pedro C. Navarro Acevedo,** have completed the requirements under the continuing education program of the Appraisal Institute.

Pedro C. Navarro Acevedo, MAI
Certified General Real Estate Appraiser
Certificate No. 270 CG
PR License No. 1151 EPA

Signed on this August 4, 2021

ADDENDA



Development Gate Entrance



Street Scene (PR-199)

App. Ap. pp.82

Location Map



Sketch Provided



| Living Area | | Calculation Details | |
|---|---|---|---|
| First Floor | 940 Sq ft | | 11 × 2.75   =   30.25 |
| | | | 33 × 24.75 = 816.75 |
| | | | 5.25 × 12   =     63 |
| | | | 3 × 10       =     30 |
| Second Floor | 1071.75 Sq ft | | 33 × 25.33 =    836 |
| | | | 9.5 × 11    =  104.5 |
| | | | 10.5 × 12.5 = 131.25 |
| Total Living Area (Rounded): | 2012 Sq ft | | |
| Non-living Area | | | |
| Concrete Terrace | 448.25 Sq ft | | 33 × 11.75 = 387.75 |
| | | | 2.75 × 11.5 =  31.62 |
| | | | 10.5 × 2.75 =  28.88 |
| Porch | 40 Sq ft | | 10 × 4       =     40 |
| Double Carport | 430.5 Sq ft | | 20.5 × 21   =   430.5 |

App. Ap. pp.84

## DEFINITIONS

### Market Value[1]

"The following definition of market value is used by agencies that regulate federally insured financial institutions in the United States: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

- Buyer and seller are typically motivated;
- Both parties are well informed or well advised, and acting in what they consider their best interests;
- A reasonable time is allowed for exposure in the open market;
- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

### "As is" Market Value[2]

"The term "as is" market value is defined as: the estimate of the market value of real property in its current physical condition, use, and zoning as of the appraisal date."

### Real Estate[1]

"An identified parcel or tract of land, including improvements, if any."

### Real Property[1]

"An interest or interests in real estate. The interests, benefits, and rights inherent in the ownership of real estate."

### Fee Simple Estate[1]

"Absolute ownership, unencumbered by any other interest or estate, subject only to the limitations by governmental powers of taxation, eminent domain, police power, and escheat."

### Exposure Time[3]

"Estimated length of time that the property interest being appraised would have being offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal. Exposure time is a retrospective opinion based on an analysis of past events assuming a competitive and open market."

### Intended Use[3]

"The use or uses of an appraiser's reported appraisal or appraisal review assignment opinions and conclusions, as identified by the appraiser based on communication with the client at the time of the assignment."

### Intended User[3]

"The client and any other party as identified, by name or type, as users of the appraisal or appraisal review report by the appraiser on the basis of communication with the client at the time of the assignment."

### Client[3]

"The party or parties who engage, by employment or contract, an appraiser in a specific assignment. The client may be an individual, group, or entity, and may engage and communicate with appraiser directly or through an agent."

### Confidential Information[4]

"Information that is either: 1) identified by the client as confidential when providing it to an appraiser and that is not available from any other source, or 2) classified as confidential or private by applicable law or regulation."

---

[1] *The Dictionary of Real Estate Appraisal,* 6th ed. (Chicago: Appraisal Institute, 2015).

[2] Interagency Appraisal and Evaluation Guidelines, OCC-2010-2012, OP-1338, DOT 2010-0018, RIN 3133-AD38.

[3] *USPAP 2020-2021 Edition*

App. Ap. pp.85

Qualifications of Appraiser

# PEDRO C. NAVARRO ACEVEDO, MAI
*Professional Qualifications*
*Phone: 787.368.3182 • Email: pcnaappraisal@gmail.com*

---

## LICENSE

Puerto Rico Licensed Professional Real Estate Appraiser, **EPA License No. 1151**

Puerto Rico Certified General Real Estate Appraiser, **Certificate No. 270**

Federal Government Work Qualified, **DUNS No. 080279256**

---

## PROFESSIONAL AFFILIATIONS

**MAI** designated member (since 2010) – Appraisal Institute



---

## OFFICES HELD

Appraisal Institute Puerto Rico and Caribbean Chapter –
Board of Directors 2012- 2014

---

## EDUCATION

**Bachelor in Business Administration 2004**
METROPOLITAN UNIVERSITY OF PUERTO RICO
SAN JUAN, PUERTO RICO
MAJOR: INFORMATION SYSTEMS

---

## QUALIFIED APPRAISER

Banco Popular de Puerto Rico
First Bank Puerto Rico
BANESCO USA
US Department of Housing and Urban Development - FHA Approved Appraiser

---

## PROFESSIONAL EXPERIENCE

*Pedro C. Navarro Acevedo, MAI*                    *December 2010* – Present
*Certified General Real Estate Appraiser*

*Pedro C. Navarro Acevedo, MAI*                    *October 2017* – Present
*Real and Personal Property*
*Damage Assessment Inspector*

*Independent Real Estate Appraiser October* 2009 – March 31, 2019
In association with
McCloskey, Mulet & Bonnin Appraisers P.S.C.

*Independent Real Estate Appraiser* September 2005 – August 2009
In association with
ODV Appraisal Group P.S.C.

*Assistant Real Estate Appraiser*          May 1998 – September 2005
In association with
ODV Appraisal Group P.S.C.

App. Ap. pp.87

## APPRAISAL WORK COMPETENCY (PUERTO RICO AND UNITED STATES VIRGIN ISLANDS)

Valuation and consulting services undertaken include a wide range of property types, including office, retail, shopping centers, warehouse and manufacturing industrial facilities, housing projects, land for development, agricultural land, as well as specialized purpose properties (seaport terminals, assisted living projects, automobile dealerships, cemeteries, hospitals, outpatient medical and surgery facilities, fuel tank farms, etc.).

The works performed include a variety of purposes including financial/mortgage, sale/purchase, investment consulting, litigation support, legal depositions, financial feasibility studies, insurance purposes, appraisal review, etc.

## DAMAGE ASSESSMENT WORK COMPETENCY (Puerto Rico)

Damage assessment services undertaken include a variety of property types, including residential dwellings, condominiums, apartments, subdivisions (builders' risk), as well as commercial establishments (i.e. retail stores, restaurants, offices, etc.), automobile dealerships, branding signage, churches, chapels, and personal property (i.e. furniture, appliances, carpets, etc.). The works performed include a variety of purposes including insurance company's assessments for damage compensation, as well as property owner assessments for damage claims.

## APPRAISAL NOTABLE ASSIGNMENTS

My professional practice incorporates the delivery of a full compliance and high-quality product within established timeframes which results in a timely resolution to fulfill the needs of the client. The following list of properties present a sample of such works.

### SPECIAL-PURPOSE PROPERTIES

Seaport, Pan American Cruise Ship Terminal, Isla Grande, San Juan, Puerto Rico
Seaport, Former Naval Station Roosevelt Roads, Ceiba, Puerto Rico
Fuel Tank Farm, Former Naval Station Roosevelt Roads, Ceiba, Puerto Rico
Ceiba del Mar Dairy-Farm Portfolio, Hatillo, Puerto Rico
Flagship Ford Escorial Dealership, PR-3, Carolina, Puerto Rico
BMW Service Center, Guaynabo, Puerto Rico
Feasibility Study – MC Senior Care Assisted Living Facility, Dorado, Puerto Rico
Feasibility Study - Paradisus Assisted Living Facility, Hatillo, Puerto Rico
UPR Comprehensive Cancer Center Hospital, San Juan, Puerto Rico [4]
HIMA San Pablo Medical Ambulatory Center, Caguas, Puerto Rico [4]
HIMA San Pablo Cupey Hospital & Skilled Nursing Facility, San Juan, Puerto Rico [4]
EVERTEC / Banco Popular Cupey Center, San Juan, Puerto Rico [4]
Central Memorial Group Cemetery Portfolio, Puerto Rico [4]
Bella International Group Automobile Dealership Portfolio, Puerto Rico [4]

### INDUSTRIAL

SSW Realty (Structural Steel Works) Manufacturing Facility, Luchetti Industrial, Bayamón, Puerto Rico
Cruce Davila Business Park (former Pfyzer Pahrmaceutical), Barceloneta, Puerto Rico
Cesar Castillo Warehouse/Distribution Center, Guaynabo, Puerto Rico
Cesar Castillo Warehouse/Distribution Center, San Juan, PR

[4] Appraisal work performed in association with McCloskey, Mulet & Bonnin Appraisers P.S.C.

## RESIDENTIAL

Mansiones Residential Subdivision, Cabo Rojo, Puerto Rico[5]
Mansión del Lago Residential Subdivision, Ponce, Puerto Rico[5]
Santa María Residential Condominium, San Juan, Puerto Rico[5]
El Almendro Residential Condominium, Punta Las Marías, San Juan, Puerto Rico[5]
McCormack Baron Salazar - Puerta de Tierra Low-Income Housing Project, San Juan, Puerto Rico [5]
McCormack Baron Salazar - Las Gladiolas Low-Income Housing Project, San Juan, Puerto Rico [5]
Esmeralda del Sur Low-Income Housing Project, Patillas, Puerto Rico [5]

## COMERCIAL

Ponce Mall, Ponce, Puerto Rico
Lares Mall, Lares, Puerto Rico
Atrium Plaza Office Building, San Juan, Puerto Rico
Gallery Inn Hotel, Old San Juan, Puerto Rico
Plaza del Mar Shopping Center, Hatillo, Pueto Rico
Lago Alto Plaza Shopping Center, Trujillo Alto, Puerto Rico
Winston Churchill Professional Office Building, San Juan, Puerto Rico
Prudencio Rivera Office Building, San Juan, Puerto Rico
(P.R. Labor and Human Resources Department HQ)
La Parrilla Argentina Proposed Store (Leasehold Interest), Bayamón, Puerto Rico

---

## DAMAGE ASSESSMENT NOTABLE ASSIGNMENTS

Damage assessment works have included Motorambar (NISSAN & Kía) dealership portfolio branding, Barranquitas Memorial Funeral Home, Pisos de Caparra Residential Condominium, Casa Jeanette Beach Front Villa; plus, the parishes and chapels of the Catholic Church Fajardo-Humacao Diocece and Caguas Diocese which included several historic buildings, and many of the church buildings of the Puerto Rico Baptist Church; as well as many residential dwellings and small commercial, office and service facilities.

---

[5] Appraisal work performed in association with McCloskey, Mulet & Bonnin Appraisers P.S.C.

App. Ap. pp.89

B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS  Noreen Wiscovitch Rentas as Trustee for the estate of Juan Carlos Balcells Gallareta | DEFENDANTS  Amarilis González García<br>PO Box 3606595<br>San Juan PR 00936-0695 |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Aimee López Pabón, Esq. PO Box 9022512<br>San Juan PR 00902-2512 Tel:(787) 724-0230 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>□ Debtor      □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor    □ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>□ Debtor      □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor    ☒ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

This is a core proceeding under U.S.C.§363 (f),(h),(i) and /or (j), 11 U.S.C.§541 (a), 11 U.S.C.§726 (c) and FRBP 7001 (3) to obtain Court approval for the sale of both the interest of the estate and of co-owners of the property.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| | |
|---|---|
| **FRBP 7001(1) – Recovery of Money/Property**<br>□ 11-Recovery of money/property – §542 turnover of property<br>□ 12-Recovery of money/property – §547 preference<br>□ 13-Recovery of money/property – §548 fraudulent transfer<br>□ 14-Recovery of money/property - other | **FRBP 7001(6) – Dischargeability (continued)**<br>□ 61-Dischargeability - §523(a)(5), domestic support<br>□ 68-Dischargeability - §523(a)(6), willful and malicious injury<br>□ 63-Dischargeability - §523(a)(8), student loan<br>□ 64-Dischargeability - §523(a)(15), divorce or separation obligation<br>   (other than domestic support)<br>□ 65-Dischargeability - other |
| **FRBP 7001(2) – Validity, Priority or Extent of Lien**<br>□ 21-Validity, priority or extent of lien or other interest in property | **FRBP 7001(7) – Injunctive Relief**<br>□ 71-Injunctive relief – imposition of stay<br>□ 72-Injunctive relief – other |
| **FRBP 7001(3) – Approval of Sale of Property**<br>☒ 31-Approval of sale of property of estate and of a co-owner - §363(h) | |
| **FRBP 7001(4) – Objection/Revocation of Discharge**<br>□ 41-Objection / revocation of discharge - §727(c),(d),(e) | **FRBP 7001(8) Subordination of Claim or Interest**<br>□ 81-Subordination of claim or interest |
| **FRBP 7001(5) – Revocation of Confirmation**<br>□ 51-Revocation of confirmation | **FRBP 7001(9) Declaratory Judgment**<br>□ 91-Declaratory judgment |
| **FRBP 7001(6) – Dischargeability**<br>□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims<br>□ 62-Dischargeability - §523(a)(2), false pretenses, false representation,<br>   actual fraud<br>□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny<br><br>(continued next column) | **FRBP 7001(10) Determination of Removed Action**<br>□ 01-Determination of removed claim or cause<br><br>**Other**<br>□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*<br>□ 02-Other (e.g. other actions that would have been brought in state court<br>   if unrelated to bankruptcy case) |

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR  Juan Carlos Balcells Gallareta | | BANKRUPTCY CASE NO.      11-06637 | |
| DISTRICT IN WHICH CASE IS PENDING         PUERTO RICO | | DIVISION OFFICE | NAME OF JUDGE    Mildred Cabán Fllores |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | | |
| DATE                May 28, 2014 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)    AIMEE LOPEZ PABON, ESQ. | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

App. Ap. pp.91

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IN RE:**<br><br>**JUAN CARLOS BALCELLS GALLARETA**<br>DEBTOR<br><br>---<br><br>**NOREEN WISCOVITCH RENTAS**<br>TRUSTEE FOR THE ESTATE OF JUAN BALCELLS GALLARETA<br><br>Plaintiff<br><br>V.<br><br>**AMARILIS GONZÁLEZ GARCÍA**<br><br>Defendant | **CASE NO. 11-06637 MCF**<br><br>**CHAPTER 7**<br><br>Adv. No. _____ |

**COMPLAINT**
**TO OBTAIN COURT APPROVAL FOR THE SALE OF CO-OWNED PROPERTY OF THE ESTATE PURSUANT TO SECTION 363 (h) OF BAPCPA**

**TO THE HONORABLE COURT:**

COMES NOW, Plaintiff, NOREEN WISCOVITCH RENTAS, in her capacity as Trustee for the Estate of Juan Carlos Balcells Gallareta, through the undersigned attorney, and very respectfully to this Honorable Court alleges, shows, states and requests relief as follows:

**JURISDICTION AND VENUE**

1.      This is a core proceeding under 11 U.S.C. §363(f), (h), (i) and/or (j), 11 U.S.C. §541 (a), 11 U.S.C. §726 (c) and FRBP 7001 (3) to obtain Court approval for the sale of both the interest of the estate and of co-owners of the property described below, with the distribution of the proceeds of the sale to be effectuated according to the percentage of ownership of the Defendant and the Debtor.

App. Ap. pp.92

2.  This Honorable Court has jurisdiction over this case pursuant to 28 U.S.C. §157 (b)(2)(N) and 28 U.S.C. §1334.

3.  The United States Bankruptcy Court for the District of Puerto Rico has venue for this matter in accordance with 28 U.S.C. §1408.

<div align="center">

**PARTIES**

</div>

4.  Plaintiff, NOREEN WISCOVITCH RENTAS is the duly appointed Chapter 7 Trustee for the Estate of Juan Carlos Balcells Gallareta. She has standing to appear as plaintiff pursuant to 11 U.S.C. §323. The Bankruptcy Estate of Juan Carlos Balcells Gallareta has a percentage of ownership in the community of owners of the real property described below of 50%.

5.  Defendant, Amarilis Gonzalez Garcia, who, to the best of the Trustee's knowledge and belief, is of legal age, and resident of San Juan, Puerto Rico, with postal address at P.O. Box 3606595, San Juan, P.R. 00936-0695. Defendant is part of the community of co-owners of the real property described below; his percentage of co-ownership is 50% of the property described below. Defendant is not an incompetent person, thus with standing to appear as Defendant in this case.

<div align="center">

**ALLEGATIONS**

</div>

6.  Debtor, Juan Carlos Balcells Gallareta, filed the present bankruptcy petition as a voluntary petition under Chapter 7 of the Bankruptcy Code on August 5, 2011. *Dkt. 1.* Plaintiff was appointed Chapter 7 Trustee of the Bankruptcy Estate on August 6, 2011. *Dkt. 5.*

7.  Defendant and the estate of Juan Carlos Balcells Gallareta are the owners in community property in the property described in the Registry of the Property as follows:

> -----URBANA: Solar radicado en la Urbanización Villas Reales, localizada en el Barrio Santa Rosa del término municipal de Guaynabo, Puerto Rico, que se describe en el plano de inscripción, con el número, área y colindancias que se relacionan a continuación: Número del solar: 33-E. Área del solar 375.42 metros cuadrados. En lindes: por el NORTE, en una distancia de 25.07 metros lineales,

App. Ap. pp.93

con el solar número 32 del mismo bloque; por el SUR, en una distancia de 25.00 metros lineales, con el solar 34 del mismo bloque; por el ESTE, en dos alineaciones continuas que suman según plano 15.00 metros lineales, con parcela de uso público; y por el OESTE, en una distancia de 15.00 metros lineales, con l acalle número 7 de la urbanización, también conocida como Calle Versalles. Enclava una casa de concreto para fines residenciales.

------The above described property is registered at page 250 of volume 1197 of Guaynabo, Property #41,852 of the Registry of the Property of Guaynabo.

8.    To the best of Plaintiffs knowledge and belief, the above-described property may have valid and perfected liens, as they appear from the Registry of the Property.

9.    Plaintiff, as the Chapter 7 Trustee, intends to sell this real property pursuant to the provisions of 11 U.S.C. §363 (f), (h), (i) and/or (j).

10.    Defendant, together with the Debtor in this case, are jointly liable for the outstanding secured claims due to the holder of the mortgage note and/or of any other secured and/or unsecured claims, if any.

11.    Plaintiff seeks to sell the property listed above in order to distribute the resulting proceeds to the creditors of this Estate. Plaintiff states that to obtain benefit from the sale of these real property, the same must be sold as a single unit and not only the percentage of interest held by the Estate.

12.    Due to the above, 50% of the net proceeds of the sale recovered by the Plaintiff shall be distributed to Defendant after all administrative expenses have been paid.

13.    The Chapter 7 Trustee, as Plaintiff, purports the following:

    a)    Partition in kind of the property between the Estate and the Defendant is impracticable;

    b)    Sale of the estate's undivided interest would realize significantly less for the Estate than a sale of the entire property free of the interests of such co-owner;

    c)    The benefits of the Estate of a sale of such property free of the interest of Defendant outweighs the detriment, if any, to the Defendant; and

App. Ap. pp.94

d) The property involved is not used in the production, transmission, or distributions of electric energy or natural gas sold for heat, power, or light.

## PRAYER FOR RELIEF

**WHEREFORE**, it is requested from this Honorable Court for relief as follows:

A. Issue judgment allowing the Trustee to sell the property of the Estate described above free and clear of co-ownership interest, subject to 11 U.S.C. §363 (h), (i) and/or (j);

B. Issue judgment allowing the Trustee to receive and distribute to creditors of the bankruptcy estate the proceeds of the sale of this property pursuant to the provisions of 11 U.S.C. §541 (a) and 11 U.S.C. §726 (c) in compliance with In Re Bobonis, 191 BR 268, Bankr. Court, D. Puerto Rico (1995);

C. Deliver to the Defendant 50% of the surplus that may result after payment of the administrative expenses of the Estate.

### RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico, this 29th day of May, 2014.

/s/ **RAFAEL A. GONZÁLEZ VALIENTE**
**USDC-PR 225209**
Email: rgonzalez@lbrglaw.com

/s/ **AIMEÉ LÓPEZ PABÓN**
**USDC-PR 229906**
Email: alopez@lbrglaw.com

**Latimer, Biaggi, Rachid & Godreau, LLP.**
PO Box 9022512
San Juan, PR 00925-2512
Tel: (787) 724-0230
Fax: (787) 724-9171

App. Ap. pp.95

# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE DISTRICT OF PUERTO RICO

IN RE:

**JUAN CARLOS BALCELLS GALLARRETA** :      **CASE NO. : 11-06637 (MCF)**
                                 :
     **DEBTOR.**                          :           **CHAPTER 7**
_____

## MOTION TO WITHDRAW LEGAL REPRESENTATION

**TO THE HONORABLE COURT**:

      **COMES NOW**, priority creditor Amarilis González García ("González"), through her undersigned counsel, and most respectfully states and prays as follows:

      1.    The law offices of the undersigned counsel had been retained to represent González in the instant proceedings.

      2.    González has requested that the appearing counsel cease to represent her in this case, and that González continue to be served with copies of any pleadings and notices filed by any creditors and parties in interest, at her email: amarilis@ymail.com and her address of record as per the master mailing list in the case.

      3. In light of the above stated, the undersigned counsel prays for leave from this Honorable Court to cease his legal representation of González in this case, and that she be granted a reasonable amount of time to enter another appearance.

## NOTICE TO CREDITORS AND PARTIES IN INTEREST

      Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this

App. Ap. pp.96

paper with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

**WHEREFORE**, the appearing counsel prays for leave from this Honorable Court to cease his legal representation of González in this case, that she be granted a reasonable period of time to enter a new appearance, with the entry of any other relief in her favor which the Court may deem proper.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 23rd day of September, 2014.

**I HEREBY CERTIFY**, that on this date I filed the instant notice through the Court's ECF system, which will notify participants of record, including Noreen Wiscovitch Rentas, Esq., Chapter 7 Trustee, and Lyssette Morales, Esq., counsel for debtor. I also served copy of this motion by email on Amarilis González García at her email of record: amarilis@ymail.com.

s/ Fernando Van Derdys, Esq.
USDC-PR 201913

**Law Offices of F. Van Derdys**
P.O. Box 9021888
San Juan, PR 00926-5955
Tel. 787.519.2211
Fax 787.292.2345
E-mail: fvanderdys@onelinkpr.net

2

App. Ap. pp.97

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE:                                        :
                                              :
JUAN CARLOS BALCELLS GALLARRETA,              :        Case No.  11-06637
                                              :
        Debtor                                :        Chapter 7
_____:

### NOTICE OF APPEARANCE AND REQUEST FOR NOTICE

**TO THE HONORABLE COURT:**

Please take notice that Attorney Kendra Loomis hereby enters a notice of appearance as counsel for creditor, Amarilis González García, and requests notification of all CM/ECF filings.

**RESPECTFULLY SUBMITTED,**

In San Juan, Puerto Rico, this 12th day of December 2014.

**Kendra K. Loomis**
**Attorney at Law**

By: /s/ Kendra Loomis
Kendra Loomis
P.O. Box 9022001
San Juan, Puerto Rico 00902-2001
USDC PR No. 227408
Phone: (787)370-0255
E-mail: Loomislegal@gmail.com

App. Ap. pp.98

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          :
                                                :
JUAN CARLOS BALCELLS GALLARRETA,   :       Case No.  11-06637
                                                :
        Debtor                                  :       Chapter 7
_____:

### MOTION RESIGNING LEGAL REPRESENTATION

**TO THE HONORABLE COURT:**

In mid-December of 2014, the undersigned was retained to represent creditor, Amarilis
Gonzalez Garcia ("Gonzalez"), in this bankruptcy case and in Adv. No. 14-00137, a complaint
filed against Gonzalez by the Chapter 7 trustee, Noreen Wiscovitch Rentas.  Since that time,
Gonzalez, who is an attorney and previously represented herself, has indicated that she would
like to resume her representation of herself and has requested that the undersigned resign
representation.  The case files are being returned to Gonzalez this week.

**WHEREFORE**, the undersigned requests that the Court grant this motion allowing the
resignation of legal representation of creditor, Amarilis Gonazalez Garcia.

**RESPECTFULLY SUBMITTED,**

In San Juan, Puerto Rico, this 10th day of January 2015.

                                **Kendra K. Loomis**
                                **Attorney at Law**

                                By: /s/ Kendra Loomis
                                Kendra Loomis
                                P.O. Box 9022001
                                San Juan, Puerto Rico 00902-2001
                                USDC PR No. 227408
                                Phone: (787)370-0255
                                E-mail: Loomislegal@gmail.com

App. Ap. pp.99

**IN THE UNTED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

| IN RE: | CASE NO.: 11-06637 (MCF) |
|---|---|
| JUAN CARLOS BALCELLS GALLARETA | |
| DEBTOR | CHAPTER 7 |

**NOTICE OF APPEARANCE AND
REQUEST FOR SERVICE OF DOCUMENTS**

**PLEASE TAKE NOTICE THAT** *C. Conde & Assoc.,* on behalf of Amarilis González García, a creditor and Defendant, hereby enters its appearance as counsel for said party in the above proceedings, and pursuant to Federal Rule of Bankruptcy Procedure 2002 (F.R.B.P. 2002), requests that its name be added to the master address list of the Clerk of the Court in the above case and that all documents served or required to be served in this case be notified to the address below.

**PLEASE TAKE FURTHER NOTICE** that the foregoing request includes the notices and documents referred to in Rule 2002 and also includes, without limitations, notices of any orders, pleadings, motions, applications, complaints, demands, hearings, requests, or petitions, answering or reply papers, memoranda and briefs in support of any of the foregoing and any and all other such documents.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 5th day of February 2015.

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the participants appearing in said record, including the Debtor, the Chapter 7 Trustee and the US Trustee.

C. CONDE & ASSOC.
*/s/Luisa S. Valle Castro*
Luisa S. Valle Castro, Esq.
USDC No. 215611
254 San José Street, 5th Floor
Old San Juan, Puerto Rico  00901
Telephone:  787-729-2900
Facsimile:  787-729-2203
E-Mail:  *ls.valle@condelaw.com*

App. Ap. pp.100

## IN THE UNTED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF PUERTO RICO

| IN RE: | CASE NO.: 11-06637 (MCF) |
|---|---|
| JUAN    CARLOS    BALCELLS GALLARETA | |
| | CHAPTER 7 |
| DEBTOR | |

### MOTION REQUESTING AUTHORIZATION TO
### WITHDRAW AS COUNSEL FOR CREDITOR

**TO THE HONORABLE COURT:**

    **COMES NOW** the law firm of C. Conde & Assoc., through the undersigned attorney and very respectfully STATES and PRAYS:

1. The law firm of C. Conde & Assoc. has been representing Ms. Amarilis González in this Chapter 7 case.

2. Due to the fact that the fees and costs related to the litigation of the adversary proceeding have been considerable, Ms. González has requested that the law firm withdraw as counsel for the record.  Ms. González has advised that she will continue with her own legal representation.

3. The undersigned herein wish to advise that the law firm has provided Ms. González with a credit on account of all outstanding fees and costs that have been incurred and that no amounts are owed as of this date.

4. Furthermore, the law firm herein informs the Court that a meeting has been scheduled in order to return today the files related to this case and the adversary proceeding.

1

App. Ap. pp.101

5. Ms. González has also been informed of the status of the proceedings, as well as to the fact that the request for summary judgement filed by the Trustee has been denied and that the proceedings in the adversary proceeding will continue.

**WHEREFORE** the law firm very respectfully requests that for the above stated reasons this Honorable Court authorize the withdrawal of C. Conde & Assoc. as counsel for Ms. González.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 8th day of February 2016.

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the parties appearing in said system including the Trustee and to Ms. González by email to amarilis@ymail.com.

**C. CONDE & ASSOC.**
San Jose St. #254
Suite 5
San Juan, PR. 00901
Tel.: (787) 729-2900
Fax: (787) 729-2203
Email: ls.valle@condelaw.com

*s/Luisa S. Valle Castro*
By: Luisa S. Valle Castro, Esq.
USDC No.: 215611

2

App. Ap. pp.102

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE

JUAN C. BALCELLS GALLARETA

Debtor

Case No. 11-06637

CHAPTER 7

## ENTRY OF APPEARANCE

**TO THE HONORABLE COURT:**

**COMES NOW**, Amarilys González García (hereinafter referred to as "González"), through its undersigned counsel, and very respectfully states and prays as follows:

1. The undersigned will be representing Gonzalez in the above captioned case.

2. On March 27, 2019, Noreen Wiscovitch Rentas, as Chapter 7 Trustee of the Bankruptcy Estate, filed an Objection to Claim at D.E. 5-1 [D.E. 157].

3. Pursuant to Local Rule 3007-1(c), within thirty (30) days after service of the Objection to Claim shall serve and file an objection or other appropriate response.

4. The current deadline to file the response to the Trustee's Objection of Claim at D.E. 5-1 expires on April 26, 2019.

5. On even date herewith Gonzalez is filing a request for a brief extension of time to respond to the Trustee's Objection to Claim 5-1.

**WHEREFORE**, González respectfully prays this Honorable Court takes notice of the aforementioned.

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants of CM/ECF system.

App. Ap. pp.103

**NOTICE**

Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this April 26ʰ, 2019.

**BERRÍOS FALCÓN, LLC**
Capital Center Bldg., South Tower                 */s/ Roberto E. Berríos Falcón*
Suite 901                                          Roberto E. Berríos Falcón
239 Arterial Hostos Ave.                           USDC-PR No. 228714
San Juan, P.R. 00918                               rblawpr@yahoo.com
T. 787.274.8600

App. Ap. pp.104

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

**IN RE**

**JUAN C. BALCELLS GALLARETA**

**Debtor**

Case No. 11-06637


CHAPTER 7

## MOTION TO WITHDRAW AS COUNSEL OF RECORD FOR CREDITOR
## AMARILYS GONZALEZ GARCIA

TO THE HONORABLE COURT:

Pursuant to L. Cv. R. 83D (b), the undersigned attorney very respectfully requests leave to withdraw as counsel of record for Creditor Amarilis González García (hereinafter, referred to as the "González"), and in support thereof states as follows:

1.      González retained the undersigned attorney to represent her interests in the above-captioned matter.

2.      Irreconcilable differences have arisen that render the undersigned attorney unable to adequately represent González in the above-captioned matter.

3.      Accordingly, the undersigned attorney respectfully requests this Honorable Court grant him leave to withdraw as counsel of record for González, as he can no longer handle this matter.

4.      This Motion is filed in good faith and not for the purpose of delay.

5.      Should this motion be granted, no harm shall befall the parties.

6.      González has been forwarded a copy of this Motion and was informed of her duties to this Honorable Court, the implications of the withdrawal of the undersigned attorney as counsel

of record at this time, and the desirability for González to take immediate steps to retain successor

counsel.

WHEREFORE, the undersigned respectfully requests that this Honorable Court enter an

Order:

(a)        Granting this Motion;

(b)        Allowing the undersigned attorney to withdraw as counsel of record for Defendant

in this action;

(c)        Providing the Defendant with thirty (30) days to retain new counsel; and

(e)        Directing all future pleadings, motions, discovery, and any and all other

communications concerning this matter be sent directly to Defendant to the following addresses:

Amarilis González García
PO Box 984
Guaynabo, PR 00970
amarilis@ymail.com

Amarilis González García
#381Versalles Street
Urb. Villas Reales
Guaynabo, PR 00969


**CERTIFICATE OF SERVICE:** I hereby certify that on this same date, I electronically

filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to all participants of CM/ECF system.


## NOTICE

Within fourteen (14) days after service as evidenced by the certification, and an additional

three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against

whom this paper has been served, or any other party to the action who objects to the relief sought

App. Ap. pp.106

herein, shall serve and file an objection or other appropriate response to this paper with the clerk's

office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or

other response is filed within the time allowed herein, the paper will be deemed unopposed and

may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against

public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this August 11th, 2020.

/s/ Roberto E. Berríos Falcón
Roberto E. Berríos Falcón
USDC-PR No. 228714
rblawpr@yahoo.com

**BERRÍOS FALCÓN, LLC**
Capital Center Bldg., South Tower
Suite 901
239 Arterial Hostos Ave.
San Juan, P.R. 00918
T. 787.274.8600

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE:

JUAN CARLOS BALCELLS GALLARETA,

DEBTOR.

CASE NO. 11-06637 MCF

CHAPTER 7

### OBJECTION TO CLAIM # 5-1

TO THE HONORABLE COURT:

**Comes Now**, Noreen Wiscovitch Rentas, as Chapter 7 Trustee of the Bankruptcy Estate of Juan Carlos Balcells Gallareta, represented by its undersigned attorney and to this Honorable Court very respectfully states and prays as follows:

Chapter 7 Trustee hereby objects to the amount of Claim #5-1, filed by the Amarilis Gonzalez Garcia. The claim is objected because the amount is not owed as evidenced by the Minutes and the Resolution of the hearing held on July 23, 2012, notified on August 27, 2012.

### Legal Basis for Objection to Claim

As per Section 502(a) of the Bankruptcy Code transcribed above, objections to claims may be filed by a party in interest. In Chapter 7 cases such as the one at bar, among the duties of the Chapter 7 Trustee are to "examine proofs of claims and object to the allowance of any claim that is improper", pursuant Section 704 (a)(5) of the Bankruptcy Code.

"Unlike a proof of claim, which must be filed before the bar date, an objection to a proof of claim may be filed at any time." In re Thompson, 965 F. 2d at 1147 (Citing In re Kolstad, 928 F. 2d 171, 174 (5th Cir. 1991)). So the herein objection is timely filed.

Pursuant to Rule 3007 and 11 U.S.C. §502(a) a properly filed claim is deemed allowed unless objected to. In re Farmers' Co-op of Arkansas & Oklahoma, Inc., 43 BR 619 (Bankr. WD Ark, 1984). Once an objector offers sufficient evidence to overcome the prima facie validity of a claim, a claimant is required to meet the usual burden of proof to establish the validity of its claim. In re Rockefeller Ctr. Props., 272 BR 524 (Bankr. NDNY, 2000).

### Objections to Claim 6-1

(a) The amount is incorrect and lacks basis:

The alleged DSO Claim is in the amount of $174,128.00 based on an Opinion and Order of the First Instance Court of Bayamon. The determination of this amount was later decreased by an Amended Order issued by the Court. See Exhibit 1- Minuta y Resolucion of July 23, 2012 Hearing.

The correct amount determined to be owed by State Court is $125,046. The Trustee does not object to a claim in the amount of $125,046 as owed pre-petition child support, except to the extent it included payments already made to the mortgage company. The Trustee has insufficient information to determine the amount paid towards the mortgage. Notwithstanding such amount has to be reduced from the $125,046.00. (See Exhibit 1)

Wherefore, the Trustee request that claim no. 5-1 be disallowed in the amount of $174,128 and allowed as pre-petition child support in the amount of $125,046 minus the amount paid by the Debtor towards the mortgage. Therefore, Claim 5-1 should be partially disallowed.

WHEREFORE, Trustee respectfully requests that the Court take note of the above and partially disallow Claim 5-1 as it is not owed.

### CERTIFICATION THAT CLAIMANT IS NOT AN ACTIVE SERVICE MEMBER

Claimant is an active participant of the instant case. Throughout her participation she has disclosed that is not an active service member.

### NOTICE OF OBJECTION TO CLAIMS

TO: CREDITORS AND PARTIES IN INTEREST Within thirty (30) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the objection will be deemed unopposed and may be granted unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the court, the interest of justice requires otherwise. If you file a timely response, the court may schedule a hearing.

### CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on March 27, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties in the case. A copy of the Objection to Claim was also sent via First Class Mail to AMARILIS GONZALEZ GARCIA, PO BOX 3606595, SAN JUAN, PR 00936-0695.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this March 27, 2019.

/s Noreen Wiscovitch-Rentas
NOREEN WISCOVITCH RENTAS
Chapter 7 Trustee
PMB 136
400 Kalaf Street
San Juan, Puerto Rico 00918
Tel: (787) 946-0132
noreen@nwr-law.com

App. Ap. pp.110

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IN RE:** | **CASE NO. 11-06637 MCF** |
| **JUAN CARLOS BALCELLS GALLARETA**<br>DEBTOR | **CHAPTER 7** |

### OBJECTION TO CLAIM # 5-2

**TO THE HONORABLE COURT:**

**COMES NOW**, Noreen Wiscovitch Rentas, Trustee of the Chapter 7 Bankruptcy Estate of Juan Balcells Gallareta, represented by its undersigned attorney and to this Honorable Court very respectfully states and prays that:

1.       On August 5, 2011, Debtor filed a Chapter 7, voluntary petition. *Dkt.1.*

2.       On February 8, 2012, Creditor, Amarilis González García filed Claim 5-1.

3.       On March 27, 2019, Plaintiff filed an Objection to claim #5-1. *Dkt.157*

4.       On May 3, 2019, Defendant filed a Response in Opposition to Objection to Claim #5-1. *See Dkt. 164*.

5.       On July 2, 2019, this Honorable Court declared moot Chapter 7 Trustee's Objection to Claim Number 5 filed by Claimant Amarilis Gonzalez. *Dkt. 157*.

6.       An adversary complaint for this case was filed on May 30, 2014, to obtain Court approval for the sale of both the interest of the estate and of co-owners of the property described below, with the distribution of the proceeds of the sale to be effectuated according to the percentage of ownership of the Defendant and the Debtor, pursuant 11 U.S.C. §363(f), (h), (i) and/or (j), and 11 U.S.C. §541 (a).

7.    On May 3, 2019, alleged Creditor file an amended POC, No. 5-2. *Dkt.179 on Adversary Proceeding.*

8.    POCs, their amendments, objections and replies must be filed within the bankruptcy lead case.

9.    The amended POC must be disallowed for being incorrectly filed.

10.    Also, said claim must be disallowed due to the fact that on alleged creditor's response of May 3rd, 2019 *(Dkt. 164)*, two sworn statements from her children, Juan Francisco Balcells González and Alexandra Balcells González, were included as attachments stating that they are both of legal age. *Dkt. 164.*

11.    Alleged Creditor, also states that her "children" are 21 and 24 years old on *Docket 177*, Page 5, paragraph 7). Article 247 (31 L.P.R.A. sec. 971) of the Civil Code of Puerto Rico states that adulthood is reached at 18 years old. Therefore, Defendant lacks judicial standing to claim and/or receive any DSO payments since both "children" are adults with capacity to claim, receive and manage their child support payments.

12.    Trustee hereby objects the aforementioned amended POC due to the fact that to this date the Creditor who presented Amendment to Claim 5 (Claim 5-2), is not the party to whom the money is owed, therefore said alleged creditor has no legal standing.

13.    In the alternative, the State Court determined that the correct amount owed for the Domestic Support Obligation (DSO) was $125, 046.00, in a Minute-Resolution from 2012. This amount included outstanding mortgage payments.

14.    The amounts included as mortgage payment cannot be part of the DSO claim, since once the property is sold the bank will be paid the mortgage in full.

15.    Alleged creditor has failed to pay her part of the mortgage payments since June 2014.

16.     The delay of the payment of the DSO has been caused by the holdups created by the alleged creditor herself.

17.     All of the interest accrued after 2011, are not payable by the estate to the alleged creditor due to the fact that said delays have been self-inflicted.

18.     The amended claim has been presented with unclean hands.

19.     The Trustee also requests that the amount corresponding to mortgage payments made by the Debtor be reduced from the total in the Minute – Resolution from 2012, to have a final figure of the actual DSO owed.

20.     In addition, the amounts pertaining to unpaid mortgage payments will need to be substracted from the amended claim, because once the property is sold mortgage will be paid in full.

## LEGAL BASIS

### I.     *Legal Standing*

1.     It is well stated law that all family decisions in a Bankruptcy Court will be based on state family law.

2.     "The laws of marriage and divorce, and the property divisions incident thereto, belong uniquely to the several states. Federal courts have traditionally abstained when faced with family law questions and when a bankruptcy judge is presented with a bankruptcy that is primarily caused by the liability imposed by a divorce, the bankruptcy judge should give serious consideration to abstaining."

3.     Puerto Rico's Civil Code, in its Article 247 (31 L.P.R.A. sec. 971), states that adulthood is reached at 21 years old. Therefore, Defendant lacks judicial standing to claim and/or receive any DSO payments since both "children" are adults with capacity to claim, receive and manage their child support payments.

4.     "However, once children are emancipated, they have the capacity to represent their own interests in court, not being able their parents to do so from that moment on. In the case of due or overdue alimony, the parent does not have the legitimacy to represent his adult child

(entitled to the alimony) or to continue the action to collect the unsatisfied amounts, even if the parent initiated the action originally."[1] *Sotomayor vs. Colón Cruz*, 2009 TSPR 134. [Translation ours.]

5.    "In the case of alimony that is due or in arrears, **the parent does not have the legitimacy** to represent his child who has reached the majority of age or to continue the action to collect the unsatisfied amounts, even if it was the parent who initiated the action originally"[2] *Sotomayor vs. Colón Cruz*, *supra*. [Translation ours.]

> "The action for collection of past-due support owed to minor, unemancipated children is undoubtedly one in which the father or mother with patria potestas and custody of the children is perfectly entitled to represent said minors. However, even when an action falls within the scope of that duty or power of representation, its exercise by the parent will depend on the validity of the legal status on which his or her power of representation rests. That is, the father or mother may only represent his or her child while the latter is under his or her patria potestas. Once patria potestas ends for any of the reasons listed in the Code, or once it is taken away or suspended by the court, the parents' power of representation over their children ends, unless the Code should expressly provide otherwise. *See* Puig Brutau, *supra*, at 274-279." *Rosario v. Ramos*, 134 D.P.R. 3 (1993).

6.    "Once the children are emancipated (unless such emancipation is granted by the parents under the provisions of chapter 109 of the Civil Code, 31 L.P.R.A. §§ 911-916), the children acquire the capacity to represent their own interests in court and the parents can no longer do so. Civil Code sees. 240, 246, and 247 (31 L.P.R.A. §§ 932, 955, and 971); *Álvarez v. Aponte*, 83 P.R.R. 595 (1961); *Vázquez v. Santos*, 49 P.R.R. 298 (1935); *Key Nieves v. Oyola Nieves*, 116 D.P.R. 261 [16 P.R. Offic. Trans. 321] (1985).

7.    In this case, both, Juan Francisco Balcells González and Alexandra Balcells González, have reached the majority of age. *See Claim 5-2, Supporting Documents.*

8.    The minors whom the Creditor represented in this case have acquired the majority of age, hence the Creditor has no standing to pursue the petition of their interests of the DSO.

---

[1] "No obstante, una vez los hijos son emancipados, éstos tienen la capacidad para representar sus propios intereses ante los tribunales, no pudiéndolo hacer sus padres desde ese momento. En el caso de las pensiones alimenticias vencidas o atrasadas, el progenitor carece de legitimación para representar a su hijo alimentista mayor de edad o para continuar la acción de cobro de las cuantías no satisfechas, aunque haya sido el progenitor quien inició la acción originalmente."
[2] "En el caso de las pensiones alimenticias vencidas o atrasadas, el progenitor carece de legitimación para representar a su hijo alimentista mayor de edad o para continuar la acción de cobro de las cuantías no satisfechas, aunque haya sido el progenitor quien inició la acción originalmente" *Sotomayor vs. Colon Cruz*; 2009 TSPR 134

## II.    _Rule 3007 and 11 U.S.C. sec.502 (a)_

1.    On August 5, 2011, Debtor filed a Bankruptcy petition under Chapter 7 of the Bankruptcy Code. *Dkt.1*

2.    Pursuant to Rule 3007 and 11 U.S.C. sec.502 (a) a properly filed claim is deemed allowed unless objected to. _In re Farmers' Co-op of Arkansas & Oklahoma, Inc_., 43 BR 619 (Bankr. WD Ark, 1984). Once an objector offers sufficient evidence to overcome the *prime facie* validity of a claim, a claimant is required to meet the usual burden of proof to establish the validity of its claim. _In re Rockefeller Ctr. Props._, 272 BR 524 (Bankr. NDNY, 2000).

3.    According to Section 502 (a) of the Bankruptcy Code, in Chapter 7 cases such as the one at bar, among the duties of the Chapter 7 Trustee are to "examine proofs of claims and object to the allowance of any claim that is improper", pursuant to Section 704 (a)(5) of the Bankruptcy Code.

4.    An improper claim is one that is not filed by the proper creditor.

5.    *Black's Law Dictionary*, Deluxe Tenth Edition, Edited by Brian A. Garner, defines improper as "Incorrect; unsuitable or irregular. Fraudulent or otherwise wrongful."

6.    "A challenge to the standing of a claimant in a bankruptcy case is a substantive objection under 11 USCS § 502 (b)(1), which provides that a claim may be disallowed to the extent the claim is unenforceable against the bankruptcy debtor under any applicable law, including state law. With respect to standing, an allegation essential to any claim is that the claimant is the proper party in interest." _In re Richter_, 478 B.R. 30 (2012).

7.    "In a bankruptcy case, a challenge to standing is a substantive objection under 11 USCS § 502 (b)(1) because if a claimant has not proven it is the owner of a claim with a right to

payment (i.e. the party with standing), the claim is unenforceable against the bankruptcy debtor

under state law." *In re Richter*, *supra*.

8. "The Bankruptcy Code defines a 'creditor' as an 'entity that has a claim against the

debtor that arose at the time of or before the order for relief', and defines a 'claim' as a 'right to

payment…" *In re Richter*, *supra*.

> "This Court is not alone in determining a challenge to standing is a substantive
> objection under § 502(b)(1). In support of this conclusion, the U.S. Bankruptcy
> Court for the Northern District of Oklahoma explained: Debtors also allege that
> **they have no liability on the claims as filed because Claimants have not proven**
> **they are the owners of the claims with a right to payment**; that even if Claimants
> own the subject claims, Debtors dispute the amounts asserted in the proofs of claim;
> and that such claims are not enforceable under Oklahoma law. These objections are
> sufficient to prevent the claims from being deemed allowed under § 502(a), and to
> trigger Court determination of the claims under § 502(b)(1). . .In the face of a
> substantive objection by a party in interest, the Court is required to determine the
> amount of each claim as of the petition date, and to allow the claim in that amount,
> except to the extent the claim is unenforceable against the debtor or the debtor's
> property under applicable law. **Claimants therefore must first establish that they**
> **hold enforceable claims against the respective Debtors.**"

9. Trustee's objection substantive objection to claim 5-2, under § 502 (b)(1) of the

Bankruptcy Code meets the required burden of proof to overcome the *prima facie* validity of a

claim.

### III. *Section 363 (h) of the Bankruptcy Code, Administration of Property of the Estate*

10. Plaintiff, as Chapter 7 Trustee for the Bankruptcy Estate of Juan Balcells, is the only

one with authority to administer the property of the estate, including the aforementioned real estate

property. *See,* 11 U.S.C. §704; *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343,

352 (1985).

11.     As administrator and representative of the Bankruptcy Estate under the provisions

of the Bankruptcy Code, Chapter 7 Trustee may dispose of the property of the estate. _Vélez v. Pérez_

_León_, (_In re Pérez León_), 2013 WL 5232331 (Bankr. D.P.R., 2013)

12.     The bankruptcy court has jurisdiction over the distribution of property even if it has

abstained to allow the state court to determine the rights of the spouses to a property division. _In_

_re Sparks_, 181 B.R. 341 (Bankr. N.D. Ill. 1995); _In re Davis_, 133 B.R. 593 (Bankr. E.D. Va. 1991)

(trustee could represent the estate's interest in property division to be determined in state court).

13.     Section 363 (h) of the Bankruptcy Code states "Notwithstanding subsection (f) of

this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section,

and the interest of any co-owner in property in which the debtor had, at the time of the

commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by

the entirety, only if— (1) partition in kind of such property among the estate and such co-owners

is impracticable; (2) sale of the estate's undivided interest in such property would realize

significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs

the detriment, if any, to such co-owners; and (4) such property is not used in the production,

transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat,

light, or power."

14.     It seems then, at least to the courts in this territorial jurisdiction, that the satisfaction

of section 363 (h) (2) is generally known. _In re Griffin_, 123 B.R. at 935-36 (Bankr. S.D. Fla.,

1991); _Maiona v. Vassilowitch_ (_In re Vassilowitch_), 72 B.R. 803, 808 (Bankr. D. Mass, 1987)

(concluding that in the absence of evidence to the contrary, the court may take judicial notice that

a sale of a 50% interest would be worth less than the sale of the entire interest); Collier on
Bankruptcy §363.08[4][b] (16th ed.)

15.     Plaintiff, as the Chapter 7 Trustee, has the authority to sell this real property
pursuant to the provisions of 11 U.S.C. §363 (f) and (h).

16.     The case of *In re Bobonis Lang*, 191 B.R. 268 (Bankr. D.P.R.,1995), clearly states
that ".... where one spouse files bankruptcy in Puerto Rico, all that debtor's property as well as the
community property becomes property of the estate by operation of § 541 (a )(2)( A) ... "

17.     *In re Bobonis Lang*, *supra*, also concludes: " ...... the court finds that Puerto Rico
recognizes community property, thereby, 11 U.S.C. §541(a) (2) (A) applies to the determination
of property of the estate where one spouse files a bankruptcy petition. In addition, the court finds
that the requirement of a non-debtor spouse's consent prior to the disposition of community
property where the other files for bankruptcy petition is preempted as it is contrary to federal
bankruptcy law."

18.     Furthermore, Section 725 of the Bankruptcy Code states that "[a]fter the
commencement of a [bankruptcy case] under ... chapter 7, but before final distribution of property
of the estate under section 726 of this, the [chapter 7] trustee, after notice and a hearing, shall
dispose of any property in which an entity other than the [bankruptcy] estate has an interest ... and
that has not been disposed of under another section of this title."11 U.S.C. § 725.

19.     The Trustee has tried to sell the aforementioned property for the benefit of all
creditors, Creditor herself included.

20.     Creditor has frustrated Trustees' actions with her unwillingness to sell the property
at the appraised price, and has not paid her part of the mortgage since 2014.

### IV.     *Section 541 Bankruptcy Code and Puerto Rico Family Law*

21.     As section 541 of the Bankruptcy Code states: "(a) The commencement of a case

under section 301, 302, or 303 of this title creates an estate. Such estate is compromised of all the

following property, wherever located and by whomever held: (1) Except as provided in subsections

(b) and (c) (2) of this section, all legal or equitable interests of the debtor in property as the

commencement of the case; (2) All interests of the debtor and the debtor's spouse in community

property as of the commencement of the case that is – (A) under sole, equal, or joint management

and control of the debtor; or (B) liable for an allowable claim against the debtor, or for both an

allowable claim against the debtor's spouse, to the extent that such interest is liable."

22.     When a conjugal partnership is established under Puerto Rico law, the earnings or

profits indiscriminately obtained by either of the spouses during marriage shall belong to the

husband and wife in equal share. *Article 1295 Civil Code of Puerto Rico, 31 L.P.R.A. §3621.*

23.     When the conjugal partnership ceases to exist, the conjugal partnership turns into

an ordinary community. <u>*Gracía González v. Montero Saldaña*</u>, 7 P.R. Off. Trans. 353, 363-364,

107 D.P.R. 301, 331-332 (1978), citing Puig Brutau, *Fundamentos de Derecho Procesal Civil*,

Tomo 4, Vol. 1 (1967), p.784. *Also see*, Serrano Geyls, *Derecho de Familia de Puerto Rico y*

*Legislación Comparada*, Vol. 1, Interamerican University School of Law, 2007 ed., p. 457;

<u>*Roselló Puig v. Rodríguez*</u>, 183 D.P.R. 81, 94 (2011).

24.     All of the assets of a spouse, as well as the community property, becomes property

of a bankruptcy estate of Puerto Rico Law.[3] <u>*In re Lang*</u>, 191 B.R. 268 (Bankr. D.P.R. 1995), citing

---

[3] "In Puerto Rico, upon marriage, a new entity is created, which commences on the day of marriage and will own property acquired for a valuable
consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of
the spouses only; that obtained by the industry, salaries, or work of the spouses or of either of them; the fruits, income, or interest collected or
accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses." In re Padilla, 2011
Bankr.LEXIS 4662 at * *10–11, 2011 WL 5911243 at *4 (Bankr.D.P.R.2011), citing Articles 1296 and 1401 of the Civil Code of Puerto Rico, 31
L.P.R.A. §§ 3622 and 3641, and *Fernández–Cerra v. Commercial Insurance Co. of Newark*, 344 F.Supp. 314, 316 (D.P.R.1972).

Bankr. Code, 11 U.S.C.A. §541 (a) (2) (A); 31 L.P.R.A. §§ 284, 286, 3621, 3622, 3631, 3641, 3647.

25.     At the instant case, the assets of the community property comprised between Debtor and Defendant have never been divided. Therefore, when the Debtor filed for bankruptcy, the Bankruptcy Estate immediately comprised all nonexempt property, including any "unpartitioned post-marital community property." _In re Brassett_, 332 B.R. at 754-755; _In re Robertson_, 203 F.3d. at 861-862; _In re Pérez León_, 2013 WL 5232331.[4]

> "Payments on a former marital residence are not necessarily for support." _See, Matter of Brown_, 488 B.R. 810 (Bankr. S.D. Ga. 2013) (hold harmless obligation to former spouse to make payments on former marital home were non dischargeable divorce related obligation but not DSO); _In re Anthony_, 453 B.R. 782 (Bankr. D. N.J. 2011) (condo fees were not DSO); _In re Nelson_, 451 B.R. 918 (Bankr. D. Or. 2011) (hold harmless on joint mortgage debt was not DSO); _In re Lewis_, 423 B.R. 742 (Bankr. W.D. Mich. 2010) (temporary order to make mortgage payments was not in nature of support); _In re Mannix_, 303 B.R. 587 (Bankr. M.D. Pa. 2003) (debtor's mortgage obligation was property division, not support, and was dischargeable); _In re Horner_, 222 B.R. 918 (S.D. Ga. 1998) (same); _In re D'Atria_, 128 B.R. 71 (Bankr. S.D. N.Y. 1991) (same).

26.     The Puerto Rico Court of First Instance of Bayamón on case D DI2016-4055, stated that the mortgage payment required of the debtor would be included in the child support total amount.

27.     When the property is sold, the mortgage will be paid in full.

28.     Therefore, it is only fair to reduce it from the total of the DSO debt once the property is sold and the full mortgage is satisfied.

---

[4] Chapter 7 trustees must take possession of the non-exempt assets of the estate and to administer them for the benefit of creditors. See 11 U.S.C. § 704(a)(1); _Commodity Futures Trading Com'n v. Weintraub_, 471 U.S. 343, 352 (1985). "Once the [bankruptcy] petition [is] filed, only the trustee has the authority to use, sell or lease property of the estate pursuant to 11 U.S.C. § 363". "The Trustee's rights and duties to collect and reduce to money the property of the estate under § 704 are exclusive rights and may not be asserted by the creditors." _In re Gurley_, 357 B .R. 868, 877 (Bankr.M.D.Fla.2006).

29.     If mortgage payments made as part of the alimony claimed by Creditor are disbursed, said debt would be paid twice.

IV.     ***Judgment Finality & Self-Infliction Rules and Doctrines***

30.     By analogy all of the doctrines that refer to self-infliction of damages, hardships and unclean hands apply to the amount amended in Claim 5-2.

31.     Creditor has acted with unclean hands regarding the sale of the house.

32.     With the sale of the house, not only Creditor claim could be paid, but other creditors would be benefit as well.

33.     According to the definition of unclean hands doctrine in the Bouvier Law Dictionary "A wrongdoer is not entitled to equitable relief. Unclean hands is a short hand for the maxim, "one who comes before equity must come with clean hands," which is to say that a plaintiff cannot seek relief in equity for the defendant's misdeeds when the plaintiff has done the same or worse. The misdeeds must, however, be related to the cause of action. The doctrine is sometimes conflated with a separate maxim, "he who seeks equity must do equity," which requires the performance of an affirmative duty, while the clean hands maxim requires restraint from wrongdoing."

34.     Creditor in this case has prevented, on bad faith, the sale of the house which will produce the monies that will be used to pay the DSO claim and other creditors.

35.     "Not every wrongful act constitutes unclean hands, but the misconduct need not be a crime or an actionable tort. **Any conduct that violates conscience, or good faith, or other equitable standards of conduct, is sufficient cause to invoke the doctrine.** The misconduct that brings the clean hands doctrine into play must relate directly to the cause at issue. Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not

suffice." [Emphasis ours.] *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970

(1999).

> "The unclean hands doctrine is not a legal or technical defense to be used as a shield
> against a particular element of a cause of action. Rather, it is an equitable rationale
> for refusing a plaintiff relief where principles of fairness dictate that the plaintiff
> should not recover, regardless of the merits of his claim. It is available to protect
> the court from having its powers used to bring about an inequitable result in the
> litigation before it. Thus, any evidence of plaintiff's unclean hands in relation to the
> transaction before the court or which affects the equitable relations between the
> litigants in the matter before the court should be available to enable the court to
> effect a fair result in the litigation." *Kendall-Jackson Winery, Ltd. v. Superior
> Court*, *supra.*

> "The defense of unclean hands arises from the maxim, one who comes into equity
> must come with clean hands. The doctrine demands that a plaintiff act fairly in the
> matter for which he or she seeks a remedy, and must come into court with clean
> hands and keep them clean, or relief will be denied, regardless of the merits of the
> claim. The defense is available in legal as well as equitable actions. Applicability of
> the doctrine of unclean hands is a question of fact. The unclean hands doctrine
> protects judicial integrity and promotes justice. It protects judicial integrity because
> allowing a plaintiff with unclean hands to recover in an action creates doubts as to
> the justice provided by the judicial system. Thus, precluding recovery to the unclean
> plaintiff protects the court's, rather than the opposing party's, interests. The doctrine
> promotes justice by making a plaintiff answer for his or her own misconduct in the
> action. It prevents a wrongdoer from enjoying the fruits of his or her transgression."
> *Kendall-Jackson Winery, Ltd. v. Superior Court*, *supra.*

36. On the other hand, the self-infliction rule is used to reduce damages brought about

the misconduct of the claimant party.

37. This doctrine applies equitable principles to prevent parties from gaining improper

advantage created through improper intent or reckless conduct of their own.

38. Also, the avoidable consequences doctrine prevents recovery of damages that arise

from consequences reasonably avoidable by the plaintiff (in this case creditor).

39. Creditor has prevented the sale of the property belonging to herself and Debtor, by

her own acts she has prevented the payment of the alleged claim she presented.

40. According to Professor Hernández Colón in his book *Práctica Jurídica de Puerto

Rico*, "…once a copy of the notification of the sentence is filed and the judgement is recorded, it

is considered final but it is not firm or executable. It is with the course of time that the judgement

acquires these other characteristics. It becomes firm once the term has elapsed to appeal without this being done, or at the end of the appellation process. "[5] [Translation ours.]

41.      The Court of First Instance of Puerto Rico, in Bayamón issued a Minute – Resolution (Case D DI2006-4055) for the hearing of July 23rd, 2012, transcribed on August 3, 2012, in which they pronounced that the amount owed as a total for the Domestic Support Obligation of $125,046.00, which included the mortgage payments.

42.      The Court of First Instance of Puerto Rico in Bayamón said that the house payment was included in the amount established for child support. [Translation ours.][6]

43.      Therefore, the total amount to be paid in DSO must be calculated removing the sum that represents the mortgage payments made by the debtor.

44.      Otherwise, once the property is sold the Debtor would be paying the mortgage twice, one as part of the DSO and second, satisfying the mortgage lien held by Banco Popular de Puerto Rico.

### VII.    *Conclusion*

1.      Alleged creditor, Amarilys González García, has no legal standing to pursue this claim.

2.      In the alternative, the total of the DSO obligation that the estate should pay is the amount of the obligation at the moment of the bankruptcy filing (August 5, 2011), which according to Court records is of $125, 046.00, minus the mortgage payments that were included in the said amount.

---

[5] "...una vez se archiva en autos copia de la notificación de la sentencia y se registra dicha sentencia, ésta se considera final, pero no es firme ni ejecutoria. Es con el transcurso del tiempo que la sentencia adquiere estas otras características. Se convierte en firme una vez transcurre el término para apelar sin que esto se haya hecho, o al concluir el proceso apelativo." *Dkt.157-1*
[6] "El Tribunal indica que el pago de la casa se imputa como parte de la pensión alimentaria." *Dkt.157-1*

3.      The quantities assigned for mortgage payments should be reduced since they were to be destined for the payment of the property owned by the Debtor and the Defendant, and once the property is sold the mortgage would be paid in full to the bank.

4.      The delay on the payment of the DSO is due to the fact that the Defendant refuses to sell the mentioned property.

5.      The augment in interest of the DSO stated by the alleged creditor is due to self-inflicted hardships due to her own actions.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to take notice of the aforementioned; disallow this claim because alleged creditor has no standing to pursue it; or in the alternative state the amount owed in DSO, and GRANTS the Plaintiffs' Objection to Claim 5-2, at *Dkt.179.*

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the Assistant US Trustee at the US Trustee's Office, Ochoa Building, 500 Tanca Street, Suite 301, San Juan, Puerto Rico 00901 and all parties in interest.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on September 19, 2019.

**/s/ RAFAEL A. GONZALEZ VALIENTE**
**USDC-PR 225209**
Email: rgv@g-glawpr.com

GG
GODREAU & GONZALEZ
LAW, LLC

P.O Box 9024176,
San Juan, PR 00902-4176
Tel. (787) 726-0077

App. Ap. pp.124

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 11-06637 MCF |
| JUAN CARLOS BALCELLS GALLARETA<br>DEBTOR | CHAPTER 7 |

## OBJECTION TO CLAIM # 5-2

**TO THE HONORABLE COURT:**

COMES NOW, Noreen Wiscovitch Rentas, Trustee of the Chapter 7 Bankruptcy Estate of Juan Balcells Gallareta, represented by its undersigned attorney and to this Honorable Court very respectfully states and prays that:

1.      On August 5, 2011, Debtor filed a Chapter 7, voluntary petition. *Dkt.1.*

2.      On February 8, 2012, Creditor, Amarilis González García filed Claim 5-1.

3.      On March 27, 2019, Plaintiff filed an Objection to claim #5-1. *Dkt.157*

4.      On May 3, 2019, Defendant filed a Response in Opposition to Objection to Claim #5-1. *See Dkt. 164.*

5.      On July 2, 2019, this Honorable Court declared moot Chapter 7 Trustee's Objection to Claim Number 5 filed by Claimant Amarilis Gonzalez. *Dkt. 157.*

6.      An adversary complaint for this case was filed on May 30, 2014, to obtain Court approval for the sale of both the interest of the estate and of co-owners of the property described below, with the distribution of the proceeds of the sale to be effectuated according to the percentage of ownership of the Defendant and the Debtor, pursuant 11 U.S.C. §363(f), (h), (i) and/or (j), and 11 U.S.C. §541 (a).

7.      On May 3, 2019, alleged Creditor file an amended POC, No. 5-2. *Dkt.179 on Adversary Proceeding.*

8.      POCs, their amendments, objections and replies must be filed within the bankruptcy lead case.

9.      The amended POC must be disallowed for being incorrectly filed.

10.     Also, said claim must be disallowed due to the fact that on alleged creditor's response of May 3rd, 2019 *(Dkt. 164)*, two sworn statements from her children, Juan Francisco Balcells González and Alexandra Balcells González, were included as attachments stating that they are both of legal age. *Dkt. 164.*

11.     Alleged Creditor, also states that her "children" are 21 and 24 years old on *Docket 177*, Page 5, paragraph 7). Article 247 (31 L.P.R.A. sec. 971) of the Civil Code of Puerto Rico states that adulthood is reached at 18 years old. Therefore, Defendant lacks judicial standing to claim and/or receive any DSO payments since both "children" are adults with capacity to claim, receive and manage their child support payments.

12.     Trustee hereby objects the aforementioned amended POC due to the fact that to this date the Creditor who presented Amendment to Claim 5 (Claim 5-2), is not the party to whom the money is owed, therefore said alleged creditor has no legal standing.

13.     In the alternative, the State Court determined that the correct amount owed for the Domestic Support Obligation (DSO) was $125, 046.00, in a Minute-Resolution from 2012. This amount included outstanding mortgage payments.

14.     The amounts included as mortgage payment cannot be part of the DSO claim, since once the property is sold the bank will be paid the mortgage in full.

15.     Alleged creditor has failed to pay her part of the mortgage payments since June 2014.

16.    The delay of the payment of the DSO has been caused by the holdups created by the alleged creditor herself.

17.    All of the interest accrued after 2011, are not payable by the estate to the alleged creditor due to the fact that said delays have been self-inflicted.

18.    The amended claim has been presented with unclean hands.

19.    The Trustee also requests that the amount corresponding to mortgage payments made by the Debtor be reduced from the total in the Minute – Resolution from 2012, to have a final figure of the actual DSO owed.

20.    In addition, the amounts pertaining to unpaid mortgage payments will need to be substracted from the amended claim, because once the property is sold mortgage will be paid in full.

## LEGAL BASIS

### I.    *Legal Standing*

1.    It is well stated law that all family decisions in a Bankruptcy Court will be based on state family law.

2.    "The laws of marriage and divorce, and the property divisions incident thereto, belong uniquely to the several states. Federal courts have traditionally abstained when faced with family law questions and when a bankruptcy judge is presented with a bankruptcy that is primarily caused by the liability imposed by a divorce, the bankruptcy judge should give serious consideration to abstaining."

3.    Puerto Rico's Civil Code, in its Article 247 (31 L.P.R.A. sec. 971), states that adulthood is reached at 21 years old. Therefore, Defendant lacks judicial standing to claim and/or receive any DSO payments since both "children" are adults with capacity to claim, receive and manage their child support payments.

4.    "However, once children are emancipated, they have the capacity to represent their own interests in court, not being able their parents to do so from that moment on. In the case of due or overdue alimony, the parent does not have the legitimacy to represent his adult child

(entitled to the alimony) or to continue the action to collect the unsatisfied amounts, even if the parent initiated the action originally."[1] _Sotomayor vs. Colón Cruz_, 2009 TSPR 134. [Translation ours.]

5.      "In the case of alimony that is due or in arrears, **the parent does not have the legitimacy** to represent his child who has reached the majority of age or to continue the action to collect the unsatisfied amounts, even if it was the parent who initiated the action originally"[2] _Sotomayor vs. Colón Cruz_, _supra_. [Translation ours.]

> "The action for collection of past-due support owed to minor, unemancipated children is undoubtedly one in which the father or mother with patria potestas and custody of the children is perfectly entitled to represent said minors. However, even when an action falls within the scope of that duty or power of representation, its exercise by the parent will depend on the validity of the legal status on which his or her power of representation rests. That is, the father or mother may only represent his or her child while the latter is under his or her patria potestas. Once patria potestas ends for any of the reasons listed in the Code, or once it is taken away or suspended by the court, the parents' power of representation over their children ends, unless the Code should expressly provide otherwise. _See_ Puig Brutau, _supra_, at 274-279." _Rosario v. Ramos_, 134 D.P.R. 3 (1993).

6.      "Once the children are emancipated (unless such emancipation is granted by the parents under the provisions of chapter 109 of the Civil Code, 31 L.P.R.A. §§ 911-916), the children acquire the capacity to represent their own interests in court and the parents can no longer do so. Civil Code sees. 240, 246, and 247 (31 L.P.R.A. §§ 932, 955, and 971); _Álvarez v. Aponte_, 83 P.R.R. 595 (1961); _Vázquez v. Santos_, 49 P.R.R. 298 (1935); _Key Nieves v. Oyola Nieves_, 116 D.P.R. 261 [16 P.R. Offic. Trans. 321] (1985).

7.      In this case, both, Juan Francisco Balcells González and Alexandra Balcells González, have reached the majority of age. _See Claim 5-2, Supporting Documents._

8.      The minors whom the Creditor represented in this case have acquired the majority of age, hence the Creditor has no standing to pursue the petition of their interests of the DSO.

---

[1] "No obstante, una vez los hijos son emancipados, éstos tienen la capacidad para representar sus propios intereses ante los tribunales, no pudiéndolo hacer sus padres desde ese momento. En el caso de las pensiones alimenticias vencidas o atrasadas, el progenitor carece de legitimación para representar a su hijo alimentista mayor de edad o para continuar la acción de cobro de las cuantías no satisfechas, aunque haya sido el progenitor quien inició la acción originalmente."
[2] "En el caso de las pensiones alimenticias vencidas o atrasadas, el progenitor carece de legitimación para representar a su hijo alimentista mayor de edad o para continuar la acción de cobro de las cuantías no satisfechas, aunque haya sido el progenitor quien inició la acción originalmente" _Sotomayor vs. Colon Cruz_; 2009 TSPR 134

## II. _Rule 3007 and 11 U.S.C. sec.502 (a)_

1. On August 5, 2011, Debtor filed a Bankruptcy petition under Chapter 7 of the Bankruptcy Code. *Dkt.1*

2. Pursuant to Rule 3007 and 11 U.S.C. sec.502 (a) a properly filed claim is deemed allowed unless objected to. _In re Farmers' Co-op of Arkansas & Oklahoma, Inc_., 43 BR 619 (Bankr. WD Ark, 1984). Once an objector offers sufficient evidence to overcome the *prime facie* validity of a claim, a claimant is required to meet the usual burden of proof to establish the validity of its claim. _In re Rockefeller Ctr. Props._, 272 BR 524 (Bankr. NDNY, 2000).

3. According to Section 502 (a) of the Bankruptcy Code, in Chapter 7 cases such as the one at bar, among the duties of the Chapter 7 Trustee are to "examine proofs of claims and object to the allowance of any claim that is improper", pursuant to Section 704 (a)(5) of the Bankruptcy Code.

4. An improper claim is one that is not filed by the proper creditor.

5. *Black's Law Dictionary*, Deluxe Tenth Edition, Edited by Brian A. Garner, defines improper as "Incorrect; unsuitable or irregular. Fraudulent or otherwise wrongful."

6. "A challenge to the standing of a claimant in a bankruptcy case is a substantive objection under 11 USCS § 502 (b)(1), which provides that a claim may be disallowed to the extent the claim is unenforceable against the bankruptcy debtor under any applicable law, including state law. With respect to standing, an allegation essential to any claim is that the claimant is the proper party in interest." _In re Richter_, 478 B.R. 30 (2012).

7. "In a bankruptcy case, a challenge to standing is a substantive objection under 11 USCS § 502 (b)(1) because if a claimant has not proven it is the owner of a claim with a right to

payment (i.e. the party with standing), the claim is unenforceable against the bankruptcy debtor under state law." *In re Richter*, *supra*.

8.      "The Bankruptcy Code defines a 'creditor' as an 'entity that has a claim against the debtor that arose at the time of or before the order for relief', and defines a 'claim' as a 'right to payment…" *In re Richter*, *supra*.

> "This Court is not alone in determining a challenge to standing is a substantive objection under § 502(b)(1). In support of this conclusion, the U.S. Bankruptcy Court for the Northern District of Oklahoma explained: Debtors also allege that **they have no liability on the claims as filed because Claimants have not proven they are the owners of the claims with a right to payment**; that even if Claimants own the subject claims, Debtors dispute the amounts asserted in the proofs of claim; and that such claims are not enforceable under Oklahoma law. These objections are sufficient to prevent the claims from being deemed allowed under § 502(a), and to trigger Court determination of the claims under § 502(b)(1). . .In the face of a substantive objection by a party in interest, the Court is required to determine the amount of each claim as of the petition date, and to allow the claim in that amount, except to the extent the claim is unenforceable against the debtor or the debtor's property under applicable law. **Claimants therefore must first establish that they hold enforceable claims against the respective Debtors."**

9.      Trustee's objection substantive objection to claim 5-2, under § 502 (b)(1) of the Bankruptcy Code meets the required burden of proof to overcome the *prima facie* validity of a claim.

### III.      *Section 363 (h) of the Bankruptcy Code, Administration of Property of the Estate*

10.      Plaintiff, as Chapter 7 Trustee for the Bankruptcy Estate of Juan Balcells, is the only one with authority to administer the property of the estate, including the aforementioned real estate property. *See,* 11 U.S.C. §704; *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 352 (1985).

11.     As administrator and representative of the Bankruptcy Estate under the provisions of the Bankruptcy Code, Chapter 7 Trustee may dispose of the property of the estate. _Vélez v. Pérez León_, (_In re Pérez León_), 2013 WL 5232331 (Bankr. D.P.R., 2013)

12.     The bankruptcy court has jurisdiction over the distribution of property even if it has abstained to allow the state court to determine the rights of the spouses to a property division. _In re Sparks_, 181 B.R. 341 (Bankr. N.D. Ill. 1995); _In re Davis_, 133 B.R. 593 (Bankr. E.D. Va. 1991) (trustee could represent the estate's interest in property division to be determined in state court).

13.     Section 363 (h) of the Bankruptcy Code states "Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if— (1) partition in kind of such property among the estate and such co-owners is impracticable; (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners; (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power."

14.     It seems then, at least to the courts in this territorial jurisdiction, that the satisfaction of section 363 (h) (2) is generally known. _In re Griffin_, 123 B.R. at 935-36 (Bankr. S.D. Fla., 1991); _Maiona v. Vassilowitch_ (_In re Vassilowitch_), 72 B.R. 803, 808 (Bankr. D. Mass, 1987) (concluding that in the absence of evidence to the contrary, the court may take judicial notice that

a sale of a 50% interest would be worth less than the sale of the entire interest); Collier on

Bankruptcy §363.08[4][b] (16th ed.)

15.    Plaintiff, as the Chapter 7 Trustee, has the authority to sell this real property

pursuant to the provisions of 11 U.S.C. §363 (f) and (h).

16.    The case of *In re Bobonis Lang*, 191 B.R. 268 (Bankr. D.P.R.,1995), clearly states

that ".... where one spouse files bankruptcy in Puerto Rico, all that debtor's property as well as the

community property becomes property of the estate by operation of § 541 (a )(2)( A) ... "

17.    *In re Bobonis Lang*, *supra*, also concludes: " ...... the court finds that Puerto Rico

recognizes community property, thereby, 11 U.S.C. §541(a) (2) (A) applies to the determination

of property of the estate where one spouse files a bankruptcy petition. In addition, the court finds

that the requirement of a non-debtor spouse's consent prior to the disposition of community

property where the other files for bankruptcy petition is preempted as it is contrary to federal

bankruptcy law."

18.    Furthermore, Section 725 of the Bankruptcy Code states that "[a]fter the

commencement of a [bankruptcy case] under ... chapter 7, but before final distribution of property

of the estate under section 726 of this, the [chapter 7] trustee, after notice and a hearing, shall

dispose of any property in which an entity other than the [bankruptcy] estate has an interest ... and

that has not been disposed of under another section of this title."11 U.S.C. § 725.

19.    The Trustee has tried to sell the aforementioned property for the benefit of all

creditors, Creditor herself included.

20.    Creditor has frustrated Trustees' actions with her unwillingness to sell the property

at the appraised price, and has not paid her part of the mortgage since 2014.

**IV.    *Section 541 Bankruptcy Code and Puerto Rico Family Law***

21.    As section 541 of the Bankruptcy Code states: "(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is compromised of all the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c) (2) of this section, all legal or equitable interests of the debtor in property as the commencement of the case; (2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is – (A) under sole, equal, or joint management and control of the debtor; or (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor's spouse, to the extent that such interest is liable."

22.    When a conjugal partnership is established under Puerto Rico law, the earnings or profits indiscriminately obtained by either of the spouses during marriage shall belong to the husband and wife in equal share. *Article 1295 Civil Code of Puerto Rico, 31 L.P.R.A. §3621.*

23.    When the conjugal partnership ceases to exist, the conjugal partnership turns into an ordinary community. *Gracía González v. Montero Saldaña*, 7 P.R. Off. Trans. 353, 363-364, 107 D.P.R. 301, 331-332 (1978), citing Puig Brutau, *Fundamentos de Derecho Procesal Civil*, Tomo 4, Vol. 1 (1967), p.784. *Also see*, Serrano Geyls, *Derecho de Familia de Puerto Rico y Legislación Comparada*, Vol. 1, Interamerican University School of Law, 2007 ed., p. 457; *Roselló Puig v. Rodríguez*, 183 D.P.R. 81, 94 (2011).

24.    All of the assets of a spouse, as well as the community property, becomes property of a bankruptcy estate of Puerto Rico Law.[3] *In re Lang*, 191 B.R. 268 (Bankr. D.P.R. 1995), citing

---

[3] "In Puerto Rico, upon marriage, a new entity is created, which commences on the day of marriage and will own property acquired for a valuable consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of the spouses only; that obtained by the industry, salaries, or work of the spouses or of either of them; the fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses." In re Padilla, 2011 Bankr.LEXIS 4662 at * *10–11, 2011 WL 5911243 at *4 (Bankr.D.P.R.2011), citing Articles 1296 and 1401 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 3622 and 3641, and *Fernández–Cerra v. Commercial Insurance Co. of Newark*, 344 F.Supp. 314, 316 (D.P.R.1972).

Bankr. Code, 11 U.S.C.A. §541 (a) (2) (A); 31 L.P.R.A. §§ 284, 286, 3621, 3622, 3631, 3641, 3647.

25.     At the instant case, the assets of the community property comprised between Debtor and Defendant have never been divided. Therefore, when the Debtor filed for bankruptcy, the Bankruptcy Estate immediately comprised all nonexempt property, including any "unpartitioned post-marital community property." *In re Brassett*, 332 B.R. at 754-755; *In re Robertson*, 203 F.3d. at 861-862; *In re Pérez León*, 2013 WL 5232331.[4]

> "Payments on a former marital residence are not necessarily for support." *See, Matter of Brown*, 488 B.R. 810 (Bankr. S.D. Ga. 2013) (hold harmless obligation to former spouse to make payments on former marital home were non dischargeable divorce related obligation but not DSO); *In re Anthony*, 453 B.R. 782 (Bankr. D. N.J. 2011) (condo fees were not DSO); *In re Nelson*, 451 B.R. 918 (Bankr. D. Or. 2011) (hold harmless on joint mortgage debt was not DSO); *In re Lewis*, 423 B.R. 742 (Bankr. W.D. Mich. 2010) (temporary order to make mortgage payments was not in nature of support); *In re Mannix*, 303 B.R. 587 (Bankr. M.D. Pa. 2003) (debtor's mortgage obligation was property division, not support, and was dischargeable); *In re Horner*, 222 B.R. 918 (S.D. Ga. 1998) (same); *In re D'Atria*, 128 B.R. 71 (Bankr. S.D. N.Y. 1991) (same).

26.     The Puerto Rico Court of First Instance of Bayamón on case D DI2016-4055, stated that the mortgage payment required of the debtor would be included in the child support total amount.

27.     When the property is sold, the mortgage will be paid in full.

28.     Therefore, it is only fair to reduce it from the total of the DSO debt once the property is sold and the full mortgage is satisfied.

---

[4] Chapter 7 trustees must take possession of the non-exempt assets of the estate and to administer them for the benefit of creditors. See 11 U.S.C. § 704(a)(1); *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 352 (1985). "Once the [bankruptcy] petition [is] filed, only the trustee has the authority to use, sell or lease property of the estate pursuant to 11 U.S.C. § 363". "The Trustee's rights and duties to collect and reduce to money the property of the estate under § 704 are exclusive rights and may not be asserted by the creditors." *In re Gurley*, 357 B .R. 868, 877 (Bankr.M.D.Fla.2006).

29.    If mortgage payments made as part of the alimony claimed by Creditor are disbursed, said debt would be paid twice.

IV.    ___Judgment Finality & Self-Infliction Rules and Doctrines___

30.    By analogy all of the doctrines that refer to self-infliction of damages, hardships and unclean hands apply to the amount amended in Claim 5-2.

31.    Creditor has acted with unclean hands regarding the sale of the house.

32.    With the sale of the house, not only Creditor claim could be paid, but other creditors would be benefit as well.

33.    According to the definition of unclean hands doctrine in the Bouvier Law Dictionary "A wrongdoer is not entitled to equitable relief. Unclean hands is a short hand for the maxim, "one who comes before equity must come with clean hands," which is to say that a plaintiff cannot seek relief in equity for the defendant's misdeeds when the plaintiff has done the same or worse. The misdeeds must, however, be related to the cause of action. The doctrine is sometimes conflated with a separate maxim, "he who seeks equity must do equity," which requires the performance of an affirmative duty, while the clean hands maxim requires restraint from wrongdoing."

34.    Creditor in this case has prevented, on bad faith, the sale of the house which will produce the monies that will be used to pay the DSO claim and other creditors.

35.    "Not every wrongful act constitutes unclean hands, but the misconduct need not be a crime or an actionable tort. **Any conduct that violates conscience, or good faith, or other equitable standards of conduct, is sufficient cause to invoke the doctrine.** The misconduct that brings the clean hands doctrine into play must relate directly to the cause at issue. Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not

suffice." [Emphasis ours.] *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970

(1999).

> "The unclean hands doctrine is not a legal or technical defense to be used as a shield
> against a particular element of a cause of action. Rather, it is an equitable rationale
> for refusing a plaintiff relief where principles of fairness dictate that the plaintiff
> should not recover, regardless of the merits of his claim. It is available to protect
> the court from having its powers used to bring about an inequitable result in the
> litigation before it. Thus, any evidence of plaintiff's unclean hands in relation to the
> transaction before the court or which affects the equitable relations between the
> litigants in the matter before the court should be available to enable the court to
> effect a fair result in the litigation." *Kendall-Jackson Winery, Ltd. v. Superior
> Court*, *supra.*

> "The defense of unclean hands arises from the maxim, one who comes into equity
> must come with clean hands. The doctrine demands that a plaintiff act fairly in the
> matter for which he or she seeks a remedy, and must come into court with clean
> hands and keep them clean, or relief will be denied, regardless of the merits of the
> claim. The defense is available in legal as well as equitable actions. Applicability of
> the doctrine of unclean hands is a question of fact. The unclean hands doctrine
> protects judicial integrity and promotes justice. It protects judicial integrity because
> allowing a plaintiff with unclean hands to recover in an action creates doubts as to
> the justice provided by the judicial system. Thus, precluding recovery to the unclean
> plaintiff protects the court's, rather than the opposing party's, interests. The doctrine
> promotes justice by making a plaintiff answer for his or her own misconduct in the
> action. It prevents a wrongdoer from enjoying the fruits of his or her transgression."
> *Kendall-Jackson Winery, Ltd. v. Superior Court*, *supra.*

36.     On the other hand, the self-infliction rule is used to reduce damages brought about

the misconduct of the claimant party.

37.     This doctrine applies equitable principles to prevent parties from gaining improper

advantage created through improper intent or reckless conduct of their own.

38.     Also, the avoidable consequences doctrine prevents recovery of damages that arise

from consequences reasonably avoidable by the plaintiff (in this case creditor).

39.     Creditor has prevented the sale of the property belonging to herself and Debtor, by

her own acts she has prevented the payment of the alleged claim she presented.

40.     According to Professor Hernández Colón in his book *Práctica Jurídica de Puerto

Rico*, "…once a copy of the notification of the sentence is filed and the judgement is recorded, it

is considered final but it is not firm or executable. It is with the course of time that the judgement

acquires these other characteristics. It becomes firm once the term has elapsed to appeal without this being done, or at the end of the appellation process. "[5] [Translation ours.]

41.     The Court of First Instance of Puerto Rico, in Bayamón issued a Minute – Resolution (Case D DI2006-4055) for the hearing of July 23rd, 2012, transcribed on August 3, 2012, in which they pronounced that the amount owed as a total for the Domestic Support Obligation of $125,046.00, which included the mortgage payments.

42.     The Court of First Instance of Puerto Rico in Bayamón said that the house payment was included in the amount established for child support. [Translation ours.][6]

43.     Therefore, the total amount to be paid in DSO must be calculated removing the sum that represents the mortgage payments made by the debtor.

44.     Otherwise, once the property is sold the Debtor would be paying the mortgage twice, one as part of the DSO and second, satisfying the mortgage lien held by Banco Popular de Puerto Rico.

### VII.    *Conclusion*

1.     Alleged creditor, Amarilys González García, has no legal standing to pursue this claim.

2.     In the alternative, the total of the DSO obligation that the estate should pay is the amount of the obligation at the moment of the bankruptcy filing (August 5, 2011), which according to Court records is of $125, 046.00, minus the mortgage payments that were included in the said amount.

---

[5] "...una vez se archiva en autos copia de la notificación de la sentencia y se registra dicha sentencia, ésta se considera final, pero no es firme ni ejecutoria. Es con el transcurso del tiempo que la sentencia adquiere estas otras características. Se convierte en firme una vez transcurre el término para apelar sin que esto se haya hecho, o al concluir el proceso apelativo." *Dkt.157-1*

[6] "El Tribunal indica que el pago de la casa se imputa como parte de la pensión alimentaria." *Dkt.157-1*

3.      The quantities assigned for mortgage payments should be reduced since they were to be destined for the payment of the property owned by the Debtor and the Defendant, and once the property is sold the mortgage would be paid in full to the bank.

4.      The delay on the payment of the DSO is due to the fact that the Defendant refuses to sell the mentioned property.

5.      The augment in interest of the DSO stated by the alleged creditor is due to self-inflicted hardships due to her own actions.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to take notice of the aforementioned; disallow this claim because alleged creditor has no standing to pursue it; or in the alternative state the amount owed in DSO, and GRANTS the Plaintiffs' Objection to Claim 5-2, at *Dkt.179*.

<u>**NOTICE**</u>

**Within thirty (30) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the objection will be deemed unopposed and may be granted unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the court, the interest of justice requires otherwise. If you file a timely response, the court may schedule a hearing.**

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the Assistant US Trustee at the US Trustee's Office, Ochoa Building, 500 Tanca Street, Suite 301, San Juan, Puerto Rico 00901 and all parties in interest; it was also notified to Amarilis González García, P.O. Box 984, Guaynabo, Puerto Rico 00970; and Roberto E Berrios at Berrios Falcon, LLC., Capital Center Building, South Tower, Suite 901, 239 Arterial Hostos

Avenue, San Puerto Rico 00918 and  rblawpr@yahoo.com.


**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on October 2nd, 2019.


**/s/ RAFAEL A. GONZALEZ VALIENTE**
**USDC-PR 225209**
Email: rgv@g-glawpr.com

G|G
GODREAU & GONZALEZ
L A W ,  L L C

P.O Box 9024176,
San Juan, PR 00902-4176
Tel. (787) 726-0077

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF PUERTO RICO

IN RE:

**JUAN CARLOS BALCELLS GALLARETA**
Debtor

Case No.11-06637 MCF

Chapter 7

## UNSWORN STATEMENT

    I, **Rafael A. González Valiente, of legal age, married, attorney, and resident of Guaynabo, Puerto Rico hereby states as follows:**

    1.    That my name and personal circumstance are stated above.

    2.    That on October 2nd, 2019, this Honorable Court filed an Order in which stated that we did not comply with Bankruptcy Local Rule 3007-1(a) upon filing the Trustee's Objection to Claim 5-2.

    3.    That we are not in possession of Amarilis González García's social security number or date of birth to file for a Servicemembers Civil Relief Act (SCRA) certificate on the official website: https://scra.dmdc.osd.mil/scra/#/home.

    4.    That to our better knowledge Amarilis González García is not a member of the of the Military Forces or on active duty.

    5.    That this is the truth and nothing but the truth.

In San Juan, Puerto Rico today 4th day of October 2019.

_____
Rafael A. González Valiente, Esq.

App. Ap. pp.140

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE:

JUAN CARLOS BALCELLS GALLARETA
DEBTOR

CASE NO. 11-06637 MCF

CHAPTER 7

## REPLY TO RESPONSE IN OPPOSITION TO OBJECTION TO CLAIM #5-2

**TO THE HONORABLE COURT:**

COMES NOW, Noreen Wiscovitch Rentas, Trustee of the Chapter 7 Bankruptcy Estate of Juan Balcells Gallareta, represented by its undersigned attorney and to this Honorable Court very respectfully states and prays that:

1.      On August 5, 2011, Debtor filed a Chapter 7, voluntary petition. *Dkt.1.*

2.      An adversary complaint for this case was filed on May 30, 2014, to obtain Court approval for the sale of both the interest of the estate and of co-owners of the property described below, with the distribution of the proceeds of the sale to be effectuated according to the percentage of ownership of the Defendant and the Debtor, pursuant 11 U.S.C. §363(f), (h), (i) and/or (j), and 11 U.S.C. §541 (a).

3.      On May 3, 2019, alleged Creditor file an amended POC, No. 5-2. *Dkt.179 on Adversary Proceeding.*

4.      Said claim must be disallowed due to the fact that the alleged creditor has no legal standing to pursue this claim.

5.      Both of alleged Creditor's "children" are of legal age, 21 and 24 years old. *Dkt. 177, Page 5, paragraph 7.*

6.      On October 4, 2019, Trustee filed an Objection to Claim 5-2. *Dkt. 179.*

7.      Trustee objected the aforementioned amended POC due to the fact that to this date the Creditor who presented Amendment to Claim 5 (Claim 5-2), is not the party to whom the money is owed, therefore said alleged creditor has no legal standing, and also because said claim is improper.

App. Ap. pp.141

8.    On November 12, 2019, claimant filed a Response in Opposition to Objection to Claim #5-2. *Dkt. 181.*

9.    Said Response was filed after the thirty (30) days provided by Fed. R. Bank. P. 9006, therefore the objection to claim must be deemed unopposed.

10.    "If no objection or other response to is filed within the time allowed herein, the objection will be deemed unopposed and may be granted unless: (1) the requested relief is forbidden by law; (2) the requested relief is against a public policy; or (3) in the opinion of the court, the interest of justice requires otherwise." Fed. R. Bank. P. 9006

11.    In the alternative, the State Court determined that the correct amount owed for the Domestic Support Obligation (DSO) was $125, 046.00, in a Minute-Resolution from 2012. This amount included outstanding mortgage payments which must be substracted.

## LEGAL BASIS

### I.    *Legal Standing to present Claim and Homestead Right*

1.    An improper claim is one that is not filed by the proper creditor.

2.    Trustee filed an objection based on the lack of standing.

3.    Alleged creditor responded that she has standing based on two sworn statements and she is incorrect.

4.    *Black's Law Dictionary*, Deluxe Tenth Edition, Edited by Brian A. Garner, defines improper as "Incorrect; unsuitable or irregular. Fraudulent or otherwise wrongful."

5.    It is well stated law that all family decisions in a Bankruptcy Court will be based on state family law.

6.    Puerto Rico's Civil Code, in its Article 247 (31 L.P.R.A. sec. 971), states that adulthood is reached at 21 years old. Therefore, claimant lacks judicial standing to claim and/or receive any DSO payments since both "children" are adults with capacity to claim, receive and manage their child support payments.

7.    "However, once children are emancipated, they have the capacity to represent their own interests in court, **not being able their parents to do so from that moment on**. In the case of due or overdue alimony, the parent does not have the legitimacy to represent his adult child (entitled to the alimony) or to continue the action to collect the unsatisfied amounts, even if the

parent initiated the action originally."[1] *Sotomayor vs. Colón Cruz*, 2009 TSPR 134. [Translation ours.]

> "The action for collection of past-due support owed to minor, unemancipated children is undoubtedly one in which the father or mother with patria potestas and custody of the children is perfectly entitled to represent said minors. However, even when an action falls within the scope of that duty or power of representation, its exercise by the parent will depend on the validity of the legal status on which his or her power of representation rests. That is, the father or mother may only represent his or her child while the latter is under his or her patria potestas. Once patria potestas ends for any of the reasons listed in the Code, or once it is taken away or suspended by the court, the parents' power of representation over their children ends, unless the Code should expressly provide otherwise. *See* Puig Brutau, *supra*, at 274-279." *Rosario v. Ramos*, 134 D.P.R. 3 (1993).

8.      "Once the children are emancipated (unless such emancipation is granted by the parents under the provisions of chapter 109 of the Civil Code, 31 L.P.R.A. §§ 911-916), the children acquire the capacity to represent their own interests in court and the parents can no longer do so. Civil Code sees. 240, 246, and 247 (31 L.P.R.A. §§ 932, 955, and 971); *Álvarez v. Aponte*, 83 P.R.R. 595 (1961); *Vázquez v. Santos*, 49 P.R.R. 298 (1935); *Key Nieves v. Oyola Nieves*, 116 D.P.R. 261 [16 P.R. Offic. Trans. 321] (1985).

9.      In this case, both, Juan Francisco Balcells González and Alexandra Balcells González, have reached the majority of age. *See Claim 5-2, Supporting Documents.*

10.      Alleged Creditor claims that pursuant to 11 U.S.C. Sec.507 (a)(1), allowed unsecured claims for DSO that, as of the date of the filing of the bankruptcy petition, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person…

11.      This provision of the Code refers to the priority of the claims, not the standing of the claimant.

12.      Regarding standing in the federal sphere it is stated that: "The constitutional aspect comes from the "case or controversy" requirement in Article III. To meet that requirement, a

---

[1] "No obstante, una vez los hijos son emancipados, éstos tienen la capacidad para representar sus propios intereses ante los tribunales, no pudiéndolo hacer sus padres desde ese momento. En el caso de las pensiones alimenticias vencidas o atrasadas, el progenitor carece de legitimación para representar a su hijo alimentista mayor de edad o para continuar la acción de cobro de las cuantías no satisfechas, aunque haya sido el progenitor quien inició la acción originalmente."

plaintiff seeking relief must have suffered an "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992).

13.     Also, the Doctrine of Prudential Standing prohibits a person from raising another person's legal rights.

14.     "In a bankruptcy case, a challenge to standing is a substantive objection under 11 USCS § 502 (b)(1) because if a claimant has not proven it is the owner of a claim with a right to payment (i.e. the party with standing), the claim is unenforceable against the bankruptcy debtor under state law." *In re Richter*, 478 B.R. 30 (2012).

15.     "The Bankruptcy Code defines a 'creditor' as an 'entity that has a claim against the debtor that arose at the time of or before the order for relief', and defines a 'claim' as a 'right to payment…'" *In re Richter*, *supra.*

16.     "**Claimants therefore must first establish that they hold enforceable claims against the respective Debtors.**" *In re Richter*, *supra.*

17.     Sworn statements do not grant standing when none exists.

18.     The minors whom the Creditor represented in this case have acquired the majority of age, hence the Creditor has no standing to pursue the petition of their interests in the DSO, and/or the right to homestead if applicable.

19.     Only the creditors themselves, to wit Alexandra and Juan Francisco Balcells González, may file the claims being presented.

   *II.     Homestead*

20.     The alleged claimant states that the property can not be sold because of the homestead designation made by the Bayamon Court.

21.     This allegation is completely irrelevant to the issue at hand of whether the claim should be allowed or not.

22.     Notwithstanding, alleged creditor refers to the dispositions of the Civil Code of Puerto Rico (Article 109-A) which purpose is to protect minors in family law against a former spouse, **not a creditor**.[2]

---

[2] The right of homestead expressed on the Civil Code is strictly for family law cases ("estrictamente de naturaleza familiar"). *Candelario Vargas v. Muniz Diaz*, 2007 TSPR 117 (P.R. June 7, 2007).

23.     A trustee in bankruptcy stands as a hypothetical judgment lien creditor effective on the date a debtor files a bankruptcy petition. *Bank of N.Y. v. Leake (in Re Wuerzberger)*, 284 B.R. 814, 2002 (Bankr. W.D. Va. 2002)

24.     The instant adversary proceeding is a core proceeding under Section 363(h) of the Bankruptcy Code for the approval of the sale of property of the Bankruptcy Estate.

25.     The application of the provisions of the Civil Code at the present adversary proceeding clearly go against the Bankruptcy Code. Any state legislation which frustrates full effectiveness of federal law is rendered invalid by the supremacy clause. *Kesler v. Department of Public Safety*, 369 U.S. 153, 7 L.Ed.2d 641, 82 S.Ct. 807, and *Reitz v. Mealey*, 314 U.S. 33, 86 L.Ed. 21, 62 S.Ct. 24 U.S.C.A. Const. art. 6, cl. 2.

26.     The right to homestead is only enforceable against a former spouse, not creditors in a bankruptcy case.

27.     It is also only enforceable when there are minors involved.

28.     Even if the right of homestead for the children still applied because they are allegedly still studying, there is no evidence presented to support this fact.

29.     So, even if said homestead was enforceable, which is not, the son and daughter have reached adulthood and is no longer applicable.

30.     Also, and again, the claimant has no legal standing to assert the right of homestead for her two **adult** children.

### III.     *Amount owed in DSO*

31.     Bayamón State Court determined that the correct amount owed for the Domestic Support Obligation (DSO) was $125,046.00, in a Minute-Resolution from 2012. This amount included outstanding mortgage payments.

32.     The amounts included as mortgage payment cannot be part of the DSO claim, since once the property is sold the bank will be paid the mortgage in full.

33.     On the Minute of the hearing on June 8, 2015, for the Divorce State Case No. D
DI2006-4055, it was stated that the mortgage payment amount that was to be paid by Debtor was
of $540.00.

34.     On same Minute it is also stated that alleged claimant owed part of the mortgage
payments for the months of December 2014, January, February and March, besides the full amount
of April and May 2015, because claimant allegedly stated that she needed the money for school
related issues.

35.     Alleged creditor had failed to pay in part or all of the mortgage payments (included
in the DSO payments of Debtor) since December 2014, when at the time she was supposed to be
consigning the said amount at the Courthouse.

36.     The Court stated that alleged claimant had to pay the owed amounts for the months
of December, January, February and March, and the full amounts of April through June 2015.

37.     Also, on said Minute it is stated that a letter came from Colegio San Ignacio
informing that a debt of $3,225.00 existed. According to the divorce settlement it was the
responsibility of alleged claimant to make the payments to the school.

38.     Alleged claimant stated that she used the money of the mortgage for graduation
costs.[3][Translation ours]

39.     Why was there such a debt if claimant was using mortgage money to pay for school
related issues?

40.     The amounts pertaining to unpaid mortgage payments will need to be substracted
from the amended claim, because once the property is sold mortgage will be paid in full.

41.     It is only fair to reduce it from the total of the DSO debt once the property is sold
and the full mortgage is satisfied.

42.     If mortgage payments made as part of the alimony claimed by Creditor are
disbursed, said debt would be paid twice.

### IV.    Delays and Unclean Hand Doctrine

43.      The amended claim has been presented with unclean hands.

44.     By analogy all of the doctrines that refer to self-infliction of damages, hardships
and unclean hands apply to the amount amended in Claim 5-2.

---

[3] "Indica que ha consignado el dinero hasta marzo de 2015 y que la cantidad de abril y mayo no la ha consignado porque esta en la espera de
contestación a una segunda oferta y porque los utilizó en gastos de graduación." Minute June 8, 2015, Case No. D DI2006-4055.

45.    Alleged creditor has acted with unclean hands regarding the sale of the house.

46.    According to the definition of unclean hands doctrine in the Bouvier Law Dictionary "A wrongdoer is not entitled to equitable relief. Unclean hands is a short hand for the maxim, "one who comes before equity must come with clean hands," which is to say that a plaintiff cannot seek relief in equity for the defendant's misdeeds when the plaintiff has done the same or worse. The misdeeds must, however, be related to the cause of action. The doctrine is sometimes conflated with a separate maxim, "he who seeks equity must do equity," which requires the performance of an affirmative duty, while the clean hands maxim requires restraint from wrongdoing."

47.    The delay of the payment of the DSO has been caused by the holdups created by the alleged claimant herself.

48.    All of the interest accrued after 2012, are not payable by the estate to the alleged creditor due to the fact that said delays have been self-inflicted.

49.    Trustee has offered to sell the property to alleged claimant in the interest that part of the owed DSO could be paid and additional creditors could also be benefited.

50.    Alleged claimant has refused to buy imposing irrational requests for sale to the Trustee.

51.    Alleged claimant's only interest is to stay at the property without paying the property's real value.

52.    With the sale of the house, not only Creditor claim could be paid, but other creditors would be benefit as well.

53.    Alleged creditor in this case has prevented, on bad faith, the sale of the house which will produce the monies that will be used to pay the DSO claim and other creditors.

54.    "Not every wrongful act constitutes unclean hands, but the misconduct need not be a crime or an actionable tort. **Any conduct that violates conscience, or good faith, or other equitable standards of conduct, is sufficient cause to invoke the doctrine.** The misconduct that brings the clean hands doctrine into play must relate directly to the cause at issue. Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice." [Emphasis ours.] *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970 (1999).

App. Ap. pp.147

"The defense of unclean hands arises from the maxim, one who comes into equity must come with clean hands. The doctrine demands that a plaintiff act fairly in the matter for which he or she seeks a remedy, and must come into court with clean hands and keep them clean, or relief will be denied, regardless of the merits of the claim. The defense is available in legal as well as equitable actions. Applicability of the doctrine of unclean hands is a question of fact. The unclean hands doctrine protects judicial integrity and promotes justice. It protects judicial integrity because allowing a plaintiff with unclean hands to recover in an action creates doubts as to the justice provided by the judicial system. Thus, precluding recovery to the unclean plaintiff protects the court's, rather than the opposing party's, interests. The doctrine promotes justice by making a plaintiff answer for his or her own misconduct in the action. It prevents a wrongdoer from enjoying the fruits of his or her transgression." _Kendall-Jackson Winery, Ltd. v. Superior Court_, *supra.*

55.     On the other hand, the self-infliction rule is used to reduce damages brought about the misconduct of the claimant party, in this particular case the accrued interests from 2012 to present.

56.     This doctrine applies equitable principles to prevent parties from gaining improper advantage created through improper intent or reckless conduct of their own.

57.     Also, the avoidable consequences doctrine prevents recovery of damages that arise from consequences reasonably avoidable by the plaintiff (in this case alleged creditor).

58.     Alleged creditor has prevented the sale of the property belonging to herself and Debtor, by her own acts she has prevented the payment of the alleged claim she presented.

### VII.   _Conclusion_

1.     Alleged creditor, Amarilys González García, has no legal standing to pursue this claim or the homestead right of her adult children.

2.     Said claim must be disallowed due to the fact that on alleged creditor's response of May 3rd, 2019 *(Dkt. 164)*, two sworn statements from her children, Juan Francisco Balcells González and Alexandra Balcells González, were included as attachments which state that they are both adults of legal age.[4] *Dkt. 164.*

3.     Article 247 (31 L.P.R.A. sec. 971) of the Civil Code of Puerto Rico states that adulthood is reached at 21 years old. Therefore, Defendant lacks judicial standing to claim and/or

---

[4] Alleged Creditor, also states that her "children" are 21 and 24 years old on *Docket 177*, Page 5, paragraph 7.

receive any DSO payments since both "children" are adults with capacity to claim, receive and manage their child support payments.

4.      Both of her children are now adults capable of pursuing legal action to assert their rights, in this case the DSO claim and if applicable, homestead right.

5.      In the alternative, the total of the DSO obligation that the estate should pay is the amount of the obligation at the moment of the bankruptcy filing (August 5, 2011), which according to Court records is of $125, 046.00, minus the mortgage payments that were included in the said amount.[5]

6.      The Court of First Instance of Puerto Rico in Bayamón said that the house payment was included in the amount established for child support. [Translation ours.][6]

7.      Therefore, the total amount to be paid in DSO must be calculated removing the sum that represents the mortgage payments made by the debtor.

8.      Otherwise, once the property is sold the Debtor would be paying the mortgage twice, one as part of the DSO and second, satisfying the mortgage lien held by Banco Popular de Puerto Rico.

9.      The delay on the payment of the DSO is due to the fact that the Defendant refuses to sell the mentioned property, causing harm not only to herself but other creditors as well.

10.     The augment in interest of the DSO stated by the alleged creditor is due to self-inflicted hardships due to her own actions, hence not recoverable.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to take notice of the aforementioned; disallow this claim because alleged creditor has no standing to pursue it; or in the alternative state the amount owed in DSO, and GRANTS the Plaintiffs' Objection to Claim 5-2, at *Dkt.179*.

## NOTICE

**Within thirty (30) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other**

---

[5] The Court of First Instance of Puerto Rico, in Bayamón issued a Minute – Resolution (Case D DI2006-4055) for the hearing of July 23rd, 2012, transcribed on August 3, 2012, in which they pronounced that the amount owed as a total for the Domestic Support Obligation of $125,046.00, which included the mortgage payments.

[6] "El Tribunal indica que el pago de la casa se imputa como parte de la pensión alimentaria." *Dkt.157-1*

appropriate response to this paper with the clerk's office of the United States
Bankruptcy Court for the District of Puerto Rico. If no objection or other response is
filed within the time allowed herein, the objection will be deemed unopposed and may
be granted unless: (1) the requested relief is forbidden by law; (2) the requested relief
is against public policy; or (3) in the opinion of the court, the interest of justice
requires otherwise. If you file a timely response, the court may schedule a hearing.

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date, I electronically
filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification
of such filing to the Assistant US Trustee at the US Trustee's Office, Ochoa Building, 500 Tanca
Street, Suite 301, San Juan, Puerto Rico 00901 and all parties in interest; it was also notified to
Amarilis González García, P.O. Box 984, Guaynabo, Puerto Rico 00970; and Roberto E Berrios
at Berrios Falcon, LLC., Capital Center Building, South Tower, Suite 901, 239 Arterial Hostos
Avenue, San Puerto Rico 00918 and  rblawpr@yahoo.com.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on November 19th, 2019.

/s/ **RAFAEL A. GONZALEZ VALIENTE**
**USDC-PR 225209**
Email: rgv@g-glawpr.com

GODREAU & GONZALEZ
LAW, LLC

P.O Box 9024176,
San Juan, PR 00902-4176
Tel. (787) 726-0077

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO
### Minute Entry

**_Hearing Information:_**

**Debtor**: JUAN CARLOS BALCELLS GALLARETA
**Case Number**:  11-06637 MCF                                          **Chapter:** 7
**Adversary Number**: 14-00137-MCF
**Date / Time / Room**: 02/19/2020 09:10 am
**Bankruptcy Judge**: MILDRED CABAN FLORES
**Courtroom Clerk**: ED BUJOSA
**Reporter / ECR**: CARLOS APONTE

**_Matter:_**

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT #177) AND RELATED
DOCUMENTS (DKT #178)

**_Appearances:_**

Rafael A. Gonzalez on behalf of Noreen Wiscovitch, Chapter 7 Trustee, Plaintiff
Roberto E. Berrios on behalf of Amarilis Gonzalez, Defendant

**_Minutes of Proceedings:_**

**ORDER:**

Defendant's Motion for Summary Judgment (Docket No. 177) is denied for the reasons stated in
open court.

With respect to the Trustee's Objection to Claim 5-2 in the legal case (Docket No. 179), the
parties are granted 60 days to conclude discovery.  A pretrial conference on the adversary case
and on the objection to claim will be scheduled for June 24, 2020, at 9:00 a.m.

The parties were advised to consider whether the adult children need to be included in the
adversary action.

**/s/MILDRED CABAN FLORES**
**U.S. Bankruptcy Judge**

App. Ap. pp.151

FORM 1

**INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT**

**ASSET CASES**

Page No: 1

| Case No.: | 11-06637-MCF | Trustee Name: | Noreen Wiscovitch-Rentas |
|---|---|---|---|
| Case Name: | BALCELLS GALLARETA, JUAN CARLOS | Date Filed (f) or Converted (c): | 08/05/2011 (f) |
| For the Period Ending: | 03/31/2020 | §341(a) Meeting Date: | 12/06/2011 |
| | | Claims Bar Date: | 07/30/2012 |

| | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| | Asset Description (Scheduled and Unscheduled (u) Property) | Petition/ Unscheduled Value | Estimated Net Value (Value Determined by Trustee, Less Liens, Exemptions, and Other Costs) | Property Abandoned OA =§ 554(a) abandon. | Sales/Funds Received by the Estate | Asset Fully Administered (FA)/ Gross Value of Remaining Assets |
| Ref. # | | | | | | |
| 1 | HOUSEHOLD GOODS | $800.00 | $0.00 | | $0.00 | FA |
| Asset Notes: | COMPUTER, Smartphone, light tools | | | | | |
| | debtor amended schedule B to updated household value and description(original amount listed $400.00) docket 99 filed 8/25/14 | | | | | |
| 2 | HOUSEHOLD GOODS | $5,000.00 | $0.00 | | $0.00 | FA |
| Asset Notes: | UNDIVIDED MARITAL ASSETS- YET TO BE DETERMINED EX HAS HOGAR SEGURO THEREFORE HE HAS NO ACESS TO THE ASSETS | | | | | |
| | living room set, dinning room set, 2 TV, 3 split units A/C, kitchen appliances, refrigerator, microwave, flatware & china, washer and dryer, 3 bedrooms set, linens. | | | | | |
| | debtor amended schedule B to updated household value and description(original amount listed $0.00) docket 99 filed 8/25/14 | | | | | |
| 3 | WEARING APPAREL | $100.00 | $0.00 | | $0.00 | FA |
| Asset Notes: | CLOTHES | | | | | |
| 4 | FURS AND JEWELRY | $50.00 | $0.00 | | $0.00 | FA |
| Asset Notes: | WATCH | | | | | |
| 5 | BOATS AND ACCESSORIES | $16,000.00 | $4,025.00 | | $4,025.00 | FA |
| Asset Notes: | MAKO 1987 OUTBOARD 26' CTRCN MODEL 261 | | | | | |
| | Trustee Objection to Debtor Claimed exmption was granted docket 85 filed 5/5/14 | | | | | |
| | Debtor sold this Boat. | | | | | |
| | Debtor's Attorney amended Schedule B & C to increase the VALUE OF ASSET AND  amount claimed exempt ( NOW 16,000.00) | | | | | |
| 6 | RESIDENCE (u) | $420,000.00 | $338,122.35 | | $0.00 | $338,122.35 |
| Asset Notes: | 381 VILLA VERSALLES ST, VILLA REALES DEV. , GUAYNABO, PR 00965 | | | | | |
| | Debtor amended schedule A to updated lien over the property and claimed exemption over property (original amount of lien $63,780.27, amount claimed exempt $0.00) docket 99 | | | | | |
| | filed 8/25/14 Debtor purchased this property with ex-wife, as per title search. he owns  50% of the realty. | | | | | |
| | Adversary case 14-00137. 31 (Approval of sale of property of estate and of a co-owner - 363(h)): Complaint by NOREEN WISCOVITCH RENTAS against AMARILIS GONZALEZ | | | | | |
| | GARCIA.  Adversary still pending.  - Noreen Wiscovitch 04/11/2016. | | | | | |
| 7 | FINANCIAL ACCOUNTS (u) | Unknown | $0.00 | | $0.00 | FA |
| Asset Notes: | BPPR Checking acct # 347-058xxx | | | | | |
| 8 | HOUSEHOLD GOODS (u) | $500.00 | $0.00 | | $0.00 | FA |
| Asset Notes: | exercise bench w/ weights , and rowing machine | | | | | |
| | debtor amended schedule B to listed household items no listed on the pettion docket 99 filed 8/25/14 | | | | | |
| 9 | CONTINGENT CLAIMS (u) | $465.00 | $0.00 | | $0.00 | FA |
| Asset Notes: | 2010 IT  refund | | | | | |
| | debtor amended schedule B and C to list this asset. docket 99 filed 8/25/14 | | | | | |
| 10 | CONTINGENT CLAIMS (u) | $558.00 | $0.00 | | | FA |

App. Ap. pp.152

FORM 1

**INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT**

**ASSET CASES**

Page No:     2

| Case No.: | 11-06637-MCF | | Trustee Name: | Noreen Wiscovitch-Rentas |
| Case Name: | BALCELLS GALLARETA, JUAN CARLOS | | Date Filed (f) or Converted (c): | 08/05/2011 (f) |
| For the Period Ending: | 03/31/2020 | | §341(a) Meeting Date: | 12/06/2011 |
| | | | Claims Bar Date: | 07/30/2012 |

| | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| | Asset Description (Scheduled and Unscheduled (u) Property) | Petition/ Unscheduled Value | Estimated Net Value (Value Determined by Trustee, Less Liens, Exemptions, and Other Costs) | Property Abandoned OA =§ 554(a) abandon. | Sales/Funds Received by the Estate | Asset Fully Administered (FA)/ Gross Value of Remaining Assets |
| **Asset Notes:** | 2011 IT refund / 7.05 months | | | | | |
| **Ref. #** | | | | | | |
| 11 | Contingent claims                                  (u) | $0.00 | $3,000.00 | | $3,000.00 | FA |
| **Asset Notes:** | Adversary Proceeding no. 16-00209 against Banco Popular for violation of Automatic Stay. | | | | | |
| | Trustee settled this claim for $3000.00.  - Noreen Wiscovitch 02/09/2018 | | | | | |
| | STIPULATION FILED DOCKET 51 | | | | | |
| | ORDER APPROVING STIPULATION DOCKET 54 | | | | | |

| TOTALS (Excluding unknown value) | | | | | | Gross Value of Remaining Assets |
|---|---|---|---|---|---|---|
| | | $443,473.00 | $345,147.35 | | $7,025.00 | $338,122.35 |

**Major Activities affecting case closing:**

| | |
|---|---|
| 02/19/2020 | Defendant's Motion for summary judgment was denied.  Pre-trial date set for May 2020.  NWR 2-19-20 |
| 11/08/2019 | Hearing on Motion for Summary Judgment set for Feb. 2020.  NWR 11-8-19 |
| 09/04/2019 | Pending Cross motions for Summary Judgment in adversary.  NWR 9/4/19 |
| 03/05/2019 | New appraisal done on property.  Adversary to sell realty still pending.  NWR 3-5-19 |
| 12/07/2018 | Adversary is still pending.  Counterclaim against Plaintiff was voluntarily dismissed in November 2018.  NWR 12-7-18 |

App. Ap. pp.153

FORM 1
**INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT**
**ASSET CASES**

Page No:   3

| | |
|---|---|
| Case No.: | 11-06637-MCF |
| Case Name: | BALCELLS GALLARETA, JUAN CARLOS |
| For the Period Ending: | 03/31/2020 |

| | |
|---|---|
| Trustee Name: | Noreen Wiscovitch-Rentas |
| Date Filed (f) or Converted (c): | 08/05/2011 (f) |
| §341(a) Meeting Date: | 12/06/2011 |
| Claims Bar Date: | 07/30/2012 |

| 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|
| Asset Description (Scheduled and Unscheduled (u) Property) | Petition/ Unscheduled Value | Estimated Net Value (Value Determined by Trustee, Less Liens, Exemptions, and Other Costs) | Property Abandoned OA =§ 554(a) abandon. | Sales/Funds Received by the Estate | Asset Fully Administered (FA)/ Gross Value of Remaining Assets |

Adversary continues to sell realty jointly owned with former spouse. Discovery is being conducted. - Noreen Wiscovitch 7/14/2018

Trustee attempting to settle adversary against former spouse for the sale of the realty. - Noreen Wiscovitch 04/15/2018

Trustee settled with Banco Popular for violation of Automatic Stay for $3,000.00. Funds have been received. Adversary against former spouse continues - Noreen Wiscovitch 03/21/2018

Adversary is still pending. Judge denied Motion for Summary Judgment. - Noreen Wiscovitch 1/26/2018

Both Adversaries pending including adversary for violation of Automatic Stay against Banco Popular. - Noreen Wiscovitch 07/10/2017

Motions for Summary Judgment on Adv. No. 14-00137 against Ex-spouse is pending for April 2017. Pending adversary against Bank for violation of Automatic Stay. - Noreen Wiscovitch 02/17/2017

Adversary against Ex-Spouse still pending Court denied Motion for Summary Judgment. Appeal may need to be taken. - Noreen Wiscovitch 08/29/2016

Adversary against Ex-Spouse continues in order to sell realty. - Noreen Wiscovitch 04/11/2016

Trustee continues to pursue adversary to sell realty. Offer from former spouse received. Still negotiating. May 20, 2015, 04:31 pm

Pending adversary against Debtor's former spouse to sell realty. January 21, 2015, 02:40 pm

Debtor paid for non-exempt portion of boat. Trustee filed suit to sell realty. June 26, 2014, 11:02 pm

Trustee to file 363(h) action to sell realty. Stipulation could not be filed. Trustee filed motion to compel turnover of equity of boat. April 23, 2014, 02:29 pm

Trustee hired new counsel and will enter into stipulation to sell to ex-spouse the Estate's Right, Title and interest in the Realty. February 12, 2014, 04:53 pm

Trustee continues to attempt to sell realty. April 22, 2013, 12:00 am

Trustee to continue to attempt to sell realty. October 31, 2012, 01:15 pm

Trustee to attempt to sell realty. April 28, 2012, 06:44 pm

This case was closed and later re-opened. November 09, 2011, 12:31 pm

[Noreen Wiscovitch 2015-07-02 05:00:00]

| | | | |
|---|---|---|---|
| **Initial Projected Date Of Final Report (TFR):** | 12/31/2013 | **Current Projected Date Of Final Report (TFR):** | 12/31/2020 |

/s/ NOREEN WISCOVITCH-RENTAS

NOREEN WISCOVITCH-RENTAS

App. Ap. pp.154

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

JUAN CARLOS BALCELLS GALLARETA                    CASE NO. 11-06637 MCF
DEBTOR

                                                  CHAPTER 7

OPPOSITION TO MOTION TO DISMISS FILED BY ASOCIACION DE
RESIDENTES DE VILLAS REALES

TO THE HONORABLE COURT:

**COMES NOW**, Plaintiff, the Chapter 7 Trustee of the
Bankruptcy Estate of Juan Carlos Balcells Gallareta, through the
counsels, and respectfully show and pray:  Debtor's filed for
Bankruptcy protection on October 2, 2018.  Dkt.1.

That on August 5th, 2011, Debtor filed a Voluntary Petition
for relief under Chapter 7 of the Bankruptcy Code. Dkt.1.

That on February 19th, 2021, at docket 210, Asociación de
Residentes Villas Reales Inc. (herein after "Asociación) filed a
Motion to Dismiss.

That said motion alleges that the case should be dismissed
in accordance with **11 U.S.C. §1307** because Debtor has failed to
make payments of the homeowner's association dues before and
after the filing of the petition.

App. Ap. pp.155

For starters, Debtor is not the sole owner of the property at Villas Reales. Debtor and his ex-wife Amarilys González García, who still resides on the property, are the co-owners of the aforementioned property.[1] Mrs. González García resides in the property with her two children that are now of age.

It has been Mrs. González García who has refused to make maintenance and mortgage payments of the property for the past years despite having used and enjoyed the protection of the property in Villas Reales.

Mrs. González García, defendant in adversary proceeding 14-00137, has been enjoying the property for the past 10 years, and conveniently failed to make payments on the maintenance of the property like a "buen padre de familia" should do according to Puerto Rico law. Defendant has also increased the default of the encumbrances of the property, adamantly causing by her refusal to pay, a lower net value.

Both the mortgage and the association maintenance fee have accrued high balances caused by failure to pay them, notwithstanding the fact that Mrs. González García she lives in the house. This, with the obvious intention of lowering the net value of the property and to strengthen her position in the Adversary case.

---

[1] The Villas Reales property is part of an adversary proceeding in this Bankruptcy case. Adv. No. 14-00137.

Mrs. González has also willfully added unreasonable delay to the adversary proceeding with her never-ending requests for extensions of time, change of counsel, and continuances.[2]

For that reason alone, the case should not be dismissed.

Nevertheless, Asociación de Residentes relies on a section of the Code meant to be used for Chapter 13 cases. This is a Chapter 7 case. The applicable section is the following:

> Section 707 of the Bankruptcy Code states that the
> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
>     (1) unreasonable delay by the debtor that is prejudicial to creditors;
>     (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
>     (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.
> (b) (1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or

---

[2] Some examples are: Dkts.67, 105, 107, 120, 126, 159, 194, 213, and even more on the Adversary Proceeding.

organization (as that term is defined in section 548(d)(4)).

There is nothing in this section that permits a movant to ask for dismissal for the reasons stated in its motion, even if it were a secured creditor, which as we shall see it isn't.

Secondly, the section of the Code Asoción is relying on is for the benefit of secured creditors. Asociación is not a secured creditor in this case.

The determination of secured claims is governed by section 506 of the Bankruptcy Code. This section states the following:

(a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
       (2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.
       (b) To the extent that an allowed secured claim is secured by property the value of which, after any

recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

On September 18th, 2014, Asociación filed their Proof of Claim 15, to which the only attach the invoices stating the amounts owed. Asociación did not file any evidence of security of the POC. The mere fact of checking the box of the POC form that states that a claim is secured does not provide a security to amounts allegedly owed by Debtor. The bar date to file POC's was on July 30th, 2012.

That Asociación has not presented evidence of a secured claim. In fact, it has not presented any evidence of a perfection of security. Unless, creditor Asociación de Residentes Villas Reales, Inc. had filed a lawsuit in state

App. Ap. pp.159

court, and had obtained judgment and/or an attachment order to

the favor, its Claim is not secured.

It is important to remember that the property is not an

apartment, but a house in a closed community.   Thus, the

applicable law in relation to maintenance fees is Puerto Rico

Law #21 of May 20th, 1987. In its pertinent part, Puerto Rico

Law, 23 L.P.R.A. Sec. 9 states as follows:

Registration; Requirements.

The permit and authorization referred to in Sec. 64 of
this title may be registered in the Puerto Rico Property
Registry as a real tax on the estate in compliance with the
following requirements:

(a) Where the application for permission and
authorization was made by an urban planner,
developer or builder who has complied with sec.
64b-1 of this title, the registrant and registrant
shall make the application for registration in
public deed and shall submit certification of the
Planning Board of Puerto Rico and the municipality
where the development or lotification in which it
is stated that the requirements set out in section
64b-1 were met of this title and the conditions or
limitations imposed for the granting of the permit
or authorization. If the estate on which the levy
is to be registered is segregated or its
segregation is requested, the levy on each of the
new segregated farms or to be segregated shall be
entered. If the estate was not segregated and then
segregated at the time of each segregation, the
registrar of the property will record in each
inscription of the new estates the existence of
the levy.

(b) Where the application for registration is
made by any person other than the developer,
developer or builder, the application for
registration shall be required to be made by
public deed signed by the registrants who own more
than fifty percent (50%) of the farms that are
part of the urbanization, street or community to

which the permit and authorization have been
extended and a certification of the municipality
that granted the authorization and permission in
which the grant of such permission and the
conditions imposed will be included. ***Such
application for registration may be made by public
deed by the Council, Board or Association of
Residents that is duly organized in accordance
with the laws of Puerto Rico and is in office, but
in this case an affidavit must be filed from each
registrant who owns each of the farms on which the
lien is to be constituted in which they certify
that they consent to the registration of the levy
and that authorize the Council , Board or
Association to apply for registration and the
registration description of the property will be
recorded.*** The registration herein will only take
effect on those farms whose owners have consented
to the registration.

Where the holder has consented to the recording of
the tax conditional on the tax being constituted by a
certain percentage of owners of the urbanization,
street or community, the fulfilment of the condition
must be adequately established before the authorization
and permit can be registered as a lien on the estate of
the authorizing owner subject to that condition.

[*Emphasis ours*]

Asociación did not comply with these requirements.
Therefore, a security over the real property owned by Debtor does
not exist. This is clear from the title study and Restricted
Covenant Deed submitted with the Motion Requesting Relief from
Stay.

Asociación did not file the required documents according to
Puerto Rico Law 21. No affidavit on which the lien is to be
constituted, signed by the owners, by Asociación certifying the
consent for the registration of the levy and that authorizes the

App. Ap. pp.161

Council, Board or Association to apply for registration and so that the registration description of the property be recorded.

Since Asociación did not follow the requirements of Law 21, there is no lien in its favor recorded in the Property Registry and it is not a secured creditor.

Also, the aforementioned property is part of an adversary proceeding that will allow the sale of the Property for the benefit of creditors, including Asociación. Therefore, the Claim can not be distributed until the estate is collected and liquidated.

Once the liquidation process is over, the Trustee will distribute the estate to the creditors accordingly.

Asociación has the burden to establish cause why the case should be dismissed. *In re: Navine*, 548 B.R. 343 (NDGA 2016) (A party seeking dismissal of a Chapter 7 case has the burden of establishing case by preponderance of the evidence.) It has failed to do so.

In sum, the Trustee request that the Court DENY Asociación de Residentes Villas Reales' Motion to Dismiss since its motion is based on §1307(4) which does not apply in a Chapter 7 case and even if it did, Asociación is not a secured creditor.

**WHEREFORE**, Debtor respectfully requests that the Court DENY Asociación de Residentes Villas Reales' Motion to Dismiss.

### CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties in the case.
**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 3rd day of March 2021.

By: /s/ *Rafael A. Gonzalez Valiente*
USDC NO. 225209
Counsel for the Bankruptcy Estate
Godreau & Gonzalez Law, LLC
PO Box 9024176
San Juan, PR  00902-4176
Telephone:  787-726-0077
*rgv@g-glawpr.com*

*Z:\AL2016-19\Juan C Balcells\Adversary 2020\Opposition to Motion to Dismiss by associacion de residentes villas reales.doc*

App. Ap. pp.163

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | |
| JUAN CARLOS BALCELLS GALLARETA<br>DEBTOR | CASE NO. 11-06637 MCF<br><br>CHAPTER 7 |

## OPPOSITION TO MOTION FOR RELIEF OF AUTOMATIC STAY FILED BY ASOCIACION DE RESIDENTES DE VILLAS REALES

**TO THE HONORABLE COURT:**

**COMES NOW**, Noreen Wiscovitch Rentas, the Chapter 7 Trustee of the Bankruptcy Estate of Juan Carlos Balcells Gallareta, through the counsels, and respectfully show and pray:

That on August 5th, 2011, Debtor filed a Voluntary Petition for relief under Chapter 7 of the Bankruptcy Code. Dkt.1.

That on February 19th, 2021, Asociación filed a Motion for Relief from Stay at docket 208.

That the aforesaid motion alleges that Debtor has failed to make post-petition payments of the homeowner's association dues before and after the petition and requests relief to **_proceed against the property_**.

App. Ap. pp.164

## I. <u>FAILURE TO COMPLY WITH THE RULES</u>

According to Bankruptcy Local Rules the requirements to comply

with a Motion under 362 of the Bankruptcy Code are the following:

"Rule 4001-1 Relief from Automatic Stay

(a) Motion. A motion for relief from stay shall not be
combined with a request for any other type of relief
unless so authorized by the court, except that the movant
may request adequate protection as alternative relief.

(b) Affidavit of Military Service Required. At the time
of the filing of a motion for relief from stay in
accordance with Fed. R. Bankr. P. 4001, and motions for
relief from co-debtor stay in accordance with Fed. R.
Bankr. P. 9014, movant must file an affidavit with the
court which
(a) states whether or not the respondent is in military
service and shows necessary facts to support the
affidavit, or
(b) if movant is unable to determine whether or not the
respondent is in military service, states that movant is
unable to so determine. The court will not enter any
default orders lifting the stay if a movant does not
supply the required affidavit of military service. If
the court is unable to ascertain a respondent's military
status from the presented affidavit, it may require
movant to file a bond before entering any default order
lifting the stay.
(c) Service. Movant must serve both the motion and a
notice within three (3) days of issuance of the notice.
Movant must file a certificate of service, as provided
on the bottom of the reverse side of the notice, within
seven (7) days of effecting service. The court may deny
the motion for relief from stay and remove the matter
from the courts calendar, if movant fails to serve the
notice within the three (3) day period prescribed
herein. All documents filed pursuant to this LBR must be
served on the following parties:
    (1) the debtor;
    (2) debtor's counsel;
    (3) the trustee, if one has been appointed;
    (4) any committee elected pursuant to 705 or
appointed pursuant to 1102;

(5) if no committee has been appointed, the creditors listed in Fed. R. Bankr. P. 1007(d);

(6) **_all parties with liens of record, or any other party known to the movant claiming an interest in the property_**;

(7) parties requesting notice; and

(8) The United States trustee in a chapter 11 case. (d) Relief from Stay of Act Against Property. If movant seeks relief with respect to a stay of an act against property under 11 U.S.C. 362(d)(1) or (d)(2), the motion must be accompanied by the following supporting documents:

(1) true copies of all notes, bonds, mortgages, security agreements, financing statements, assignments, pledges, allonges and any other relevant document;

(2) a report of any appraiser whose testimony is to be presented at the hearing;

(3) a statement of amount due, including a breakdown in the following categories:

(A) unpaid principal;

(B) accrued interest, from and to a specific date;

(C) late charges, from and to a specific date;

(D) attorney's fees;

(E) advances for taxes, insurance, and like concepts;

(F) unearned interest;

(G) any other charges including costs and expenses; and

(H) a per diem interest factor…"

"With some exceptions under section 362(b), the purpose of the automatic stay is to provide the debtor "with a 'breathing spell' from creditors" and to stop "all collection efforts, all harassment, and all foreclosure actions upon filing for bankruptcy." <u>Hiraldo v. Banco Popular de P.R.</u>, 471 B.R. 676, 681

(Bankr. D.P.R. 2012) (citing H.R. Rep. No. 95-595, at 340-42 (1977); S. Rep. No. 95-989, at 54-55 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840, 6296-97). **The collection of maintenance fees does not fall within any of the exceptions to the automatic stay.** 11 U.S.C. § 362(b)." <u>Aponte v. Diplomat (In re Aponte)</u>, 2014 Bankr. LEXIS 3300.

Asociación did not serve all interested parties according to 11 U.S.C. § 362. Specifically, it failed to serve Banco Popular de Puerto Rico and counsel of the Trustee. See, Dkt. 212.

Neither did they present any security agreement or any other relevant document with their motion which evidences the alleged lien over the property.

Asociación also failed to file an appraiser report, testimony is to be presented at the hearing to prove there is no equity in the property.

Furthermore, Asociación filed some of their supporting documents in the Spanish language contrary to Bankruptcy Local Rule 9070-1.[1]

## II. <u>ASOCIACION DOES NOT HAVE A SECURE CLAIM</u>

It is important to note that the property in question is a stand-alone house and not an apartment, so there is no automatic

---

[1] (c) Form of Exhibits. Copies of exhibits that are intended to be offered as exhibits in a contested matter or hearing must be legible and copies of photographs must be in color, unless the original photograph is in black and white. **Exhibits submitted in violation of this rule will not be admissible into evidence.** All exhibits and documentary evidence in Spanish or other language shall be fully translated to the English language by a certified translator. [Emphasis ours.]

legal lien to protect homeowner associations.  In the case of
houses and maintenance fees, we must look to find answers under
Puerto Rico Law #21 of May 20th, 1987. In its pertinent part, Puerto
Rico Law 21, 23 L.P.R.A. Sec. 9. states as follows:

Registration; Requirements. (23 L.P.R.A. sec. 64d-1),

"the permit and authorization referred to in sec. 64 of this
title may be registered in the Puerto Rico Property Registry as a
real tax on the estate in compliance with the following
requirements:

(a) Where the application for permission and
authorization was made by an urban planner, developer or
builder who has complied with sec. 64b-1 of this title,
the registrant and registrant shall make the application
for registration in public deed and shall submit
certification of the Planning Board of Puerto Rico and
the municipality where the development or lotification
in which it is stated that the requirements set out in
section 64b-1 were met of this title and the conditions
or limitations imposed for the granting of the permit or
authorization. If the estate on which the levy is to be
registered is segregated or its segregation is
requested, the levy on each of the new segregated farms
or to be segregated shall be entered. If the estate was
not segregated and then segregated at the time of each
segregation, the registrar of the property will record
in each inscription of the new estates the existence of
the levy.
b) Where the application for registration is made by any
person other than the developer, developer or builder,
the application for registration shall be required to be
made by public deed signed by the registrants who own
more than fifty percent (50%) of the farms that are part
of the urbanization, street or community to which the
permit and authorization have been extended and a
certification of the municipality that granted the
authorization and permission in which the grant of such
permission and the conditions imposed will be included.

***Such application for registration may be made by public
deed by the Council, Board or Association of Residents
that is duly organized in accordance with the laws of
Puerto Rico and is in office, but in this case an***

***affidavit must be filed from each registrant who owns each of the farms on which the lien is to be constituted in which they certify that they consent to the registration of the levy and that authorize the Council , Board or Association to apply for registration and the registration description of the property will be recorded.*** The registration herein will only take effect on those farms whose owners have consented to the registration.

Where the holder has consented to the recording of the tax conditional on the tax being constituted by a certain percentage of owners of the urbanization, street or community, the fulfilment of the condition must be adequately established before the authorization and permit can be registered as a lien on the estate of the authorizing owner subject to that condition.
*[Emphasis ours.]*

Asociación did not comply with these requirements. Therefore, a security over the real property owned by Debtor does not exist in favor of Asociación. This is clear from the title study and Restricted Covenant deed submitted with the Motion Requesting Relief from Stay.

Asociación did not file the required documents according to Puerto Rico Law 21. No affidavit on which the lien is to be constituted, signed by the owners, was filed by Asociación certifying the consent for the registration of the levy and that authorizes the Council, Board nor did Association apply for registration.

Therefore, no security exists on the real property of Villas Reales.

## III. <u>EQUITY</u>

An equity cushion in and of itself may provide adequate protection for a secured creditor under an automatic stay. *In re Boyd*, 34 B.R. 218, 218.

It is well settled that an "equity cushion" in and of itself may provide adequate protection for a secured creditor. *In re San Clemente Estates,* 5 B.R. 605, 610, 2 CBC 2d 1003, 6 BCD 838 (Bankr. S.D. California 1980); *In re Tucker,* 5 B.R. 180, 182, 2 CBC 2d 535 (Bankr. S.D. N.Y. 1980); *In re Llewellyn,* 27 B.R. 481, 482 (Bankr. M.D. Pa. 1983); *In re McCall,* 25 B.R. 199, 202 (Bankr. E.D. Pa. 1982); *In re Gaslight Village, Inc.,* 8 B.R. 866, 871 (Bankr. D. Conn. 1981); *In re 5-Leaf Clover Corp.,* 6 B.R. 463, 466 (Bankr. S.D. W. Va. 1980). The adequacy of the cushion should be evaluated on a case-by-case basis. *Matter of Schaller,* 27 B.R. 959 (Bankr. W.D. Wis. 1983); *In re Elliott Leases Cars, Inc.,* 20 Bankr. 893 (Bankr. D.R.I. 1982); *La Jolla Mortgage Fund v. Rancho El Cajon Associates,* 18 B.R. 283, 288 (Bankr. S.D. California 1982). One element which will determine the adequacy of the cushion is the chance that the cushion will rapidly dissipate. *In re Pitts,* 2 B.R. 476, 478, 1 CBC 2d 241, 5 BCD 1129 (Bankr. C.D. Cal. 1979). However, a secured party may be adequately protected even though accruing interest results in an increase of the mortgage debt. *Com. of Pa. State Emp. Retirement Fund v. Roane,* 14 B.R. 542, 545, 5 CBC 2d 1173 (Bankr. E. P. Pa. 1981). The bottom line is that if the property is worth more than the debt, the Bank is adequately protected as long as it remains fully secured. *See, In re Nixon Machinery Company,* 9 B.R. 316, 318 (Bankr. E.D. Tenn. 1981); *see, also, 2 Collier on Bankr.* (15th ed. 1979 rev. 1983) para. 362.01 at page 362-15 (secured creditor is constitutionally entitled to protection to extent of the lesser of the value of the collateral or the amount of debt; there is no absolute right to an equity cushion); *In re Rogers Dev. Corp.,* 2 B.R. 679, 685, 1 CBC 2d 499, 5 BCD 1392 (Bankr. E.D. Va. 1980) (erosion of equity cushion is not an unconstitutional deprivation of property).

In this particular case the alleged secured debt by Asociación
is of $31,959.04, and the appraisal of the property made by Trustee
is of $260,000.00. Even if Asociación had a lien, which is denied,
there is more than enough equity cushion in the property.
Therefore, Asociación's interest is protected.

For all stated before, Trustee understands that the Motion
Requesting Relief from Stay on behalf of Asociación should be
denied.

**WHEREFORE**, it is requested from this Honorable Court that it
DENIES Asociación's Motion for Relief from Stay since it doesn't
comply with the basic requirements of Local Rule 4001-1 nor
applicable Puerto Rico Law.

### CERTIFICATE OF SERVICE

I hereby certify that on this same date, I electronically
filed the foregoing with the Clerk of the Court using the CM/ECF
system, which will send notification of such filing to all
participants of CM/ECF system.

Respectfully Submitted.

In San Juan, Puerto Rico this 3rd day of March of 2021.


*Attorney for Trustee*

**/s/ RAFAEL GONZÁLEZ VALIENTE**
**USDC NO. 225209**
Email: rgv@g-glawpr.com

**Godreau-González Law, LLC.**
PO Box 9024176
San Juan, PR 009202-4176
Tel: (787) 726-0077

App. Ap. pp.171

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE:                                               CASE NO. 11-06637 MCF

JUAN CARLOS BALCELLS GALLARETA              CHAPTER 7

DEBTOR

## AMENDED OBJECTION TO CLAIM # 5-2

**TO THE HONORABLE COURT:**

**COMES NOW**, Noreen Wiscovitch Rentas, Trustee of the Chapter 7 Bankruptcy Estate of Juan Balcells Gallareta, represented by its undersigned attorney and to this Honorable Court very respectfully states and prays that:

1.      On August 5, 2011, Debtor filed a Chapter 7, voluntary petition. *Dkt.1.*

2.      On February 8, 2012, Creditor, Amarilis González García filed Claim 5-1.

3.      On March 27, 2019, Plaintiff filed an Objection to claim #5-1. *Dkt.157*

4.      On May 3, 2019, Defendant filed a Response in Opposition to Objection to Claim #5-1. *See Dkt.164*.

5.      On May 3, 2019, alleged Creditor filed an amended POC, No. 5-2. *See Claim 5-2.*

6.      On July 2, 2019, this Honorable Court declared moot Chapter 7 Trustee's Objection to Claim Number 5 ruling that an amended proof of claim was filed. *Dkt.157 & 171.*

7.      There are several reasons for disallowing the POC filed by Ms. Amarilis González:

     a.      The Amended POC was filed by Mrs. Amarilis González. For the reasons detailed below and expanded on in a separate Motion for Summary Judgment filed concurrently with this Objection, Mrs. Gonzalez has no standing to claim

App. Ap. pp.172

the DSO which is the base of the Claim. The Claim needs to be disallowed for lack of standing. The person filing the claim against the estate is not owed any money.

b. And, the amount in the Amended POC is incorrect since it includes post-petition interest which are not allowed against the estate. The Amended POC also include portions that are attributable to the payment of the mortgage which will be paid off with the sale of the real property. Those amounts need to be deducted from the POC also.

### i. *Lack of Standing*:

8. Mrs. Gonzalez filed an Amended POC. The basis for it is a DSO debt for the support of the children Mrs. Gonzalez shares with the Debtor.

9. The debt is not owed to Mrs. Gonzalez, but to her son and daughter.

10. Mrs. González alleges that she obtained standing to file the DSO claim via two sworn statements from her already adult children. This is incorrect. It is well settled law that all family decisions in a Bankruptcy Court are based on state family law.

11. Puerto Rico's Civil Code, in its Article 247 (31 L.P.R.A. sec. 971), states that adulthood is reached at 21 years old. Both children Mrs. González allegedly represents are over 21 years old. Therefore, claimant lacks judicial standing to claim and/or receive any DSO payments since both "children" are adults with capacity to claim, receive and manage their child support payments.

12. "[O]nce children are emancipated, they have the capacity to represent their own interests in court, **not being able their parents to do so from that moment on**. In the case of due or overdue alimony, ***the parent does not have the legitimacy to represent his adult child***

(entitled to the alimony) or to continue the action to collect the unsatisfied amounts, even if the parent initiated the action originally."[1] *Sotomayor vs. Colón Cruz*, 2009 TSPR 134. *[Translation ours.] [Emphasis added.]*

13.     "Once the children are emancipated (unless such emancipation is granted by the parents under the provisions of chapter 109 of the Civil Code, 31 L.P.R.A. §§ 911-916), the children acquire the capacity to represent their own interests in court and the parents can no longer do so.  Civil Code Secs. 240, 246, and 247 (31 L.P.R.A. §§ 932, 955, and 971); *Álvarez v. Aponte*, 83 P.R.R. 595 (1961); *Vázquez v. Santos*, 49 P.R.R. 298 (1935); *Key Nieves v. Oyola Nieves*, 116 D.P.R. 261 [16 P.R. Offic. Trans. 321] (1985).

14.     In this case, both, Juan Francisco Balcells González and Alexandra Balcells González, have reached the majority of age.[2] *See Claim 5-2, Supporting Documents.*

15.     Alleged Creditor claims that pursuant to 11 U.S.C. Sec. 507(a)(1), allowed unsecured claims for DSO that, as of the date of the filing of the bankruptcy petition, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable non-bankruptcy law.

---

[1] "No obstante, una vez los hijos son emancipados, éstos tienen la capacidad para representar sus propios intereses ante los tribunales, no pudiéndolo hacer sus padres desde ese momento. En el caso de las pensiones alimenticias vencidas o atrasadas, el progenitor carece de legitimación para representar a su hijo alimentista mayor de edad o para continuar la acción de cobro de las cuantías no satisfechas, aunque haya sido el progenitor quien inició la acción originalmente."

[2] Alleged Creditor, stated that her "children" are 21 and 24 years old on Docket 177, Page 5, paragraph 7. Article 247 (31 L.P.R.A. sec. 971) of the Civil Code of Puerto Rico states that adulthood is reached at 21 years old. Therefore, Defendant lacks judicial standing to claim and/or receive any DSO payments since both "children" are adults with capacity to claim, receive and manage their child support payments. As of today, Mrs. González children must be around 23/24 and 25/26 years old.

16.     The aforementioned provision of the Code refers to the ***priority*** of the claims, not the ***standing*** of Mrs. Gonzalez ***to file*** the claim.

17.     Regarding standing in the federal sphere, it is stated that: "The constitutional aspect comes from the "case or controversy" requirement in Article III. To meet that requirement, a plaintiff seeking relief must have suffered an "injury in fact." _Lujan v. Defenders of Wildlife_, 504 U.S. 555, 560, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992).

18.     The determination of standing "depends upon whether the party has alleged such a personal stake in the outcome of the controversy . . . as to ensure that the dispute . . . will be presented in an adversary context. . ." _Sierra Club v. Morton_, 405 U.S. 727, 732, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972) *[internal citations omitted]*.

19.     Most often, the party seeking to establish standing must demonstrate this "personal stake" by showing that they "suffered some actual or threatened injury." _Gladstone Realtors v. Village of Bellwood_, 441 U.S. 91, 99, 99 S. Ct. 1601, 60 L. Ed. 2d 66 (1979). In addition, the Ninth Circuit has stated that to have standing in a bankruptcy case, a party "must be a 'person aggrieved' by the bankruptcy court's order . . . in other words, the order must diminish the [parties'] property, increase its burdens, or detrimentally affect its rights." _Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)_, 177 F.3d 774, 777 (9th Cir. 1999) (citation omitted).

20.     Mrs. González does not comply with the _constitutional_ requirement of standing. She has not suffered an actual or threatened injury with regards to her adult children rights to DSO; and she is not the aggrieved person.

21.     To have standing in bankruptcy court, parties must meet three requirements: (1) they must meet statutory "party in interest" requirements under 11 U.S.C.S. § 1109(b) of the bankruptcy code; (2) they must satisfy U.S. Const. Art. III constitutional requirements; and (3)

they must meet federal court prudential standing requirements. *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869 (2012)

22.     From the first glance it is obvious that Mrs. González does not comply with the U.S. Constitution Article III requirements.

23.     The Bankruptcy Code does not define the term "party in interest" except operationally: Section 1109(b) supplies us with a list of parties who must be considered parties in interest. Because the list of parties is preceded by the word "including," the list is illustrative, and not exhaustive. We have observed that the party-in-interest standard has "generally been construed broadly," and that "[c]ourts must determine on a case by case basis whether the prospective party has a sufficient stake in the proceedings so as to require representation." *Thorpe*, 677 F.3d at 884 (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985)). At the same time, we have also recognized that our sister circuits have not interpreted "party in interest" to mean "anyone who might be affected by the bankruptcy proceedings"; rather, a party in interest is one who has a "*legally protected interest* that could be affected by a bankruptcy proceeding." *Id.* (quoting *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992))

24.     Again, Mrs. González does not comply with the *statutory* requirements of a party in interest according to bankruptcy court rulings. She has no legally protected interest that could be affected by the proceeding.

25.     Even more, the Doctrine of Prudential Standing also prohibits a person from raising another person's legal rights.

26.     "In a bankruptcy case, a challenge to standing is a substantive objection under 11 USCS § 502 (b)(1) because if a claimant has not proven it is the owner of a claim with a right to

payment (*i.e.* the party with standing), the claim is unenforceable against the bankruptcy debtor under state law." *In re Richter*, 478 B.R. 30 (2012).

27.   "The Bankruptcy Code defines a 'creditor' as an 'entity that has a claim against the debtor that arose at the time of or before the order for relief', and defines a 'claim' as a '***right to payment***…" *In re Richter, supra. [Emphasis added]*

28.   "***Claimants therefore must first establish that they hold enforceable claims against the respective Debtors.***" *In re Richter, supra. [Emphasis added]*

29.   Sworn statements do not grant standing where none exists.  The minors whom the Creditor represented in this case have acquired the majority of age, hence the Creditor has no standing to pursue the petition of their interests in the DSO.

30.   Only the creditors themselves, *to wit* Alexandra and Juan Francisco Balcells González, may file the claim which is being presented by Mrs. Gonzalez.  Mrs. González does not hold an enforceable claim against debtor; she is not the owner of the claim and has no right to payment.

31.   Trustee hereby objects the aforementioned amended POC due to the fact that to this date the Creditor who presented the Amendment to Claim 5 (Claim 5-2), is not the party to whom the money is owed and has no legal standing to file the claim.  Therefore, the claim should be disallowed in its entirety.

ii.   ***Disallowance of Post-Petition Interest***:

32.   Mrs. González filed an Amended POC.  *See Claim 5-2.*

33.   As stated above, said POC should be disallowed in its entirety for lack of standing.

34.    But if the Court finds that the Claimant has standing, then the Amended Claim needs
to be partially disallowed for including ***post-petition interest*** in the DSO claim filed on behalf of
her children after the time of the original filing.

35.    State Court determined that the correct amount owed for the DSO, as of August
201,1 was ***$125,046.00*** in a Minute-Resolution from 2012.  That is the debt as of the filing of the
petition.[3]

36.    Section 502(b)(5) provides in pertinent part:

> [I]f [an] objection to a claim is made, the court, after notice and a hearing, shall
> determine the amount of such claim ... and shall allow such claim in such
> amount, except to the extent that — (5) such claim is for a debt that is unmatured
> on the date of the filing of the petition and that is excepted from discharge under
> section 523(a)(5) of this title;
> 11 U.S.C. §502(b)(5).

37.    11 U.S. Code § 502 states the following:

> (a) A claim or interest, proof of which is filed under section 501 of this title,
> is deemed allowed, unless a party in interest, including a creditor of a
> general partner in a partnership that is a debtor in a case under chapter 7 of
> this title, objects.
> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this
> section, if such objection to a claim is made, the court, after notice and a
> hearing, shall determine the amount of such claim in lawful currency of the
> United States as of the date of the filing of the petition, and shall allow such
> claim in such amount, except to the extent that—
> > (1) …
> > (2) such claim is for unmatured interest;
> > …

38.    Accrued interests of a claim are only to be ***allowed until the date of the filing*** of
the bankruptcy petition.  Post-petition interest are not allowed as part of a claim.

39.    The basic bankruptcy rule on the payment of interest to creditors is that the running
of interest ceases when the bankruptcy petition is filed. *See United States v. Ron Pair Enterprises,*

---

[3] It is clarified that said debt includes mortgage payments which will also need to be deducted from the debt when
the property is sold.

*Inc.*, 489 U.S. 235, 246, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989) ("a pre-Code rule"); *Nicholas v. United States*, 384 U.S. 678, 682, 16 L. Ed. 2d 853, 86 S. Ct. 1674 (1966) ("interest on claims against a bankrupt estate is suspended as of the date the petition in bankruptcy is filed"); *Sexton v. Dreyfus*, 219 U.S. 339, 344, 55 L. Ed. 2d 244, 31 S. Ct. 256 (1911) (rule that interest on unsecured debts stops at start of bankruptcy is a fundamental principle of English bankruptcy law which is basis of our system). *United States v. Robinson (In re D.C. Sullivan & Co.)*, 929 F.2d 1 (1st Cir. 1991)

40. The Court pointed out that the reason for the rule denying interest after insolvency "is not because the claims had lost their interest-bearing quality during that period, but is a necessary and enforced rule of distribution, due to the fact that in case of receiverships the assets are generally insufficient to pay debts in full." *American Iron and Steel Manufacturing Co. v. Seaboard Air Line*, 233 U.S. 261, 58 L. Ed. 949, 34 S. Ct. 502 (1914), *United States v. Robinson (In re D.C. Sullivan & Co.)*, 929 F.2d 1, 3 (1st Cir. 1991)

41. "As to claims against the trustee in bankruptcy, the general rule for liquidation of the bankruptcy estate has long been that a creditor will be allowed interest ***only to the date of the petition in bankruptcy***." *Sexton* v. *Dreyfus*, 219 U.S. 339. *[Emphasis added]*.

42. "The basic reasons for the rule denying post-petition interest as a claim against the bankruptcy estate are the avoidance of unfairness as between competing creditors and the avoidance of administrative inconvenience. These reasons are inapplicable to an action brought against the debtor personally. In the instant case, collection of post-petition interest cannot inconvenience administration of the bankruptcy estate, cannot delay payment from the estate unduly, and cannot diminish the estate in favor of high interest creditors at the expense of other creditors." *Bruning v. United States*, 376 U.S. 358, 84 S. Ct. 906 (1964)

43.    "Unmatured domestic support obligations are not allowed claims, and therefore are not entitled to priority status under §507(a)(1). That is, prepetition domestic support obligations are given priority status, while post-petition domestic support obligations are not allowed claims, but are non-dischargeable." *In re Meier*, 2014 Bankr. LEXIS 4845, 2014 WL 6686541, *2 (Bankr.N.D.Ill. 2014). *Kimble v. Towers Invs. Tr., Inc. (In re Kimble)*, No. CV 15-290 TUC FRZ, 2017 U.S. Dist. LEXIS 211257 (D. Ariz. Dec. 21, 2017)

44.    All of the interest allegedly accrued after 2011, are not payable by the estate.  Thus, even if the Amended Claim is allowed as a claim, the same should be partially disallowed in the amount of **_$57,576.11_**, and allowed only in the amount of **_$125, 046.00_**.

### iii.    *Mortgage payments need to be deducted upon the sale of the property:*

45.    In addition, the claim includes amounts that were destined for payment of the mortgage of the house.  Mrs. González is in arrears on the payment of the mortgage.  The amounts pertaining to unpaid mortgage payments will need to be subtracted from the total of the claim, since once the property is sold the mortgage will be paid in full.  To allow the portion pertaining to mortgage payments, if the property is sold, would result in a double payment on part of the claim.

46.    "Payments on a former marital residence are not necessarily for support." See, *Matter of Brown*, 488 B.R. 810 (Bankr. S.D. Ga. 2013) (hold harmless obligation to former spouse to make payments on former marital home were non dischargeable divorce related obligation but not DSO); *In re Anthony*, 453 B.R. 782 (Bankr. D. N.J. 2011) (condo fees were not DSO); *In re Nelson*, 451 B.R. 918 (Bankr. D. Or. 2011) (hold harmless on joint mortgage debt was not DSO); In re Lewis, 423 B.R. 742 (Bankr. W.D. Mich. 2010) (temporary order to make mortgage payments was not in nature of support); *In re Mannix*, 303 B.R. 587 (Bankr. M.D. Pa. 2003) (debtor's

mortgage obligation was property division, not support, and was dischargeable); *In re Horner*, 222 B.R. 918 (S.D. Ga. 1998) (same); *In re D'Atria*, 128 B.R. 71 (Bankr. S.D. N.Y. 1991) (same).

47.    According to the case law, the mortgage payments themselves are not DSO and thus must be subtracted from the Claim.

48.    According to Minute-Resolution the monthly payment of debtor towards the domestic support obligation was of *$4,383.00*.

49.    On same minute it is stated that the monthly DSO includes the amount to be paid by debtor for the mortgage. That amount according to bank records presented by Mrs. González for the interrogatory and production of documents that was served to her is *$1,105.00*.

50.    The claimed amount is *$125,046.00*, which if divided by the monthly payments, it represents arrears for *25 months*.

51.    If you multiplied the amount that was included in the DSO payments for the mortgage by 25, you obtain a total of *$27,625.00*.

52.    The amount of *$27,625.00* amount needs to be subtracted from the total of the claim, since the mortgage will be paid in full with the sale of the property.

### IV.    *Conclusion*

1.    Alleged creditor, Amarilis González García, has no legal standing to pursue this claim.  Thus, the Amended Claim 5-2 must be disallowed in full.

2.    In the alternative, if the Amended Claim is allowed in any capacity, post-petition interest are not allowed and must be reduced from the claim in the amount of *$57,576.11*.

3.     Finally, the amount awarded by the State Court of *$125,046.00* must have the monthly mortgage payments of *$1,105.00* that were included in the said amount deducted. The quantities assigned for mortgage payments should be reduced since they were to be destined for

the payment of the property owned by the Debtor and the Mrs. González, and once the property is sold the mortgage would be paid in full to the bank.

4.      So, in the event that the Court finds the Claim must be allowed, the same must be partially disallowed and only allowed in the amount of ***$97,421.00.***

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to take notice of the aforementioned; disallow this claim in its entirety because alleged creditor has no standing to pursue it; or in the alternative, find that the amount owed must be disallowed in the amounts of $57,576.11 (for illegal post-petition interest) and $27,625.00 (in payments for a mortgage that will be paid off from the proceeds of the sale of the property) and allowed in the amount of ***$97,421.00***.

<u>**NOTICE**</u>

**Within thirty (30) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the objection will be deemed unopposed and may be granted unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the court, the interest of justice requires otherwise. If you file a timely response, the court may schedule a hearing.**

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the Assistant US Trustee at the US Trustee's Office, Ochoa Building, 500 Tanca Street, Suite 301, San Juan, Puerto Rico 00901 and all parties in interest; and it was also notified to Amarilis González García, P.O. Box 984, Guaynabo, Puerto Rico 00970.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on June 3rd, 2021.

/s/ **RAFAEL A. GONZALEZ VALIENTE**
**USDC-PR 225209**
Email: rgv@g-glawpr.com



P.O Box 9024176,
San Juan, PR 00902-4176
Tel. (787) 726-0077

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE:

JUAN CARLOS BALCELLS GALLARETA

DEBTOR

CASE NO. 11-06637 MCF

CHAPTER 7

## MOTION REQUESTING ENTRY OF SUMMARY JUDGMENT

TO THE HONORABLE COURT:

COMES NOW, Plaintiff, NOREEN WISCOVITCH RENTAS, in her capacity as Trustee for the Estate of Juan Carlos Balcells Gallareta, through the undersigned attorney, and very respectfully alleges, states and pray:

## PRELIMINARY STATEMENT

Proof of Claim filed by Mrs. Amarilis González should be disallowed due to the fact that to the Creditor who presented Amendment to Claim 5 (Claim 5-2), is not the party to whom the money is owed, therefore said alleged creditor has no legal standing to file said Claim. If allowed, the Claim must be partially disallowed since Mrs. González also requested post-petition interest as part of the Claim, which are not recoverable under the Bankruptcy Code. Finally, the Claim includes mortgage payments. It has been held that mortgage payments are not part of a DSO claim and must be deducted from the claim before us. Moreover, once the property is sold, the mortgage will be paid in full, thus the part allocated to mortgage payments must be deducted from the Claim. Trustee hereby requests to be granted summary judgment in favor of the estate.

## PROCEDURAL BACKGROUND:

1) On August 5, 2011, Debtor filed the instant Chapter 7 bankruptcy petition. *See Dkt.1, Case No. 11-06637.*

App. Ap. pp.184

2)     On February 8, 2012, Creditor, Mrs. González García filed Claim 5-1.

3)     On March 27, 2019, Trustee filed an Objection to claim #5-1. *Dkt.157.*

4)     On May 3, 2019, Mrs. González filed a Response in Opposition to Objection to Claim #5-1. *See Dkt.164.*

5)     On May 3, 2019, alleged Creditor file an amended POC, No. 5-2. *See Claim 5-2.*

6)     On July 2, 2019, this Honorable Court declared moot Chapter 7 Trustee's Objection to Claim Number 5 ruling that an amended proof of claim had been filed. *Dkt.157 & 171.*

## APPLICABLE LAW

### A. STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

1.     Regarding a request of Motion for Summary Judgment, Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

2.     In a request for summary judgment under Rule 56(c) of the Rules of Civil Procedure, a dispute is genuine if, a reasonable jury, based on the evidence, could return a verdict for the nonmoving party. *Meléndez v. Lebrón, No. 93-1009 (DRD), 1996 U.S. Dist. LEXIS 5992, at \*5 (DPR. Apr. 18 1996); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).*

3.     Party seeking summary judgment always bears initial responsibility of informing District Court of basis for its motions. *Celotex Corp. v Catrett, 477 US 317 (1986).*

4.     In the context of a summary judgment motion, the moving party bears the initial responsibility of informing the Court of the reason for its motion and of identifying those portions of the record (such as depositions, answers to interrogatories, and admissions on file) together with affidavits, if any, which the party believes demonstrate absence of genuine issues of material fact.

_Handeen v Lemaire_, 112 F3d 1339 (8th Cir, 1997); _Stat-Tech Int'l Corp. v Delutes (In re Stat-Tech Int'l Corp.)_, 47 F3d 1054 (10th Cir, 1995); _Clouse v Comm'r_, 93 AFTR 2d 427 (ND Ohio, 2003).

5.      The party opposing the motion for summary judgment cannot rely on mere allegations or denials of the moving party.  On the contrary, the opposing party must be able to show by affidavits, depositions, answers, and admissions in the record that there is a genuine issue for trial.  _Celotex v. Catrett, supra at 324 (1986)._

6.      "A district court may grant summary judgment only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'  Fed. R. Civ. P. 56(c)." _Conward v. Cambridge Sch. Comm._, 171 F.3d 12, at 18 (1st Cir. 1999); _Mendez v. Banco Popular de Puerto Rico_, 900 F.2d 4 (1st Cir. 1990).

7.      FRCP 56(c) provides that a Court may enter judgment against a party without the celebration of a trial when: (1) there are no genuine issues of material facts to be resolved at trial; and (2) the uncontested facts entitle the moving party to judgment in his favor as a matter of law. _NASCO, Inc., vs. Public Storage, Inc._, 29 F 3d 28 (1st. Circuit, 1994).

8.      "As to the materiality referred to in Rule 56(c) of the Rules of Civil Procedure, the substantive law will identify which facts are material.  A fact is material if, based on the substantive law at issue, it might affect the outcome of the case." _Pea v. New Puerto Rico Marine Management_, 84 F. Supp. 2d 239, 242 (1999); _Mack v. Great Atl. and Pac. Tea Co., Inc._, 871 F.2d 179, 181 (1st Cir. 1989).

9.      The principal inquiry faced by a court when ruling on a motion for summary judgment is whether a genuine issue of material facts exists. The moving party bears the burden of establishing the absence of a genuine issue of material facts. _Celotex Corp. v. Catrett, supra._ If

the moving party carries out its burden, the non-moving party may only survive summary judgment by presenting evidence in support of the existence of genuine issues of fact that warrant the celebration of a trial. *Maldonado-Denis vs. Castillo Rodriguez, 23 F 3d 576, 581 (1st. Circuit, 1994)*.

10.    In short, in order to survive summary judgment, the non-moving party must bring forth a disputed material fact that may change the outcome of the suit under governing law. *Martinez vs. Colon, 54 F 3d 980,983-984 (1st. Circuit, 1990)*.

11.    Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be determinative. *Antilles Carpet, Inc. v. Milliken Design, 26 F. Supp. 2d 345, 346 (1998)*.  Therefore, if after evaluating the record in the light most favorable to the non-moving party, the evidence fails to yield a trial worthy issue as to some material fact, a motion for summary judgment shall be granted.  *Pea*, *supra*, at 242; *Zambrana v. Suarez, 172 F.3d 122,125 (1st Cir. 1999)*.  See also *Rentas v. Sallie Mae Servicing Corp. (In re Rentas), 2006 Bankr. LEXIS 3880 (Bankr. D.P.R. 2006)* (Court denied motions for summary judgment because there was a genuine controversy as to whether creditor was notified); *Torres Lopez v. Consejo de Titulares del Condominio Carolina Court Apart. (In re Torres Lopez), 2006 Bankr. LEXIS 3811 (Bankr. D.P.R. 2006)* (Court denied debtor's motion for summary judgment because creditor denied the alleged conduct and thus factual issues were left to be resolved).

## B.  LEGAL STANDING

12.    The first part of the objection is one of lack of standing.  Mrs. Amarilis Gonzalez is not owed any money by the Estate, her adult children are.  Thus, Mrs. Gonzales has no standing to file the Proof of Claim and it must be disallowed in full.

13.     It is black letter law that all family decisions in a Bankruptcy Court will be based

on state family law.

14.     The Bankruptcy Court in *In re Boyd* stated that:

> "The laws of marriage and divorce, and the property divisions incident
> thereto, belong uniquely to the several states. Federal courts have
> traditionally abstained when faced with family law questions and when a
> bankruptcy judge is presented with a bankruptcy that is primarily caused by
> the liability imposed by a divorce, the bankruptcy judge should give serious
> consideration to abstaining."

> 31 B.R. 591 (D. Minn. 1983)

15.     Puerto Rico's Civil Code, in its Article 247 (31 L.P.R.A. sec. 971), states that

adulthood is reached at 21 years old. Therefore, Defendant lacks judicial standing to claim and/or

receive any DSO payments since both "children" are adults with capacity to claim, receive and

manage their child support payments.

> "[O]nce children are emancipated, they have the capacity to represent their
> own interests in court, not being able their parents to do so from that
> moment on. In the case of due or overdue alimony, the parent does not have
> the legitimacy to represent his adult child (entitled to the alimony) or to
> continue the action to collect the unsatisfied amounts, even if the parent
> initiated the action originally." *Sotomayor vs. Colón Cruz*, 2009 TSPR 134
> (2009). [*Translation ours*.]

16.     "In the case of alimony that is due or in arrears, the parent does not have the

legitimacy to represent his child who has reached the majority of age or to continue the action to

collect the unsatisfied amounts, even if it was the parent who initiated the action originally."

*Sotomayor vs. Colón Cruz*, *supra*. [*Translation ours*.]

17.     The Puerto Rico's Supreme Court further interpreted that:

> "The action for collection of past-due support owed to minor,
> unemancipated children is undoubtedly one in which the father or mother
> with *patria potestas* and custody of the children is perfectly entitled to
> represent said minors. However, even when an action falls within the scope
> of that duty or power of representation, its exercise by the parent will

App. Ap. pp.188

depend on the validity of the legal status on which his or her power of representation rests. That is, the father or mother may only represent his or her child while the latter is under his or her *patria potestas*. Once *patria potestas* ends for any of the reasons listed in the Code, or once it is taken away or suspended by the court, the parents' power of representation over their children ends, unless the Code should expressly provide otherwise. See, Puig Brutau, *supra*, at 274-279." <u>Rosario v. Ramos</u>, 134 D.P.R. 3 (1993).

18.    "Once the children are emancipated (unless such emancipation is granted by the parents under the provisions of chapter 109 of the Civil Code, 31 L.P.R.A. §§ 911-916), the children acquire the capacity to represent their own interests in court and the parents can no longer do so. Civil Code secs. 240, 246, and 247 (31 L.P.R.A. §§ 932, 955, and 971); <u>Álvarez v. Aponte</u>, 83 P.R.R. 595 (1961); <u>Vázquez v. Santos</u>, 49 P.R.R. 298 (1935); <u>Key Nieves v. Oyola Nieves</u>, 116 D.P.R. 261 [16 P.R. Offic. Trans. 321] (1985).

19.    In this case, both, Juan Francisco Balcells González and Alexandra Balcells González, have reached the majority of age. *See Statement of Uncontested Facts #5.*

20.    Since the minors whom the Creditor represented in this case have acquired the majority of age, the Creditor has no standing to pursue the petition of their interests of the DSO. *See Statement of Uncontested Facts #5; <u>Álvarez v. Aponte</u>*, 83 P.R.R. 595 (1961); <u>*Vázquez v. Santos*</u>, 49 P.R.R. 298 (1935); <u>*Key Nieves v. Oyola Nieves*</u>, 116 D.P.R. 261 [16 P.R. Offic. Trans. 321] (1985)*; <u>Rosario v. Ramos</u>*, 134 D.P.R. 3 (1993); <u>*Sotomayor vs. Colón Cruz*</u>, 2009 TSPR 134.

21.    Therefore, the claim must be disallowed in its entirety.

### C.  RULE 3007 AND 11 U.S.C. sec.502 (a)

22.    On August 5, 2011, Debtor filed a Bankruptcy petition under Chapter 7 of the Bankruptcy Code. *Dkt.1*

23.    Pursuant to Rule 3007 and 11 U.S.C. sec. 502 (a) a properly filed claim is deemed allowed unless objected to. <u>*In re Farmers' Co-op of Arkansas & Oklahoma, Inc.*</u>, 43 BR 619

(Bankr. WD Ark, 1984). Once an objector offers sufficient evidence to overcome the prime facie validity of a claim, a claimant is required to meet the usual burden of proof to establish the validity of its claim. *In re Rockefeller Ctr. Props.*, 272 BR 524 (Bankr. NDNY, 2000).

24.    According to Section 502 (a) of the Bankruptcy Code, *supra*, in Chapter 7 cases such as the one at bar, among the duties of the Chapter 7 Trustee are to "examine proofs of claims and object to the allowance of any claim that is improper", pursuant to Section 704 (a)(5) of the Bankruptcy Code. 11 USC § 704(a)(5)

25.    An improper claim is one that is not filed by the proper creditor.

26.    Black's Law Dictionary defines improper as "Incorrect; unsuitable or irregular. Fraudulent or otherwise wrongful." Brian A. Garner, Black's Law Dictionary (10th Ed. Thomson Reuters, 2014)

27.    "A challenge to the standing of a claimant in a bankruptcy case is a substantive objection under 11 USCS § 502 (b)(1), which provides that a claim may be disallowed to the extent the claim is unenforceable against the bankruptcy debtor under any applicable law, including state law. With respect to standing, an allegation essential to any claim is that the claimant is the proper party in interest." *In re Richter*, 478 B.R. 30 (2012).

28.    "In a bankruptcy case, a challenge to standing is a substantive objection under 11 USCS § 502 (b)(1) because if a claimant has not proven it is the owner of a claim with a right to payment (i.e. the party with standing), the claim is unenforceable against the bankruptcy debtor under state law." *In re Richter*, *supra*.

29.    "The Bankruptcy Code defines a 'creditor' as an 'entity that has a claim against the debtor that arose at the time of or before the order for relief', and defines a 'claim' as a 'right to payment…'" *In re Richter*, *supra*.

30.    The Court in *In re Richter* stated that:

"This Court is not alone in determining a challenge to standing is a substantive objection under §502(b)(1). In support of this conclusion, the U.S. Bankruptcy Court for the Northern District of Oklahoma explained: Debtors also allege that they have no liability on the claims as filed because Claimants have not proven they are the owners of the claims with a right to payment; that even if Claimants own the subject claims, Debtors dispute the amounts asserted in the proofs of claim; and that such claims are not enforceable under Oklahoma law. These objections are sufficient to prevent the claims from being deemed allowed under § 502(a), and to trigger Court determination of the claims under § 502(b)(1) . . . In the face of a substantive objection by a party in interest, the Court is required to determine the amount of each claim as of the petition date, and to allow the claim in that amount, except to the extent the claim is unenforceable against the debtor or the debtor's property under applicable law. Claimants therefore must first establish that they hold enforceable claims against the respective Debtors."

*supra.*

*31.*    Mrs. González does not comply with the underline statutory requirements of a party in interest

according to bankruptcy court rulings. She has no legally protected interest that could be affected

by the proceeding. She is not a claimant according to bankruptcy rules. *See Statement of*

*Uncontested Facts #5.*

32.    Trustee's substantive objection to claim 5-2, under §502 (b)(1) of the Bankruptcy

Code meets the required burden of proof to overcome the *prima facie* validity of a claim.

33.    Thus, the Claim should be disallowed in its entirety for lack of standing.

### D.  POST-PETITION INTEREST

34.    Section 502(b)(5) provides in pertinent part:

[I]f [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... and shall allow such claim in such amount, except to the extent that — (5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title;
11 U.S.C. §502(b)(5).

35.    11 U.S. Code § 502 states the following:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) …

(2) such claim is for unmatured interest;

…

36.    Accrued interests of a claim are only to be allowed until the date of the filing of the bankruptcy petition.  Post-petition interest are not allowed as part of a claim.

37.    The basic bankruptcy rule on the payment of interest to creditors is that the running of interest ceases when the bankruptcy petition is filed. See _United States v. Ron Pair Enterprises, Inc._, 489 U.S. 235, 246 (1989) ("a pre-Code rule"); _Nicholas v. United States_, 384 U.S. 678, 682 (1966) ("interest on claims against a bankrupt estate is suspended as of the date the petition in bankruptcy is filed"); _Sexton v. Dreyfus_, 219 U.S. 339, 344 (1911) (rule that interest on unsecured debts stops at start of bankruptcy is a fundamental principle of English bankruptcy law which is basis of our system). _United States v. Robinson (In re D.C. Sullivan & Co.)_, 929 F.2d 1 (1st Cir. 1991)

38.    The Court in _American Iron_ pointed out that the reason for the rule denying interest after insolvency "is not because the claims had lost their interest-bearing quality during that period, but is a necessary and enforced rule of distribution, due to the fact that in case of receiverships the assets are generally insufficient to pay debts in full." _American Iron and Steel Manufacturing Co. v. Seaboard Air Line_, 233 U.S. 261 (1914), _United States v. Robinson (In re D.C. Sullivan & Co.)_, 929 F.2d 1, 3 (1st Cir. 1991)

39.   "As to claims against the trustee in bankruptcy, the general rule for liquidation of the bankruptcy estate has long been that a creditor will be allowed interest only to the date of the petition in bankruptcy." _Sexton v. Dreyfus_, 219 U.S. 339 (1911).

40.   The Supreme Court stated that:

> "The basic reasons for the rule denying post-petition interest as a claim against the bankruptcy estate are the avoidance of unfairness as between competing creditors and the avoidance of administrative inconvenience. These reasons are inapplicable to an action brought against the debtor personally. In the instant case, collection of post-petition interest cannot inconvenience administration of the bankruptcy estate, cannot delay payment from the estate unduly, and cannot diminish the estate in favor of high interest creditors at the expense of other creditors."

> _Bruning v. United States_, 376 U.S. 358 (1964)

41.   "Unmatured domestic support obligations are not allowed claims, and therefore are not entitled to priority status under §507(a)(1). That is, prepetition domestic support obligations are given priority status, while post-petition domestic support obligations are not allowed claims, but are non-dischargeable." _In re Meier_, 2014 Bankr. LEXIS 4845, 2014 WL 6686541, *2 (Bankr.N.D.Ill. 2014). _Kimble v. Towers Invs. Tr., Inc. (In re Kimble)_, No. CV 15-290 TUC FRZ, 2017 U.S. Dist. LEXIS 211257 (D. Ariz. Dec. 21, 2017)

42.   All of the interest allegedly accrued after 2011, are not payable by the estate. Thus, even if the Amended Claim is allowed as a claim, the same should be partially disallowed in the amount of $57,576.11, and allowed only in the amount of $125, 046.00 (before the additional objection as to mortgage payments which also need to be substracted).

### E.  MORTGAGE PAYMENTS UNDER SECTION 541 BANKRUPTCY CODE AND PUERTO RICO FAMILY LAW

43.   As section 541 of the Bankruptcy Code states:

> "(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is compromised, of all the following

property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c) (2) of this section, all legal or equitable interests of the debtor in property as the commencement of the case; (2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is – (A) under sole, equal, or joint management and control of the debtor; or (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor's spouse, to the extent that such interest is liable."

44.    When a conjugal partnership is established under Puerto Rico law, the earnings or profits indiscriminately obtained by either of the spouses during marriage shall belong to the husband and wife in equal share. Article 1295 Civil Code of Puerto Rico, 31 L.P.R.A. §3621.

45.    When the conjugal partnership ceases to exist, the conjugal partnership turns into an ordinary community. *Gracía González v. Montero Saldaña*, 7 P.R. Off. Trans. 353, 363-364, 107 D.P.R. 301, 331-332 (1978), *citing*, Puig Brutau, Fundamentos de Derecho Procesal Civil, Tomo 4, Vol. 1 (1967), p.784. *Also see*, Serrano Geyls, Derecho de Familia de Puerto Rico y Legislación Comparada, Vol. 1, Interamerican University School of Law, 2007 ed., p. 457; *Roselló Puig v. Rodríguez*, 183 D.P.R. 81, 94 (2011).

46.    All of the assets of a spouse, as well as the community property, becomes property of a bankruptcy estate of Puerto Rico Law.  *In re Lang*, 191 B.R. 268 (Bankr. D.P.R. 1995), citing Bankr. Code, 11 U.S.C.A. §541 (a) (2) (A); 31 L.P.R.A. §§ 284, 286, 3621, 3622, 3631, 3641, 3647.

47.    At the instant case, the assets of the community property comprised between Debtor and Defendant have never been divided. Therefore, when the Debtor filed for bankruptcy, the Bankruptcy Estate immediately comprised all nonexempt property, including any "unpartitioned post-marital community property." *In re Brassett*, 332 B.R. at 754-755 (M.D.La 2005); *In re Robertson*, 203 F.3d. at 861-862 (5th Cir. 2000); *In re Pérez León*, 2013 WL 5232331 (2013).

48.    "Payments on a former marital residence are not necessarily for support." See, _Matter of Brown_, 488 B.R. 810 (Bankr. S.D. Ga. 2013) (hold harmless obligation to former spouse to make payments on former marital home were non dischargeable divorce related obligation but not DSO); _In re Anthony_, 453 B.R. 782 (Bankr. D. N.J. 2011) (condo fees were not DSO); _In re Nelson_, 451 B.R. 918 (Bankr. D. Or. 2011) (hold harmless on joint mortgage debt was not DSO); In re Lewis, 423 B.R. 742 (Bankr. W.D. Mich. 2010) (temporary order to make mortgage payments was not in nature of support); _In re Mannix_, 303 B.R. 587 (Bankr. M.D. Pa. 2003) (debtor's mortgage obligation was property division, not support, and was dischargeable); _In re Horner_, 222 B.R. 918 (S.D. Ga. 1998) (same); _In re D'Atria_, 128 B.R. 71 (Bankr. S.D. N.Y. 1991) (same).

49.    The Puerto Rico Court of First Instance of Bayamón in case number D DI2016-4055, stated that the mortgage payment required of the debtor would be included in the child support total amount. *See Statement of Uncontested Facts #4.*

50.    According to the case law, the mortgage payments themselves are not DSO and thus must be subtracted from the Claim.

51.    Moreover, when the property is sold, the mortgage will be paid in full. Therefore, even if the amounts corresponding to mortgage payments were part of the DSO, which is denied, the said amounts to be reduced from the total of the alleged DSO debt once the property is sold and the full mortgage is satisfied.

52.    If mortgage payments which are part of the claim filed by Creditor are allowed, the alleged debt would be paid twice. *See Statement of Uncontested Facts #4.*

**SUMMARY JUDGMENT SHOULD BE AWARDED IN FAVOR OF PLAINTIFF**

1.    Both of Mrs. González children, Juan Francisco Balcells González and Alexandra Balcells González, have reached the majority of age. *See Statement of Uncontested Facts #5.*

2.      The minors whom the Creditor represented in this case have acquired the majority of age, hence the Creditor has no standing to pursue the petition of their interests of the DSO. *See Statement of Uncontested Facts #5*

3.      Mrs. González children are now around 23/24 and 25/26 years old.

4.      Mrs. González does not comply with the statutory requirements of a party in interest according to bankruptcy court rulings. She has no legally protected interest that could be affected by the proceeding. She is not a claimant according to bankruptcy rules.

5.      Trustee's substantive objection to claim 5-2, under §502 (b)(1) of the Bankruptcy Code meets the required burden of proof to overcome the prima facie validity of a claim.

6.      Thus, the claim must be disallowed in its entirety.

7.      In the event the Claim is allowed, the same must be substantially reduced due to the inclusion of post-petition interest and mortgage payments that are not part of a DSO and which will be paid off as part of the sale of the real property.

**IN VIRTUE OF THE ABOVE**, it is hereby requested that this Honorable Court grant this motion and enter Summary Judgment as follow:

A.      Issue summary judgment granting Trustee's Objection to claim for the abovementioned reasons and disallow the claim;

B.      In the alternative, order Alexandra and Juan Francisco Balcells González to present the claim themselves.

C.      In the alternative, Claim 5-2 must be disallowed in the amount of $57,576.11 (in illegal post-petition interest) and $27,625.00 (in duplicated and non-DSO mortgage payments), for a final allowed claim of $97,421.00.

## NOTICE OF RESPONSE TIME

Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk=s office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the Assistant US Trustee, US Trustee's Office, Ochoa Building, 500 Tanca Street, Suite 301, San Juan, P.R. 00901.

**RESPECTFULLY SUBMITTED**

In San Juan, PR this 3rd day of June 2021.

**/s/ Rafael A. González Valiente**
**USDC-PR**
Email: rgv@g-glawpr.com

**Godreau & Gonzalez, LLC.**
PO Box 9024176
San Juan, PR 00902-4176
Tel: (787) 726-0077

App. Ap. pp.197

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

IN RE;

JUAN CARLOS BALCELLS GALLARETA

CASE NO. 11-06637 MCF

CHAPTER 7

<u>STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>

**TO THE HONORABLE COURT:**

COMES NOW, Plaintiff, NOREEN WISCOVITCH RENTAS, in her capacity as Trustee for the Estate of Juan Carlos Balcells Gallareta, through the undersigned attorney, and very respectfully alleges, states and pray:

<u>**PLAINTIFF'S STATEMENT UNCONTESTED OF FACTS**</u>

*1.* Juan Carlos Balcells Gallareta, Debtor, and Mrs. González were married and formed a conjugal partnership. *See Exhibit 1 – Title Study, & 2 – Pension Judgment, pg.3.*

2. Debtor and Mrs. González filed for divorce at the First Instance Court of Bayamón, Case #DDI2006-4055. *See Exhibit 2, pag.1.*

*3.* Puerto Rico Court of First Instance of Bayamón on case D DI2016-4055, stated that the mortgage payment required of the debtor would be included in the child support total amount. *See Exhibit 3 – Minute Resolution, pag.3.*

4. Debtor and Mrs. González had two children during their marriage. *See Exhibit 2, pag.3.*

*5.* The offspring of the marriage whom the Creditor represented in this case, have acquired the majority of age, hence the Creditor has no standing to pursue the petition of their interests of the DSO. *See Exhibit 2, pag.3, & Exhibit 4 – Declarations of Alexandra Balcells González and Juan Balcells González (Supporting Documents Claim 5-2).*

6. On August 5, 2011, Debtor filed the instant Chapter 7 bankruptcy petition. S*ee Dkt.1, Case No. 11-06637.*

App. Ap. pp.198

7.   On February 8, 2012, Creditor, Mrs. González García filed Claim 5-1.   *See Claim 5-1.*

8.   On March 27, 2019, Trustee and Plaintiff in Adversary Proceeding No. 14-00137, filed an Objection to claim #5-1.   *Dkt.157.*

9.   On May 3, 2019, Mrs. González filed a Response in Opposition to Objection to Claim #5-1. *See Dkt.164.*

*10.* On May 3, 2019, alleged Creditor file an amended POC, No. 5-2.   *See, Claim 5-2.*

11. On July 2, 2019, this Honorable Court declared moot Chapter 7 Trustee's Objection to Claim Number 5 ruling that an amended proof of claim was filed. *Dkt.157 & 171.*

12. In a Minute-Resolution from 2012, the State Court determined that the correct amount owed for the DSO is $125,046.00 as of August 2011.   That is the debt as of the filing of the petition. *See Exhibit 3, pag.3.*

13. Claim 5-2 is for the amount of $182,622.11. *See Claim 5-2 p. 2.*

14. Claim 5-2 includes a principal of $125,046.00. *See Claim 5-2, p. 4.*

15. Claim 5-2 includes, also, post-petition interests in the amount of $57,576.11. *See Claim 5-2, p. 2 & 4.*

16. The total of $125,046.00 also includes mortgage payments for the amount $1,105.00 a month for a total amount of $27,625.00. *See Exhibit 3, pag.3.*

**WHEREFORE**, it is hereby respectfully requested that the claim is disallowed in its entirety; in the alternative, order Alexandra and Juan Francisco Balcells González to present the claim themselves; it is also requested that if the claim is allowed, the Claim be allowed in the amount of $97,421.00.

## NOTICE OF RESPONSE TI ME

Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk=s office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

**CERTIFICATE OF ELECTRONIC FILING AND SERVICE**

       I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the Assistant US Trustee, US Trustee's Office, Ochoa Building, 500 Tanca Street, Suite 301, San Juan, P.R. 00901.


       RESPECTFULLY SUBMITTED

       In San Juan, PR this 3rd day of June 2021.

/s/ Rafael A. González Valiente
USDC-PR22
Email: rgv@g-glawpr.com

Godreau & Gonzalez, LLC.
PO Box 9024176
San Juan, PR 00902-4176
Tel: (787) 726-0077

App. Ap. pp.200

Exhibit 1

**6000**             **ESTUDIO DE TITULO**

Caso: Lcdo. José María Castro **Alvarez** -
Re: Juan Carlos Balcells Gallarreta -

Finca # **41,852** inscrita al folio 250 del tomo 1197 de Guaynabo, Registro de la Propiedad
de Guaynabo.

DESCRIPCION:

--- URBANA: Solar radicado en la Urbanización Villas Reales, localizado en el Barrio Santa Rosa
del término municipal de Guaynabo, **Puerto Rico**, que se describe en el plano de inscripción de la
urbanización, con el Número Treinta y tres(33) del Bloque "E", con una cabida superficial de **375.42**
metros cuadrados. En lindes **por el NORTE**, en una distancia de 25.07 metros con el solar #32 del
mismo bloque; por el SUR, en una **distancia** de 25.00 metros con el solar #34 del mismo bloque; por
el ESTE, en dos alineaciones **continuas que suman** 15.10 metros con parcela de uso público y por
el OESTE, en una distancia de **15.00 metros** con la Calle #7 de la urbanización, también conocida
como "Calle Versalles".
--- Enclava una casa.
--- Está afecto a servidumbre telefónica de 1.50 metros que discurre a todo lo largo de su colindancia
Oeste.
--- Servidumbre en Equidad: **Franja** de terreno de 1.00 metros de ancho por 25.00 metros de largo
aproximadamente, que discurre a todo lo largo de su colindancia Sur, para pintar, dar mantenimiento
y cualquier otra reparación a **favor del** solar #34.
--- Es segregación de la finca #39,352 inscrita al folio 100 del tomo 1119 de Guaynabo.

TITULO:      ( X ) Dominio

Adquisición: - Inscrita a favor de **JUAN CARLOS BALCELLS GALLARRETA** y su esposa
**AMARILIS GONZALEZ GARCIA**, quienes adquirieron por compra a Villas Reales, S.E. por
precio de $189,642.00 según escritura #14 otorgada en San Juan, el 17 de diciembre de 1996, ante
José Carlos González Bonilla. **Inscrita al folio** 250 del tomo 1197 de Guaynabo, finca #41,852
inscripción 1ra. y única. .

GRAVAMENES:

Por su procedencia: Servidumbres de paso a favor de fincas #29,445 y #29,448, AEE, AAA,
Autoridad de Comunicaciones y a **condiciones** restrictivas sobre uso y edificación.

Por si está afecta a:

HIPOTECA: En garantía de un pagaré por la suma de $132,925.00 intereses al 7% anual, a favor de
R&G Mortgage Corporation, o a su orden, vencedero el 1ro. de enero de 2017, según escritura #577
otorgada en San Juan, el 17 de diciembre de 1996, ante Heberto J. De Vizcarrondo Armstrong.
Inscrita al folio 250 del tomo 1197 de Guaynabo, finca #41,852 inscripción 1ra. y única.

Este documento **NO** es una póliza de Seguros de Título, por lo cual no debe utilizarse como tal. La
responsabilidad de la entidad que **preparó** este Estudio de Título, está limitada a la cantidad pagada
por la preparación de dicho Estudio de Título. Para completa protección, deben requerir una póliza
de Seguro de Título.

**REVISADOS:** Libros de Embargos Estatales, Embargos bajo Ley 12(2010), Municipales, Federales,
Sentencias y Bitácora(Sistema Electrónico y Agora de la cual no nos hacemos responsables por
errores u omisiones en el mismo), UD-557 UA-953(8:00 a.m.).
En San Juan, Puerto Rico a 12 de diciembre de 2011.



Luis A. Flores González
Apartado Postal 3973
San Juan, Puerto Rico  00904
795-1561 645-4980 758-3606
Fax 753-5317
E-mail tilinestudios@yahoo.com

LAFG/gip/guay/tyl/11
Costo: $60.00

ESTADO LIBRE ASOCIADO DE PUERTO RICO
**TRIBUNAL DE PRIMERA INSTANCIA**
**REGIÓN JUDICIAL DE BAYAMÓN**
SALA DE FAMILIA Y MENORES

| | |
|---|---|
| **AMARILIS GONZÁLEZ GARCÍA**<br>Demandante<br><br>vs.<br><br>**JUAN CARLOS BALCELLS GALLARETA**<br>Demandado | Civil Núm.: **D DI2006-4055**<br><br>**Sala  3001**<br><br>Sobre:<br><br>**DIVORCIO** |

## RELACIÓN DEL CASO, DETERMINACIONES DE HECHOS Y CONCLUSIONES DE DERECHO Y RESOLUCIÓN

En la presente resolución debemos adjudicar principalmente dos controversias. Estas son a saber: 1) La cantidad de la obligación de alimento que surja en atención a la capacidad económica del demandado; 2)  Si procede imponer desacato al demandado por no cumplir su obligación de proveer alimentos; 3) Reclamación de Hogar Seguro. Las anteriores controversias, se relacionan también los diversos argumentos de derecho y alegaciones de hechos de las partes según sus respectivas teorías. Para un mejor entendimiento de la presente resolución estimamos necesario incluir la siguiente:

### RELACIÓN DEL CASO

Luego de radicada la demanda de divorcio, el 25 de enero de 2007, las partes estipularon la pensión alimentaria provisional ante la Examinadora Martha C. Torres Lopez. El Sr. Juan C. Balcells Gallareta (en adelante "Demandado") se comprometió a pagar hipoteca, mantenimiento, jardinero de la residencia, servicios de agua, electricidad, teléfono, cable tv, internet, teléfono celular, colegio de los menores y almuerzos de la hija.  Además, se comprometió a proveer $400.00 para compra de alimentos y $200.00 para gastos de gasolina pagadero en cheque certificado o giro directamente a la Sra. Amarilis González García (en adelante "Demandada").  El caso quedó señalado para el mes de junio.

El 14 de diciembre de 2007, las partes se divorciaron por la causal de trato cruel quedando la controversia de la pensión pendiente de resolución hasta la vista final ante la examinadora. Aún cuando la pensión alimentaria final no se había determinado, el 4 de junio de 2008, la parte demandada por conducto de nueva representación legal solicitó la rebaja de la pensión alimentaria. Cabe señalar que en el escrito no adujo cambio en los ingresos del demandado.

El 29 de enero de 2009, se celebró la vista final de pensión alimentaria ante la examinadora Denisse Vázquez Ortiz. El asunto quedó pendiente de resolución.

El 7 de julio de 2009 la parte demandante solicitó al Tribunal que la residencia habitual de los menores se declarara hogar seguro. El 28 de septiembre de 2009 la Demandante  solicitó que se encontrara al demandado incurso en desacato alegando una deuda de $34,000.

App. Ap. pp.202

El 17 de diciembre de 2009 la examinadora rindió el informe de pensión alimentaria. En el mismo recomendó que se le imputara al Demandado ingresos de $2,320.00 debido a que los gastos informados excedían los ingresos a pesar de que no reportó gastos de subsistencia personal. A la Demandante le imputó un ingreso de 3,076.00 mensuales por lo informado en las planillas. En esa misma fecha el Tribunal dictó resolución impartiendo aprobación al mencionado informe. La resolución fue notificada el 8 de enero de 2010.

Al día siguiente se celebró una vista de desacato. Ante la solicitud de inhibición de la Jueza Katherine Hoffman el caso fue asignado al que suscribe.

El 15 de enero de 2010, la parte demandante radicó una moción solicitando determinaciones adicionales de hechos. El Tribunal le cedió a la otra parte término para contestar. El 25 de enero de 2010, cuando aun no se había adjudicado la solicitud de hechos adicionales, la parte demandante radicó una moción de reconsideración objetando los ingresos imputados. Igualmente se le concedió a la otra parte término para contestar la moción.

El 20 de abril de 2010, la parte Demandada presenta nuevamente moción de desacato. Alegó incumplimiento de pago de pensión y que se le cortara el servicio de electricidad.

El Tribunal citó vista el 13 de mayo de 2010. El asunto fue re señalado para el 22 de julio de 2010. El día de la vista el Tribunal luego de que las partes expresaran su posición dejó sin efecto la resolución de 17 de diciembre de 2009 que modificaba la pensión alimentaria. En su defecto, reinstaló efectivo el 1ro de agosto de 2010, la cantidad de pensión alimentaria fijada por estipulación de las partes el 25 de enero de 2007.

En ánimo de resolver los escritos de las partes con relación a la solicitud de determinaciones de hechos adicionales y de reconsideración, luego de un examen detenido de todas las instancias del expediente incluyendo los escritos de las partes era menester concluir que las partes no habían informado todos sus ingresos y que existía grandes incongruencias entre las determinaciones del Tribunal y el estilo de vida de las partes.[1] Por lo tanto, el Tribunal pautó vista evidenciaría para dilucidar las siguientes controversias: 1) fijación de pensión alimentaria; 2) Si procede imponer desacato al demandado por no cumplir su obligación de proveer alimentos; 3) reclamación de hogar seguro.

La vista evidenciaria se celebró los días 15, 21, 27 de septiembre, 11 de octubre y 12 de noviembre de 2010. Luego de desfilada la prueba el incidente quedó sometido. Se toma conocimiento judicial de todas las instancias del expediente. Tras analizar la evidencia ante nuestra consideración y ponderada la credibilidad que le mereció el testimonio de las partes, formulamos las siguientes:

---

[1] La parte demandante recurrió al Tribunal de Apelaciones de la determinación del Tribunal de Primera Instancia mediante el recurso de certiorari. Dicha petición fue denegada.

## DETERMINACIONES DE HECHOS

1. Las partes se casaron el 28 de diciembre de 1989 en Guaynabo, Puerto Rico.

2. Durante el matrimonio procrearon dos hijos: Alexandra de 16 años y Juan Francisco de 14 años.

3. Los menores se encuentran bajo la custodia de su madre y residen en la residencia en la Urbanización Mansiones Reales en Guaynabo, Puerto Rico.

4. El referido inmueble ha constituido la vivienda familiar habitual por un tiempo considerable. Los menores han residido en el desde tierna edad y no han conocido otro lugar. Tampoco tienen otro lugar donde residir.

5. El Sr. Juan Carlos Balcells Gallareta, actualmente es Presidente de la Corporación Gusupa, Inc. También es accionista, administrador, comprador y vendedor de la empresa según varios documentos admitidos que obran en expediente. Trabaja para la compañía desde el 1987. Antes se desempeñaba como Oficial Bancario en el Chase Manhattan Bank desde el 1985 hasta el 1987.

6. Gusupa, Inc., es una corporación íntima cuyos accionistas y directores son el demandante y familiares de éste. Juan Balcells (padre) es tesorero y Leonie Gallareta Secretaria.

7. Durante el matrimonio la Demandante no trabajaba para cuidar a los menores. Todo el dinero que se obtenía y se usaba en el hogar para sufragar los gastos familiares provenían del negocio Gusupa, Inc. Conforme a la prueba presentada el Tribunal estima que al año 2006, los ingresos familiares ascendían a una cantidad mayor a los $7,600.00 mensuales.

8. Sr. Juan Carlos Balcells Gallareta, posee cinco tarjetas de crédito pagadas por la Corporación Gusupa, Inc. Conforme al testimonio, el firma solo en todas, excepto en una, en la que también firma su padre quien es tesorero.

9. Conforme a lo testificado por Amarilis González García, era usual que el Demandado pagara muchos de los gastos con recursos provenientes de la compañía utilizando las tarjetas de crédito de la compañía. Durante la vista se demostró que pagaba gastos personales y de los menores con las tarjetas de crédito.

10. En las planillas de 2004, 2005 y 2006 reclamó deducción en concepto de gastos de vehículo de motor. Durante su testimonio el demandado testificó que esos gastos los pagaba la corporación.

11. El 25 de enero de 2007, el Demandado se comprometió ante la examinadora de pensiones alimentarias a pagar hipoteca, mantenimiento, jardinero de la residencia, servicios de agua, electricidad, teléfono cable tv, internet, teléfono celular, colegio de los menores y almuerzos de la hija y proveer $400.00 para compra de alimentos y $200.00 para gastos de gasolina. El total de los gastos estipulados ascendían a más de $4,000.00 mensuales y eran menores a los incurridos por el núcleo familiar mientras las partes estaban casadas.

App. Ap. pp.204

12. El Demandado proveyó los gastos ininterrumpidamente todos los meses hasta el mes de junio de 2008 que comenzaron los pagos irregulares por controversia con los gastos escolares.

13. Dichas cantidades no contemplan gastos de subsistencia personal del demandado, ni otras partidas sobre las cuales se presentó evidencia tales como gastos de mantenimiento y cuidado de la embarcación "Souvenir", los cuales se evidenció que algunos fueron pagados con tarjetas de la compañía.

14. A partir del año 2009 dos eventos produjeron un cambio sustancial en las circunstancias económicas del Demandado. En primer lugar, el hijo menor cambió de escuela. En segundo lugar, el Demandado contrajo nuevas nupcias el 15 de mayo de 2009 bajo el régimen de separación de bienes.

15. El Demandado alega que para poder pagar la pensión provisional tuvo que tomar dinero prestado y utilizar el valor acumulado de un seguro de vida. Quiso implicar de no se le puede imputar dichas cantidades como ingreso. Varias razones nos llevan a pensar en contrario.

16. De acuerdo a las planillas de contribución sobre ingresos de individuos para los años 2004, 2005, 2006 y 2009 que obran en el expediente, el SR. JUAN CARLOS BALCELLS GALLARETA reportó ingresos provenientes de sueldo $11,118, $10,712, $10,912, $10,912 e ingresos por concepto de comisiones ascendente a $5,988, $9,820, $14,554 y $12,767 respectivamente.

17. El SR. JUAN CARLOS BALCELLS GALLARETA informó en la Planilla de Información y Económica presentada el 30 de junio de 2008 la suma de $2,199.00 de ingresos netos mensuales. Sin embargo, los gastos informados ascienden a $2,320.00 y no incluyó partida por concepto de alimentos, gastos médicos y de servicios esenciales.

18. El SR. JUAN CARLOS BALCELLS GALLARETA informó en la Planilla de Información y Económica presentada el 3 de septiembre de 2010 la suma de $1,896.00 de ingresos netos mensuales. Sin embargo, los gastos informados ascienden a $545.00 y no incluyó partida por concepto de alimentos, gastos médicos y de servicios esenciales.

19. En la Planilla de Información y Económica presentada el 30 de junio de 2008 el SR. JUAN CARLOS BALCELLS GALLARETA informó deudas ascendentes a $134,670 y pagos mensuales de $3,229.00. Las deudas correspondían a tres tarjetas de crédito, una deuda hipotecaria y una deuda personal de un préstamo.

20. El SR. JUAN CARLOS BALCELLS GALLARETA en la Planilla de Información y Económica presentada el 3 de septiembre de 2010 informó deudas ascendentes a $153,621 y pagos mensuales de $2,190.00. Las deudas informadas corresponden a dos tarjetas de crédito, pago hipotecario del inmueble de Villa Reales, cuatro préstamos personales, una reserva de cuenta de cheques y una deuda con Departamento de Rentas Internas de los Estados Unidos.

21. En resumen, según la información provista por el Demandado en las Planillas de Información personal y Económica del 30 de junio de 2008 al 3 de

App. Ap. pp.205

septiembre de 2010 sus ingresos se redujeron alrededor de $303.00 mensuales. De otro lado, las deudas en el mismo periodo aumentaron solamente $18,951.00.

22. Es menester observar que durante esos dos años pagó sobre $4,000.00 mensuales de pensión alimentaria provisional sin contar gastos personales de él ni del nuevo núcleo familiar durante 26 meses.

23. Un cálculo conservador de $4,000.00 mensuales multiplicado por 26 meses asciende a $104,000.00. Informó aproximadamente en promedio $2,000 por 26 meses es igual a $52,000. Asumiendo para propósitos del análisis que utilizó los 16,000 del seguro de vida. De dónde salen los otros $36,000.00?

24. La prueba presentada demostró que durante el matrimonio con la Demandante el sufragaba con su peculio casi la totalidad de los gastos familiares ascendentes a $7,600.00. Las cantidades pagadas eran superiores a la cantidad pactada como pensión alimentaria provisional.

25. Por lo tanto, es menester concluir que el Demandado no reportó en la planilla de información personal y económica todos los ingresos provenientes de su relación con Gusupa, Inc., no reportó todas las fuentes de ingreso o una combinación de ambas posibilidades.

26. En atención al historial de gastos evidenciado, el estilo de vida del cual disfruta actualmente y las demás circunstancias, **al SR. JUAN CARLOS BALCELL GALLARETA se le imputan $92,000 dólares de ingresos netos anuales o $7,666.66 mensuales.**

27. La SRA. AMARILIS GONZÁLEZ GARCÍA trabaja actualmente como abogada y devenga un ingreso neto mensual ascendente a $3,076.00 mensuales.

28. La SRA. AMARILIS GONZÁLEZ GARCÍA, es parte de la sucesión de DON FRANCISCO GONZÁLEZ VÉLEZ con sus hermanos.

29. Según copia certificada de la Planilla de Caudal Relicto la sucesión consta de varias propiedades que totalizan $1,669,444.00 más $6,861.32 depósitos y un vehículo de motor de $20,000.00. De ese total, $848,152.66 corresponde al valor de los bienes del causante.

30. No se presentó evidencia que todo o parte de los bienes le hayan sido adjudicados a ésta. Según su testimonio, ella solo posee una cuota indivisa que está en trámites de partición. La Demandante no devenga ingresos frutos ni rentas de su participación en los bienes de la sucesión. Por lo tanto, al presente no se le puede imputar un ingreso de esos bienes.

31. La residencia donde habita tiene un gravamen hipotecario con una mensualidad de $1,141.00. El balance aproximado de la deuda es de $60,000.

32. La residencia es habitada por tres personas incluyendo los dos menores. Se imputa un gasto mensual de $760.00 o $9,128 anual en concepto de vivienda para beneficio de los menores a ser asignado proporcionalmente a las partes.

33. El menor Juan Francisco estudia en el Colegio San Ignacio desde el mes de agosto de 2009, cuya matrícula y otros cargos ascienden a $10,150.00 anuales. Las mensualidades son pagaderas en un plazo y ascienden a $8,550.00.

34. En la vista de 16 de marzo de 2009, acordaron que la Demandante pagaría el pago inicial del colegio al cual asistiría el hijo y luego el padre reembolsaría a ésta el porciento determinado con relación las partidas suplementarias.

35. La menor Alexandra estudia en la Academia María Reina cuya matrícula asciende a $1,112.00 y $7,500.00 al año de anualidad para un total de $8,612.00

36. Al presente existe una deuda con el Colegio de $7,500.00 más recargos correspondientes al año académico 2010-2011. Conforme al acuerdo de las partes el Demandado se comprometió a sufragar la totalidad de los gastos escolares de la hija. Se aplicaría el mismo principio de proporcionalidad un vez se establezca el porciento de responsabilidad por los gastos suplementarios.

37. Según la evidencia presentada los menores incurren en $ 2,400.00 anuales equivalente a $200.00 mensuales en concepto de uniformes, libros y otros materiales escolares.

38. El total de gastos escolares asciende a $21,162.00 anuales o $1,763.50 mensuales.

39. El porciento de participación en las partidas suplementarias de la Demandante es 29% y del Demandado es 71%.

40. Los gastos suplementarios a prorratearse entre ambos padres ascienden a la cantidad de $30,290 anuales o $2,524 mensuales. El Demandante deberá pagar $21,506 anuales o $1,792.00 mensuales en concepto de pensión suplementaria.

41. Los menores se benefician de un plan médico provisto por el Demandado.

42. Conforme a las *Nuevas Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico*, Reglamento Núm. 7135 del 24 de abril de 2006, al Sr. Juan Carlos Balcells Gallareta le corresponde pagar la cantidad de $3,046.00 mensuales de pensión alimentaria básica y $1,792.00 (71%) mensuales de pensión alimentaria suplementaria.

43. La pensión total asciende a $4,838.00 mensuales. El señor JUAN CARLOS BALCELLS GALLARETA pagará dicha cantidad de forma mensual, mediante pago directo utilizando giro o cheque de gerente retroactivo a la fecha de la petición.

44. El Tribunal en atención a la complejidad del caso y las recurrentes intervenciones de la representación legal de la demandante concede $4,200.00 en honorario de abogados a ser pagados en 90 días.

En atención a las anteriores Determinaciones de Hechos, formulamos las siguientes:

## CONCLUSIONES DE DERECHO

### I. Obligación de Alimentar

Se define el término de alimentos como *"todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia, incluyendo la educación del alimentista, cuando es menor de edad."* 31 L.P.R.A. sec. 561.

En Puerto Rico el deber de proveer alimentos o asistencia económica a los hijos, emana de nuestro Código Civil, 31 L.P.R.A. sec. 561-601; de la Ley Especial

para el Sustento de Menores, Ley Núm. 5 del 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. sec. 501 et seq., y de las Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico. Dicha obligación, según ha expresado nuestro Tribunal Supremo en el caso de *Chévere Mouriño v. Levis Goldstein*, 152 D.P.R. 492, 499 (2000), surge como resultado de ser padre o madre, y existe con todos los efectos patrimoniales, jurídicos y morales desde el momento en que nace el hijo, irrespectivamente de las circunstancias de su nacimiento, de que se tenga o no la patria potestad o de que los padres vivan o no en compañía del menor. Por ello, es responsabilidad y deber de ambos progenitores aportar a la manutención de los hijos de acuerdo a sus respectivos caudales.

El Art. 4 de la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 del 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. sec. 503, dispone:

> "*Los padres e hijos, los cónyuges, los ex-cónyuges y los parientes están obligados recíprocamente a ayudarse y sostenerse económicamente, según dispuesto en el Código Civil y en la jurisprudencia interpretativa. Los padres de un menor son responsables de su manutención y el tribunal o el Administrador podrá ordenarle pagar una suma justa y razonable por concepto de pensión alimentaria a tenor con la secc. 518 de este título.*"

El Art. 19 de la Ley Orgánica de la Administración para el Sustento de Menores, *supra*, 8 L.P.R.A., secc. 518, dispone:

> "*En todo caso en que se solicita la fijación o modificación, o que se logre un acuerdo o estipulación de una pensión alimentaria, será mandatorio que el tribunal o el Administrador, según sea el caso, determine el monto de la misma utilizando para ello las guías adoptadas a tenor con lo dispuesto en esta sección.*"

> "*El Administrador o el tribunal, a solicitud de parte o a su discreción, podrá iniciar el procedimiento para modificar una orden de pensión alimentaria en cualquier momento y fuera del ciclo de tres (3) años, cuando entienda que existe justa causa para así hacerlo, tal como variaciones o cambios significativos o imprevistos en los ingresos, capacidad de generar ingresos, egresos, gastos o capital del alimentante o alimentista, o en los gastos, necesidades o circunstancias del menor, o cuando exista cualquier otra evidencia de cambio sustancial en circunstancias.*"

## II. Pensión básica y pensión suplementaria

El Artículo 4(27) de las Nuevas Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico, Reglamento Núm. 7135, del 24 de abril de 2006, define el término de **pensión** básica como "*la participación del ingreso neto de la persona no custodia dedicada al pago de gastos mínimos necesarios para la crianza del alimentista que incluyen gastos por concepto de transportación, entretenimiento y vestimenta excepto gastos de uniforme.*"

El Artículo 4(30), *supra*, define **pensión suplementaria** como "*la porción del ingreso neto que la persona no custodia debe destinar para pagar la parte que le corresponde por concepto de gastos suplementarios.*"

Así, pues, el propio Reglamento en su Artículo 4(14), *supra*, define **gastos**

CIVIL NÚMERO: D DI2006-4095
AMARILIS GONZÁLEZ GARCÍA v. JUAN C. BÁRCELES GUILLAMA
RESOLUCIÓN

Case: 1aa86372MQP11.202-ABZ23 Doc Filed 06/03/2 Filed 06/07/226 Page 26246f460 Desc:
Exhibit Exhibit A Entry Page 8 of 12

suplementarios como:

> "Los gastos que tanto la persona custodia como la no custodia deben sufragar para satisfacer las necesidades del alimentista, no contemplados en la pensión alimentaria básica y en la pensión básica ajustada. Éstos incluyen gastos de educación, vivienda, y gastos de salud no cubiertos por un plan de seguro médico. También incluye los gastos por concepto de cuido de niños/as, cuando la persona custodia se vea obligada a incurrir en los mismos para poder estudiar o ejercer una profesión u oficio. Al momento de determinar los gastos suplementarios, el juzgador deberá considerar no sólo los gastos que efectivamente se pagaron, sino también aquellos que deberían sufragarse para satisfacer todas las necesidades del alimentista."

En síntesis, la pensión suplementaria se establece tomando en consideración la responsabilidad que la persona custodia y la no custodia tiene en relación a los gastos suplementarios de los alimentistas.

III. Ingreso

El Artículo 4 (15) del Reglamento 7135 *Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico (Guías)* reza:

> 15. **Ingresos:** Comprenden cualquier ganancia, **beneficio**, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, del Gobierno de los Estados Unidos de América, el Distrito de Columbia, las Islas Vírgenes de los Estados Unidos de América, o cualquier territorio o posesión sujeta a la jurisdicción de los Estados Unidos de América según lo permitan las leyes y reglamentos federales aplicables, de cualquier estado de la Unión de los Estados Unidos de América, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad; también los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica. (Énfasis nuestro).

En el contexto de padre alimentante el Tribunal Supremo en el caso ***Fonseca v. Rodríguez***, 2011 TSPR 4 (2011) sobre el concepto ingreso dispuso que *"los bienes adquiridos mediante herencia no constituyen ingreso para efectos del cómputo de una pensión alimentaria al amparo de la Ley 5 de 1986 según enmendadas, y las Guías de 2006."* En dicho caso al alimentante se le adjudicaron mediante herencia bienes y dinero en efectivo.

Sin embargo, aunque no constituye ingreso propiamente, el máximo foro resolvió que para determinar el ingreso bruto de un alimentante, a los bienes adquiridos mediante herencia se les imputará un ingreso independiente de si lo producen en realidad *Fonseca* id a la pág. 34. Dicha operación se le delega al juez en el ejercicio de la sana discreción y a la luz de la totalidad de las circunstancias.

CIVIL NÚMERO: D DI2006-4093
AMARILIS GONZÁLEZ GARCÍA v. JUAN C. BALCELLS GALLARETA
RESOLUCIÓN

Case: 1:06-cv-02113-FAB-BCC Document 06/03/21 Filed 06/16/226/03/21 Page 2134 of 460 Desc:
Exhibit Exhibit 1 Page 9 of 12

9

Por su parte, y esta vez en el Inciso 18 de su Artículo 2, *ante*, la Ley define lo que se considerará como **"ingreso neto"**, para propósitos de la fijación de una pensión alimentaria, como:

> *Ingreso neto: Aquellos ingresos disponibles al alimentante, luego de las deducciones por concepto de contribuciones sobre ingreso, seguro social y otras requeridas mandatoriamente por ley. Se tomarán en consideración, además, a los efectos de la determinación del ingreso neto, las deducciones por concepto de planes de retiro, asociaciones, uniones y federaciones voluntarias, así como los descuentos o pagos por concepto de primas de pólizas de seguros de vida, contra accidentes o de servicios de salud cuando el/la alimentista sea beneficiario/a de éstos. La determinación final se hará según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente. (Énfasis nuestro).*

A tono con lo anterior, en la Sección 5 de las Guías se establece que *"[s]e considera[rá] ingreso neto disponible, aquella parte del ingreso bruto[,] que luego de descontársele las deducciones mandatorias y otras deducciones aceptadas, queda disponible para hacer frente al pago de las pensiones alimenticias."* Véase, *Zahira Linette Martínez Vázquez v. Nelson Rodríguez Laureano*, 160 D.P.R 145 (2003).

En adición, nuestro Tribunal Supremo resolvió en ***Arguello López, López Peña v. Arguello García, 155 D.P.R. 62 (2001)***, que en el ejercicio de la imputación de ingresos al alimentante, es de particular importancia que se ponderen los gastos en que incurre éste para mantener su estilo de vida al momento de establecer la cuantía de la pensión. *"Tales gastos constituyen un elemento decisivo con respecto a la determinación de cuál es la verdadera situación económica del alimentante. Más aun, la ponderación de tales gastos puede llevar al tribunal a decidir que algunos de ellos tienen que ceder ante la obligación prioritaria de alimentar."* (Subrayado nuestro).

En concordancia con lo expuesto y en atención al historial de gastos evidenciado, el estilo de vida del cual disfruta actualmente y las demás circunstancias, al **SR. JUAN CARLOS BALCELL GALLARETA** se le imputan $92,000 dólares de ingresos netos anuales o $7,666.66 mensuales.

## IV. EFECTIVIDAD DE LA DETERMINACION DE PENSION ALIMENTARIA

En cuanto a la retroactividad de la obligación de la pensión a tenor con el Artículo 19 de la Sección IV de la Ley Num. 5 de 30 de diciembre de 1986 según enmendada incluyendo la Ley Número 232 de 30 de diciembre de 2010, "Los pagos por concepto de pensiones alimentarias y de aumentos en las mismas serán efectivos desde la fecha en que se presentó la petición de alimentos en el tribunal... y la revisión de la pensión alimentaria será efectiva desde la fecha en que se presentó la petición de rebaja ante el tribunal o el Administrador, siempre y cuando su petición sea meritoria desde ese momento." No obstante, el propio texto de la ley establece que de existir causas excepcionales el Tribunal podrá disponer que la revisión de pensión no sea retroactiva.

Case:[illegible] Doc#:[illegible] Filed:[illegible] Entered:[illegible] Page [illegible] of 460 Desc: Exhibit Exhibit I Page 10 of 12

En presente caso, dado el trámite procesar seguido, que incluye una solicitud de determinaciones de hechos adicionales de hechos, esta resolución constituye la determinación de pensión alimentaria que inició con la demanda radicada el 28 de diciembre de 2006. A tenor con el referido texto en el presente caso la pensión determinada en la presente resolución debe ser retroactiva a esa fecha. No obstante, existen causas excepcionales que requieren de un ajuste para hacer justicia a las partes en cuanto a la pensión alimentaria en concepto de gastos de educación.

Al momento de acordar la pensión provisional, los gastos escolares del menor Juan Francisco eran sustancialmente menor a los determinados al presente incluyendo, matrícula y mensualidades. De retrotraer la cantidad determinada daría una cantidad sustancialmente mayor a la incurrida. Toda vez que fueron pagadas por el Demandado al imputarse el gasto actual va a producir una deuda mayor por operación matemática. Por lo tanto, la partida de pensión alimentaria en concepto de gastos escolares se retrotraerá a la fecha que el menor Juan Francisco cambió de escuela. Esa información no surge claramente de la evidencia presentada por lo que hay que celebrar una vista evidenciaría a tales propósitos.

En cuanto a los gastos escolares de la menor Alexandra, los mismos fueron contemplados y se dispuso que el Demandante pagaría los gastos sujeto a que posteriormente se le diera un crédito por el porciento que se le atribuya a la Demandante con relación a los gastos escolares.

## V. DESACATO

El desacato civil es el mecanismo mediante el cual los tribunales obligan a que se cumpla con una orden emitida cuando la parte obligada por la misma ha hecho caso omiso de ésta. El desacato civil tiene un propósito eminentemente reparador. *Alvarez v. Arias*, 156 D.P.R. 352(2002).

Como excepción a la prohibición constitucional contra el encarcelamiento por deuda, el tribunal puede ordenar el encarcelamiento por desacato civil por incumplimiento de una pensión alimentaria. No obstante, si el obligado a pagar demuestra que el incumplimiento con el pago de la pensión se debe a una causa justificada, no procederá la imposición de esta medida extrema.

En el presente caso existe, de conformidad con lo determinado con relación a la pensión alimentaria controversia sobre la existencia de una deuda por concepto de aplicación retroactiva de la pensión, cantidad de la deuda no pagada y la justificación si alguna para no cumplir en el supuesto que haya incumplimiento. Existen numerosas alegaciones encontradas, por lo tanto es menester señalar una vista de desacato a pesar de que el Tribunal se había expresado en cuanto a que durante las vistas celebradas se estaba considerando dicho asunto. Se ordena citar a las partes a **vista de desacato el lunes 8 de agosto de 2011 a las 2:00p.m.**

## VI. HOGAR SEGURO

En el 1997, la Asamblea Legislativa recogió mediante legislación la norma establecida por el Tribunal Supremo en el caso *Cruz Cruz v. Irizarry Tirado,* 107 D.P.R. 655 (1978) y los principios prevalecientes en cuanto a hogar Seguro Véase, *Candelario v. Muñiz,* 171 D.P.R. 530 (2007). La Ley Núm. 184 de 26 de diciembre de 1997 enmendó el Código Civil para añadir el Artículo 109-A, 31 L.P.R.A. sec. 385a, el cual en lo concerniente dispone:

> **(a)** El cónyuge a quien por razón del divorcio se le concede la custodia de los hijos del matrimonio, que sean menores de edad, que estén incapacitados mental o físicamente sean estos mayores o menores de edad o que sean dependientes por razón de estudios, hasta [los] veinticinco (25) años de edad, tendrá derecho a reclamar como *hogar* *seguro* la vivienda que constituyó el *hogar* del matrimonio y que pertenece a la sociedad de gananciales, mientras dure la minoría de edad, la preparación académica o la incapacidad de los hijos que quedaron bajo su custodia por razón de divorcio.
>
> La propiedad ganancial que constituye el *hogar seguro* no estará sujeta a división mientras dure cualquiera de las condiciones en virtud de las cuales se concedió. Disponiéndose, que el derecho de *hogar seguro* podrá reclamarse desde que se necesitare, pudiendo ser reclamado en la demanda de divorcio, durante el proceso, o luego de decretarse el mismo. **Una vez reclamado, el juzgador determinará lo que en justicia procede de acuerdo con las circunstancias particulares de cada situación (énfasis suplido).**
>
> ..."

El propósito principal de esta legislación, según se desprende de su historial legislativo fue precisamente hacerle justicia a la institución de la familia. Se persigue tratar de salvaguardar el bienestar de los hijos cuando por razón de la separación de sus padres se encuentran en una situación de inestabilidad respecto a su vivienda. Por lo tanto, las leyes referentes a hogar seguro deben ser interpretados con toda la posible liberalidad para darle efecto a su propósito.

No obstante, la jurisprudencia se ha negado a aplicar mecánicamente el lenguaje expreso del Art. 109-A. El propio texto del Art. 109-A, dispone que: *(u)na vez reclamado, el juzgador determinará lo que en justicia procede de acuerdo con las circunstancias particulares de cada situación*. De este modo el legislador le ordena al Juez tomar en cuenta las circunstancias de cada caso para determinar que debe proceder para que sea consistente con el fin último de impartir justicia.

En el caso de autos, el inmueble cuya liquidación el demandado pretende está ubicado en la Urbanización Villa Reales en Guaynabo. Las partes pagan alrededor de $1,200.00 mensuales en concepto de hipoteca y tiene un balance aproximado de $65,000.00.

El referido inmueble ha constituido la vivienda familiar habitual por un tiempo considerable. Los menores han residido en el desde tierna edad y no han conocido otro lugar. Tampoco tienen otro lugar donde residir.

Del otro lado, el deber de alimentar a sus hijos conlleva procurar y aportar para la vivienda de los hijos. La estabilidad emocional implica también dentro de la realidad

de las partes una equivalencia de las condiciones de la vivienda en proporción a los bienes de fortuna de los padres. El Demandado no está desprovisto de un techo. Actualmente reside en la Urbanización Arboles de Montehiedra en San Juan. Dicha residencia es cuanto menos de igual o mayor valor que la casa que residen sus hijos. Por lo tanto no es desmedido ni desproporcionado establecer dicho inmueble como hogar seguro.

Contrario a lo alegado por el Demandado, desde el punto de vista económico tal determinación le resulta favorable. De declarar con lugar la pretensión del Demandado y obligar a los menores mudarse a un inmueble equivalente al que reside el, conllevaría una mensualidad mayor a la establecida actualmente. Si asumimos para efecto de nuestro análisis que el inmueble tiene un valor en el mercado de $400,000 y se financia al 5% por un término de 30 años, resultaría en un pago mensual de $2,150.00 lo que es casi el doble de lo que pagan actualmente de hipoteca.

Debemos recordar que la determinación de hogar seguro no conlleva un traslado de dominio sino una limitación temporal en beneficio de la unidad familiar al prorrogarse la liquidación de ese activo. Una vez cesa las condiciones que activan la figura de hogar seguro, las partes pueden proceder con la liquidación del mismo. Por lo tanto, se declara que el inmueble de la Urbanización Villa Reales constituye el hogar seguro de los menores.

## RESOLUCIÓN

Adoptando por referencia las determinaciones de hechos y los fundamentos de derecho decretamos y resolvemos lo siguiente:

En atención al historial de gastos evidenciado, el estilo de vida del cual disfruta actualmente y las demás circunstancias, **al SR. JUAN CARLOS BALCELL GALLARETA se le imputan $92,000 dólares de ingresos netos anuales o $7,666.66 mensuales.** Los gastos suplementarios a prorratearse entre ambos padres ascienden a la cantidad de $30,290 anuales o $2,524 mensuales. El Demandante deberá pagar $21,506 anuales o $1,792.00 mensuales en concepto de pensión suplementaria. Los menores se benefician de un plan médico provisto por el Demandado.

Se ordena citar a las partes a **vista de desacato el lunes 8 de agosto de 2011 a las 2:00p.m.**

El inmueble de la Urbanización Villa Reales perteneciente en comunidad a las partes de epígrafe constituirá el hogar seguro de los menores.

De conformidad con lo resuelto en el caso *Figueroa v. Del Rosario 147 D.P.R. 121, 126-127(1998),* se ordena notificar esta resolución como Sentencia.

**REGISTRESE Y NOTIFÍQUESE.**

En Bayamón, Puerto Rico, a 30 de junio de 2011.

**ÁNGEL M. CANDELAS RODRÍGUEZ**
*Juez Superior*

Case: 11-00687-MCF7 Doc#:23-4 Filed:09/23/13 Entered:09/23/13 16:29:40 Desc:
Exhibit State Court Decision Page 1 of 5

1

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE FAMILIA Y MENORES
REGION JUDICIAL DE BAYAMON
*Salón de Sesiones 3001*

#2

| | |
|---|---|
| AMARILIS GONZALEZ GARCIA **DEMANDANTE** | EXP. NUM. **D DI2006-4055** |
| VS | |
| JUAN C. BALCELLS GALLARRETA **DEMANDADO** | **DIVORCIO (TC)** |

# MINUTA–RESOLUCION

A la vista de urgente comparece la demandante asistida por la Lcda. María E. Medina Pérez. Comparece el demandado asistido por la Lcda. Vera T. Peñagaricano.

Se hace constar que este caso tiene varias interacciones. La última vez fue para discutir los alcances de la Resolución del Tribunal Apelativo. No se ha emitido mediante una resolución la determinación de este Tribunal. En síntesis queda pendiente los siguientes asuntos: solicitud de rebaja de pensión alimentaría, si procede imputación de ingreso sobre los bienes de la demandante, cambio unilateral de la institución académica, alegación de hechos del gasto del colegio y la solicitud de desacato en cuanto a la aportación de la demandante para los gastos de educación de la menor.

Indica la Lcda. Peñagaricano que la orden señalando la vista de hoy urgente va dirigida a establecer: la deuda que alega mamá tiene papá y la merma de ingresos del demandado. En cuanto a la primera, este Tribunal paralizó toda gestión en cuanto a cualquier determinación de cualquier obligación previo agosto de 2011, por lo cual no puede ser atendida en el día de hoy. Con esto no significa que el demandado se quiere enajenar de cualquier obligación que pueda surgir posterior a la paralización del caso de quiebra.

Continuación.............

App. Ap. pp.214

Página 2                                   D DI2006-4055

La Lcda. Medina expresa que el padre no custodio está alegando que sus ingresos han mermado. Pero se ha repasado, la resolución del Tribunal y nos hemos percatado que el demandado se le impuso una pensión alimentaría de $2,100.00. Se tomó en consideración su estilo de vida y el estilo de vida sigue siendo el mismo, por lo tanto, no es a base de los ingresos que se tomó en consideración para fijarse la pensión que está fijada.

La demandante indica que el Tribunal de Quiebra nunca ha mandado que se paralicen los procedimientos, al contrario, el Tribunal de Quiebra quiere que los procedimientos de alimentos continúen. No determinar la deuda previa ni la que esta después de la quiebra, es totalmente irracional. No entiendo como es que se dice que hay que paralizar los procedimientos para determinar la deuda.

El Tribunal indica que en virtud del procedimiento en el Tribunal Federal no hay impedimento legal alguno para evaluar cualquier solicitud de modificación. Lo que teníamos era la paralización por 180 días para no hacer ninguna gestión de cobro.

Ambas partes presentan varios argumentos para determinar la deuda por ambas partes.

La Lcda. Peñagaricano indica que advino en conocimiento que la menor gozaba de una beca ascendente a $2,752.00. La demandante informa que a ninguno de los menores le ofrecieron becas. El Tribunal instruye a las partes a reunirse y continuar esta vista por la tarde.

## SESION DE LA TARDE:

Se llama nuevamente el caso en horas de la tarde, comparece la demandante asistida por la Lcda. Maria Medina Pérez. Comparece el demandado asistido por la Lcda. Vera T. Peñagaricano.

Continuación……

App. Ap. pp.215

Case: 11-00687-MCF Doc#: 182-4 Filed: 05/23/19 Entered: 05/23/19 16:48:46 Desc:
Exhibit State Court Decision Page 3 of 5

3

Página 3                                        D DI2006-4055

Las partes se acercan al estrado para discutir la tabla preparada por la Lcda. Beltrán.

La demandante aclara que no procede considerar la partida de la hipoteca porque lo hizo para reclamar su partida en el caso civil. En la quiebra el demandado se está beneficiando por eso. Recibirá la porción de la hipoteca en dos o tres ocasiones. Esto en adición a las penalidades que tiene que pagar. Por lo cual, la porción que le toca de la hipoteca no puede reclamarse en lo civil ni en la quiebra. En la quiebra no se considera el hogar seguro.

El Tribunal indica que el pago de la casa se imputa como parte de la pensión alimentaría. Se estableció la pensión regular y la suplementaria. La pensión en este caso es de $4,838.00.

Informa la Lcda. Peñagaricano que entiende que el Tribunal se revocó en cuanto a la determinación en la vista del 20 de octubre de 2011. Las partes presentan varios argumentos para determinar la deuda.

**El Tribunal luego de hacer los cómputos indica que al 31 de agosto de 2011, el demandado debió haber pagado $270,928.00, de eso ha pagado $145,882.00 y la deuda es de $125,046.00 por concepto de pensión alimentaría.**

La Lcda. Peñagaricano indica que según las vistas de 19 de enero y 3 de febrero, el demandado lo que debía a diciembre/2011 era $5,384.00. El día 19 de enero de 2012 se le hizo entrega a la demandante la cantidad de $5,384.00 y se informó al Tribunal mediante moción dando por cumplida la deuda que había hasta entonces.

La Lcda. Medina expresa que la otra deuda al 7 de junio de 2012 es de $16,028.00.

Las partes hacen sus argumentos y cómputos en cuanto a la deuda del segundo período, enero/2012 hasta el 23/julio/2012.

Continuación.................

App. Ap. pp.216

Página 4                                D DI2006-4055

El demandado debió haber pagado $33,866.00.

La Lcda. Peñagaricano indica que hay pagos adicionales, un pago de $1,046.00 número 144 y el pago del Colegio de María Reina de $2,000.00 número 1,713, para un total de $3,046.00, que no se pueden probar en el día de hoy por no tener la evidencia.

El Tribunal **hace constar que añadiendo el pago de julio de $1,000.00, más el Colegio de $2,576.50, la deuda del 2012 es de $20,971.50 al 23 de julio de 2012.**

Además, indica la Lcda. Peñagaricano que existen otros pagos que ha hecho el demandado y que se discutieron con la Lcda. Beltrán, como es el celular del menor, la graduación de cuarto año de la menor, se le compro una cama para el apartamento del Recinto de Mayagüez. Hay ciertos gastos que se le van a presentar al Tribunal. El demandado no estaba preparado para dilucidar la deuda de enero a julio /2012.

El **Tribunal concede el término de 10 días para que presente objeciones y 10 días para que la otra parte replique con relación a las cuantías reclamadas como la deuda.**

Con relación a la controversia de la Ley 100, a tenor con lo resuelto con el mandato del Tribunal Apelativo y el contenido de la página 19 y 16 de la resolución se declara NO HA LUGAR a la solicitud de revisión por el fundamento de cambio en las circunstancias económicas por el nuevo trabajo.

La parte demandante alegó que la menor va a estudiar en la Universidad de Puerto Rico en el Recinto de Mayagüez, por lo que va a incurrir en gastos escolares mayores. Se refiere a la Examinadora para la revisión de pensión alimentaría por el fundamento de cambio de las circunstancias económicas.

Con relación a una moción sobre el Desacato contra la parte demandante, el Tribunal determina como cuestión de hecho y derecho que no procede, porque voluntariamente el demandado pagó la deuda directamente al Colegio.

continuación...........

App. Ap. pp.217

Case: 11-00837-MCF7 Doc#: 182-1 Filed: 05/23/19 Entered: 05/23/19 12:49:40 Desc:
Exhibit State Court Decision Page 5 of 5

5

Página 5                                        D DI2006-4055


<u>**Se señala la vista de desacato para el 10 de septiembre de 2012, a
las 2:00 pm.**</u>

Certifico haber enviado copia de esta minuta-resolución a los abogados de récord hoy, 27 de agosto de 2012.

| | | |
|---|---|---|
| Libro de Minutas | | Alguacil: Marisol Alicea Rivera |
| Nombre Juez: | HON. ÁNGEL M. CANDELAS RODRIGUEZ | Certifico: Migdalia Rivera Colón<br>Secretaria Regional |
| Operadora de FTR: WILMARIE OJEDA RIOS | | Por: Carmen M. Rivera López<br>Secretario de Sala |
| Oat 838<br>Minuta Civil | | Vista: 23 DE JULIO DE 2012<br>Transcrita: 3 DE AGOSTO DE 2012 |

App. Ap. pp.218



## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE

JUAN C. BALCELLS GALLARETA

Debtor

Case No. 11-06637(MCF)

CHAPTER 7

### SWORN STATEMENT OF
### JUAN FRANCISCO BALCELLS GONZALEZ

I, Juan Francisco Balcells González, of legal age, single, a student and resident of Guaynabo, Puerto Rico, hereby declare under penalty of perjury:

1.      My personal circumstances are as above stated.

2.      I am 22 years of age.

3.      I am the son of Mrs. Amarilys González García and Juan Carlos Balcells Galagarreta.

4.      My father, the Debtor, Juan Carlos Balcells Galagarreta filed the bankruptcy petition genesis of this case on August 5, 2011. At such time I was 14 years old.

5.      On February 12, 2012, my mother, Amarilys González García, filed a Domestic Support Obligation ("DSO") proof of claim.

6.      I ratify any actions and authorize my mother, Amarilys González García, to act in my place and stead, in relation to the DSO claim filed in the above captioned case.

7.      I am currently a student at the University of Puerto Rico, Mayaguez.

8.      The address of my permanent residence is Urb. Villas Reales, Calle Versalles # 381, Guaynabo, Puerto Rico.

1

9.  I declare under oath that the foregoing is true and correct to the best of my

knowledge.

In __MAYAGUEZ__ , Puerto Rico, on this __30__ day of April, 2019

JUAN FRANCISCO BALCELLS GONZÁLEZ

Affidavit No. 2042

Sworn and subscribed before me by Juan Francisco Balcells González, of legal age, single, a student and resident of Guaynabo, Puerto Rico, whom I personally know, in __MAYAGUEZ__, Puerto Rico, this __30__ day of April of 2019.

NOTARY PUBLIC

**Sello**

RECIBO

9397
04/25/2019
$5.00
Sello de Asistencia Legal
82008-2019-0425-71403164

2

Scanned by CamScanner

App. Ap. pp.220

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE

JUAN C. BALCELLS GALLARETA

Debtor

Case No. 11-06637(MCF)

CHAPTER 7

## SWORN STATEMENT OF
## ALEXANDRA BALCELLS GONZALEZ

I, Alexandra Balcells González, of legal age, single, a student and resident of Guaynabo,

Puerto Rico, hereby declare under penalty of perjury:

1.       My personal circumstances are as above stated.

2.       I am 24 years of age.

3.       I am the daughter of Mrs. Amarilys González García and Juan Carlos Balcells

Galagarreta.

4.       My father, the Debtor, Juan Carlos Balcells Galagarreta filed the bankruptcy

petition genesis of this case on August 5, 2011. At such time I was 17 years old.

5.       On February 12, 2012, my mother, Amarilys González García, filed a Domestic

Support Obligation ("DSO") proof of claim.

6.       I ratify any actions and authorize my mother, Amarilys González García, to act in

my place and stead, in relation to the DSO claim filed in the above captioned case.

7.       I am currently a student at the University of Puerto Rico, Rio Piedras.

8.       The address of my permanent residence is Urb. Villas Reales, Calle Versalles #

381, Guaynabo, Puerto Rico.

1

Case:11-06637 Claim 10-1 Part 2 Filed 05/03/19 Entered 05/06/19 14:23:00 Desc:
Exhibit Response Exhibit Opt to Claim 4.5-1 Page 8 of 8
Case:11-06637 Claim 13-2 Part 2 Filed 06/13/19 Entered 06/13/19 14:23:00 Desc:
Exhibit Sworn Statement of Alexandra Balcells   Page 2 of 2

9.    I declare under oath that the foregoing is true and correct to the best of my

knowledge.

In _San Juan_ , Puerto Rico, on this _29_ day of April, 2019

_____
ALEXANDRA BALCELLS GONZÁLEZ

Affidavit No. _3451_

    Sworn and subscribed before me by Alexandra Balcells González, of legal age, single, as
student and resident of Guaynabo, Puerto Rico, whom I personally know, in _San Juan_ ,
Puerto Rico, this _29_ day of April of 2019.

_____
NOTARY PUBLIC

Sello

RECIBO

4118-00068572

9397
04/15/2019
$5.00

Sello de Asistencia Legal
80004-2019-0415-21353033

2

App. Ap. pp.222

B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS Noreen Wiscovitch Rentas as Trustee for the estate of Juan Carlos Balcells Gallareta | DEFENDANTS Amarilis González García<br>PO Box 3606595<br>San Juan PR 00936-0695 |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Aimee López Pabón, Esq. PO Box 9022512<br>San Juan PR 00902-2512 Tel:(787) 724-0230 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>□ Debtor      □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor    □ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>□ Debtor      □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor    ☒ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

This is a core proceeding under U.S.C.§363 (f),(h),(i) and /or (j), 11 U.S.C.§541 (a), 11 U.S.C.§726 (c) and FRBP 7001 (3) to obtain Court approval for the sale of both the interest of the estate and of co-owners of the property.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) -- Recovery of Money/Property**
- [ ] 11-Recovery of money/property – §542 turnover of property
- [ ] 12-Recovery of money/property – §547 preference
- [ ] 13-Recovery of money/property – §548 fraudulent transfer
- [ ] 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- [ ] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- [x] 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- [ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- [ ] 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- [ ] 66-Dischargeability – §523(a)(1),(14),(14A) priority tax claims
- [ ] 62-Dischargeability – §523(a)(2), false pretenses, false representation, actual fraud
- [ ] 67-Dischargeability – §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- [ ] 61-Dischargeability - §523(a)(5), domestic support
- [ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
- [ ] 63-Dischargeability - §523(a)(8), student loan
- [ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- [ ] 65-Dischargeability - other

**FRBP 7001(7) -- Injunctive Relief**
- [ ] 71-Injunctive relief – imposition of stay
- [ ] 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- [ ] 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- [ ] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- [ ] 01-Determination of removed claim or cause

**Other**
- [ ] SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- [ ] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

App. Ap. pp.223

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR  Juan Carlos Balcells Gallareta | | BANKRUPTCY CASE NO.     11-06637 | |
| DISTRICT IN WHICH CASE IS PENDING          PUERTO RICO | | DIVISION OFFICE | NAME OF JUDGE<br>Mildred Cabán Fllores |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>A 7 K P | | | |
| DATE<br><br>May 28, 2014 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>AIMEE LOPEZ PABON, ESQ. | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>JUAN CARLOS BALCELLS GALLARETA<br>DEBTOR | CASE NO. 11-06637 MCF<br><br>CHAPTER 7 |
| NOREEN WISCOVITCH RENTAS<br>TRUSTEE FOR THE ESTATE OF JUAN BALCELLS<br>GALLARETA<br><br>Plaintiff<br><br>V.<br><br>AMARILIS GONZÁLEZ GARCÍA<br><br>Defendant | Adv. No. _____ |

**COMPLAINT**
**TO OBTAIN COURT APPROVAL FOR THE SALE OF CO-OWNED PROPERTY OF THE**
**ESTATE PURSUANT TO SECTION 363 (h) OF BAPCPA**

**TO THE HONORABLE COURT:**

COMES NOW, Plaintiff, NOREEN WISCOVITCH RENTAS, in her capacity as Trustee for

the Estate of Juan Carlos Balcells Gallareta, through the undersigned attorney, and very respectfully to

this Honorable Court alleges, shows, states and requests relief as follows:

**JURISDICTION AND VENUE**

1.    This is a core proceeding under 11 U.S.C. §363(f), (h), (i) and/or (j), 11 U.S.C. §541 (a),

11 U.S.C. §726 (c) and FRBP 7001 (3) to obtain Court approval for the sale of both the

interest of the estate and of co-owners of the property described below, with the distribution

of the proceeds of the sale to be effectuated according to the percentage of ownership of

the Defendant and the Debtor.

App. Ap. pp.225

2.  This Honorable Court has jurisdiction over this case pursuant to 28 U.S.C. §157 (b)(2)(N) and 28 U.S.C. §1334.

3.  The United States Bankruptcy Court for the District of Puerto Rico has venue for this matter in accordance with 28 U.S.C. §1408.

### PARTIES

4.  Plaintiff, NOREEN WISCOVITCH RENTAS is the duly appointed Chapter 7 Trustee for the Estate of Juan Carlos Balcells Gallareta. She has standing to appear as plaintiff pursuant to 11 U.S.C. §323. The Bankruptcy Estate of Juan Carlos Balcells Gallareta has a percentage of ownership in the community of owners of the real property described below of 50%.

5.  Defendant, Amarilis Gonzalez Garcia, who, to the best of the Trustee's knowledge and belief, is of legal age, and resident of San Juan, Puerto Rico, with postal address at P.O. Box 3606595, San Juan, P.R. 00936-0695. Defendant is part of the community of co-owners of the real property described below; his percentage of co-ownership is 50% of the property described below. Defendant is not an incompetent person, thus with standing to appear as Defendant in this case.

### ALLEGATIONS

6.  Debtor, Juan Carlos Balcells Gallareta, filed the present bankruptcy petition as a voluntary petition under Chapter 7 of the Bankruptcy Code on August 5, 2011. *Dkt. 1.* Plaintiff was appointed Chapter 7 Trustee of the Bankruptcy Estate on August 6, 2011. *Dkt. 5.*

7.  Defendant and the estate of Juan Carlos Balcells Gallareta are the owners in community property in the property described in the Registry of the Property as follows:

> -----URBANA: Solar radicado en la Urbanización Villas Reales, localizada en el Barrio Santa Rosa del término municipal de Guaynabo, Puerto Rico, que se describe en el plano de inscripción, con el número, área y colindancias que se relacionan a continuación: Número del solar: 33-E. Área del solar 375.42 metros cuadrados. En lindes: por el NORTE, en una distancia de 25.07 metros lineales,

App. Ap. pp.226

con el solar número 32 del mismo bloque; por el SUR, en una distancia de 25.00 metros lineales, con el solar 34 del mismo bloque; por el ESTE, en dos alineaciones continuas que suman según plano 15.00 metros lineales, con parcela de uso público; y por el OESTE, en una distancia de 15.00 metros lineales, con l acalle número 7 de la urbanización, también conocida como Calle Versalles. Enclava una casa de concreto para fines residenciales.

------The above described property is registered at page 250 of volume 1197 of Guaynabo, Property #41,852 of the Registry of the Property of Guaynabo.

8.   To the best of Plaintiffs knowledge and belief, the above-described property may have valid and perfected liens, as they appear from the Registry of the Property.

9.   Plaintiff, as the Chapter 7 Trustee, intends to sell this real property pursuant to the provisions of 11 U.S.C. §363 (f), (h), (i) and/or (j).

10.  Defendant, together with the Debtor in this case, are jointly liable for the outstanding secured claims due to the holder of the mortgage note and/or of any other secured and/or unsecured claims, if any.

11.  Plaintiff seeks to sell the property listed above in order to distribute the resulting proceeds to the creditors of this Estate. Plaintiff states that to obtain benefit from the sale of these real property, the same must be sold as a single unit and not only the percentage of interest held by the Estate.

12.  Due to the above, 50% of the net proceeds of the sale recovered by the Plaintiff shall be distributed to Defendant after all administrative expenses have been paid.

13.  The Chapter 7 Trustee, as Plaintiff, purports the following:

   a)   Partition in kind of the property between the Estate and the Defendant is impracticable;

   b)   Sale of the estate's undivided interest would realize significantly less for the Estate than a sale of the entire property free of the interests of such co-owner;

   c)   The benefits of the Estate of a sale of such property free of the interest of Defendant outweighs the detriment, if any, to the Defendant; and

App. Ap. pp.227

d)    The property involved is not used in the production, transmission, or distributions of
electric energy or natural gas sold for heat, power, or light.

## PRAYER FOR RELIEF

**WHEREFORE**, it is requested from this Honorable Court for relief as follows:

A.    Issue judgment allowing the Trustee to sell the property of the Estate described above
free and clear of co-ownership interest, subject to 11 U.S.C. §363 (h), (i) and/or (j);

B.    Issue judgment allowing the Trustee to receive and distribute to creditors of the
bankruptcy estate the proceeds of the sale of this property pursuant to the provisions
of 11 U.S.C. §541 (a) and 11 U.S.C. §726 (c) in compliance with In Re Bobonis, 191
BR 268, Bankr. Court, D. Puerto Rico (1995);

C.    Deliver to the Defendant 50% of the surplus that may result after payment of the
administrative expenses of the Estate.

### RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico, this 29th day of May, 2014.

/s/ **RAFAEL A. GONZÁLEZ VALIENTE**
**USDC-PR 225209**
Email: rgonzalez@lbrglaw.com

/s/ **AIMEÉ LÓPEZ PABÓN**
**USDC-PR 229906**
Email: alopez@lbrglaw.com

**Latimer, Biaggi, Rachid & Godreau, LLP.**
PO Box 9022512
San Juan, PR 00925-2512
Tel: (787) 724-0230
Fax: (787) 724-9171

App. Ap. pp.228

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

**IN RE:**

**JUAN CARLOS BALCELLS GALLARETA**
DEBTOR

**NOREEN WISCOVITCH RENTAS**
**TRUSTEE FOR THE ESTATE OF JUAN BALCELLS GALLARETA**

Plaintiff

v.

**AMARILIS GONZÁLEZ GARCÍA**

Defendant

**CASE NO. 11-06637 MCF**

**CHAPTER 7**

**Adv. No. 14-00137**

## ANSWER TO COUNTER CLAIM

**TO THE HONORABLE COURT:**

    **COMES NOW**, Plaintiff, the Chapter 7 Trustee of the Bankruptcy Estate of Juan Carlos Balcells Gallareta, through the counsels, and respectfully show and pray:

    1.    Allegations of paragraph number one (1) of the Counterclaim are admitted.

    2.    Allegations of paragraph number two (2) are denied for lack of knowledge and/or evidence. Counter-claimant has not provided evidence to support this allegation. Furthermore, even if Counter-Plaintiff allegations were true, which is denied, this is not the appropriate proceeding for this claim.

    3.    Allegations of paragraph number three (3) are denied. Counter-claimant has not provided evidence to support this allegation. Even if Counter-Plaintiff allegations were true, which is denied, this is not the appropriate proceeding for this claim.

App. Ap. pp.229

4.      Allegations of paragraph number four (4) are objected for their content is not understood.  A more specific allegation is requested. Shall a pleading be necessary, the allegations are denied.

5.      Allegations of paragraph number five (5) are objected for their content is related to settlement negotiations, which are not admissible, pursuant to Rule 408 of the Federal Rules of Evidence. Shall a pleading be necessary, the allegations are denied. Previous to the filing of the present adversary complaint, Plaintiff made efforts to reach a settlement with Defendant. However, the parties were unable to reach an agreement.

6.      Allegations of paragraph number six (6) are denied.

7.      Allegations of paragraph number seven (7) are objected for their content is related to settlement negotiations, which are not admissible, pursuant to Rule 408 of the Federal Rules of Evidence. Shall a pleading be necessary, the allegations are denied. Previous to the filing of the present adversary complaint, Plaintiff made efforts to reach a settlement with Defendant. However, the parties were unable to reach an agreement.

8.      Allegations of paragraph number eight (8) are objected for their content is related to settlement negotiations, which are not admissible, pursuant to Rule 408 of the Federal Rules of Evidence. Shall a pleading be necessary, the allegations are denied. Counter-claimant allegations are based on State Law, which is preempted by the Bankruptcy Code.

9.      Allegations of paragraph number nine (9) are are objected for their content is related to settlement negotiations, which are not admissible, pursuant to Rule 408 of the Federal Rules of Evidence. Shall a pleading be necessary, the allegations are denied. Plaintiff made efforts to reach a settlement with Defendant. However, the parties were unable to reach an agreement.

10.     Allegations of paragraph number ten (10) are objected for their content is related to settlement negotiations, which are not admissible, pursuant to Rule 408 of the Federal Rules of Evidence. Shall a pleading be necessary, the allegations are denied. Even if Counter-Plaintiff

App. Ap. pp.230

allegations were true, which is denied, this is not the appropriate proceeding for this claim. Setoffs are not allowed in Bankruptcy proceedings.

11. Allegations of paragraph number eleven (11) are denied. Even if Counter-Plaintiff allegations were true, which is denied, this is not the appropriate proceeding for this claim.

12. Allegations of paragraph number twelve (12) are denied. The allegations on the instant adversary proceeding complaint are based on the information of the registry of property and applicable laws and regulations. Even if Counter-Plaintiff allegations were true, which is denied, this is not the appropriate proceeding for this claim. Setoffs are not allowed in Bankruptcy proceedings.

13. Allegations of paragraph number thirteen (13) are denied. The allegations on the instant adversary proceeding complaint are based on the information of the registry of property, and applicable laws and regulations. Even if Counter-Plaintiff allegations were true, which is denied, this is not the appropriate proceeding for this claim. Setoffs are not allowed in Bankruptcy proceedings.

14. Allegations of paragraph number fourteen (14) are denied for lack of knowledge and/or evidence. No evidence has been presented to support this allegation. If Counter-Claimant has suffered any damages, which is denied, they have been self-inflicted and due to their negligence and lack of action on their part.

15. Allegations of paragraph number fifteen (15) are denied.

16. Allegations of paragraph number sixteen (16) are objected for their content is related to settlement negotiations, which are not admissible, pursuant to Rule 408 of the Federal Rules of Evidence. Even if Counter-Plaintiff allegations were true, which is denied, this is not the appropriate proceeding for this claim. Setoffs are not allowed in Bankruptcy proceedings. If Counter-Claimant has suffered any damages, which is denied, they have been self-inflicted and due to their negligence and lack of action on their part.

17. Allegations of paragraph number seventeen (17) are denied. The allegations on the instant adversary proceeding complaint are based on the information of the registry of property, and

App. Ap. pp.231

applicable laws and regulations. Counter-claimant allegations are based on a claim against the Bankruptcy Estate and/or Debtor. Even if the allegations were true, which is denied, this is not the appropriate proceeding for this claim. Setoffs are not allowed in Bankruptcy proceedings. If Counter-Claimant has suffered any damages, which is denied, they have been self-inflicted and due to their negligence and lack of action on their part.

18.    Allegations of paragraph number eighteen (18) do not require a response. Shall any response be needed with regards of these allegations, they are denied. However, this is not the appropriate proceeding for this request.

19.    Allegations of paragraph number nineteen (19) do not require a response. Shall any response be needed with regards of these allegations, they are denied. However, this is not the appropriate proceeding for this request.

20.    Allegations of paragraph number twenty (20) do not require a response. Shall any response be needed with regards of these allegations, they are denied. However, this is not the appropriate proceeding for this request.

## AFFIRMATIVE DEFENSES

1)    The Counter-claim fails to state a claim upon which relief may be granted.

2)    The claims asserted in the Counter -claim are totally or partially time-barred.

3)    Lack of standing.

4)    Lack of privity.

5)    Estoppel and laches bar the claims asserted in the Counter -claim.

6)    Accord and satisfaction.

7)    Cross-claimants have unclean hands or are barred by their own actions and/or omissions.

8)    Cross-claimants have acted in Bad Faith.

App. Ap. pp.232

9)     Cross-claimants are pursuing inappropriate and unwarranted claims based on mistaken interpretations of the applicable contracts or lack thereof.

10)     Counter -claimant has not suffered any damages.

11)     The appearing Counter-Defendants did not incur in negligence or fault.

12)     Lack of causal relationship between the alleged damages and the alleged negligence or fault of Counter-claimant.

13)     The damages claimed in the Counter-claim are exaggerated and speculative in nature.

14)     The damages claimed in the Counter -claim are self-inflicted and are due to their negligence and/or lack of action on their part.

15)     The appearing Counter-Defendant pleads each and every applicable affirmative defense identified in Rule 8(c) of the Federal Rule of Civil Procedure, made applicable through Bankruptcy Rule 7008.

16)     The claims of the present counter-claim are not allowed under Bankruptcy Rule 7001 nor the Bankruptcy Code dispositions.  This is a pre-petition, non-dischargeable claim which should be resolved through the Bankruptcy proceeding and not through an adversary proceeding.

17)     The appearing Counter-Defendant reserves the right to supplement and/or amend this Answer to Counter-Claim and Affirmative Defenses upon completion of the discovery to be undertaken.

**WHEREFORE**, based on the foregoing, it is respectfully requested that this Honorable Court to enter a judgment dismissing the Counter-claim and granting Chapter 7 Trustee, fees and attorney's fees.

## NOTICE OF RESPONSE TIME

**WITHIN FOURTEEN (14) DAYS AFTER SERVICE AS EVIDENCED BY THE CERTIFICATION** - and an additional three (3) days pursuant to Fed. R. Bankr. P. 9006(f) if you

App. Ap. pp.233

were served by mail - any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, must serve and file an objection or other appropriate response to this paper with the Clerk's Office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is timely filed within the time allowed herein, the paper will be deemed unopposed, unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interest of justice otherwise requires. IF NO OBJECTIONS ARE TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

**CERTIFICATE OF ELECTRONIC FILING AND SERVICE:** I hereby certify that on this same date a copy of this motion has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to Monsita Lecaroz Arribas, Esq., Us Trustee's Office, to 500 Tanca St., Ochoa Building, Suite 301, San Juan, P.R. and to parties in interest.

**RESPECTFULLY SUBMITED**

In San Juan, Puerto Rico, on September 23, 2014.

**/s/ AIMEÉ LÓPEZ PABÓN**
**USDC-PR 229906**
Email: alopez@lbrglaw.com

**Latimer, Biaggi, Rachid & Godreau, LLP**
PO Box 9022512
San Juan, PR 00902-2512
Tel. (787) 724-0230
Fax (787) 724-9171

App. Ap. pp.234

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IN RE:** | |
| **JUAN CARLOS BALCELLS GALLARETA**<br>DEBTOR | **CASE NO. 11-06637 MCF** |
| | **CHAPTER 7** |
| **NOREEN WISCOVITCH RENTAS**<br>**TRUSTEE FOR THE ESTATE OF JUAN BALCELLS**<br>**GALLARETA**<br>Plaintiff | **Adv. No. 14-00137** |
| v. | |
| **AMARILIS GONZÁLEZ GARCÍA**<br>Defendant | |

### MOTION REQUESTING ENTRY OF SUMMARY JUDGMENT

TO THE HONORABLE COURT:

COMES NOW, Plaintiff, NOREEN WISCOVITCH RENTAS, in her capacity as Trustee for the Estate of Juan Carlos Balcells Gallareta, through the undersigned attorney, and very respectfully alleges, states and pray:

### PRELIMINARY STATEMENT

This instant complaint was filed to obtain Court approval for the sale of both the interest of the estate and co-owners of the property described below, with the distribution of the proceeds of the sale to be effectuated according to the percentage of ownership of the Defendant and the Bankruptcy Estate. Plaintiff hereby requests to be granted summary judgment in her favor.

### UNDISPUTED AND UNCONTESTED MATERIAL FACTS:

1) The instant complaint was filed on May 30, 2014 pursuant to 11 U.S.C. §363(h).

App. Ap. pp.235

2)    Debtor filed the instant Chapter 7 bankruptcy petition on August 5, 2011. *See Dkt 1, case #11-06637.*

3)    Defendant, Amarilis Gonzalez García, and the Bankruptcy Estate of Juan Carlos Balcells Gallareta are the owners in community property of the property described in the Registry of the Property as follows:

> -----URBANA: Solar radicado en la Urbanización Villas Reales, localizada en el Barrio Santa Rosa del término municipal de Guaynabo, Puerto Rico, que se describe en el plano de inscripción, con el número, área y colindancias que se relacionan a continuación: Número del solar: 33-E. Área del solar 375.42 metros cuadrados. En lindes: por el NORTE, en una distancia de 25.07 metros lineales, con el solar número 32 del mismo bloque; por el SUR, en una distancia de 25.00 metros lineales, con el solar 34 del mismo bloque; por el ESTE, en dos alineaciones continuas que suman según plano 15.00 metros lineales, con parcela de uso público; y por el OESTE, en una distancia de 15.00 metros lineales, con 1 acalle número 7 de la urbanización, también conocida como Calle Versalles. Enclava una casa de concreto para fines residenciales.
>
> ------The above described property is registered at page 250 of volume 1197 of Guaynabo, Property #41,852 of the Registry of the Property of Guaynabo.
>
> *See Exhibit 1.*

4)    The above described property has a valid and perfected lien, as they appear from the Registry of the Property. *See Exhibit 1.*

5)    Defendant and the Estate have a 50% of co-ownership in the above described property. *See Exhibit 1*

App. Ap. pp.236

6) Defendant, together with the Debtor in this case, are jointly liable for the outstanding secured claims due to the holder of the mortgage note and/or of any other secured and/or unsecured claims, if any. *See Exhibit 1.*

7) The partition in kind of the property between the Estate and the Defendant is impracticable. *See Exhibit 2, Unsworn Statement.*

8) The sale of the estate's undivided interest would realize significantly less for the Estate than a sale of the entire property free of the interests of such co-owner. *See Exhibit 2, Unsworn Statement.*

9) The benefits to the Estate of a sale of such property free of the interest of Defendant, outweighs the detriment, if any, to the Defendant. *See Exhibit 2, Unsworn Statement.*

10) The property involved is not used in the production, transmission, or distributions of electric energy or natural gas sold for heat, power, or light. *See Exhibit 2, Unsworn Statement.*

11) Plaintiff seeks to sell the property listed above in order to distribute the resulting proceeds to the creditors of this Estate. Plaintiff states that to obtain benefit from the sale of these real property, they must be sold as a single unit and not only the percentage of interest held by the Estate. *See Exhibit 2, Unsworn Statement.*

12) Due to the above, 50% of the net proceeds of the sale recovered by the Plaintiff shall be distributed to Defendant after all administrative expenses have been paid. *See Exhibit 2, Unsworn Statement.*

App. Ap. pp.237

## APPLICABLE LAW

### A.  STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

1.      Regarding a request of Motion for Summary Judgment, Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Emphasis added.

2.      Rule 54(b) of the Rules of Civil Procedure provides for judgment upon multiple claims or involving multiple parties as follows:

> "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

3.      In a request for summary judgment under Rule 56(c) of the Rules of Civil Procedure, a dispute is genuine if, a reasonable jury, based on the evidence, could return a verdict for the nonmoving party.  Meléndez v. Lebrón, No. 93-1009 (DRD), 1996 U.S. Dist. LEXIS 5992, at *5 (N.D. PR. Apr. 18 1996); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

4.      Party seeking summary judgment always bears initial responsibility of informing District Court of basis for its motions. Celotex Corp. v Catrett, 477 US 317, 91 L Ed 2d 265, 106 S Ct 2548 (1986).

5.      In the context of a summary judgment motion, the moving party bears the initial responsibility of informing the Court of the for its motion and of identifying those portions of the record (such as depositions, answers to interrogatories, and admissions on file) together with

App. Ap. pp.238

affidavits, if any, which the party believes demonstrate absence of genuine issues of material fact. <u>Handeen v Lemaire</u>, 112 F3d 1339 (8th Cir, 1997); <u>Stat-Tech Int'l Corp. v Delutes (In re Stat-Tech Int'l Corp.)</u>, 47 F3d 1054 (10th Cir, 1995); <u>Clouse v Comm'r</u>, 93 AFTR 2d 427 (ND Ohio, 2003).

6.    The party opposing the motion for summary judgment cannot rely on mere allegations or denials of the moving party.  On the contrary, the opposing party must be able to show by affidavits, depositions, answers, and admissions in the record that there is a genuine issue for trial.  <u>Celotex v. Catrett</u>, *supra* at 324 (1986).

7.    The opposing party does need not conclusively resolve the disputed issue.  It need only show that evidence supporting the dispute is such that a judge or jury is required to resolve the differing versions at trial.  <u>First Nat'l Bank v. Cities Service Co.</u>, 391 U.S. 253, 288-89, (1968).  "A district court may grant summary judgment only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'  Fed. R. Civ. P. 56(c)." <u>Conward v. Cambridge Sch. Comm.</u>, 171 F.3d 12, at 18 (1st Cir. 1999); <u>Mendez v. Banco Popular de Puerto Rico</u>, 900 F.2d 4 (1st Cir. 1990).

8.    FRCP 56(c) provides that a Court may enter judgment against a party without the celebration of a trial when: (1) there are no genuine issues of material facts to be resolved at trial; and (2) the uncontested facts entitle the moving party to judgment in his favor as a matter of law. <u>NASCO, Inc., vs. Public Storage, Inc.</u>, 29 F 3d 28 (1st. Circuit, 1994).

9.    As to the materiality referred to in Rule 56(c) of the Rules of Civil Procedure, the substantive law will identify which facts are material.  A fact is material if, based on the substantive law at issue, it might affect the outcome of the case.  <u>Pea v. New Puerto Rico Marine Management,</u>

App. Ap. pp.239

84 F. Supp. 2d 239, 242 (1999); <u>Mack v. Great Atl. and Pac. Tea Co., Inc.,</u> 871 F.2d 179, 181 (1st
Cir. 1989).

10.     The principal inquiry faced by a court when ruling on a motion for summary
judgment is whether a genuine issue of material facts exists. The moving party bears the burden
of establishing the absence of a genuine issue of material facts. <u>Celotex Corp. v. Catrett</u>, 477 US
317, 323 (1986). If the moving party carries out its burden, the non-moving party may only survive
summary judgment by presenting evidence in support of the existence of genuine issues of fact
that warrant the celebration of a trial. <u>Maldonado-Denis vs. Castillo Rodriguez</u>, 23 F 3d 576, 581
(1st. Circuit, 1994).

11.     In short, in order to survive summary judgment, the non-moving party must bring
forth a disputed material fact that may change the outcome of the suit under governing law.
<u>Martinez vs. Colon</u>, 54 F 3d 980,983-984 (1st. Circuit, 1990).

12.     Only disputes over facts that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary judgment. Factual disputes that are
irrelevant or unnecessary will not be determinative.  <u>Antilles Carpet, Inc. v. Milliken Design</u>, 26
F. Supp. 2d 345, 346 (1998).  Therefore, if after evaluating the record in the light most favorable
to the non-moving party, the evidence fails to yield a trial worthy issue as to some material fact, a
motion for summary judgment shall be granted.  <u>Pea</u>, *supra*, at 242; <u>Zambrana v. Suarez</u>, 172 F.3d
122,125 (1st Cir. 1999).  See also <u>Rentas v. Sallie Mae Servicing Corp. (In re Rentas)</u>, 2006 Bankr.
LEXIS 3880 (Bankr. D.P.R. 2006) (Court denied motions for summary judgment because there
was a genuine controversy as to whether creditor was notified); <u>Torres Lopez v. Consejo de
Titulares del Condominio Carolina Court Apart. (In re Torres Lopez)</u>, 2006 Bankr. LEXIS 3811

App. Ap. pp.240

(Bankr. D.P.R. 2006) (Court denied debtor's motion for summary judgment because creditor

denied the alleged conduct and thus factual issues were left to be resolved).

## B.  STANDARD FOR 11 U.S.C. §363(h)

13.     Section 363 (h) of the Bankruptcy Code states, in its pertinent part

"(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's

interest, under subsection (b) or (c) of this section, and the interest of any co-owner in

property in which the debtor had, at the time of the commencement of the case, an

undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only

if:

(1) partition in kind of such property among the estate and such co-owners is

impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly

less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners

outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale,

of electric energy or of natural or synthetic gas for heat, light, or power."

14.     Plaintiff, as the Chapter 7 Trustee, has the authority to sell this real properties

pursuant to the provisions of 11 U.S.C. §363 (f) and (h).

15.     The case of IN RE BOBONIS LANG, 191 B.R. 268 (Bankr. D.P.R.1995), clearly

states that ".... where one spouse files bankruptcy in Puerto Rico, all that debtor's property as well

as the community property becomes property of the estate by operation of § 541 (a )(2)( A) ... "

16.     IN RE BOBONIS LANG, *supra*, also concludes: " ...... the court finds that Puerto

Rico recognizes community property, thereby, 11 U.S.C. §541(a) (2) (A) applies to the

determination of property of the estate where one spouse files a bankruptcy petition. In addition,

the court finds that the requirement of a non-debtor spouse's consent prior to the disposition of

App. Ap. pp.241

community property where the other files for bankruptcy petition is preempted as it is contrary to federal bankruptcy law."

### SUMMARY JUDGMENT SHOULD BE AWARDED IN FAVOR OF PLAINTIFF

1.      Plaintiff seeks to sell the properties listed above in order to distribute some of the resulting proceeds to creditors of this Estate. The Plaintiff states that to obtain benefit from the sale of this real property, this must be sold as a single unit and not only the percentage of interest held by the Estate. *See Uncontested Facts 1-11.*

2.      The property to be sold is a real estate property that was owned by the conjugal partnership that Debtor and Defendant used to have. The proceeds of the sale of the properties will be used to pay expenses related to the sale, pay secured creditors of the property, if any. After such payments are made, shall there be any surplus of money, Defendant will be paid its share of the excess. *See Uncontested Facts 1-3.*

3.      There is no doubt that the benefit to the estate of a sale of such property free of the interests of a co-owner outweighs the detriment, if any, to such co-owner. Defendant will be benefitted by the sale of the property, since his liabilities and obligations towards creditors will be diminished and/or eliminated and he will receive some money. *See Uncontested Facts 4, 5, 6 and 10.*

4.      The continuation of this adversary proceeding is hurting the unsecured creditors since, as time passes by, they will receive less money every day. *See Uncontested Facts 7.*

5.      The Chapter 7 Trustee, as Plaintiff, purports the partition in kind of the property between the Estate and the Defendant is impracticable. *See Uncontested Facts 7-9.*

6.      The Chapter 7 Trustee, as Plaintiff, purports as well that the sale of the Bankruptcy Estate's undivided interest would realize significantly less for the Estate than a sale of the entire property free of the interests of such co-owner. *See Uncontested Facts 4-9.*

App. Ap. pp.242

**IN VIRTUE OF THE ABOVE**, it is hereby requested that this Honorable Court grant this motion and enter Su mmary Judgment as follows:

A.   Issue summary judgment allowing the Trustee to sell the property of the Estate described above, free and clear of co-ownership interest, subject to 11 U.S.C. §363 (h) (i) (j),

B.   Issue judgment allowing the Trustee to receive and distribute to creditors of the bankruptcy estate the proceeds of the sale of this property pursuant to the provisions of 11 U.S.C. §541 (a) and 11 U.S.C. §726 (c) in compliance with *In Re Bobonis, supra*.

C.   Deliver to the Defendant 50% of the surplus that may result after payment of all joint debts of the Debtor and the Defendant and the administrative expenses of the Estate.

<div align="center">

**NOTICE OF RESPONSE TIME**

</div>

**WITHIN TWENTY (20) DAYS AFTER SERVICE AS EVIDENCED BY THE CERTIFICATION** - and an additional three (3) days pursuant to Fed. R. Bankr. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, SHALL SERVE AND FILE AN OBJECTION OR OTHER APPROPIATE RESPONSE TO THIS PAPER with the Clerk's Office of the U.S. Bankruptcy Court for the District of Puerto Rico. IF NO OBJECTION OR OTHER RESPONSE IS TIMELY FILED WITHIN THE TIME ALLOWED HEREIN, THE PAPER WILL BE DEEMED UNOPPOSED AND MAY BE GRANTED, unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interest of justice otherwise requires. IF NO OBJECTIONS ARE TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

**CERTIFICATE OF ELECTRONIC FILING AND SERVICE**

App. Ap. pp.243

I hereby certify that on this same date a copy of this motion has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to Debtor's attorney, to the Chapter 7 Trustee, to the Office of the U.S. Trustee and to all CM/ECF participants; the undersigned hereby CERTIFIES that, on this same date, it will notify Defendant at Reparto Arenales, Calle# 1, Casa #21, Las Piedras, PR 00771.

**RESPECTFULLY SUBMITTED**

In San Juan, PR this 23th day of September, 2015.

>**/s/ RAFAEL A. GONZÁLEZ VALIENTE**
>**USDC-PR 225209**
>Email: rgonzalez@lbrglaw.com
>
>**/s/ AIMEÉ LÓPEZ PABÓN**
>**USDC-PR 229906**
>Email: alopez@lbrglaw.com
>
>**Latimer, Biaggi, Rachid & Godreau, LLP.**
>PO Box 9022512
>San Juan, PR 00925-2512
>Tel: (787) 724-0230
>Fax: (787) 724-9171

App. Ap. pp.244

Exhibit 1

**6000**          **ESTUDIO DE TITULO**

Caso: Lcdo. José María Castro **Alvarez** -
Re: Juan Carlos Balcells **Gallarreta** -

Finca # **41,852** inscrita al folio 250 del tomo 1197 de Guaynabo, Registro de la Propiedad de Guaynabo.

DESCRIPCION:

--- URBANA: Solar radicado en la Urbanización Villas Reales, localizado en el Barrio Santa Rosa del término municipal de Guaynabo, Puerto Rico, que se describe en el plano de inscripción de la urbanización, con el Número Treinta y tres(33) del Bloque "E", con una cabida superficial de **375.42** metros cuadrados. En lindes por el NORTE, en una distancia de 25.07 metros con el solar #32 del mismo bloque; por el SUR, en una **distancia** de 25.00 metros con el solar #34 del mismo bloque; por el ESTE, en dos alineaciones continuas que suman 15.10 metros con parcela de uso público y por el OESTE, en una distancia de 15.00 metros con la Calle #7 de la urbanización, también conocida como "Calle Versalles".
--- Enclava una casa.
--- Está afecto a servidumbre telefónica de 1.50 metros que discurre a todo lo largo de su colindancia Oeste.
--- Servidumbre en Equidad: **Franja** de terreno de 1.00 metros de ancho por 25.00 metros de largo aproximadamente, que discurre a **todo** lo largo de su colindancia Sur, para pintar, dar mantenimiento y cualquier otra reparación a **favor del** solar #34.
--- Es segregación de la finca #39,352 inscrita al folio 100 del tomo 1119 de Guaynabo.

TITULO:     ( X ) Dominio

Adquisición: - Inscrita a favor de **JUAN CARLOS BALCELLS GALLARRETA** y su esposa **AMARILIS GONZALEZ GARCIA**, quienes adquirieron por compra a Villas Reales, S.E. por precio de $189,642.00 según escritura #14 otorgada en San Juan, el 17 de diciembre de 1996, ante José Carlos González Bonilla. **Inscrita al** folio 250 del tomo 1197 de Guaynabo, finca #41,852 inscripción 1ra. y única. .

GRAVAMENES:

Por su procedencia: Servidumbres de paso a favor de fincas #29,445 y #29,448, AEE, AAA, Autoridad de Comunicaciones y a condiciones restrictivas sobre uso y edificación.

Por si está afecta a:

HIPOTECA: En garantía de un pagaré por la suma de $132,925.00 intereses al 7% anual, a favor de R&G Mortgage Corporation, o a su orden, vencedero el 1ro. de enero de 2017, según escritura #577 otorgada en San Juan, el 17 de diciembre de 1996, ante Heberto J. De Vizcarrondo Armstrong. Inscrita al folio 250 del tomo 1197 de Guaynabo, finca #41,852 inscripción 1ra. y única.

Este documento NO es una póliza de Seguros de Título, por lo cual no debe utilizarse como tal. La responsabilidad de la entidad que preparó este Estudio de Título, está limitada a la cantidad pagada por la preparación de dicho Estudio de Título. Para completa protección, deben requerir una póliza de Seguro de Título.

**REVISADOS**: Libros de Embargos Estatales, Embargos bajo Ley 12(2010), Municipales, Federales, Sentencias y Bitácora(Sistema Electrónico y Agora de la cual no nos hacemos responsables por errores u omisiones en el mismo), UD-557 UA-953(8:00 a.m.).
En San Juan, Puerto Rico a 12 de diciembre de 2011.



Luis A. Flores González
Apartado Postal 3973
San Juan, Puerto Rico 00904
795-1561 645-4980 758-3606
Fax 753-5317
E-mail tilinestudios@yahoo.com

LAFG/gip/guay/tyl/11
Costo: $60.00

Exhibit 2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | |
| | |
| **JUAN CARLOS BALCELLS GALLARETA** | **CASE NO. 11-06637 MCF** |
| DEBTOR | |
| | **CHAPTER 7** |
| | |
| | **Adv. No. 14-00137** |
| **NOREEN WISCOVITCH RENTAS** | |
| **TRUSTEE FOR THE ESTATE OF JUAN BALCELLS** | |
| **GALLARETA** | |
| Plaintiff | |
| | |
| v. | |
| | |
| **AMARILIS GONZÁLEZ GARCÍA** | |
| Defendant | |

### UNSWORN DECLARATION UNDER PENALTY OF PERJURY
### IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT

I, **NOREEN WISCOVITCH-RENTAS** of legal age, married, an attorney and resident of West Palm Beach, Florida of  hereby state under penalty of perjury that:

1.      My personal circumstances are as set forth above. I am the Chapter 7 Trustee for the Bankruptcy Estate of Juan Carlos Balcells Gallareta.

2.      The Estate filed a Complaint for approval of sale of property of estate and of a co-owner pursuant to 11 USC §363(h) against Amarilis Gonzalez Garcia, Defendant.

3.      The partition in kind of the property, object of this adversary proceeding, between the Estate and the Defendant is impracticable.

4.      The sale of the estate's undivided interest would realize significantly less for the Estate than a sale of the entire property free of the interests of such co-owner.

App. Ap. pp.246

5.      The benefits to the Estate of a sale of such property free of the interest of Defendant, outweighs the detriment, if any, to the Defendant.

6.      The property involved is not used in the production, transmission, or distributions of electric energy or natural gas sold for heat, power, or light.

7.      I seek to sell the property, object of this adversary proceeding, to distribute the resulting proceeds to the creditors of this Estate. To benefit the Estate from the sale of the property, it must be sold as a single unit and not only the percentage of interest held by the Estate.

8.      Due to the co-ownership of the property, 50% of the net proceeds of the sale recovered shall be distributed to Defendant after all administrative and joint creditors have been paid in full.

I declare under penalty of perjury that the foregoing is true and correct.

In San Juan, Puerto Rico, this 22nd of September of 2015.

NOREEN WISCOVITCH-RENTAS, ESQ.

Chapter 7 Trustee for the Bankruptcy
Estate of Juan Carlos Balcells

2

App. Ap. pp.247

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IN RE:** | **CASE NO. 11-06637 MCF** |
| **JUAN CARLOS BALCELLS GALLARETA**<br>DEBTOR | **CHAPTER 7** |
| | **Adv. No. 14-00137** |
| **NOREEN WISCOVITCH RENTAS**<br>**TRUSTEE FOR THE ESTATE OF JUAN BALCELLS**<br>**GALLARETA**<br>Plaintiff | |
| v. | |
| **AMARILIS GONZÁLEZ GARCÍA**<br>Defendant | |

### REPLY TO DEFENDANT'S OBJECTION TO MOTION FOR SUMMARY JUDGMENT

### TO THE HONORABLE COURT:

**COMES NOW**, NOREEN WISCOVITCH RENTAS, TRUSTEE OF THE CHAPTER 7 BANKRUPTCY JUAN CARLOS BALCELLS, represented by its undersigned attorney and to this Honorable Court very respectfully states and prays that:

### PRELIMINARY COUNTER-STATEMENT

The instant complaint was filed to request the approval of sale of property of the Bankruptcy Estate and a co-owner, Defendant, pursuant 11 USC 363(h).

As the evidence included on the request for summary judgment shows, Defendant and Debtor are the co-owners of the property subject of this complaint.

Plaintiff has requested a summary judgment and provided the evidence that the facts of the instant case comply with the requirements of section 363 (h). In return, Defendant filed an objection

to the request for summary judgment including a series of irrelevant and facts and evidence that do not present a valid defense on a 363h cause of action.

## INTRODUCTION

1.      The instant complaint was filed on May 30, 2014, for the approval of sale of property of the Estate. *Dkt. 1.*

2.      On September 23, 2015, Plaintiff filed a motion requesting summary judgment. *Dkt. 45.*

3.      On October 13, 2015, Defendant filed an objection to Plaintiff´s request for summary judgment. *Dkt. 48.*

## DISCUSSION OF ALLEGATIONS

The aforementioned objection alleges, in essence, that there are controversies related to material facts by bringing irrelevant and false facts to the instant complaint and including inadmissible documents, pursuant Federal Rule of Evidence 401 and 408, to erroneously conclude that Plaintiff has not proved that a summary judgment should be awarded on her favor.

Regarding Defendant's alleged facts in controversy, Plaintiff states:

1)      Allegations of paragraph number one (1), and any evidence related to this allegation, are objected due to the irrelevance to the instant case. The value of the property is not a material fact while considering Trustee's request for the approval of sale. Furthermore, a valuation of the property from an individual party was submitted to Defendant along with the production of documents and answers to interrogatory.

2)      Allegations of paragraph number two (2) are denied. There is no controversy regarding the interest of the Debtor on the property subject of the instant adversary proceeding. Any allegations that the interest of Debtor and/or the Bankruptcy Estate over the property is not the 50% must be proved. Defendant has not presented a shred of evidence of that allegation.

Defendant alleges that has a claim against Debtor, which must be presented at the bankruptcy proceeding, not the instant adversary proceeding, through a proof of claim. 11 U.S.C. §501. Furthermore, any monetary claim that Defendant might have against Debtor does not affect the participation of the parties over the value of the property. As stated on the complaint and request for summary judgment, and title study (*included as Exhibit 1 of Dkt. 45*), the property was obtained by Debtor and Defendant while they were married. Article 327 of the Civil Code provides that the share of the participants in the benefits as well as in the charges, shall be proportioned to their respective shares. P.R. Laws Ann. tit. 31, § 1272. In the case of an ordinary community created upon the termination of a conjugal partnership, each ex-spouse, now co-member, owns a 50% share of the community. P.R. Laws Ann. tit. 31, § 3697.

3)      Allegations of paragraph number three (3), and any evidence related to this allegation, are objected due to the irrelevance to the instant case. Any allegations related to fraudulent transfers, whether true or false, are not related to an 11 USC §363(h) cause of action. Even if such allegations were true, which is denied, Defendant has failed to provide a single shred of evidence to sustain such false allegations. If the US Trustee had concluded that at the Bankruptcy Case #11-06637, an adversary proceeding, pursuant 11 USC §548, and/or a criminal accusation would have been filed.

4)      Allegations of paragraph number four (4) are denied. Any of Defendant's allegation related to the benefit to the Bankruptcy Estate is, at best, speculative at this point. Furthermore, Defendant has not provided evidence of such allegation.

5)      Allegations of paragraph number five (5) are denied. It is stated that the eldest **daughter** between Debtor and Defendant **is 21 years old** (born on 1994), that is, an adult under Puerto Rico statutes, and their youngest **son is 19 years old** (born on 1996). *See Bankruptcy Case #11-06637, Dkt. 1, page 33.* Defendant has failed to provide any evidence that the eldest daughter still has a right to homestead and/or any evidence of what harm would cause, if any,

to the **19 year old** "child". Furthermore, any of Defendant's allegations related to the "children" must be considered as deceitful and with the intent to lead to error, since one of the "children" is **21 years old**, which is considered an adult, and the son is **2 years away from being considered an adult**. *31 L.P.R.A. sec. 971*.

6)      Allegations of paragraph number six (6) are denied. Plaintiff has made the efforts of reaching an agreement with Defendant. However, Defendant has not made an offer that would bring a real benefit to the Bankruptcy Estate. See Dkt. 44, 46, where Defendant offers to pay $10,000 and later 30,000 for the property.

7)      Allegations of paragraph number seven (7), and any evidence related to this allegation, are objected due to the irrelevance to the instant case. Offers to purchase a property are not one of the conditions that are required to be proved for the authorization of sale, pursuant 11 USC §363(h). *In re Hursa (1988, BC DC NJ) 87 BR 313, CCH Bankr L Rptr P 72331*.

8)      Allegations of paragraph number eight (8), and any evidence related to this allegation, are objected due to the irrelevance to the instant case. Any allegations related to fraud, whether true or false, are not related to the instant case or an 11 USC §363(h) cause of action. Even if such allegations were true, which is denied, Defendant has failed to provide a single shred of evidence to sustain such false allegations. If the US Trustee had concluded that at the Bankruptcy Case #11-06637, an adversary proceeding, pursuant 11 USC §548, and/or criminal accusations, would have been filed.

9)      Allegations of paragraph number nine (9) are denied. The participation of the real estate property subject of the instant case has been divided in 50%, the Estate Court even ordered both Debtor and Defendant to continue making the payments of the mortgage, and Defendant has not complied with the order.

10)     Allegations of paragraph number ten (10), and any evidence related to this allegation, are objected due to the irrelevance to the instant case. Any allegations related to fraud, whether true or false, are not related to the instant case or an 11 USC §363(h) cause of action. Even if such allegations were true, which is denied, Defendant has failed to provide a single shred of evidence to sustain such false allegations. If the US Trustee had concluded that at the Bankruptcy Case #11-06637, an adversary proceeding, pursuant 11 USC §548, and/or any criminal accusations would have been filed.

11)     Allegations of paragraph number eleven (11) are denied. Plaintiff has complied with the requirements to obtain the approval of sale, pursuant 11 USC §363(h). *In re Hursa (1988, BC DC NJ) 87 BR 313, CCH Bankr L Rptr P 72331.*

In addition, Defendant alleges a series of additional facts. Regarding the additional facts, Plaintiff states:

1)     Allegations of paragraph number one (1), two (2), three (3), four (4) are admitted.

2)     Allegations of paragraph number five (5), and any evidence related to this allegation, are objected due to the irrelevance to the instant case. This allegation, whether true or false, is not related to the instant case or an 11 USC §363(h) cause of action.

3)     Allegations of paragraph number six (6), and any evidence related to this allegation, are objected due to the irrelevance to the instant case. This allegation, whether true or false, is not related to the instant case or an 11 USC §363(h) cause of action.

4)     Allegations of paragraph number seven (7) are admitted. It is stated that the eldest **daughter** between Debtor and Defendant **is 21 years old** (born on 1994), that is, an adult under Puerto Rico statutes, and their youngest **son is 19 years old** (born on 1996). *See Bankruptcy Case #11-06637, Dkt. 1, page 33*. Defendant has failed to provide any evidence

that the eldest daughter still has a right to homestead and/or any evidence of what harm would cause, if any, to the **19 year old** "child". Furthermore, any of Defendant's allegations related to the "children" must be considered as deceitful and with the intent to lead to error, since one of the "children" is **21 years old**, which is considered an adult, and the son is **2 years away from being considered an adult**. *31 L.P.R.A. sec. 971.*

5)    Allegations of paragraph number eight (8) are denied. Even if the real estate property subject of the instant case was a part of the post marital community, which is denied, Plaintiff would still have a right to sell the property, since it would still be considered property of the Estate, pursuant 11 USC §541. However, if this was the case, it would not have been necessary the instant adversary proceeding, since the Bankruptcy Estate immediately comprised all nonexempt property, including any "unpartitioned post-marital community property". In re Brassett, 332 B.R. at 754–755; In re Robertson, 203 F.3d at 861–862; In re Pérez León, 2013 WL 5232331.[1]

6)    Allegations of paragraph number nine (9), and any evidence related to this allegation, are objected due to the irrelevance to the instant case. This allegation, whether true or false, is not related to the instant case or an 11 USC §363(h) cause of action.

7)    Allegations of paragraph number ten (10) are admitted.

8)    Allegations of paragraph number eleven (11), twelve (12), thirteen (13), fourteen (14), fifteen (15),  and any evidence related to this allegation, are objected due to the irrelevance to the instant case. This allegation, whether true or false, is not related to the instant case or an 11 USC §363(h) cause of action.

---

[1] Chapter 7 trustees must take possession of the non-exempt assets of the estate and to administer them for the benefit of creditors. *See* 11 U.S.C. § 704(a)(1); *Commodity Futures Trading Com'n v. Weintraub,* 471 U.S. 343, 352 (1985).
 "Once the [bankruptcy] petition [is] filed, only the trustee has the authority to use, sell or lease property of the estate pursuant to 11 U.S.C. § 363". "The Trustee's rights and duties to collect and reduce to money the property of the estate under § 704 are exclusive rights and may not be asserted by the creditors." *In re Gurley,* 357 B .R. 868, 877 (Bankr.M.D.Fla.2006).

App. Ap. pp.253

9)    Allegations of paragraph number sixteen (16) are denied for lack of knowledge.

10)    Allegations of paragraph number seventeen (17), eighteen (18), nineteen (19), twenty (20), twenty one (21), twenty two (22), and any evidence related to this allegation, are objected due to the irrelevance to the instant case. This allegation, whether true or false, is not related to the instant case or an 11 USC §363(h) cause of action.

11)    Allegations of paragraph number twenty three (23), and any evidence related to this allegation, are objected due to inadmissibility of the allegations. Pursuant Rule of Evidence 408 any evidence related to compromise offers and/or any transactional negotiations are inadmissible.

12)    Allegations of paragraph number twenty-four (24) and any evidence related to this allegation, are objected due to the irrelevance to the instant case. This allegation, whether true or false, is not related to the instant case or an 11 USC §363(h) cause of action.

13)    Allegations of paragraph number twenty-five (25), and any evidence related to this allegation, are objected due to the irrelevance to the instant case. This allegation, whether true or false, is not related to the instant case or an 11 USC §363(h) cause of action.

14)    Allegations of paragraph number twenty-six (26), twenty seven (27), twenty eight (28), and any evidence related to this allegation, are objected due to inadmissibility of the allegations. Pursuant Rule of Evidence 408 any evidence related to compromise offers and/or any transactional negotiations are inadmissible.

15)    Allegations of paragraph number twenty nine (29), thirty (30), thirty one (31), thirty two (32), and any evidence related to this allegation, are objected due to the irrelevance to the instant case. This allegation, whether true or false, is not related to the instant case or an 11 USC §363(h) cause of action.

Finally, Defendant alleges a series of material facts that are in dispute. Regarding these facts, Plaintiff states:

1)      Allegations of paragraph number one (1) are denied. There is no controversy regarding the interest of the Debtor on the property subject of the instant adversary proceeding. Any allegations that the interest of Debtor and/or the Bankruptcy Estate over the property is not the 50% must be proved. Defendant has not presented a shred of evidence of that allegation. Defendant alleges that has a claim against Debtor, which must be presented at the bankruptcy proceeding, not the instant adversary proceeding, through a proof of claim. 11 U.S.C. §501. Furthermore, any monetary claim that Defendant might have against Debtor does not affect the participation of the parties over the value of the property. As stated on the complaint and request for summary judgment, and title study (*included as Exhibit 1 of Dkt. 45*), the property was obtained by Debtor and Defendant while they were married. Article 327 of the Civil Code provides that the share of the participants in the benefits as well as in the charges, shall be proportioned to their respective shares. P.R. Laws Ann. tit. 31, § 1272. In the case of an ordinary community created upon the termination of a conjugal partnership, each ex-spouse, now co-member, owns a 50% share of the community. P.R. Laws Ann. tit. 31, § 3697.

2)      Allegations of paragraph number two (2), three (3), and any evidence related to this allegation, are objected due to the irrelevance to the instant case. Plaintiff has made no allegations regarding the value of the property since it is not an element that must be evaluated to allow the sale of the property, pursuant an 11 USC §363(h) cause of action. *In re Hursa (1988, BC DC NJ) 87 BR 313, CCH Bankr L Rptr P 72331*. Any allegations related to the value of the property are, at best, premature, since this aspect is only considered once the sale of the property has been approved.

3)      Allegations of paragraph number four (4) are denied. As a co-owner of the property, Defendant will receive the proceeds of sale according to her interest, and as allowed

by the Bankruptcy Code and/or any other applicable statute. *Coan v Bernier (In re Bernier)
(1995, BC DC Conn) 176 BR 976, CCH Bankr L Rptr P 76373, 32 OGR 1747.*

    4)    Allegations of paragraph number five (5) are denied. There is no controversy
regarding the interest of the Debtor on the property subject of the instant adversary proceeding.
Any allegations that the interest of Debtor and/or the Bankruptcy Estate over the property is
not the 50% must be proved. Defendant has not presented a shred of evidence of that allegation.
Defendant alleges that has a claim against Debtor, which must be presented at the bankruptcy
proceeding, not the instant adversary proceeding, through a proof of claim. 11 U.S.C. §501.
Furthermore, any monetary claim that Defendant might have against Debtor does not affect the
participation of the parties over the value of the property. As stated on the complaint and
request for summary judgment, and title study (*included as Exhibit 1 of Dkt. 45*), the property
was obtained by Debtor and Defendant while they were married. Article 327 of the Civil Code
provides that the share of the participants in the benefits as well as in the charges, shall be
proportioned to their respective shares. P.R. Laws Ann. tit. 31, § 1272. In the case of an
ordinary community created upon the termination of a conjugal partnership, each ex-spouse,
now co-member, owns a 50% share of the community. P.R. Laws Ann. tit. 31, § 3697.

    If the real estate property subject of the instant case was a part of the post marital
community, which is denied, Plaintiff would still have a right to sell the property, since it would
still be considered property of the Estate, pursuant 11 USC §541. However, if this was the case,
it would not have been necessary the instant adversary proceeding, since the Bankruptcy Estate
immediately comprised all nonexempt property, including any "unpartitioned post-marital
community property". In re Brassett, 332 B.R. at 754–755; In re Robertson, 203 F.3d at 861–
862; In re Pérez León, 2013 WL 5232331.[2]

---

[2] Chapter 7 trustees must take possession of the non-exempt assets of the estate and to administer them for the
benefit of creditors. *See* 11 U.S.C. § 704(a)(1); *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 352
(1985).

Any allegations related to fraudulent transfers, whether true or false, are not related to an 11 USC §363(h) cause of action, and are objected. Even if such allegations were true, which is denied, Defendant has failed to provide a single shred of evidence to sustain such false allegations. If the US Trustee had concluded that at the Bankruptcy Case #11-06637, an adversary proceeding, pursuant 11 USC §548, and/or a criminal accusation would have been filed.

5)      Allegations of paragraph number six (6) are denied. Any of Defendant's allegation related to the benefit to the Bankruptcy Estate is, at best, speculative at this point. There is no controversy regarding the interest of the Debtor on the property subject of the instant adversary proceeding. Any allegations that the interest of Debtor and/or the Bankruptcy Estate over the property is not the 50% must be proved. Furthermore, Defendant has not provided evidence of such allegations.

12)      Allegations of paragraph number seven (7), and any evidence related to this allegation, are objected due to the irrelevance to the instant case. Any allegations related to fraud, whether true or false, are not related to the instant case or an 11 USC §363(h) cause of action. Even if such allegations were true, which is denied, Defendant has failed to provide a single shred of evidence to sustain such false allegations. If the US Trustee had concluded that at the Bankruptcy Case #11-06637, an adversary proceeding, pursuant 11 USC §548, and/or criminal accusations, would have been filed.

6)      Allegations of paragraph number eight (8) are denied. It is stated that the eldest **daughter** between Debtor and Defendant **is 21 years old** (born on 1994), that is, an adult under Puerto Rico statutes, and their youngest **son is 19 years old** (born on 1996). *See Bankruptcy*

---

"Once the [bankruptcy] petition [is] filed, only the trustee has the authority to use, sell or lease property of the estate pursuant to 11 U.S.C. § 363." "The Trustee's rights and duties to collect and reduce to money the property of the estate under § 704 are exclusive rights and may not be asserted by the creditors." *In re Gurley*, 357 B .R. 868, 877 (Bankr.M.D.Fla.2006).

*Case #11-06637, Dkt. 1, page 33.* Defendant has failed to provide any evidence that the eldest daughter still has a right to homestead and/or any evidence of what harm would cause, if any, to the **19 year old** "child". Furthermore, any of Defendant's allegations related to the "children" must be considered as deceitful and with the intent to lead to error, since one of the "children" is **21 years old**, which is considered an adult, and the son is **2 years away from being considered an adult**. *31 L.P.R.A. sec. 971.*

<div align="center">

**APPLICABLE LAW**

**A.   STANDARD FOR A MOTION FOR SUMMARY JUDGMENT**

</div>

1.      The standard for summary judgment was presented at both, Plaintiff's request for summary judgment and Defendant's opposition, pursuant to Fed. R. Civ. P. 56 and Federal Rule of Bankruptcy Proceeding 7056. The summary judgment is available if the pleadings and the presented evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

2.      Pursuant to Fed. R. Civ. P. 56 and Federal Rule of Bankruptcy Proceeding 7056, a party moving for summary judgment is required to file, annexed to its motion, a separate, short, and concise statement of the material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried, supported by a record citation. The Rule 56(c) then requires the nonmoving party to submit with its opposition a separate, short, and concise statement of material facts, admitting, denying, or qualifying the facts by reference to each numbered paragraph with references to the record. Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by Rule 56, shall be deemed admitted unless properly controverted.

3.      Defendant, as the party opposing the motion for summary judgment, cannot rely on mere allegations or denials of the moving party.  On the contrary, the opposing party must be able to

show by affidavits, depositions, answers, and admissions in the record that there is a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

4.      The court may safely ignore conclusory allegations, improbable inferences, and unsupported speculation. However, there is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be). *Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)*

5.      There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) . . . ." *Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987)*.

## Application to the facts

6.      Plaintiff provided the statement of facts and supporting evidence that prove there is no controversy on the materials facts of the instant case, and that the requirements for granting the approval of sale of property of the Bankruptcy Estate are met. *See Dkt. 45.*

7.      Defendant, as the opposing party, presented a series of alleged contested facts that are false, irrelevant, inadmissible, and/or are not supported by evidence.

8.      Moreover, Defendant failed to respond to the Plaintiff's statement of facts, as required by Fed. R. Civ. P. 56(c).

9.      Consequently, Plaintiff's statement of facts must be deemed admitted by Defendant and the request for summary judgment must be granted.

## B.  STANDARD FOR 11 U.S.C. § 363 (h)

10.      The instant case is brought before this Honorable Court pursuant 11 USC 363h for the approval of sale of property of Debtor's Bankruptcy Estate.

11.    The 11 USC 363 (h) states that:

"… the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if--

(a)  partition in kind of such property among the estate and such co-owners is impracticable;

(b)  sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(c)  the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(d) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power."

12.    11 USCS § 363(h) permits sale of property which is jointly owned without regard to consent or applicable nonbankruptcy law.  *In re Murray* *(1983, BC ED Pa) 31 BR 499.*

13.    "The decision to treat a non-debtor spouse's interest in community property as property of a debtor's bankruptcy estate under 11 U.S.C.S. § 541, rather than as property jointly owned with a non-debtor under 11 U.S.C.S. § 363(h), which offers more protections to the non-debtor, was not a legislative oversight. In § 363(i), Congress allowed a "first right of refusal" to co-owners <u>when property is sold under § 363(h)</u>, and also allowed such a first right of refusal to a non-debtor spouse with respect to community property that is property of the estate. If Congress had intended for the four requirements of § 363(h) to apply to community property, it could have included the spouse's interest in community property in § 363(h), as it did in § 363(i). " *Vélez v. Pérez León, 2013 Bankr. LEXIS 3859; 2013 WL 5232331.*

### Application to the facts

14.    At the instant adversary proceeding, Plaintiff seeks to sell the property, which was owned by the conjugal partnership that Debtor and Defendant used to have, in order to distribute some of the resulting proceeds to creditors of this Estate.

15.     Plaintiff has proved that the instant case, the requirements, pursuant 11 USCS § 363(h), previously exposed, are met.

16.     There is no doubt that the benefit to the estate of a sale of such property free of the interests of a co-owner outweighs the detriment, if any, to such co-owner. Defendant will be benefitted by the sale of the property, since his liabilities and obligations towards creditors will be diminished and/or eliminated and he will receive some money.

17.     The continuation of this adversary proceeding is hurting the unsecured creditors, including Defendant, since, as time passes by, they will receive less money every day.

18.     The Chapter 7 Trustee, as Plaintiff, purports the partition in kind of the property between the Estate and the Defendant is impracticable.

19.     Even if Defendant has a first right of refusal. That right is exercised when the property is being sold, pursuant 11 USC §363(h), not before such sale is even authorized.

**C. The property**

20.      As Section 541 of the Bankruptcy Code states:

> "**(a)** The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, **wherever located and by whomever held**:
> > **(1)** Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
> > **(2)** All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—
> > > **(A)** under the sole, equal, or joint management and control of the debtor; or
> > > **(B)** liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable."

21.    All of the assets of a spouse, as well as the community property, becomes property of a bankruptcy estate under Puerto Rico Law. [3] In re Lang, 191 B.R. 268 (Bankr. D.P.R. 1995), citing Bankr.Code, 11 U.S.C.A. § 541(a)(2)(A); 31 L.P.R.A. §§ 284, 286, 3621, 3622, 3631, 3641, 3647.

22.    Unless case involves joint debtors, only 1 homestead exemption may be claimed under 11 USCS § 522(d)(2) and upon sale of property, full value of her interest will be paid to her, after outstanding mortgage is satisfied.

### Application to the facts

23.    At the instant case, Debtor had a 50% undivided interest in the property and as such, it became part of the Bankruptcy Estate, subject to the provisions of the Bankruptcy Code.

24.    By allowing Defendant to claim the homestead as an exemption, would allow two exemptions, where only one, pursuant 11 USCS § 522(d)(2) is allowed.

### D.  OBJECTION OF FACTS AND EVIDENCE PRESENTED

25. Rule 401 of Federal Evidence estates that:

> "Evidence is relevant if:
> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
> (b) the fact is of consequence in determining the action."

26. Rule 408 of Federal Evidence estates that:

> "Compromise Offers and Negotiations
>
> (a) Prohibited Uses. Evidence of the following is not admissible — on behalf of
>
> any party — either to prove or disprove the validity or amount of a disputed claim
>
> or to impeach by a prior inconsistent statement or a contradiction:

---

[3] "In Puerto Rico, upon marriage, a new entity is created, which commences on the day of marriage and will own property acquired for a valuable consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of the spouses only; that obtained by the industry, salaries, or work of the spouses or of either of them; the fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses." In re Padilla, 2011 Bankr.LEXIS 4662 at * *10–11, 2011 WL 5911243 at *4 (Bankr.D.P.R.2011), citing Articles 1296 and 1401 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 3622 and 3641, and Fernández–Cerra v. Commercial Insurance Co. of Newark, 344 F.Supp. 314, 316 (D.P.R.1972).

(1) furnishing, promising, or offering — or accepting, promising to accept,

or offering to accept — a valuable consideration in compromising or

attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the

claim — except when offered in a criminal case and when the negotiations

related to a claim by a public office in the exercise of its regulatory,

investigative, or enforcement authority.

(b) Exceptions. The court may admit this evidence for another purpose, such as

proving a witness's bias or prejudice, negating a contention of undue delay, or

proving an effort to obstruct a criminal investigation or prosecution.

### Application to the facts

27.    Defendant has not provided evidence a single shred of evidence to support such

allegations of fraudulent transfers and concealment of assets. Even if such allegations were true, which

is denied, a 363(h) adversary complaint is not the appropriate proceeding for this claim. Therefore, any

allegations related to fraudulent transfers or concealment of assets are irrelevant to the instant case.

28.    Therefore, any allegations of fraudulent transfers and concealment of assets are not a

valid defense for the approval of sale of the property.

29.    Any evidence and or allegation related to any proceeding at the family court and/or

related to any of the aspects that this Honorable Court needs to review to authorize the sale of the

property, are irrelevant to the instant case.

### CONCLUSION

30.    Plaintiff has submitted to this Honorable Court the evidence in support of the request

for approval of sale of the property of the Estate.

31.    It is Defendant´s burden, as an opposing party, to prove with evidence that there are

material facts to an 11 USC §363(h) adversary proceeding that deserve a trial.

App. Ap. pp.263

32.     On its opposition, Defendant not only failed to oppose Plaintiff´s statement of facts, but also failed to provide any evidence of a material fact controversy that would justify a trial and/or the denial of Plaintiff´s request.

33.     The only controversies that Defendant presented were facts that are either irrelevant to the instant case, pursuant Rule 401 of Federal Evidence, or inadmissible, pursuant Rule 408 of Federal Evidence.

**WHEREFORE**, it is hereby respectfully requested that an Order be entered deeming Plaintiff's statement of facts as admitted, GRANTING Plaintiff's Motion for Summary Judgment, and enter a Judgment in its favor.

### NOTICE OF RESPONSE TIME

**WITHIN FOURTEEN (14) DAYS AFTER SERVICE AS EVIDENCED BY THE CERTIFICATION** - and an additional three (3) days pursuant to Fed. R. Bankr. P. 9006(f) if you were served by mail - any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, must serve and file an objection or other appropriate response to this paper with the Clerk's Office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is timely filed within the time allowed herein, the paper will be deemed unopposed, unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interest of justice otherwise requires. IF NO OBJECTIONS ARE TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the Assistant US Trustee at the US Trustee's Office, Ochoa Building, 500 Tanca Street, Suite 301, San Juan, Puerto Rico 00901 and all parties in interest.


**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on December 4, 2015.

**/s/ RAFAEL A. GONZÁLEZ VALIENTE**
**USDC-PR 225209**
Email: rgonzalez@lbrglaw.com

**/s/ AIMEÉ LÓPEZ PABÓN**
**USDC-PR 229906**
Email: alopez@lbrglaw.com

**Latimer, Biaggi, Rachid & Godreau, LLP**
PO Box 9022512
San Juan, PR 00902-2512
Tel. (787) 724-0230
Fax (787) 724-9171

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE:

**JUAN CARLOS BALCELLS GALLARETA**
DEBTOR

**NOREEN WISCOVITCH RENTAS**
**TRUSTEE FOR THE ESTATE OF JUAN BALCELLS**
**GALLARETA**
Plaintiff

v.

**AMARILIS GONZÁLEZ GARCÍA**
Defendant

**CASE NO. 11-06637 MCF**

**CHAPTER 7**

**Adv. No. 14-00137**

## MOTION IN COMPLIANCE WITH ORDER
### TO THE HONORABLE COURT:

**Comes Now**, Plaintiff, NOREEN WISCOVITH RENTAS, in her capacity as Trustee for the Estate of Juan Balcells Gallareta, through the undersigned attorney, and very respectfully to this Honorable Court alleges, shows, states and requests relief as follows:

1.      On August 19, 2016, this Honorable Court ordered Plaintiff to show cause on why the Court should not enter judgment in Defendant's favor. *Dkt. 74.*

2.      In compliance with said Order, Plaintiff has prepared an amended request for summary judgment with supporting documents produced by Debtor, through his legal counsel, Attorney Morales.

3.      However, Debtor's counsel has informed that there are additional documents that have not been produced.

4.      Therefore, Plaintiff hereby requests a term of 14 days to file an amended request for summary judgment with the documents in support thereof.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to take notice of the aforementioned; to deem Plaintiff in compliance with the Order issued on August 19, 2016 (*Dkt. 74*), to grant the term of fourteen (14), and any further relief as may be just and proper.

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the Assistant US Trustee at the US Trustee's Office, Ochoa Building, 500 Tanca Street, Suite 301, San Juan, Puerto Rico 00901 and all parties in interest.

**RESPECTFULLY SUBMITTED.**

In San Juan, PR this September 9, 2016.

**/s/ AIMEÉ LÓPEZ PABÓN**
**USDC-PR 229906**
Email: al@g-glawpr.com

**Godreau & Gonzalez, LLC**
PO Box 9024176
San Juan, PR 00902-4176
Tel. (787) 726-0077

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE:

**JUAN CARLOS BALCELLS GALLARETA**
DEBTOR

**CASE NO. 11-06637 MCF**

**CHAPTER 7**

**NOREEN WISCOVITCH RENTAS**
**TRUSTEE FOR THE ESTATE OF JUAN BALCELLS GALLARETA**
Plaintiff

Adv. No. 14-00137

v.

**AMARILIS GONZÁLEZ GARCÍA**
Defendant

## MOTION REQUESTING ENTRY OF SUMMARY JUDGMENT

TO THE HONORABLE COURT:

COMES NOW, Plaintiff, NOREEN WISCOVITCH RENTAS, in her capacity as Trustee for the Estate of Juan Carlos Balcells Gallareta, through the undersigned attorney, and very respectfully alleges, states and pray:

### PRELIMINARY STATEMENT

This instant complaint was filed to obtain Court approval for the sale of both the interest of the estate and co-owners of the property described below, with the distribution of the proceeds of the sale to be effectuated according to the percentage of ownership of the Defendant and the Bankruptcy Estate. Plaintiff hereby requests to be granted summary judgment in her favor.

### UNDISPUTED AND UNCONTESTED MATERIAL FACTS:

1) Juan Carlos Balcells Gallareta, Debtor, and Defendant were married and formed a conjugal partnership. *See Exhibit 1, 3, 4.*

2)    Debtor and Defendant filed for divorce at the First Instance Court of Bayamon, *Case #DDI2006-4055. See Exhibit 3, 4.*

3)    During their marriage, Debtor and Defendant obtained the property described in the Registry of the Property as follows:

> -----URBANA: Solar radicado en la Urbanización Villas Reales, localizada en el Barrio Santa Rosa del término municipal de Guaynabo, Puerto Rico, que se describe en el plano de inscripción, con el número, área y colindancias que se relacionan a continuación: Número del solar: 33-E. Área del solar 375.42 metros cuadrados. En lindes: por el NORTE, en una distancia de 25.07 metros lineales, con el solar número 32 del mismo bloque; por el SUR, en una distancia de 25.00 metros lineales, con el solar 34 del mismo bloque; por el ESTE, en dos alineaciones continuas que suman según plano 15.00 metros lineales, con parcela de uso público; y por el OESTE, en una distancia de 15.00 metros lineales, con l acalle número 7 de la urbanización, también conocida como Calle Versalles. Enclava una casa de concreto para fines residenciales.
>
> ------The above described property is registered at page 250 of volume 1197 of Guaynabo, Property #41,852 of the Registry of the Property of Guaynabo.
>
> *See Exhibit 1.*

4)    The above described property has a valid and perfected mortgage lien in favor of Banco Popular, as they appear from the Registry of the Property. *See Exhibit 1.*

5)    Defendant, together with the Debtor in this case, are jointly liable for the outstanding secured claims due to the holder of the mortgage note and/or any other secured and/or unsecured claims, if any. *See Exhibit 1.*

6)   The Court of Bayamon granted Debtor's and Defendant's divorce, but did not divide or adjudicate the assets of the community property, including the aforementioned property. *See Exhibit 3.*

7)   The Court of Bayamon did order both, Debtor and Defendant, to pay in equal amounts the mortgage in favor of Banco Popular. *See Exhibit 3, 4.*

8)   On August 5, 2011, Debtor filed the instant Chapter 7 bankruptcy petition. *See Dkt 1, case #11-06637.*

9)   On May 30, 2014, Plaintiff filed the instant complaint, pursuant to 11 U.S.C. §363(h). *See Dkt. 1.*

10)  The partition in kind of the property between the Estate and the Defendant is impracticable. *See Exhibit 2, Unsworn Statement.*

11)  The sale of the estate's undivided interest would realize significantly less for the Estate than a sale of the entire property free of the interests of such co-owner. *See Exhibit 2, Unsworn Statement.*

12)  The benefits to the Estate of a sale of such property free of the interest of Defendant, outweighs the detriment, if any, to the Defendant. *See Exhibit 2, Unsworn Statement.*

13)  The property involved is not used in the production, transmission, or distributions of electric energy or natural gas sold for heat, power, or light. *See Exhibit 2, Unsworn Statement.*

14)  Plaintiff seeks to sell the property listed above in order to distribute the resulting proceeds to the creditors of this Estate. Plaintiff states that to obtain benefit

App. Ap. pp.270

from the sale of this real property, it must be sold as a single unit and not only
the percentage of interest held by the Estate. *See Exhibit 2, Unsworn Statement.*

15) Defendant has failed to make the mortgage payments in compliance with the
order issued by the Bayamon Court. *See Exhibit 3, 4, 5, 6.*

16) On July 10, 2015, Banco Popular requested the relief from the automatic stay of
the above described property. *See Dkt. 111, case #11-06637, Exhibit 6.*

17) At the hearing held on August 4, 2015, Banco Popular was informed that the
mortgage payments from Debtor had consigned at the Bayamon Court. Banco
Popular withdrew their request for relief from stay. *See Dkt. 121, case #11-
06637.*

18) Defendant has continued to fail to make the mortgage payments. *See Exhibit 3,
4, 5.*

19) Banco Popular filed a foreclosure proceeding at the First Instance Court of
Guaynabo. *See Exhibit 5.*

## APPLICABLE LAW

### A. STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

1. Regarding a request of Motion for Summary Judgment, Rule 56(c) of the Federal
Rules of Civil Procedure provides that:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the moving
> party is entitled to a judgment as a matter of law."

2. In a request for summary judgment under Rule 56(c) of the Rules of Civil
Procedure, a dispute is genuine if, a reasonable jury, based on the evidence, could return a

verdict for the nonmoving party. *Meléndez v. Lebrón*, No. 93-1009 (DRD), 1996 U.S. Dist.
*LEXIS 5992, at \*5 (N.D. PR. Apr. 18 1996); Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
*(1986).*

       3.     Party seeking summary judgment always bears initial responsibility of informing
District Court of basis for its motions. *Celotex Corp. v Catrett*, 477 US 317, 91 L Ed 2d 265, 106
*S Ct 2548 (1986).*

       4.     In the context of a summary judgment motion, the moving party bears the initial
responsibility of informing the Court of the for its motion and of identifying those portions of the
record (such as depositions, answers to interrogatories, and admissions on file) together with
affidavits, if any, which the party believes demonstrate absence of genuine issues of material
fact. *Handeen v Lemaire*, 112 F3d 1339 (8th Cir, 1997); *Stat-Tech Int'l Corp. v Delutes (In re
Stat-Tech Int'l Corp.)*, 47 F3d 1054 (10th Cir, 1995); *Clouse v Comm'r*, 93 AFTR 2d 427 (ND
*Ohio, 2003).*

       5.     The party opposing the motion for summary judgment cannot rely on mere
allegations or denials of the moving party.  On the contrary, the opposing party must be able to
show by affidavits, depositions, answers, and admissions in the record that there is a genuine
issue for trial. *Celotex v. Catrett, supra at 324 (1986).*

       6.     "A district court may grant summary judgment only 'if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the moving party is entitled to a
judgment as a matter of law.'  Fed. R. Civ. P. 56(c)." *Conward v. Cambridge Sch. Comm., 171
F.3d 12, at 18 (1st Cir. 1999); Mendez v. Banco Popular de Puerto Rico, 900 F.2d 4 (1st Cir.
1990).*

7.      FRCP 56(c) provides that a Court may enter judgment against a party without the celebration of a trial when: (1) there are no genuine issues of material facts to be resolved at trial; and (2) the uncontested facts entitle the moving party to judgment in his favor as a matter of law. *NASCO, Inc., vs. Public Storage, Inc., 29 F 3d 28 (1st. Circuit, 1994).*

8.      As to the materiality referred to in Rule 56(c) of the Rules of Civil Procedure, the substantive law will identify which facts are material.   A fact is material if, based on the substantive law at issue, it might affect the outcome of the case.   *Pea v. New Puerto Rico Marine Management, 84 F. Supp. 2d 239, 242 (1999); Mack v. Great Atl. and Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989).*

9.      The principal inquiry faced by a court when ruling on a motion for summary judgment is whether a genuine issue of material facts exists. The moving party bears the burden of establishing the absence of a genuine issue of material facts. *Celotex Corp. v. Catrett, supra.* If the moving party carries out its burden, the non-moving party may only survive summary judgment by presenting evidence in support of the existence of genuine issues of fact that warrant the celebration of a trial. *Maldonado-Denis vs. Castillo Rodriguez, 23 F 3d 576, 581 (1st. Circuit, 1994).*

10.      In short, in order to survive summary judgment, the non-moving party must bring forth a disputed material fact that may change the outcome of the suit under governing law. *Martinez vs. Colon, 54 F 3d 980,983-984 (1st. Circuit, 1990).*

11.      Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be determinative. *Antilles Carpet, Inc. v. Milliken Design, 26 F. Supp. 2d 345, 346 (1998).*  Therefore, if after evaluating the record in the light most favorable

App. Ap. pp.273

to the non-moving party, the evidence fails to yield a trial worthy issue as to some material fact, a motion for summary judgment shall be granted. *Pea*, *supra*, at 242; *Zambrana v. Suarez, 172 F.3d 122,125 (1st Cir. 1999)*. See also *Rentas v. Sallie Mae Servicing Corp. (In re Rentas), 2006 Bankr. LEXIS 3880 (Bankr. D.P.R. 2006)* (Court denied motions for summary judgment because there was a genuine controversy as to whether creditor was notified); *Torres Lopez v. Consejo de Titulares del Condominio Carolina Court Apart. (In re Torres Lopez), 2006 Bankr. LEXIS 3811 (Bankr. D.P.R. 2006)* (Court denied debtor's motion for summary judgment because creditor denied the alleged conduct and thus factual issues were left to be resolved).

## B.  PROPERTY OF THE ESTATE

12.     The real estate property previously described is entirely property of the Bankruptcy Estate, pursuant 11 USC §541.

13.     As Section 541 of the Bankruptcy Code states:

> "**(a)** The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
> > **(1)** Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
> > **(2)** All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—
> > > **(A)** under the sole, equal, or joint management and control of the debtor; or
> > > **(B)** liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable."

14.     When a conjugal partnership is established under Puerto Rico law, the earnings or profits indiscriminately obtained by either of the spouses during the marriage shall belong to the husband and the wife in equal share. *Article 1295 of the Civil Code of Puerto Rico, 31 L.P.R.A.*

*§ 3621.*

15.    When the conjugal partnership ceases to exist, the conjugal partnership turns into an ordinary community. <u>García González v. Montero Saldaña</u>, 7 P.R. Off. Trans. 353, 363–364, 107 D.P.R. 301, 331–332 (1978), citing Puig Brutau, *Fundamentos de Derecho Civil,* Tomo 4, Vol. 1 (1967), p. 784. *Also see* <u>Serrano Geyls, <i>Derecho de Familia de Puerto Rico y Legislación Comparada</i></u>, Vol. 1, Interamerican University School of Law, 2007 ed., p. 457; <u>*Rosselló Puig v. Rodríguez Cruz*</u>, 183 D.P.R. 81, 94 (2011).

16.    All of the assets of a spouse, as well as the community property, becomes property of a bankruptcy estate under Puerto Rico Law. [1] <u>In re Lang</u>, 191 B.R. 268 (Bankr. D.P.R. 1995), citing Bankr.Code, 11 U.S.C.A. § 541(a)(2)(A); 31 L.P.R.A. §§ 284, 286, 3621, 3622, 3631, 3641, 3647.

17.    At the instant case, the assets of the community property comprised between Debtor and Defendant have never been divided. Therefore, when Debtor filed for bankruptcy, the Bankruptcy Estate immediately comprised all nonexempt property, including any "unpartitioned post-marital community property". <u>*In re Brassett*</u>, 332 B.R. at 754–755; <u>*In re Robertson*</u>, 203 F.3d at 861–862; <u>*In re Pérez León*</u>, 2013 WL 5232331.[2]

---

[1] "In Puerto Rico, upon marriage, a new entity is created, which commences on the day of marriage and will own property acquired for a valuable consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of the spouses only; that obtained by the industry, salaries, or work of the spouses or of either of them; the fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses." <u>*In re Padilla*</u>, 2011 Bankr.LEXIS 4662 at * *10–11, 2011 WL 5911243 at *4 (Bankr.D.P.R.2011), citing Articles 1296 and 1401 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 3622 and 3641, and <u>*Fernández–Cerra v. Commercial Insurance Co. of Newark*</u>, 344 F.Supp. 314, 316 (D.P.R.1972).

[2] Chapter 7 trustees must take possession of the non-exempt assets of the estate and to administer them for the benefit of creditors. *See* 11 U.S.C. § 704(a)(1); <u>*Commodity Futures Trading Com'n v. Weintraub*</u>, 471 U.S. 343, 352 (1985).
 "Once the [bankruptcy] petition [is] filed, only the trustee has the authority to use, sell or lease property of the estate pursuant to 11 U.S.C. § 363". "The Trustee's rights and duties to collect and reduce to money the property of the estate under § 704 are exclusive rights and may not be asserted by the creditors." <u>*In re Gurley*</u>, 357 B .R. 868, 877 (Bankr.M.D.Fla.2006).

18.    Plaintiff, as Chapter 7 Trustee for the Bankruptcy Estate of Juan Balcells, is the only with the authority to administer the property of the estate, including the aforementioned real estate property. See 11 U.S.C. § 704; *Commodity Futures Trading Com'n v. Weintraub,* 471 U.S. 343, 352 (1985).

19.    As administrator and representative of the Bankruptcy Estate under the provisions of the Bankruptcy Code, Chapter 7 Trustee may dispose of the property of the estate. *Vélez v. Pérez León* (In re Pérez León), Bankr. D.P.R. Sept. 16, 2013.

### C.  AUTHORITY OF BANKRUPTCY COURT TO DECIDE OVER THIS MATTER

20.    The bankruptcy court has jurisdiction over the distribution of property even if it has abstained to allow the state court to determine the rights of the spouses to a property division. *In re Sparks*, 181 B.R. 341 (Bankr. N.D. Ill. 1995); *In re Davis*, 133 B.R. 593 (Bankr. E.D. Va. 1991) (trustee could represent the estate's interest in property division to be determined in state court).

21.    "It is well settled law that 28 U.S.C. § 1332 does not confer jurisdiction to Bankruptcy Courts over domestic relations issues"). This is known as the domestic relations exception.

22.    However, the domestic relations exception "encompasses only to cases involving the issuance of a divorce, alimony or child custody decree." *Mooney v. Mooney*, 471 F.3d. at 248; *In re Pérez Leon*, *supra*.

23.    The instant case does not involve a divorce, alimony or child custody, but rather hinges on the administration and possible disposition by the Chapter 7 Trustee of the post-marital community property the Bankruptcy Estate co-owns with Defendant. Therefore, the domestic relations exception is inapplicable. *See Dkt. 1.*

24.     Furthermore, Section 725 of the Bankruptcy Code states that "[a]fter the commencement of a [bankruptcy case] under ... chapter 7, but before final distribution of property of the estate under section 726 of this, the [chapter 7] trustee, after notice and a hearing, shall dispose of any property in which an entity other than the [bankruptcy] estate has an interest ... and that has not been disposed of under another section of this title."11 U.S.C. § 725.

### D.  HOMESTEAD RIGHT

25.     Defendant claims that the property subject of the instant complaint should not be considered as part of the Bankruptcy Estate because of the homestead designation made by the Bayamon Court.

26.     Defendant refers to the dispositions of the Civil Code of Puerto Rico (Article 109-A) which purpose is to protect minors in a family law against a former spouse, not a creditor. *See 31 L.P.R.A. §385a.*

27.     This Bankruptcy Court has determined that the homestead right, as established by the Article 109A of the Civil Code, is un-renounceable, except in all cases of mortgages. *In re Rivera*, 470 B.R. 109, (2012).

28.     At the instant case, Defendant has repeatedly failed to make mortgage payments in detriment of the secured creditor of the Estate even when Debtor has submitted the payments through the alimony payments. *See Exhibit 3, 4, 5, 6.*

29.     A Trustee in bankruptcy stands as a hypothetical judgment lien creditor effective on the date a debtor files a bankruptcy petition. *Bank of N.Y. v. Leake (in Re Wuerzberger)*, 284 B.R. 814, 2002 (Bankr. W.D. Va. 2002). The possessory interest of debtor's wife could not defeat trustee's right to sell. *In re Whaley*, 353 B.R. 209 (Bankr. E.D. Tenn. 2006).

30.     Pursuant, 11 USCS § 544, one of the duties of the Trustee is to recover property for estate for eventual benefit of all creditors. Since Defendant renounced its right to homestead through the property mortgage and has failed to make mortgage payments, it is in the best interest of both secured and unsecured creditors to allow Plaintiff to liquidate the property.

31.     In the alternative, if this Honorable Court concludes that it should not allow Plaintiff to liquidate the property, the homestead right claimed by Defendant is only a temporary obligation with a specific expiration date. It is enforceable until the minors reach adulthood. *See 31 L.P.R.A. §385a*. Therefore, Plaintiff should be allowed to dispose of the property after the homestead protection is extinguished.

### E.  STANDARD FOR 11 U.S.C. §363(h)

32.     Section 363 (h) of the Bankruptcy Code states, in its pertinent part

"(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if:

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power."

33.     Plaintiff, as the Chapter 7 Trustee, has the authority to sell this real properties pursuant to the provisions of 11 U.S.C. §363 (f) and (h).

34.     *In re Brollier*, 165 B.R. 286 (Bankr. W.D. Okla. 1994); *In re Waxman*, 128 B.R.

49 (Bankr. E.D. N.Y. 1991). If the asset was community property, the debtor's spouse also has

the right to purchase the asset but has no right to prevent the sale on account of equitable

considerations. 11 U.S.C. § 363(i).

35.     The case of *In Re Lang*, supra, clearly states that ".... where one spouse files

bankruptcy in Puerto Rico, all that debtor's property as well as the community property becomes

property of the estate by operation of § 541 (a )(2)( A) ... "

36.     In Re Lang, *supra*, also concludes: " ...... the court finds that Puerto   Rico

recognizes community property, thereby, 11 U.S.C. §541(a) (2) (A) applies to the determination

of property of the estate where one spouse files a bankruptcy petition. In addition, the court

finds that the requirement of a non-debtor spouse's consent prior to the disposition of

community property where the other files for bankruptcy petition is preempted as it is contrary

to federal bankruptcy law."

**SUMMARY JUDGMENT SHOULD BE AWARDED IN FAVOR OF PLAINTIFF**

1.     Plaintiff seeks to sell the properties listed above in order to distribute the resulting

proceeds to creditors of this Estate. The Plaintiff states that to obtain benefit from the sale of this

real property, this must be sold as a single unit and not only the percentage of interest held by the

Estate. *See Uncontested Facts 1-19.*

2.     The property to be sold is a real estate property that was owned by the conjugal

partnership that Debtor and Defendant used to have. The proceeds of the sale of the properties

will be used to pay expenses related to the sale, pay secured creditors of the property. After such

payments are made, shall there be any surplus of money. *See Uncontested Facts 1-19.*

3.     There is no doubt that the benefit to the estate of a sale of such property free of the

interests of a co-owner outweighs the detriment, if any, to such co-owner. Defendant will be

benefitted by the sale of the property, since his liabilities and obligations towards creditors will be diminished and/or eliminated and he will receive some money. *See Uncontested Facts 4, 5, 6 and 10.*

4.    Defendant's homestead judgement, pursuant Section 109a of the Puerto Rico Civil Code, does not protect her against the secured creditor's right over the property. See *31 L.P.R.A. §385a. See also,* <u>*In re Rivera*</u>, *supra.*

5.    The homestead right is renounced when there is a mortgage lien over the property. <u>*In re Rivera*</u>, *supra.*

6.    Defendant has failed to make mortgage payments.  *See Uncontested Facts 15-19.*

7.    The sale of the property by the Trustee would allow the satisfaction of the debt to secured creditor and extra resources to pay unsecured creditors.

8.    The continuation of this adversary proceeding is hurting the unsecured creditors since, as time passes by, they will receive less money every day. *See Uncontested Facts 1-19.*

9.    The Chapter 7 Trustee, as Plaintiff, purports the partition in kind of the property between the Estate and the Defendant is impracticable. *See Uncontested Facts 1-19.*

10.    The Chapter 7 Trustee, as Plaintiff, purports as well that the sale of the Bankruptcy Estate's undivided interest would realize significantly less for the Estate than a sale of the entire property free of the interests of such co-owner or the sale by the secured creditor. *See Uncontested Facts 1-19.*

11.    Plaintiff hereby requests the allowance of sale of property of the Bankruptcy Estate in favor of both secured and unsecured creditors.

**IN VIRTUE OF THE ABOVE**, it is hereby requested that this Honorable Court grant this motion and enter Summary Judgment as follows:

A.   Issue summary judgment allowing the Trustee to sell the property of the Estate described above, free and clear of co-ownership interest, subject to 11 U.S.C. §363 (h) (i) (j),

B.   Issue judgment allowing the Trustee to receive and distribute to creditors of the bankruptcy estate the proceeds of the sale of this property pursuant to the provisions of 11 U.S.C. §541 (a) and 11 U.S.C. §726 (c) in compliance with *In Re Bobonis, supra*.

C.   Deliver to the Defendant 50% of the surplus that may result after payment of all joint debts of the Debtor and the Defendant and the administrative expenses of the Estate.

In the alternative, if this Honorable Court concludes that it should not allow Plaintiff to liquidate the property, Plaintiff respectfully requests to be allowed to dispose of the property after the homestead protection is extinguished.

## NOTICE OF RESPONSE TIME

Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk=s office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the Assistant US

App. Ap. pp.281

Trustee, US Trustee's Office, Ochoa Building, 500 Tanca Street, Suite 301, San Juan, P.R. 00901.

### RESPECTFULLY SUBMITTED

In San Juan, PR this 26th day of September, 2015.

**/s/ AIMEÉ LÓPEZ PABÓN**
**USDC-PR 229906**
Email: al@g-glawpr.com

**Godreau & Gonzalez, LLC.**
PO Box 9024176
San Juan, PR 00902-4176
Tel: (787) 726-0077

Exhibit 1

**6000**            **ESTUDIO DE TITULO**

Caso: Lcdo. José María Castro **Alvarez** -
Re: Juan Carlos Balcells **Gallarreta** -

Finca # **41,852** inscrita al folio 250 del tomo 1197 de Guaynabo, Registro de la Propiedad
de Guaynabo.

DESCRIPCION:

--- URBANA: Solar radicado en la Urbanización Villas Reales, localizado en el Barrio Santa Rosa
del término municipal de Guaynabo, **Puerto Rico**, que se describe en el plano de inscripción de la
urbanización, con el Número Treinta y tres(33) del Bloque "E", con una cabida superficial de **375.42**
metros cuadrados. En lindes por el NORTE, en una distancia de 25.07 metros con el solar #32 del
mismo bloque; por el SUR, en una **distancia** de 25.00 metros con el solar #34 del mismo bloque; por
el ESTE, en dos alineaciones **continuas** que suman 15.10 metros con parcela de uso público y por
el OESTE, en una distancia de 15.00 metros con la Calle #7 de la urbanización, también conocida
como "Calle Versalles".
--- Enclava una casa.
--- Está afecto a servidumbre **telefónica** de 1.50 metros que discurre a todo lo largo de su colindancia
Oeste.
--- Servidumbre en Equidad: **Franja** de terreno de 1.00 metros de ancho por 25.00 metros de largo
aproximadamente, que discurre a **todo** lo largo de su colindancia Sur, para pintar, dar mantenimiento
y cualquier otra reparación a **favor del** solar #34.
--- Es segregación de la finca #39,352 inscrita al folio 100 del tomo 1119 de Guaynabo.

TITULO:      ( X ) Dominio

Adquisición: - Inscrita a favor de **JUAN CARLOS BALCELLS GALLARRETA** y su esposa
**AMARILIS GONZALEZ GARCIA**, quienes adquirieron por compra a Villas Reales, S.E. por
precio de $189,642.00 según escritura #14 otorgada en San Juan, el 17 de diciembre de 1996, ante
José Carlos González Bonilla. **Inscrita al folio 250 del tomo 1197 de Guaynabo, finca #41,852**
inscripción 1ra. y única. .

GRAVAMENES:

Por su procedencia: Servidumbres **de paso** a favor de fincas #29,445 y #29,448, AEE, AAA,
Autoridad de Comunicaciones y a **condiciones** restrictivas sobre uso y edificación.

Por si está afecta a:

HIPOTECA: En garantía de un pagaré por la suma de $132,925.00 intereses al 7% anual, a favor de
R&G Mortgage Corporation, o a su orden, vencedero el 1ro. de enero de 2017, según escritura #577
otorgada en San Juan, el 17 de diciembre de 1996, ante Heberto J. De Vizcarrondo Armstrong.
Inscrita al folio 250 del tomo 1197 **de Guaynabo**, finca #41,852 inscripción 1ra. y única.

Este documento **NO** es una póliza de Seguros de Título, por lo cual no debe utilizarse como tal. La
responsabilidad de la entidad que **preparó** este Estudio de Título, está limitada a la cantidad pagada
por la preparación de dicho Estudio de Título. Para completa protección, deben requerir una póliza
de Seguro de Título.

**REVISADOS:** Libros de Embargos Estatales, Embargos bajo Ley 12(2010), Municipales, Federales,
Sentencias y **Bitácora**(Sistema Electrónico y Agora de la cual no nos hacemos responsables por
errores u omisiones en el mismo), UD-557 UA-953(8:00 a.m.).
En San Juan, Puerto Rico a 12 **de diciembre** de 2011.



Luis A. Flores González
Apartado Postal 3973
San Juan, Puerto Rico  00904
795-1561 645-4980 758-3606
Fax 753-5317
E-mail tilinestudios@yahoo.com

LAFG/gip/guay/tyl/11
Costo: $60.00

App. Ap. pp.283

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE:

**JUAN CARLOS BALCELLS GALLARETA**
DEBTOR

**CASE NO. 11-06637 MCF**

**CHAPTER 7**

**NOREEN WISCOVITCH RENTAS**
**TRUSTEE FOR THE ESTATE OF JUAN BALCELLS**
**GALLARETA**
Plaintiff

Adv. No. 14-00137

v.

**AMARILIS GONZÁLEZ GARCÍA**
Defendant

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY
## IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT

I, **NOREEN WISCOVITCH-RENTAS** of legal age, married, an attorney and resident of West Palm Beach, Florida of  hereby state under penalty of perjury that:

1.      My personal circumstances are as set forth above. I am the Chapter 7 Trustee for the Bankruptcy Estate of Juan Carlos Balcells Gallareta.

2.      The Estate filed a Complaint for approval of sale of property of estate and of a co-owner pursuant to 11 USC §363(h) against Amarilis Gonzalez Garcia, Defendant.

3.      The partition in kind of the property, object of this adversary proceeding, between the Estate and the Defendant is impracticable.

4.      The sale of the estate's undivided interest would realize significantly less for the Estate than a sale of the entire property free of the interests of such co-owner.

App. Ap. pp.284

5.     The benefits to the Estate of a sale of such property free of the interest of Defendant, outweighs the detriment, if any, to the Defendant.

6.     The property involved is not used in the production, transmission, or distributions of electric energy or natural gas sold for heat, power, or light.

7.     I seek to sell the property, object of this adversary proceeding, to distribute the resulting proceeds to the creditors of this Estate. To benefit the Estate from the sale of the property, it must be sold as a single unit and not only the percentage of interest held by the Estate.

8.     Due to the co-ownership of the property, 50% of the net proceeds of the sale recovered shall be distributed to Defendant after all administrative and joint creditors have been paid in full.

I declare under penalty of perjury that the foregoing is true and correct.

In San Juan, Puerto Rico, this 22nd of September of 2015.

NOREEN WISCOVITCH-RENTAS, ESQ.

Chapter 7 Trustee for the Bankruptcy
Estate of Juan Carlos Balcells

App. Ap. pp.285

PAG. 01

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE BAYAMON

GONZALEZ GARCIA, AMARILIS
    DEMANDANTE
      VS.
BALCELLS GALLARRETA, JUAN CARLOS
    DEMANDADO

CASO:D DI2006-4055
SALON:3006

DIVORCIOS
   TRATO CRUEL
   CAUSAL/DELITO

LIC. PEÑAGARICANO KINDRATIW VERA T
VILLA LISSETTE
B 2  MARGINAL
GUAYNABO,PR 00969

NOTIFICACION DE SENTENCIA

    EL SECRETARIO QUE SUSCRIBE NOTIFICA A USTED QUE ESTE TRIBUNAL HA DICTADO
SENTENCIA  EN EL CASO DE EPIGRAFE CON FECHA 13 DE ABRIL DE 2015    , QUE HA
SIDO DEBIDAMENTE  REGISTRADA Y  ARCHIVADA EN LOS AUTOS DE ESTE CASO, DONDE
PODRA USTED ENTERARSE DETALLADAMENTE DE LOS TERMINOS DE LA MISMA.

    Y, SIENDO O REPRESENTANDO USTED LA PARTE PERJUDICADA POR LA SENTENCIA,
DE LA CUAL PUEDE ESTABLECERSE RECURSO DE  APELACION, DIRIJO A  USTED ESTA
NOTIFICACION, HABIENDO  ARCHIVADO EN LOS AUTOS DE ESTE  CASO COPIA DE ELLA
CON FECHA  DE  17 DE ABRIL DE 2015     .

GONZALEZ OTERO EVELYN
EDIF  VICK CENTER
867 AVE MUNOZ RIVERA  STE D-302
SAN JUAN,PR 00925

EN BAYAMON, PUERTO RICO, A 17 DE ABRIL DE 2015.

RUTH APONTE COTTO
----------------------------------------
                    SECRETARIO
POR: GIANLYNNE M VELEZ RODRIGUEZ
----------------------------------------
           SECRETARIO AUXILIAR

O.A.T.704-NOTIFICACION DE SENTENCIA

App. Ap. pp.286

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
REGION JUDICIAL DE BAYAMÓN
SALA DE FAMILIA Y MENORES

| | |
|---|---|
| **AMARILIS GONZÁLEZ GARCÍA**<br>DEMANDANTE | **CIVIL NÚM.  D DI2006-4055** |
| **VS** | **SALA 3006** |
| | **Sobre:** |
| **JUAN  CARLOS BARCELLS GALLARRETA**<br>DEMANDADO | **DIVORCIO** |

### RESOLUCION Y ORDEN

El 3 de abril de 2014 se emitió una Resolución y Orden la cual al día de hoy es final, firme e inapelable en la que descalificamos a la parte demandante para auto representarse por las siguientes razones y citamos:

- Desacatar órdenes del Tribunal dirigidas a proteger la educación de los menores y el pago de la hipoteca de la propiedad en la que residen los menores.
- No proveer información correcta al Tribunal.
- Reírse de forma irrespetuosa mientras la Juez se está dirigiendo a las partes (en más de una ocasión).
- Indicar que está en estado de indefensión, porque no tiene representación legal.
- No conseguir representación legal, a pesar que desde el 27 de febrero de 2014, se le concedió un término de diez (10) días, los cuales están vencidos desde el 10 de marzo de 2014.
- Insistir en comparecer por derecho propio, a pesar de habérsele indicado que no podía continuar haciéndolo.

Por las razones expuestas se le impusieron $300.00 en sanciones a ser pagada a favor del Estado.

App. Ap. pp.287

De las minutas y las grabaciones de todos los procedimientos surgen los constantes incumplimientos de la parte demandante a las órdenes del Tribunal, Aún luego de contar con representación legal se le tuvo que llamar la atención constantemente e incluso se le impusieron sanciones por el incumplimiento con el pago de la hipoteca en donde residen los menores.

En estricto derecho una vez un abogado es descalificado en un caso no puede comparecer posteriormente mediante moción asumiendo representación legal, éste caso no es la excepción.

Dada la cantidad de sanciones que le hemos impuestos a la parte demandante debido a su conducta temeraria así como las veces que le hemos tenido que llamar la atención procedemos a inhibirnos motu proprio para así evitar cualquier apariencia de imparcialidad al amparo de las disposiciones del Canon-XII de Ética Judicial y la Regla 63.1(j) de Procedimiento Civil.

Aclaramos que a pesar de todas las medidas que hemos tenido que tomar en contra de la demandante la mayoría de las adjudicaciones en el presente caso han sido a su favor y han sido sostenidas en el Tribunal de Apelaciones. A pesar de ello ésta no cesa en sus planteamientos de que se le están violando sus derechos o que la están colocando en estado de indefensión.

Se refiere el asunto a la Juez Coordinadora Leslie Hernandez Crespo para que el caso sea reasignado.

REGISTRESE Y NOTIFIQUESE.

DADA en Bayamón, Puerto Rico, 13 de abril de 2015.

**WANDA I. SOLER FERNÁNDEZ**
**JUEZ SUPERIOR**

App. Ap. pp.288

PAG. 01                          ESTADO LIBRE ASOCIADO DE PUERTO RICO
                                   TRIBUNAL DE PRIMERA INSTANCIA
                                        SALA DE BAYAMON

GONZALEZ GARCIA, AMARILIS
----------------------------------------            CASO NUM:  D DI2006-4055
                  DEMANDANTE                         SALON: 3005
                      VS.
BALCELLS GALLARRETA, JUAN CARLOS        DIVORCIOS
----------------------------------------  TRATO CRUEL
                  DEMANDADO                CAUSAL/DELITO

LIC. PEÑAGARICANO KINDRATIW VERA T
2 CALLE TABONUCO
GAM TOWER OFICINA 203
GUAYNABO,PR 00968


                    N O T I F I C A C I O N


     CERTIFICO QUE EN RELACION CON CASO DE EPIGRAFE ------------------ EL DIA
21 DE ABRIL DE 2016      EL TRIBUNAL DICTO LA RESOLUCION ------------ QUE SE
TRANSCRIBE A CONTINUACION:



                    (VEASE RESOLUCIÓN INCLUIDA)





                    FDO.   LESLIE J HERNANDEZ CRESPO
                                 JUEZ

     CERTIFICO  ADEMAS QUE EN EL DIA DE HOY  ENVIE POR CORREO  COPIA DE ESTA
NOTIFICACION A LAS SIGUIENTES PERSONAS A SUS DIRECCIONES INDICADAS, HABIENDO
EN ESTA MISMA FECHA ARCHIVADO EN LOS AUTOS COPIA DE ESTA NOTIFICACION.

SANCHEZ BAÑO MARIA L
LEVITTOWN
2674 PASEO AGUILA
TOA BAJA,PR 00950

MARCHESE TORRES RITA
PO BOX 50459
TOA BAJA,PR 00950-0459

PAG. 02

CASO NUM:D DI2006-4055
SALON:3005

SHORTER GARCÍA RICHARD J.
P O BOX 838
GUAYNABO,PR 00970-0838

PROGRAMA RELACIONES DE FAMILIA
TS EVELYN VÁZQUEZ
TRIB FAM Y MENORES 2DO PISO
BAYAMON PR 00999

TRIBUNAL SUPREEMO
LCDO JUAN E DÁVILA RIVERA
PO BOX 9022392
SAN JUAN PR 00902-2392

EN BAYAMON, PUERTO RICO, A 25 DE ABRIL DE 2016.

                    RUTH APONTE COTTO
          ----------------------------------------
                                 SECRETARIO
          POR: MARIBEL KUILAN GUZMAN
          ----------------------------------------
                        SECRETARIO AUXILIAR

O.A.T.750-NOTIFICACION DE RESOLUCIONES Y ORDENES

**ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
RELACIONES DE FAMILIA Y MENORES
REGIÓN JUDICIAL DE BAYAMÓN**

| | |
|---|---|
| **AMARILIS GONZÁLEZ GARCÍA**<br>Demandante<br><br>**Vs.**<br><br>**JUAN CARLOS BALCELLS GALLARRETA**<br>Demandado | Civil Núm.: **DDI2006-4055**<br><br>Sala: **3005**<br><br>Sobre: **DIVORCIO(TC)** |

**RESOLUCIÓN**

Examinado el expediente de este caso el Tribunal a tenor con la Regla 15 del Tribunal Supremo de Puerto Rico en sus incisos (c) y (d), 4 LPRA Ap. XXI-B R. 15(c) y (d), se refiere a la Lcda. Amarilis González García al Tribunal Supremo. La percepción del Tribunal no es que el incumplimiento de la abogada con las órdenes del Tribunal sea por mera voluntad sino por una condición mental y emocional que en efecto le impide entender los procedimientos de este caso.

El 17 de abril de 2015, el Tribunal notificó una *Resolución y Orden* en donde se incluyeron las razones por las que se había descalificado a  la parte demandante para auto representarse. Por entender que las mismas son pertinentes a la decisión que tomamos en el día de hoy, las reproducimos textualmente como se incluyeron en la *Resolución y* Orden mencionada emitida por la Juez asignada al caso en aquel entonces la Hon. Wanda Soler Fernández. Las razones fueron las siguientes:

> ➢ **Desacatar órdenes del Tribunal dirigidas a proteger la educación de los menores y el pago de la hipoteca de la propiedad en la que residen los menores.**
> ➢ **No proveer información correcta al Tribunal.**
> ➢ **Reírse de forma irrespetuosa mientras la Juez se está dirigiendo a las partes (en más de una ocasión)**
> ➢ **Indicar que está en estado de indefensión, porque no tiene representación legal.**
> ➢ **No conseguir representación legal, a pesar que desde el 27 de febrero de 2014, se le concedió un término de diez (10) días, los cuales están vencidos desde el 10 de marzo de 2014.**
> ➢ **Insistir en comparecer por derecho propio, a pesar de habérsele indicado que no podía continuar haciéndolo.**

Por las razones expuestas se le impusieron a la parte demandante $300 en sanciones a ser pagada en favor del estado. La Juez que emitió la *Resolución y Orden*

App. Ap. pp.291

citada, por la cantidad de sanciones que le había impuesto a la demandante por su conducta temeraria y por las veces que le tuvo que llamar la atención durante el caso. Procedió entonces la Juez a inhibirse voluntariamente del caso para así evitar cualquier apariencia de imparcialidad al amparo de las disposiciones del Canon XII de Ética Judicial y la Regla 63.1(j) de Procedimiento Civil. La Juez Soler Fernández aclaró en la *Resolución y Orden* que a pesar de todas las medidas que había tomado hasta aquel momento en contra de la demandante, la mayoría de las <u>adjudicaciones</u> en el caso habían sido a su favor y habían sido sostenidas en el Tribunal de Apelaciones.

Luego de varios trámites procesales, el 30 de junio de 2015 el Tribunal emitió *Orden*, notificada el 2 de julio de 2015, en la que le concedió 10 días a la parte demandante para indicar las razones por las cuales no se le debían imponer $300 de sanciones ante su incumplimiento con las órdenes del Tribunal, en específico las dictadas en corte abierta el 8 de junio de 2015, y notificadas mediante Minuta el 11 de junio de 2015; y las órdenes adicionales de 11 de junio de 2015, y 18 de junio de 2015. La *Orden* se emitió al amparo de la Regla 39.2 (a) de Procedimiento Civil. El 9 de noviembre de 2015 el Tribunal emitió *Resolución,* notificada a las partes el 13 de noviembre de 2015, en la que se expresó lo siguiente:

> **Ante el reiterado incumplimiento de la parte demandante con las órdenes del Tribunal; y ante el incumplimiento con el pago de las sanciones impuestas en este caso, el Tribunal, conforme a la Regla 39.2 (a) de Procedimiento Civil, elimina las alegaciones de la demandante, Amarilis González García. Esta decisión se toma luego de un ponderado análisis del tracto procesal del caso y de los repetidos incumplimientos de dicha parte.**

El 14 de marzo de 2016, se celebró una vista urgente en este caso ante el Tribunal. La demandante compareció representada por su Abogado de Oficio Lcdo. Richard J. Shorter García. El demandado compareció junto a su representación legal, la joven adulta Alexandra Balcells González compareció representada por su Abogada de Oficio Lcda. María L. Sánchez Baño. El joven Juan Francisco Balcells González, compareció representado por su Defensora Judicial Lcda. Rita Marchese Torres.

Durante la vista la joven adulta Alexandra Balcells expresó que no aceptaba la representación legal de la licenciada Sánchez Baño porque tenía un acuerdo con su padre, además de que la persona que designó a los abogados de oficio y la defensora judicial es pariente y madre de la     mejor amiga del demandado. El Tribunal hizo

App. Ap. pp.292

Case Case:17-02137-MCF11202417 ABT Document 09/26/16 Filed 08:17:29/26 Page 296 of 460 Desc:
Exhibit Bayamon Court Order II   Page 5 of 11

3

constar que fue la Juez que presidía la sala quien designó a los abogados de oficio y a la defensora judicial de un listado que administra la Juez Marina Durán. El Tribunal expresó que no dudaba de la competencia de los abogados nombrados y entendía que son probos como abogados y podían realizar una labor adecuada en el caso. Entendió además el Tribunal, que la demandante debía estar representada en este acto, al igual que la joven adulta y que el menor necesitaba un defensor judicial.

La licenciada Marchese Torres expresó durante la vista que por entender que existía un potencial de causar daño profesional solicitaba que se eliminara su designación como defensora judicial del menor en el caso. El licenciado Shorter García solicitó por escrito que se le relvara de  su designación de abogado de oficio el 4 de marzo de 2016, el Tribunal en *Orden* emitida el 10 de marzo de 2016, notificada a las partes el día siguiente declaró No ha Lugar dicha solicitud. Durante la vista del 14 de marzo de 2016 el licenciado Shorter García informó que había presentado un recurso de reconsideración a la decisión del Tribunal sobre su solicitud de relevo de la designación de abogado de oficio en este caso.

La representante legal del demandado ante la preocupación del Tribunal, de la defensora judicial y de su cliente en cuanto a que la madre con custodia no está velando por los mejores intereses del menor, sugirió que se le entregue la custodia provisional del menor al demandado para que éste vele por los mejores intereses del menor.

La demandante expresó que tenía derecho a representarse por derecho propio. Indicó que lo que verbalizó la menor fue que existía un conflicto de intereses y no que dudaba de la capacidad de la licenciada Sánchez Baño.

Durante la vista del 14 de marzo de 2016, la demandante verbalizó que de necesitar un abogado ella lo solicitaría por sí misma, *"no permitiendo que sea mi exesposo el que tramite la selección de estos abogados"*. El Tribunal ya ha establecido para el registro la forma en que se seleccionaron los abogados de oficio y el defensor judicial en este caso. En la *Resolución y Orden* notificada el 17 de abril de 2015, el Tribunal estableció claramente que el periodo que le había concedido a la demandante para anunciar una representación legal se había vencido el 10 de marzo de 2014. En una vista de estado de los procedimientos celebrada el 8 de junio de 2015, porque

Case Case 3:12-cv-01032-FAB Document 09/26/16 Filed 08/07/09/26/16 Page 394 of 460 Desc:
Exhibit Bayamon Court Order II   Page 6 of 11

4

existían unos asuntos pendientes de disposición y ante una moción de la parte demandada en la que expresó que para esa vista se allanaba a que la demandante compareciera por derecho propio, el Tribunal permitió la comparecencia de la demandante por derecho propio y celebró la vista para atender y disponer de una Orden de Manejo en el caso.

En la vita del 8 de junio de 2015, el Tribual sostuvo su determinación de que la demandante debía comparecer representada por abogado al caso y le concedió un término que vencía el 19 de junio de 2015, para que anunciara su representación legal en el caso. La demandante no cumplió con esa orden del Tribunal y en una vista celebrada el 15 de diciembre de 2015 alegó que no tenía recursos para contratar representación legal, ante esa alegación el Tribunal determinó que le asignaría un abogado de oficio a la demandante. El 25 de febrero de 2016, se notificó a las partes la designación del Lcdo. Richard J. Shorter García como abogado de oficio de la demandante, a pesar de todos estos incidentes la demandante insistió en la vista celebrada el 14 de marzo de 2016 que tenía derecho a representarse por derecho propio. Como se expresó en la *Resolución y Orden* notificada el 17 de abril de 2015 un abogado que ha sido descalificado en un caso no puede comparecer al mismo después de su descalificación. Este es un hecho que debe ser fácil de entender para un abogado, la demandante es abogada de profesión e insiste en que tiene derecho a representarse por derecho propio en este caso.

La demandante además hizo inferencias sobre alegadas relaciones de amistad entre la representación legal del demandado y la Juez que estuvo asignada al caso Hon. Wanda Soler Fernández, estas eran totalmente frívolas. Después en un escrito al Tribunal de Apelaciones, la demandante intentó utilizar el segundo apellido de la juez asignada actualmente al caso para imputar una relación de consanguinidad con el esposo de la representación legal del demandado. La Juez asignada al caso estableció para el registro del Tribunal en la vista celebrada el 15 diciembre de 2015 que entre ella y el esposo de la representante legal del demandado no existe ninguna relación de consanguinidad o afinidad. Después de estos 2 incidentes en la última vista del caso tanto la joven Alexandra Balcells González como la demandante hicieron imputaciones sin prueba alguna de que la persona que designó los abogados de oficio y la defensora

App. Ap. pp.294

judicial en el caso era una persona allegada al demandado. Este tipo de señalamientos frívolos junto con el reiterado incumplimiento de la demandante con las órdenes del Tribunal motiva al Tribunal a ejecutar los remedios que establece en esta *Resolución.*

La Regla 15 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B R. 15, en sus incisos (c) y (d) expresa lo siguiente:

**Regla 15.  Casos de incapacidad mental de abogados y abogadas**

**(a) ….**

**(b) ….**

**(c)Cuando en el curso de cualquier procedimiento disciplinario de acuerdo con la Regla 14 surjan dudas sobre la capacidad mental del abogado querellado o de la abogada querellada, el tribunal, a iniciativa propia o a instancias del Procurador o Procuradora General, o de la parte querellante, nombrará a un Comisionado o Comisionada Especial, si aún no hay, para que reciba prueba sobre la incapacidad mental del abogado o de la abogada de acuerdo con la definición del término en el inciso (a) de esta regla. En estos casos se nombrará un panel de tres (3) médicos o médicas siquiatras para que examinen al abogado o la abogada y ofrezcan su testimonio pericial ante el Comisionado o Comisionada Especial. El panel de siquiatras será designado así: uno o una será nombrado o nombrada por el Comisionado o Comisionada Especial; otro u otra por el Procurador o Procuradora General de Puerto Rico, y el tercero o la tercera por el abogado querellado o la abogada querellada. Las designaciones deben hacerse dentro del término de diez (10) días desde la fecha de la notificación de la resolución del tribunal que ordene este procedimiento. Si dentro de ese término el Procurador o Procuradora General o la parte querellada no hace la designación correspondiente, el Comisionado o Comisionada Especial la hará por ellos o ellas. Una vez designado el panel de siquiatras, el Comisionado o Comisionada Especial señalará la fecha para la celebración de una vista para no más tarde de treinta (30) días a partir de la designación. Durante ese término, los o las siquiatras examinarán a la parte querellada y rendirán un informe al Comisionado o Comisionada Especial, quien notificará con copia de dicho informe al Procurador o Procuradora General y a la parte querellada. Durante la vista ante el Comisionado o Comisionada Especial, el Procurador o la Procuradora General y la parte querellada, representada por su abogado, podrán presentar sus objeciones a los informes de los o las siquiatras y habrá oportunidad de interrogar y contrainterrogarles. Durante la vista ante el Comisionado o Comisionada Especial, el Procurador o la Procuradora y la parte querellada podrán presentar otros testigos, sujetos también a contrainterrogatorio, y podrán presentar y examinar la prueba documental. No se aplicarán las reglas de descubrimiento de prueba. El Comisionado o Comisionada Especial resolverá los planteamientos sobre la admisibilidad de prueba conforme a derecho, mas no se reconocerá como privilegiada la comunicación entre la parte querellada y los siquiatras del panel. El Comisionado o la Comisionada deberá presentar su informe al tribunal, con**

copia a las partes, dentro de los treinta (30) días de celebrada la vista y la presentación final de la prueba; junto con el informe remitirá toda la prueba documental y material que hubiese sido presentada, incluyendo los informes de los o las siquiatras. La prueba presentada y no admitida deberá identificarse claramente como tal y el Comisionado o la Comisionada indicará la razón por la cual no fue admitida. Si las partes así lo determinan, podrán renunciar a la vista y someter el asunto al Comisionado o Comisionada Especial a base de los informes de los o las siquiatras. En tal caso, se podrán presentar objeciones a dichos informes dentro de los diez (10) días siguientes a su presentación, ante el Comisionado o Comisionada Especial. Este o esta deberá rendir su informe al tribunal dentro de los treinta (30) días siguientes a la presentación de los informes de los o las siquiatras o de las objeciones a tales informes, según sea el caso.

(d) Aunque no haya procedimiento alguno ante la consideración del tribunal, este, a iniciativa propia, podrá ordenar el procedimiento ante el Comisionado o Comisionada Especial que dispone el inciso (c) de esta regla, cuando de la conducta del abogado o la abogada ante el tribunal General de Justicia surjan dudas sobre su capacidad mental.

El Tribunal a la luz de la totalidad del expediente del caso y ante el claro patrón de incumplimiento de órdenes emitidas por éste de la parte demandante, toma las siguientes determinaciones:

- Se ordena a la Secretaría del Tribunal referir este caso al Secretario del Tribunal Supremo, Lcdo. Juan E. Dávila Rivera, para que la Lcda. Amarilis González García sea sometida al proceso que provee la Regla 15 (d) del Reglamento Tribunal Supremo para casos de incapacidad mental de abogados y abogadas.

- Se paralizan los procedimientos del caso hasta que el Tribunal disponga lo contario, por el referido de la Lcda. González García, parte demandante, a tenor con la Regla 15 (d) del Tribunal Supremo de Puerto Rico.

- Se mantiene la pensión provisional establecida en el caso. A la solicitud de custodia provisional del menor solicitada por el demandado No Ha Lugar, el menor es un estudiante universitario que se hospeda en Mayagüez, por lo tanto es mínimo el impacto que pueda tener un cambio de custodia en la vida diaria del menor toda vez que pasa la mayor parte

CaseClas0B122-MCG11DOCFAB7-4oEurecot09/26/16FileEheD8/dd7/299/26/19e1500c8246CDesc:
Exhibit Bayamon Court Order II   Page 9 of 11

7

del tiempo hospedado en una residencia que no le pertenece a ninguno de sus padres.

▪ Se deja sin efecto el referido a la Unidad Social y se hace constar que el 23 de marzo de 2016 se emitió *Orden* a dicha Unidad para que rindiera un informe breve de labor realizada hasta el 14 de marzo de 2016.

**NOTIFÍQUESE.**

En Bayamón, Puerto Rico, a  21 de abril de 2016.

**LESLIE J. HERNÁNDEZ CRESPO**
**JUEZ SUPERIOR**

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE RELACIONES DE FAMILIA Y MENORES
REGIÓN JUDICIAL DE BAYAMÓN

| | |
|---|---|
| AMARILIS GONZÁLEZ GARCÍA | |
| Demandante | CASO NUM.DDI2006-4055 |
| v. | Salón Núm. 3005 |
| JUAN CARLOS BALCELLS GALLARRETA | Acción de Divorcio |
| Demandado | |

## SOLICITUD DE RECONSIDERACIÓN

AL HONORABLE TRIBUNAL:

Comparece el demandado por conducto de su representación legal suscribiente y muy respetuosamente alega, expone y solicita:

1. Este Tribunal declaró sin lugar la solicitud de custodia provisional presentada por el compareciente mediante Resolución de 21 de abril pasado, notificada el 25 de abril.

2. Apoyó su determinación en los siguientes hechos:

- El joven es universitario;

- Se hospeda en Mayagüez;

- Pasa la mayor parte del tiempo hospedado en una residencia que no le pertenece a ninguno de los padres.

3. No obstante lo anterior, la demandante es quien administra la pensión provisional vigente. Deberá mantener presente este Tribunal que la madre custodio no presentó prueba alguna de los gastos suplementarios del menor. Este hecho, sumado a las determinaciones en cuanto al estado mental y emocional de la demandante presentadas por el Tribunal en la Resolución aludida, no redundan en el mejor beneficio del menor. Si en la demandante la madre custodio es quien viene a administrar la pensión provisional a favor de su hijo.

4. El compareciente comparte la posición de este Tribunal en cuanto a la custodia física del menor, en tanto y en cuanto reside en Mayagüez. Sin embargo, al otorgarle a este la custodia, provisional o permanente, provocaría que fuera el padre quien administrará la pensión a favor de su hijo. Esto, sin duda alguna, redundaría en su mejor beneficio.

POR TODO LO CUAL, el compareciente solicita muy respetuosamente de este Honorable Tribunal se sirva reconsiderar su orden a los efectos de otorgarle la custodia provisional al compareciente por las razones esbozadas en lo que antecede.

En Guaynabo, P.R., a 28 de abril de 2016.

Certifico haber enviado copia del presente escrito a la Lcda. Amarilis González García a PO Box 11083, San Juan, PR 00922.

VERA T. PEÑAGARICANO
11463
2 Calle Tabonuco
GAM Tower, Oficina 203
Guaynabo, P.R. 00968
(787)945-1465
Fax (787)966-7655
vera@penagaricanolaw.com

App. Ap. pp.299

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**CENTRO JUDICIAL DE GUAYNABO**
**SALA SUPERIOR**

| | |
|---|---|
| BANCO POPULAR DE PUERTO RICO, | CIVIL NÚM: D2CD2016-0029 |
| Demandante, | |
| | SOBRE: SALON 201 |
| v. | |
| | EJECUCIÓN DE HIPOTECA |
| Juan Carlos Balcells Gallarreta t/c/c Juan | POR LA VÍA ORDINARIA |
| Carlos Balcells Gallassetas, Amarilis | *IN REM* |
| González García y la sociedad legal de | |
| bienes gananciales compuesta por ambos, | |
| Demandados. | |

2016 JAN 25 PM 3:27

**D E M A N D A**

**AL HONORABLE TRIBUNAL**:

**COMPARECE** la parte demandante, BANCO POPULAR DE PUERTO RICO, en adelante denominada como "BPPR", por conducto de la representación legal que suscribe y respetuosamente EXPONE, ALEGA Y SOLICITA:

1. BPPR es una corporación organizada de acuerdo a las leyes del Estado Libre Asociado de Puerto Rico, con autoridad para demandar cuya dirección postal es *P.O. Box 362708 San Juan, PR 00936-2708*, cuya dirección física es *Departamento de Ejecución de Hipoteca, Suite #401, Edificio Centro Europa, Ave Ponce de León #1492, San Juan, PR 00907* , y cuyo teléfono es *787-522-1544*.

2. La última dirección conocida de la parte demandada es la siguiente: FÍSICA: Urb. Villa Reales, E-33, Guaynabo, PR, 00965 POSTAL: PO Box 11083, San Juan, PR, 00922; PO Box 361012, San Juan, PR, 00936.

3. La reclamación presentada excede de $5,000.00.

4. El bien inmueble sobre el cual surge el derecho o interés objeto de esta acción ubica en el Municipio de Guaynabo.

5. La presente causa de acción se inicia como un procedimiento estrictamente de naturaleza real de ejecución de hipoteca (IN REM) por el incumplimiento con las cláusulas de la escritura de hipoteca, y no con respecto a la responsabilidad personal del deudor (IN PERSONAM) que surge del pagaré hipotecario.

6. El 5 de agosto de 2011 la parte demandada radicó una petición de quiebra bajo el capítulo 7 del Código de Quiebras de Estados Unidos, caso número 11-06637.

7. El 4 de febrero de 2012 la Corte Federal de Quiebras emitió una Orden mediante la cual la parte demandada fue descargada ("discharged") de su obligación personal para con la parte demandante, según dispone el Código de Quiebra Federal, 11 U.S.C.A. § 524.

8. Aun cuando el descargo elimina la responsabilidad personal del deudor con respecto algunas deudas, el descargo no es de aplicabilidad con respecto a deudas aseguradas o garantizadas

como lo es la deuda reclamada en el caso de autos.

9.  En virtud de dicha Orden, BPPR queda solamente facultada a ejecutar su garantía, por lo cual la presente acción es de naturaleza real (IN REM).

10. La parte demandante no pretende cobrar la deuda del patrimonio personal de la parte demandada. Esta acción se limita al bien objeto de ejecución.

11. El día 17 de diciembre de 1996, se otorgó ante el Notario Heberto J. De Vizcarrondo Armstrong, testimonio número 18560, un pagaré a favor de R&G Mortgage Corporation o a su orden, por la suma principal de $132,925.00 más intereses desde esa fecha hasta el pago total del principal a razón de 7.000% de interés anual sobre el balance adeudado. Además el pagaré provee para pagar recargos por demora equivalentes a 4.000% de la suma de aquellos pagos con atrasos en exceso de 15 días calendarios de la fecha vencimiento; y una cantidad equivalente a $13,292.50 por concepto de costas, gastos y honorarios de abogados en caso de reclamación judicial.

12. Para garantizar el pago de dicho Pagaré se constituyó hipoteca voluntaria mediante la escritura número 577, otorgada el día 17 de diciembre de 1996, ante el Notario Heberto J. De Vizcarrondo Armstrong, sobre el bien inmueble que se describe a continuación:

> URBANA: Solar radicado en la Urbanización Villas Reales, localizada en el Barrio Santa Rosa del término municipal de Guaynabo, Puerto Rico, que se describe en el plano de inscripción con el número, área y colindancias que se relacionan a continuación; Solar #E-33, área del solar: 375.42 metros cuadrados. En lindes: Por el Norte, en una distancia de 25.08 metros lineales con el solar #32 del mismo bloque; por el Sur, en una distancia de 25.00 metros lineales, con el solar #34 del mismo bloque; por el Este, en dos alineaciones continuas que suman 15.10 metros lineales, con parcela de uso público; y por el Oeste, en una distancia de 15.00 metros lineales, con la Calle #7 de la Urbanización también conocida como Calle Versalles. Enclava una casa en concreto para fines residenciales.

13. La finca antes descrita consta Inscrita al folio 250 del tomo 1197 de Guaynabo, Registro de la Propiedad de Guaynabo, finca número 41852.

14. La escritura de hipoteca objeto de ejecución consta inscrita al folio 250 del tomo 1197 de Guaynabo, Registro de la Propiedad de Guaynabo, finca número 41852, inscripción primera.

15. BPPR es el actual tenedor de buena fe del pagaré objeto de la presente reclamación, habiéndolo adquirido por valor recibido y en el curso ordinario de sus negocios.

16. El último pago que se realizó fue el correspondiente al pago vencedero el día 1 de mayo de 2014.

17. En virtud del referido pagaré que BPPR tiene en su poder y la referida escritura de hipoteca se adeuda a BPPR la suma de $29,812.65 por concepto de principal, más intereses al tipo pactado de 7.000% anual desde el 1 de mayo de 2014. Dichos intereses continúan acumulándose hasta el pago total de la obligación. Además se adeuda a BPPR los cargos por demora equivalentes a 4.000% de la suma de aquellos pagos con atrasos en exceso de 15 días calendarios de la fecha vencimiento; los créditos accesorios y adelantos hechos en

virtud de la escritura de hipoteca; y las costas, gastos y honorarios de abogado equivalentes a $13,292.50.

18. En cumplimiento con las disposiciones de la Ley Hipotecaria se tasó la propiedad en una cantidad equivalente a $132,925.00 para que sirva de tipo mínimo en la eventualidad de que se celebre una venta judicial.

19. Se le advierte a la parte demandada que la parte demandante se propone hacer anotar en el Registro de la Propiedad de Guaynabo un aviso de que el pleito a que se refiere esta Demanda está pendiente.

**POR TODO LO CUAL**, respetuosamente se solicita del Honorable Tribunal, que, previo los trámites de ley, declare esta Demanda CON LUGAR y en virtud de la misma dicte Sentencia proveyendo lo siguiente:

a. Que determine a la parte demandada a satisfacer en forma solidaria a BPPR las partidas reclamadas en el párrafo número 17 de este escrito más intereses según provisto por la Regla 44.3 de las de Procedimiento Civil.

b. Que ordene la venta en pública subasta de la propiedad antes descrita para aplicar el importe de la venta al saldo de la deuda incluyendo los gastos de la venta judicial y la suma pactada para costas, gastos y honorarios de abogado en que se incurra como consecuencia de este Procedimiento.

c. Que de quedar algún remanente del importe de la venta del inmueble hipotecado éste sea depositado en la Secretaría del Tribunal para ser entregado a la parte demandada.

d. Que se dicte cualquier otra providencia que en derecho proceda.

**RESPETUOSAMENTE SOMETIDO.**

En San Juan Puerto Rico, a 22 de Enero de 2016.



**MARTÍNEZ & TORRES LAW OFFICES, P.S.C.**
P.O. Box 192938
San Juan, Puerto Rico  00919-2938
Tel (787) 767-8244
Fax (787) 767-1183

Por: **Irelís Pérez Nieves**
Correo Electrónico: iperez@martineztorreslaw.com
Número de RUA: 17137
Número de Colegiado: 18545

14-10-202702

App. Ap. pp. 302

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 11-06637 MCF |
| JUAN CARLOS BALCELLS GALLARETA | CHAPTER 7 |
| Debtor(s) | |
| BANCO POPULAR PUERTO RICO - MORTGAGE DIVISION | 11 USC 362 d(1) d(2) |
| Movant | Relief from stay for cause |
| JUAN CARLOS BALCELLS GALLARETA and Chapter 7 Trustee, NOREEN WISCOVITCH-RENTAS | |
| Respondent(s) | |

## MOTION FOR RELIEF FROM STAY

TO THE HONORABLE COURT:

Comes now, BANCO POPULAR PUERTO RICO - MORTGAGE DIVISION, secured creditor, represented by the undersigned attorney who respectfully pray and state as follows:

1. Jurisdiction over subject matter is predicated on section, 1334 and 157(b) 2(G), 28 USC.

2. The cause of action is based on section 362 d(1) and d(2), 11 USC.

3. In this case, an Order for Relief was entered on August 05, 2011.

4. Movant is the holder in due course of a Mortgage Note, hereinafter the (Note), for $132,925.00, bearing interest of 7%, due on January 01, 2017. Exhibit A-1.

5. Since the filing date, debtor account has accumulated **Post Petition** arrears as described in Exhibit (A) of this motion, Verified Statement in compliance with LBR 4001-1(d)(3) **and any other arrears that continue to accrue up to the date all post petitions arrears are paid.**

6. Movant argues that considering what is here in above stated, cause exists for granting relief from the stay pursuant to section 362 d(1) d(2), supra, since debtor has failed to make post petition payments accordingly.

Included as Exhibit (B), is movant Verified Statement regarding the information required by the Service Member Civil Relief Act of 2003 and a Department of Defense Manpower Data Center Military Status Report.

7. Said default deprive movant to have its security interest protected as provided under the Bankruptcy Code.

8. If an order is entered granting the relief herein requested, the Chapter 7 Trustee shall be allowed to discontinue disbursements, if any were pending to the secured claim related to the note referred to in this motion an Exhibit A.

WHEREFORE, movant prays for an Order granting the Relief from Stay as requested.

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that on this date copy of this motion has been electronically filed with the Clerk of the Court using the CM/ECF system which will sent notification of such filing to debtor(s) attorney and to NOREEN WISCOVITCH-RENTAS, US Chapter 7 Trustee, and also certify that I have mailed by United State Postal Service copy of this motion to the following non CM/ECF participant to debtor(s) at theirs address of record in this case.

In San Juan, Puerto Rico, on the 9 day of JULY , 2015.

**CARDONA JIMENEZ LAW OFFICES, PSC**
Attorney for BANCO POPULAR PUERTO RICO -
MORTGAGE DIVISION
PO Box 9023593
San Juan, PR 00902-3593
Tels: (787) 724-1303, Fax No. (787) 724-1369
E-mail: jf@cardonalaw.com

**s/Vivian Ortiz Ponce**, USDC PR 211611
vortiz@cardonalaw.com

# BANCO POPULAR DE PUERTO RICO
## <u>Request for Legal Action</u>

<div style="border:1px solid black">

## EXHIBIT - A

</div>

TO: **Cardona - Jimenez Law Office**

Loan Number: 0111

Debtor: JUAN CARLOS BALCELLS GALLARETA

Debtor:

---

BKR #: 11-06637      Date Filed: 08/05/11

Total Payments Due: 14      Pre-Petition: 2      Post-Petition: 12

---

**Post-Petition Arrears:**

| | | | |
|---|---|---:|---:|
| 14 | Months @ | 1,105.00 | 15,470.00 |
| 0 | Months @ | 0.00 | 0.00 |
| 0 | Months @ | 0.00 | 0.00 |
| 14 | Late Charges @ | 44.20 | 618.80 |

|  |  |
|---|---:|
| **SUBTOTAL** | $16,088.80 |
| Attorney Fees | 399.00 |
| Inspections | 0.00 |
| Filing Fees | 176.00 |
| Other Charges | 51.76 |
| **TOTAL** | $16,715.56 |

**NOTE:**
All reinstallment payments must be made up to the current month, including legal fees and late charges.

**DUE DATE:** 06/01/14      **PRINCIPAL BALANCE** $29,812.65

---

## STATEMENT OF ACCOUNT

| DEBTOR: | Juan C. Balcells Gallarret | | BPPR NUM: | 0111 |
|---|---|---|---|---|
| BANKRUPTCY NUM: | 11-06637MCF | | FILING DATE: | 08/05/11 |

### SECURED LIEN ON REAL PROPERTY

| | | | |
|---|---|---|---|
| Principal Balance as of | 06/01/14 | | 29,812.65 |
| Accrued Interest from | 05/01/14 to 05/31/15 | | 2,260.79 |
| Interest: 7.000% | Accrued num. of days: 390 | Per Diem: 5.796904 | |

**Monthly payment to escrow**

| | | | | | |
|---|---|---|---|---|---|
| Hazard | $0.00 | Taxes | $0.00 | MIP | $0.00 |
| A&H | $0.00 | Life | $0.00 | | |
| **Total montly escrow** | | $0.00 | Months in arrears 12 | Escrow in arrears | 0.00 |
| | | | | Accrued Late Charge: | 758.96 |

**Advances Under Loan Contract:**

| | | | | | |
|---|---|---|---|---|---|
| Title Search | $35.00 | Tax Certificate | $0.00 | Inspection $0.00 | 55.00 |
| Other | $20.00 | | | | |
| Legal Fees: | | | | | 0.00 |
| Total amount owed as of | | 05/31/15 | | | 32,887.40 |

### AMOUNT IN ARREARS

| | | | |
|---|---|---|---|
| **PRE-PETTITION AMOUNT:** | | | |
| 2 | payments of | $1,105.00 each one | 2,210.00 |
| | acummulated lated charges | | 88.40 |

**Advances Under Loan Contract:**

| | | | | | |
|---|---|---|---|---|---|
| Title Search | $35.00 | Tax Certificate | $0.00 | Inspection $0.00 | 55.00 |
| Other | $20.00 | | | | |
| Legal Fees | | | | | 0.00 |
| | | | | A = TOTAL PRE-PETITION AMOUNT | 2,353.40 |

| | | | |
|---|---|---|---|
| **POST-PETTITION AMOUNT:** | | | |
| 10 | payments of | $1,105.00 each one | 11,050.00 |
| | Late Charge | | 670.56 |
| | | B = TOTAL POST-PETITION AMOUNT | 11,720.56 |
| | | A + B = TOTAL AMOUNT IN ARREARS | 14,073.96 |

### OTHER INFORMATION

| | | | | |
|---|---|---|---|---|
| Next pymt due | 06/01/14 | Interest rate 7.000% P & I | $1,030.56 Monthly late charge | $44.20 |
| Investor | BANCO POPULAR DE PUERTO RICO | Property address | URB. VILLA REALES E-33 GUAYNABO PR 00965 | |

The subscribing representative of Banco Popular de Puerto Rico declares under penalty of perjury that according to the information gathered by Banco Popular de Puerto Rico the foregoing is true and correct.

_(signature)_

BANCO POPULAR DE PUERTO RICO

05/22/15

DATE

SACCTFHA   Gerardo Caceres

Case 11-06637 Doc#... Filed 09/01/... Entered 09/... Desc Main Exhibit Document Page 5 of 19



**LORD TITLE SERVICE CO.**
713 ANDALUCIA AVENUE PUERTO NUEVO
SAN JUAN, PUERTO RICO 00920
WWW.LORDTITLE.COM

*PHONE: (787) 774-1660*
*FAX: (787) 782-3888*
*TSEARCH@LORDTITLE.COM*

Notice:

**CASE:** CARDONA JIMENEZ LAW OFFICES

**RE:** JUAN C. BALCELLS GALLARETA

Gloriann Bankruptcy #11-06637

9536

**PROPERTY NUMBER:** #41852 recorded at page 250 of volume 1197 of Guaynabo, Property Registry of Guaynabo, .

**DESCRIPTION: URBANA:** Solar radicado en la Urbanización Villas Reales, localizada en el Barrio Santa Rosa del término municipal de Guaynabo, Puerto Rico, que se describe en el plano de inscripción con el número, área y colindancias que se relacionan a continuación: Número del solar 33 del bloque E, área del solar 375.42 metros cuadrados, en lindes por el NORTE, en una distancia de 25.08 metros lineales, con el solar #32 del mismo bloque; por el SUR, en una distancia de 25.00 metros lineales, con el solar #34 del mismo bloque; por el ESTE, en dos alineaciones continuas que suman 15.10 metros lineales, con parcela de uso público; y por el OESTE, en una distancia de 15.00 metros lineales, con la calle #7 de la Urbanización, también conocida como Calle Versalles. Enclava una casa en concreto para fines residenciales. Se halla afecto este solar par fines residenciales. Servidumbre en equidad: franja de terreno de 1.00 metros de ancho por 25.00 metros de largo aproximadamente, que discurre a lo largo de su colindancia Sur, la cual será utilizada para pintar, proteger la pared de su casa, dar mantenimiento y cualquier otra reparación que sea necesaria a favor del solar #34.

**ORIGIN:** Main Property #39352 recorded at page 100 of volume 1119 of Guaynabo

**FEE SIMPLE:** Title is vested in favor of JUAN CARLOS BALCELLS GALLASSETA and his wife AMARILIS GONZALEZ GARCIA who acquired for the purchase price of $189,642.00 from Villas Reales S.E. pursuant to Deed #14 executed in San Juan on December 17, 1996 before Notary Public José Carlos González Bonilla, recorded at page 250 of volume 1197 of Guaynabo, property #41852 and Inscription 1st and last.

**ENCUMBRANCES:** By its origin: Easement in favor of AAA, AEE, PRTC, Restrictive Conditions, property #29445 of United State of America.

**BY ITSELF:** Mortgage guaranteeing a note in favor of RG Mortgage Corp. and/or its assigns for the amount of $132,925.00 at 7% interest yearly, due on January 1, 2017, constituted pursuant to Deed #577 executed in San Juan on December 17, 1996 before Notary Public Heberto J. De Vizcarrondo Armstrong recorded at page 250 of volume 1197 of Guaynabo , property #41852, Inscription 1st and last.

**NOTE: NEW INFORMATION SUBMITTED TO THE PROPERTY REGISTRY, MAY TAKE A FEW DAYS TO BE REFLECTED INTO THE AGORA ELECTRONIC SYSTEM. WE ARE NOT LIABLE FOR ERRORS AND / OR OMISSIONS CREATED BY THIS SITUATION.**

Run for stales attachments, including Law #12 of 2010 and federal attachments, judgments and Electronic Daily Log up to entry of book (Agora System).

November 28, 2011

1111-0423

NOEL A. HERNANDEZ GUZMAN
PRESIDENT

39-F



Commonwealth of Puerto Rico

FHA CASE NO. 501-5252342-703

# ---------------MORTGAGE NOTE--------------
# --------------PAGARE HIPOTECARIO-------------

US $132,925.00     San Juan, Puerto Rico     December 17th, 1996

1. "Borrower" means each person signing at the end of this Note, and the
1. "Deudor Hipotecario" significa cada persona que firma al final de este Pagaré, y sus

person's successors and assigns. "Lender" means R&G MORTGAGE CORPORATION
sucesores y cesionarios. "Acreedor Hipotecario" significa ----------------------

and its successors and assigns.-----------------------------------------------
y sus sucesores y cesionarios.-------------------------------------------------

2. In return for a loan received from Lender, Borrower promises to pay
2. A cambio de un préstamo recibido del Acreedor Hipotecario, el Deudor Hipotecario se

the principal sum of ONE HUNDRED THIRTY TWO THOUSAND NINE HUNDRED TWENTY FIVE
obliga a pagar la cantidad principal de -----------------------------------

Dollars (U.S.$132,925.00-----------), plus interest, to the order of the
                Dólares (U.S.$ ---------), más intereses, a la orden

Lender. Interest will be charged on unpaid principal, from the date of
del Acreedor Hipotecario. Se cargará intereses sobre el principal adeudado, desde la fecha

disbursement of the loan proceeds by Lender, at the rate of SEVEN------
en que el Acreedor Hipotecario desembolse el producto del préstamo a razón de

------- per cent ( -7- %) per year until the full amount of principal
-------- por ciento ( ------- %) anual hasta que el principal haya sido totalmente

has been paid.-----------------------------------------------------------------
pagado.------------------------------------------------------------------------

3. Borrower's promise to pay is secured by a mortgage that is dated the
3. La obligación de pagar del Deudor Hipotecario está garantizada por una hipoteca, otor-

same date as this Note and called the "Security Instrument". The Security
gada en la misma fecha de este Pagaré, denominada "Hipoteca". La Hipoteca protege al Acree-

Instrument protects the Lender from losses which might result if Borrower
dor Hipotecario de pérdidas que podrían resultar si el deudor Hipotecario incumpliere con los

defaults under this Note.------------------------------------------------------
términos de este Pagaré.-------------------------------------------------------

4. (A) Borrower shall make a payment of principal and interest to Lender
4. (A) El Deudor Hipotecario hará un pago de principal más intereses, al Acreedor Hipo-

on the first day of each month beginning on FEBRUARY , 19 97 . Any
tecario el primer día de cada mes, comenzando en ------------ de 19 -- . Cualquier prin-

principal and interest remaining on the first day of JANUARY , 2017 , will
cipal más intereses adeudados al día primero de ------------ del 20 -- , vencerá en esa

be due on that date, which is called the maturity date.-----------------------
misma fecha que es denominada la fecha de vencimiento.-------------------------

(B) Payment shall be made at the address notified to Borrower at
(B) El pago será efectuado en la dirección notificada al Deudor Hipotecario en el

closing or at such place as Lender may designate in writing by notice to
cierre o en cualquier otro lugar que el Acreedor Hipotecario designe por escrito con notifi-

Borrower.----------------------------------------------------------------------
cación al Deudor Hipotecario.--------------------------------------------------

(C) Each monthly payment of principal and interest will be in the
(C) Cada pago mensual de principal más intereses será por la cantidad de

amount of ONE THOUSAND THIRTY DOLLARS AND FIFTY SIX CENTS ----- (U.S.$1,030.56--).
----------------------------------------------------------------(U.S.$ -------- ).

App. Ap. pp.308

This amount will be part of a larger monthly payment required by the Secu-
Esta cantidad es parte de un pago mensual mayor, requerido por la Hipoteca que será apli-

rity Instrument, that shall be applied to principal, interest and other
cado al principal, intereses y a otros conceptos en el orden descrito en la Hipoteca.--------

items in the order described in the Security Instrument. --------------------
-----------------------------------------------------------------------------------

5. Borrower has the right to pay the debt evidenced by this Note, in
5. El Deudor Hipotecario tiene el derecho de pagar la deuda evidenciada por este Pagaré,

whole or in part, without charge or penalty, on the first day of any month.
total o parcialmente, sin recargo ni penalidad, el primer día de cualquier mes. El Acreedor

Lender shall accept prepayment on other days provided that Borrower pays
Hipotecario aceptará el prepago cualquier otro día siempre que el Deudor Hipotecario pague

interest on the amount prepaid for the remainder of the month to the extent
intereses en la cantidad prepagada por el resto del mes requerido por el Acreedor Hipotecario

required by Lender and permitted by regulations of the Secretary. If
y permitido por la reglamentación del Secretario. Si el Deudor Hipotecario hace prepagos

Borrower makes a partial prepayment, there will be no changes in the due
parciales, no habrá cambios en la fecha de vencimiento o la cantidad de pago mensual a menos

date or in the amount of monthly payment unless Lender agrees in writing to
que el Acreedor Hipotecario acepte los cambios por escrito.--------------------------------

those changes.----------------------------------------------------------------------
-----------------------------------------------------------------------------------

6. (A) If Lender has not received the full monthly payment required by
6. (A) Si el Acreedor Hipotecario no hubiere recibido el pago total mensual requerido

the Security Instrument, as described in Paragraph 4(C) of this Note, by
por la Hipoteca, tal como se describe en el párrafo 4(C) de este Pagaré, al cabo de quince

the end of fifteen (15) calendar days after the payment is due, Lender may
(15) días calendarios después del vencimiento del pago, el Acreedor Hipotecario podrá cobrar

collect a late charge in the amount of four percent (4.00%) of the overdue
un recargo por demora en la cantidad de un cuatro por ciento (4.00%) de la suma atrasada de

amount of each payment.----------------------------------------------------------------
cada pago.--------------------------------------------------------------------------

(B) If Borrower defaults by failing to pay in full any monthly pay-
(B) Si el Deudor Hipotecario incumpliere por no efectuar el pago completo de cual---

ment, then Lender may, except as limited by regulations of the Secretary
quier pago mensual, entonces, el Acreedor Hipotecario podrá, sujeto a las limitaciones regla-

in the case of payment defaults, require immediate payment in full of the
mentarias del Secretario para el caso de incumplimiento por falta de pago, exigir el pago

principal balance remaining due and all accrued interest. Lender may
total inmediato del saldo impagado del principal y de todos los intereses acumulados. El

choose not to exercise this option without waiving its rights in the event
Acreedor Hipotecario podrá elegir no ejercitar esta opción sin renunciar a sus derechos en

of any subsequent default. In many circumstances regulations issued by the
caso de cualquier incumplimiento subsiguiente. En muchas circunstancias las reglamentaciones

Secretary will limit Lender's rights to require immediate payment in full
emitidas por el Secretario limitan los derechos del Acreedor Hipotecario para exigir el pago

in the case of payment defaults. This Note does not authorize acceleration
total inmediato por incumplimiento en el pago de plazos vencidos. Este Pagaré no autoriza la

when not permitted by HUD regulations. As used in this Note, "Secretary"
aceleración de su vencimiento cuando los reglamentos de HUD no lo permitan. Tal como se usa

means the Secretary of Housing and Urban Development or his or her
en este Pagaré, la palabra "Secretario" significa el Secretario del Departamento de

designee.--------------------------------------------------------------------------------
Desarrollo Urbano y Vivienda de los Estados Unidos de América o su representante.------------

-----------------------------------------------------------------------------------

(C) If Lender has required immediate payment in full, as described
(C) Si el Acreedor Hipotecario ha exigido el pago total inmediato, según se describe

above, Lender may require Borrower to pay costs and expenses including rea-
anteriormente, podrá requerirle al Deudor Hipotecario que pague costas y gastos, incluyendo

sonable and customary attorney's fees for enforcing this Note to the extent
honorarios de abogado razonables y acostumbrados, hasta el máximo por la ley aplicable para

not prohibited by applicable law. Such fees and costs shall bear interest
exigir el cumplimiento de este Pagaré. Dichos honorarios, costas y gastos devengarán

from the date of disbursement at the same rate as the principal of this
intereses, desde el día de su desembolso, al mismo tipo que el principal de este Pagaré.-----

Note.----------------------------------------------------------------------
----------------------------------------------------------------------------

7. Borrower and any other person who has obligations under this Note
7. El Deudor Hipotecario y cualquier otra persona que esté obligada bajo este Pagaré,

waive the rights of presentment and notice of dishonor. "Presentment"
renuncian a los derechos de presentación y aviso de rechazo. "Presentación" significa el

means the right to require Lender to demand payment of amounts due.
derecho de requerirle al Acreedor Hipotecario que demande el pago de las cantidades vencidas.

"Notice of Dishonor" means the right to require Lender to give notice to
"Aviso de Rechazo" significa el derecho de requerirle al Acreedor Hipotecario notificar a

other persons that amounts due have not been paid.------------------------
otras personas que las cantidades vencidas no han sido pagadas.-----------------------

8. Unless applicable law requires a different method, any notice that
8. Salvo que el Derecho aplicable requiera un método distinto, cualquier notificación que

must be given to Borrower under this Note will be given by delivering it or
deba hacerse al Deudor Hipotecario bajo este Pagaré se hará mediante entrega o por correo de

by mailing it by first class mail to Borrower at the Property address below
primera clase, dirigida al Deudor Hipotecario, a la dirección de la Propiedad abajo indicada

or at a different address if Borrower has given Lender a notice of Borrow-
o a una dirección diferente, si el Deudor Hipotecario le ha notificado al Acreedor Hipoteca-

er's different address.----------------------------------------------------
rio de una dirección diferente.-----------------------------------------------

Any notice that must be given to Lender under this Note will be given
Cualquier notificación que se deba hacer al Acreedor Hipotecario bajo este Pagaré le

by first class mail to Lender at the address stated in Paragraph 4(B) or at
será hecha por correo de primera clase a la dirección expresada en el Párrafo 4(B) o a una

a different address if Borrower is given a notice of that different
dirección diferente si al Deudor Hipotecario le ha sido notificada una dirección diferente.--

address.-------------------------------------------------------------------
----------------------------------------------------------------------------

9. If more than one person signs this Note, each person is fully and
9. Si más de una persona firma este Pagaré, cada una queda total y personalmente obligada

personally obligated to keep all of the promises made in this Note, includ-
a cumplir todos los compromisos contraídos en este Pagaré, incluyendo el de pagar la cantidad

ing the promise to pay the full amount owed. Any person who is a guaran-
total adeudada. Cualquier persona que sea garantizadora, fiadora o endosante de este Pagaré

tor, surety or endorser of this Note is also obligated to do these things.
está también obligada a cumplir lo estipulado. Cualquier persona que asume estas obligacio-

Any person who takes over these obligations, including the obligations of a
nes, incluyendo las obligaciones de un garantizador, fiador o endosante de este Pagaré, tam-

guarantor, surety or endorser of this Note, is also obligated to keep all
bién está obligada a cumplir todos los compromisos contraídos en el mismo. El Acreedor

of the promises made in this Note. Lender may enforce its rights under
Hipotecario podrá hacer valer sus derechos bajo este Pagaré en contra de cada persona indivi-

this Note against each person individually or against all signatories

ualmente o en contra de todos los signatarios conjuntamente. A cualquier suscribiente de

**together.** Any one person signing this Note may be required to pay all of
este Pagaré le podrá ser requerido el pago de todas las cantidades adeudadas bajo el mismo.

**the amounts owed under this Note.**------------------------------------------------
-------------------------------------------------------------------------------------

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and cove-
AL SUSCRIBIR este Pagaré el Deudor Hipotecario acepta y está de acuerdo con los térmi-

**nants contained in this Note.**-----------------------------------------------------
nos y pactos contenidos en el mismo.-----------------------------------------------

    This Note is secured by a mortgage executed by Deed number ---577----
Este Pagaré está garantizado por Hipoteca constituida por la Escritura Número ------

**of this same date before the subscribing Notary.**-----------------------------
otorgada en esta misma fecha ante el Notario suscribiente.-----------------------

    In San Juan------------- , Puerto Rico, on December 17th,------1996.
En --------------------- , Puerto Rico, a ---------- de 19 --

LOQUE E LOTE 33
RB. VILLA REALES
GUAYNABO, PUERTO RICO

         JUAN CARLOS BARCELLS GALLARRETA

         AMARILIS GONZALEZ GARCIA

         Borrower(s)
         Deudor(es) Hipotecario(s)

**Property Address**
Dirección de la Propiedad

**Affidavit Number 18,560**
Afidávit Número ------

---Subscribed to before me by the issuers, who are of legal age, married
to each other, property owners and residents of Bayamón, Puerto Rico, on
the date and place above mentioned.

PAY TO THE ORDER OF
DPPX

Pay to the order of
without recourse
BANCO POPULAR DE PUERTO RICO

WITHOUT RECOURSE
R&G Mortgage Corp.

By:

Case 14-36546-LMI Doc 1096-1 Filed 06/02/21 Page 1 of 19 Entered 06/02/21 15:02:55 Main
Exhibit Document Page 1 of 19

FHA CASE NO. 501-5252342-703

---NUMBER FIVE HUNDRED SEVENTY SEVEN (577)-----------
---Número-------------------------------------------

----------------FIRST MORTGAGE-------------------
----------------PRIMERA HIPOTECA------------------

---In San Juan----------, Commonwealth of Puerto
---En -----------------, Estado Libre Asociado de

Rico, this seventeen (17)---day of December-------
Puerto Rico, el -----------de ---------------- de Mil

Nineteen Hundred and Ninety- six (1996).---------
Novecientos Noventa y -----------------------------

--------------------BEFORE ME--------------------
--------------------ANTE MI----------------------

HEBERTO J. DE VIZCARRONDO ARMSTRONG--, Notary Public in
-------------------------------, Notario Público de

Puerto Rico, with offices at LIFETIME BUILDING, QUISQUEYA
Puerto Rico, con oficinas en AVENUE, HATO REY, PUERTO RICO---

and residence in San Juan-----------, Puerto Rico.
y residencia en -------------------------, Puerto Rico.

--------------------APPEAR-----------------------
--------------------COMPARECEN-------------------

---The parties mentioned in Paragraphs Ninth and
---Las partes nombradas en los Párrafos Noveno y Décimo de esta

Tenth of this Deed, hereinafter called the "Bor-
Escritura, denominadas de aquí en adelante "Deudor Hipotecario"

rower" and the "Lender", whose personal circum-
y "Acreedor Hipotecario", cuyas circunstancias personales apa-

stances are set forth in said paragraphs.---------
recen en dichos párrafos.--------------------------,

---The appearing parties assure me that they are
Asegúranme los comparecientes hallarse en el pleno goce de sus

in the full exercise of their civil rights without
derechos civiles, sin que me conste nada en contrario, y

anything to the contrary being known to me, and
teniendo a mi juicio la capacidad legal necesaria para este

being in my judgment legally competent to execute
otorgamiento, libremente--------------------------

this document, they freely-----------------------
--------------------------------------------------

--------------STATE AND COVENANT----------------
--------------DECLARAN Y CONVIENEN--------------

FIRST: That the Borrower is the owner of the
PRIMERO: Que el Deudor Hipotecario es dueño de la propiedad o

property or properties described in Paragraph
propiedades descritas en el Párrafo Octavo de esta Escritura,

Eighth of this Deed, hereinafter called the "Prop-
denominada en lo sucesivo la "Propiedad" y tiene el derecho

erty" and has the right to mortgage the Property;
de hipotecar la Propiedad; que la Propiedad está libre de

that the Property is unencumbered, except for
cargas y gravámenes, excepto por las cargas inscritas y que el

Page 1 of 31          Puerto Rico Revised Form August 1996

App. Ap. pp.312

Case 23-09033-ESL Doc ... Filed ... Entered ... Desc Main Exhibit ... Page 11 of 19

encumbrances of record and that the Borrower will
*Deudor Hipotecario garantizará y defenderá su título a la Pro-*

warrant and defend the title to the Property
*piedad contra toda reclamación y demanda.*

against all claims and demands.

SECOND: That as evidence of a loan received from
*SEGUNDO: Que como evidencia de un préstamo recibido del Acree-*

Lender, the Borrower as of this date has sub-
*dor Hipotecario, el Deudor Hipotecario ha suscrito en esta*

scribed a promissory note in the sum of ONE
*misma fecha un pagaré por la suma de*

HUNDRED THIRTY TWO THOUSAND NINE HUNDRED TWENTY
FIVE
Dollars (US $ 132,925.00————) with interest at
*Dólares (US $ ————————) con intereses a razón del*

the rate of SEVEN ———————— percent
*———————— por ciento ( ———— %) anual,*

( -7- %) per annum until the total satisfaction
*hasta el saldo total del mismo, pagadero a favor de ————*

of the same, payable to R&G MORTGAGE CORPORATION
*———————————————— o a su orden y*

———————————— or its order, the principal
*pagadero el principal e intereses en plazos mensuales ————*

and interest being payable in monthly installments
*de ————————————————————*

of ONE THOUSAND THIRTY DOLLARS AND FIFTY SIX CENTS ————
Dollars (US $ 1,030.56————)—commencing on the first
*Dólares (US $ ————————) comenzando el día primero de*

day of FEBRUARY , Nineteen Hundred Ninety-Seven
*de Mil Novecientos Noventa y ————————*

(1997 ) and a like amount on the first day of each
*(199 _) e igual cantidad en cada uno de los días primero de*

succeeding month until full payment of the debt,
*cada mes subsiguiente hasta el pago total de la deuda, la cual*

which if not paid earlier, will be totally due and
*si no es pagada antes, será totalmente vencedera y pagadera el*

payable on the first day of JANUARY , Two
*primer día de ———————— del————————*

Thousand Seventeen (20 17) authenticated by
*Dos Mil ——————— (20 17 ) autenticado por el*

the authorizing Notary, as per Affidavit Number
*Notario autorizante, bajo Afidávit Número*
EIGHTEEN THOUSAND FIVE HUNDRED SIXTY (18,560)————

THIRD: In order to guarantee the total and com-
*TERCERO: Con el propósito de garantizar el total y completo*

plete payment of the debt as evidenced by the
*pago de la deuda que evidencia el pagaré descrito anteriormente,*

above described promissory note, as well as each
*así como todas y cada una de las condiciones que el mismo con-*

App. Ap. pp.313

translations.-------------------------------------------
-------------------------------------------------------

**EIGHTH:** **Description and Registration Data of th**
OCTAVO: Descripción y Datos de Inscripción de la Propiedad

**Property.**-----------------------------------------
-------------------------------------------------------

---URBANA: Solar radicado en la Urbanización
Villas Reales, localizada en el Barrio Santa Rosa
del término municipal de Guaynabo, Puerto Rico,
que se describe en el plano de inscripción, con el
número, área y colindancias que se relacionan a
continuación:------------------------------------------

---NUMERO DEL SOLAR: TREINTA Y TRES (33) DEL
bloque "E" (E-33)-------------------------------------

---AREA DEL SOLAR: TRESCIENTOS SETENTA Y CINCO
PUNTO CUARENTA Y DOS (375.42) METROS CUADRADOS.--

---EN LINDES: por el NORTE, en una distancia de
veinticinco punto cero siete (25.08) metros
lineales, con el Solar Número Treinta y Dos (32)
del mismo Bloque; por el SUR, en una distancia de
veinticinco (25.00) metros lineales, con el solar
Número Treinta y Cuatro (34) del mismo bloque; por
el ESTE, en dos alineaciones continuas que suman
quince punto diez (15.10) metros lineales, con
parcela de uso público; y por el OESTE, en una
distancia de quince (15.00) metros lineales, con
la Calle Número Siete (7) de la Urbanización,
también conocida como "Calle Versalles".-----------

---Enclava una casa en concreto para fines
residenciales.----------------------------------------

---Se halla afecto este solar la(s) para fines
residenciales(s):-------------------------------------

---SERVIDUMBRE EN EQUIDAD: Franja de terreno de un
(1.00) metro de ancho por veinticinco (25.00)
metros de largo aproximadamente, que discurre a lo
largo de su colindancia SUR, la cual será
utilizada para pintar, proteger la pared de su
casa, dar mantenimiento y cualquier otra
reparación que sea necesaria a favor del solar
número Treinta y Cuatro (34).-------------------------

---Segregación de la finca número treinta y tres
mil cuatrocientos noventa y tres (33,493) inscrita
al folio doscientos cuarenta y dos (242) del tomo
novecientos diecisiete (917), de Guaynabo,
inscripción cuarta y última, Registro de la
Propiedad de Guaynabo.--------------------------------

-------------BLOQUE E LOTE 33---------------------
----------------URB. VILLA REALES----------------------
-----------------GUAYNABO, PUERTO RICO-----------------

---------------------------------------------------
---------------------------------------------------
---------------------------------------------------

App. Ap. pp.314

**NINTH:** Borrower (Notary's Personal Knowledge or
**NOVENO:** Deudor Hipotecario (Fe Notarial de Conocimiento Perso-

Form of Identification.------------------------------------
nal o Identificación).------------------------------------

---JUAN CARLOS BARCELLS GALLARRETA, Social
Security "5    ", and his wife, AMARILIS
GONZALEZ GARCIA, Social Security "        ",
both of legal age, property owners and residents
of Bayamón, Puerto Rico.--------------------------
---I, the Notary, hereby certify that not being
personally acquainted with the borrowers  I have
identified them in accordance to the Notarial Law
by their Puerto Rico's Drivers License, (JUAN
CARLOS) Number "1338929" and (AMARILIS) Number
"1604534", respectively    contained    their
signatures and photographs.--------------------------

------------------------------------------------
------------------------------------------------
------------------------------------------------
------------------------------------------------
------------------------------------------------
------------------------------------------------
------------------------------------------------
------------------------------------------------
------------------------------------------------
------------------------------------------------
------------------------------------------------
------------------------------------------------
------------------------------------------------
------------------------------------------------

Page 28 of 31             Puerto Rico Revised Form August 1996

TENTH: Lender (Notary's Personal Knowledge c
DECIMO: Acreedor Hipotecario (Fe Notarial de Conocimien:

Form of Identification). Lender is----------------
Personal o Identificación). El Acreedor Hipotecario es ------

---R&G MORTGAGE CORPORATION Employer Number
"             ", and in its place and stead,
ISMENIA ISIDOR RODRIGUEZ, of legal age, married,
executive and resident of Guaynabo, Puerto Rico,
who is personally known to the undersigned Notary
Public and who appears pursuant to that certain
Corporate Resolution executed by its Secretary,
Ana María Armendáriz Camps on January eleventh
(11th) nineteen hundred ninety six (1996) under
Affidavit Number "32,240" before Notary Public
Francisco M. Vásquez Santoni.-----------------------

Case:20-00322-MCF1 Doc#:90-11 Filed:08/03/22 Entered:08/03/22 15:00:55 Main
Exhibit Exhibit DK Page 15 of 19

**EVENTH: Homestead Rights; Waiver.** To further
ECIMO: **Hogar Seguro; Renuncia.** Para mayor garantía de pago

cure payment of the Note, Borrower, in confor-
l Pagaré, el Deudor Hipotecario, de conformidad con las leyes

ty with the laws of the Commonwealth of Puerto
l Estado Libre Asociado de Puerto Rico, expresamente renuncia

.co, expressly waives in favor of Lender his
favor del Acreedor Hipotecario su derecho de hogar seguro so-

omestead and property rights, with all of the
e la Propiedad con todos los usos y derechos que en la actua-

ses and rights which he presently possesses or
lidad posee o que pueda poseer en el futuro, expresamente

ay in the future possess therein, expressly waiv-
renunciando a favor del Acreedor Hipotecario todos sus títulos,

ng in favor of Lender all of his titles, rights
erechos e intereses de cualquier clase o descripción en la

nd interests of any kind or description in the
ropiedad y en los edificios en ella construidos, que actual-

Property and in the buildings constructed thereon,
ente o en el futuro posea.------------------------------------

hich he presently possesses or may in the future
--------------------------------------------------------------

ossess.-------------------------------------------------------

-------------------------ACCEPTANCE---------------------
-------------------------ACEPTACIÓN---------------------------

---The appearing parties, Lender and Borrower,
---Los comparecientes, Acreedor y Deudor Hipotecario, aceptan

ccept this Deed in its entirety and I, the
sta Escritura en su totalidad y Yo, el Notario, les hice las

Notary, made to the appearing parties the neces-
advertencias legales pertinentes a su otorgamiento. Yo, el

ary legal warnings concerning its execution. I,
Notario, advertí a los comparecientes de su derecho a tener

the Notary, advised the appearing parties as to
testigos presentes en este otorgamiento, a cuyo derecho renun-

their right to have witnesses present at this
ciaron. Luego de haber sido leída esta Escritura por los

execution, which right they waived. The appearing
comparecientes, la ratifican totalmente y confirman que las

parties, having read this Deed in its entirety,
declaraciones contenidas en la misma reflejan fiel y exacta-

fully ratify and confirm the statements contained
mente sus estipulaciones, pactos y convenios, por lo que los

herein as the true and exact embodiment of their
comparecientes firman esta Escritura ante mí, el Notario, y

stipulations, covenants and agreements, whereupon
suscriben sus iniciales en todas y cada una de sus páginas.-----

the appearing parties sign this Deed before me,
--------------------------------------------------------------

Page 30 of 31          Puerto Rico Revised Form August 1996

App. Ap. pp.317

the Notary, and place their initials on each and
every page of this Deed.----------------------

---I, the Notary, do hereby certify and Attest a
---Yo, el Notario, por la presente certifico y DOY FE de tod

to everything stated or contained in this Deed.---
lo declarado y contenido en esta Escritura.-----------

SIGNED:    JUAN CARLOS BARCELLS GALLARRETA
           AMARILIS GONZALEZ GARCIA
           ISMENIA ISIDOR RODRIGUEZ

---- SIGNED, SEALED, MARKED AND FLOURISHED ----

------ HEBERTO J. DE VIZCARRONDO ARMSTRONG------

------------------ NOTARY PUBLIC ----------------

App. Ap. pp.318

I Hereby Certify, that this is a true and
exact copy of it's Original and of the
Certified copy that has been submitted
for recording in the corresponding
Property Registry.

**EXHIBIT B**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

IN THE MATTER OF:

JUAN CARLOS BALCELLS GALLARETA

        Debtor(s)

CASE NO. 11-06637 MCF

CHAPTER 7

## VERIFIED STATEMENT

I, José F. Cardona Jiménez of legal age, single, Attorney for Banco Popular Puerto Rico and resident of San Juan, Puerto Rico, declare under penalty of perjury as follows:

That as to this date July 06, 2015, by a search and review of the records kept by BANCO POPULAR PUERTO RICO - MORTGAGE DIVISION in the regular course of business in regard to debtor account with this bank there is no information that will lead the undersign to belief that debtor is a regular service member either on active duty or under a call to active duty, in the National Guard or as a Commission Officer of the Public Health Services or the National Oceanic and Atmospheric Administration (NOAA) in active duty.

The bank has not received any written notice from debtor that his military status has change as to this date.

That as part of my search I examined the documents and records available to me within our computer system.

IN TESTIMONY WHEREOF I SIGN THESE PRESENTS under penalty of perjury, in San Juan, Puerto Rico this 6th day of July, 2015.



Department of Defense Manpower Data Center

Results as of : Jul-06-2015 12:33:27 PM

SCRA 3.0

## Status Report
## Pursuant to Servicemembers Civil Relief Act

Last Name: **BALCELLS GALLARETA**

First Name: **JUAN**

Middle Name: **CARLOS**

Active Duty Status As Of: **Jul-06-2015**

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

JUAN CARLOS BALCELLS GALLARETA
DEBTOR

CASE NO. 11-06637 MCF

CHAPTER 7

NOREEN WISCOVITCH RENTAS
TRUSTEE FOR THE ESTATE OF JUAN BALCELLS
GALLARETA

Adv. No. 14-00137

Plaintiff

v.

AMARILIS GONZÁLEZ GARCÍA
Defendant

## REPLY TO OPPOSITION TO SUMARRY JUDGMENT

**TO THE HONORABLE COURT:**

**COMES NOW**, Plaintiff, the Chapter 7 Trustee of the Bankruptcy Estate of Juan Carlos

Balcells Gallareta, through the counsels, and respectfully show and pray:

### PRELIMINARY COUNTER-STATEMENT

The instant complaint was filed to request the approval of sale of property of the Bankruptcy

Estate and a co-owner, Defendant, pursuant 11 USC 363(h).

As the evidence included on the request for summary judgment shows, Defendant and Debtor

are the co-owners of the real estate property, subject of this complaint, acquired while they were

married. Debtor and Defendant divorced. However, the assets of the community property between

them, have not been liquidated.

App. Ap. pp.322

The real estate property, subject of this complaint, was designated as homestead by the Family Court, pursuant Sec. 109A of the Civil Code of Puerto Rico. This homestead right is not enforceable against creditors. Trustee sits as a good faith creditor. Thus, it does not affect the right to sell by Trustee.

In addition, both, Debtor and Defendant were ordered to maintain the mortgage payments. Defendant has occupied the property, but has failed to make the mortgage payments since <u>June 1, 2014</u>.

Defendant's actions have caused a detriment of property of the Bankruptcy Estate. Plaintiff, as administrator of the Estate, has requested a summary judgment providing evidence and presenting applicable law and caselaw that allows this Honorable Court to conclude that Defendant's actions are an abandonment and/or an extinction of the homestead right. In return, Defendant filed an objection to the request for summary judgment including a series of irrelevant and facts without submitting admissible evidence that do not establish a valid defense on a 363(h) cause of action.

### Reply to Defendant's Allegations

1.      Allegations of paragraph number one (1), and any evidence related to this allegation, are denied and objected due to inadmissibility of the allegations. The allegations at this paragraph are not related to a 363(h) cause of action and are inadmissible, pursuant Rule of Evidence 401.

### Reply to Defendant's Alleged Material Facts

1.      Allegations of paragraph number one (1) are denied for lack of evidence. In addition, the allegations at this paragraph are objected, pursuant Rule of Evidence 401, for the date of the divorce petition is irrelevant to a 363(h) cause of action. If anything, the allegations at this paragraph should be considered as an admission of Plaintiff's uncontested facts #1 and 2.

2.      Allegations of paragraph number two (2) are denied for lack of evidence in support thereof. If anything, the allegations at this paragraph should be considered as an admission of Plaintiff's uncontested facts #1 and 2.

3.  Allegations of paragraph number three (3) are denied in part and admitted in part. It is admitted that Defendant and Debtor were married, as alleged at Plaintiff's Uncontested Fact #1. The date of the marriage is denied for lack of evidence. The allegations at this paragraph are objected, pursuant Rule of Evidence 401. The allegations at this paragraph are irrelevant to a 363(h) cause of action.

4.  Allegations of paragraph number four (4) are objected, pursuant Rule of Evidence 401. Any determination of the Estate Court regarding child support is irrelevant to a 363(h) cause of action.

5.  Allegations of paragraph number five (5), and six (6) are objected, pursuant Rule of Evidence 401. The allegations at this paragraph are irrelevant to a 363(h) cause of action.

6.  Allegations of paragraph number seven (7) are objected, pursuant Rule of Evidence 401. The allegations at this paragraph are irrelevant to a 363(h) cause of action. If a response regarding these allegations be required, they are denied for lack of knowledge and evidence.

7.  Allegations of paragraph number eight (8), nine (9), and ten (10) are objected, pursuant Rule of Evidence 401. The allegations at this paragraph are irrelevant to a 363(h) cause of action. If a response regarding these allegations be required, they are denied for lack of knowledge and evidence.

8.  Allegations of paragraph number eleven (11) are objected, pursuant Rule of Evidence 401 and 408. The allegations at this paragraph are irrelevant to a 363(h) cause of action. In addition, any evidence related to compromise offers and/or any transactional negotiations is inadmissible. If a response regarding these allegations be required, they are denied for there was not an agreement between the parties, nor a stipulation was filed for approval at Court, pursuant Bankruptcy Rule 9019. *See Case #11-006637*.

9.  Allegations of paragraph number twelve (12) are objected, pursuant Rule of Evidence 401 and 408. The allegations at this paragraph are irrelevant to a 363(h) cause of action. In addition, any evidence related to compromise offers and/or any transactional negotiations is inadmissible. If a response regarding these allegations be required, they are denied for there was not an agreement

between the parties, nor a stipulation was filed for approval at Court, pursuant Bankruptcy Rule 9019.
*See Case #11-006637.*

10.    Allegations of paragraph number thirteen (13), fourteen (14), fifteen (15), sixteen (16)
and seventeen (17) are objected, pursuant Rule of Evidence 401. The allegations at this paragraph are
irrelevant to a 363(h) cause of action. If a response regarding these allegations be required, they are
denied for lack of evidence and/or knowledge.

11.    Allegations of paragraph number eighteen (18), nineteen (19), twenty (20), and twenty-
one (21) are objected, pursuant Rule of Evidence 401 and 408. The allegations at this paragraph are
irrelevant to a 363(h) cause of action. In addition, any evidence related to compromise offers and/or
any transactional negotiations is inadmissible. If a response regarding these allegations be required,
they are denied for there was not an agreement between the parties, nor a stipulation was filed for
approval at Court, pursuant Bankruptcy Rule 9019. *See Case #11-006637.*

12.    Allegations of paragraph number twenty-two (22) are denied. There was not an
agreement between the parties, nor a stipulation was filed for approval at Court, pursuant Bankruptcy
Rule 9019. The property involved at the instant case is completely part of the Bankruptcy Estate,
pursuant In re Lang, 191 B.R. 268 (Bankr. D.P.R. 1995). The allegations at this paragraph are objected,
pursuant Rule of Evidence 408.

13.    Allegations of paragraph number twenty-three (23), twenty-four (24), twenty-five (26),
twenty-seven (27) are objected, pursuant Rule of Evidence 401. The allegations at this paragraph are
irrelevant to a 363(h) cause of action. If a response regarding these allegations be required, they are
denied for lack of evidence and/or knowledge.

14.    Allegations of paragraph number twenty-eight (28) are denied. All of the documents
filed in support of the amended request for summary judgment were provided to Defendant's legal
counsels. Even if they were not produced, Exhibit 4 is an order from a legal proceeding where

Defendant is captioned as Plaintiff and was duly notified by the Bayamon Family Court on April 25, 2016.

15.     Allegations of paragraph number twenty-nine (29) are denied. The order included as Exhibit 4 demonstrates the non-compliance of Debtor with the court order filed by Defendant at *Dkt. 48, page 18*. Therefore, the confidentiality must be considered waived by Defendant. The confidentiality of family court proceedings is directed to protect the privacy of the family, minors, and custody. Contrary to the Order filed by Defendant, the summary judgment Exhibit 4 did not include any information related to minors, custody for those matters are not relevant to the instant case. The order filed by Plaintiff demonstrates Defendant's failure to comply with the Court's orders to make, or consign, mortgage payments of the real property that is property of the Bankruptcy Estate, over which this Honorable Court has jurisdiction.  In addition, the pending matters before the Supreme Court, if any, are related to the sanctions imposed to Defendant, and are not related to the mortgage payments or the property of the Bankruptcy Estate.

16.     Allegations of paragraph number thirty (30) are objected, pursuant Rule of Evidence 401. The allegations at this paragraph are irrelevant to a 363(h) cause of action. If a response regarding these allegations be required, they are denied for lack of evidence and/or knowledge.

17.     Allegations of paragraph number thirty-one (31) are admitted as alleged at Plaintiff's Uncontested Fact #19. *See page 4, Dkt 77*. It is denied that Plaintiff procrastinated any procedure, for Plaintiff was not notified of the foreclosure proceedings of Banco Popular, nor included at the complaint. In addition, it is not Plaintiff's responsibility to make mortgage payments or comply with the order from the Family Court.

18.     Allegations of paragraph number thirty-two (32), thirty-three (33), thirty-four (34) are objected, pursuant Rule of Evidence 401. The allegations at this paragraph are irrelevant to a 363(h) cause of action. If a response regarding these allegations be required, they are denied for lack of evidence and/or knowledge.

19.     Allegations of paragraph number thirty-five (35) are denied. Defendant fails to specify which cited cases are inapplicable to the facts of the instant adversary complaint and why. The cases cited at the Amended Summary Judgment are related to the application of the dispositions of the Bankruptcy Code to unliquidated community property as property of the Bankruptcy Estate.

The remaining allegations are objected, pursuant Rule of Evidence 401 for being irrelevant to a 363(h) cause of action and were not presented by Plaintiff. If a response regarding these allegations be required, they are denied.

20.     Allegations of paragraph number thirty-six (36) are denied. The title study, submitted as Exhibit 1 (at *Dkt. 77-1*) of the Amended Summary Judgment shows that the title of the real estate property subject of the instant adversary proceeding is vested in favor of both Debtor and Defendant. Therefore, any lien and/or encumbrance of the property, such as a mortgage, is responsibility of the title holders. In addition, the Family Court of Bayamon ordered both, Debtor and Defendant, to make mortgage payments in favor of Banco Popular. *See page, 18, Dkt 48.*

The remaining allegations are objected, pursuant Rule of Evidence 401 for being irrelevant to a 363(h) cause of action and were not presented by Plaintiff. If a response regarding these allegations be required, they are denied due to lack of evidence and/or knowledge.

21.     Allegations of paragraph number thirty-seven (37) are objected, pursuant Rule of Evidence 401. The allegations at this paragraph are irrelevant to a 363(h) cause of action. If a response regarding these allegations be required, they are denied due to lack of evidence and/or knowledge.

22.     Allegations of paragraph number thirty-eight (38) are denied. The homestead rights as stated by the Section 109-A of the PR Civil Code, 31 LPRA §385a, it is considered renounced in relation to a mortgage lien. *In re Rivera, 470 B.R. 109, (2012)*. This renouncement of the homestead is related to the subscription of a mortgage, not to the filing of a bankruptcy nor a divorce. At the instant case, Plaintiff, appears as a good faith creditor and in compliance with the duties stated at Section 544

of the Bankruptcy Code, is requesting the approval of sale of property of the Estate, pursuant 11 USC §363(h), for the benefit of Debtor's unsecured and secured (mortgage) creditors.

23.     Allegations of paragraph number thirty-nine (39) are objected, pursuant Rule of Evidence 401. The allegations at this paragraph are irrelevant to a 363(h) cause of action. if a response regarding these allegations be required, they are denied due to lack of evidence and/or knowledge.

24.     Allegations of paragraph number forty (40) are objected, pursuant Rule of Evidence 401. The allegations at this paragraph are irrelevant to a 363(h) cause of action.

If a response regarding these allegations be required, they are denied due to lack of evidence and/or knowledge. The property subject of the instant adversary complaint is property of the Bankruptcy Estate. See, In re Lang, *supra*. Only after unsuccessfully trying to reach an agreement with Defendant, Plaintiff is requesting the approval of the sale as administrator of the Estate, and as enforcer of the rights and powers of the secured creditor of the property, pursuant Sections 323 and 544 of the Bankruptcy Code.

25.     Allegations of paragraph number forty-one (41) are a conclusion of law that do not require an answer. The remaining of the paragraph is denied due to lack of evidence and/or knowledge.

26.     Allegations of paragraph number forty-two (42) are objected, pursuant Rule of Evidence 401. The allegations at this paragraph are irrelevant to a 363(h) cause of action. If a response regarding these allegations be required, they are denied.

**APPLICABLE LAW**

1.     At her opposition, Defendant cites a series of dispositions of the PR Civil Code and the Supreme Court of Puerto Rico. The application of the cited provisions at the present adversary proceeding clearly go against the Bankruptcy Code. Any state legislation which frustrates full effectiveness of federal law, such as the Bankruptcy Code, is rendered invalid by the supremacy clause.

_Kesler v. Department of Public Safety_, 369 U.S. 153, 7 L.Ed.2d 641, 82 S.Ct. 807, and _Reitz v. Mealey_,

314 U.S. 33, 86 L.Ed. 21, 62 S.Ct. 24 U.S.C.A. Const. art. 6, cl. 2.

2.    In addition, Defendant cites dispositions of the Bankruptcy Code to allege fraud by the

Debtor. Even if Debtor committed any fraud. These allegations are irrelevant to the case, pursuant Rule

of Evidence 401, and evidence in support thereof should be stricken from the record. An adversary

proceeding under Section 363(h) is not the correct proceeding to make such allegations and/or present

evidence thereof.

3.    The instant adversary proceeding is for the approval of sale of property of the

Bankruptcy Estate, pursuant Section 363(h). This section clearly states the factors that must be

considered:

> "(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest,
> under subsection (b) or (c) of this section, and the interest of any co-owner in property in which
> the debtor had, at the time of the commencement of the case, an undivided interest as a tenant
> in common, joint tenant, or tenant by the entirety, only if:
>> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>> (2) sale of the estate's undivided interest in such property would realize significantly less
>> for the estate than sale of such property free of the interests of such co-owners;
>> (3) the benefit to the estate of a sale of such property free of the interests of co-owners
>> outweighs the detriment, if any, to such co-owners; and
>> (4) such property is not used in the production, transmission, or distribution, for sale, of
>> electric energy or of natural or synthetic gas for heat, light, or power."

4.    All of the aforementioned requirements are met at the instant case.

5.    Defendant admits that there was a marital community property that has not been

liquidated. As resolved by this Honorable Court, when a person files for bankruptcy".... all that debtor's

property as well as the community property becomes property of the estate by operation of §541

(a)(2)(A) ... ". In re Lang, _supra_.

6.      As previously stated by this Honorable Court, the property is part of the Bankruptcy Estate and Plaintiff had a right to sell the property.

7.      The only defense presented by Defendant was that the property had been designated as homestead at the Family Court, pursuant Section 109A of the Civil Code of PR.

8.      However, this homestead right is not enforceable against creditors.  The purpose of the homestead right of the Civil Code is to protect minors in a family law against a former spouse, not a creditor. *See 31 L.P.R.A. §385a.*

9.      This right is renounceable in all cases of mortgages. *In re Rivera*, 470 B.R. 109, (2012).

10.     At the instant case, Plaintiff represents the Bankruptcy Estate in benefit of both secured and unsecured creditors. *See 11 USC 544.*

11.     In addition, both Debtor and Defendant subscribed a mortgage secured by the property subject of the instant case. Therefore, renouncing any homestead right with regards to the property. *In re Rivera*, *supra.*

12.     Since **June 1, 2014**, Defendant has failed to make and/or consign mortgage payments in default of the orders of Family Court of Bayamon and the divorce decree issued by the aforementioned Court. See *Exhibit 3 & 4, Dkt 77. See also page 3, Exhibit 6, Dkt. 77-6.*

13.     A homestead right, pursuant Section 109A of the Civil Code, was not enacted to protect people against mortgage creditors. Even Section 362(d)(1)(2) of the Bankruptcy Court allows for the automatic stay granted by Section 363 to be terminated, annulled, modified, or conditioned in such instances.

14.     At the instant case, Defendant has benefitted from the homestead determination from the Estate Court and the automatic stay from Debtor's bankruptcy case, to use and enjoy the property without paying the mortgage since **June 1, 2014**. *See page 3, Exhibit 6, Dkt 77.*

**Reply to Defendant's alleged facts in controversy**

15. Allegations at paragraph one (1) are denied. Since the community property was not liquidated prior to the bankruptcy filing, "the property of both former spouses became property of the estate", pursuant Section 541 of the Bankruptcy Code. In re Lang, *supra*. Any allegations related to fraud or concealed assets are objected, pursuant Rule of Evidence 401 for not being relevant to a 363(h) cause of action.

16. Allegations at paragraph two (2) are denied. Defendant has failed to provide a statute of limitations for the cause of action pursuant Section 363 of the Bankruptcy Code.

17. Allegations at paragraph three (3) are denied. The homestead right does not protect Defendant against creditors. This right was specifically renounced after the subscription of a mortgage. *In re Rivera*, *supra*. In the alternative, even if this Honorable Court determines that it was not renounced, the "children" who are the beneficiaries of this right are no longer minors. The eldest daughter between Debtor and Defendant is *22 years old* (born on 1994), and their youngest son is *20 years old* (born on 1996). *See Bankruptcy Case #11-06637, Dkt. 1, page 33*. Defendant has failed to provide evidence that would allow the Court to conclude that after becoming adults they meet the requirements of Section 109A of the Civil Code to maintain the homestead right.

18. Allegations at paragraph four (4) are denied. The dispositions of the cited case, In re Lang, *supra,* discuss the application of the Bankruptcy Code and property of the Bankruptcy Estate, pursuant Section 541, to a community property post divorce that has not been divided, such as the admitted facts of the instant case.

19. Allegations at paragraph five (5) are objected. Any allegations related to fraud, concealed assets and/or Trustee's actions are objected, pursuant Rule of Evidence 401 for not being relevant to a 363(h) cause of action.

**WHY THE SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF PLAINTIFF**

**A. STANDARD FOR A MOTION FOR SUMMARY JUDGMENT**

1. The summary judgment is available if the pleadings and the presented evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

2. Pursuant to Fed. R. Civ. P. 56 and Federal Rule of Bankruptcy Proceeding 7056, a party moving for summary judgment is required to file, annexed to its motion, a separate, short, and concise statement of the material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried, supported by a record citation.

3. The Rule 56(c) then requires the nonmoving party to submit with its opposition a separate, short, and concise statement of material facts, admitting, denying, or qualifying the facts by reference to each numbered paragraph with references to the record. Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by Rule 56, shall be deemed admitted unless properly controverted.

4. Defendant, as the party opposing the motion for summary judgment, cannot rely on mere allegations or denials of the moving party. On the contrary, the opposing party must be able to show by affidavits, depositions, answers, and admissions in the record that there is a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

5. The court may safely ignore conclusory allegations, improbable inferences, and unsupported speculation. However, there is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable

App. Ap. pp.332

those ideas may be). *Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)*

6. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) . . . ." *Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987).*

## Application to the facts

7. Plaintiff provided the statement of facts and supporting evidence that prove there is no controversy on the materials facts of the instant case, and that the requirements for granting the approval of sale of property of the Bankruptcy Estate are met. *See Dkt. 77.*

8. Defendant, as the opposing party, presented a series of alleged contested facts that are false, irrelevant, inadmissible, and/or are not supported by evidence. *See Federal Rule of Evidence, R. 401, R. 408.*

9. Defendant has failed to raise and/or provide evidence of a valid Defense or any argument that can defeat the requirements established by Section 363(h)

10. Moreover, Defendant failed to respond to the Plaintiff's statement of facts, as required by Fed. R. Civ. P. 56(c).

11. Consequently, Plaintiff's statement of facts must be deemed admitted by Defendant and the request for summary judgment must be granted.

## B. STANDARD FOR 11 U.S.C. § 363 (h)

12. The instant case is brought before this Honorable Court pursuant 11 USC 363h for the approval of sale of property of Debtor's Bankruptcy Estate.

13. Section 363(h) permits sale of property which is jointly owned without regard to consent or applicable nonbankruptcy law. *In re Murray (1983, BC ED Pa) 31 BR 499.*

14. When Bankruptcy is filed before the liquidation of a community property after a divorce, "the property of both former spouses became property of the estate", pursuant Section 541 of the Bankruptcy Code. <u>In re Lang</u>, *supra*

**Application to the facts**

15. At the instant adversary proceeding, Plaintiff seeks to sell the property, which was owned by the conjugal partnership that Debtor and Defendant used to have, in order to distribute some of the resulting proceeds to creditors of this Estate.

16. Defendant admits that the assets of the community property post-divorce, to this day, has not been liquidated. *See Alleged Material Facts #7, 8, at page 2, Dkt. 78.*

17. Plaintiff has proved that the instant case, the requirements, pursuant 11 USCS § 363(h), previously exposed, are met.

18. There is no doubt that the benefit to the estate of a sale of such property free of the interests of a co-owner outweighs the detriment, if any, to such co-owner. Defendant will be benefitted by the sale of the property, since his liabilities and obligations towards creditors will be diminished and/or eliminated and he will receive some money.

19. The continuation of this adversary proceeding is hurting the unsecured creditors, including Defendant, since, as time passes by, they will receive less money every day.

20. The Chapter 7 Trustee, as Plaintiff, purports the partition in kind of the property between the Estate and the Defendant is impracticable.

**C. The property**

21. As Section 541 of the Bankruptcy Code states:

"**(a)** The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, **wherever located and by whomever held**:

**(1)** Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

**(2)** All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

**(A)** under the sole, equal, or joint management and control of the debtor; or

**(B)** liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable."

22. All of the assets of a debtor, as well as the community property, becomes property of a bankruptcy estate under Puerto Rico Law. In re Lang, *supra*, citing Bankr. Code, 11 U.S.C.A. § 541(a)(2)(A); 31 L.P.R.A. §§ 284, 286, 3621, 3622, 3631, 3641, 3647.

**Application to the facts**

23. At the instant case, Debtor has an interest over the community property acquired during the matrimony with Defendant.

24. To this day, the assets of the community property have not been liquidated.

25. Therefore, the assets of the community property are part of the Bankruptcy Estate.

**D. OBJECTION OF FACTS AND EVIDENCE PRESENTED**

26. Rule 401 of Federal Evidence estates that:

"Evidence is relevant if:
(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
(b) the fact is of consequence in determining the action."

27. Rule 408 of Federal Evidence estates that:

"Compromise Offers and Negotiations

(a) Prohibited Uses. Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

(1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

(b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

28.  Rule 9019 of Bankruptcy Proceeding states that:

"**(a) Compromise**. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct."

**Application to the facts**

29. Defendant has not provided a single shred of evidence to support such allegations of fraudulent transfers and concealment of assets. Even if such allegations were true, which is denied, an adversary complaint, pursuant Section 363(h), is not the appropriate proceeding for this claim. Therefore, any allegations related to fraudulent transfers or concealment of assets are irrelevant to the instant case, pursuant Rule 401 of Federal Evidence.

30. Therefore, any allegations of fraudulent transfers and concealment of assets are not a valid defense for the approval of sale of the property.

31. Defendant includes bank statements of persons that are not part of the instant adversary complaint without redacting confidential information. Therefore, any documents related to a person and/or entity that is not part of the instant adversary complaint is inadmissible, pursuant Rule 401 of Evidence.

32. Any evidence and or allegation related to the efforts made by Plaintiff to reach an agreement is not admissible, pursuant Rule 408 of Evidence.

33. In addition, any agreement made by the Trustee to dispose of a right and/or property of the Bankruptcy Estate must be approved by the Bankruptcy Court, pursuant Bankr.Rule 9019, after allowing creditors the proper time to present any objections. At the instant case, no stipulation was ever filed for the approval of Court and the evaluation of creditors. Therefore, there was never an agreement with Defendant.

34. Finally, Defendant presents a valuation of the property. The value of the property is not an aspect to be considered to grant the approval of the sale of property of the Estate, pursuant Section 363(h) when there is equity. Even if the valuation given by Defendant is used ($268,000), after considering the amount owed to the secured creditor ($29,812.65), the Estate would still have a benefit of over $200,000.[1]

35. Since it has been proven that the sale would bring a benefit to the Bankruptcy Estate, the value and/or price of sale must be evaluated by Court after an offer of sale has been presented and/or a notice of sale has been filed. That has not happened at the instant case. Therefore, any controversy related to the value of the property, at the instant case, is not mature at this stage of the proceedings.

**CONCLUSION**

1. Plaintiff has submitted to this Honorable Court the evidence in support of the request for approval of sale of the property of the Estate. *See Dkt. 1.*

2. It is Defendant´s burden, as an opposing party, to prove with evidence that there are material facts to an 11 USC §363(h) adversary proceeding that deserve a trial. *See 11 usc 363(h).*

---

[1] $268,000 - $29,812.65= $238,187.35

3. On its opposition, Defendant not only failed to oppose Plaintiff´s statement of facts, but also failed to provide any evidence of a material fact controversy that would justify a trial and/or the denial of Plaintiff´s request.

4. The only controversies that Defendant presented were facts that are either irrelevant to the instant case, pursuant Rule 401 of Federal Evidence, or inadmissible, pursuant Rule 408 of Federal Evidence.

5. Defendant and Debtor were married and are currently divorced and the assets of the post-divorce community property have not been liquidated. *See Dkt. 77-3, 77-4. See also page 18, Dkt. 48.*

6. The assets of the aforementioned unliquidated community property became part of the Bankruptcy Estate. See <u>*In re Lang*</u>*, supra*. See also 11 USC §541.

7. The real estate property, subject of the adversary proceeding, was acquired during the matrimony of Debtor and Defendant. It is encumbered by a mortgage lien in favor of Banco Popular. *See Dkt. 77-1.*

8. Even though, the homestead right was established at the property by the Family Court, the right is considered renounced if the property is encumbered by a mortgage lien. <u>*In re Rivera*</u>*, supra*.

9. The real estate property, subject of the adversary proceeding, is encumbered by a mortgage lien, and the mortgage is due since **June 1, 2014**. *See Dkt. 77, Exhibits 1, 5, and 6.*

10. Plaintiff, as administrator of the Bankruptcy Estate and in representation of the secured and unsecured creditors of the Estate, hereby requests the approval of sale of the aforementioned property.

**WHEREFORE**, based on the foregoing, it is respectfully requested that this Honorable Court to enter a judgment granting the request for summary judgment in favor of Chapter 7 Trustee and granting Chapter 7 Trustee, fees and attorney's fees.

## NOTICE OF RESPONSE TIME

**WITHIN FOURTEEN (14) DAYS AFTER SERVICE AS EVIDENCED BY THE CERTIFICATION** - and an additional three (3) days pursuant to Fed. R. Bankr. P. 9006(f) if you were served by mail - any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, must serve and file an objection or other appropriate response to this paper with the Clerk's Office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is timely filed within the time allowed herein, the paper will be deemed unopposed, unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interest of justice otherwise requires. IF NO OBJECTIONS ARE TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

**CERTIFICATE OF ELECTRONIC FILING AND SERVICE:** I hereby certify that on this same date a copy of this motion has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to Monsita Lecaroz Arribas, Esq., Us Trustee's Office, to 500 Tanca St., Ochoa Building, Suite 301, San Juan, P.R., and parties in interest.

**RESPECTFULLY SUBMITED**

In San Juan, Puerto Rico, on November 3, 2016.

/s/ **AIMEÉ LÓPEZ PABÓN**
**USDC-PR 229906**
Email: al@g-glawpr.com

**Godreau & Gonzalez, LLC.**
PO Box 9024176
San Juan, PR 00902-4176
Tel: (787) 726-0077

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IN RE:** | |
| **JUAN CARLOS BALCELLS GALLARETA** DEBTOR | **CASE NO. 11-06637 MCF** |
| | **CHAPTER 7** |
| **NOREEN WISCOVITCH RENTAS** **TRUSTEE FOR THE ESTATE OF JUAN BALCELLS GALLARETA** Plaintiff | **Adv. No. 14-00137** |
| v. | |
| **AMARILIS GONZÁLEZ GARCÍA** Defendant | |

### OPPOSITION TO DEFENDANT'S REQUEST FOR SUMMARY JUDGMENT

**Comes Now**, Noreen Wiscovitch Rentas, as Chapter 7 Trustee of the Bankruptcy Estate of Juan Carlos Balcells Gallareta, represented by its undersigned attorney and to this Honorable Court very respectfully states and prays:

### Procedural Background

1.      The instant complaint was filed on May 30, 2014 to obtain Court approval for the sale of both the interest of the estate and of co-owners of the property described below, with the distribution of the proceeds of the sale to be effectuated according to the percentage of ownership of the Defendant and the Debtor, pursuant 11 U.S.C. §363(f), (h), (i) and/or (j), and 11 U.S.C. §541 (a).

2.      On September 23, 2015, Plaintiff filed a Motion for Summary Judgment (Dkt. 45) stating and providing evidence that:

App. Ap. pp.340

   a.  Debtor and the Defendant were the owners of the property subject to the instant case;

   b.  the property had a valid and perfected mortgage lien, of which both Defendant and Debtor are jointly liable for the outstanding secured claim;

   c.   the partition in kind of the property between the Estate and the Defendant is impracticable;

   d.  the sale of the estate's undivided interest would realize significantly less for the Bankruptcy Estate than a sale of the entire property free of the interests of such co-owner;

   e.  the benefits to the Estate of a sale of such property free of the interest of Defendant, outweighs the detriment, if any, to the Defendant;

   f.  the property involved is not used in the production, transmission, or distributions of electric energy or natural gas sold for heat, power, or light.

3.     At the hearing held on January 20, 2016, the Motion Requesting Summary Judgment filed by Plaintiff was denied without prejudice. The Court instructed that if a new summary judgment was to be filed, Movant had to provide evidence of how the sale will benefit the estate, and the legal basis to override the state court ruling declaring the property as homestead of the defendant's children until they are of legal age or until they are 25 years of age while they are studying and dependents of the Defendant.

4.     On August 19, 2016, Plaintiff was ordered to show cause within 21 days, why the Court should not enter judgment in defendant's favor. *Dkt. 74.*

5.     A Motion in Compliance was filed by Plaintiff on September 9, 2016 informing that an Amended Request for Summary Judgment had been prepared, but that several

App. Ap. pp.341

documents from Debtor's Attorney were needed as evidence in support of the proposed

uncontested facts. A term of 14 days to file it was requested. *Dkt. 76*.

6.      On September 26, 2016, Plaintiff filed an Amended Motion for Summary

Judgment (*Dkt. 77*) stating and providing evidence of the previously mentioned facts

plus:

<ol type="a">
<li>Debtor and Defendant were divorced, but did not divide or adjudicate the assets of the community property, including the property subject of the instant complaint;</li>
<li>the Court of Bayamon ordered both, Debtor and Defendant, to pay in equal amounts the mortgage in favor of Banco Popular ("Popular");</li>
<li>Defendant had failed to make mortgage payments and Popular had filed a Motion for Relief of Stay;</li>
<li>After Popular was informed that Debtor had consigned his part of the mortgage payments at the State Court, the Motion for Relief was withdrawn;</li>
<li>Defendant continued to fail in making the mortgage payments and a foreclosure proceeding was filed against Defendant and Debtor;</li>
<li>A homestead right is enforceable against the former spouse, not a creditor;</li>
<li>A Chapter 7 Trustee stands as a hypothetical judgment lien creditor effective on the date a debtor files a bankruptcy petition (*Bank of N.Y. v. Leake (in Re Wuerzberger)*, 284 B.R. 814, 2002 (Bankr. W.D. Va. 2002));</li>
</ol>

App. Ap. pp.342

    h.   The possessory interest of Debtor's spouse or former spouse could not defeat trustee's right to sell. *In re Whaley*, 353 B.R. 209 (Bankr. E.D. Tenn. 2006)

    i.   The sale of the property by the Trustee would benefit the bankruptcy estate, for it would allow to pay both secured and unsecured creditors, while not allowing the Trustee to sell the property would only benefit a secured creditor, Popular.

7.    After the parties filed their corresponding oppositions and replies, a hearing was held on August 30, 2017. The Court denied Plaintiff's Motion for Summary Judgment for failure to provide evidence of the benefit to the estate. The Court also granted the parties 60 days to conclude discovery proceedings and 30 days, thereafter, to file a joint pretrial report. *Dkt. 96*.

8.     After several court proceedings, on February 6, 2019, the parties filed a joint motion for leave to file dispositive motions. Dkt. 174.

9.    On February 14, 2019, the Court granted the parties' request. Dkt. 175.

10.    On March 3, 2019, Defendant filed a Motion for Summary Judgment, alleging, in essence, that the benefit to the estate did not outweigh the alleged detriment to the Defendant. *Dkt. 177*.

11.    Hereinafter we discuss why Defendant's allegations are lack merit and even the evidence submitted at her Request for Summary Judgment does not support her allegations.

- 4 -

App. Ap. pp.343

**Plaintiff's Argument**

At the aforementioned Amended Summary Judgment, Plaintiff presented evidence that the instant case meets the standard of a Request for Authorization to sell, pursuant Section 363 of the Bankruptcy Code. Even that the property is part of the Bankruptcy Estate, pursuant Section 541 of the Bankruptcy Estate. However, the benefit to Bankruptcy Estate was questioned since Debtor has an outstanding Domestic Support Obligation ("DSO"), Claim #5 for $174,128, and Plaintiff lacked a current valuation of the property and a current value of the claims secured by the property (mortgage loan and HOA).

After conducting additional discovery proceedings with Debtor, Plaintiff learned that the amount claimed by Defendant is not the correct outstanding amount of DSO. *See Exhibit 1*. The First Instance Court of Bayamon issued an amended Order, dated July 23, 2012, stating that several payments made by Debtor had not been previously considered and the outstanding amount of DSO was **$125,046** not $174,128. This amount includes the mortgage payments that Debtor was ordered to make.

In addition, Defendant lacks standing to make and/or receive any DSO claims. The Supreme Court of Puerto Rico has resolved that once the children become adults, they have the capacity to represent their own interests before the courts and from that moment their parents lack judicial standing to do it. *Key Nieves v. Oyola Nieves, 116 D.P.R. 261 (1985).* ***Even if the parent initiated the claim of child support, they lack standing to represent or continue collecting any unpaid amount***. *Ríos Rosario v. Vidal Ramos*, 134 D.P.R. 3, 10-11 (1993). Emphasis supplied.

Defendant states that her "children" are 21 and 24 years old (See Dkt. 177, Page 5, paragraph 7). Article 247 (31 L.P.R.A. sec. 971) of the Civil Code of Puerto Rico states that

- 5 -

App. Ap. pp.344

adulthood is reached at 18 years old. Therefore, Defendant lacks judicial standing to claim and/or receive any DSO payments since both "children" are adults with capacity to claim, receive and manage their child support payments.

As will be explained below, even if the low appraisal value submitted by Defendant is used, the sale of the property by the Trustee will benefit both secured and unsecured creditors. Contrary to abandoning the asset, which will cause the foreclosure of the property in the exclusive benefit of the secured creditors, Banco Popular (Claim #2) and Asociacion De Residentes Villa Reales (HOA Claim #15).

### Plaintiff's Reply to Defendant's Statement of Facts

1.  Allegations of paragraph number one (1) are admitted in part and denied in part for lack of evidence. The document marked as Exhibit 1 states that Debtor and Defendant were married. It does not state the date of their marriage.

2.  Allegations of paragraph number two (2) are admitted in part and denied and objected in part for lack of evidence. The document marked as Exhibit 1 states that Debtor and Defendant had two children, at the moment (2011). The remaining allegations are objected pursuant Rule of Evidence 401.

3.  Allegations of paragraph number three (3), four (4) and five (5) are admitted.

4.  Allegations of paragraph number are six (6) are admitted in part and denied in part. It is admitted that on June 11, 2011 the Family Court issued an Opinion an Order at Debtor's and Defendant's case. However, said Opinion and Order was amended on August 27, 2012 by an Order that substantially decreased the amount of pre-petition Domestic Support Obligation owed by Debtor, stating that Debtor owes $125,046 in DSO, including mortgage payments. See Exhibit 1.

- 6 -

5.     Allegations of paragraph number seven (7) are denied due to lack of evidence to support it. Defendant has never presented evidence that her daughter and son are studying and/or dependents. The allegations at this paragraph are an admission that both are not children, but adults, pursuant Puerto Rico Civil Code. *31 L.P.R.A. sec. 971.*

6.     Allegations of paragraph number eight (8) admitted. The allegations at this paragraph are an admission that the property subject to the instant case is property of the bankruptcy estate, pursuant 11 USC §541. See also In <u>re Brassett</u>, 332 B.R. at 754–755; <u>In re Robertson</u>, 203 F.3d at 861–862; <u>In re Pérez León</u>, 2013 WL 5232331; Case No. 12-01251 (ESL).

7.     Allegations of paragraph number nine (9) are objected, pursuant Rule of Evidence 401. The allegations at this paragraph are irrelevant to a 363(h) cause of action. The "first right of refusal" to co-owners is enforceable <u>when property is sold under §363(h)</u> not before. Any claims of first right of refusal, at the moment, lacks controversy ripeness to be attended by the court.

8.     Allegations of paragraph number ten (10) are admitted.

9.     Allegations of paragraph number eleven (11) are admitted. However, the claim filed by Defendant is based on an Opinion and Order that was amended by the Family Court. Newly produced evidence reflects that several payments made by Debtor were not included in this determination. An amended Order was issued, on August 3, 2012, that concludes that the correct amount of DSO owed by Debtor by August 2011 is $125,046, not $174,128. Defendant's failure to disclose this fact since 2012 should be interpreted as the intention to hide relevant information and make false statements in order to obtain a favorable judgment in her favor.

10.     Allegations of paragraph number twelve (12) are no longer accurate.

App. Ap. pp.346

11.     Allegations of paragraph number thirteen (13) and fourteen (14) are admitted.

12.     Allegations of paragraph number fifteen (15) are denied for lack of evidence. The documents marked as Exhibit 2 and 9 are statements of Defendant. No evidence has been submitted that would allow the court to conclude that mortgage payments have been made by Defendant or the amount of the alleged payments.

13.     Allegations of paragraph number sixteen (16) and seventeen (17) are admitted.

14.     Allegations of paragraph number eighteen (18) are denied and objected.

15.     Allegations of paragraph number nineteen (19) and twenty (20) are admitted.

16.     Allegations of paragraph number twenty-one (21) do not require a response.

17.     objected, pursuant Rule of Evidence 401. The allegations at this paragraph are irrelevant to a 363(h) cause of action. If a response regarding these allegations be required, they are denied for lack of knowledge and evidence.

## Discussion of Cause of Action

### I.   Summary judgment standard

1.     Pursuant to Fed R. Civ. P. 56, as incorporated by Fed. R. Bankr. P. 7056, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. _In Re Colarusso_, 382 F.3d 51 (1st Cir. 2004), citing _Celotex Corp. v. Catrett_, 477 U.S. 317, 322-23 (1986). 33.

2.     "The summary judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which _there is no genuine issue as to any material fact or in which only a question of law is involved_." Emphasis supplied. 10A Wright, Miller & Kane, Federal Practice and Procedure 3d § 2712 at 198.

- 8 -

App. Ap. pp.347

3.    "For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975).

4.    A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. *Over the - Road Drivers, Inc. v. Transport Insurance Co.*, 637 F.2d 816, 818 (1st Cir. 1980).

**Discussion**

1.    At the instant case, there are no material controversies of fact. Both parties admit that Debtor and Defendant were married and are currently divorced. During said marriage, they purchased the property subject of the instant case and had two kids, who are currently adults (21 and 24 years old). See 31 L.P.R.A. sec. 971. See also Dkt. 177, Page 5, paragraph 7.

2.    However, Defendant has made several allegations that are irrelevant to the instant cause of action and that do not include evidence that will allow this Honorable Court to conclude that they are uncontested facts, as required by FRCP 56, *supra*, that will later be addressed.

3.    The only material controversy at the instant case is the benefit that the sale of the property by the Chapter 7 Trustee will bring to the bankruptcy Estate.

**II.  Benefit to the Bankruptcy Estate**

1.    Plaintiff made an appraisal of the property that estimated the valued at $260,000. See Exhibit 2. While Defendant submitted a valuation that appraises the property at $245,000.

- 9 -

App. Ap. pp.348

2.   The property is encumbered by two liens. A mortgage in favor of Banco Popular and the HOA claim. Defendant states that the outstanding amounts of these claims are $38,627.07 for the mortgage loan and $41,528.26 for HOA. This sums to of $80,155.33 of secured claims.

3.   Both Debtor and Defendant are responsible for the payment of both debts, pursuant the Bayamon Court Opinion and Order. See Dkt. 177-1, Exhibit 1. Even if the Bankruptcy Estate would satisfy the totality of both debts, this would leave an estimated benefit to the Estate of $179,844.67 using Plaintiff's appraisal, and of $164,844.67 using Defendant's appraisal.[1]

### III. Domestic Support Obligation

4.   Defendant claims that the amount received would not be enough to cover her claim of DSO. However, since both of her "children" are already adults, pursuant 31 L.P.R.A. sec. 971, Defendant lacks standing to claim the DSO or to receive the money. *Key Nieves v. Oyola Nieves, supra. Ríos Rosario v. Vidal Ramos, supra.*

5.   Reviewing the amended Order of the Bayamon Court, we noticed that the outstanding DSO obligation is for ***$125,046*** not $174,128, as claimed by Defendant. More importantly, this amount includes the mortgage payments that Debtor was ordered to make.

6.   Therefore, if the Trustee sells the property and pays the mortgage claim, the total amount of DSO will be discounted by the mortgage payments lower. Otherwise, the Bankruptcy Estate will be paying the mortgage claim twice.

7.   Even though, evidence related of the outstanding DSO amount that corresponds to the mortgage payments included at the aforementioned determination was requested, it has not

---

[1] Plaintiff's appraisal values the property at $260,000. See Exhibit 2. Defendant's appraisal values the property at $245,000.

App. Ap. pp.349

been received by Plaintiff at the moment. An exact amount of the DSO obligation cannot be considered by Court at this moment.

### IV. Domestic Support Obligation

8.   Defendant also claims that the property has the homestead right until the "children reach the age of 25 years old and continues their studies. To this day, Defendant has failed to provide any evidence that they meet the standard to continue under this protection. No evidence that they are currently studying has been submitted. Therefore, this Honorable Court is unable to conclude that this is a fact.

9.   As stated before, the homestead right is not enforceable to a creditor, such a mortgage creditor. Secured creditor, Popular, has tried on several occasions to foreclose the property due to the extended lack of payments.

10. Defendant has failed to submit the half of the mortgage payment that she was ordered to submit. See Dkt. 177-1, Exhibit 1. To this day, no evidence has been presented that she is even capable to submit the mortgage payment or to pay half of the accumulated debt of the mortgage. Consequently, by not allowing the sale of the property by the Trustee, the only party that will benefit will be Popular, not Defendant.

11. In addition, a Trustee in bankruptcy stands as a hypothetical judgment lien creditor effective on the date a debtor files a bankruptcy petition. *Bank of N.Y. v. Leake (in Re Wuerzberger)*, 284 B.R. 814, 2002 (Bankr. W.D. Va. 2002). The possessory interest of debtor's wife could not defeat trustee's right to sell. *In re Whaley*, 353 B.R. 209 (Bankr. E.D. Tenn. 2006). Therefore, the homestead right is unenforceable against the Trustee.

- 11 -

App. Ap. pp.350

## V.  Other costs

12. Finally, Defendant claims that additional costs of sale that include realtor fees, notary fees, stamp and voucher fees, and cancellation of mortgage costs.

13. Notary fees, stamps and voucher fees can paid by any of the interested parties. See *4A L.P.R.A. Ap. XXIV, Regla 14.*

14. Any amount claimed to be paid by any concept of sale, at this moment, would be completely speculative at best. On the alternative, Defendant has not provided any evidence related to the speculated sale cost that asks this Honorable Court to take as certain.

<div align="center">Conclusion</div>

At the instant case, the only pending controversy is the benefit that would the sale of the property by the Trustee. Both parties have submitted their appraisals and their arguments.

Defendant claims that the sale would not bring any benefit due to the DSO obligation filed by her. However, this Claim does not reflect the real amount of pre-petition child support owed by Defendant. For the Bayamon Court amended its determination to reduce to $125,046, almost $50,000 less, including outstanding mortgage payments. See Exhibit 1.

At the moment, a clear amount of the pre-petition DSO cannot be determined. Consequently, a determination of the benefit to the Estate after the sale of the property, taking into consideration the DSO claim, cannot be made. Even if it could be made, Defendant no longer has standing to make a claim related to this proof of claim or to receive the money since her "children" are adults. See <u>Key Nieves v. Oyola Nieves</u>, *supra*. <u>Ríos Rosario v. Vidal Ramos</u>, *supra*.

Defendant also claims that the property cannot be sold because of the homestead right declared by the Bayamon Family Court. However, this right cannot be enforced against creditors,

<div align="center">- 12 -</div>

such as the Chapter 7 Trustee and a mortgage Creditor. *Bank of N.Y. v. Leake* (in Re Wuerzberger), *supra*; *In re Whaley*, *supra*.

Defendant has been unable to maintain current the mortgage arrears and Banco Popular and HOA and her failure to give an appropriate maintenance to the property has caused the value to decrease. See Exhibit 2. Secured creditor, Popular, has tried to foreclose the property in several occasions both at the Bankruptcy Court and at State Court. Therefore, not allowing Plaintiff to sell the property will only result on the benefit of secured creditor Popular and the HOA.

Furthermore, taking into consideration both appraisals submitted at the instant case and both secured claims (mortgage loan and HOA), the sale of the property would bring an estimate between $179,844.67 and of $164,844.67 that would benefit secured creditors, Defendant and her "children".

**WHEREFORE**, Plaintiff respectfully requests that the Court take note of the above; to DENY Defendant´s Motion requesting summary judgment and allow Trustee to the authorization to sell the property.

**CERTIFICATE OF SERVICE**: I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants of the CM/ECF.

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico, this March 22, 2019.

**/s/ AIMEÉ LÓPEZ PABÓN**
**USDC-PR 229906**
Email: al@g-glawpr.com

**Godreau & González, LLC.**
PO Box 9024176
San Juan, PR 00902-4176
Tel: (787) 726-0077

App. Ap. pp.352

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE FAMILIA Y MENORES
REGION JUDICIAL DE BAYAMON
*Salón de Sesiones 3001*

#2

| AMARILIS GONZALEZ GARCIA<br>**DEMANDANTE** | EXP. NUM. **D DI2006-4055** |
|---|---|
| VS | |
| JUAN C. BALCELLS GALLARRETA<br>**DEMANDADO** | **DIVORCIO (TC)** |

# M I N U T A – R E S O L U C I O N

A la vista de urgente comparece la demandante asistida por la Lcda. María E. Medina Pérez. Comparece el demandado asistido por la Lcda. Vera T. Peñagaricano.

Se hace constar que este caso tiene varias interacciones. La última vez fue para discutir los alcances de la Resolución del Tribunal Apelativo. No se ha emitido mediante una resolución la determinación de este Tribunal. En síntesis queda pendiente los siguientes asuntos: solicitud de rebaja de pensión alimentaría, si procede imputación de ingreso sobre los bienes de la demandante, cambio unilateral de la institución académica, alegación de hechos del gasto del colegio y la solicitud de desacato en cuanto a la aportación de la demandante para los gastos de educación de la menor.

Indica la Lcda. Peñagaricano que la orden señalando la vista de hoy urgente va dirigida a establecer: la deuda que alega mamá tiene papá y la merma de ingresos del demandado. En cuanto a la primera, este Tribunal paralizó toda gestión en cuanto a cualquier determinación de cualquier obligación previo agosto de 2011, por lo cual no puede ser atendida en el día de hoy. Con esto no significa que el demandado se quiere enajenar de cualquier obligación que pueda surgir posterior a la paralización del caso de quiebra.

Continuación..............

App. Ap. pp.353

Case:04-03322-MCF11 Doc#:1108-8 Filed:03/22/19 Entered:03/27/19 23:22:49 Desc: Exhibit 1 - Minutes and Order   Page 2 of 5

2

Página 2                                          D DI2006-4055

La Lcda. Medina expresa que el padre no custodio está alegando que sus ingresos han mermado. Pero se ha repasado, la resolución del Tribunal y nos hemos percatado que el demandado se le impuso una pensión alimentaría de $2,100.00. Se tomó en consideración su estilo de vida y el estilo de vida sigue siendo el mismo, por lo tanto, no es a base de los ingresos que se tomó en consideración para fijarse la pensión que está fijada.

La demandante indica que el Tribunal de Quiebra nunca ha mandado que se paralicen los procedimientos, al contrario, el Tribunal de Quiebra quiere que los procedimientos de alimentos continúen. No determinar la deuda previa ni la que esta después de la quiebra, es totalmente irracional. No entiendo como es que se dice que hay que paralizar los procedimientos para determinar la deuda.

El Tribunal indica que en virtud del procedimiento en el Tribunal Federal no hay impedimento legal alguno para evaluar cualquier solicitud de modificación. Lo que teníamos era la paralización por 180 días para no hacer ninguna gestión de cobro.

Ambas partes presentan varios argumentos para determinar la deuda por ambas partes.

La Lcda. Peñagaricano indica que advino en conocimiento que la menor gozaba de una beca ascendente a $2,752.00. La demandante informa que a ninguno de los menores le ofrecieron becas. El Tribunal instruye a las partes a reunirse y continuar esta vista por la tarde.

**SESION DE LA TARDE:**

Se llama nuevamente el caso en horas de la tarde, comparece la demandante asistida por la Lcda. Maria Medina Pérez. Comparece el demandado asistido por la Lcda. Vera T. Peñagaricano.

Continuación......

App. Ap. pp.354

Case:Case:20032-dMC-B11082-AB8 DocFiled 03/22/19iled 06/20/23/22 Page:358 of 2460Desc:
Exhibit 1 - Minutes and Order   Page 3 of 5

3

Página 3                                   D DI2006-4055


Las partes se acercan al estrado para discutir la tabla preparada por la Lcda. Beltrán.

La demandante aclara que no procede considerar la partida de la hipoteca porque lo hizo para reclamar su partida en el caso civil. En la quiebra el demandado se está beneficiando por eso. Recibirá la porción de la hipoteca en dos o tres ocasiones. Esto en adición a las penalidades que tiene que pagar. Por lo cual, la porción que le toca de la hipoteca no puede reclamarse en lo civil ni en la quiebra. En la quiebra no se considera el hogar seguro.

El Tribunal indica que el pago de la casa se imputa como parte de la pensión alimentaria. Se estableció la pensión regular y la suplementaria. La pensión en este caso es de $4,838.00.

Informa la Lcda. Peñagaricano que entiende que el Tribunal se revocó en cuanto a la determinación en la vista del 20 de octubre de 2011. Las partes presentan varios argumentos para determinar la deuda.

**El Tribunal luego de hacer los cómputos indica que al 31 de agosto de 2011, el demandado debió haber pagado $270,928.00, de eso ha pagado $145,882.00 y la deuda es de $125,046.00 por concepto de pensión alimentaria.**

La Lcda. Peñagaricano indica que según las vistas de 19 de enero y 3 de febrero, el demandado lo que debía a diciembre/2011 era $5,384.00. El día 19 de enero de 2012 se le hizo entrega a la demandante la cantidad de $5,384.00 y se informó al Tribunal mediante moción dando por cumplida la deuda que había hasta entonces.

La Lcda. Medina expresa que la otra deuda al 7 de junio de 2012 es de $16,028.00.

Las partes hacen sus argumentos y cómputos en cuanto a la deuda del segundo período, enero/2012 hasta el 23/julio/2012.

Continuación.................

App. Ap. pp.355

Case:4901322-MCB11DocFAB8DocFiled:03722/19File:06/20/23/2240e:3591402460Desc:
Exhibit 1 - Minutes and Order   Page 4 of 5

Página 4                                                        D DI2006-4055

El demandado debió haber pagado $33,866.00.

La Lcda. Peñagaricano indica que hay pagos adicionales, un pago de $1,046.00 número 144 y el pago del Colegio de María Reina  de $2,000.00 número 4,713, para un total de $3,046.00, que no se pueden probar en el día de hoy por no tener la evidencia.

El Tribunal **hace constar que añadiendo el pago de julio de $1,000.00, más el Colegio de $2,576.50, la deuda del 2012 es de $20,971.50 al 23 de julio de 2012.**

Además, indica la Lcda. Peñagaricano que existen otros pagos que ha hecho el demandado  y que se discutieron con la Lcda. Beltrán, como es el celular del menor, la graduación de cuarto año de la menor, se le compro una cama  para el apartamento del Recinto de Mayagüez.  Hay ciertos gastos que se le van a presentar al Tribunal.  El demandado no estaba preparado para dilucidar la deuda de enero a julio /2012.

El **Tribunal concede el término de 10 días para que presente objeciones y 10 días para que la otra parte replique con relación a las cuantías reclamadas como la deuda.**

Con relación a la controversia de la Ley 100, a tenor con lo resuelto con el mandato del Tribunal Apelativo y el contenido de la página 19 y 16 de la resolución se declara NO HA LUGAR a la solicitud de revisión por el fundamento de cambio en las circunstancias económicas por el nuevo trabajo.

La parte demandante alegó que la menor va a estudiar en la Universidad de Puerto Rico en el Recinto de Mayagüez, por lo que va a incurrir en gastos escolares mayores.  Se refiere a la Examinadora para la revisión de pensión alimentaría  por el fundamento de cambio de las circunstancias económicas.

Con relación a una moción sobre el Desacato contra la parte demandante, el Tribunal determina como cuestión de hecho y derecho que no procede, porque voluntariamente el demandado pagó la deuda directamente al Colegio.

                                                    continuación...........

Página 5                                           D DI2006-4055

<u>Se señala la vista de desacato para el 10 de septiembre de 2012, a</u>
<u>las 2:00 pm.</u>

Certifico haber enviado copia de esta minuta-resolución a los abogados de récord hoy, 27 de agosto de 2012.

| | | | |
|---|---|---|---|
| Libro de Minutas | | Alguacil: | Marisol Alicea Rivera |
| Nombre Juez: | HON. ÁNGEL M. CANDELAS RODRIGUEZ | Certifico: | Migdalia Rivera Colón<br>Secretaria Regional |
| Operadora de FTR: | WILMARIE OJEDA RIOS | Por: | Carmen M. Rivera López<br>Secretaria de Sala |
| Oat 838<br>Minuta Civil | | Vista: | 23 DE JULIO DE 2012 |
| | | Transcrita: | 3 DE AGOSTO DE 2012 |

App. Ap. pp.357

# APPRAISAL OF REAL PROPERTY



## LOCATED AT
#381 VIA VERSALLES STREET, VILLAS REALES DEV.
GUAYNABO, PR 00969

## FOR
AIMEE LOPEZ PABON, ESQ.
P.O. BOX 9024176
SAN JUAN, PR 00902-4176

## OPINION OF VALUE
260,000

## AS OF
11/21/2018

## TABLE OF CONTENTS

| | |
|---|---|
| GP Restricted Use | 1 |
| Repair and Maintenance Addendum | 3 |
| GP Restricted Use Certifications Addendum | 4 |
| Building Sketch | 6 |
| Subject Photo - Page 1 | 7 |
| Subject Photo - Page 2 | 8 |
| Subject Photo - Page 3 | 9 |
| Subject Photo - Page 4 | 10 |
| Comparable Photos 1-3 | 11 |
| Location Map | 12 |

App. Ap. pp.358

Case:4:22-cv-01377-MCR-ZCB Document 123-12 Filed 06/27/23 Page 362 of 460
Case:4:22-cv-01377-MCR-ZCB Document 123 Filed 06/27/23 Page 362 of 460Desc:
Exhibit Appraisal Page 2 of 13

# RESTRICTED APPRAISAL REPORT

File No.:

RESTRICTED

## SUBJECT

| | |
|---|---|
| Property Address: #381 VIA VERSALLES STREET, VILLAS REALES DEV. | City: GUAYNABO | State: PR | Zip Code: 00969 |
| County: 061 | Legal Description: PLEASE REFER TO LEGAL DESCRIPTION. |
| GPS LOCATION: N: 18.361934; W: -66.128210 | Assessor's Parcel #: 113-040-809-86-000 | HOA: $150.00 monthly |
| Tax Year: 2019 | R.E. Taxes: $ 1,201.33 | Special Assessments: $ 0 | Borrower (if applicable): N/A |

Current Owner of Record: JUAN C. BALCELLS AND AMARILIS GONZALEZ    Occupant: ☒ Owner ☐ Tenant ☐ Vacant ☐ Manufactured Housing
Property Type: ☒ SFR ☐ 2-4 Family    # of Story: 2    # of Units: 1    Ownership Restriction: ☒ None ☐ PUD ☐ Condo ☐ Coop
Market Area Name: VILLAS REALES DEVELOPMENT    Map Reference: 41980    Census Tract: 0406.02    ☐ Flood Hazard

## ASSIGNMENT

The purpose of this appraisal is to develop an opinion of: ☒ Market Value (as defined), or ☐ other type of value (describe)
This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date) ☐ Retrospective ☐ Prospective
Approaches developed for this appraisal: ☒ Sales Comparison Approach ☐ Cost Approach ☐ Income Approach ☐ Other:
Property Rights Appraised: ☒ Fee Simple ☐ Leasehold ☐ Leased Fee ☐ Other (describe)
Intended Use: The intended use of this appraisal report is to assist the lender in the equitable community development assets distribution regarding to the subject property.

Under USPAP Standards Rule 2-2(c), this is a Restricted Use Appraisal Report, and is intended only for the sole use of the named client. There are no other intended users. The client must clearly understand that the appraiser's opinions and conclusions may not be understood properly without additional information in the appraiser's work file.

Client: AIMEE LOPEZ PABON, ESQ.    Address: P.O. BOX 9024176, SAN JUAN, PR 00902-4176
Appraiser: FRANCISCO J. OTERO VALENTIN    Address: URB. LAS PALMAS DE CERRO GORDO, CALLE ARECA B-7, VEGA ALTA, PR 00692

## SALES COMPARISON APPROACH

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | #381 VIA VERSALLES STREET, VILLAS RE GUAYNABO, PR 00969 | #317 VIA ESCORIAL, VILLAS REALES GUAYNABO, PR 00969 | | E-2 REINA VICTORIA ST, QTAS REALES GUAYNABO, PR 00969 | | H-3 PRINCESA MARGARITA, QTAS REALE GUAYNABO, PR 00969 | |
| Proximity to Subject | | SAME DEVELOPMENT | | COMPETITIVE DEVELOPMENT | | COMPETITIVE DEVELOPMENT | |
| Sale Price | $            N/A | $            387,000 | | $            295,000 | | $            315,000 | |
| Sale Price/GLA | $      N/A /sq.ft. | $   150.99 /sq.ft. | | $   147.43 /sq.ft. | | $   161.29 /sq.ft. | |
| Data Source(s) | FIELD INSPECTION | LUIS ABREU DATA/TASAMAX DATA | | LUIS ABREU DATA/TASAMAX DATA | | LUIS ABREU DATA/TASAMAX DATA | |
| Verification Source(s) | LEGAL DESCRIPTION | ORIENTAL MORTGAGE | | RF MORTGAGE | | ORIENTAL MORTGAGE | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing Concessions | N/A | FHA - ARM-LTH N/A | | CONV - ARM-LTH N/A | | CONV - ARM-LTH N/A | |
| Date of Sale/Time | N/A | 09/25/2018 | | 09/29/2018 | | 06/30/2018 | |
| Rights Appraised | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Location | URBAN/AVERAGE | URBAN/AVERAGE | | URBAN/AVERAGE | | URBAN/AVERAGE | |
| Site | 375.42 SQM @ $235 | 495.82 SQM @ $235 | -28,200 | 330.21 SQM @ $235 | +10,600 | 412.66 SQM @ $235 | -8,800 |
| View | STREET/AVG. | STREET/AVG. | | STREET/AVG. | | STREET/AVG. | |
| Design (Style) | TROPICAL/AVG. | TROPICAL/AVG. | | TROPICAL/AVG. | | TROPICAL/AVG. | |
| Quality of Construction | RC-CB/AVG. | RC-CB/AVG. | | RC-CB/AVG. | | RC-CB/AVG. | |
| Age | 21 | 21 | | 27 | | 27 | |
| Condition | FAIR | AVERAGE/GOOD | -60,000 | AVERAGE | -40,000 | AVERAGE | -40,000 |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 9   4   2.5 | 9   4   2.5 | | 8   4   2.5 | | 7   3   2.5 | |
| Gross Living Area | 2,012 sq.ft. | 2,563 sq.ft. | -27,600 | 2,001 sq.ft. | +600 | 1,953 sq.ft. | +3,000 |
| Basement & Finished | NONE | NONE | | NONE | | NONE | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | WH/SPLIT UNITS | WH/SPLIT UNITS | | WH/SPLIT UNITS | | WH/SPLIT UNITS | |
| Energy Efficient Items | N/A | N/A | | N/A | | N/A | |
| Garage/Carport | DOUBLE CARPORT | DOUBLE GARAGE | -2,000 | DOUBLE CARPORT | | DOUBLE CARPORT | |
| Porch/Patio/Deck | PORCH,PATIO | PORCH,PATIO | | PORCH,PATIO | | PORCH,PATIO | |
| Additional Improvements | FNC,CLO,IG,PA | FNC,CLO,IG,PA | | FNC,CLO,IG,PA | | FNC,CLO,IG,PA | |
| Additional Improvements | RCTERRACE | RCTERR-BAR,OTERR | -2,000 | POOL,WDTERR | -5,000 | POOL,RCTERR | -10,000 |
| Additional Improvements | NONE | NONE | | NONE | | NONE | |
| Net Adjustment (Total) | | ☐ + ☒ - | $   -119,800 | ☐ + ☒ - | $   -33,800 | ☐ + ☒ - | $   -55,800 |
| Adjusted Sale Price of Comparables | | | $   267,200 | | $   261,200 | | $   259,200 |

Summary of Sales Comparison Approach    THE SALES COMPARISON ANALYSIS DEMONSTRATES ADJUSTED VALUE RANGE FROM $259,200 TO $267,200 WITH A MOST PROBABLE MARKET VALUE ROUNDED OF $260,000 BASED ON SALES #2 AND #3.

GROSS LIVING AREA ADJUSTMENTS WARRANTED AT $50 PER SQUARE FOOT AND LOT SIZE DIFFERENCE AT $235 PER SQUARE METER AS PER MARKET REACTION.

THE SUBJECT PROPERTY IS IN FAIR PHYSICAL CONDITION AND REQUIRES SEVERAL REPAIRS FOR DEFERRED MAINTENANCE. AS SUCH, THE COMPARABLE SALES LISTED REQUIRED FROM NEGATIVE ADJUSTMENTS OF $60,000, $40,000 AND $40,000, RESPECTIVELY IN ORDER TO ACCOUNT FOR THE SUPERIORITY OF THEM IN TERMS OF PHYSICAL CONDITION. THESE ADJUSTMENTS CONSIDER THE MONETARY DIFFERENCES BETWEEN THE PHYSICAL STATE OF THE SUBJECT VIS A VIS THE COMPARABLE SALES. SEE REPAIR AND MAINTENANCE ADDENDUM.

ADJUSTMENTS IN EXCESS OF 10% LINEAL, 15% NET AND 25% GROSS WERE UNAVOIDABLE DUE TO THE LACK OF RECENT MARKET DATA (COMPARABLE SALES) WITH SIMILAR PHYSICAL CONDITION TO SUBJECT PROPERTY.

OTHER ADJUSTMENTS WERE MADE ACCORDING TO THEIR ESTIMATED CONTRIBUTORY VALUE OF SALES VS. SUBJECT IN ACCORDANCE WITH MARKET ACCEPTANCE.

THE COMPARABLE SALES SELECTED ARE COMPETITIVE PROPERTIES AND THE BEST AVAILABLE INDICATORS TO VALUE FOR THE SUBJECT AS OF THE EFFECTIVE DATE OF THE APPRAISAL REPORT.

 RESTRICTED
Copyright© 2010 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRTD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE    5/2010

App. Ap. pp.359

# RESTRICTED APPRAISAL REPORT

File No.:

## TRANSFER HISTORY

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s): LEGAL DESCRIPTION SUBMITTED BY THE CLIENT AND PUBLIC RECORDS

| 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing: NO PRIOR SALES OF THE SUBJECT PROPERTY |
|---|---|
| Date: | WITHIN THREE (3) YEARS PRIOR TO THE EFFECTIVE DATE OF THIS APPRAISAL, NOR OF THE COMPARABLE SALES WITHIN THE |
| Price: | PAST YEAR. |
| Source(s): | |
| 2nd Prior Subject Sale/Transfer | |
| Date: | |
| Price: | |
| Source(s): | |

## MARKET

Subject Market Area and Marketability: THIS IS A TYPICAL RESIDENTIAL NEIGHBORHOOD OF THE URBAN SECTOR WITH ALL THE NECESSARY SUPPORTING FACILITIES. THE NEIGHBORHOOD IS LOCATED WHITING DRIVING DISTANCE OF SHOPPING, EMPLOYMENT, PUBLIC PARKS, SCHOOLS AND CHURCHES. AT THE TIME OF INSPECTION THERE WERE NO APPARENT ADVERSE FACTORS WHICH WOULD AFFECT THE SUBJECT MARKETABILITY. IMPROVEMENTS CONFORM WELL WITH SURROUNDING PROPERTIES. AT THE EFFECTIVE DATE OF THIS APPRAISAL REPORT, THE PROPERTIES VALUE WERE STABLE, SUPPLY AND DEMAND WERE IN BALANCE AND THE EXPOSURE TIME AND MARKETING FOR A TYPICAL PROPERTY IN THE NEIGHBORHOOD IS FROM 6 TO 12 MONTHS. THERE IS NO SPECIAL LOAN DISCOUNTS, INTEREST BUY DOWNS, OR SALES CONCESSIONS.

## SITE

Site Area: 375.42 SQM @ $235   Site View: STREET/AVG.   Topography: LEVEL   Drainage: ADEQUATE TO LOT LINE.

Zoning Classification: R-3   Description: ALLOWS RESIDENTIAL USES

Zoning Compliance: ☒ Legal   ☐ Legal nonconforming (grandfathered)   ☐ Illegal   ☐ No zoning

Highest & Best Use: ☒ Present use, or   ☐ Other use (explain)

Actual Use as of Effective Date: RESIDENTIAL: SINGLE-FAMILY DWELLING   Use as appraised in this report: RESIDENTIAL: SINGLE-FAMILY DWELLING

Opinion of Highest & Best Use: RESIDENTIAL: SINGLE-FAMILY DWELLING

FEMA Spec'l Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X500   FEMA Map # 72000C-0710-H   FEMA Map Date 04/19/2005

Site Comments: TYPICAL UTILITY EASEMENTS FOR ELECTRICITY, WATER AND TELEPHONE DO NOT AFFECT VALUE. NO APPARENT ADVERSE EASEMENTS, ENCROACHMENTS, SPECIAL ASSESSMENTS, SLIDE AREAS, ETC. THE PROPERTY FALLS OUTSIDE FLOOD-PRONE AREAS, ZONE X500 CLASSIFICATION.

## IMPROVEMENTS

Improvements Comments: THE SUBJECT PROPERTY LACKS ADEQUATE MAINTENANCE AND THE CURRENT PHYSICAL CONDITION CAN BE RATED AS FAIR. AS SUCH, THE CURRENT PHYSICAL CONDITION OF THE IMPROVEMENTS REQUIRES FROM AN INVESTMENT IN ORDER TO CURE THE DEGREE OF DEFERRED MAINTENANCE THAT IT SUFFERS TO ENHANCE THE COMPETITIVENESS OF THE PROPERTY. AMONG THE NECESSARY REPAIRS INCLUDES ROOF TREATMENT, CEMENT PLASTERING REPAIRS, REPLACE SOME DOORS, TERMITE TREATMENT AND PAINTING,  AMONG OTHER MINOR REPAIRS. THE COST OF REPAIRS NEEDED OR, DEFERRED MAINTENANCE IS ESTIMATED AT $40,000. SEE REPAIR AND MAINTENANCE ADDENDUM. NORMAL PHYSICAL DETERIORATION WAS OBSERVED. SUBJECT'S PHYSICAL DETERIORATION IS ESTIMATED AT 33% (20/60 YEARS). NONE APPARENT EVIDENCE OF FUNCTIONAL OR EXTERNAL OBSOLESCENCE, INADEQUACIES OR SUPER ADEQUACIES WERE FOUND. QUALITY OF CONSTRUCTION IS TYPICAL.

Indicated Value by: Sales Comparison Approach $ 260,000

Indicated Value by: Cost Approach (if developed) $ N/A    Indicated Value by: Income Approach (if developed) $ N/A

## RECONCILIATION

Final Reconciliation THE SALES COMPARISON APPROACH REFLECTS BUYER'S AND SELLER'S ACTIONS AND IS THE BEST INDICATOR OF VALUE FOR THE SUBJECT PROPERTY.

This appraisal is made ☒ "as is",   ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed,   ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed, ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair:

☒ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is:  $ 260,000 , as of: 11/21/2018 , which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report.  See attached addenda.

## ATTACHMENTS

A true and complete copy of this report contains 13 pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:

☒ Table of Contents/Cover Cage   ☒ Certification of the Appraiser   ☒ Subject Photo Page (4)   ☐   ☐
☒ Repair & Maintenance Add.   ☒ Sketch Addendum   ☒ Comparable Photo Page   ☐   ☐
☒ Assumptions / Limiting Cond.   ☒ Building Sketch   ☒ Location Map   ☐   ☐

Client Contact: N/A   Client Name: AIMEE LOPEZ PABON, ESQ.

E-Mail: N/A   Address: P.O. BOX 9024176, SAN JUAN, PR 00902-4176

## SIGNATURES

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
|  | Supervisory or Co-Appraiser Name: |
| Appraiser Name: FRANCISCO J. OTERO VALENTIN | |
| Company: REAL ESTATE APPRAISER & CONSULTANT | Company: |
| Phone: (787 603-1252   Fax: N/A | Phone:   Fax: |
| E-Mail: FJOTERO1302@GMAIL.COM | E-Mail: |
| Date of Report (Signature): 12/03/2018 | Date of Report (Signature): |
| License or Certification #: 1302EPA   State: PR | License or Certification #:   State: |
| Designation: N/A | Designation: |
| Expiration Date of License or Certification: 03/04/2021 | Expiration Date of License or Certification: |
| Inspection of Subject: ☒ Interior & Exterior   ☐ Exterior Only   ☐ None | Inspection of Subject: ☐ Interior & Exterior   ☐ Exterior Only   ☐ None |
| Date of Inspection: 11/20/2018 | Date of Inspection: |

Copyright© 2010 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

GP RESTRICTED

Form GPRTD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

5/2010

App. Ap. pp.360

## REPAIR AND MAINTENANCE ADDENDUM

| Client | AIMEE LOPEZ PABON, ESQ. | | | | | REO# | N/A |
|---|---|---|---|---|---|---|---|
| Property Address | #381 VIA VERSALLES STREET, VILLAS REALES DEV. | | | | | | |
| City | GUAYNABO | County | 061 | State | PR | Zip Code | 00969 |
| Appraiser | FRANCISCO J. OTERO VALENTIN | | | | | | |

| DESCRIPTION | AMOUNT |
|---|---|
| Install new kitchen cabinets damaged by termites (35 lf x $250/lf) and wall ceramic wainscoting ($250) | 9,000.00 |
| Replace interior doors damaged by termites (4 x $250/ea) | 1,000.00 |
| Replace sliding door (access to terrace) broken by Hurricane Maria | 1,000.00 |
| Replace master bath cabinet ($2,000) and main bath cabinet ($500) damaged by termites | 2,500.00 |
| Install ceramic tiles in the staircase (100 sf x $12.50) | 1,250.00 |
| Roof treatment includes carport roof, 1st floor roof extension in dining and 2nd floor roof (1,400 sf x $5) | 7,000.00 |
| Repairing of ceiling stucco and cement plastering in several areas (LS) | 1,500.00 |
| Exterior and interior paint including pressure washing (+/-9,000 sf x $0.75) | 6,750.00 |
| Miscellaneous repairs and contingency (LS) | 2,000.00 |
| Overhead & Profit (25%) | 8,000.00 |
| | |
| | |
| | |

☒ Interior Inspection

☒ Exterior Inspection

TOTAL AMOUNT OF RECOMMENDED REPAIRS $ ___40,000.00___

ESTIMATED VALUE OF THE SUBJECT PROPERTY 'AS IS' $ ___260,000.00___

ESTIMATED VALUE OF THE SUBJECT PROPERTY 'AS REPAIRED' $ ___300,000.00___

**Comments:**

Repairs cost amounts are a good faith estimate. Only obvious repairs, noticeable at plain view, were noted. Moreover, as hidden items may exist, we recommend a more detailed survey by a professional engineer contractor. Appraiser is not a home inspector an not an expert in these matter. The appraiser thereon assumes no responsibility and/or liability.

Case:4-00-327-MCB-1102-cFAB8-Document-0372/1/FileEd:06/27/23/2/Page-1365-42460Desc:
Exhibit 3 - Appraisal Page 5 of 25

# Assumptions, Limiting Conditions & Scope of Work

File No.:

| Property Address: | #381 VIA VERSALLES STREET, VILLAS REALES DEV. | | City: GUAYNABO | State: PR | Zip Code: 00969 |
|---|---|---|---|---|---|
| Client: | AIMEE LOPEZ PABON, ESQ. | Address: | N/A | | |
| Appraiser: | FRANCISCO J. OTERO VALENTIN | Address: | URB. LAS PALMAS DE CERRO GORDO, CALLE ARECA B-7, VEGA ALTA, PR 00692 | | |

**Statement of assumptions & limiting conditions:**

— The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.
— The appraiser may have provided a sketch in the appraisal report to show approximate dimensions of the improvements, and any such sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size. Unless otherwise indicated, a land survey was not performed.
— If so indicated, the appraiser has examined the available flood maps that are provided by the federal emergency management agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified special flood hazard area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.
— The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.
— If the cost approach is included in this appraisal, the appraiser has estimated the value of the land in the cost approach at its highest and best use, and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used. Unless otherwise specifically indicated, the cost approach value is not an insurance value, and should not be used as such.
— The appraiser has noted in the appraisal report any adverse conditions (including, but not limited to, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property, or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property, or adverse environmental conditions (including, but not limited to, the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.
— The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.
— The appraiser will not disclose the contents of the appraisal report except as provided for in the uniform standards of professional appraisal practice, and any applicable federal, state or local laws.
— If this appraisal is indicated as subject to satisfactory completion, repairs, or alterations, the appraiser has based his or her appraisal report and valuation conclusion on the assumption that completion of the improvements will be performed in a workmanlike manner.
— An appraiser's client is the party (or parties) who engage an appraiser in a specific assignment. Any other party acquiring this report from the client does not become a party to the appraiser-client relationship. Any persons receiving this appraisal report because of disclosure requirements applicable to the appraiser's client do not become intended users of this report unless specifically identified by the client at the time of the assignment.
— The appraiser's written consent and approval must be obtained before this appraisal report can be conveyed by anyone to the public, through advertising, public relations, news, sales, or by means of any other media, or by its inclusion in a private or public database.
— An appraisal of real property is not a 'home inspection' and should not be construed as such. As part of the valuation process, the appraiser performs a non-invasive visual inventory that is not intended to reveal defects or detrimental conditions that are not readily apparent. The presence of such conditions or defects could adversely affect the appraiser's opinion of value. Clients with concerns about such potential negative factors are encouraged to engage the appropriate type of expert to investigate.

**Extraordinary assumptions:**

None.

**Scope of work:**

The scope of work is the type and extent of research and analyses performed in an appraisal assignment that is required to produce credible assignment results, given the nature of the appraisal problem, the specific requirements of the intended user(s) and the intended use of the appraisal report. Reliance upon this report, regardless of how acquired, by any party or for any use, other than those specified in this report by the appraiser, is prohibited. The opinion of value that is the conclusion of this report is credible only within the context of the scope of work, effective date, the date of report, the intended user(s), the intended use, the stated assumptions and limiting conditions, any hypothetical conditions and/or extraordinary assumptions, and the type of value, as defined herein. The appraiser, appraisal firm, and related parties assume no obligation, liability, or accountability, and will not be responsible for any unauthorized use of this report or its conclusions.

Under uspap standards rule 2-2(c), this is a restricted use appraisal report, and is intended only for the sole use of the named client. There are no other intended users. The client must clearly understand that the appraiser's opinions and conclusions may not be understood properly without additional information in the appraiser's work file.

In developing this appraisal, the appraiser has incorporated only the sales comparison approach. The appraiser has excluded the cost and income approaches to value, due to being inapplicable given the limited scope of the appraisal. The appraiser has determined that this appraisal process is not so limited that the results of the assignment are no longer credible, and the client agrees that the limited scope of analysis is appropriate given the intended use.

**Client, intended use and intended users:**

The purpose of this appraisal was to form an opinion of the "as is" market value of the fee simple interest in the subject property, as of the effective date of the report. The client of this appraisal report is Aimee Lopez Pabon, Esq. The intended user (s) is the Balcells-Gonzalez community property assets and their legal representatives. The intended use of this appraisal report is to assist the client in the equitable community property assets distribution regarding the subject property.

This appraisal report is for the exclusive use of client regarding to the intended use. However, the client may provider only complete, final copies of the report to third parties who shall review such in connection of intended use. The appraiser is not responsible for the unauthorized of this report. The appraiser is not required to testify or explain as to appraisal result other than to respond to the client for routine and customary questions.

 RESTRICTED

Copyright© 2010 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRTDAD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE
5/2010

App. Ap. pp.362

# Certification

| | | | File No.: |
|---|---|---|---|
| Property Address: #381 VIA VERSALLES STREET, VILLAS REALES DEV. | City: GUAYNABO | State: PR | Zip Code: 00969 |
| Client: AIMEE LOPEZ PABON, ESQ. | Address: N/A | | |
| Appraiser: FRANCISCO J. OTERO VALENTIN | Address: URB. LAS PALMAS DE CERRO GORDO, CALLE ARECA B-7, VEGA ALTA, PR 00692 | | |

## APPRAISER'S CERTIFICATION

**I certify that, to the best of my knowledge and belief:**

— The statements of fact contained in this report are true and correct.

— The credibility of this report, for the stated use by the stated user(s), of the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

— I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

— Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

— I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

— My engagement in this assignment was not contingent upon developing or reporting predetermined results.

— My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

— My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.

— I did not base, either partially or completely, my analysis and/or the opinion of value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property, or of the present owners or occupants of the properties in the vicinity of the subject property.

— I have made a personal inspection of the property that is the subject of this report.

— No one provided significant real property appraisal assistance to the person(s) signing this certification.

**Additional Certifications:**

**DEFINITION OF MARKET VALUE \*:**

Market value means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

1. Buyer and seller are typically motivated;
2. Both parties are well informed or well advised and acting in what they consider their own best interests;
3. A reasonable time is allowed for exposure in the open market;
4. Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
5. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

\* This definition is from regulations published by federal regulatory agencies pursuant to Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) of 1989 between July 5, 1990, and August 24, 1990, by the Federal Reserve System (FRS), National Credit Union Administration (NCUA), Federal Deposit Insurance Corporation (FDIC), the Office of Thrift Supervision (OTS), and the Office of Comptroller of the Currency (OCC). This definition is also referenced in regulations jointly published by the OCC, OTS, FRS, and FDIC on June 7, 1994, and in the Interagency Appraisal and Evaluation Guidelines, dated October 27, 1994.

| | | |
|---|---|---|
| Client Contact: N/A | Client Name: AIMEE LOPEZ PABON, ESQ. | |
| E-Mail: N/A | Address: N/A | |

**APPRAISER**

Appraiser Name: FRANCISCO J. OTERO VALENTIN
Company: REAL ESTATE APPRAISER & CONSULTANT
Phone: (787) 603-1252    Fax: N/A
E-Mail: FJOTERO1302@GMAIL.COM
Date Report Signed: 12/03/2018
License or Certification #: 1302EPA    State: PR
Designation: N/A
Expiration Date of License or Certification: 03/04/2021
Inspection of Subject: ☒ Interior & Exterior    ☐ Exterior Only    ☐ None
Date of Inspection: 11/20/2018

**SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable)**

Supervisory or Co-Appraiser Name:
Company:
Phone:    Fax:
E-Mail:
Date Report Signed:
License or Certification #:    State:
Designation:
Expiration Date of License or Certification:
Inspection of Subject: ☐ Interior & Exterior    ☐ Exterior Only    ☐ None
Date of Inspection:

GP RESTRICTED
Copyright© 2010 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRTDAD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE    5/2010

App. Ap. pp.363

**Building Sketch**

| Client | AIMEE LOPEZ PABON, ESQ. | | | | | |
|---|---|---|---|---|---|---|
| Property Address | #381 VIA VERSALLES STREET, VILLAS REALES DEV. | | | | | |
| City | GUAYNABO | County 061 | | State PR | Zip Code 00969 | |
| Appraiser | FRANCISCO J. OTERO VALENTIN | | | | | |



| TOTAL Sketch by a la mode, inc. | **Area Calculations Summary** | |
|---|---|---|
| **Living Area** | | **Calculation Details** |
| First Floor | 940 Sq ft | 11 × 2.75 = 30.25 |
| | | 33 × 24.75 = 816.75 |
| | | 5.25 × 12 = 63 |
| | | 3 × 10 = 30 |
| Second Floor | 1071.75 Sq ft | 33 × 25.33 = 836 |
| | | 9.5 × 11 = 104.5 |
| | | 10.5 × 12.5 = 131.25 |
| **Total Living Area (Rounded):** | **2012 Sq ft** | |
| **Non-living Area** | | |
| Concrete Terrace | 448.25 Sq ft | 33 × 11.75 = 387.75 |
| | | 2.75 × 11.5 = 31.62 |
| | | 10.5 × 2.75 = 28.88 |
| Porch | 40 Sq ft | 10 × 4 = 40 |
| Double Carport | 430.5 Sq ft | 20.5 × 21 = 430.5 |

Subject Photo - Page 1

| Client | AIMEE LOPEZ PABON, ESQ. | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | #381 VIA VERSALLES STREET, VILLAS REALES DEV. | | | | | | |
| City | GUAYNABO | County | 061 | | State | PR | Zip Code | 00969 |
| Appraiser | FRANCISCO J. OTERO VALENTIN | | | | | | |



**Subject Front**

#381 VIA VERSALLES STREET, VILLAS REALES DEV.

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 2,012 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.5 |
| Location | URBAN/AVERAGE |
| View | STREET/AVG. |
| Site | 375.42 SQM |
| Quality | RC-CB/AVG. |
| Age | 21 |



**Subject Rear**



**Subject Street**

## Subject Photo   Page 2

| Client | AIMEE LOPEZ PABON, ESQ. | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | #381 VIA VERSALLES STREET, VILLAS REALES DEV. | | | | | | |
| City | GUAYNABO | County | 061 | | State | PR | Zip Code | 00969 |
| Appraiser | FRANCISCO J. OTERO VALENTIN | | | | | | |


**Side View**


**Side View**


**Rear Side View**


**Rear Side View**


**Rear View**


**Terrace View**


**Carport View**


**Carport View**


**Foyer**


**Living**


**Dining**


**Family**


**Kitchen**


**Kitchen**


**Kitchen**

App. Ap. pp.366

**Subject Photo - Page 3**

| Client | AIMEE LOPEZ PABON, ESQ. | | | | | |
|---|---|---|---|---|---|---|
| Property Address | #381 VIA VERSALLES STREET, VILLAS REALES DEV. | | | | | |
| City | GUAYNABO | County | 061 | State | PR | Zip Code | 00969 |
| Appraiser | FRANCISCO J. OTERO VALENTIN | | | | | |


**Master Bedroom**


**Bedroom**


**Bedroom**


**Master Bathroom**


**Main Bathroom**


**Staircase**


**Signs of Deferred Maintenance**


**Signs of Deferred Maintenance**


**Signs of Deferred Maintenance**


**Signs of Deferred Maintenance**


**Signs of Deferred Maintenance**


**Signs of Deferred Maintenance**


**Signs of Deferred Maintenance**


**Signs of Deferred Maintenance**


**Signs of Deferred Maintenance**

Form PICINT15 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

App. Ap. pp.367

**Subject Photo Page 4**

| | |
|---|---|
| Client | AIMEE LOPEZ PABON, ESQ. |
| Property Address | #381 VIA VERSALLES STREET, VILLAS REALES DEV. |
| City | GUAYNABO | County | 061 | State | PR | Zip Code | 00969 |
| Appraiser | FRANCISCO J. OTERO VALENTIN |



**Signs of Deferred Maintenance**



**Signs of Deferred Maintenance**



**Signs of Deferred Maintenance**



**Signs of Deferred Maintenance**



**Signs of Deferred Maintenance**



**Signs of Deferred Maintenance**



**Signs of Deferred Maintenance**



**Signs of Deferred Maintenance**



**Signs of Deferred Maintenance**



**Signs of Deferred Maintenance**



**Signs of Deferred Maintenance**



**Signs of Deferred Maintenance**



**Signs of Deferred Maintenance**



**Signs of Deferred Maintenance**



**Signs of Deferred Maintenance**

App. Ap. pp.368

## Comparable Photo Page

| Client | AIMEE LOPEZ PABON, ESQ. | | | | | |
|---|---|---|---|---|---|---|
| Property Address | #381 VIA VERSALLES STREET, VILLAS REALES DEV. | | | | | |
| City | GUAYNABO | County 061 | | State PR | Zip Code | 00969 |
| Appraiser | FRANCISCO J. OTERO VALENTIN | | | | | |



### Comparable 1

#317 VIA ESCORIAL, VILLAS REALES

| Prox. to Subject | SAME DEVELOPMENT |
|---|---|
| Sales Price | 387,000 |
| Gross Living Area | 2,563 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.5 |
| Location | URBAN/AVERAGE |
| View | STREET/AVG. |
| Site | 495.82 SQM @ $235 |
| Quality | RC-CB/AVG. |
| Age | 21 |



### Comparable 2

E-2 REINA VICTORIA ST, QTAS REALES

| Prox. to Subject | COMPETITIVE DEVELOPMENT |
|---|---|
| Sales Price | 295,000 |
| Gross Living Area | 2,001 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.5 |
| Location | URBAN/AVERAGE |
| View | STREET/AVG. |
| Site | 330.21 SQM @ $235 |
| Quality | RC-CB/AVG. |
| Age | 27 |



### Comparable 3

H-3 PRINCESA MARGARITA, QTAS REALES

| Prox. to Subject | COMPETITIVE DEVELOPMENT |
|---|---|
| Sales Price | 315,000 |
| Gross Living Area | 1,953 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | URBAN/AVERAGE |
| View | STREET/AVG. |
| Site | 412.66 SQM @ $235 |
| Quality | RC-CB/AVG. |
| Age | 27 |

**Location Map**

| Client | AIMEE LOPEZ PABON, ESQ. | | | | | |
|---|---|---|---|---|---|---|
| Property Address | #381 VIA VERSALLES STREET, VILLAS REALES DEV. | | | | | |
| City | GUAYNABO | County | 061 | State | PR | Zip Code 00969 |
| Appraiser | FRANCISCO J. OTERO VALENTIN | | | | | |



Form MAP.LOC — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

App. Ap. pp.370

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**
**Minute Entry**

_**Hearing Information**_:

**Debtor**: JUAN CARLOS BALCELLS GALLARETA
**Case Number:** 11-06637-MCF                    **Chapter:** 7
**Adversary Number**: 14-00137-MCF
**Date / Time / Room**: 02/09/2022 09:02 am
**Bankruptcy Judge**: MILDRED CABAN FLORES
**Courtroom Clerk**: ED BUJOSA
**Reporter / ECR**: CARLOS APONTE

_**Matter**_:

ORDER TO SHOW CAUSE TO THE PLAINTIFF (DKT #220)

TRUSTEE'S MOTION IN COMPLIANCE WITH THE ORDER TO SHOW CAUSE (DKT #223)

_**Appearances**_:

Rafael A. Gonzalez on behalf of Noreen Wiscovitch, Chapter 7 Trustee, Plaintiff
Noreen Wiscovitch, Chapter 7 Trustee
Amarilis Gonzalez, Pro-se Defendant

_**Minutes of Proceedings**_:

**ORDER:**

For the reasons stated in open court, the adversary proceeding is dismissed.

**/s/MILDRED CABAN FLORES**
**U.S. Bankruptcy Judge**

App. Ap. pp.371

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO

IN RE:

**JUAN CARLOS BALCELLS GALLARETA**
Debtor(s)

**CASE NO.  11-06637 (MCF)**

**CHAPTER 7**

**NOREEN WISCOVITCH RENTAS**
Plaintiff(s)

**ADVERSARY NO. 14-00137 (MCF)**

v.
**AMARILIS GONZALEZ GARCIA**

Defendant(s)

**JUDGMENT**

Upon the bench order issued on February 9, 2022, dismissing the adversary proceeding
(Docket No. 229), it is now

ADJUDGED AND DECREED that judgment be and is hereby entered dismissing the
above captioned adversary proceeding.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 10th day of February, 2022.

_____
MILDRED CABAN FLORES
U.S. Bankruptcy Judge

App. Ap. pp.372

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALAS DE FAMILIA Y MENORES
REGION JUDICIAL DE BAYAMÓN

AMARILIS GONZÁLEZ GARCÍA
Demandante

Vs.

JUAN C. BALCELLS GALLARRETA
Demandado

Civil Núm.: **D DI2006-4055  (3005)**

Sobre:   **DIVORCIO (TC)**

## MINUTA

A la vista de estado de los procedimientos comparece la demandante por derecho propio.  El demandado comparece representado por la Lcda. Vera T. Peñagaricano Kindratiw.

Se hace constar que el presente caso estuvo atendido y presidido por la Honorable Juez Soler, quien se inhibió del asunto y se reasignó a esta Sala.

El Tribunal manifiesta que se emitió una determinación en cuanto a que la demandante no podía representarse por derecho propio en este proceso.  Sin embargo, toda vez que existían unos asuntos pendientes de disposición y ante una moción de la parte demandada en la que expresó que para esta vista se allanaba a que la demandante compareciera por derecho propio, se señaló la vista de hoy para atender y disponer una Orden de Manejo.

La licenciada  Peñagaricano Kindratiw indica que el término concedido a la parte demandante para procurar representación legal vence el miércoles.  Solicita que ésta informe las gestiones realizadas para conseguir representación legal y cumplir con lo ordenado.

La demandante entiende que tiene derecho a representarse por derecho propio.  Indica que tiene representación legal en otros casos, por lo que no tiene dinero suficiente para sufragar representación legal en este caso.

**El Tribunal mantiene la determinación de que la demandante debe comparecer representada por abogado.  Le concede una prórroga de 10 días, los cuales vencen el 19 de junio de 2015, para que anuncie su representación legal en este caso.**

* * * *

El Tribunal hace constar que existen varios asuntos pendientes, entre ellos: una solicitud de revisión de pensión alimentaria, unos pagos de hipoteca, unos pagos de escuela y un asunto que trajo la parte demandada en cuanto a una solicitud de relevo de pensión alimentaria por mayoría de edad.

* * * *

Continúa...
8 de junio de 2015

App. Ap. pp.373

La licenciada Peñagaricano Kindratiw indica que existía una Orden que compelía a la demandante a consignar en el Tribunal el monto correspondiente a la proporción que aporta su cliente a la hipoteca, el cual está contemplado dentro del pago de la pensión alimentaria. Sin embargo, expresa que el último escrito que recibió fue en noviembre de 2014, por lo que no tiene evidencia de que se esté consignando los montos de hipoteca en el Tribunal. Solicita que se le releve al demandado de pagar la parte que corresponde a la hipoteca, ya que esa residencia se encuentra en un proceso de ejecución.

La demandante expresa que la hipoteca no está en ejecución por falta de pago, sino porque la propiedad fue llevada como un bien del caudal en un procedimiento de quiebra al cual se acogió el demandado. Manifiesta que se llegó a un acuerdo de venta con la Síndico en febrero de 2012, sin embargo, el mismo no se ha llevado a cabo. Posteriormente hubo una demanda de la Síndico en su contra para vender a un tercero, por lo que se le recomendó cesar los pagos y que los mismos fueran consignados en el Tribunal. Indica que ha consignado el dinero hasta marzo de 2015 y que la cantidad de abril y mayo no la ha consignado porque está en la espera de la contestación a una segunda oferta y porque los utilizó en unos gastos de graduación.

El Tribunal le concede a la demandante hasta el 30 de junio de 2015 para consignar los pagos de abril y mayo.

La demandante solicita que se le concedan 30 días.

El Tribunal le concede a la demandante los 30 días solicitados, entiéndase, hasta el 8 de julio de 2015 para consignar los pagos de abril y mayo. Establece que ésta deberá continuar realizando la consignación hasta que se resuelva el asunto del inmueble.

La licenciada Peñagaricano Kindratiw entiende que la cantidad que la demandante debe consignar mensualmente es $540. Solicita que en el término concedido se consigne también el pago de junio.

**El Tribunal hace el cómputo y establece que existen $80 de deficiencia en la consignación por $1,000 del 11 de marzo, correspondientes a los pagos de diciembre 2014 y enero de 2015 y $80 de deficiencia en la consignación por $1,000 del 6 de abril, correspondientes a los pagos de febrero 2015 y marzo 2015. <u>Le concede a la demandante hasta el 8 de julio de 2015 para consignar la deficiencia de $160 correspondientes a los pagos de diciembre, enero, febrero y marzo y los pagos de hipoteca de abril, mayo y junio.</u>**

* * * *

La licenciada Peñagaricano Kindratiw expresa que desde agosto de 2013 era la demandante la responsable del pago de colegio, sin embargo, el Colegio San

3

D D12006-4055

Ignacio certifica una deuda al 5 de junio de 2015 de $3,225 correspondiente a la pensión escolar 2014-2015. Indica que su cliente pagó su deuda con el colegio.

La demandante reconoce que se le adeuda una cantidad al colegio, sin embargo, indica que para hacer un análisis de cuanto es lo que se debe necesita saber lo que pagó la otra parte.

**El Tribunal le concede 10 días a la demandante para acudir al Colegio San Ignacio y solicitar la certificación de lo adeudado a partir de agosto de 2013 hasta hoy. Deberá además, informarle al Tribunal cual es el acuerdo de pago alcanzado para saldar la deuda lo antes posible.**

**En el mismo término, la parte demandada deberá acreditar los pagos realizados al colegio por la deuda con anterioridad a agosto de 2013, para que la parte demandante pueda tener certeza de que lo que se le adeudaba fue utilizado para lo que el Tribunal ordenó.**

* * * *

En cuanto al relevo de pensión alimentaria, la licenciada Peñagaricano Kindratiw informa que su cliente le notificó personalmente a la joven de dicha solicitud. No obstante, al ésta advenir a la mayoridad el 10 de julio, quedaría pendiente determinar cuál es el monto que le corresponde al joven. A esos fines solicita que se refiera el caso ante la Examinadora de Pensiones Alimentarias. Indica además, que la pensión fue establecida en agosto de 2012, por lo que también procedería la revisión de la misma en agosto de 2015.

La demandante entiende que no procede lo solicitado por la parte demandada, ya que se encuentra ante el Apelativo una solicitud de rebaja de pensión alimentaria.

El Tribunal hace constar que la determinación del Tribunal de Apelaciones del 28 de mayo de 2014 lee "...luego de que se estableció una nueva pensión alimentaria el 29 de agosto de 2012, por lo tanto el Tribunal devuelve la continuación de los procedimientos de forma consistente con lo aquí resuelto al foro de Instancia.

Las partes reconocen que dicha determinación no fue recurrida ante el Tribunal Supremo, por lo que se convierte en la Ley del caso.

Se le conceden cinco días a la licenciada Peñagaricano Kindratiw para que presente por escrito la evidencia de que en efecto se cumplió con la orden de notificarle a la joven sobre la solicitud de modificación. Una vez se reciba dicha evidencia, se le concederá un término a la joven para que se exprese.

**El Tribunal determina que el 29 de agosto de 2015 se cumplen los tres años y procede una revisión conforme a las nuevas guías de pensión alimentaria. Refiere el caso ante la Examinadora de Pensiones Alimentarias, Lcda. Denise Vázquez Ortiz, para que atienda el asunto de revisión de la pensión determinada en este caso por el trascurso de tres**

8 de junio de 2015

| United States Bankruptcy Court __Federal__ District of __Puerto Rico__ | | PROOF OF CLAIM |
|---|---|---|

Name of Debtor:   JUAN CARLOS BALCELLS GALLARETA

Case Number: **1106637**   **MCF**   Chapter: 7

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor:   *(The person or entity to whom the debtor owes money or property)*

**110000**

BANCO POPULAR PUERTO RICO - MORTGAGE DIVISION

☑ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notice should be sent:

CARDONA-JIMENEZ LAW OFFICE
Bankruptcy Department
P.O. Box 9023593
San Juan, P.R. 00902-3593

Court Claim Number: _   2
(If known)

Telephone Number:   (787) 724-1303

Filed on:___10/28/2011___

Name and address where payment should be sent (if different from above):

BANCO POPULAR PUERTO RICO - MORTGAGE DIVISION
MORTGAGE SERVICING DIVISION
PO BOX 362708
SAN JUAN PR 00936-2708

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone Number:   7875220220

**1. Amount of Claim as of Date Case Filed:**   $   **58,041.76**

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition ti the principal ammount of the claim. Attach itemized statement of all interest or additional charges.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

**2. Basis for Claim**
(See instruction #2 on reverse side.)   MORTGAGE

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

**3. Last four digits of any number by which creditor identifies debtor:** ☐☐☐☐ *******9536

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**

Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☑ Real Estate  ☐ Motor Vehicle  ☐ Other:
Describe:

Value of Property:$ **0.00**   Annual Interest Rate: ____**7.00**%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $**168.48**   Basis for perfection: _____

Amount of Secured Claim: $ **58,041.76**   Amount Unsecured:$ _____

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ _____

**6. Credits:**   The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Documents:**   Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| Date:<br>January 11, 2012 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>JOSE F. CARDONA | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:*   Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

App. Ap. pp.376

## STATEMENT OF ACCOUNT

| JUAN C BALCELLS-GALLARRET | .9536 | 11-06837MCF NW | 08/05/11 |
|---|---|---|---|
| Petitioner Name | Loan Number | Bankruptcy Number | Filing Date |

### SECURED LIEN ON REAL PROPERTY

| | |
|---|---|
| Principal Balance as of  07/01/11 | 56,861.81 |
| Accrued Interest from  06/01/11   to 09/30/11 | 992.35 |

| Interest Rate   7.00000 | Accrued No. of Days   91 | Per Diem:   10.90 |
|---|---|---|

Monthly Payment to Escrow:  (To be used when loan will be cancelled under the bankruptcy payment plan)

| | | | | | | |
|---|---|---|---|---|---|---|
| Hazard | 0.00 | Taxes | 0.00 | MIP | 0.00 | |
| A&H | 0.00 | Life | 0.00 | | | |
| | TOTAL Monthly Escrow | | 0.00 | Mths in Arrears   3 | Escrow in Arrears..... | 0.00 |
| | | | | | Accrued Late Charge | 132.60 |

**Advances Under Loan Contract:**

| | | | | | | |
|---|---|---|---|---|---|---|
| Title Search | 35.00 | Tax Certificate | 0.00 | Inspection | 0.00 | 55.00 |
| Other | 20.00 | | | | | |
| FC Legal Fees | 0.00 | | | BKT Legal Fees | 0.00 | 0.00 |
| TOTAL Amount owed as of  09/30/11 | | | | | | 58,041.76 |

### AMOUNT IN ARREARS

**Pre-Petition Amount:**

| | | | |
|---|---|---|---|
| 2  Payments of | 11.05 each one | | 22.10 |
| Accumulated Lated Charges | | | 91.38 |

**Advances Under Loan Contract:**

| | | | | | | |
|---|---|---|---|---|---|---|
| Title Search | 35.00 | Tax Certificate | 0.00 | Inspection | 0.00 | 35.00 |
| Other | 20.00 | | | | | |
| FC Fees | 0.00 | | | BKT Legal Fees | 0.00 | 0.00 |
| | | | | A = TOTAL PRE-PETITION AMOUNT | | 148.48 |

**Post-Petition Amount:**

| | | | |
|---|---|---|---|
| 1   Payment of | 11.05 each one | | 11.05 |
| Late Charge | | | 41.22 |
| | | B = TOTAL POST-PETITION AMOUNT | 52.27 |
| | | A + B = TOTAL AMOUNT IN ARREARS | 200.75 |

### OTHER INFORMATION

| | | | | | |
|---|---|---|---|---|---|
| Next Payment Due   07/01/11 | Interest Rate   7.00000 | P&I   1,030.56 | Req. Esc   74.44 | Monthly Late Charge | 41.22 |

| | | | |
|---|---|---|---|
| Investor | BANCO POPULAR DE PUERTO RICO | Property Address | E-33   URB. VILLA REALES   GUAYNABO         PR |

The subscribing representative of Banco Popular de Puerto Rico declares under penalty of perjury that according to the information gathered by Banco Popular de Puerto Rico, foregoing is true and correct.

BANCO POPULAR DE PUERTO RICO

09/30/11
Date

App. Ap. pp.377



## LORD TITLE SERVICE CO.
713 ANDALUCIA AVENUE PUERTO NUEVO
SAN JUAN, PUERTO RICO 00920
WWW.LORDTITLE.COM

PHONE: (787) 774-1660
FAX: (787) 782-5888
TSEARCH@LORDTITLE.COM

Notice:

**CASE:** CARDONA JIMENEZ LAW OFFICES          Gloriann Bankruptcy #11-06637

**RE:** JUAN C. BALCELLS GALLARETA          BPPR #071010011799536

**PROPERTY NUMBER:** #41852 recorded at page 250 of volume 1197 of Guaynabo, Property Registry of Guaynabo, .

**DESCRIPTION:** URBANA: Solar radicado en la Urbanización Villas Reales, localizada en el Barrio Santa Rosa del término municipal de Guaynabo, Puerto Rico, que se describe en el plano de inscripción con el número, área y colindancias que se relacionan a continuación: Número del solar 33 del bloque E, área del solar 375.42 metros cuadrados, en lindes por el NORTE, en una distancia de 25.08 metros lineales, con el solar #32 del mismo bloque; por el SUR, en una distancia de 25.00 metros lineales, con el solar #34 del mismo bloque; por el ESTE, en dos alineaciones continuas que suman 15.10 metros lineales, con parcela de uso público; y por el OESTE, en una distancia de 15.00 metros lineales, con la calle #7 de la Urbanización, también conocida como Calle Versalles. Enclava una casa en concreto para fines residenciales. Se halla afecto este solar par fines residenciales. Servidumbre en equidad: franja de terreno de 1.00 metros de ancho por 25.00 metros de largo aproximadamente, que discurre a lo largo de su colindancia Sur, la cual será utilizada para pintar, proteger la pared de su casa, dar mantenimiento y cualquier otra reparación que sea necesaria a favor del solar #34.

**ORIGIN:** Main Property #39352 recorded at page 100 of volume 1119 of Guaynabo

**FEE SIMPLE:** Title is vested in favor of **JUAN CARLOS BALCELLS GALLASSETA and his wife AMARILIS GONZALEZ GARCIA** who acquired for the purchase price of $189,642.00 from Villas Reales S.E., pursuant to Deed #14 executed in San Juan on December 17, 1996 before Notary Public José Carlos González Bonilla, recorded at page 250 of volume 1197 of Guaynabo, property #41852 and inscription 1st and last.

**ENCUMBRANCES:** By its origin: Easement in favor of AAA, AEE, PRTC, Restrictive Conditions, property #29445 of United State of America.

**BY ITSELF:** Mortgage guaranteeing a note in favor of RG Mortgage Corp. and/or its assigns for the amount of $132,925.00 at 7% interest yearly, due on January 1, 2017, constituted pursuant to Deed #577 executed in San Juan on December 17, 1996 before Notary Public Heberto J. De Vizcarrondo Armstrong recorded at page 250 of volume 1197 of Guaynabo , property #41852, Inscription 1st and last.

**NOTE: NEW INFORMATION SUBMITTED TO THE PROPERTY REGISTRY, MAY TAKE A FEW DAYS TO BE REFLECTED INTO THE AGORA ELECTRONIC SYSTEM. WE ARE NOT LIABLE  FOR ERRORS AND / OR OMISSIONS CREATED BY THIS SITUATION.**

Run for states attachments, including Law #12 of 2010 and federal attachments, judgments and Electronic Daily Log up to entry  of book  (Agora  System).

November 28, 2011                              1111-0423

**NOEL A. HERNANDEZ GUZMAN**
**PRESIDENT**

39-F

THIS IS NOT A TITLE INSURANCE POLICY AND SHOULD NO BE RELIED UPON AS SUCH. LIABILITY FOR THIS TITLE SEARCH IS LIMITED TO THE AMOUNT PAID FOR IT. FOR FULL PROTECTION PURCHASERS AND LENDERS SHOULD REQUIRE A TITLE INSURANCE POLICY

(/58/34)
99-88362

Commonwealth of Puerto Rico

FHA CASE NO. 501-5252342-703

# ------------MORTGAGE NOTE------------
# --------------PAGARE HIPOTECARIO--------------

US $132,925.00          San Juan, Puerto Rico          December 17th, 1996

1.  "Borrower" means each person signing at the end of this Note, and the
1.  "Deudor Hipotecario" significa cada persona que firma al final de este Pagaré, y sus

person's successors and assigns.  "Lender" means R&G MORTGAGE CORPORARTION
sucesores y cesionarios. "Acreedor Hipotecario" significa ----------------------------

-------------------------------------------------------------------------------

and its successors and assigns.-------------------------------------------------
y sus sucesores y cesionarios.-------------------------------------------------------------

2.  In return for a loan received from Lender, Borrower promises to pay
2.  A cambio de un préstamo recibido del Acreedor Hipotecario, el Deudor Hipotecario se

the principal sum of ONE HUNDRED THIRTY TWO THOUSAND NINE HUNDRED TWENTY FIVE
obliga a pagar la cantidad principal de  ----------------------------------------

Dollars (U.S.$ 132,925.00------------), plus interest, to the order of the
----------------------------  Dólares (U.S.$ ---------), más intereses, a la orden

Lender.  Interest will be charged on unpaid principal, from the date of
del Acreedor Hipotecario.  Se cargará intereses sobre el principal adeudado, desde la fecha

disbursement of the loan proceeds by Lender, at the rate of  SEVEN-------
en que el Acreedor Hipotecario desembolse el producto del préstamo a razón de

---------- per cent ( -7- %) per year until the full amount of principal
---------- por ciento ( -------- %) anual hasta que el principal haya sido totalmente

has been paid.-------------------------------------------------------------------
pagado.-----------------------------------------------------------------------------

3.  Borrower's promise to pay is secured by a mortgage that is dated the
3.  La obligación de pagar del Deudor Hipotecario está garantizada por una hipoteca, otor-

same date as this Note and called the "Security Instrument".  The Security
gada en la misma fecha de este Pagaré, denominada "Hipoteca".  La Hipoteca protege al Acree-

Instrument protects the Lender from losses which might result if Borrower
dor Hipotecario de pérdidas que podrían resultar si el Deudor Hipotecario incumpliere con los

defaults under this Note.----------------------------------------------------------
términos de este Pagaré.-----------------------------------------------------------------

4.  (A)  Borrower shall make a payment of principal and interest to Lender
4.  (A)  El Deudor Hipotecario hará un pago de principal más intereses, al Acreedor Hipo-

on the first day of each month beginning on  FEBRUARY  , 19 97 .  Any
tecario el primer día de cada mes, comenzando en ----------- de 19 -- .  Cualquier prin-

principal and interest remaining on the first day of JANUARY , 2017 , will
cipal más intereses adeudados al día primero de -------------del 20 -- , vencerá en esa

be due on that date, which is called the maturity date.---------------------
misma fecha que es denominada la fecha de vencimiento.-----------------------------------

     (B)  Payment shall be made at the address notified to Borrower at
     (B)  El pago será efectuado en la dirección notificada al Deudor Hipotecario en el

closing or at such place as Lender may designate in writing by notice to
cierre o en cualquier otro lugar que el Acreedor Hipotecario designe por escrito con notifi-

Borrower.-----------------------------------------------------------------------
cación al Deudor Hipotecario.-------------------------------------------------------------

     (C)  Each monthly payment of principal and interest will be in the
     (C)  Cada pago mensual de principal más intereses será por la cantidad de

amount of ONE THOUSAND THIRTY DOLLARS AND FIFTY SIX CENTS ------ (U.S.$ 1,030.56--- ).
---------------------------------------------------------------(U.S.$ -------- ).
==================================================================================

This amount will be part of a larger monthly payment required by the Secu-
Esta cantidad es parte de un pago mensual mayor, requerido por la Hipoteca que será apli-

rity Instrument, that shall be applied to principal, interest and other
cado al principal, intereses y a otros conceptos en el orden descrito en la Hipoteca.--------

items in the order described in the Security Instrument. ------------------
--------------------------------------------------------------------------------

5.   Borrower has the right to pay the debt evidenced by this Note, in
5.   El Deudor Hipotecario tiene el derecho de pagar la deuda evidenciada por este Pagaré,

whole or in part, without charge or penalty, on the first day of any month.
total o parcialmente, sin recargo ni penalidad, el primer día de cualquier mes.  El Acreedor

Lender shall accept prepayment on other days provided that Borrower pays
Hipotecario aceptará el prepago cualquier otro día siempre que el Deudor Hipotecario pague

interest on the amount prepaid for the remainder of the month to the extent
intereses en la cantidad prepagada por el resto del mes requerido por el Acreedor Hipotecario

required by Lender and permitted by regulations of the Secretary.   If
y permitido por la reglamentación del Secretario.  Si el Deudor Hipotecario hace prepagos

Borrower makes a partial prepayment, there will be no changes in the due
parciales, no habrá cambios en la fecha de vencimiento o la cantidad de pago mensual a menos

date or in the amount of monthly payment unless Lender agrees in writing to
que el Acreedor Hipotecario acepte los cambios por escrito.----------------------------------

those changes.------------------------------------------------------------------
--------------------------------------------------------------------------------

6.   (A)   If Lender has not received the full monthly payment required by
6.   (A)   Si el Acreedor Hipotecario no hubiere recibido el pago total mensual requerido

the Security Instrument, as described in Paragraph 4(C) of this Note, by
por la Hipoteca, tal como se describe en el párrafo 4(c) de este Pagaré, al cabo de quince

the end of fifteen (15) calendar days after the payment is due, Lender may
(15) días calendarios después del vencimiento del pago, el Acreedor Hipotecario podrá cobrar

collect a late charge in the amount of four percent (4.00%) of the overdue
un recargo por demora en la cantidad de un cuatro por ciento (4.00%) de la suma atrasada de

amount of each payment.---------------------------------------------------------
cada pago.----------------------------------------------------------------------

     (B)   If Borrower defaults by failing to pay in full any monthly pay-
     (B)   Si el Deudor Hipotecario incumpliere por no efectuar el pago completo de cual---

ment, then Lender may, except as limited by regulations of the Secretary
quier pago mensual, entonces, el Acreedor Hipotecario podrá, sujeto a las limitaciones regla-

in the case of payment defaults, require immediate payment in full of the
mentarias del Secretario para el caso de incumplimiento por falta de pago, exigir el pago

principal balance remaining due and all accrued interest.   Lender may
total inmediato del saldo impagado del principal y de todos los intereses acumulados.  El

choose not to exercise this option without waiving its rights in the event
Acreedor Hipotecario podrá elegir no ejercitar esta opción sin renunciar a sus derechos en

of any subsequent default.  In many circumstances regulations issued by the
caso de cualquier incumplimiento subsiguiente.  En muchas circunstancias las reglamentaciones

Secretary will limit Lender's rights to require immediate payment in full
emitidas por el Secretario limitan los derechos del Acreedor Hipotecario para exigir el pago

in the case of payment defaults.  This Note does not authorize acceleration
total inmediato por incumplimiento en el pago de plazos vencidos.  Este Pagaré no autoriza la

when not permitted by HUD regulations.  As used in this Note, "Secretary"
aceleración de su vencimiento cuando los reglamentos de HUD no lo permitan.  Tal como se usa

means the Secretary of Housing and Urban Development or his or her
en este Pagaré, la palabra "Secretario" significa el Secretario del Departamento de

designee.-----------------------------------------------------------------------
Desarrollo Urbano y Vivienda de los Estados Unidos de América o su representante.------------

--------------------------------------------------------------------------------

App. Ap. pp.380

(C)  If Lender has required immediate payment in full, as described
(C)  Si el Acreedor Hipotecario ha exigido el pago total inmediato, según se describe

above, Lender may require Borrower to pay costs and expenses including rea-
anteriormente, podrá requerirle al Deudor Hipotecario que pague costas y gastos, incluyendo

sonable and customary attorney's fees for enforcing this Note to the extent
honorarios de abogado razonables y acostumbrados, hasta el máximo por la ley aplicable para

not prohibited by applicable law.   Such fees and costs shall bear interest
exigir el cumplimiento de este Pagare.   Dichos honorarios, costas y gastos devengarán

from the date of disbursement at the same rate as the principal of this
intereses, desde el día de su desembolso, al mismo tipo que el principal de este Pagaré.-----
Note.----------------------------------------------------------------------------
--------------------------------------------------------------------------------

7.   Borrower and any other person who has obligations under this Note
7.   El Deudor Hipotecario y cualquier otra persona que esté obligada bajo este Pagaré,

waive the rights of presentment and notice of dishonor.   "Presentment"
renuncian a los derechos de presentación y aviso de rechazo.   "Presentación" significa el

means the right to require Lender to demand payment of amounts due.
derecho de requerirle al Acreedor Hipotecario que demande el pago de las cantidades vencidas.

"Notice of Dishonor" means the right to require Lender to give notice to
"Aviso de Rechazo" significa el derecho de requerirle al Acreedor Hipotecario notificar a

other persons that amounts due have not been paid.--------------------------
otras personas que las cantidades vencidas no han sido pagadas.----------------------

8.   Unless applicable law requires a different method, any notice that
8.   Salvo que el Derecho aplicable requiera un método distinto, cualquier notificación que

must be given to Borrower under this Note will be given by delivering it or
deba hacerse al Deudor Hipotecario bajo este Pagaré se hará mediante entrega o por correo de

by mailing it by first class mail to Borrower at the Property address below
primera clase, dirigida al Deudor Hipotecario, a la dirección de la Propiedad abajo indicada

or at a different address if Borrower has given Lender a notice of Borrow-
o a una dirección diferente, si el Deudor Hipotecario le ha notificado al Acreedor Hipoteca-

er's different address.------------------------------------------------------
rio de una dirección diferente.------------------------------------------------

Any notice that must be given to Lender under this Note will be given
Cualquier notificación que se deba hacer al Acreedor Hipotecario bajo este Pagaré le

by first class mail to Lender at the address stated in Paragraph 4(B) or at
será hecha por correo de primera clase a la dirección expresada en el Párrafo 4(B) o a una

a different address if Borrower is given a notice of that different
dirección diferente si al Deudor Hipotecario le ha sido notificada una dirección diferente.--
address.----------------------------------------------------------------------
--------------------------------------------------------------------------------

9.   If more than one person signs this Note, each person is fully and
9.   Si más de una persona firma este Pagaré, cada una queda total y personalmente obligada

personally obligated to keep all of the promises made in this Note, includ-
a cumplir todos los compromisos contraídos en este Pagaré, incluyendo el de pagar la cantidad

ing the promise to pay the full amount owed.   Any person who is a guaran-
total adeudada.   Cualquier persona que sea garantizadora, fiadora o endosante de este Pagaré

tor, surety or endorser of this Note is also obligated to do these things.
está también obligada a cumplir lo estipulado.   Cualquier persona que asuma estas obligacio-

Any person who takes over these obligations, including the obligations of a
nes, incluyendo las obligaciones de un garantizador, fiador o endosante de este Pagaré, tam-

guarantor, surety or endorser of this Note, is also obligated to keep all
bién esta obligada a cumplir todos los compromisos contraídos en el mismo.   El Acreedor

of the promises made in this Note.   Lender may enforce its rights under
Hipotecario podrá hacer valer sus derechos bajo este Pagaré en contra de cada persona indivi-

this Note against each person individually or against all signatories

App. Ap. pp.381

jualmente o en contra de todos los signatarios conjuntamente.  A cualquier suscribiente de

together.   Any one person signing this Note may be required to pay all of
este Pagaré le podrá ser requerido el pago de todas las cantidades adeudadas bajo el mismo.

the amounts owed under this Note.-----------------------------------------------
-----------------------------------------------------------------------------------

        BY SIGNING BELOW, Borrower accepts and agrees to the terms and cove-
        AL SUSCRIBIR este Pagaré el Deudor Hipotecario acepta y está de acuerdo con los térmi-

nants contained in this Note.---------------------------------------------------
nos y pactos contenidos en el mismo.----------------------------------------------

        This Note is secured by a mortgage executed by Deed number ---577----
        Este Pagaré está garantizado por Hipoteca constituida por la Escritura Número ------

of this same date before the subscribing Notary.--------------------------
otorgada en esta misma fecha ante el Notario suscribiente.-------------------------

        In  San Juan----------, Puerto Rico, on  December 17th,---------19 96.
        En  -------------------, Puerto Rico, a  ---------------- de 19  --

LOQUE E LOTE 33                          _____
RB. VILLA REALES                         JUAN CARLOS BARCELLÉ GALLARRETA
GUAYNABO, PUERTO RICO

                                         _____
                                         AMARILIS GONZALEZ GARCIA

                                         _____
                                                     Borrower(s)
                                                Deudor(es) Hipotecario(s)

Property Address
Dirección de la Propiedad


Affidavit Number  18,560
Afidávit Número ------

---Subscribed to before me by the issuers, who are of legal age, married
to each other, property owners and residents of Bayamón, Puerto Rico, on
the date and place above mentioned.

PAY TO THE ORDER OF

WITHOUT RECOURSE
R&G Mortgage Corp.
By:

Pay to the order of

without recourse
BANCO POPULAR DE PUERTO RICO

FHA CASE NO. 501-5252342-703

---NUMBER FIVE HUNDRED SEVENTY SEVEN (577)--------
---Número-------------------------------------------------

------------------FIRST MORTGAGE------------------
------------------PRIMERA HIPOTECA--------------------

---In San Juan-----------, Commonwealth of Puerto
---En -----------------------, Estado Libre Asociado de

Rico, this seventeen (17)---day of December------,
Puerto Rico, el ----------------de----------------- de Mil

Nineteen Hundred and Ninety- six (1996).---------
Novecientos Noventa y ----------------------------------

--------------------BEFORE ME--------------------
------------------------ANTE MI----------------------------

HEBERTO J. DE VIZCARRONDO ARMSTRONG--, Notary Public in
----------------------------------, Notario Público de

Puerto Rico, with offices at LIFETIME BUILDING, QUISQUEYA
Puerto Rico, con oficinas en AVENUE, HATO REY, PUERTO RICO---

and residence in San Juan---------- , Puerto Rico.
y residencia en ---------------------------; Puerto Rico.

----------------------APPEAR----------------------
----------------------------COMPARECEN----------------------

---The parties mentioned in Paragraphs Ninth and
---Las partes nombradas en los Párrafos Noveno y Décimo de esta

Tenth of this Deed, hereinafter called the "Bor-
Escritura, denominadas de aquí en adelante "Deudor Hipotecario"

rower" and the "Lender", whose personal circum-
y "Acreedor Hipotecario", cuyas circunstancias personales apa-

stances are set forth in said paragraphs.---------
recen en dichos párrafos.------------------------------------;

---The appearing parties assure me that they are
Asegúranme los comparecientes hallarse en el pleno goce de sus

in the full exercise of their civil rights without
derechos civiles, sin que me conste nada en contrario, y

anything to the contrary being known to me, and
teniendo a mi juicio la capacidad legal necesaria para este

being in my judgment legally competent to execute
otorgamiento, libremente------------------------------------

this document, they freely-------------------------
------------------------------------------------------------

---------------STATE AND COVENANT----------------
--------------------DECLARAN Y CONVIENEN--------------------

FIRST: That the Borrower is the owner of the
PRIMERO: Que el Deudor Hipotecario es dueño de la propiedad o

property or properties described in Paragraph
propiedades descritas en el Párrafo Octavo de esta Escritura,

Eighth of this Deed, hereinafter called the "Prop-
denominada en lo sucesivo la "Propiedad" y tiene el derecho

erty" and has the right to mortgage the Property;
de hipotecar la Propiedad; que la Propiedad está libre de

that the Property is unencumbered, except for
cargas y gravámenes, excepto por las cargas inscritas y que el

Page 1 of 31          Puerto Rico Revised Form August 1996

App. Ap. pp.383

encumbrances of record and that the Borrower will
Deudor Hipotecario garantizará y defenderá su título a la Pro-

warrant and defend the title to the Property
piedad contra toda reclamación y demanda.----------------------

against all claims and demands.--------------------
------------------------------------------------------------

**SECOND:**  That as evidence of a loan received from
**SEGUNDO:**  Que como evidencia de un préstamo recibido del Acree-

Lender, the Borrower as of this date has sub-
dor Hipotecario, el Deudor Hipotecario ha suscrito en esta

scribed a promissory note in the sum of ONE ———
misma fecha un pagaré por la suma de

HUNDRED THIRTY TWO THOUSAND NINE HUNDRED TWENTY

FIVE ---------------------------------------------

Dollars (US $ 132,925.00-------- ) with interest at
Dólares (US $ ----------------- ) con intereses a razón del

the rate of    SEVEN ---------------------    percent
------------------    por ciento ( -------- %) anual,

( -7- %) per annum until the total satisfaction
hasta el saldo total del mismo, pagadero a favor de ----------

of the same, payable to    R&G MORTGAGE CORPORATION
---------------------------------------    o a su orden y

---------------------- or its order, the principal
pagadero el principal e intereses en plazos mensuales ---------

and interest being payable in monthly installments
de --------------------------------------------------

of ONE THOUSAND THIRTY DOLLARS AND FIFTY SIX CENTS ———
------------------------------------------------------------

Dollars (US $ 1,030.56----)--commencing on the first
Dólares (US $ ------------- ) comenzando el día primero de

day of  FEBRUARY    , Nineteen Hundred Ninety- Seven
de Mil Novecientos Noventa y ----------

(1997 ) and a like amount on the first day of each
(199 -) e igual cantidad en cada uno de los días primero de

succeeding month until full payment of the debt,
cada mes subsiguiente hasta el pago total de la deuda, la cual

which if not paid earlier, will be totally due and
si no es pagada antes, será totalmente vencedera y pagadera el

payable on the first day of    JANUARY    , Two
primer día de    del----------------------

Thousand Seventeen    (20 17) authenticated by
Dos Mil ------------------ (20 -- ) autenticado por el

the authorizing Notary, as per Affidavit Number
Notario autorizante, bajo Afidávit Número  -----------------
EIGHTEEN THOUSAND FIVE HUNDRED SIXTY (18,560)-----

**THIRD:**  In order to guarantee the total and com-
**TERCERO:**  Con el propósito de garantizar el total y completo

plete payment of the debt as evidenced by the
pago de la deuda que evidencia el pagaré descrito anteriormente,

above described promissory note, as well as each
así como todas y cada una de las condiciones que el mismo con-

App. Ap. pp.384

translations.---------------------------------------
----------------------------------------------------

EIGHTH:  **Description and Registration Data of th**
OCTAVO:  Descripción y Datos de Inscripción de la Propiedad

**Property.**---------------------------------------
----------------------------------------------------

---**URBANA:** Solar radicado en la Urbanización
Villas Reales, localizada en el Barrio Santa Rosa
del término municipal de Guaynabo, Puerto Rico,
que se describe en el plano de inscripción, con el
número, área y colindancias que se relacionan a
continuación:---------------------------------------

---**NUMERO DEL SOLAR: TREINTA Y TRES (33) DEL**
bloque "E" (E-33)-----------------------------------

---**AREA DEL SOLAR: TRESCIENTOS SETENTA Y CINCO**
PUNTO CUARENTA Y DOS (375.42) METROS CUADRADOS.--

---**EN LINDES:** por el **NORTE**, en una distancia de
veinticinco punto cero siete (25.08) metros
lineales, con el Solar Número Treinta y Dos (32)
del mismo Bloque; por el **SUR**, en una distancia de
veinticinco (25.00) metros lineales, con el solar
Número Treinta y Cuatro (34) del mismo bloque; por
el **ESTE**, en dos alineaciones continuas que suman
quince punto diez (15.10) metros lineales, con
parcela de uso público; y por el **OESTE**, en una
distancia de quince (15.00) metros lineales, con
la Calle Número Siete (7)  de la Urbanización,
también conocida como "Calle Versalles".--------

---Enclava una casa en concreto para fines
residenciales.-------------------------------------

---Se halla afecto este solar la(s) para fines
residenciales(s):----------------------------------

---**SERVIDUMBRE EN EQUIDAD:** Franja de terreno de un
(1.00) metro de ancho por veinticinco (25.00)
metros de largo aproximadamente, que discurre a lo
largo de su colindancia SUR, la cual será
utilizada para pintar, proteger la pared de su
casa, dar mantenimiento y cualquier otra
reparación que sea necesaria a favor del solar
número Treinta y Cuatro (34).--------------------

---Segregación de la finca número treinta y tres
mil cuatrocientos noventa y tres (33,493) inscrita
al folio doscientos cuarenta y dos (242) del tomo
novecientos diecisiete (917), de Guaynabo,
inscripcion cuarta y última, Registro de la
Propiedad de Guaynanbo.-------------------------

--------------BLOQUE E LOTE 33---------------------
--------------URB. VILLA REALES--------------------
--------------GUAYNABO, PUERTO RICO----------------

---------------------------------------------------

---------------------------------------------------

---------------------------------------------------

App. Ap. pp.385

**NINTH:** **Borrower (Notary's Personal Knowledge or**
**NOVENO:** Deudor Hipotecario (Fe Notarial de Conocimiento Perso-

**Form of Identification.**----------------------
nal o Identificación).----------------------------------------

---JUAN CARLOS BARCELLS GALLARRETA, Social

Security "5          ", and his wife, AMARILIS

GONZALEZ GARCIA, Social Security "          ",

both of legal age, property owners and residents

of Bayamón, Puerto Rico.--------------------------

---I, the Notary, hereby certify that not being

personally acquainted with the borrowers  I have

identified them in accordance to the Notarial Law

by their Puerto Rico's Drivers License, (JUAN

CARLOS) Number "1338929" and (AMARILIS) Number

"1604534", respectively contained their

signatures and photographs.------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

Appl. Ap. pp.386

**TENTH:** **Lender** **(Notary's** **Personal** **Knowledge** **o**
DECIMO: Acreedor Hipotecario (Fe Notarial de Conocimien

**Form of Identification).** Lender is--------------
Personal o Identificación). El Acreedor Hipotecario es ------

---R&G **MORTGAGE** **CORPORATION** Employer Number

"          ", and in its place and stead,

ISMENIA ISIDOR RODRIGUEZ, of legal age, married,

executive and resident of Guaynabo, Puerto Rico,

who is personally known to the undersigned Notary

Public and who appears pursuant to that certain

Corporate Resolution executed by its Secretary,

Ana María Armendariz Camps on January eleventh

(11th) nineteen hundred ninety six (1996) under

Affidavit Number "32,240" before Notary Public

Francisco M. Vázquez Santoni.--------------------

-----------------------------------------------

-----------------------------------------------

-----------------------------------------------

-----------------------------------------------

-----------------------------------------------

-----------------------------------------------

-----------------------------------------------

-----------------------------------------------

-----------------------------------------------

-----------------------------------------------

-----------------------------------------------

-----------------------------------------------

-----------------------------------------------

-----------------------------------------------

App. Ap. pp.387

**EVENTH:** **Homestead Rights; Waiver.** To further
)ECIMO: **Hogar Seguro; Renuncia.** Para mayor garantía de pago

cure payment of the Note, Borrower, in confor-
l Pagaré, el Deudor Hipotecario, de conformidad con las leyes

ty with the laws of the Commonwealth of Puerto
l Estado Libre Asociado de Puerto Rico, expresamente renuncia

.co, expressly waives in favor of Lender his
favor del Acreedor Hipotecario su derecho de hogar seguro so-

pmestead and property rights, with all of the
·e la Propiedad con todos los usos y derechos que en la actua-

ses and rights which he presently possesses or
idad posee o que pueda poseer en el futuro, expresamente

ay in the future possess therein, expressly waiv-
·nunciando a favor del Acreedor Hipotecario todos sus títulos,

ng in favor of Lender all of his titles, rights
erechos e intereses de cualquier clase o descripción en la

ind interests of any kind or description in the
·ropiedad y en los edificios en ella construidos, que actual-

Property and in the buildings constructed thereon,
rente o en el futuro posea.-----------------------------------

vhich he presently possesses or may in the future
-------------------------------------------------------------

possess.---------------------------------------------------
-------------------------------------------------------------

--------------------ACCEPTANCE--------------------
---------------------------ACEPTACION------------------------

---The appearing parties, Lender and Borrower,
---Los comparecientes, Acreedor y Deudor Hipotecario, aceptan

accept this Deed in its entirety and I, the
·sta Escritura en su totalidad y Yo, el Notario, les hice las

Notary, made to the appearing parties the neces-
·dvertencias legales pertinentes a su otorgamiento.   Yo, el

·ary legal warnings concerning its execution.   I,
lotario, advertí a los comparecientes de su derecho a tener

:he Notary, advised the appearing parties as to
·estigos presentes en este otorgamiento, a cuyo derecho renun-

:heir right to have witnesses present at this
:iaron.   Luego de haber sido leída esta Escritura por los

·xecution, which right they waived.   The appearing
:omparecientes, la ratifican totalmente y confirman que las

parties, having read this Deed in its entirety,
leclaraciones contenidas en la misma reflejan fiel y exacta-

fully ratify and confirm the statements contained
rente sus estipulaciones, pactos y convenios, por lo que los

nerein as the true and exact embodiment of their
:omparecientes firman esta Escritura ante mí, el Notario, y

stipulations, covenants and agreements, whereupon
·scriben sus iniciales en todas y cada una de sus páginas.-----

:he appearing parties sign this Deed before me,
-------------------------------------------------------------

---

the Notary, and place their initials on each and
-------------------------------------------------
every page of this Deed.-------------------------
-------------------------------------------------
---I, the Notary, do hereby certify and attest a
---Yo, el Notario, por la presente certifico y DOY FE de tod

to everything stated or contained in this Deed.--
lo declarado y contenido en esta Escritura.-------------------

**SIGNED:**   JUAN CARLOS BARCELLS GALLARRETA
              AMARILIS GONZALEZ GARCIA
              ISMENIA ISIDOR RODRIGUEZ


---- **SIGNED, SEALED, MARKED AND FLOURISHED** ----

------ HEBERTO J. DE VIZCARRONDO ARMSTRONG-------

----------------- **NOTARY PUBLIC** -----------------

-------------------------------------------------

-------------------------------------------------

-------------------------------------------------

-------------------------------------------------

-------------------------------------------------

-------------------------------------------------

-------------------------------------------------

-------------------------------------------------

-------------------------------------------------

-------------------------------------------------

-------------------------------------------------

-------------------------------------------------

-------------------------------------------------

-------------------------------------------------

App. Ap. pp.389

I Hereby Certify, that this is a true and
exact copy of it's Original and of the
Certified copy that has been submitted
for recording in the corresponding
Property Registry.

**United States Bankruptcy Court**
**District of Puerto Rico**

IN RE:                                                                Case No. _____

**Balcells Gallareta, Juan Carlos** _____        Chapter **7** _____
                        Debtor(s)

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR

1.  Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

    For legal services, I have agreed to accept . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____**1,500.00**

    Prior to the filing of this statement I have received . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____**1,500.00**

    Balance Due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____**0.00**

2.  The source of the compensation paid to me was:  ☑ Debtor   ☐ Other (specify)

3.  The source of compensation to be paid to me is:  ☐ Debtor   ☐ Other (specify)

4.  ☑ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

    ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation, is attached.

5.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

    a.   Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
    b.   Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
    c.   Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
    d.   ~~Representation of the debtor in adversary proceedings and other contested bankruptcy matters;~~
    e.   [Other provisions as needed]

6.  By agreement with the debtor(s), the above disclosed fee does not include the following services:

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

| CERTIFICATION |
| --- |
| I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding. |

_____**August  5, 2011**_____        **/s/ CARLOS E. RODRIGUEZ QUESADA**_____
                        Date                                          **CARLOS E. RODRIGUEZ QUESADA**
                                                                      **Carlos E. Rodriguez-Quesada**
                                                                      **PO BOX 9023115**
                                                                      **San Juan, PR  00901-3115**

                                                                      **cerqlaw@coqui.net**

App. Ap. pp.391

B201A (Form 201A) (12/09)

**WARNING: Effective December 1, 2009, the 15-day deadline to file schedules and certain other documents under Bankruptcy Rule 1007(c) is shortened to 14 days. For further information, see note at bottom of page 2**

# UNITED STATES BANKRUPTCY COURT

## NOTICE TO CONSUMER DEBTOR(S) UNDER §342(b)
## OF THE BANKRUPTCY CODE

In accordance with § 342(b) of the Bankruptcy Code, this notice to individuals with primarily consumer debts: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case.

You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

Notices from the bankruptcy court are sent to the mailing address you list on your bankruptcy petition. In order to ensure that you receive information about events concerning your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address. If you are filing a joint case (a single bankruptcy case for two individuals married to each other), and each spouse lists the same mailing address on the bankruptcy petition, you and your spouse will generally receive a single copy of each notice mailed from the bankruptcy court in a jointly-addressed envelope, unless you file a statement with the court requesting that each spouse receive a separate copy of all notices.

## 1. Services Available from Credit Counseling Agencies

**With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis.** The briefing must be given within 180 days **before** the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies. Each debtor in a joint case must complete the briefing.

**In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge.** The clerk also has a list of approved financial management instructional courses. Each debtor in a joint case must complete the course.

## 2. The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors

### Chapter 7: Liquidation ($245 filing fee, $39 administrative fee, $15 trustee surcharge: Total fee $299)

Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7. If your income is greater than the median income for your state of residence and family size, in some cases, the United States trustee (or bankruptcy administrator), the trustee, or creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code. It is up to the court to decide whether the case should be dismissed.

Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.

The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.

     Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

### Chapter 13: Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $39 administrative fee: Total fee $274)

     Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts in installments over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the Bankruptcy Code.

     Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your income and other factors. The court must approve your plan before it can take effect.

     After completing the payments under your plan, your debts are generally discharged except for domestic support obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

### Chapter 11: Reorganization ($1000 filing fee, $39 administrative fee: Total fee $1039)

     Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

### Chapter 12: Family Farmer or Fisherman ($200 filing fee, $39 administrative fee: Total fee $239)

     Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings and is similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family-owned farm or commercial fishing operation.

## 3. Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials

     A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both. All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

**WARNING:** Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition. Your bankruptcy case may be dismissed if this information is not filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court. The documents and the deadlines for filing them are listed on Form B200, which is posted at http://www.uscourts.gov/bkforms/bankruptcy_forms.html#procedure.

**Many filing deadlines change on December 1, 2009. Of special note, 12 rules that set 15 days to act are amended to require action within 14 days, including Rule 1007(c), filing the initial case papers; Rule 3015(b), filing a chapter 13 plan; Rule 8009(a), filing appellate briefs; and Rules 1019, 1020, 2015, 2015.1, 2016, 4001, 4002, 6004, and 6007.**

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B201B (Form 201B) (12/09)

**United States Bankruptcy Court**
**District of Puerto Rico**

IN RE:                                                                    Case No. _____

**Balcells Gallareta, Juan Carlos** _____        Chapter **7** _____

Debtor(s)

## CERTIFICATION OF NOTICE TO CONSUMER DEBTOR(S)
## UNDER § 342(b) OF THE BANKRUPTCY CODE

### Certificate of [Non-Attorney] Bankruptcy Petition Preparer

I, the [non-attorney] bankruptcy petition preparer signing the debtor's petition, hereby certify that I delivered to the debtor the attached notice, as required by § 342(b) of the Bankruptcy Code.

_____        Social Security number (If the bankruptcy
Printed Name and title, if any, of Bankruptcy Petition Preparer        petition preparer is not an individual, state
Address:                                                                  the Social Security number of the officer,
_____        principal, responsible person, or partner of
                                                                          the bankruptcy petition preparer.)
_____        (Required by 11 U.S.C. § 110.)

**X** _____
Signature of Bankruptcy Petition Preparer of officer, principal, responsible person, or
partner whose Social Security number is provided above.

### Certificate of the Debtor

I (We), the debtor(s), affirm that I (we) have received and read the attached notice, as required by § 342(b) of the Bankruptcy Code.

**Balcells Gallareta, Juan Carlos** _____        **X** */s/ Juan Carlos Balcells Gallareta*        8/05/2011
Printed Name(s) of Debtor(s)                                            Signature of Debtor                          Date

Case No. (if known) _____        **X** _____
                                                                          Signature of Joint Debtor (if any)        Date

**Instructions:** Attach a copy of Form B 201A, Notice to Consumer Debtor(s) Under § 342(b) of the Bankruptcy Code.

Use this form to certify that the debtor has received the notice required by 11 U.S.C. § 342(b) **only** if the certification has **NOT** been made on the Voluntary Petition, Official Form B1. Exhibit B on page 2 of Form B1 contains a certification by the debtor's attorney that the attorney has given the notice to the debtor. The Declarations made by debtors and bankruptcy petition preparers on page 3 of Form B1 also include this certification.

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.394

**B22A (Official Form 22A) (Chapter 7) (12/10)**

<div style="border">
According to the information required to be entered on this statement (check one box as directed in Part I, III, or VI of this statement):

☐ **The presumption arises**
☑ **The presumption does not arise**
☐ **The presumption is temporarily inapplicable.**
</div>

In re: **Balcells Gallareta, Juan Carlos**
_____
Debtor(s)

Case Number: _____
(If known)

# CHAPTER 7 STATEMENT OF CURRENT MONTHLY INCOME AND MEANS-TEST CALCULATION

In addition to Schedules I and J, this statement must be completed by every individual chapter 7 debtor. If none of the exclusions in Part I applies, joint debtors may complete one statement only. If any of the exclusions in Part I applies, joint debtors should complete separate statements if they believe this is required by § 707(b)(2)(C).

| | Part I. MILITARY AND NON-CONSUMER DEBTORS |
|---|---|
| 1A | **Disabled Veterans.** If you are a disabled veteran described in the Veteran's Declaration in this Part IA, (1) check the box at the beginning of the Declaration, (2) check the box for "The presumption does not arise" at the top of this statement, and (3) complete the verification in Part VIII. Do not complete any of the remaining parts of this statement.<br><br>☐ **Declaration of Disabled Veteran.** By checking this box, I declare under penalty of perjury that I am a disabled veteran (as defined in 38 U.S.C. § 3741(1)) whose indebtedness occurred primarily during a period in which I was on active duty (as defined in 10 U.S.C. § 101(d)(1)) or while I was performing a homeland defense activity (as defined in 32 U.S.C. §901(1)). |
| 1B | **Non-consumer Debtors.** If your debts are not primarily consumer debts, check the box below and complete the verification in Part VIII. Do not complete any of the remaining parts of this statement.<br><br>☐ **Declaration of non-consumer debts.** By checking this box, I declare that my debts are not primarily consumer debts. |
| 1C | **Reservists and National Guard Members; active duty or homeland defense activity.** Members of a reserve component of the Armed Forces and members of the National Guard who were called to active duty (as defined in 10 U.S.C. § 101(d)(1)) after September 11, 2001, for a period of at least 90 days, or who have performed homeland defense activity (as defined in 32 U.S.C. § 901(1)) for a period of at least 90 days, are excluded from all forms of means testing during the time of active duty or homeland defense activity and for 540 days thereafter (the "exclusion period"). If you qualify for this temporary exclusion, (1) check the appropriate boxes and complete any required information in the Declaration of Reservists and National Guard Members below, (2) check the box for "The presumption is temporarily inapplicable" at the top of this statement, and (3) complete the verification in Part VIII. **During your exclusion period you are not required to complete the balance of this form, but you must complete the form no later than 14 days after the date on which your exclusion period ends, unless the time for filing a motion raising the means test presumption expires in your case before your exclusion period ends.**<br><br>☐ **Declaration of Reservists and National Guard Members.** By checking this box and making the appropriate entries below, I declare that I am eligible for a temporary exclusion from means testing because, as a member of a reserve component of the Armed Forces or the National Guard<br><br>    a. ☐ I was called to active duty after September 11, 2001, for a period of at least 90 days and<br>        ☐ I remain on active duty /or/<br>        ☐ I was released from active duty on _____, which is less than 540 days before this bankruptcy case was filed;<br><br>        OR<br><br>    b. ☐ I am performing homeland defense activity for a period of at least 90 days /or/<br>        ☐ I performed homeland defense activity for a period of at least 90 days, terminating on _____, which is less than 540 days before this bankruptcy case was filed. |

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B22A (Official Form 22A) (Chapter 7) (12/10)

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

| | Part II. CALCULATION OF MONTHLY INCOME FOR § 707(b)(7) EXCLUSION | | |
|---|---|---|---|
| 2 | **Marital/filing status.** Check the box that applies and complete the balance of this part of this statement as directed.<br>a. ☑ Unmarried. **Complete only Column A ("Debtor's Income") for Lines 3-11.**<br>b. ☐ Married, not filing jointly, with declaration of separate households. By checking this box, debtor declares under penalty of perjury: "My spouse and I are legally separated under applicable non-bankruptcy law or my spouse and I are living apart other than for the purpose of evading the requirements of § 707(b)(2)(A) of the Bankruptcy Code." **Complete only Column A ("Debtor's Income") for Lines 3-11.**<br>c. ☐ Married, not filing jointly, without the declaration of separate households set out in Line 2.b above. **Complete both Column A ("Debtor's Income") and Column B ("Spouse's Income") for Lines 3-11.**<br>d. ☐ Married, filing jointly. **Complete both Column A ("Debtor's Income") and Column B ("Spouse's Income") for Lines 3-11.** | | |
| | All figures must reflect average monthly income received from all sources, derived during the six calendar months prior to filing the bankruptcy case, ending on the last day of the month before the filing. If the amount of monthly income varied during the six months, you must divide the six-month total by six, and enter the result on the appropriate line. | Column A<br>Debtor's<br>Income | Column B<br>Spouse's<br>Income |
| 3 | **Gross wages, salary, tips, bonuses, overtime, commissions.** | $    2,024.00 | $ |
| 4 | **Income from the operation of a business, profession or farm.** Subtract Line b from Line a and enter the difference in the appropriate column(s) of Line 4. If you operate more than one business, profession or farm, enter aggregate numbers and provide details on an attachment. Do not enter a number less than zero. **Do not include any part of the business expenses entered on Line b as a deduction in Part V.**<br><table><tr><td>a.</td><td>Gross receipts</td><td>$</td></tr><tr><td>b.</td><td>Ordinary and necessary business expenses</td><td>$</td></tr><tr><td>c.</td><td>Business income</td><td>Subtract Line b from Line a</td></tr></table> | $ | $ |
| 5 | **Rent and other real property income.** Subtract Line b from Line a and enter the difference in the appropriate column(s) of Line 5. Do not enter a number less than zero. **Do not include any part of the operating expenses entered on Line b as a deduction in Part V.**<br><table><tr><td>a.</td><td>Gross receipts</td><td>$</td></tr><tr><td>b.</td><td>Ordinary and necessary operating expenses</td><td>$</td></tr><tr><td>c.</td><td>Rent and other real property income</td><td>Subtract Line b from Line a</td></tr></table> | $ | $ |
| 6 | **Interest, dividends, and royalties.** | $ | $ |
| 7 | **Pension and retirement income.** | $ | $ |
| 8 | **Any amounts paid by another person or entity, on a regular basis, for the household expenses of the debtor or the debtor's dependents, including child support paid for that purpose.** Do not include alimony or separate maintenance payments or amounts paid by your spouse if Column B is completed. Each regular payment should be reported in only one column; if a payment is listed in Column A, do not report that payment in Column B. | $ | $ |
| 9 | **Unemployment compensation.** Enter the amount in the appropriate column(s) of Line 9. However, if you contend that unemployment compensation received by you or your spouse was a benefit under the Social Security Act, do not list the amount of such compensation in Column A or B, but instead state the amount in the space below:<br><table><tr><td>Unemployment compensation claimed to be a benefit under the Social Security Act</td><td>Debtor $ _____</td><td>Spouse $ _____</td></tr></table> | $ | $ |

B22A (Official Form 22A) (Chapter 7) (12/10)

| 10 | **Income from all other sources.** Specify source and amount. If necessary, list additional sources on a separate page. **Do not include alimony or separate maintenance payments paid by your spouse if Column B is completed, but include all other payments of alimony or separate maintenance.** Do not include any benefits received under the Social Security Act or payments received as a victim of a war crime, crime against humanity, or as a victim of international or domestic terrorism. | | |
|---|---|---|---|
| | a. | $ | |
| | b. | $ | |
| | Total and enter on Line 10 | $ | $ |
| 11 | **Subtotal of Current Monthly Income for § 707(b)(7).** Add Lines 3 thru 10 in Column A, and, if Column B is completed, add Lines 3 through 10 in Column B. Enter the total(s). | $   2,024.00 | $ |
| 12 | **Total Current Monthly Income for § 707(b)(7).** If Column B has been completed, add Line 11, Column A to Line 11, Column B, and enter the total. If Column B has not been completed, enter the amount from Line 11, Column A. | | $   2,024.00 |

### Part III. APPLICATION OF § 707(B)(7) EXCLUSION

| 13 | **Annualized Current Monthly Income for § 707(b)(7).** Multiply the amount from Line 12 by the number 12 and enter the result. | $   24,288.00 |
|---|---|---|
| 14 | **Applicable median family income.** Enter the median family income for the applicable state and household size. (This information is available by family size at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) | |
| | a. Enter debtor's state of residence: **Puerto Rico**_____    b. Enter debtor's household size: __**2**__ | $   20,930.00 |
| 15 | **Application of Section707(b)(7).** Check the applicable box and proceed as directed.<br>☐ **The amount on Line 13 is less than or equal to the amount on Line 14.** Check the box for "The presumption does not arise" at the top of page 1 of this statement, and complete Part VIII; do not complete Parts IV, V, VI, or VII.<br>☑ **The amount on Line 13 is more than the amount on Line 14.** Complete the remaining parts of this statement. | |

### Complete Parts IV, V, VI, and VII of this statement only if required. (See Line 15.)

### Part IV. CALCULATION OF CURRENT MONTHLY INCOME FOR § 707(b)(2)

| 16 | **Enter the amount from Line 12.** | $   2,024.00 |
|---|---|---|
| 17 | **Marital adjustment.** If you checked the box at Line 2.c, enter on Line 17 the total of any income listed in Line 11, Column B that was NOT paid on a regular basis for the household expenses of the debtor or the debtor's dependents. Specify in the lines below the basis for excluding the Column B income (such as payment of the spouse's tax liability or the spouse's support of persons other than the debtor or the debtor's dependents) and the amount of income devoted to each purpose. If necessary, list additional adjustments on a separate page. If you did not check box at Line 2.c, enter zero. | |
| | a. | $ | |
| | b. | $ | |
| | c. | $ | |
| | Total and enter on Line 17. | $ | |
| 18 | **Current monthly income for § 707(b)(2).** Subtract Line 17 from Line 16 and enter the result. | $   2,024.00 |

### Part V. CALCULATION OF DEDUCTIONS FROM INCOME

#### Subpart A: Deductions under Standards of the Internal Revenue Service (IRS)

| 19A | **National Standards: food, clothing and other items.** Enter in Line 19A the "Total" amount from IRS National Standards for Food, Clothing and Other Items for the applicable number of persons. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) The applicable number of persons is the number that would currently be allowed as exemptions on your federal income tax return, plus the number of any additional dependents whom you support. | $   985.00 |
|---|---|---|

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**B22A (Official Form 22A) (Chapter 7) (12/10)**

| | | |
|---|---|---|
| 19B | **National Standards: health care.** Enter in Line a1 below the amount from IRS National Standards for Out-of-Pocket Health Care for persons under 65 years of age, and in Line a2 the IRS National Standards for Out-of-Pocket Health Care for persons 65 years of age or older. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) Enter in Line b1 the applicable number of persons who are under 65 years of age, and enter in Line b2 the applicable number of persons who are 65 years of age or older. (The applicable number of persons in each age category is the number in that category that would currently be allowed as exemptions on your federal income tax return, plus the number of any additional dependents whom you support.) Multiply Line a1 by Line b1 to obtain a total amount for persons under 65, and enter the result in Line c1. Multiply Line a2 by Line b2 to obtain a total amount for persons 65 and older, and enter the result in Line c2. Add Lines c1 and c2 to obtain a total health care amount, and enter the result in Line 19B. | |

| Persons under 65 years of age | | | Persons 65 years of age or older | | |
|---|---|---|---|---|---|
| a1. | Allowance per person | **60.00** | a2. | Allowance per person | **144.00** |
| b1. | Number of persons | **2** | b2. | Number of persons | **0** |
| c1. | Subtotal | **120.00** | c2. | Subtotal | **0.00** |

$ **120.00**

| | | |
|---|---|---|
| 20A | **Local Standards: housing and utilities; non-mortgage expenses.** Enter the amount of the IRS Housing and Utilities Standards; non-mortgage expenses for the applicable county and family size. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court). The applicable family size consists of the number that would currently be allowed as exemptions on your federal income tax return, plus the number of any additional dependents whom you support. | $ **490.00** |

| | | |
|---|---|---|
| 20B | **Local Standards: housing and utilities; mortgage/rent expense.** Enter, in Line a below, the amount of the IRS Housing and Utilities Standards; mortgage/rent expense for your county and family size (this information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court)(the applicable family size consists of the number that would currently be allowed as exemptions on your federal income tax return, plus the number of any additional dependents whom you support); enter on Line b the total of the Average Monthly Payments for any debts secured by your home, as stated in Line 42; subtract Line b from Line a and enter the result in Line 20B. **Do not enter an amount less than zero.** | |

| a. | IRS Housing and Utilities Standards; mortgage/rental expense | $ | **1,238.00** |
|---|---|---|---|
| b. | Average Monthly Payment for any debts secured by your home, if any, as stated in Line 42 | $ | |
| c. | Net mortgage/rental expense | Subtract Line b from Line a | $ **1,238.00** |

| | | |
|---|---|---|
| 21 | **Local Standards: housing and utilities; adjustment.** If you contend that the process set out in Lines 20A and 20B does not accurately compute the allowance to which you are entitled under the IRS Housing and Utilities Standards, enter any additional amount to which you contend you are entitled, and state the basis for your contention in the space below: | $ |

| | | |
|---|---|---|
| 22A | **Local Standards: transportation; vehicle operation/public transportation expense.** You are entitled to an expense allowance in this category regardless of whether you pay the expenses of operating a vehicle and regardless of whether you use public transportation. <br><br> Check the number of vehicles for which you pay the operating expenses or for which the operating expenses are included as a contribution to your household expenses in Line 8. <br> ☑ 0   ☐ 1   ☐ 2 or more. <br> If you checked 0, enter on Line 22A the "Public Transportation" amount from IRS Local Standards: Transportation. If you checked 1 or 2 or more, enter on Line 22A the "Operating Costs" amount from IRS Local Standards: Transportation for the applicable number of vehicles in the applicable Metropolitan Statistical Area or Census Region. (These amounts are available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) | $ **182.00** |

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.398

B22A (Official Form 22A) (Chapter 7) (12/10)

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

| | | |
|---|---|---|
| 22B | **Local Standards: transportation; additional public transportation expense.** If you pay the operating expenses for a vehicle and also use public transportation, and you contend that you are entitled to an additional deduction for your public transportation expenses, enter on Line 22B the "Public Transportation" amount from IRS Local Standards: Transportation. (This amount is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) | $ |
| 23 | **Local Standards: transportation ownership/lease expense; Vehicle 1.** Check the number of vehicles for which you claim an ownership/lease expense. (You may not claim an ownership/lease expense for more than two vehicles.)<br><br>☐ 1   ☐ 2 or more.<br><br>Enter, in Line a below, the "Ownership Costs" for "One Car" from the IRS Local Standards: Transportation (available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court); enter in Line b the total of the Average Monthly Payments for any debts secured by Vehicle 1, as stated in Line 42; subtract Line b from Line a and enter the result in Line 23. **Do not enter an amount less than zero.** | |
| | <table><tr><td>a.</td><td>IRS Transportation Standards, Ownership Costs</td><td>$</td></tr><tr><td>b.</td><td>Average Monthly Payment for any debts secured by Vehicle 1, as stated in Line 42</td><td>$</td></tr><tr><td>c.</td><td>Net ownership/lease expense for Vehicle 1</td><td>Subtract Line b from Line a</td></tr></table> | $ |
| 24 | **Local Standards: transportation ownership/lease expense; Vehicle 2.** Complete this Line only if you checked the "2 or more" Box in Line 23.<br><br>Enter, in Line a below, the "Ownership Costs" for "One Car" from the IRS Local Standards: Transportation (available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court); enter in Line b the total of the Average Monthly Payments for any debts secured by Vehicle 2, as stated in Line 42; subtract Line b from Line a and enter the result in Line 24. **Do not enter an amount less than zero.** | |
| | <table><tr><td>a.</td><td>IRS Transportation Standards, Ownership Costs, Second Car</td><td>$</td></tr><tr><td>b.</td><td>Average Monthly Payment for any debts secured by Vehicle 2, as stated in Line 42</td><td>$</td></tr><tr><td>c.</td><td>Net ownership/lease expense for Vehicle 2</td><td>Subtract Line b from Line a</td></tr></table> | $ |
| 25 | **Other Necessary Expenses: taxes.** Enter the total average monthly expense that you actually incur for all federal, state, and local taxes, other than real estate and sales taxes, such as income taxes, self employment taxes, social security taxes, and Medicare taxes. **Do not include real estate or sales taxes.** | $        49.04 |
| 26 | **Other Necessary Expenses: involuntary deductions for employment.** Enter the total average monthly payroll deductions that are required for your employment, such as retirement contributions, union dues, and uniform costs. **Do not include discretionary amounts, such as voluntary 401(k) contributions.** | $ |
| 27 | **Other Necessary Expenses: life insurance.** Enter total average monthly premiums that you actually pay for term life insurance for yourself. **Do not include premiums for insurance on your dependents, for whole life or for any other form of insurance.** | $ |
| 28 | **Other Necessary Expenses: court-ordered payments.** Enter the total monthly amount that you are required to pay pursuant to the order of a court or administrative agency, such as spousal or child support payments. **Do not include payments on past due obligations included in Line 44.** | $ |
| 29 | **Other Necessary Expenses: education for employment or for a physically or mentally challenged child.** Enter the total average monthly amount that you actually expend for education that is a condition of employment and for education that is required for a physically or mentally challenged dependent child for whom no public education providing similar services is available. | $ |
| 30 | **Other Necessary Expenses: childcare.** Enter the total average monthly amount that you actually expend on childcare — such as baby-sitting, day care, nursery and preschool. **Do not include other educational payments.** | $ |
| 31 | **Other Necessary Expenses: health care.** Enter the total average monthly amount that you actually expend on health care that is required for the health and welfare of yourself or your dependents, that is not reimbursed by insurance or paid by a health savings account, and that is in excess of the amount entered in Line 19B. **Do not include payments for health insurance or health savings accounts listed in Line 34.** | $ |

App. Ap. pp.399

B22A (Official Form 22A) (Chapter 7) (12/10)

| 32 | **Other Necessary Expenses: telecommunication services.** Enter the total average monthly amount that you actually pay for telecommunication services other than your basic home telephone and cell phone service — such as pagers, call waiting, caller id, special long distance, or internet service — to the extent necessary for your health and welfare or that of your dependents. **Do not include any amount previously deducted.** | $ |
|---|---|---|
| 33 | **Total Expenses Allowed under IRS Standards.** Enter the total of Lines 19 through 32. | $  **3,064.04** |

| | **Subpart B: Additional Living Expense Deductions**<br>**Note: Do not include any expenses that you have listed in Lines 19-32** | |
|---|---|---|

| 34 | **Health Insurance, Disability Insurance, and Health Savings Account Expenses.** List the monthly expenses in the categories set out in lines a-c below that are reasonably necessary for yourself, your spouse, or your dependents. | |
|---|---|---|

| a. | Health Insurance | $ |
|---|---|---|
| b. | Disability Insurance | $ |
| c. | Health Savings Account | $ |

Total and enter on Line 34      $

**If you do not actually expend this total amount,** state your actual total average monthly expenditures in the space below:

$ _____

| 35 | **Continued contributions to the care of household or family members.** Enter the total average actual monthly expenses that you will continue to pay for the reasonable and necessary care and support of an elderly, chronically ill, or disabled member of your household or member of your immediate family who is unable to pay for such expenses. | $ |
|---|---|---|
| 36 | **Protection against family violence.** Enter the total average reasonably necessary monthly expenses that you actually incurred to maintain the safety of your family under the Family Violence Prevention and Services Act or other applicable federal law. The nature of these expenses is required to be kept confidential by the court. | $ |
| 37 | **Home energy costs.** Enter the total average monthly amount, in excess of the allowance specified by IRS Local Standards for Housing and Utilities, that you actually expend for home energy costs. **You must provide your case trustee with documentation of your actual expenses, and you must demonstrate that the additional amount claimed is reasonable and necessary.** | $ |
| 38 | **Education expenses for dependent children less than 18.** Enter the total average monthly expenses that you actually incur, not to exceed $147.92* per child, for attendance at a private or public elementary or secondary school by your dependent children less than 18 years of age. **You must provide your case trustee with documentation of your actual expenses, and you must explain why the amount claimed is reasonable and necessary and not already accounted for in the IRS Standards.** | $ |
| 39 | **Additional food and clothing expense.** Enter the total average monthly amount by which your food and clothing expenses exceed the combined allowances for food and clothing (apparel and services) in the IRS National Standards, not to exceed 5% of those combined allowances. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) **You must demonstrate that the additional amount claimed is reasonable and necessary.** | $ |
| 40 | **Continued charitable contributions.** Enter the amount that you will continue to contribute in the form of cash or financial instruments to a charitable organization as defined in 26 U.S.C. § 170(c)(1)-(2). | $ |
| 41 | **Total Additional Expense Deductions under § 707(b).** Enter the total of Lines 34 through 40 | $ |

*\* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B22A (Official Form 22A) (Chapter 7) (12/10)

| | | Subpart C: Deductions for Debt Payment | | | |
|---|---|---|---|---|---|

| 42 | **Future payments on secured claims.** For each of your debts that is secured by an interest in property that you own, list the name of the creditor, identify the property securing the debt, state the Average Monthly Payment, and check whether the payment includes taxes or insurance. The Average Monthly Payment is the total of all amounts scheduled as contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case, divided by 60. If necessary, list additional entries on a separate page. Enter the total of the Average Monthly Payments on Line 42. |
|---|---|

| | | Name of Creditor | Property Securing the Debt | Average Monthly Payment | Does payment include taxes or insurance? |
|---|---|---|---|---|---|
| | a. | SCOTIABANK | EX WIFE'S CAR | $ 99.75 | ☐ yes  ☑ no |
| | b. | BANCO POPULAR | HPUSE OCCUPIED BY EX W | $ 947.70 | ☐ yes  ☑ no |
| | c. | | | $ | ☐ yes  ☐ no |
| | | | Total: Add lines a, b and c. | | $ 1,047.45 |

| 43 | **Other payments on secured claims.** If any of debts listed in Line 42 are secured by your primary residence, a motor vehicle, or other property necessary for your support or the support of your dependents, you may include in your deduction 1/60th of any amount (the "cure amount") that you must pay the creditor in addition to the payments listed in Line 42, in order to maintain possession of the property. The cure amount would include any sums in default that must be paid in order to avoid repossession or foreclosure. List and total any such amounts in the following chart. If necessary, list additional entries on a separate page. |
|---|---|

| | | Name of Creditor | Property Securing the Debt | 1/60th of the Cure Amount |
|---|---|---|---|---|
| | a. | | | $ |
| | b. | | | $ |
| | c. | | | $ |
| | | | Total: Add lines a, b and c. | $ |

| 44 | **Payments on prepetition priority claims.** Enter the total amount, divided by 60, of all priority claims, such as priority tax, child support and alimony claims, for which you were liable at the time of your bankruptcy filing. **Do not include current obligations, such as those set out in Line 28.** | $ 615.30 |
|---|---|---|

| 45 | **Chapter 13 administrative expenses.** If you are eligible to file a case under chapter 13, complete the following chart, multiply the amount in line a by the amount in line b, and enter the resulting administrative expense. | |
|---|---|---|

| | a. | Projected average monthly chapter 13 plan payment. | $ |
|---|---|---|---|
| | b. | Current multiplier for your district as determined under schedules issued by the Executive Office for United States Trustees. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) | X |
| | c. | Average monthly administrative expense of chapter 13 case | Total: Multiply Lines a and b | $ |

| 46 | **Total Deductions for Debt Payment.** Enter the total of Lines 42 through 45. | $ 1,662.75 |
|---|---|---|

| | | Subpart D: Total Deductions from Income | |
|---|---|---|---|

| 47 | **Total of all deductions allowed under § 707(b)(2).** Enter the total of Lines 33, 41, and 46. | $ 4,726.79 |
|---|---|---|

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.401

B22A (Official Form 22A) (Chapter 7) (12/10)

| | **Part VI. DETERMINATION OF § 707(b)(2) PRESUMPTION** | | |
|---|---|---|---|
| 48 | **Enter the amount from Line 18 (Current monthly income for § 707(b)(2))** | $ | **2,024.00** |
| 49 | **Enter the amount from Line 47 (Total of all deductions allowed under § 707(b)(2))** | $ | **4,726.79** |
| 50 | **Monthly disposable income under § 707(b)(2).** Subtract Line 49 from Line 48 and enter the result. | $ | **0.00** |
| 51 | **60-month disposable income under § 707(b)(2).** Multiply the amount in Line 50 by the number 60 and enter the result. | $ | **0.00** |
| 52 | **Initial presumption determination.** Check the applicable box and proceed as directed. <br><br> ☑ **The amount on Line 51 is less than $7,025\*.** Check the box for "The presumption does not arise" at the top of page 1 of this statement, and complete the verification in Part VIII. Do not complete the remainder of Part VI. <br><br> ☐ **The amount set forth on Line 51 is more than $11,725\*.** Check the box for "The presumption arises" at the top of page 1 of this statement, and complete the verification in Part VIII. You may also complete Part VII. Do not complete the remainder of Part VI. <br><br> ☐ **The amount on Line 51 is at least $7,025\*, but not more than $11,725\*.** Complete the remainder of Part VI (Lines 53 though 55). | | |
| 53 | **Enter the amount of your total non-priority unsecured debt** | $ | |
| 54 | **Threshold debt payment amount.** Multiply the amount in Line 53 by the number 0.25 and enter the result. | $ | |
| 55 | **Secondary presumption determination.** Check the applicable box and proceed as directed. <br><br> ☐ **The amount on Line 51 is less than the amount on Line 54.** Check the box for "The presumption does not arise" at the top of page 1 of this statement, and complete the verification in Part VIII. <br><br> ☐ **The amount on Line 51 is equal to or greater than the amount on Line 54.** Check the box for "The presumption arises" at the top of page 1 of this statement, and complete the verification in Part VIII. You may also complete Part VII. | | |

| | **Part VII. ADDITIONAL EXPENSE CLAIMS** | | |
|---|---|---|---|
| 56 | **Other Expenses.** List and describe any monthly expenses, not otherwise stated in this form, that are required for the health and welfare of you and your family and that you contend should be an additional deduction from your current monthly income under § 707(b)(2)(A)(ii)(I). If necessary, list additional sources on a separate page. All figures should reflect your average monthly expense for each item. Total the expenses. | | |

| | Expense Description | Monthly Amount |
|---|---|---|
| a. | | $ |
| b. | | $ |
| c. | | $ |
| | Total: Add Lines a, b and c | $ |

| | **Part VIII. VERIFICATION** |
|---|---|
| 57 | I declare under penalty of perjury that the information provided in this statement is true and correct. *(If this a joint case, both debtors must sign.)* <br><br> Date: **August  5, 2011**    Signature: **/s/ Juan Carlos Balcells Gallareta** <br> <div align=right>(Debtor)</div> <br> Date: _____    Signature: _____ <br> <div align=right>(Joint Debtor, if any)</div> |

*\* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**B1 (Official Form 1) (4/10)**

| United States Bankruptcy Court<br>District of Puerto Rico | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Balcells Gallareta, Juan Carlos** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN (if more than one, state all): **1825** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>**ARBOLES DE MONTEHIEDRA<br>CALLE JACANA 404<br>SAN JUAN, PR**                ZIPCODE **00926** | Street Address of Joint Debtor (No. & Street, City, State & Zip Code):<br><br>ZIPCODE |
| County of Residence or of the Principal Place of Business: | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address)<br>**PO Box 361012<br>SJ, PR**                ZIPCODE **00936** | Mailing Address of Joint Debtor (if different from street address):<br><br>ZIPCODE |
| Location of Principal Assets of Business Debtor (if different from street address above):                ZIPCODE | |

| Type of Debtor<br>(Form of Organization)<br>(Check **one** box.) | Nature of Business<br>(Check **one** box.) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check **one** box.) |
|---|---|---|
| ☑ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other | ☑ Chapter 7      ☐ Chapter 15 Petition for<br>☐ Chapter 9          Recognition of a Foreign<br>☐ Chapter 11        Main Proceeding<br>☐ Chapter 12      ☐ Chapter 15 Petition for<br>☐ Chapter 13        Recognition of a Foreign<br>                          Nonmain Proceeding |
| | **Tax-Exempt Entity**<br>(Check box, if applicable.)<br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | **Nature of Debts**<br>(Check one box.)<br>☑ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or house-hold purpose."      ☐ Debts are primarily business debts. |

| Filing Fee (Check one box) | Chapter 11 Debtors |
|---|---|
| ☑ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (Applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (Applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts owed to non-insiders or affiliates are less than $2,343,300 (*amount subject to adjustment on 4/01/13 and every three years thereafter*).<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☑ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |

Estimated Assets

| ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

Estimated Liabilities

| ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.403

B1 (Official Form 1) (4/10)                                                                                                      Page 2

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**Balcells Gallareta, Juan Carlos** |
|---|---|

| **Prior Bankruptcy Case Filed Within Last 8 Years** (If more than two, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed: **None** | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>**None** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

<table>
<tr>
<td>

**Exhibit A**

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)

☐ Exhibit A is attached and made a part of this petition.

</td>
<td>

**Exhibit B**

(To be completed if debtor is an individual whose debts are primarily consumer debts.)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by § 342(b) of the Bankruptcy Code.

X **/s/ CARLOS E. RODRIGUEZ QUESADA**          **8/05/11**
<span style="padding-left:2em">Signature of Attorney for Debtor(s)</span>          <span>Date</span>

</td>
</tr>
</table>

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☑ No

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☑ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached a made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☑ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____

(Name of landlord or lessor that obtained judgment)

_____

(Address of landlord or lessor)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B1 (Official Form 1) (4/10)                                                                                                          Page 3

| **Voluntary Petition** | Name of Debtor(s): |
| *(This page must be completed and filed in every case)* | **Balcells Gallareta, Juan Carlos** |

<div align="center">

**Signatures**

</div>

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under Chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United State Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X *_/s/ Juan Carlos Balcells Gallareta_*
Signature of Debtor          **Juan Carlos Balcells Gallareta**

X _____
Signature of Joint Debtor

**(787) 391-8859**
Telephone Number (If not represented by attorney)

**August  5, 2011**
Date

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only **one** box.)

☐  I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐  Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

| **Signature of Attorney*** | **Signature of Non-Attorney Petition Preparer** |

X *_/s/ CARLOS E. RODRIGUEZ QUESADA_*
Signature of Attorney for Debtor(s)

**CARLOS E. RODRIGUEZ QUESADA**
**Carlos E. Rodriguez-Quesada**
**PO BOX 9023115**
**San Juan, PR  00901-3115**

**cerqlaw@coqui.net**

**August  5, 2011**
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

I declare under penalty of perjury that: 1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; 2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h) and 342(b); 3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any,  of Bankruptcy Petition Preparer

_____
Social Security Number (If the bankruptcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

_____
Address

X _____
Signature of Bankruptcy Petition Preparer or officer, principal, responsible person, or partner whose social security number is provided above.

_____
Date

| **Signature of Debtor (Corporation/Partnership)** | |

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. § 110; 18 U.S.C. § 156.*

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.405

B1D (Official Form 1, Exhibit D) (12/09)

## United States Bankruptcy Court
## District of Puerto Rico

IN RE:                                                    Case No. _____

**Balcells Gallareta, Juan Carlos**                        Chapter **7** _____

<span style="margin-left:2em">Debtor(s)</span>

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE
## CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

☑ 1. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

☐ 2. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

☐ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Summarize exigent circumstances here.]*

**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency. Failure to fulfill these requirements may result in dismissal of your case. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

☐ 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.] [Must be accompanied by a motion for determination by the court.]*

<span style="margin-left:2em">☐ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);</span>

<span style="margin-left:2em">☐ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);</span>

<span style="margin-left:2em">☐ Active military duty in a military combat zone.</span>

☐ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor: ***/s/ Juan Carlos Balcells Gallareta*** _____

Date: **August  5, 2011** _____

<span style="writing-mode:vertical;">© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only</span>

Certificate Number: 02645-PR-CC-015629225

02645-PR-CC-015629225

# CERTIFICATE OF COUNSELING

I CERTIFY that on <u>August 1, 2011</u>, at <u>7:12</u> o'clock <u>PM EDT</u>, <u>Juan C Balcells</u> received from <u>A 123  Credit Counselors, Inc</u>, an agency approved pursuant to 11 U.S.C. § 111 to provide credit counseling in the <u>District of Puerto Rico</u>, an individual [or group] briefing that complied with the provisions of 11 U.S.C. §§ 109(h) and 111.

A debt repayment plan <u>was not prepared</u>. If a debt repayment plan was prepared, a copy of the debt repayment plan is attached to this certificate.

This counseling session was conducted <u>by internet</u>.

Date:   <u>August 1, 2011</u>          By:   <u>/s/Dainelys Martinez</u>

Name:  <u>Dainelys Martinez</u>

Title:  <u>Credit Counselor</u>

* Individuals who wish to file a bankruptcy case under title 11 of the United States Bankruptcy Code are required to file with the United States Bankruptcy Court a completed certificate of counseling from the nonprofit budget and credit counseling agency that provided the individual the counseling services and a copy of the debt repayment plan, if any, developed through the credit counseling agency. *See* 11 U.S.C. §§ 109(h) and 521(b).

B6 Summary (Form 6 - Summary) (12/07)

**United States Bankruptcy Court**
**District of Puerto Rico**

IN RE:                                                                    Case No. _____

**Balcells Gallareta, Juan Carlos** _____    Chapter **7** _____
Debtor(s)

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors also must complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NUMBER OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | $          0.00 | | |
| B - Personal Property | Yes | 3 | $      13,550.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | $      62,846.81 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 3 | | $      36,918.18 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 2 | | $     160,972.18 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 2 | | | $      2,039.54 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 1 | | | $      5,383.00 |
| TOTAL | | 16 | $      13,550.00 | $     260,737.17 | |

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.408

**United States Bankruptcy Court**
**District of Puerto Rico**

IN RE:                                                                    Case No. _____

Balcells Gallareta, Juan Carlos                                          Chapter **7**
_____
            Debtor(s)

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C. § 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

☐ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | | Amount |
|---|---|---|
| Domestic Support Obligations (from Schedule E) | $ | **34,000.00** |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | $ | **2,918.18** |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | $ | **0.00** |
| Student Loan Obligations (from Schedule F) | $ | **0.00** |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | $ | **0.00** |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | $ | **0.00** |
| **TOTAL** | $ | **36,918.18** |

**State the following:**

| | | |
|---|---|---|
| Average Income (from Schedule I, Line 16) | $ | **2,039.54** |
| Average Expenses (from Schedule J, Line 18) | $ | **5,383.00** |
| Current Monthly Income (from Form 22A Line 12; **OR**, Form 22B Line 11; **OR**, Form 22C Line 20 ) | $ | **2,024.00** |

**State the following:**

| | | | | |
|---|---|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | | $ | **62,846.81** |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column. | $ | **36,918.18** | | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | | $ | **0.00** |
| 4. Total from Schedule F | | | $ | **160,972.18** |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | | $ | **223,818.99** |

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**B6A (Official Form 6A) (12/07)**

IN RE **Balcells Gallareta, Juan Carlos**                                     Case No. _____
<div style="text-align:center">Debtor(s)                                                                  (If known)</div>

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| **None** | | | | |
| | | | TOTAL    0.00 | |

<div style="text-align:center">(Report also on Summary of Schedules)</div>

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6B (Official Form 6B) (12/07)

**IN RE** **Balcells Gallareta, Juan Carlos**                                    Case No. _____

Debtor(s)                                                                (If known)

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand. | X | | | |
| 2. Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | X | | | |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, include audio, video, and computer equipment. | | COMPUTER | | 400.00 |
| | | UNDIVIDED MARITAL ASSETS- YET TO BE DETERMINED EX HAS HOGAR SEGURO THEREFORE HE HAS NO ACESS TO THE ASSETS | | 0.00 |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | | CLOTHES | | 100.00 |
| 7. Furs and jewelry. | | WATCH | | 50.00 |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interest in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issue. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.411

**B6B (Official Form 6B) (12/07) - Cont.**

**IN RE** <u>Balcells Gallareta, Juan Carlos</u>           Case No. _____
                         Debtor(s)                                              (If known)

# SCHEDULE B - PERSONAL PROPERTY
## (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements in which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interest, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | | MAKO 1987 OUTBOARD 26' CTRCN MODEL 261 | | 13,000.00 |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6B (Official Form 6B) (12/07) - Cont.

**IN RE** Balcells Gallareta, Juan Carlos _____  Case No. _____
                              Debtor(s)                                    (If known)

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 33.  Farming equipment and implements. | X | | | |
| 34.  Farm supplies, chemicals, and feed. | X | | | |
| 35.  Other personal property of any kind not already listed. Itemize. | X | | | |
| | | | **TOTAL** | **13,550.00** |

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

_____ **0** continuation sheets attached

(Include amounts from any continuation sheets attached.
Report total also on Summary of Schedules.)

App. Ap. pp.413

B6C (Official Form 6C) (04/10)

**IN RE** Balcells Gallareta, Juan Carlos _____ Case No. _____

<table>
<tr><td></td><td>Debtor(s)</td><td></td><td>(If known)</td></tr>
</table>

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under:  ☐ Check if debtor claims a homestead exemption that exceeds $146,450. *
(Check one box)

☑ 11 U.S.C. § 522(b)(2)
☐ 11 U.S.C. § 522(b)(3)

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTIONS |
|---|---|---:|---:|
| **SCHEDULE B - PERSONAL PROPERTY** | | | |
| **COMPUTER** | **11 USC § 522(d)(3)** | **400.00** | **400.00** |
| **CLOTHES** | **11 USC § 522(d)(3)** | **100.00** | **100.00** |
| **WATCH** | **11 USC § 522(d)(4)** | **50.00** | **50.00** |
| **MAKO 1987 OUTBOARD 26' CTRCN** | **11 USC § 522(d)(5)** | **1,150.00** | **13,000.00** |
| **MODEL 261** | **11 USC § 522(d)(5)** | **10,825.00** | |

*Amount subject to adjustment on 4/1/13 and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.414

**B6D (Official Form 6D) (12/07)**

**IN RE** **Balcells Gallareta, Juan Carlos**            Case No. _____

       Debtor(s)                                                          (If known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND ACCOUNT NUMBER. *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. **000-179953-6** <br><br> **BANCO POPULAR** <br> **PO BOX 362708** <br> **SAN JUAN, PR 00936-2708** | X | H | **MORTAGE ON HOME NOW OCCUPIED BY EX WIFE AND CHILDREN** <br><br><br> VALUE $ | | | | 56,861.81 | 56,861.81 |
| ACCOUNT NO. **000894827** <br><br> **SCOTIABANK** <br> **PO BOX 362649** <br> **SAN JUAN, PR 00936-2649** | X | H | **CO SIGNER ON EX WIFE'S AUTOMOBILE** <br><br><br> VALUE $ | | | | 5,985.00 | 5,985.00 |
| ACCOUNT NO. <br><br><br> VALUE $ | | | | | | | | |
| ACCOUNT NO. <br><br><br> VALUE $ | | | | | | | | |

| | | |
|---|---|---|
| **0** continuation sheets attached | Subtotal <br> (Total of this page) | $ **62,846.81**    $ **62,846.81** |
| | Total <br> (Use only on last page) | $ **62,846.81**    $ **62,846.81** |

(Report also on Summary of Schedules.)        (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6E (Official Form 6E) (04/10)

**IN RE** Balcells Gallareta, Juan Carlos            Case No. _____
<div align="center">Debtor(s)                                                       (If known)</div>

<div align="center">

## SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

</div>

    A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

    The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

    If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

    Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

    Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

    Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☑ **Domestic Support Obligations**
    Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**
    Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**
    Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $11,725* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**
    Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**
    Claims of certain farmers and fishermen, up to $5,775* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**
    Claims of individuals up to $2,600* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

☑ **Taxes and Certain Other Debts Owed to Governmental Units**
    Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to Maintain the Capital of an Insured Depository Institution**
    Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for Death or Personal Injury While Debtor Was Intoxicated**
    Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

    * Amounts are subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

_____ **2** continuation sheets attached

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.416

B6E (Official Form 6E) (04/10) - Cont.

IN RE **Balcells Gallareta, Juan Carlos**                                    Case No. _____
                  Debtor(s)                                                           (If known)

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
## (Continuation Sheet)

### Domestic Support Obligations
(Type of Priority for Claims Listed on This Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE AND ACCOUNT NUMBER. *(See Instructions above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br><br>**AMARILIS GONZALEZ GARCIA**<br>**URB VILLA REALES**<br>**CALLE E-33**<br>**GUAYNABO, PR 00936** | | H | **DISPUTED OWED DSO. HEARING TO DETERMINE DISPUTED AMUNT TO BE HELD AUGUST 8TH 2011** | | | X | **34,000.00** | **34,000.00** | |
| ACCOUNT NO. | | | | | | | | | |
| ACCOUNT NO. | | | | | | | | | |
| ACCOUNT NO. | | | | | | | | | |
| ACCOUNT NO. | | | | | | | | | |
| ACCOUNT NO. | | | | | | | | | |

Sheet no. __**1**__ of __**2**__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

| | Subtotal (Totals of this page) | $ **34,000.00** | $ **34,000.00** | $ |
|---|---|---|---|---|
| | Total (Use only on last page of the completed Schedule E. Report also on the Summary of Schedules.) | $ | | |
| | Total (Use only on last page of the completed Schedule E. If applicable, report also on the Statistical Summary of Certain Liabilities and Related Data.) | | $ | $ |

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.417

B6E (Official Form 6E) (04/10) - Cont.

**IN RE** Balcells Gallareta, Juan Carlos
<div style="text-align:center">Debtor(s)</div>

Case No. _____
<div style="text-align:center">(If known)</div>

<div style="text-align:center">

## SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
### (Continuation Sheet)

</div>

<div style="text-align:center">

**Taxes and Other Certain Debts Owed to Governmental Units**

(Type of Priority for Claims Listed on This Sheet)

</div>

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE AND ACCOUNT NUMBER. *(See Instructions above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. **XXX-XX-1825**<br><br>**INTERNAL REVENUE SERVICE**<br>**Dept. Of Treasury**<br>**Philadelphia, PA  19255-0025** | | H | Incurred 2010 | | | | 1,356.22 | 1,356.22 | |
| ACCOUNT NO. **xxx-xx-1825**<br><br>**INTERNAL REVENUE SERVICE**<br>**Dept. Of Treasury**<br>**Philadelphia, PA  19255-0025** | | H | INCURRED 2009 | | | | 1,561.96 | 1,561.96 | |
| ACCOUNT NO. | | | | | | | | | |
| ACCOUNT NO. | | | | | | | | | |
| ACCOUNT NO. | | | | | | | | | |
| ACCOUNT NO. | | | | | | | | | |

Sheet no. **2** of **2** continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

Subtotal
(Totals of this page) $ **2,918.18** $ **2,918.18** $

Total
(Use only on last page of the completed Schedule E. Report also on the Summary of Schedules.) $ **36,918.18**

Total
(Use only on last page of the completed Schedule E. If applicable, report also on the Statistical Summary of Certain Liabilities and Related Data.) $ **36,918.18** $

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

<div style="text-align:right">

App. Ap. pp.418

</div>

**B6F (Official Form 6F) (12/07)**

**IN RE** Balcells Gallareta, Juan Carlos _____ Case No. _____
                        Debtor(s)                                              (If known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured nonpriority claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER. *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. **5490-4170-5113-0575** <br><br> **1FIRST BANK** <br> **PO BOX 15019** <br> **WILMINGTON, DE  19886-5019** | | H | **6/20/93 MASTERCARD** | | | | **4,486.20** |
| ACCOUNT NO. **3726-544494-22009** <br><br> **AMERICAN EXPRESS** <br> **PO BOX 1270** <br> **NEWARK, NJ  07101-1270** | | H | **GOLD CARD 12/14/02** | | | | **6,558.06** |
| ACCOUNT NO. **XXX-5-91001** <br><br> **AMERICAN EXPRESS** <br> **PO BOX 1270** <br> **NEWARK, NJ  07101-1270** | | H | **AMEX PLATINUM CARD 1/28/01** | | | | **18,072.91** |
| ACCOUNT NO. <br><br> **ANA C. BALCELLS** <br> **URB. BORINQUEN GARDENS** <br> **CALLE ESPINOZA 365** <br> **RIO PIEDRAS, PR  00926** | | H | **PERSONAL LOAN** | | | | **1,075.00** |

____1____ continuation sheets attached

| | Subtotal (Total of this page) | $ | **30,192.17** |
|---|---|---|---|
| | Total (Use only on last page of the completed Schedule F. Report also on the Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | $ | |

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6F (Official Form 6F) (12/07) - Cont.

**IN RE** Balcells Gallareta, Juan Carlos
Debtor(s)

Case No. _____
(If known)

### SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
**(Continuation Sheet)**

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER. *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. **347-058667** <br> **BANCO POPULAR** <br> **PO BOX 362708** <br> **SAN JUAN, PR 00936-2708** | | H | **12/1/07 RESERVA POPULAR** | | | | **9,951.41** |
| ACCOUNT NO. **4549-2101-1474-9125** <br> **BANCO POPULAR** <br> **PO BOX 362708** <br> **SAN JUAN, PR 00936-2708** | | H | **3/9/98 VISA** | | | | **26,214.60** |
| ACCOUNT NO. **3778-123264-21818** <br> **BANCO POPULAR** <br> **PO BOX 362708** <br> **SAN JUAN, PR 00936-2708** | | H | **8/1/00** | | | | **33,758.28** |
| ACCOUNT NO. **5347-6500-0473-7246** <br> **BBVA** <br> **PO BOX 361012** <br> **SAN JUAN, PR 00936-1961** | | H | **5/1/06 MASTERCARD** | | | | **40,977.72** |
| ACCOUNT NO. <br> **CRISTINA SANTAELLA** <br> **URB. ARBOLES DE MONTEHIEDRA** <br> **CALLE JACANA 404** <br> **SJ, PR 00926** | | H | **PERSONAL LOAN** | | | | **11,180.00** |
| ACCOUNT NO. <br> **JUAN BALCELLS** <br> **URB BORINQUEN GARDENS** <br> **CALLE ESPINOZA 367** <br> **RIO PIEDRAS, PR 00926** | | H | **LOAN FROM FATHER** | | | | **8,698.00** |
| ACCOUNT NO. | | | | | | | |

Sheet no. **1** of **1** continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page) $ **130,780.01**

Total (Use only on last page of the completed Schedule F. Report also on the Summary of Schedules, and if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) $ **160,972.18**

App. Ap. pp.420

B6G (Official Form 6G) (12/07)

**IN RE** Balcells Gallareta, Juan Carlos
_____
Debtor(s)                    (If known)

Case No. _____

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

    Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☑ Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE OF OTHER PARTIES TO LEASE OR CONTRACT | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| | |

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.421

**B6H (Official Form 6H) (12/07)**

**IN RE** Balcells Gallareta, Juan Carlos _____    Case No. _____
<div align="center">Debtor(s)                                                                                    (If known)</div>

<div align="center">

## SCHEDULE H - CODEBTORS

</div>

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by the debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight-year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **AMARILIS GONZALEZ GARCIA**<br>**URB VILLA REALES**<br>**CALLE E-33**<br>**GUAYNABO, PR  00936** | **SCOTIABANK**<br>**PO BOX 362649**<br>**SAN JUAN, PR  00936-2649**<br><br>**BANCO POPULAR**<br>**PO BOX 362708**<br>**SAN JUAN, PR  00936-2708** |

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.422

**B6I (Official Form 6I) (12/07)**

**IN RE** **Balcells Gallareta, Juan Carlos** _____ Case No. _____
_____
Debtor(s)                                           (If known)

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on From 22A, 22B, or 22C.

| Debtor's Marital Status | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| **Married** | RELATIONSHIP(S): **Daughter Son** | AGE(S): **16 14** |

| EMPLOYMENT: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | **See Schedule Attached** | |
| Name of Employer | | |
| How long employed | | |
| Address of Employer | | |

**INCOME:** (Estimate of average or projected monthly income at time case filed)     DEBTOR      SPOUSE

| | DEBTOR | SPOUSE |
|---|---|---|
| 1. Current monthly gross wages, salary, and commissions (prorate if not paid monthly) | $ 2,092.67 | $ _____ |
| 2. Estimated monthly overtime | $ _____ | $ _____ |
| **3. SUBTOTAL** | $ 2,092.67 | $ _____ |
| 4. LESS PAYROLL DEDUCTIONS | | |
| a. Payroll taxes and Social Security | $ 53.13 | $ _____ |
| b. Insurance | $ _____ | $ _____ |
| c. Union dues | $ _____ | $ _____ |
| d. Other (specify) _____ | $ _____ | $ _____ |
| | $ _____ | $ _____ |
| **5. SUBTOTAL OF PAYROLL DEDUCTIONS** | $ 53.13 | $ _____ |
| **6. TOTAL NET MONTHLY TAKE HOME PAY** | $ 2,039.54 | $ _____ |
| 7. Regular income from operation of business or profession or farm (attach detailed statement) | $ _____ | $ _____ |
| 8. Income from real property | $ _____ | $ _____ |
| 9. Interest and dividends | $ _____ | $ _____ |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $ _____ | $ _____ |
| 11. Social Security or other government assistance (Specify) _____ | $ _____ | $ _____ |
| | $ _____ | $ _____ |
| 12. Pension or retirement income | $ _____ | $ _____ |
| 13. Other monthly income (Specify) _____ | $ _____ | $ _____ |
| | $ _____ | $ _____ |
| | $ _____ | $ _____ |
| **14. SUBTOTAL OF LINES 7 THROUGH 13** | $ _____ | $ _____ |
| **15. AVERAGE MONTHLY INCOME** (Add amounts shown on lines 6 and 14) | $ 2,039.54 | $ _____ |

**16. COMBINED AVERAGE MONTHLY INCOME**: (Combine column totals from line 15; if there is only one debtor repeat total reported on line 15)     $ **2,039.54**

(Report also on Summary of Schedules and, if applicable, on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:
**None**

App. Ap. pp.423

IN RE **Balcells Gallareta, Juan Carlos** _____    Case No. _____
                                           Debtor(s)

### SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)
#### Continuation Sheet - Page 1 of 1

| EMPLOYMENT: | DEBTOR | SPOUSE |
| --- | --- | --- |
| Occupation | | |
| Name of Employer | **GUSUPA INC** | |
| How long employed | | |
| Address of Employer | **AVE. DE DIEGO 604** | |
| | | |
| Occupation | | |
| Name of Employer | **GUSUPA INC** | |
| How long employed | | |
| Address of Employer | **AVE. DE DIEGO 604** | |
| | **SAN JUAN, PR  00920** | |

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.424

B6J (Official Form 6J) (12/07)

**IN RE** Balcells Gallareta, Juan Carlos _____  Case No. _____
                        Debtor(s)                                                    (If known)

## SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed. Prorate any payments made biweekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form22A or 22C.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | |
|---|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ _____ |
|    a. Are real estate taxes included?    Yes ____   No ✓ | |
|    b. Is property insurance included?   Yes ____   No ✓ | |
| 2. Utilities: | |
|    a. Electricity and heating fuel | $ _____ |
|    b. Water and sewer | $ _____ |
|    c. Telephone | $ _____ |
|    d. Other | $ _____ |
| _____ | $ _____ |
| 3. Home maintenance (repairs and upkeep) | $ _____ |
| 4. Food | $ __400.00__ |
| 5. Clothing | $ _____ |
| 6. Laundry and dry cleaning | $ _____ |
| 7. Medical and dental expenses | $ _____ |
| 8. Transportation (not including car payments) | $ _____ |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | $ _____ |
| 10. Charitable contributions | $ _____ |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | |
|    a. Homeowner's or renter's | $ _____ |
|    b. Life | $ _____ |
|    c. Health | $ _____ |
|    d. Auto | $ _____ |
|    e. Other | $ _____ |
| _____ | $ _____ |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | |
|    (Specify) _____ | $ _____ |
| _____ | $ _____ |
| 13. Installment payments: (in chapter 11, 12 and 13 cases, do not list payments to be included in the plan) | |
|    a. Auto | $ _____ |
|    b. Other | $ _____ |
| _____ | $ _____ |
| 14. Alimony, maintenance, and support paid to others | $ __4,838.00__ |
| 15. Payments for support of additional dependents not living at your home | $ _____ |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ _____ |
| 17. Other   **CANGREJO YATCH CLUB** | $ __145.00__ |
| _____ | $ _____ |
| _____ | $ _____ |

**18. AVERAGE MONTHLY EXPENSES** (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.      $ __5,383.00__

19. Describe any increase or decrease in expenditures anticipated to occur within the year following the filing of this document:
**None**

**20. STATEMENT OF MONTHLY NET INCOME**

| | |
|---|---:|
|    a. Average monthly income from Line 15 of Schedule I | $ __2,039.54__ |
|    b. Average monthly expenses from Line 18 above | $ __5,383.00__ |
|    c. Monthly net income (a. minus b.) | $ __-3,343.46__ |

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.425

B6 Declaration (Official Form 6 - Declaration) (12/07)

IN RE **Balcells Gallareta, Juan Carlos** _____  Case No. _____
<center>Debtor(s)</center>                                           <div style="text-align:right">(If known)</div>

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of _____**18** sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date: **August 5, 2011** _____   Signature: _/s/ Juan Carlos Balcells Gallareta_
                                               **Juan Carlos Balcells Gallareta**           <div style="text-align:right">Debtor</div>

Date: _____   Signature: _____
                                                                        <div style="text-align:right">(Joint Debtor, if any)</div>
                                                                        [If joint case, both spouses must sign.]

### DECLARATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342 (b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required by that section.

_____          _____
Printed or Typed Name and Title, if any, of Bankruptcy Petition Preparer          Social Security No. (Required by 11 U.S.C. § 110.)
_If the bankruptcy petition preparer is not an individual, state the name, title (if any), address, and social security number of the officer, principal, responsible person, or partner who signs the document._

_____
_____
Address

_____          _____
Signature of Bankruptcy Petition Preparer                                        Date

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document, unless the bankruptcy petition preparer is not an individual:

_If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person._

_A bankruptcy petition preparer's failure to comply with the provision of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156._

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the _____ (the president or other officer or an authorized agent of the corporation or a member or an authorized agent of the partnership) of the _____ (corporation or partnership) named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of _____ sheets (_total shown on summary page plus 1_), and that they are true and correct to the best of my knowledge, information, and belief.

Date: _____   Signature: _____

                                               _____
                                               <div style="text-align:right">(Print or type name of individual signing on behalf of debtor)</div>

_[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]_

_Penalty for making a false statement or concealing property:_ Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

<div style="writing-mode:vertical-rl">© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only</div>

# App. Ap. pp.426

B7 (Official Form 7) (04/10)

# United States Bankruptcy Court
## District of Puerto Rico

IN RE:                                                     Case No. _____

**Balcells Gallareta, Juan Carlos**                        Chapter **7**
_____
Debtor(s)

# STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

*DEFINITIONS*

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**1. Income from employment or operation of business**

None ☐ State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT      SOURCE
**23,679.00  2009 EMPLOYMENT**
**20,287.00  2010 EMPLOYMENT**

**2. Income other than from employment or operation of business**

None ☑ State the amount of income received by the debtor other than from employment, trade, profession, operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**3. Payments to creditors**
*Complete a. or b., as appropriate, and c.*

None ☑ *a. Individual or joint debtor(s) with primarily consumer debts:* List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

☑ None **b. Debtor whose debts are not primarily consumer debts:** List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,850.* If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

*Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

☑ None **c. All debtors:** List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**4. Suits and administrative proceedings, executions, garnishments and attachments**

☐ None **a.** List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| CIVIL NUM. D DI2006-4055 AMARILIS GONZALEZ GARCIA VS JUAN CARLOS BALCELLS GALLARETA | DIVORCE | REGION JUDICIAL DE BAYAMON SALA DE FAMILIA Y MENORES | IN PROCESS- COURT HEARING AUGUST 8TH 2011 |

☑ None **b.** Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**5. Repossessions, foreclosures and returns**

☑ None List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**6. Assignments and receiverships**

☑ None **a.** Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and joint petition is not filed.)

☑ None **b.** List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**7. Gifts**

☑ None List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**8. Losses**

☑ None List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**9. Payments related to debt counseling or bankruptcy**

☐ None List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under bankruptcy law or preparation of a petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **CREDIT COUNSELING** | **AUGUST 2011** | **30.00** |

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**PRE FILING CREDIT COUNSELING**

| | | |
|---|---|---|
| CARLOS E RODRIGUEZ QUESADA | **AUGUST 2,2011** | 1,500.00 |
| 361 SAN FRANSISCO ST SUITE 2-C | | |
| SAN JUAN, PR  00901 | | |

**10. Other transfers**

None ☑    a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

None ☑    b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

**11. Closed financial accounts**

None ☑    List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**12. Safe deposit boxes**

None ☑    List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**13. Setoffs**

None ☑    List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**14. Property held for another person**

None ☑    List all property owned by another person that the debtor holds or controls.

**15. Prior address of debtor**

None ☐    If debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|
| CALLE JACANA 404, MONTEHIEDRA, SAN JUAN, PR 00926 | | CURRENT |
| URB. VILLA REALES E-33, GUAYNABO PR 00965 | | PREVIOUS HOUSE |

**16. Spouses and Former Spouses**

None ☐    If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**AMARILIS GONZALEZ GARCIA**

**EX WIFE- DIVORED BUT MARTIL ASSETTS ARE STILL BEING DIVIDED**

**CRISTINA MERCEDES SANTAELLA SUAREZ**

**CURRENT WIFE**

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.429

**17. Environmental Information**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law.

| None | |
|---|---|
| ☑ | a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law. |
| ☑ | b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice. |
| ☑ | c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number. |

**18. Nature, location and name of business**

| None | |
|---|---|
| ☑ | a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case. |

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| None | |
|---|---|
| ☑ | b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101. |

*[If completed by an individual or individual and spouse]*

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date: **August  5, 2011** _____  Signature  ***/s/ Juan Carlos Balcells Gallareta***

of Debtor                                    **Juan Carlos Balcells Gallareta**

Date: _____  Signature _____

of Joint Debtor
(if any)

_____**0** continuation pages attached

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years or both.  18 U.S.C. § 152 and 3571.*

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.430

B8 (Official Form 8) (12/08)

## United States Bankruptcy Court
## District of Puerto Rico

IN RE:                                                                           Case No. _____

Balcells Gallareta, Juan Carlos                                                  Chapter **7** _____
_____
Debtor(s)

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

**PART A** – Debts secured by property of the estate. *(Part A must be fully completed for **EACH** debt which is secured by property of the estate. Attach additional pages if necessary.)*

| Property No. 1 | |
|---|---|
| **Creditor's Name:**<br>**1FIRST BANK** | **Describe Property Securing Debt:** |

Property will be *(check one)*:
- [x] Surrendered  [ ] Retained

If retaining the property, I intend to *(check at least one)*:
- [ ] Redeem the property
- [ ] Reaffirm the debt
- [ ] Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
- [ ] Claimed as exempt  [x] Not claimed as exempt

| Property No. 2 (if necessary) | |
|---|---|
| **Creditor's Name:**<br>**AMERICAN EXPRESS** | **Describe Property Securing Debt:** |

Property will be *(check one)*:
- [x] Surrendered  [ ] Retained

If retaining the property, I intend to *(check at least one)*:
- [ ] Redeem the property
- [ ] Reaffirm the debt
- [ ] Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
- [ ] Claimed as exempt  [x] Not claimed as exempt

**PART B** – Personal property subject to unexpired leases. *(All three columns of Part B must be completed for each unexpired lease. Attach additional pages if necessary.)*

| Property No. 1 | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be assumed pursuant to 11 U.S.C. § 365(p)(2):<br>[ ] Yes  [ ] No |

| Property No. 2 (if necessary) | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be assumed pursuant to 11 U.S.C. § 365(p)(2):<br>[ ] Yes  [ ] No |

___**3** continuation sheets attached *(if any)*

**I declare under penalty of perjury that the above indicates my intention as to any property of my estate securing a debt and/or personal property subject to an unexpired lease.**

Date: _____**August  5, 2011**_____     ***/s/ Juan Carlos Balcells Gallareta***_____
                                            Signature of Debtor

                                            _____
                                            Signature of Joint Debtor

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.431

B8 (Official Form 8) (12/08)

# CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION
*(Continuation Sheet)*

## PART A – Continuation

| Property No. 3 | |
|---|---|
| **Creditor's Name:**<br>**AMERICAN EXPRESS** | **Describe Property Securing Debt:** |

Property will be *(check one)*:
☑ Surrendered   ☐ Retained

If retaining the property, I intend to *(check at least one)*:
☐ Redeem the property
☐ Reaffirm the debt
☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
☐ Claimed as exempt   ☑ Not claimed as exempt

| Property No. 4 | |
|---|---|
| **Creditor's Name:**<br>**ANA C. BALCELLS** | **Describe Property Securing Debt:** |

Property will be *(check one)*:
☐ Surrendered   ☑ Retained

If retaining the property, I intend to *(check at least one)*:
☑ Redeem the property
☐ Reaffirm the debt
☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
☐ Claimed as exempt   ☑ Not claimed as exempt

| Property No. 5 | |
|---|---|
| **Creditor's Name:**<br>**BANCO POPULAR** | **Describe Property Securing Debt:** |

Property will be *(check one)*:
☑ Surrendered   ☐ Retained

If retaining the property, I intend to *(check at least one)*:
☐ Redeem the property
☐ Reaffirm the debt
☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
☐ Claimed as exempt   ☑ Not claimed as exempt

## PART B – Continuation

| Property No. | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be assumed pursuant to 11 U.S.C. § 365(p)(2):<br>☐ Yes ☐ No |

| Property No. | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be assumed pursuant to 11 U.S.C. § 365(p)(2):<br>☐ Yes ☐ No |

Continuation sheet ___**1**___ of ___**3**___

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.432

**B8 (Official Form 8) (12/08)**

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION
*(Continuation Sheet)*

### PART A – Continuation

| Property No. 6 | |
|---|---|
| **Creditor's Name:**<br>**BANCO POPULAR** | **Describe Property Securing Debt:** |

Property will be *(check one)*:
☑ Surrendered ☐ Retained

If retaining the property, I intend to *(check at least one)*:
☐ Redeem the property
☐ Reaffirm the debt
☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
☐ Claimed as exempt ☑ Not claimed as exempt

| Property No. 7 | |
|---|---|
| **Creditor's Name:**<br>**BANCO POPULAR** | **Describe Property Securing Debt:** |

Property will be *(check one)*:
☑ Surrendered ☐ Retained

If retaining the property, I intend to *(check at least one)*:
☐ Redeem the property
☐ Reaffirm the debt
☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
☐ Claimed as exempt ☑ Not claimed as exempt

| Property No. 8 | |
|---|---|
| **Creditor's Name:**<br>**CRISTINA SANTAELLA** | **Describe Property Securing Debt:** |

Property will be *(check one)*:
☐ Surrendered ☑ Retained

If retaining the property, I intend to *(check at least one)*:
☑ Redeem the property
☐ Reaffirm the debt
☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
☐ Claimed as exempt ☑ Not claimed as exempt

### PART B – Continuation

| Property No. | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be assumed pursuant to 11 U.S.C. § 365(p)(2):<br>☐ Yes ☐ No |

| Property No. | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be assumed pursuant to 11 U.S.C. § 365(p)(2):<br>☐ Yes ☐ No |

Continuation sheet ___**2**___ of ___**3**___

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.433

**B8 (Official Form 8) (12/08)**

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION
### *(Continuation Sheet)*

**PART A** – Continuation

| Property No. 9 | |
|---|---|
| **Creditor's Name:**<br>**JUAN BALCELLS** | **Describe Property Securing Debt:** |

Property will be *(check one)*:
☐ Surrendered ☑ Retained

If retaining the property, I intend to *(check at least one)*:
☑ Redeem the property
☐ Reaffirm the debt
☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
☐ Claimed as exempt ☑ Not claimed as exempt

---

| Property No. | |
|---|---|
| **Creditor's Name:** | **Describe Property Securing Debt:** |

Property will be *(check one)*:
☐ Surrendered ☐ Retained

If retaining the property, I intend to *(check at least one)*:
☐ Redeem the property
☐ Reaffirm the debt
☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
☐ Claimed as exempt ☐ Not claimed as exempt

---

| Property No. | |
|---|---|
| **Creditor's Name:** | **Describe Property Securing Debt:** |

Property will be *(check one)*:
☐ Surrendered ☐ Retained

If retaining the property, I intend to *(check at least one)*:
☐ Redeem the property
☐ Reaffirm the debt
☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
☐ Claimed as exempt ☐ Not claimed as exempt

**PART B** – Continuation

| Property No. | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be assumed pursuant to<br>11 U.S.C. § 365(p)(2):<br>☐ Yes ☐ No |

| Property No. | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be assumed pursuant to<br>11 U.S.C. § 365(p)(2):<br>☐ Yes ☐ No |

Continuation sheet ___**3**___ of ___**3**___

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.434

**United States Bankruptcy Court**
**District of Puerto Rico**

IN RE:                                                                                     Case No. _____

**Balcells Gallareta, Juan Carlos** _____          Chapter **7** _____
                                    Debtor(s)

**VERIFICATION OF CREDITOR MATRIX**

The above named debtor(s) hereby verify(ies) that the attached matrix listing creditors is true to the best of my(our) knowledge.

Date: **August  5, 2011** _____          Signature: */s/ Juan Carlos Balcells Gallareta* _____
                                                        **Juan Carlos Balcells Gallareta**                      Debtor

Date: _____          Signature: _____
                                                                                          Joint Debtor, if any

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

App. Ap. pp.435

**Balcells Gallareta, Juan Carlos**
**PO Box 361012**
**SJ, PR  00936**

**JUAN BALCELLS**
**URB BORINQUEN GARDENS**
**CALLE ESPINOZA 367**
**RIO PIEDRAS, PR  00926**

**Carlos E. Rodriguez-Quesada**
**PO BOX 9023115**
**San Juan, PR  00901-3115**

**SCOTIABANK**
**PO BOX 362649**
**SAN JUAN, PR  00936-2649**

**1FIRST BANK**
**PO BOX 15019**
**WILMINGTON, DE  19886-5019**

**AMARILIS GONZALEZ GARCIA**
**URB VILLA REALES**
**CALLE E-33**
**GUAYNABO, PR  00936**

**AMERICAN EXPRESS**
**PO BOX 1270**
**NEWARK, NJ  07101-1270**

**ANA C. BALCELLS**
**URB. BORINQUEN GARDENS**
**CALLE ESPINOZA 365**
**RIO PIEDRAS, PR  00926**

**BANCO POPULAR**
**PO BOX 362708**
**SAN JUAN, PR  00936-2708**

**BBVA**
**PO BOX 361012**
**SAN JUAN, PR  00936-1961**

**CRISTINA SANTAELLA**
**URB. ARBOLES DE MONTEHIEDRA**
** CALLE JACANA 404**
**SJ, PR  00926**

**INTERNAL REVENUE SERVICE**
**Dept. Of Treasury**
**Philadelphia, PA  19255-0025**

RECEIVED AND FILED
EMERGENCY FILINGS EMAIL
07/06/2021 - 03:58 PM
USBC
(WRT)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

IN RE:                                            **CASE NO. 11-06637 MCF**

JUAN CARLOS BALCELLS GALLARRETA

DEBTOR(S)                                    **Chapter 7**

NOREEN WISCOVITCH RENTAS, TRUSTEE

OPPOSITION TO MOTION REQUESTING ENTRY OF SUMMARY JUDGMENT

TO THE HONORABLE COURT:

COMES NOW, Amarilis González, *pro se*, as creditor and co-owner and very respectfully states and prays:

**I.  Introduction:**

1.  On June 3, 2021, Noreen Wiscovitch Rentas, as Chapter 7 Trustee of the Bankruptcy Estate, filed an Objection to Claim at No. 5-2 alleging lack of standing for the child support debt claim originally filed on February 2011, requesting to eliminate the accrued legal interest and requesting to alter the prepetition child support debt determined by the State Court to pay mortgage that became due after the frivolous adversary proceedings filed on 2014.

**II.  Procedural Background**

2.  On August 5, 2011 Debtor, Juan Carlos Balcells Gallarreta, filed the bankruptcy petition. [D.E. 1].

3.  On February 8, 2012, I filed a proof of claim for the Child Support Debt accrued pre-petition, before July 2011.

[The Judgment for the child support debt claim corresponds to the period until July 2011. On June 30, 2011, the State Court issued a Judgment ordering a final child support payment for the two minors based on the debtor's informed expenses because he did not want to disclose his earnings. The court designated the residential property as homestead for the protection of the two minors. A month after the Judgment of the child support obligation, on August 2011 ex-spouse/debtor filed bankruptcy petition, case #11-06637.

1

On December 21, 2011, the Appellate Court confirmed the First Instance Court Child Support Judgment. On May 2009, the debtor Juan C. Balcells married the current spouse Cristina Santaella. Since 2008, after debtor announced his marriage with new spouse, debtor disregarded child support obligation and accumulated a substantial debt while maintaining high expenses. During February 2012, the child support debt accrued was estimated for $186,000. Afterwards, on August 2012, the court made a final decree determining the debt and divided the child support debt into two parts; first part: debt corresponding to the period accrued before July 2011 (pre-petition) in the amount of $125,000 for child support and $4,200 of legal fees and, the second part, determined included a post-petition child support debt for an amount of more than $60,000. The claimed prepetition accrued debt not paid corresponds to the period before July 2011 plus the legal interest accrued.]

4.   From 2011 to 2021 the bankruptcy case contains a substantial amount of documents filed which I am not including nor discussing that are relevant to the objection presented.

5.   On June 3, 2021, Noreen Wiscovitch Rentas, as Chapter 7 Trustee of the Bankruptcy Estate, filed an Objection to Claim at No. 5-2

III Applicable Law

A.   Summary Judgment

1.   Regarding the request for the Motion for Summary Judgment, Rule 56(c) of the Federal Rules of Civil Procedure provides that: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions in file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law".

2.   Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

3.   "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Patco Constr. Co. v. People's United Bank, 684 F.3d 197, 206-07 (1st Cir. 2012).

4.   The question of whether the claims should be allowed hinged largely on the existence of the debtor's obligations to the creditor under Puerto Rico law. State law specified the remedies available.  In re Holland Grp. Port Inv. (Mayaguez) Inc., 2019 Bankr. LEXIS 3016.

B.   Standing:

App. Ap. pp.438

5.   On June 30, 2011, the State Court issued a Judgment ordering a final child support payment for two the minors. As of the filing of the DSO proof of claim # 5-1 on Feburary 8, 2012, I estimated the amount of the pre-petition child support debt by using the final determination of child support made on June 2011 by the First Instance Court. The proof of claim requesting the child support pre-petition debt was filed to this court when the children were minors and full time school students. (And had been requested before debtor filed bankruptcy in the State Court.) Debtor filed bankruptcy to evade responsibility.

6.   Today, the confirmed principal amount of the child support debt plus the 6% of mandatory legal interest totals more than $239,000. (pre-petition debt for child support accrued before July 2011 of $125,000 plus mandatory legal interest of 6% that accrued monthly since defaults). The amended claim for the child support debt was made to include the additional mandatory legal interest accrued as of that date as stated in the P.R. Civil Code.

7.   Pursuant to 11 U.S.C. Sec. 101(14A), the term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—  (A) owed to or recoverable by— (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or (ii) a governmental unit; (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated; (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of— (i) a separation agreement, divorce decree, or property settlement agreement; (ii) an order of a court of record; or (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and (D) not assigned to a nongovernmental entity. 11 U.S.C. Sec. 101(14A)

8.   Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's

parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf such person, on the condition that funds received after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbanruptcy law and are regarded as first in priority under 11 U.S.C. Sec. 507 (a)(1)(A).

9.  Both Bankruptcy Code provisions, 11 U.S.C. Sec. 507 (a)(1)(A) for DSO priority claim  and 11 U.S.C. Sec. 101(14A) for DSO definition establishes that the child support debts are recoverable by the legal guardian/children parent.

10. In addition, State Law provides for collecting child support debts the Seizure of Assets of the delinquent parent. 8 LPRA 524. Article 25 of the Special Child Support Law (§ 524 (1)) for Measures to assure effective payment of support -Seizure of Assets, establishes that the Child support payments, including any related penalties, fees or costs in arrears for more than thirty (30) days constitute an encumbrance for the amount of the payment over all the income of assets, real property and movable property of the debtor. The assurance of effectiveness by the corresponding attachments shall not require prior judicial notice or hearing. Article 25 (Section 524 (4)) of the provision establishes that the order to attach income can be served by the "*alimentista*", legal representative, or a particular person. Special Child Support Act, 8 L.P.R.A. § 524 (1)(4).  The Article 51.3 of the Rules of Civil Procedures provides, (in its pertinent part) the procedures for payment of the encumbrances (embargo), of the assets the court could issue a judgment to obtain (to take) title from one party and transfer it to the other and said judgment will have the effect of a transfer of ownership executed in accordance to the law.  (as referred by law 8 L.PRA 524)

11. Under 18 USC § 228 for failure to pay legal child support obligations , (a) Offense. Any person who (2)  travels in interstate or foreign commerce with the intent to evade a support obligation, if such obligation has remained unpaid for a period longer than 1 year, or is greater than $5,000.(b) Presumption. The existence of a support obligation that was in effect for the time period charged in the indictment or information creates a rebuttable presumption that the obligor has the ability to pay the support obligation for that time period. (c) Punishment. The punishment for an offense under this section is— (1)  in the case

4

of a first offense under subsection (a)(1), a fine under this title, imprisonment for not more than 6 months, or both; and (2)  in the case of an offense under paragraph (2) or (3) of subsection (a), or a second or subsequent offense under subsection (a)(1), a fine under this title, imprisonment for not more than 2 years, or both. (d) Mandatory restitution. Upon a conviction under this section, the court shall order restitution under section 3663A [18 USCS § 3663A] in an amount equal to the total unpaid support obligation as it exists at the time of sentencing.

12. For child support debt payment evasion, the federal law orders punishment and a mandatory restitution in an amount equal to the unpaid child support obligation.

13. In addition to the original request and in the alternative, the case of Figueroa Robledo v. Rivera Rosa, 149 DPR 565, the P.R. Supreme Court determined that because the debtor who did not paid the child support obligation correspond a reimbursement for the amount owed in child support to the ex-spouse.

14. Regarding the cases Key Nieves v. Oyola Nieves, 116 DPR 261 and Ríos Rosario v. Vidal Ramos, 134 DPR 3, Trustee has been misusing/altering the interpretation of the cases. In Key Nieves Oyola v. Oyola Nieves, the court ruled that if a claim originates or begins with a request for support to a relative and the petitioners are of legal age over 21, the young adults should be the one originating the claim because they already reached legal age, 21 years before making the original claim. Key Nieves v. Oyola Nieves, 116 DPR 261. The case of Ríos Rosario v. Vidal Ramos is an ex-spouse who notified a claim a request for the collection of a debt accrued for the first time when the children were of legal age (over 21 years old) and the Court ruled that when the children are of legal age and there are past-due child support, the claim cannot be originated by the other spouse and the originators of the claim would have to be the young adults. Ríos Rosario v. Vidal Ramos, 134 DPR 3. This case differentiates because requests were originated when alimentistas were legal age.

15. Trustee cites cases: In Re Amantex Corp. 755 F 2d 1034, 1042 (3rd Circuit 1995) where an intervention was denied because claimants had a representative; In Re Richter 478 BR 30 2012 the court decided the assignee had no standing due to lack of documentation; Gladstone Realtors v. Village of

Bellwood, 441 US 91, 99 the court decided that the affected residents in the neighborhood claims had standing the ones living outside the neighborhood could not be affected and didn't had standing. In this case, Trustee was provided of documentation certifying the debt and was also provided with a diversity of documentation of additional debtor income and properties that were necessary to investigate and to recover to adequately compose the estate. The lack of investigation on behalf of Trustee and the denials for the discovery I have requested affected the rights of my children and me. Trustee obstructed the different requests and obstruction with the intention to evade the collection of the child support debt.

16. In Trustee Opposition for the child support debt, Trustee cited cases: for endangered species Lujan v. Defenders of Wild Life 504 US 555, 560, forests, Sierra Club v. Morton, 405 US 727, 732 1972; and insurers liability that (not similar or related to the interest) were not affected comparing such cases to this case where the minors (now youth) have not been paid the child support debts accrued before 2011. Since the beginning of the bankruptcy filing, Trustee has being protecting debtor delinquent father from the payment of the child support debt by not exercising Trustee duty to investigate and opposing to the requests. Trustee has been trying to pay corporation debts (already paid on 2005 during our separation process) twice without recovering the corporation income, assets and properties.

17. None of the cited cases by the Trustee are applicable to lack of standing for the objection of the proof of claim. The proof of claim was filed at the bankruptcy Court when the children were minors, 15 and 17 years old with the state court Judgments. This claim was also requested to State Court before and after July 2011. The child support debt that Trustee is trying to eliminate was accrued before July 2011 when the children were 13 and 15 years old. Since 9 years ago, the child support debt (accrued before July 2011) was claimed in the Bankruptcy Court when the children were minors. Debtor delinquent father was under contempt for evading his obligation when he filed for the protection of the Bankruptcy Court.

18. In this case, the proof of claim for the child support debt was filed to the court since February 2012 and by that date the children were minors and full time school students. Trustee cannot benefit from the delay she has caused in the proceedings for not recovering the corresponding assets, for not exercising

App. Ap. pp.442

her duty to investigate, among others, as imposed by the Bankruptcy Code and for accepting a fraudulent bankruptcy claim.

19. In the interest of justice, this court can consider proof of claim 5-1 and add the additional legal interest due as of today. Pursuant to 11 U.S.C. Sec. 101(14A) and as per State Law[1], I can recover the child support debt requested since 2012 and, as per State Law, I have standing to conduct the seizure process of debtor properties to recover the debt including the legal interest accrued as of today. In addition and in the alternative, my children provided Sworn Statements ratifying the request for the payment for the debt and the legal interest. In the alternative, if necessary the young adults can file an additional proof of claim (in addition to 5-1 or 5-2) to request the legal interest accrued as of today not included in the previous claims.

C.  Post-Petition Interest to Child Support Pre-Petition Debt as per Applicable State Law:

20. Pursuant to 11 U.S.C. Sec. 101(14A), the term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title… 11 U.S.C. Sec. 101(14A) (emphasis supplied).

21. Pre-petition interest on domestic support obligation (DSO) and the interest is entitled to priority status; -Interest, as it "matures" after the petition on a DSO debt, becomes part of the DSO debt itself under 11 U.S.C.S. § 101(14A) "notwithstanding" any other provision of the Bankruptcy Code. The interest that accrues on a prepetition debt in the nature of alimony, maintenance or support shares the nondischargeable character of the debt and becomes part of the domestic support obligation itself. The interest and principal are intertwined and inseparable, and enforcement of the interest carries the same weight as enforcement of the principal In re Moore-Mckinney, 603 B.R. 855.

22. The plain language of 11 U.S.C.S. § 101(14A) defines a domestic support obligation (DSO) to include interest accruing under applicable nonbankruptcy law. The definition encompasses debts that were considered alimony, maintenance or support under prior 11 U.S.C.S. § 523(a)(5), but it is broader in

---

[1] Articles 147 and 1649 from the Civil Code (1930); Rodríguez v. Soler, 135 DPR 779 (1994)

several respects. It includes both pre-petition and post-petition obligations, and it includes interest that accrues on a debt under applicable nonbankruptcy law, including interest that accrues on or after the date of the order for relief, "notwithstanding any other provision of this title." Section 101(14A) enlarged the concept of a domestic support obligation to define post-petition interest as part of the DSO claim itself.

23. 11 U.S.C.S. § 502(b)(2) disallows any claim for unmatured interest generally and § 502(b)(5) disallows claims for unmatured domestic support obligations (DSOs). But 11 U.S.C.S. § 101(14A) expressly includes interest in the definition of DSO "notwithstanding any other provision" of the Code. The language "notwithstanding any other provision of this title" in § 101(14A) is contained within the clause referring specifically to DSO interest. The explicit inclusion of interest in the definition of DSO saves DSO interest from disallowance.

24. Post-petition interest as it accrues on a domestic support obligation (DSO) becomes part of the DSO debt itself under 11 U.S.C.S. § 101(14A) and the accruing post-petition interest is a priority debt that must be paid in full. A debtor must provide for the full payment of all claims entitled to priority under 11 U.S.C.S. § 507S

25. Pursuant to Article 147 of the Puerto Rico Civil Code (1930), "child support payments shall begin to accrue legal interest for delinquency from the moment sentence is pronounced or, if from month to month, from the time the obligation became due or should have been met." 31 P.R.L.A. Sec. 566. Pursuant to Article 1649 of the Puerto Rico Civil Code (1930), the applicable legal interest is six percent (6%). 31 P.R.L.A. Sec. 4591.

26. The unpaid child support obligation generates a mandatory legal interest. For the determination of the actual child support debt, in case Rodríguez v. Soler, 135 DPR 779 (1994), the P.R. Supreme Court ruled that it is mandatory that the payment of legal interest (6%) be imposed on the amount owed for child support debt without exception of any kind. Article 147 of the P.R. Civil Code (1930) includes a third paragraph that expressly and in blunt terms orders that: "*The child support granted will begin to accrue legal interest for delay from the moment the sentence is issued or if it is from month to month, since it expired or should have been paid his obligation*".   Article 1649 of the Civil Code (1930)

App. Ap. pp.444

establishes that, "In the absence of a prior contract, *the interest rate ...on any kind of obligation or contract will be six (6) dollars per year on every hundred (100) dollars or over its equivalent in value, and at the same rate for a greater* or lesser sum, or for a longer or shorter period… ".

27. Trustee cited cases: In Brunings v. U.S, The United States Supreme Court affirmed the decision and held that petitioner was personally liable for interest on back taxes, which were not discharged in bankruptcy, that he owed during the period that petitioner was in bankruptcy because he was personally liable on the amount owed. Cited case refers to claim for taxes nondischargeable and the law allowed the recovery of the interest. The DSO pre-petition child support debt is nondischargeable priority claims, and the State Law and Bankruptcy Law both allows the recovery of interest.

28. Trustee also cited cases: in American Iron and Steel Manufacturing Co. v. Seabord Air Line, 233 US 261 (1914) the court decided that they could enforce the payment of interest because the interest was an incident of that debt;  In Re Meier 2014 Bankr. LEXIS 4845 2014, the debt for support was un-matured interest referring as post-petition DSO; Kimble and Towers Invstr Inc., the court ordered a hearing to determine the priority among the property settlement and a co-parenting plan; In U.S. v. Robinson (In Re Sullivan), 929 F.2d.1(1991), the debtor became solvent and IRS recovered the interest and debts.

29. The payment of the amount accrued of legal interest is mandatory not optional as per applicable State Law. The final amount determined by the court accrued before July 2011 is subject to 6% of legal interest since the defaults of the monthly payments in addition to the $125,000 since July 2011. As per applicable law, the child support debt determined by the court corresponds to the Judgment of child support obligation established on July 2011; the pre-petition debt of $125,000 corresponds to the period before July 2011. The mandatory legal interest of 6% accrued since June 2011 generates a total amount of legal interest and keeps incrementing. The total amount of child support pre-petition (until July 2011) debt plus legal interest amounts to $227,424.00.  The child support accrued debt month by month prepetition defaults legal interest is $12,381.00. As of today, the child support debt (pre-petition) plus legal interest accrued at 6% totals $239,000.00, and continues to accrue monthly legal interest.

30.  As per State Law, the original proof of claim was subsequently amended to include the additional legal interest accrued (as of that date) to reflect the total child support debt owed by debtor. Post-petition interest as it accrues on a domestic support obligation (DSO) becomes part of the DSO debt itself under 11 U.S.C.S. § 101(14A) and the accruing post-petition interest is a priority debt that must be paid in full.

31.  Pursuant 11 U.S.C. Sec. 101(14A), specifically states that the debt is owed or recoverable by the parent. Since I filed the claim on February 2012 (10 years ago), I requested to recover the DSO accrued debt including the legal interest mandatory by state Law; (including the request for the seizure of the properties of the debtor -delinquent father- State Law under 8LPRA524). In addition and in the alternative, the children provided Sworn Statements ratifying the request for the payment of the debt and the legal interest due.

D.(1) Reduction of Child Support Debt Final Decree (Accrued Before 2011) To Pay Mortgage Payments Due after the Filing of the Adversary Proceedings on 2014:

32.  Trustee is requesting to reduce/alter the child support debt final Judgment made by State Court. The Judgment to establish child support debt is firm and final decree. The Judgment was made to recover the child support debt established on June 2011 and accrued before July 2011; debt corresponds to the prepetition amount accrued before July 2011.

33.  Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir. 2003) "The domestic relations exception prohibits federal courts from issuing or altering divorce, alimony, and child custody decrees.

34.  Regarding the mortgage monthly payments owed after the filing of the adversary proceedings on 2014, for the Property co-owned by debtor, Trustee is requesting to obtain the payment by reducing the child support debt owed by debtor since July 2011.

35.  The article 327 (§ 1272) of the P.R. Civil Code (1930) establish that "The share of the participants in the benefits as well as in the charges, shall be proportioned to their respective shares. The portions belonging to the participants in the common ownership shall be presumed equal until the contrary is proven." As per mentioned State Law, the debts for the community property are responsibility

App. Ap. pp.446

of the co-owners in the community property. The co-owners of the property are responsible for the payment of the mortgage debt the portion of equal shares. As per State Law, Debtor is responsible for the portion of the 50% of the mortgage debt.

36. I paid post-petition monthly mortgage payments for the amount of $39,000. The mortgage monthly payments that remained unpaid after the adversary proceeding total $37,004.27 from a principal balance of $29,000. The bank creditor is charging an additional amount of $15,499 for interest payments. The mortgage debt balance corresponds to the participation of the debtor in the property and is less than 50%.

37. The unpaid balance was provoked by Trustee and bank creditors for requesting to pay principally commercial debts from Gusupa Corporation and by choosing not to recover the Gusupa commercial properties, income and assets to pay the corporation debts with their own assets in contravention to 11 U.S.C. § 502 (d)[2].  By means of the provoked unpaid mortgage balance, Trustee is also trying to suggest compliance with 11 USC § 363.

38. In addition, the mortgage payments for the period after 2014 are not related by any means to the child support debt owed by the delinquent father (debtor) that accrued since (before) July 2011. The Judgment for the child support debt accrued pre-petition before July 2011 is a final and firm[3] decree. The children (now youth) cannot be responsible for the payment that correspond to the father (debtor). The Judgment for child support debt owed by debtor (the father) cannot be altered by the federal court. The domestic relations exception prohibits federal courts from issuing or altering divorce, alimony, and child custody decrees.

---

[2] 11 U.S. Code § 502 (d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

[3] In the alternative that Trustee refers to the housing expense considered for the child support; Any portion for the housing expense considered for the determination of the child support is considered child support and the State Court made the clarification. State Court also made a reduction considering the amount as support. If any reduction is considered, the court must them add the amount to restitute the amount for the calculation and correction of the amount of the child support debt. A reduction of any payment without the restitution will triplicate the consideration of a payment made once to benefit debtor multiple times for the same payment.

App. Ap. pp.447

39. Regarding Trustee objection, Trustee cited cases: Rosello Puig v. Rodriguez, 183 D.P.R. 81, 94 (2011) where the court decided that a deed made at Florida to transfer the house to spouse while where married was valid; In Re Lang 191 BR 268, debtor filed while were married and the court considered the house as part of the estate. The cited cases were filed while married with spouses.

40. In Re Pérez León, one of the ex-spouses filed bankruptcy several months after divorce; the court granted motion to dismiss on the grounds that the court was not placed in a position to rule upon the proposed liquidation of the post-marital community as per State Law[4]. *Vélez v. Pérez León (In re Pérez León), 2013 Bankr. LEXIS 3859*

41. Regarding cases cited by Trustee: In Matter of Brown, 488 BR 910, 2013, the Court decided a debt arising from the Contempt Agreement is excepted from discharge and Debtor was ordered to continue to hold Plaintiff (ex-husband creditor) harmless from payments on the marital home. Trustee cited non applicable cases such as; In re Nelson 451 BR 918 2011, the claim was not for support; In Re Lewis 423 BR 752 2010, parties were married, the debt was not DSO and the court abstain and remanded the case to State Court; In Re Antony 453 BR 782, 2011, the court decided to separate the condo fees from the DSO; the court also allowed post-petition interest from the pre-petition debt; In Re Mannix 303 BR 587 2003) the individuals were married when filed bankruptcy; In Re Horner, 222 BR 918 (1998), court decided debtor debt under separation agreement is non-dischargeable.

42. In the Objection, Trustee cited 11 USC § 541 that states

> "(a)The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1)Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case. (2)All interests of the debtor and the <u>debtor's spouse</u> in community property as of the commencement of the case that is—(A)under

---

[4] The court discussed (1) Property rights in bankruptcy are created, defined and determined by state law; (2) made decision based on cases from other Jurisdictions, In Re Brasset, 332 BR 754-755 (2005) in which the court included the community property that was never partitioned and the debtor interest in the property became part of the estate; and In Re Robertson, 203 F.3d at 861-862 (5th Circuit), the court determined that cannot include the marital home from ex-spouse because it was not community property at the commencement of the case; (3)  When said marital community comes to an end, the property is owned in common by the ex-spouses. In absence of contracts or special provisions, this concept shall be governed by the provisions to such effects contained in arts. 326-340 of the Civil Code, *31 L.P.R.A. §§ 1271-1285*;  (4) In Re Brasset the court obtain debtor interest in the properties to compose the estate, as per *11 U.S.C. § 541(a)(1)and as per state law. Debtor interest is defined by  11 U.S.C. § 541(a)(1).*
"when a debtor files for bankruptcy "all [of his/her/its] legal and equitable interests ... in property as of the commencement of the case" become part of the bankruptcy estate "wherever located and by whomever held". *11 U.S.C. § 541(a)(1).*

the sole, equal, or joint management and control of the debtor; or (B)liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable."

43. Trustee interprets previous disposition, and sustains that the interest referred as "spouse" is the same as "ex-spouse". The disposition clearly expresses and refers to the term "spouse" and nowhere in the law 11USC§541(a) refers to an "ex-spouse". The law is clear and there should not be any interpretations. In addition, I am not the debtor's spouse; the debtor's spouse is someone else to whom debtor was married when he filed the bankruptcy petition. Most important is that, State Law distinguishes between the distribution of the property of spouses and that distribution for ex-spouses. Ex-spouses, refers to articles of the Civil Code different than the articles corresponding to spouses. Therefore, when applying State Law, equaling the two is not correct because the treatment establish by law is different.

44. Contrary to the cited cases, in this case the divorce separation began during 2005 and divorce was filed on December 2006 and, several years later, on August 2011 debtor filed for Bankruptcy, while debtor was married to another person. During the bankruptcy proceedings, I informed the post-marital community property was not distributed.

D(2) Distribution of Post Marital Community Property and Bankruptcy Estate

45. The P.R Supreme Court applies legal standard that community assets are obtained by the industry, salary or work of the spouses or any of them, they are community assets. "Industry, salary or work" includes all forms of remuneration for manual or intellectual productive activity. Garcia v Montero, 107 DPR 319 (1978). The post marital community property is governed by the Articles 326 - 340 of the P.R. Civil Code del Código Civil of 1930, 31 L.P.R.A. secs. 1271-1285.

46. The PR Civil Code (1930) provides that the amount of illegal or fraudulent donations or alienations will be brought up in accordance with Art. 1313 of the Civil Code (1930), 31 L.P.R.A. sec. 3672; Quetglas Álvarez v. Carazo Castillo, 134 D.P.R. 644 (1993). Article 1318 of the Civil Code (1930) provides that "donations made by any of the spouses that should be considered fraudulent will be collated." The Civil Code prohibits acts of disposition of community property by only one of the spouses.

App. Ap. pp.449

The art. 1313 provides that no act of (a) disposition or (b) administration that any of the spouses makes over the community property will harm the other spouse or his heirs. Quetglas v. Carazo, 134 DPR 644 (1993). Art. 101 of the CC (1930) provides that from the day the divorce proceedings are judicially initiated, any debt contracted by the husband or the wife without authorization from the court will not be valid. To encumber or alienate community property, the consent of both spouses is necessary, under penalty of nullity. Art. 91 of the Civil Code (1930). Neither spouse may donate, dispose of, or oblige, for consideration, the personal estate and real property of the community without the written consent of the other spouse. Ultra vires acts: it is when one of the spouses exceeds his powers when representing the community, his acts are ultra vires and do not have legal effect until they are ratified by the other spouse and as long as it is not ratified there is no consent. A transaction that the spouse does not consent to is void. Soto v. Rivera, 144 DPR 500 (1997). Art. 1811 of the Civil Code (1930), 31 LPRA sec. 5171° provides that the debtor is liable for compliance with the obligations with all his present and future assets. 31LPRA 5171.

47. In Rivera Rodríguez, the P.R. Supreme Court indicated that "community property that was not the object of judicial consideration during said process" has no res judicata effect. Rivera Rodríguez v. Rivera Reyes, 2006 TSPR 103. I requested a discovery of evidence to obtain the evidence necessary to distribute the post marital community property. The community assets that correspond to the parties generated by the plaintiff during matrimony (SLG) that the plaintiff/debtor cannot be investigated and recover or collated, would remain in community between the parties, under the exclusive control of the debtor. I do not have interest that these assets remain in community. I am not interested that the assets remain under the sole control of the ex-spouse or third parties. Obstruction of the discovery of evidence could cause the debtor to illegally appropriate the participation in the assets that should be paid to the ex-spouse.

48. The state law establishes the procedure to determine the interest/participation of the ex-spouses in the assets.[5] In result, the interest that corresponds to the debtor, in essence, could be the same to the

---

[5] During bankruptcy proceedings, I requested the evidence necessary for the distribution of the post marital community property. Trustee evaded complying with discovery requested made through interrogatories, requests of evidence. Trustees evaded

interest used to compose debtor bankruptcy estate, as per 11 USC § 541. Until the liquidation of the post marital assets is done, Trustee cannot know the composition of the estate and the respective participation of the debtor in the assets to compose the bankruptcy estate.

49. The liquidation of post marital community property requested was based on the matrimonial SLG community property regimen participation[6]. In addition, in BL Investments v. Rivera, 181 DPR 5 (2011), the P.R. Supreme Court ruled that the debts acquired by one of the spouses after the dissolution of the marriage, these fall on his own assets and not on the common assets"; "Creditors and heirs cannot obtain a specific portion of the post-marital community property until the community is liquidated. In Betancourt González v. Pastrana Santiago, 2018 TSPR 68, the P.R. Supreme Court determined that the liquidation of the post-marital community property had not been carried out in the case of the heading "they could not" "order the sale in public auction of a participation in a particular asset; is necessary that, prior to ordering its sale, it is divided in its entirety in a lawsuit to award the corresponding shares/participation.

 [In addition to the original request made on February 2012 and in the alternative, the case of Figueroa Robledo v. Rivera Rosa, 149 DPR 565, the P.R. Supreme Court determined that because the debtor did not paid the child support obligation corresponded a reimbursement for the amount owed in child support. The case of Figueroa Robledo v. Rivera Rosa, 149 DPR 565, the P.R. Supreme Court ruled that upon liquidating the legal community property a reimbursement action proceeds to for a credit that corresponds to the ex-spouse to be satisfied with the personal assets of the obligor who did not pay the child support that belonged to him, for the amount owed of child support. Applying cited case, it corresponds that a payment that should be awarded using the property for the amount owed in child support.]

50. In summary, for the corresponding liquidation of the post marital community property, is necessary obtain or collate any distribution, gifts, and transferences of properties made by the ex-spouse before and after the filing of the divorce proceedings. Once the inventory is made with the necessary adjustments, the court could distribute the participation of the ex-spouses in such post marital community.

---

responses and evade submitting evidence to investigate assets and debts to determine the respective participation of the debtor in the post marital community property. Trustee also opposed to request of Subpoena in docs. 117, 140 and 142 of the case 14-00137.

[6] Including the participation in the business corporation as per Case Santiago v. Rodríguez, 181 D.P.R. 204 (2011) the Supreme Court establishes, it is not possible for a for-profit corporation to exist without shareholders. While it is true that the share certificates serve as evidence, they are not absolutely determinative to prove the ownership of the share.

App. Ap. pp.451

51. Regarding the adversary proceeding, on May 30, 2014, Trustee filed a adversary proceedings to obtain permission for the sale of alleged debtor participation in a homestead property. The debtor participation is an unknown percentage. Until the liquidation of the post marital community property, Trustee is unable to know the percentage of ownership of the debtor to determine debtor bankruptcy estate.

52. For the property at Villas Reales, designated homestead by State Court, which is principal and only residence of the young adults and me, I offered to pay mortgage debt if property is adjudicated to me. Trustee received evidence which confirms debtor participation in the property is negative (inexistent), and if I continue to make payments on behalf the debtor, debtor will accumulate additional debts with me for the payment of Trustee, who is subrogated in the obligations of the debtor.

53. Trustee also fails to mention that she pretends that, I pay the whole mortgage and maintain the participation 50-50, and by not intending to distribute the assets according post marital community state law in violation of due process and the requested discovery. [7]  Homestead is enforceable against former spouse and all creditors except mortgage creditor which I agreed to pay when the Court adjudicates the property to me.

54.      To determine the composition of the estate is necessary to determine the debtor participations in the assets according to case Quetglas Álvarez v. Carazo Castillo, 134 D.P.R. 644 (1993), Soto v. Rivera, 144 DPR 500 (1997), and Articles of the Civil Code (1930) necessary to include all the transferences or collate the value of the assets that the debtor disposed to defraud the post marital community.

55. The post-marital community property has not been distributed between the debtor and me. The process for the divorce commenced since 2005, the divorce petition was filed on December 2006; the divorce decree was made on December 2007. On 2008, the petition for the distribution of the post marital property was filed.  Ex-spouse obstructed the process and it was not completed. Debtor filed the bankruptcy petition on August 2011. At the bankruptcy court, discovery of evidence was requested to

---

[7] Proposed scenario is similar to Garcia Lopez v. Mendez Garcia, 102 DPR 383 (1974)

App. Ap. pp.452

liquidate the post marital community property. Trustee did not provide the evidence required and additional requests of discovery were objected.

56. From the available evidence, the following are submitted: inventory and distribution of assets to obtain or collate the amounts transferred and other assets identified, as of the date of the filing of the divorce. From the post marital community property, the debtor kept controlling the majority of the assets. See Exhibit.  Table included for Estimated Inventory.

57. The subscriber requests that the participation that corresponds to the property in Villas Reales (Homestead) be awarded to me, that the assets and other properties be recovered (or collated for payment) and the remaining portion of the assets that correspond to me be collated and that the debtor obtains a loan (or a lien) to pay the amounts owed and the child support debt.

58. Regarding the debts that are claimed in bankruptcy, according to State Law, the debts that are claimed for the payment of the post marital assets, must be related to the matrimony incurred before divorce petition, such debts incurred cannot be for the benefit of third parties or made with the purpose of defrauding. My ex-spouses debts with his current spouse are sole responsibility of the debtor. State Law does not provide a provision for such purposes. The debts that were incurred after the divorce petition was filed and the debts that were incurred in favor of third parties do not correspond to the subscriber and are of the sole responsibility of the debtor and can be collected from his participation in the assets and from the assets of the current spouse. In addition, to collect the debts that are claimed, it is necessary to bring the income and assets of the corporation since 2005, bring the assets and the transfers to collect from the debtor's exclusive participation.

59. Bankruptcy court should promote equitable remedies. If the required post marital community property distribution is not allowed, it would be validating distributions in fraud and debtor transferences will despoil post marital community and me.

Summary Judgment Should NOT Be Awarded In Favor of the Plaintiff

60. In the interest of justice, this court can consider any of the child support proof of claim and add the additional legal interest due as of today. Pursuant to 11 U.S.C. Sec. 101(14A) and as per state law, I can recover the child support debt requested since 2012 and, as per State Law, I have standing to conduct the seizure process of debtor properties to recover the debt with the inclusion of the legal interest accrued as of today. In addition and in the alternative, Gonzalez children provided Sworn Statements ratifying the request for the payment for the debt and the legal interest. In the alternative, the young adults can file an additional proof of claim (in addition to 5-1 or 5-2) to request the legal interest accrued as of today not included in the previous claims.

61. Post-petition interest as it accrues on a domestic support obligation (DSO) becomes part of the DSO debt itself under 11 U.S.C.S. § 101(14A) and the accruing post-petition interest is a priority debt that must be paid in full.

62. The mortgage payments for the period after 2014 are not related by any means to the child support debt owed by the delinquent father (debtor) that accrued since (before) July 2011. The child support debt accrued pre-petition before July 2011 is a final and firm[8] decree. The Children (now youth) cannot be responsible for the payment of child support debt that owes the father (debtor). The Judgment for the unpaid child support debt owed by debtor (delinquent father) cannot be altered by the federal court. The domestic relations exception prohibits federal courts from issuing or altering divorce, alimony, and child custody decrees.

63. Defendant (creditor) requests this court to deny Trustee's request to disallow claim for the child support debt requested since 2012, to alter the child support debt and applicable legal interest.

64. Trustee's request that the proof of claim for the child support debt (owed since July 2011) must be disallowed in its entirety is a mockery of the judicial system.

---

[8] In the alternative that Trustee refers to the housing expense considered for the child support; Any portion for the housing expense considered for the determination of the child support is considered child support and the State Court made the clarification. State Court also made a reduction considering the amount as support. If any reduction is considered, the court must them add the amount to restitute the amount for the calculation and correction of the amount of the child support debt. A reduction of any payment without the restitution will triplicate the consideration of a payment made once to benefit debtor multiple times for the same payment.

65. Trustee' request of Summary Judgment must be disallowed. Trustee's claim proves the frivolous claims and evasion of requests were intended to protect debtor and evade the payment of the child support debt.

66. Plaintiffs did not comply with the standard required by the Rule for the motion for summary judgment. The judgment sought shall not be rendered according to the pleadings and evidence submitted; Trustee omitted essential information to suggest compliance with the rule. The pleadings and evidence not included by Trustee shows that there is a genuine issue and, that the moving party is NOT entitled to a judgment in her favor as a matter of law.

WHEREFORE, I (creditor) respectfully prays this Honorable Court denies the Trustee's Motion Requesting Entry of Summary Judgment; Trustee request is contrary to Federal Laws.

CERTIFICATE OF SERVICE

RESPECFULLY SUBMITTED

In San Juan, Puerto Rico, on July 6, 2021.

/s/ Amarilis González, pro se
P.O. Box 984
Guaynabo, Puerto Rico 00970
Tel. 787-605-0704
Email: amarilis@ymail.com

App. Ap. pp.455

EXHIBIT I

Distribución de SLG - Juan C. Balcells

Estimado de Bienes a Diciembre 2006- Fecha de la Radicación de la Demanda de Divorcio

| Item | Activos | SLG |
|------|---------|-----|
| 1 | Casa Villas Reales | 205,000.00 |
| 2 | | |
| 3 | Seguro Acumulable | 40,000.00 |
| 4 | Bote Mako | 35,000.00 |
| 5 | Negocio (1) | 300,000.00 |
| 6 | Credito a la SLG por pagos de Prestamo Universidad JCB | 20,000.00 |
| 7 | De Diego 600,602 & 604 | 1,500,000.00 |
| 8 | Inventario (2) | 50,000.00 |
| 9 | Casa y Fincas Lago Dos Bocas Utuado | 250,000.00 |
| | | $ 2,400,000.00 |
| | Deuda Hipoteca | (55,000.00) |
| 10 | Deuda HOA - Villas Reales | (40,000.00) |
| 11 | Deuda VISA - gastos SLG a nombre AGG | (20,000.00) |
| | Activos SLG | 2,285,000.00 |
| | Parte de cada ex-conyugue | 1,142,500.00 |
| 12 | Deuda de la SLG a AGG x pago hipoteca post-petition AGG (2011-2014) | 39,000.00 |
| 13 | Deuda a AGG por Deuda Alimentos Menores + intereses | 239,000.00 |
| 14 | 4 Aptos. Costa Bonita, Culebra $150,000 c/u (2) | |
| 15 | Terreno Cape Coral (2) | - |
| 16 | Otros pendientes por investigar | |

(1) Confirmar valoración del negocio, cambio de nombre y transferencias, según leyes aplicables

(2) Pendiente por investigar

 Investigar las cuentas, pagos, desembolsos que se hicieron en fraude y en beneficio de terceros

App. Ap. pp.456



**POPULAR.**

www.popular.com

Estado de cuenta hipotecaria

Servicio al cliente: (787) 775-1100
1-800-981-1982

Fecha del estado: 04/16/2020

986
JUAN C BALCELLS-GALLARRETA
AMARILIS GONZALEZ-GARCIA
PO BOX 984
GUAYNABO     PR 00970-0984

| Número de cuenta | 0700330111 |
|---|---|
| Fecha de Pago | 05/01/2020 |
| Cantidad total del pago | $38,627.07 |

**Mensaje de Quiebra**

Nuestros récords muestran que usted es un deudor en quiebra o usted descargó responsabilidad personal por el préstamo hipotecario en quiebra.

Enviamos este estado periódico para fines informativos y de cumplimiento solamente. Esto no es un intento de cobrar una deuda contra usted.

Si desea dejar de recibir estados periódicos, escríbanos al PO BOX 70127, San Juan, PR 00936-8127.

| Desglose del Monto del Pago | |
|---|---|
| Principal | $0.00 |
| Intereses | $0.00 |
| Reserva (contribuciones y seguros) | $0.00 |
| Otros | $0.00 |
| Pago mensual | $0.00 |
| Total de cargos | $1,622.80 |
| Pago(s) Vencido(s) | $37,004.27 |
| Cantidad total del pago | $38,627.07 |

| Información de la cuenta | |
|---|---|
| Balance Principal | $29,812.65 |
| Tasa de interés | 7.0000% |
| Penalidad por prepago | NO |

**\*\* Historial de la Cuenta\*\***
*Historial de cuenta reciente*
Adeuda un total de $38,627.07. Usted debe pagar esta cantidad para poner el préstamo al día.
Si está enfrentando una situación económica adversa: refiérase a la información de asesoría hipotecaria incluida al dorso este estado de cuenta.

| Desglose de pagos anteriores | Pagos el ciclo anterior | Pagos realizados durante el año corriente |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Intereses | $0.00 | $0.00 |
| Reserva (contribuciones y seguros) | $0.00 | $0.00 |
| Otros | $0.00 | $0.00 |
| Cargos | $0.00 | $0.00 |
| Pago parcial no aplicado | $0.00 | $0.00 |
| Total | $0.00 | $0.00 |

**Transacciones (Desde 03/17/2020 Hasta 04/16/2020)**

| Fecha | Descripción | Cargos (-) | Pagos (+) |
|---|---|---|---|

**Para notificación de error o solicitud de información puede escribirnos a: BPPR Mortgage Servicing PO Box 70127 San Juan, PR 00936-8127**
Ver información adicional al dorso

El préstamo alcanzó su vencimiento en 01/2017, para instrucciones de cómo proceder para cancelar, debe comunicarse con uno de nuestros Representantes de Servicios al 787-775-1100 ó 1-800-981-1982 ó visitar nuestras oficinas ubicadas en Altamira Popular Center piso 5, 1901 ave. Jesús T. Piñeiro, San Juan PR 00920.

Scanned with CamScanner