```
 1                      UNITED STATES BANKRUPTCY COURT

 2                         DISTRICT OF PUERTO RICO

 3    In Re:                        )  Docket No. 11-06637-MCF7
                                    )  Chapter 7
 4    JUAN CARLOS BALCELLS          )
      GALLARETA,                    )  Old San Juan, Puerto Rico
 5                                  )  February 9, 2022
                  Debtor.           )
 6                                  )  Adv. Proc. 14-00137-MCF
      - - - - - - - - - - - - - x   )
 7                                  )
      NOREEN WISCOVITCH RENTAS, ET  )
 8    AL.,                          )
                                    )
 9              Plaintiffs,         )
      v.                            )
10                                  )
      AMARILIS GONZALEZ GARCIA,     )
11                                  )
                Defendant.          )
12    - - - - - - - - - - - - - x   )
                                    )
13    _____

14            ORDER TO SHOW CAUSE TO THE PLAINTIFF (DKT #220)
         TRUSTEE'S MOTION IN COMPLIANCE WITH THE ORDER TO SHOW CAUSE
15                               (DKT #223)

16             BEFORE THE HONORABLE MILDRED CABAN FLORES

17                  UNITED STATES BANKRUPTCY JUDGE.
      _____
18

19    APPEARANCES (TELEPHONICALLY):

20     For the Chapter 7 Trustee:   RAFAEL A. GONZALEZ VALIENTE,
                                     ESQ.
21                                   NOREEN WISCOVITCH-RENTAS, ESQ.

22     Pro Se Defendant:            AMARILIS GONZALEZ GARCIA

23

      PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
24

      TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
25
```



1                                          Old San Juan, Puerto Rico

2                                          February 9, 2022

3                                          At or about 9:30 a.m.

4                            *     *     *

5          THE CLERK:  Calling case number 2 and case number 3

6   are case number 2011-6637, Juan Carlos Balcells Gallareta, and

7   adversary proceeding 2014-137

8          THE COURT:  If debtor's counsel can make the

9   appearance, followed by creditor's counsel and any other

10  party-in-interest.

11         MR. GONZALEZ:  Good morning, Your Honor.

12         THE COURT:  And --

13         MR. GONZALEZ:  Oh, sorry.

14         THE COURT:  No, you may proceed.

15         MR. GONZALEZ:  Oh.  Attorney Rafael Gonzalez

16  Valiente, representation of the bankruptcy estate, Your Honor.

17         THE COURT:  Good morning, Mr. Gonzalez Valiente.

18         Any debtor, creditor's counsel present --

19         MS. GONZALEZ:  I'm --

20         THE COURT:  -- for the case of --

21         MS. GONZALEZ:  Amarilis Gonzalez, pro se, as a

22  creditor.

23         THE COURT:  Good morning, Ms. Gonzalez.

24         MS. GONZALEZ:  Good morning.

25         THE COURT:  Anyone else in the Juan Carlos Balcells



1   Gallareta?

2          MS. WISCOVITCH:  Yes.  Yes, Your Honor.  Noreen

3   Wiscovitch, Chapter 7 trustee.

4          THE COURT:  Good morning, Ms. Wiscovitch.

5          Anyone else?

6          So I understand we have everyone.  Okay.  So we have

7   two matters.  I understand we have the Chapter 7 trustee's

8   amended objection to claim 5-2 filed by the claimant Amarilis

9   Gonzalez Garcia.  We have also a motion for summary judgment

10  in opposition.  And we have -- the other matter is the order

11  to show cause and the trustee's motion and compliance with the

12  order to show cause with respect to the sale of the

13  residential property that is co-owned by the debtor and the

14  codebtor.

15         Okay.  So I will hear from the trustee.

16         MR. GONZALEZ:  Your Honor, as a preliminary matter,

17  we have a problem with Ms. Amarilis Gonzalez appearing on

18  behalf of her children because she's not an attorney admitted

19  to the court.  And by her own representations, the proof of

20  claim is for child support owed, or allegedly owed, to the

21  children.  She has been granted multiple changes to get

22  representation.  The last time was at docket 204, which was

23  entered in December 10 of 2020, over a year ago.

24         She simply cannot represent her children, who are

25  adults, and that is part of the objection.  And she claims --

```
1              THE COURT:  I have --

2              MR. GONZALEZ:  Yes.  She --

3              THE COURT:  Okay.  I have a question.

4              MR. GONZALEZ:  Yes.

5              THE COURT:  With respect to the claim --

6              MR. GONZALEZ:  Um-hum.

7              THE COURT:  -- amounts that are filed on the

8    docket --

9              MR. GONZALEZ:  Um-hum.

10             THE COURT:  -- are those claims owed while the

11   children were minors?

12             MR. GONZALEZ:  Yes, Your Honor.

13             THE COURT:  Okay.  So at the time of the filing of

14   the case, those were the debts owed to minors.

15             MR. GONZALEZ:  Yes, but --

16             THE COURT:  And then they became legal age?

17             MR. GONZALEZ:  Yes.  And the case law is very, very

18   clear in Puerto Rico, and I can cite -- I'm sorry, give me --

19   yes.  Give me just one second.  I apologize.  I just opened

20   the case and closed it.  Israel Figueroa v. Petra Rivera from

21   the Supreme Court of Puerto Rico, 149 DPR 565, which states

22   that as soon as the children reach the majority of age, the

23   spouse or parent loses the padre protestante and may not

24   represent the children anymore.  They lose the capacity to

25   represent the children who are no longer minors.
```



1       And that is the case before us, Your Honor.  She

2   simply cannot represent -- she's not an attorney.  She's

3   definitely not admitted to the bar.  And she has no capacity

4   to represent the children.  They either have to come by

5   themselves, or they have to hire an attorney.  Ms. Gonzalez

6   has requested, on multiple occasions, permission to hire an

7   attorney because she keeps changing attorneys, and the last

8   time was in 2020, and she failed to hire an attorney then.

9   She simply cannot represent the young adults that are no

10  longer minors.

11      THE COURT:  I will hear from Ms. Amarilis Gonzalez.

12      MS. GONZALEZ:  I believe -- I am not -- I don't agree

13  with what Gonzalez Valiente, attorney, said.  The major thing

14  in here is that most of the time, the attorney trustee is

15  twisting the law and changing the main purpose of the law

16  because the claim, the child super debt claim was presented to

17  the court on February of 2012.  That is almost ten years ago.

18      And with that presentation of the claim, I also

19  claimed that there was a post-martial community property that

20  must be divided.  And through the proceedings, the trustee --

21  I sent to the trustee several reports from -- forensic reports

22  reporting concealants (sic) and traits of fraud and

23  transference of properties and everything she needed to object

24  properties that were concealed.  So I presented that

25  information for the court and for the trustee to do her duty

1    as a trustee, and none of that was done.

2         I also provided the court with he case law and the

3    laws of Puerto Rico regarding post-marital community property,

4    and I explain everything.  And regarding my capacity as

5    represent my children, I had the capacity when they were

6    minors, and that is the only thing I need because the

7    bankruptcy law only requires that the presentation must be

8    made by the person that can made that in the moment of the

9    origination or the filling of the claim.  So again, the

10   attorneys of the trustee is mixing the law, mixing the local

11   law and the bankruptcy law.

12        And with all this, I usually -- I am an attorney for

13   the -- admitted to the local bar, and I am also admitted to

14   the federal bar, which I don't usually practice.  That's why I

15   don't know exactly all the rules and all the different rules

16   that you have.  So if I don't meet once or any -- it's not on

17   purpose like the attorney of trustee said in his last motion.

18   I am not doing that on purpose, I've been taking too much time

19   in this matter.  I think that, as the other trustee in the

20   other case said, this matter should be conducted quick.

21        I think that trustee is even -- by the concealance

22   (sic) of the property she made, she's even violating 18 USC

23   Section 153 and 154.  I submitted all the information

24   necessary.  I even submitted two reports and I also submitted

25   a letter to the U.S. Trustee containing all the evidence that

1   she is telling in this motion that she never received.

2           I also made, through the attorneys, that I contracted

3   once or twice or times I contracted.  And they made some

4   discoveries, and she denied and she almost answered them

5   empty, with no information.  I don't know why she's trying to

6   conceal that the properties -- really, I think that that's not

7   her duty.  And all that she's requesting in her motions, she's

8   twisting the law, and the ethics in Puerto Rico -- the law of

9   ethics is against that.  And I think she's practicing under

10  Puerto Rico law.  Also, I really don't know the federal law,

11  but the Puerto Rico law is very strict with that.

12          THE COURT:  Okay.  I think I'm ready to rule on the

13  issue with respect to the standing.  So this case was filed

14  back in 2011.  The proof of claim is over a decade old, and at

15  the time that the claim was filed, the children were minors,

16  and therefore, she had the standing to file the claim and she

17  has the standing to prosecute that claim.  She, as an unpaid

18  parent, has the right to recover from the other parent that

19  has not paid the domestic support obligation in so many years.

20  So she does have the right to be heard with respect to the

21  claim that she filed over ten years ago.  Claims are

22  determined at the time of the petition.

23          So I would like to move to the issue about the sale

24  of the property that is co-owned by the debtor and Ms.

25  Gonzalez, trustee.



| | |
|---|---|
| 1 | MR. GONZALEZ:  Yes, Your Honor.  And I apologize. |
| 2 | There is a truck parked right in front of our office.  We're |
| 3 | asking them to move because of the noise.  So if you can't |
| 4 | hear me, just let me know, and I'll try to speak louder. |
| 5 | THE COURT:  I heard you, so. |
| 6 | MR. GONZALEZ:  Your Honor, as we explained in our |
| 7 | motion in compliance with order, the requirements for a |
| 8 | complaint or an action under 363(b) is that there be some |
| 9 | benefit to the estate.  As shown in our motion in compliance |
| 10 | with order, there will be a benefit to the estate, and that |
| 11 | was using the value of the properties -- of the property prior |
| 12 | to the current boom in property values, Your Honor, which |
| 13 | probably means that the property will probably be worth even |
| 14 | more than it is -- than it does now. |
| 15 | I don't know if that answers your question, or if you |
| 16 | have a specific question as to any part of the response, Your |
| 17 | Honor. |
| 18 | THE COURT:  Yes.  My question is what is the benefit |
| 19 | to the estate?  What is the benefit to the estate if the |
| 20 | trustee is able to sell it at the recent appraisal? |
| 21 | MR. GONZALEZ:  Yes. |
| 22 | THE COURT:  There's only one different -- there's |
| 23 | only, I understand, 1,000-dollar difference between the -- |
| 24 | MR. GONZALEZ:  Your Honor -- |
| 25 | THE COURT:  -- the real estate appraisal submitted. |



1          MR. GONZALEZ:  Yes.  As of the time of the filing of

2    the motion in response to order, the only lien on the property

3    was 38,000 dollars.  When we subtract that from 246, that

4    leaves approximately -- that leave approximately 208,000

5    dollars in equity, Your Honor.  Divided by 2, that's over

6    103,000 dollars.  We believe that the claim filed by Ms.

7    Amarilis Gonzalez in representation of her children is, at

8    most, 97,000 dollars, so there is a positive benefit for the

9    estate, and that is at that value.  If we can sell the

10   property for more, then there will be -- there would be

11   additional benefit for the estate.

12         But Your Honor, this is a matter for when the

13   property is requested to be sold, and let me explain.  If the

14   complaint is granted, that doesn't mean that the property will

15   automatically be sold.  The trustee has to go and find a

16   purchaser for the property.  If, when the property's sold, the

17   best offer that's obtained for -- and I'm making up an

18   example -- is 150,000 dollars, then obviously, there won't be

19   enough benefit in order to pay administrative expenses, and

20   the Court may decide -- after review, may decide to deny the

21   right to sell.

22         The complaint is only for the right to go and look

23   for a purchaser, but we still would have to go through the

24   process of the approval of the sale, which is when the benefit

25   to the estate would be determined, Your Honor.  If we can sell

1    the property for 300,000 dollars, then definitely, there would

2    be enough money to pay creditors and there would be a benefit

3    to the estate.  But we can't reach that stage until we're

4    allowed to do so, Your Honor.  Any calculations we do now are

5    purely hypothetical, Your Honor, because we can't obtain

6    offers until we're allowed to look for them.  And that is what

7    would be resolved if we finally get the complaint for 363 sale

8    to be approved.  Again, we don't automatically get permission

9    to sell; we just get permission to attempt to sell, to market

10   the property.

11           Ms. Amarilis --

12           THE COURT:  I'll hear from Ms. Gonzalez.

13           MS. GONZALEZ:  Okay.  I presented the cases for the

14   post-marital community property because if the distribution of

15   the assets must be done before the trustee knows the

16   bankruptcy estate, she needs to know the composition of the

17   bankruptcy estate because it's important because debtor

18   already have more than almost the majority of the assets

19   that's to be computer in that estate, in the post-marital

20   community property.

21           So the attorney needs to bring those assets and then

22   divide them and sell what he already has because he has the

23   majority.  He has the assets that compose the corporation

24   that -- if he brings the shares of the corporation and sell

25   the asset that he already took that I don't -- assets that

1    belong to both of us, then he should be able to sell what the

2    debtor already took.  The debtor took the majority of the

3    assets that should be considered, and this is the only

4    property remaining that he also -- the debtor and the trustee

5    also want.

6          But they took what he already have and consider

7    selling to pay the corporation debts because the biggest and

8    substantial debt claimed in this Chapter 7 bankruptcy is a

9    debt from (indiscernible) corporation.  And he's trying to

10   sell the residential property, the one property left, to pay

11   mostly corporation debts.

12         And the thing is that he needs to bring all that to

13   consider obtaining the portion that could respond to the

14   debtor for them determining what is compose the bankruptcy

15   estate.  And then I suggest that -- I recommend that they can

16   sell those properties.  And in fact, those properties, after

17   the corresponding distribution, can be sell to pay the

18   corporation debts.  That's the reasonable thing to do.

19         And regarding the residential property, since the

20   beginning, I requested that the portion could be adjudicated

21   because of the child support seizures of properties.  I

22   presented the disposition.  I don't have it here, ready,

23   but -- and I also -- the property can also be -- I can request

24   the property as a reimbursement for the debt in the post-

25   marital distribution.  And as I said, the best solution is to

1    bring the properties and the assets and the corporation shares

2    to pay the corporation debts after the corresponding

3    distribution and after the corresponding determination of the

4    charges made to defraud and the charges made by the actual

5    spouse and all that.

6            And also, Puerto Rico law includes the actual spouse

7    to be responsible for his debts.  So she must be included in

8    the proceedings to pay his debts.  And she was also married at

9    the time he claimed for the bankruptcy, so that could be

10   another option.

11           MR. GONZALEZ:  Your Honor, Attorney Gonzalez

12   Valiente, representation of the estate.  With all due respect

13   to Ms. Gonzalez, nothing of what she just said has anything to

14   do with whether this property can be sold under Section

15   363(c).  There is a benefit to the estate, but like we said,

16   we estimate there will be a benefit to the estate, but until

17   we can market the property, we won't know for sure.  When a

18   motion for sale of the property is filed, Ms. Amarilis has all

19   the right to come and say that there's no benefit or whatever

20   other objection she may have to the sale at that time.

21           And to answer, because I feel compelled after all the

22   comments by Ms. Gonzalez, she did send a report on what she

23   believes to be fraudulent actions by the debtor.  We

24   investigated.  The trustee investigated it.  The U.S. Trustee

25   investigated it.  And there is nothing -- they found nothing

1    to support those allegations.

2            If Ms. Amarilis believes that the debtor committed

3    fraudulent actions, she could have filed a complaint to object

4    the discharge, Your Honor.  She did not.  And that is the

5    reason why a competent attorney has to represent parties in

6    these proceedings.  She simply does not understand the

7    process.  And it's fine; she's not a practicing attorney.

8    There's nothing wrong with that.  But she does need to hire

9    counsel, or she's simply making all of us and the Court waste

10   our time because she did not address the Court's questions now

11   or before, in her other arguments.

12           Whether she can or cannot file a reimbursement

13   action, Your Honor, she can't.  The time for filing a proof of

14   claims has passed years ago.  She may not file another claim.

15           If she believes that the debtor committed fraud,

16   there are vehicles that can be used to addressed that, and the

17   debtor can defend himself.  The estate is the estate, and the

18   house is an asset of the estate, which the trustee has a duty

19   to dispose of in order to pay creditors.  This is not that she

20   wants; it is her duty imposed upon her as a trustee.

21           THE COURT:  Let me ask a question.  Back to the sale,

22   the notary fee would be one percent, correct, of any sale that

23   the trustee conducts on the residential property?

24           MR. GONZALEZ:  Between --

25           THE COURT:  Under state law.



1          MR. GONZALEZ:  Between half a percent and one

2     percent.

3          THE COURT:  But the law requires one percent.  You

4     would have to get a notary to agree to less, correct?

5          MR. GONZALEZ:  No.  The law says that the notary may

6     charge between half a percent and one percent.  That's what

7     the notary law says.  Or zero percent; he can waive his fees

8     if he wants.  But the purchaser could also pay the notary fees

9     if he so wishes.

10          So again, until we have a transaction that is offered

11     by the trustee with a proposed purchaser, we can't know if

12     there will be a benefit to the estate and how much.  Again, if

13     the property can be sold for 350,000 dollars -- and I'm

14     inventing the number -- there's definite benefit to the

15     estate, but we won't know until we can market the property,

16     Your Honor.

17          THE COURT:  What I have is two appraisals, one for

18     245,000 and 246,000.  The trustee believes they could sell it

19     for higher than the appraisal amount?

20          MR. GONZALEZ:  Under current market circumstances,

21     yes, Your Honor.  But even with those appraisals, the --

22          THE COURT:  But they just filed an appraisal for

23     246,000.

24          MR. GONZALEZ:  Sorry.  Yes, but that was from eight

25     months ago, and the current market for properties is

1   exploding.  Everything is being sold over appraised values,

2   Your Honor.  But more importantly -- and this is -- and this

3   is -- and this is very important, Your Honor -- the property

4   only has 38,000 dollars in liens.  So if --

5           THE COURT:  How is that?  I thought the claim was for

6   58,041 dollars, claim 2-2, so --

7           MR. GONZALEZ:  We --

8           THE COURT:  How is it 38,000?

9           MR. GONZALEZ:  We obtained a -- obviously payments

10  were made post-petition on the mortgage, and we obtained, at

11  one point --

12          THE COURT:  And the trustee's planning to take

13  advantage of those payments that were paid to --

14          MR. GONZALEZ:  There are so many -- we only have to

15  pay the lienholder what they are owed, Your Honor.  And

16  currently, they are owed approximately --

17          THE COURT:  And the trustee doesn't have to take into

18  account the amounts that were paid to reduce that amount?

19          MR. GONZALEZ:  No, Your Honor.  In order to provide a

20  benefit to the estate, the only things that have to be

21  subtracted are liens and other expenses associated with the

22  sale.  That's it.  The rest is a benefit to the estate, and

23  the rest are claims against the estate that have to be paid

24  from the benefit that is obtained from the sale.

25          THE COURT:  Okay.

1          MR. GONZALEZ:  If Ms. Amarilis believes that she

2     has --

3          MS. GONZALEZ:  Okay.  It -- the

4          MR. GONZALEZ:  -- she has --

5          THE COURT:  Excuse me.  Excuse me --

6          MR. GONZALEZ:  Yes.

7          THE COURT:  -- Ms. Gonzalez, let the trustee finish,

8     and I'll come to you in a moment.

9          MS. GONZALEZ:  Okay.  Sorry.

10         MR. GONZALEZ:  Yes.  Again, if Ms. Amarilis Gonzalez

11    believes that she has a post-petition claim for any payments

12    that she made, she may file a claim.  Post-petition claims are

13    administrative claims and are not -- and are not time-barred

14    like pre-petition claims.  But once again, they are claims

15    against the estate that have to be made, proven, and paid from

16    the benefit obtained from the sale.  The only thing that has

17    to be paid from the sale -- the rest is benefit -- are the

18    cost of the sale and the liens, Your Honor.  And again, we

19    don't have -- we cannot have the proves to really know what

20    the benefit to the estate will be until we reach the stage of

21    asking permission of the Court for sale of the property.

22         Your Honor, there is no -- there is no --

23         THE COURT:  Mr. Gonzalez.  Mr. --

24         MR. GONZALEZ:  Yes.

25         THE COURT:  -- Gonzalez, a question, another question



1   I have.

2          MR. GONZALEZ:  Okay.

3          THE COURT:  Has the trustee hired a realtor in the

4   case.

5          MR. GONZALEZ:  I don't recall, Your Honor.

6          THE COURT:  And how much --

7          MS. WISCOVITCH:  Your Honor, if I may?

8          THE COURT:  Yes, Ms. Gonzalez.

9          MS. WISCOVITCH:  No, it's Noreen Wiscovitch, the

10  Chapter 7 trustee.

11          THE COURT:  Oh, I'm sorry.

12          MS. WISCOVITCH:  If I may?

13          THE COURT:  Yes.

14          MS. WISCOVITCH:  I just wanted to say that I have not

15  been able -- I believe that I realtor was hired at the

16  beginning.  I will check the docket.  But the realtor has not

17  been able to enter the property, just like none of the

18  appraisers have been able to enter the property because Ms.

19  Gonzalez has not allowed it.  So I have not been able to

20  market the property.

21          THE COURT:  Okay.  Just --

22          MS. GONZALEZ:  No.  That's not true.

23          THE COURT:  So what is the commission for -- the real

24  estate commission for the person who is going to sell?  What

25  is their commission?



1          MR. GONZALEZ:  It's usually --

2          THE COURT:  It's --

3          MR. GONZALEZ:  -- three percent, but I don't know

4    what it was in this case.  I'm going to check right now in the

5    docket.

6          THE COURT:  Okay.

7          MR. GONZALEZ:  It's usually approximately three

8    percent.

9          THE COURT:  Okay.  Ms. Gonzalez?

10         MS. GONZALEZ:  Yes.  It's not true -- it's not true

11   that I didn't allow the appraiser.  The appraiser did came

12   inside the house, and he made the appraisal from seeing the

13   house.  So it's not true.

14         THE COURT:  Your appraisal or the appraisal of the

15   trustee?

16         MS. GONZALEZ:  Appraiser of the trustee.

17         THE COURT:  Okay.  Okay.

18         MR. GONZALEZ:  I don't believe that a realtor has

19   been hired in this case, Your Honor.  I just checked the

20   docket, and no realtor has been hired in this case, Your

21   Honor.

22         THE COURT:  Okay.  Okay.  Can you give me, I would

23   say, a ten-minute recess.  I just want to think about this.

24   So I am going to turn off my camera --

25         MR. GONZALEZ:  May I make one final comment, Your



1   Honor, before --

2            THE COURT:  No.

3            MR. GONZALEZ:  Okay.

4            THE COURT:  No.  That --

5            MS. GONZALEZ:  I am going to add something if I --

6            THE COURT:  No, Ms. Gonzalez, either.  Okay.  I'm

7   going to evaluate, and I've heard the parties.  I have another

8   case that needs to be called.  I just want to look at the

9   numbers.  Thank you.  Please stay on the call.  I am going to

10  turn off my camera and mute myself.  I suggest you do so as

11  well.  And let's put it an exact time; we will come back to

12  10:15.  So there will be a short recess.

13       (Whereupon a recess was taken)

14            THE COURT:  The Court is ready to rule.  The Court

15  has heard the parties and has reviewed the various motions

16  filed in the case.  And this is the ruling of the Court.

17            And our ruling is that the trustee has not met her

18  burden to show, one, the benefit to the estate.  And even if

19  she could meet this burden, then the trustee would have to

20  show that this benefit outweighs the detriment to the ex-

21  spouse.

22            And so based on our calculations, we are going to use

23  the higher amount of the appraisal report, which is 246,000

24  dollars.  That is based on the trustee's real estate

25  appraisal.  We are not going to speculate that it could be

1   even sold higher because this is what the trustee's real

2   estate appraisal found, that it was valued at 246,000 dollars,

3   and it is a recent appraisal.

4           From that amount, we are going to subtract the Banco

5   Popular's secured claim of $58,000.41.  Although the trustee

6   is trying to lower that amount to approximately 33-, 35,000

7   dollars, the trustee admitted that the DSO recipient could

8   file a post-petition claim for the mortgage payments.  So when

9   you subtract 246,000 minus $58,000.41, that gives us a

10   subtotal of 187,959 dollars.

11           From there, we're going to subtract the closing

12   costs.  We're going to use 0.5 percent instead of the

13   customary 1 percent.  That would be 1,230 dollars minus -- so

14   that would be 1,230 dollars minus 187,959 dollars.  That would

15   leave us 186,729 dollars.

16           Then we're going to subtract from that amount the

17   three percent for the realtor.  I understand the customary is

18   four percent, but the trustee mentioned three percent for the

19   commission for the realtor.  That is 7,380 dollars minus the

20   186,729 dollars.  That would leave us a subtotal of 179,349.

21           From that amount, we would subtract the homeowner's

22   association claim, which is $31,959.04 minus the 179,349.

23   That would leave us a subtotal of $147,389.96

24           We would have to divide that in half.  Half would go

25   to the estate; half would go to the DSO.  So dividing that

1   number by half, that would be $73,694.98.  The DSO claim is

2   for 97,421 dollars.  And we're assuming that we would grant

3   the trustee's objection.  There's not enough money to pay the

4   DSO in full, and since there's not enough money to pay the DSO

5   in full, there's no extra money for any other unsecured

6   creditor of the estate.

7          So the detriment to the ex-spouse clearly outweighs

8   any benefit to the estate.  The sale would only satisfy the

9   secured creditor, the trustee's fees, the HOA fees, and

10  partially pay -- partially pay -- the ex-spouse.  And that

11  would mean that the ex-spouse would become homeless because

12  she would lose her home and then not be paid one hundred

13  percent of her DSO claim that she filed in the case.  And no

14  other unsecured creditors would be paid from the sale.

15         And even if the trustee were to find a buyer that

16  would pay all the closing costs, there still would not be

17  enough to satisfy, in full, the DSO claim and leave money left

18  over for unsecured claims.  The party that would most benefit

19  from the sale is the secured creditor and the HOA claim.

20         So in the balance, the sale causes more detriment to

21  the ex-spouse than it benefits the bankruptcy estate.  Even if

22  the sale took place, all other unsecured claims would not be

23  satisfied.

24         So for those reasons, the Court dismisses the

25  adversary action filed by the trustee against the co-owner



1    because the trustee has failed to show cause that it complies

2    with the third prong of the test under Section 363(h) of the

3    bankruptcy case.  So the case is dismissed.  That is the

4    ruling of the Court.  I thank the parties for their time and

5    their arguments.

6            We are going to call the next case.

7            MR. GONZALEZ:  Yeah --

8            THE COURT:  Mr. Gonzalez?

9            MR. GONZALEZ:  Yes, Your Honor.  We would also like

10   to have the Court resolve the objection to claim, Your Honor.

11           THE COURT:  The objection to claim is moot.

12           MR. GONZALEZ:  No, Your Honor.  It's not.  We filed

13   an objection to claim.  It has to be decided.

14           THE COURT:  So we will hear that on March 9th, 2022,

15   at 9 a.m.  I have to call the next case.

16           MR. GONZALEZ:  Thank you, Your Honor.  Have a good

17   day.  Permission to withdraw.

18           THE COURT:  You are granted permission to withdraw.

19   Anyone else that wishes to withdraw, you may do so.  You can

20   disconnect from the call.  We are going to call the next case

21   unless --

22           MS. GONZALEZ:  Thank you.  Okay.

23           THE COURT:  Good day to all.

24              (At 10:30 am, proceedings concluded.)

25                   *     *     *



```
1   U.S. BANKRUPTCY COURT  )

2   DISTRICT OF PUERTO RICO)

3

4          I certify that this transcript consisting of 22 pages

5   is a true and accurate transcription to the best of my ability

6   of the audio proceeding in this case before the Honorable

7   Mildred Caban Flores on February 9, 2022, as recorded by the

8   Courtroom Deputy.

9          Audio proceedings were recorded and were provided to

10  this reporter by the U.S. Bankruptcy Court, and this certified

11  reporter accepts no responsibility for any events that

12  occurred during the above proceedings, for any inaudible

13  and/or indiscernible responses by any person or party involved

14  in the proceeding or for the content of the audio recording

15  provided.

16

17
```

*Shoshana Chana Axtell*

```
18  _____

19  Shoshana Chana Axtell, CDLT-106
    Official Court Transcriber
20
    May 4, 2022
21
    eScribers, LLC
22
    7227 N. 16th Street
23
    Suite #207
24
    Phoenix, AZ 85020
25
```


(973) 406-2250 | operations@escribers.net | www.escribers.net